IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WALLACE OENGA, GEORGENE SHUGLUK, LEROY OENGA, SR., MICHAEL DELIA, TONY DELIA, JOSEPH DELIA, JENNIE MILLER, and TRINITY DELIA, | ) | |
| Plaintiffs, | ) | 1-06-cv-00491-EJD<br>Chief Judge Edward J. Damich |
| vs. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

BP Exploration (Alaska) Inc. ("BPX"), ConocoPhillips Alaska, Inc. ("CPAI"), ExxonMobil Alaska Production Inc. ("EMAP"), Chevron U.S.A. Inc. ("Chevron"), and Forest Oil Corporation ("Forest"), by and through their counsel GUESS & RUDD P.C., have moved to intervene in this action as defendants pursuant to RCFC 24 and in response to the Notices served in this action pursuant to 41 U.S.C. § 114(b) and RCFC 14.

**Applicable Rule**

RCFC 24 provides in relevant part as follows respecting intervention:

> **(a) Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: … (2) when the

> applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
>
> **(b) Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action: …
> (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.
>
> **(c) Procedure.** A person desiring to intervene shall serve a motion to intervene upon the parties as provided in RCFC 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought.…

**Analysis**

BPX is the lessee under the lease ("BIA Lease F-89-01") that is referred to in paragraph 9.a of Plaintiffs' First Amended Complaint.[1]

The key documents relating to BIA Lease F-89-01 are the following:

(a) Lease Agreement (BIA Lease No. F-89-01), effective January 1, 1989, and recorded on February 1, 1989, at Book 53, Pages 873-890, Barrow Recording District ("Original Lease Agreement").

---

[1] Standard Alaska Production Company was the name of the lessee when the original "Lease Agreement (BIA Lease No. F-89-01)" effective January 1, 1989, was executed. Effective January 31, 1989, Standard Alaska Production Company changed its name to BP Exploration (Alaska) Inc.

(b) BPX's unrecorded letter of July 29, 1993, pursuant to which BPX gave written notice under the Original Lease Agreement of the following:

(i) BPX's satisfaction of its obligation under Section 1 of the Original Lease Agreement (which obligation accrued when BPX received all of the permits and authorizations that it believed that it needed to proceed with development of the Niakuk Project) to convert the lease from a year-to-year tenancy to a long term tenancy expiring (unless extended pursuant to Section 2 of the Lease) on December 31, 2014, subject to BPX's right (exercisable only at five-year intervals) to cancel the Lease pursuant to Section 15 of the Original Lease Agreement;

(ii) BPX's exercise of its option under Section 11 of the Original Lease Agreement to increase the size of the leased premises.

In its letter of July 29, 1993, BPX proposed an effective date of August 1, 1993, for its increase from 10 acres to 20 acres, and the BIA acknowledged and agreed to such effective date when it signed BPX's letter of July 29, 1993.

(c) Agreement To Amend BIA Lease F-89-01, effective January 20, 1994, and recorded on May 2, 1994, at Book 74, Pages 292-298, Barrow Recording District ("1994 Lease Amendment").

(d) Third Amendment To BIA Lease F-89-01, effective May 11, 1995, and recorded on June 14, 1995, at Book 79, Pages 223-227, Barrow Recording District ("1995 Lease Amendment").

BPX thus has an interest in the transaction that is the subject of this action, as required by RCFC 24(a).

Pursuant to and on the lands subject to BIA Lease F-89-01, BPX has developed and currently operates facilities for the development, extraction, and gathering of oil and gas

from certain oil and gas reservoirs underlying lands adjoining the lands that are subject to BIA Lease F-89-01. See Plaintiffs' First Amended Complaint at ¶ 9.a.

BPX operates these facilities as lessee under BIA Lease F-89-01 and as Unit Operator under the Prudhoe Bay Unit Agreement for the owners of working interests in the oil and gas leases subject to the Prudhoe Bay Unit Agreement from which oil and gas are being produced. As of the date hereof, such working interest owners ("Working Interest Owners") comprise BPX, CPAI, EMAP, Chevron, and Forest. See generally Plaintiffs' First Amended Complaint at ¶ 9. The Working Interest Owners reimburse BPX for costs incurred by BPX as Unit Operator, and BPX delivers to each Working Interest Owner its proportionate share of all oil and gas produced from leases subject to the Prudhoe Bay Unit Agreement. Each Working Interest Owner thus has a direct stake in the outcome of any and all litigation or other disputes relating to BIA Lease F-89-01 and thus an interest in the transaction that is the subject of this action as required by RCFC 24(a).

