# In the United States Court of Federal Claims

No. 06-491 L

(Filed: December 22, 2006)

| | | |
|---|---|---|
| **WALLACE OENGA, et al.,** Plaintiffs, v. **THE UNITED STATES,** Defendant. | * | Motion to Intervene; intervention as a matter of right; RCFC 24(a); permissive intervention; RCFC 24(b); limiting intervention |

*Raymond C. Givens*, Givens Law Firm, Coeur d'Alene, ID, for Plaintiffs.

*James M. Upton*, Environment & Natural Resources Division, Natural Resources Section, United States Department of Justice, Washington, DC, for Defendant.

*Louis R. Veerman*, Guess & Rudd P.C., Anchorage, AK, for BP Exploration (Alaska) Inc., ConocoPhillips Alaska, Inc., Exxon Mobil Alaska Production, Inc., Chevron U.S.A., Inc., and Forest Oil Corporation.

---

## OPINION AND ORDER

---

**DAMICH, Chief Judge.**

This case is before the Court on the Motion to Intervene, pursuant to Rule 24 of the Rules of the Court of Federal Claims ("RCFC"), by BP Exploration (Alaska) Inc. ("BPX"), ConocoPhillips Alaska, Inc. ("CPAI"), Exxon Mobil Alaska Production, Inc. ("EMAP"), Chevron U.S.A., Inc. ("Chevron"), and Forest Oil Corporation ("Forest") (collectively, "the Oil Companies"). The Oil Companies claim, *inter alia*, an interest relating to the subject of this

action, a lease agreement between the Plaintiffs and BPX granting BPX the rights to operate oil and gas production facilities on the Plaintiffs' property. For the reasons discussed herein, the Oil Companies' Motion to Intervene is hereby GRANTED.

## I. Background

Plaintiffs are Native Alaskan Inupiat heirs of Andrew Oenga, now deceased, who was granted a 40-acre Alaska Native Allotment ("Allotment"), Allotment F-14632 Parcel B, as a result of his 1971 application to the United States Department of the Interior. Am. Compl. ¶ 11. Plaintiffs assert that the Allotment granted Oenga surface rights only; the subterranean oil and gas rights had been previously transferred by the United States to the State of Alaska.[1] Am. Compl. ¶ 12. Following the probate of Oenga's estate, ownership in the Allotment is now held by the Plaintiffs in various percentages. Am. Compl. ¶ 13. In 1989, the U.S. Secretary of the Department of the Interior, "acting for, and on behalf of Mr. Oenga," approved a lease agreement ("Lease"), BIA Lease No. F-89-01, between Oenga and Standard Alaska Production Company ("Standard Alaska"). Am. Compl. ¶ 14. The Lease granted Standard Alaska the use of 10 acres of the Allotment, *inter alia*, "for any and all oil field exploration, development, construction, facilities, production and support purposes." Compl. Ex. A at 5. Standard Alaska changed its name to BP Exploration (Alaska) Inc. effective January 31, 1989. The first amendment to the Lease–which has been amended on three occasions, in consecutive years beginning in 1993–expanded the portion of the Allotment subject to the Lease from 10 to 20 acres and converted the Lease from "a year-to-year basis to a fixed twenty-five year term." Compl. Ex. B at 1. The gravamen of Plaintiffs' complaint is that Defendant has committed a breach of trust by failing to collect, on their behalf, the proper rents or royalties due on the Lease.[2]

BPX subsequently entered into a separate agreement, the Prudhoe Bay Unit Agreement, wherein it agreed to act as unit operator for four other oil companies ("Working Interest Owners")–CPAI, EMAP, Chevron, Forest–pursuant to what it considers to be its right under the Lease to operate oil production facilities on the Allotment.[3] Oil Companies' Mot. to Intervene at 4. As part of this arrangement, the "Working Interest Owners reimburse BPX for costs incurred by BPX as unit operator, and BPX delivers to each Working Interest Owner its proportionate

---

[1] Defendant instead maintains that the Allotment was conveyed to Oenga in fee simple title, but "subject *inter alia* to the United States' reservation of 'all of oil and gas in the land so allotted.'" Answer ¶ 12.

[2] Plaintiffs allege that two statutes, the Indian Mineral Leasing Act, 25 U.S.C. § 396 (a)-(g), and the Indian Long-Term Leasing Act, 25 U.S.C. § 415(a), and the corresponding regulations for each, govern the amount of rent or royalty that should be payable under the Lease. Am. Compl. ¶ 32 - 55.

[3] Plaintiffs allege, however, that BPX violated the Lease by entering into the Prudhoe Bay Unit Agreement. Am. Compl. ¶ 9, 58-66.

share of all oil and gas produced from leases subject to the Prudhoe Bay Unit Agreement." Oil Companies' Mot. to Intervene. at 4. On September 25, 2006, the Oil Companies filed their Motion to Intervene seeking to intervene as defendants as a matter of right, pursuant to RCFC 24(a).[4]

## II. Discussion

Defendant does not oppose the Oil Companies' Motion to Intervene. While the Plaintiffs concede that the Oil Companies' "interest in the subject of this case [the Lease] makes them proper intervenors," they argue for limited intervention, stating that it would be inappropriate for the Oil Companies' to exercise unlimited participation. Pls.' Response to Mot. to Intervene at 2. Intervention of right is governed by RCFC 24(a)(2), which provides that:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by the existing parties.