Conversely, the United States owns no interest in the lands subject to BIA Lease F-89-01, has not made any improvements on the lands subject to BIA Lease F-89-01, is not now operating any facilities on the lands subject to BIA Lease F-89-01, and—perhaps most importantly—owns no rights in or to any of the oil or gas that is being produced through such facilities. Moreover, if the United States ultimately is found to be liable for damages to Plaintiffs, it is at least theoretically possible that the United States might seek to recover some or all of those damages from the Working Interest Owners. The United

States thus is in no position to represent the interests of BPX or the other Working Interest Owners in this matter.

It also is unclear from the pleadings filed herein to date whether the United States will defend itself aggressively against the claims asserted in the First Amended Complaint or whether it ultimately might seek to settle the matter vis-à-vis plaintiffs in ways that are potentially adverse to BPX or the Working Interest Owners generally, either with respect to time periods now past under BIA Lease F-89-01 or with respect to future time periods under BIA Lease F-89-01, or with respect to the validity, scope, and effectiveness generally of BIA Lease F-89-01. Meanwhile, establishing (i) the validity and adequacy for BPX's purposes of BIA Lease F-89-01 and (ii) BPX's complete good faith compliance in all respects with BIA Lease F-89-01 are critically important to BPX and the other Working Interest Owners.

From the pleadings filed herein to date it also is unclear whether the United States will seek aggressively to support the primary jurisdiction of the Secretary of the Interior (acting through the Interior Board of Indian Appeals), see 43 C.F.R. § 4.1(b)(2) (2005), to resolve certain matters now pending before it respecting certain actions taken by the Bureau of Indian Affairs under BIA Lease F-89-01. See BP Exploration (Alaska) Inc. and Heirs of Andrew Oenga v. Alaska Regional Director, Bureau of Indian Affairs, Docket Nos. IBIA 06-71-A and IBIA 06-72-A (Int. Bd. of Indian App., filed June 6, 2006, and June 9, 2006).

Absent intervention by BPX, issues of fact or questions of law relevant to some or all of the foregoing may be resolved in this case in such a way as to impair or impede the ability of BPX or of the Working Interest Owners generally to protect its or their interests either as third-party defendants in this case or in other administrative or judicial proceedings arising out of or relating to BIA Lease F-89-01.

## Conclusion

Each of BPX and the other Working Interest Owners respectfully submits as follows:

(1) Intervention of Right. Each Working Interest Owner submits that it has shown that

(a) it claims an interest in the transaction that is the subject of this case,

(b) it is so situated that the disposition of this case may as a practical matter impair or impede its ability to protect that interest,

(c) its interest cannot be represented adequately by any other party to this case, and thus

(d) it must be allowed to intervene herein under RCFC 24(a).

(2) Permissive Intervention. Alternatively, each Working Interest Owner submits that it has shown that

(a) the defenses that each Working Interest Owner will assert as a possible third-party defendant herein have questions of fact or law in common with the main action herein,

(b) the participation of the Working Interest Owners in this action will not unduly delay or prejudice the adjudication of the rights of the original parties but instead will facilitate the

development of a full evidentiary record and a full and complete airing of all questions of law,

(c) it thus should be allowed to intervene herein under RCFC 24(b).

DATED at Anchorage, Alaska, this 25th day of September, 2006.

Respectfully submitted,

s/ Louis R. Veerman

Louis R. Veerman
GUESS & RUDD P.C.
Attorneys for Intervenor-Defendants
510 L Street, Suite 700
Anchorage, AK 99501

Telephone: 907-793-2200
Facsimile: 907-793-2299
Email: dveerman@guessrudd.com

CERTIFICATE OF SERVICE

I certify that on the 25th day of September, 2006, a true and correct copy of the foregoing document was electronically served on the following:

Raymond Conway Givens
James Merritt Upton

Guess & Rudd P.C.

By: s/Louis R. Veerman