When considering a motion to intervene, the Federal Circuit instructs that "the requirements for intervention are to be construed in favor of intervention." *Am. Mar. Transp., Inc. v. United States*, 870 F.2d 1559, 1561 (Fed. Cir. 1989) (citing *Westlands Water Dist. v. United States*, 700 F.2d 561, 563 (9th Cir. 1983)).

The Court agrees with the Plaintiffs and the Defendant that the Oil Companies have satisfied the requirements of RCFC 24(a)(2). The Oil Companies, therefore, are entitled to intervene in this action as a matter of right. Thus, the only issue before the Court is whether, as the Plaintiffs aver, the Court should limit the Oil Companies' intervention.

Plaintiffs argue that it would be appropriate for the Court to limit the Oil Companies' intervention to addressing issues that arise in this case that would also be issues in a possible subsequent indemnification or contribution action by the Defendant against the Oil Companies. Pls.' Response to Mot. to Intervene at 1, 3. The Oil Companies, as Plaintiffs would have it, should neither be permitted to address issues of this Court's jurisdiction nor issues of the fiduciary duty owed, and any breach thereof, by the United States to Plaintiffs. Pls.' Response to Mot. to Intervene at 2.

---

[4] As an alternative to RCFC 24(a), the Oil Companies also argue in support of permissive intervention, pursuant to RCFC 24(b). Oil Companies' Mot. to Intervene at 6, 7. However, because the Court finds in favor of the Oil Companies with respect to intervention of right, it is unnecessary to address the merits of their permissive intervention claim.

In support of their assertion that limiting intervention is appropriate, the Plaintiffs cite two cases. Pls.' Response to Mot. to Intervene at 2. In neither case, however, is limiting intervention actually at issue. The opinions really involve whether the court would grant or deny *unlimited* intervention. The Plaintiffs here explain that in *Klamath Irrigation District v. United States*, 64 Fed. Cl. 328 (2005), Judge Allegra allowed intervention, but noted "the court has adequate facility to limit the issue which may be presented . . . ."[5] Pls.' Response to Mot. to Intervene at 2. Yet, the Plaintiffs ignore the fact that the *Klamath* court granted unlimited intervention to the intervenors. It is clear from the context of Judge Allegra's statement, *supra*, that he was discussing the authority of the court to limit issues after intervention has already been granted–not its ability to limit intervention. Indeed, his comment actually supports, rather than negates, granting unlimited intervention to the Oil Companies here.

This Court also finds troubling Plaintiffs' statement that another judge of the court "allow[ed] limited intervention" to the third-party contractor in *Orion Scientific Systems v. United States*, 28 Fed. Cl. 669 (1993), because the court actually denied the motion to intervene in *Orion*. While the *Orion* court would have allowed the third-party contractor limited *participation* in the case–subject to the prior joint approval of the parties[6]–the possible participation was far from intervenor status.

The Supreme Court has discussed the distinction between intervention of right and permissive intervention when a court is considering limiting an intervenor's participation in an action.[7] The highest court has explained that a "district court has less discretion to limit the participation of an intervenor of right than that of a permissive intervenor." *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 382 (1987) (Brennan, J., concurring). Furthermore, restrictions that a court places on a party are "unlikely to be viewed as an abuse of discretion unless [that party] was actually entitled to intervention of right." *Id.* The reason for this disparate treatment, at least in part, is that a party granted intervention of right is generally more akin to the original parties; absent a statute conferring an unconditional right to intervene, an intervenor of right always has an interest in the subject matter of the litigation, while a permissive intervenor does not. *Stringfellow*, 480 U.S. 370, 382, n.1; *See* RCFC 24(a)(2), (b)(2).

---

[5] Plaintiffs have incorrectly quoted the court's opinion in *Klamath*. It should read, "the court has adequate facility to limit the *issues* which may be presented . . ." (emphasis added).

[6] It is unclear to this Court what was intended by the *Orion* court when it determined that limited participation would have been permissible with the parties' joint approval. Nevertheless, the docket of the case does not indicate that the third-party contractor that was denied intervention actually participated in later proceedings.

[7] The foundation for the Supreme Court's discussion was its reading of Federal Rule of Civil Procedure 24, which is nearly identical to RCFC 24.

Accordingly, a nonmoving party arguing for limited intervention bears a greater burden when a court grants intervention as a matter of right versus mere permissive intervention. Plaintiffs have simply failed to meet their burden here. Indeed, Plaintiffs have not even suggested–let alone persuaded the Court–that as full-party participants the Oil Companies would either unduly delay disposition of any motions, inhibit the ultimate resolution of the case, or prejudice the adjudication of the Plaintiffs' rights in any way. The Court is loath to limit the Oil Companies' participation in the instant case when the requirements of RCFC 24(a) have been satisfied and the Court has been presented with no reason that unlimited intervention would impede or delay the adjudication of the pending suit.

## III. Conclusion

Based on the foregoing, the Motion to Intervene filed by BPX, CPAI, EMAP, Chevron, and Forest is hereby GRANTED. By virtue of the Court's grant of the Motion to Intervene, the Oil Companies as intervening defendants will be parties to this case for all purposes and entitled to fully participate in all future proceedings.

The Parties are hereby ORDERED file a Joint Preliminary Status Report on or before **February 21, 2007**.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge