**UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **WALLACE OENGA, GEORGENE SHUGLUK, LEROY OENGA, SR., MICHAEL DELIA, TONY DELIA, JOSEPH DELIA, JENNIE MILLER and TRINITY DELIA,** | |
| **Plaintiffs,** | **No. 06-491 L** |
| **v.** | **Chief Judge Edward Damich** |
| **THE UNITED STATES,** | |
| **Defendant, and** | |
| **BP EXPLORATION (ALASKA) INC., CONOCOPHILLIPS ALASKA, INC., EXXON MOBIL ALASKA PRODUCTION, INC., CHEVRON U.S.A., INC. and FOREST OIL CORPORATION,** | |
| **Defendant-Intervenors.** | |

**JOINT PRELIMINARY STATUS REPORT**

Pursuant to Paragraphs Nos. 4 and 5 of Appendix A of the General Rules of the United States Court of Federal Claims (App. A) and the Court's Special Procedures Order (SPO) filed on December 22, 2006, the parties submit this Joint Preliminary Status Report.

**JURISDICTION – SPO ¶ 6(a), modifying App. A III, ¶ 4(a).**

**1. Claim One – Subject Matter Jurisdiction**

a. Plaintiffs: The court has subject matter jurisdiction over Claim One under the Tucker Act, 28 U.S.C. 1491. The money-mandating sources of substantive law are 25 U.S.C. 396, 396(c), (d), (e), (g), 30 U.S.C. 1701-57, 25 C.F.R. Part 212, 30 C.F.R. Part 206, 43 CFR Part 3160, and provisions of the Lease Agreement, as amended attached to the initial Complaint.

Fisher v. United States, 402 F.3d 1167 (Fed. Cir. 2006)(en banc); Brown v. United States, 86 F.3d 1554, 1560-61 (Fed Cir. 1996); Pawnee v. United States, 830 F.2d 187, 190 (Fed. Cir. 1987).

b. United States: The Defendant disagrees that the court has jurisdiction over Claim One. Claim One accrued in 1989, or 1993, and is barred by the six-year statute of limitations period (25 U.S.C. §2501). And, in any event, Claim One is not a claim upon which relief may be granted because BIA Lease F89-01 is not a "mineral lease" within the meaning of the Indian Mineral Leasing Act or the regulations implementing the Act.

c. Intervenors: Intervenors disagree that the court has jurisdiction over Claim One. Intervenors concur with the position of the United States as stated above.

**2. Claim Two – Subject Matter Jurisdiction**

a. Plaintiffs: The Court has subject matter jurisdiction over Claim Two under the Tucker Act, 28 U.S.C. 1491. The money-mandating sources of substantive law are 25 U.S.C. 415(a), 25 CFR Part 162, and provisions of the Lease Agreement. Brown v. United States, 86 F.3d at 1563.

b. United States: The court does not have jurisdiction over that portion of Claim No. 2 which concerns appraisals conducted by the Defendant to determine rent due on the subject lease, specifically, the 1993 and 1997 appraisals because the six-year statute of limitations bars the portion of Claim One based upon these appraisals. This is because each scheduled rental adjustment gave rise to a separate and independent claim. In addition, Plaintiffs failed to exhaust their administrative remedies before filing this suit. In any event, Claim No. 2 is not a claim upon which relief may be granted because the Department of the Interior was under no legal obligation to collect "fair annual rental" in the form of royalties. To have done so would

have violated Paragraph No. 9 of the Lease.

c. Intervenors: Intervenors concur with the position of the United States as stated above.

**3. Claim Three - Subject Matter Jurisdiction**

a. Plaintiffs: The Court has subject matter over Claim Three for the same reasons set out as to Claims One and Two above.

b. United States: Claim Three is not a claim upon which relief may be granted because Paragraph No. 10 of the subject lease authorizes the use of the subject allotment for a drilling pad and oil platform without limitation as to the particular off-site source of the oil, whether from the West Niakuk, P. A., or any other location. Hence, there was no "trespass."

c. Intervenors: Intervenors concur with the position of the United States as stated above.

**4. Statute of Limitations – 28 U.S.C. § 2501**

a. Plaintiffs: This action is not barred by the statute of limitations of 28 U.S.C. 2501. Under PL 109-54 (2005), 119 Stat § 499, 519, a request for an accounting results in the six-year statute of limitations period of 28 U.S.C. § 2501 not beginning to run until receipt of the United States' response and not expiring until 6 years thereafter. Shoshone Indian Tribe of the Wind River Reservation, 364 F.3d 1339, 1349-51 (Fed. Cir. 2004). The Oengas requested such an accounting in 2005, and the United States responded in 2006. See Appendix 1. Consequently, the six-year statute of limitation did not begin to run until 2006 and will not expire until six years thereafter in 2012. Plaintiffs did not discover until 2003 or later facts regarding 1) the desire of some Intervenors to produce oil and gas from West Niakuk oil leases through Native Allotment F-14632 Parcel B, and 2) the eventual production of oil and gas from West Niakuk P.A. through BP facilities on the Allotment.

b. United States: As noted, the Defendant takes the position that Claim One is barred by the statute of limitations. Also, part of Claim No. 2 (the part concerning the first two rental adjustments in 1993 and 1997) is barred by the statute of limitations. In Paragraph No. 14 of their Contentions of Law, Plaintiffs refer to the government's duty of "continual management of the Lease and property." Since Claims One, Two and Three are, in reality, claims for mismanagement of a restricted fee allotment and not accounting claims, the referenced provision in all Interior Department appropriations acts (beginning with Fiscal Year 1990) does not toll the running of the six-year statute of limitations. See Shoshone Indian Tribe of the Wind River Reservation v. United States, 364 F. 3d 1339, 1349-51 (Fed. Cir. 2004). Finally, the Plaintiffs knew exactly what monies were being generated by the subject lease because the Lease revenues were being deposited directly into their individual trust accounts or otherwise pursuant to their express direction.

c. Intervenors: Intervenors concur with the position of the United States as stated above.

**CONSOLIDATION WITH ANOTHER CASE – App. A, III, ¶ 4(b).**

Plaintiffs and United States: There is no other case with which this case should be consolidated.

Intervenors: Intervenors concur with the position of the United States as stated above.

**BIFURCATION OF TRIAL OF LIABILITY AND DAMAGES – App. A, III, ¶ 4(c).**

Plaintiffs: Bifurcation would only delay resolution. The case should not be bifurcated.

United States: In view of the fact that the Complaint advances a different liability theory for each of their three claims, the issue of liability should be resolved first, and, thus, liability and damages issues should be bifurcated.

Intervenors: Intervenors concur with the position of the United States as stated above.

**DEFERRAL OF PROCEEDINGS – SPO ¶ 6(b) modifying App. A, III, ¶ 4(d).**

Plaintiffs: There is a related procedure before the Interior Board of Indian Appeals (IBIA) addressing a later time period. *See* First Amended Complaint, ¶ 25. However, Plaintiffs are not suggesting that proceedings in this case be deferred because of the nature of the issues.

United States: The propriety of the 2005 appraisal of the fair rental value of the subject allotment (for the 2002-2005 period) performed by the appraiser retained by the Office of Special Trustee is the subject of a proceeding presently pending before the Interior Board of Indian Appeals (see Paragraph No. 25 of First Amended Complaint). Although the Complaint states that this appraisal period is not "currently part of this action", the Plaintiffs' contention in Claim Two that the periodic appraisals of the fair rental value of the subject allotment done by the appraisers retained by the BIA were improper raises issues directly pertinent to the 2005 appraisal as well. The ultimate ruling by the Interior Board of Indian Appeals may provide valuable guidance to the court in adjudicating Claim Two. However, Defendant is not suggesting that proceedings in this case relating to Claim One and Claim Three be deferred until IBIA makes its final ruling.

Intervenors: Intervenors concur with the position of the United States as stated above.

**SEEKING OF REMAND OR SUSPENSION – App. A, III, ¶ 4(e).**

Plaintiffs: Remand or suspension has not been requested.

United States: The United States does not plan to request remand or suspension.

Intervenors: Intervenors do not plan to request remand or suspension.

**JOINDER OF ADDITIONAL PARTIES – App. A, III, ¶ 4(f).**

Plaintiffs and United States and Intervenors: No additional parties should be joined other

than the parties already allowed to intervene.

**RCFC 12(B), 12(C) OR 56 MOTIONS – App. A, III, ¶ 4(g).**

Plaintiffs: Plaintiffs plan to file a Motion for Partial Summary Judgment after the Status Conference. See detailed discussion below under SPO ¶ 6(e)(iii).

United States: Defendant plans to file a Motion for Partial Dismissal of Complaint or a Motion for Partial Summary Judgment after it has reviewed Plaintiffs' Motion.

Intervenors: Intervenors plan to file a Motion for Partial Dismissal of Complaint or a Motion for Partial Summary Judgment after they have reviewed Plaintiffs' Motion. In addition, Intervenors may join in any Motion for Partial Dismissal of Complaint or Motion for Partial Summary Judgment filed by the United States.

**MATERIAL ISSUES OF LAW AND FACT – DISPUTED AND UNDISPUTED – SPO ¶ 6(c) modifying App. A, III, ¶ 4(h).**

**A. Jurisdiction**

*See* SPO ¶ 6(a) above for factual legal issues regarding jurisdiction.

**B. Plaintiffs**

1. Andrew Oenga was an Alaska Native who spoke little or no English who lived along the North Slope of Alaska from 1909 until 1990.

a. Plaintiffs: Undisputed.

b. United States: Undisputed. However, the position of the United States with respect to paragraph No. 6, infra at 9 has a bearing on paragraph No. 1 as well.

c. Intervenors: Intervenors concur with the position of the United States as stated above.

2. Plaintiffs are all Alaska Natives who are heirs of Andrew Oenga, or heirs of his heirs,

and have inherited from him, or his heirs, the land at issue in this case.

a. Plaintiffs: Undisputed.

b. United States: Undisputed.

c. Intervenors: Undisputed, except that some of the plaintiffs may have inherited their interest from one or more heirs of Andrew Oenga rather than directly from Andrew Oenga.

**C. Allotment**

3. In 1970, Andrew Oenga applied to the United States for a Native Allotment which included the land at issue in this case known as Heald Point and included the land in T12N R15E Section 36 Umiat Meridian, Alaska. This Native Allotment was eventually granted, and a portion of it conveyed, by the United States as Native Allotment F-14632 Parcel B Lot 1. The interest conveyed is set out in the Certificate of Allotment which states that the land is deemed "the homestead of the allottee and his heirs in perpetuity" and is "inalienable and nontaxable until otherwise provided by Congress …" See Certificate of Allotment attached in the Appendix.

a. Plaintiffs: Undisputed.

b. United States: Disputed insofar as Plaintiffs fail to state that: (1) only some of the lands included in Parcel B have been conveyed (that portion of Parcel B included in T11NR15E U.M. has not been conveyed); and (2) the rights granted in connection with this allotment comprised "surface rights" only. See Certificate of Allotment under which [a]ll of the oil and gas in the land so allotted was "reserved" to the United States.

c. Intervenors: Intervenors concur with the position of the United States as stated above.

4. The Certificate of Allotment to Native Allotment F-14632 Parcel B Lot 1 reserved to the United States and "persons authorized by it" the right to prospect for and remove "oil and gas in

the land so allotted," but did not reserve rights regarding the prospecting for or removal of oil or gas located in other lands.

a. Plaintiffs: Undisputed.

b. United States: Disputed. The phrase: "In accordance with the requirements of 43 U.S.C. Sections 270-1, 270-11, and 270-12 (1970)" should be inserted at the beginning of paragraph 4 for the sake of completeness. However, Lease No. F89-01 authorized such uses of the subject allotment.

c. Intervenors: Intervenors concur with the position of the United States stated above. In addition, Intervenors contend that the full scope of the reservations, exceptions, exclusions, and limitations made or imposed pursuant to the Act of March 8, 1922 (as made applicable much later to Native allotments) upon the estate granted to Andrew Oenga pursuant to the Native Allotment Act of 1906 might have made it unnecessary for Intervenor BP Exploration (Alaska) Inc. ("BP") to obtain BIA Lease No. F89-01 at all in order to conduct its activities. BP nevertheless sought and received the leasehold granted by BIA Lease No. F89-01, and said leasehold includes all of the rights that BP and the other Intervenors needed and need to conduct their activities (insofar as they did not already have such rights).

**D. Lease and Amendments**

5. Effective January 1, 1989, Native Allotment F-14632 Parcel B Lot 1 was leased to Standard Alaska Production Company, which is the same company as BP Exploration (Alaska) Inc. (BP), and it is known as BIA Lease #F89-01. *See* Lease Agreement at Attachment A to original Complaint (Docket 1).

a. Plaintiffs: Undisputed.

b. United States: Undisputed except as follows: The first part of the statement needs to be edited to read as follows: "Effective January 1, 1989, with the approval of the Bureau of Indian Affairs, owner Andrew Oenga leased his Native Allotment F-14632, Parcel B, to Standard Alaska . . . ".

c. Intervenors: Intervenors concur with the position of the United States as stated above.

6. The lease document for BIA Lease F89-01 and all amendments were prepared by representatives of BP or its predecessor, not by Mr. Oenga, any Plaintiffs, the United States, or their representatives.

a. Plaintiffs: Undisputed.

b. United States: Undisputed, except as noted herein. The original 1989 Lease was based upon a previously developed, BIA-approved model, and finalized after 1988 negotiations participated in by owner Andrew Oenga (with the aid of a translator), his son and present plaintiff Leroy Oenga, and the BIA. The subsequent 1994 and 1995 amendments were negotiated with the help of the BIA and the Arctic Slope Native Association, an Indian Self-Determination Act contractor, and were actively pursued, agreed to, and executed individually by each of the late Andrew Oenga's successors-in-interest, the plaintiff herein.

c. Intervenors: Intervenors concur with the position of the United States stated above. In addition, Intervenors expressly disagree with and dispute any implications of uneven bargaining power, lack of business or commercial sophistication on the part of Andrew Oenga or any of the plaintiffs, or failure on the part of the BIA or any involved contractor to meet its or their obligations to Andrew Oenga or any of the plaintiffs.

7. Although ¶ 10 of BIA Lease #F89-01 allowed broad uses of the land, the actual intended

use of the land at the time of the signing of the Lease Agreement was as a road and pipeline right-of-way as shown by Exhibit A to the Lease Agreement.

a. Plaintiffs: Undisputed.

b. United States: Disputed. Defendant objects to the phrase "actual intended use." The phrase "then most probably anticipated use" should be used instead.

c. Intervenors: Intervenors concur with the position of the United States stated above. In addition, Intervenors contend that in 1988 when BIA Lease No. F89-01 was being negotiated, the manner in which the Niakuk accumulation and other “satellite” accumulations north of the main Prudhoe Bay Reservoir could be developed - or whether it or they even could or would be developed - was the subject of much regulatory uncertainty, regulatory scrutiny, and public debate.

8. An amendment of BIA Lease #F89-01 was proposed to the United States, but not the Plaintiffs, by Intervenor BP on July 29, 1993 and was signed and approved by the United States’ representative five days later on August 3, 1993. *See* Attachment B to original Complaint (Docket 1). The text of this Lease Amendment and the drawing attached to it clarifies that the intended use of the property at that time had changed to an oil removal “production pad” or “drill pad.”

a. Plaintiffs: Undisputed.

b. United States: Disputed. Defendant takes issue with the assertion that the 1993 letter was an amendment with respect to the "intended use" of the subject allotment because Paragraph No. 10 of the original lease already authorized the use of the subject allotment as an "oil removal 'production pad' or 'drill pad'. " BIA Lease F89-01 did not require notification to Andrew Oenga

or the plaintiffs (his successors-in-interest) of lessee's change of use. The 1993 notification of an increase in the acreage covered by the Lease did constitute an amendment, but under paragraph 11 of the 1989 Lease, it was accomplished at the lessee's sole discretion, without any requirement for lessor or BIA approval.

c. Intervenors: Intervenors concur with the position of the United States stated above.

9. Andrew Oenga was deceased at the time of this Amendment of BIA Lease F89-01. No Oenga heir signed this 1993 Amendment.

a. Plaintiffs: Undisputed.

b. United States: Undisputed. However, Defendant objects to the implication that BP's July 29,1993 increase in acreage required owner or BIA consent. Defendant also disputes any implication the July 29, 1993 letter was an amendment of the Lease or that the change of use required the consent of the Plaintiffs or BIA, since the change of use with respect to the subject allotment was permissible under Paragraph 10 of the original Lease.

c. Intervenors: Intervenors concur with the position of the United States stated above.

10. BIA Lease F89-01 was later amended two additional times in 1994 and 1995. *See* attachments C and D to original Complaint (Docket 1).

a. Plaintiffs: Undisputed.

b. United States: Disputed. The above first sentence should read: "BIA Lease F89-01 was thereafter amended twice - - in 1994 and 1995." There should be an addition to paragraph no. 10, above. - - namely: " The plaintiffs (as successors-in-interest to Andrew Oenga) negotiated these two amendments with BP and agreed to them; the BIA approved both amendments.

c. Intervenors: Intervenors concur with the position of the United States stated above.

11. Paragraphs 5 and 9 of BIA Lease F89-01 require that the rent for the lease of Native Allotment F-14632 Parcel B Lot 1 be adjusted periodically using appraisals and a "Cost Adjustment Factor" conducted by the United States.

a. Plaintiffs: Undisputed.

b. United States: Disputed. For the sake of accuracy, this paragraph should be changed to read "appraisals conducted by the United States, or by a Cost Adjustment Factor whichever was greater." Also, the language of Paragraph No. 5 and Paragraph No. 9 of the 1989 Lease is the best evidence of the contents of these paragraphs.

c. Intervenors: Intervenors concur with the position of the United States stated above.

12. Paragraph 34 of the 1995 Amendment of BIA Lease F89-01 prohibited Plaintiffs from contacting BP regarding the Lease, as amended. All contact on behalf of Plaintiffs was to be through the United States Department of the Interior, Bureau of Indian Affairs or through its contractor.

a. Plaintiffs: Undisputed.

b. United States: Disputed. The phrasing of the sentence is misleading. It should begin as follows: "Paragraph 34 of BIA Lease F89-01 was added by the 1995 amendment and prohibited . . . ." In addition, the government objects to the implication that the owners of the subject allotment would not have been entitled to receive complete information relating to the proposed amendment or to exercise their prerogatives under the Lease. There was no intent to deprive the owners of any substantive rights.

c. Intervenors: Intervenors concur with the position of the United States stated above.

13. Any provision of BIA Lease F89-01 which would require rent to be calculated in a

manner that would result in rent being less than as would be due under applicable provisions of federal statutes or regulations is invalid as contrary to controlling federal law.

a. Plaintiffs: Undisputed.

b. United States: Disputed. This is a legal - - not a factual - - proposition and should be omitted. In any event, Defendant disputes any implication that the rent adjustment clauses of the lease are in conflict with the relevant regulations.

c. Intervenors: Intervenors concur with the position of the United States stated above.

**E. Trust Responsibility/Fiduciary Obligation**

14. As a result of federal law, specifically including 25 CFR Part 212 and Part 162, and the terms of Lease F89-01, as amended, a duty of trust or fiduciary obligation was and continues to be owed to Andrew Oenga and his heirs (the Plaintiffs) by the United States as to Native Allotment F-14632 Parcel B, the leasing of it, the collection of revenues due as a result of such leasing and the continual management of the property and Lease, as amended.

a. Plaintiffs: Undisputed.

b. United States: Disputed. This is a legal proposition and should be omitted. Plaintiffs should be required to set forth in detail any money mandating trust obligations to which they refer. We certainly dispute the applicability of the Indian Mineral Leasing Act and the regulations implementing the Act - - 25 C.F.R. Part 212 - - to the subject Lease.

c. Intervenors: Intervenors concur with the position of the United States stated above.

**F. Oil and Gas Field Matters**

15. Oil properties which make up the Niakuk Participation Area (P.A.) were originally leased from the State of Alaska by BP's predecessor.

a. Plaintiffs: Undisputed.

b. United States: Undisputed. However, these oil properties were not part of the Niakuk P.A. as of January 1, 1989 when the subject Lease became effective. The Niakuk P.A. was created subsequently.

c. Intervenors: Intervenors concur with the position of the United States stated above. In addition, Intervenors advise the court that they are working at this time to accumulate and organize (for submission to the court as soon as possible in the form of a supplemental Appendix hereto) the key documents and decisions respecting the ownership history, unitization history, and production history of all lands and leases involved herein. Intervenors reserve the right to submit such an Appendix as soon as the relevant documents and decisions have been accumulated and organized. Almost all documents and decisions that will be included in this supplemental Appendix already are part of the public record but are contained in over 40 years' worth of files or records maintained by various agencies.

16. Oil properties which make up the West Niakuk P.A. were originally leased from the State of Alaska by predecessors of Exxon and ConocoPhillips.

a. Plaintiffs: Undisputed.

b. United States: Undisputed.

c. Intervenors: Intervenors concur with the position of the United States stated above. In addition, Intervenors advise the court that they are working at this time to accumulate and organize (for submission to the court as soon as possible in the form of a supplemental Appendix hereto) the key documents and decisions respecting the ownership history, unitization history, and production history of all lands and leases involved herein. Intervenors reserve the right to

submit such an Appendix as soon as the relevant documents and decisions have been accumulated and organized. Almost all documents and decisions that will be included in this supplemental Appendix already are part of the public record but are contained in over 40 years' worth of files or records maintained by various agencies.

17. Allotment F-14632 Parcel B is not in either the Niakuk P.A. or the West Niakuk P.A.

a. Plaintiffs: Undisputed.

b. United States: Undisputed.

c. Intervenors: Undisputed.

18. To the extent Intervenors have acquired the interests in oil and gas production reserved by the United States in Native Allotment F-14632 Parcel B Lot 1, those Intervenors acquired only the right to produce oil or gas "in the land so allotted" upon certain conditions, but have no right to produce through the Native Allotment oil and gas in lands other than the Allotment, such as from the Niakuk P.A. or West Niakuk P.A., other than as allowed by the Lease, as amended, upon full payment of rent and/or royalty as required by federal law.

a. Plaintiffs: Undisputed.

b. United States: Disputed. This assertion amounts to a legal, and not a factual, assertion and should be omitted. We reject the proposition that the parties to the Lease agreed that the only leased oil tracts with respect to which the subject allotment could be utilized were those leased oil tracts held by Standard Alaska Production Company as of the effective date of the Lease.

c. Intervenors: Intervenors concur with the position of the United States stated above. In addition, Intervenors contend that the full scope of the reservations, exceptions, exclusions, and

limitations made or imposed pursuant to the Act of March 8, 1922 (as made applicable much later to Native allotments) upon the estate granted to Andrew Oenga pursuant to the Native Allotment Act of 1906 might have made it unnecessary for Intervenor BP Exploration (Alaska) Inc. ("BP") to obtain BIA Lease No. F89-01 at all in order to conduct its activities. BP nevertheless sought and received the leasehold granted by BIA Lease No. F89-01, and said leasehold includes all of the rights that BP and the other Intervenors needed and need to conduct their activities (insofar as they did not already have such rights).

19. In early July 1993, ARCO approached the United States or its agent seeking to lease a portion of Allotment F-14632 Parcel B. The United States or its agent informed ARCO that the Allotment was subject to an option held by BP, but made no effort to seek the release of BP's option either at the time of approving the 1993 Letter/Amendment the next month, or at the time of the 1994 Lease Amendment.

a. Plaintiffs: Undisputed.

b. United States: Disputed. Defendant objects to the implication in this paragraph that the government had a legal obligation or practical ability to deprive BP of its unilateral option under paragraph 11 of the 1989 lease to rent all of Parcel B. Also, as a factual matter, the BIA contacted BP and discovered that the part of the subject allotment which ARCO desired to lease would not be available because BP planned to expand the leased area beyond the ten acres initially covered by the Lease.

c. Intervenors: Intervenors concur with the position of the United States stated above.

20. In 1994, BP entered into a Facility Access Agreement with the ARCO Alaska Inc., predecessor in interest of Intervenor ConocoPhillips Alaska Inc. (ConocoPhillips), Exxon Mobil

Corporation, predecessor in interest of Intervenor Exxon Mobil Alaska Production Inc. (Exxon), which jointly hold the state oil leases known as West Niakuk P.A. This Agreement authorized oil from the West Niakuk P.A. to be produced through BP's facility on Native Allotment F-14632 Parcel B Lot 1.

a. Plaintiffs: Undisputed.

b. United States: [We need a copy of this Agreement before we can respond]

c. Intervenors: Intervenors advise the court that they are working at this time to accumulate and organize (for submission to the court as soon as possible in the form of a supplemental Appendix hereto) the key documents and decisions (including the Facilities Access Agreement referred above) respecting the ownership history, unitization history, and production history of all lands and leases involved here in. (Meanwhile, Intervenors advise the court that Conoco Phillips Alaska, Inc. is not a "successor - in - interest" to ARCO Alaska, Inc. but instead is the same corporation: ARCO Alaska, Inc. changed its name to PHILLIPS Alaska, Inc. and then to ConocoPhillips Alaska, Inc). Intervenors reserve the right to submit such an Appendix as soon as the relevant documents and decisions have been accumulated and organized. Almost all documents and decisions that will be included in this supplemental Appendix already are part of the public record but are contained in over 40 years' worth of files or records generated or maintained by various agencies.

21. Neither the United States nor the Plaintiffs were given written notice of this proposed "unitizing" of the Prudhoe Bay Unit, nor did they give their consent to it.

a. Plaintiffs: Undisputed.

b. United States: Undisputed. The government objects to the implication that BP had a

legal duty to give the Plaintiffs and the United States notice of the Facilities Access Agreement and the implication that there was a legal requirement that the Plaintiffs and the government must give their assent to the Agreement.

c. Intervenors: Intervenors concur with the position of the Untied States stated above. In addition, Intervenors contend that BIA Lease No. F89-01, as amended, expressly authorized BP to enter into the Facilities Access Agreement.

22. All or nearly all of the oil produced from the Niakuk P.A. and the West Niakuk P.A. during the period 1994-2001 inclusive has been produced through BP's facilities on Heald Point, the Point on which Allotment F-14632, Parcel B, is located.

a. Plaintiffs: Undisputed.

b. United States: [We need to have plaintiffs provide us with a copy of all documentation which supports this assertion before we respond.]

c. Intervenors: Disputed. Not all of the lands at Heald Point from which wells for Niakuk or West Niakuk have been drilled are included within the boundaries of Allotment F-14632, Parcel B. In addition, Intervenors are seeking to retrieve production records for all relevant wells so as to determine whether any production from Niakuk or West Niakuk was realized through wells situated other than on Heald Point.

23. The Niakuk P.A. and West Niakuk P.A. have now been "unitized" as part of the Prudhoe Bay Unit, with Intervenors sharing in value of all production from all P.A.s in the Prudhoe Bay Unit at varying percentages, with BP being the Unit Operator.

a. Plaintiffs: Undisputed.

b. United States: [We need a copy of the supporting documentation before we respond].

c. Intervenors: Disputed in part. BP is the current Unit Operator for the entire Prudhoe Bay Unit, and Intervenors now own varying percentages in all of the leases within the Prudhoe Bay Unit and thus share in production from all participating areas within the Prudhoe Bay Unit. Other express or implied statements are disputed, however. Intervenors advise the court that they are working at this time to accumulate and organize (for submission to the court as soon as possible in the form of a supplemental Appendix hereto) the key documents and decisions (including the Facilities Access Agreement referred above) respecting the ownership history, unitization history, and production history or all lands and leases involved herein. Intervenors reserve the right to submit such an Appendix as soon as the relevant documents and decision have been accumulated and organized,. Almost all documents and decisions that will be included in this supplemental Appendix already are part of the public record but are contained in over 40 years' worth of files or records generated or maintained by various agencies.

**G. Periodic Lease Review/Appraisals**

24. The United States did not provide to Plaintiffs adequate timely notice, details or copies of the periodic reviews, appraisals conducted and/or details of the "cost adjustment factor" all used to calculate the rent due under BIA Lease F89-01 for the periods 1994-1997 inclusive and 1998-2001 inclusive.

a. Plaintiffs: Undisputed.

b. United States: Disputed. Plaintiffs were fully informed and agreed to the rental adjustment for the 1994-1997 period which resulted in a new annual rental of $80,640.

c. Intervenors: Intervenors concur with the position of the United States stated above.

25. From the time Native Allotment F-14632 Parcel B began being used to produce oil and

gas from lands other than the Allotment, the appraisals conducted by or relied upon by the United States in determining rent due on BIA Lease F89-01 as amended for the periods 1994-2001 inclusive were not properly conducted by qualified appraisers under appropriate standards and thus improperly understated the value of the Native Allotment.

a. Plaintiffs: Undisputed.

b. United States: Disputed. Defendant's position is that the referenced appraisals were properly conducted by qualified appraisers. Moreover, these appraisals were consistent with Paragraph No. 5 and 9 of the Lease and the governing appraisal standards. Finally, they did not understate the value of the subject allotment.

c. Intervenors: Intervenors concur with the position of the United States stated above.

26. A proper periodic review or appraisal for determining the proper rent due on the lease of Native Allotment F-14632 Parcel B is required to take into consideration 1) the rent paid for comparable properties which are used for oil and gas production and on which the Lessee has no right to produce the oil and gas but for the Lease, 2) the unique location of the land for production of offshore oil and gas deposits, and 3) the avoided cost of alternative means of such offshore oil and gas production such as an offshore oil rig.

a. Plaintiffs: Undisputed.

b. United States: Disputed. Defendant denies it was required to consider the three factors listed above in doing appraisals. It is part of the appraiser's task to determine the highest and best use of the subject property for appraisal purposes. Moreover, Paragraph Nos. 5 and 9 of the Lease govern these appraisals and the appraisals at issue were consistent with the provisions contained in these paragraphs.

c. Intervenors: Intervenors concur with the position of the United States stated above.

27. The rent due on or value of leases of such lands comparable to Native Allotment F-14632 Parcel B which should have been considered and used to determine the rent due in the periodic review or appraisal includes a 1.6667% royalty on all oil and gas produced through the leased surface estate made as a result of Agreements entered into from 1974 and 1997 between the surface owner and the subsurface owner or lessee of oil and gas rights at the Colville River Unit on the North Slope of Alaska. See Findings of the Director, Alaska Department of Natural Resources, pp. 3-9, Appendix 7.

a. Plaintiffs: Undisputed.

b. United States: [We need plaintiffs to give us a copy of these findings before we can respond.]

c. Intervenors: Disputed. The referenced circumstance does not present a comparable ownership circumstance, is thus distinguishable, and thus is not a proper comparable for appraisal purposes in this case. (Plaintiffs have asked ConocoPhillips Alaska, Inc. to produce all documents relating to this situation. ConocoPhillips Alaska, Inc. is in the process of gathering the relevant documents for production.) Inclusion (originally or at this time) of a percentage overriding royalty as part of the rent payable under BIA Lease No. F89-01 also is inconsistent with the terms of said lease.

28. The rent due on or value of leases of such lands comparable to Native Allotment F-14632 Parcel B which should have been considered and used to determine the rent due in the periodic review or appraisal includes a 2% royalty on all oil and gas produced through the leased surface estate made as a result of Agreements entered into from 1974 and 1997 between the surface

owner and the subsurface owner or lessee of oil and gas rights at the Colville River Unit on the North Slope of Alaska. See Findings of the Director, Alaska Department of Natural Resources, pp. 3-9, Appendix 7.

a. Plaintiffs: Undisputed.

b. United States: See comment of Defendant United States set out under Paragraph No. 27, above.

c. Intervenors: Disputed. The referenced circumstance does not present a comparable ownership circumstance, is thus distinguishable, and thus is not a proper comparable for appraisal purposes in this case. (Plaintiffs have asked ConocoPhillips Alaska, Inc. to produce all documents relating to this situation. ConocoPhillips Alaska, Inc. is in the process of gathering the relevant documents for production.) Inclusion (originally or at this time) of a percentage overriding royalty as part of the rent payable under BIA Lease No. F89-01 also is inconsistent with the terms of said lease.

29. The rent due on or value of leases of such lands comparable to Native Allotment F-14632 Parcel B which should have been considered and used to determine the rent due in the periodic review or appraisal includes a royalty sufficiently larger than the two above royalties also paid to a surface owner in the Colville River Unit which, when averaged with the amount paid with the two above royalties, results in a royalty in excess of 3%.

a. Plaintiffs: Undisputed.

b. United States: See comment of defendant under paragraph No. 27, above.

c. Intervenors: Disputed. The referenced circumstance does not present a comparable ownership circumstance, is thus distinguishable, and thus is not a proper comparable for

appraisal purposes in this case. (Plaintiffs have asked ConocoPhillips Alaska, Inc. to produce all documents relating to this situation. ConocoPhillips Alaska, Inc. is in the process of gathering the relevant documents for production.) Inclusion (originally or at this time) of a percentage overriding royalty as part of the rent payable under BIA Lease No. F89-01 also is inconsistent with the terms of said lease.

30. The rent due on or value of leases of such lands comparable to Native Allotment F-14632 Parcel B which should have been considered and used to determine the rent due in the periodic review or appraisal includes a 2 ½% royalty paid to the surface owner in a similar situation in Utah. See Flying Diamond Oil Corp. v. Newton Sheep Company, 776 P.2d 618, 629 (Utah 1989).

a. Plaintiffs: Undisputed.

b. United States: See United States' comment under Paragraph No. 27, above.

c. Intervenors: See Intervenors' position under Paragraph No. 29, above.

31. The rent due on or value of leases of such lands comparable to Native Allotment F-14632 Parcel B which should have been considered and used to determine the rent due in the periodic review or appraisal includes a 4% royalty paid to the surface owner in a similar situation in Michigan. See In re Newstar Energy of Texas, 280 BR 623, 625 (Bkr. WD Mich. 2002).

a. Plaintiffs: Undisputed.

b. United States: Disputed. See Defendant's response to Paragraph No. 27, above.

c. Intervenors: Disputed. The referenced circumstance does not present a comparable ownership circumstance, is thus distinguishable, and thus is not a proper comparable for appraisal purposes in this case. (Plaintiffs have asked ConocoPhillips Alaska, Inc. to produce all

documents relating to this situation. ConocoPhillips Alaska, Inc. is in the process of gathering the relevant documents for production.) Inclusion (originally or at this time) of a percentage overriding royalty as part of the rent payable under BIA Lease No. F89-01 also is inconsistent with the terms of said lease.

32. Neither the Secretary of the Interior, nor his designee, has ever made a determination that it would be in the best interest of the Plaintiffs to receive less than the “present fair annual rental” for the lease of Native Allotment F-14632 Parcel B.

a. Plaintiffs: Undisputed.

b. United States: Undisputed. However, we reject the implication that the Secretary did not attempt to set a "fair annual rental value" for the Plaintiffs as 25 C.F.R. 162.607 requires. Paragraphs 5 and 9 of the Lease embody that requirement.

c. Intervenors: Intervenors concur with the position of the United States stated above.

**H. Plaintiffs’ Demands Of United States**

33. By letter dated November 22, 2005, Plaintiffs formally requested an accounting regarding BIA Lease F89-01 as amended. By letters dated February 8, 2006, March 12, 2006, and May 26, 2006, the United States responded. See Appendix 1A - 1D.

a. Plaintiffs: Undisputed.

b. United States: Undisputed. However, the following sentence should be added: “The United States provided financial information about the Lease to the Plaintiffs, but specifically informed them at that time that it was not providing them with an accounting.”

c. Intervenors: Intervenors concur with the position of the United States stated above.

34. By letter dated December 1, 2005, the Plaintiffs demanded that the United States, through

its Department of the Interior, give Notice of Default, Breach and Failure to Perform or Comply with BIA Lease F89-01, listing specific items of non-compliance, which included BP's failure to make proper and timely lease payments and the use of Allotment F-14632 Parcel B for production of oil from West Niakuk P.A. See Appendix 2. No such demand was made of BP by or on behalf of the United States.

a. Plaintiffs: Undisputed.

b. United States: [We need a copy of Appendix 2] The government did not give such a notice because it did not believe such a demand was legally supportable. This was because the government did not agree that any Lease violation had occurred. Moreover, nothing prevented or prevents plaintiffs from giving their own notice of alleged trespass, or filing an independent action directly against the alleged trespassers.

c. Intervenors: Intervenors concur with the position of the United States stated above.

35. By letter dated December 23, 2005, Plaintiffs demanded that the United States give "Notice to Halt Trespass" to Intervenors and others regarding the production of oil from West Niakuk P.A. through Native Allotment F-14632 Parcel B. See Appendix 3. No such notice was given by or on behalf of the United States.

a. Plaintiffs: Undisputed.

b. United States: Undisputed, except the government did not give such a notice because it did not conclude that any action not authorized by the Lease had occurred.

c. Intervenors: Intervenors concur with the position of the United States stated above.

36. By letter dated April 19, 2006, Plaintiffs gave notice to the United States through the Department of the Interior that an action for damages would be filed against the United States if

this matter could not be resolved. See Appendix 4. No settlement proposals were made by the United States or others and this action was filed.

a. Plaintiffs: Undisputed.

b. United States: Undisputed.

c. Intervenors: Intervenors concur with the position of the United States stated above.

**I. Applicable Rules Of Construction**

37. Federal statutes and regulations adopted for the benefit of Indian Tribes, Indian people and Alaska Natives are to be liberally construed and any ambiguities are to be interpreted and construed to their benefit.

a. Plaintiffs: Undisputed.

b. United States: Disputed. Where federal statutes and regulations adopted for the benefit of Indian tribes and Alaska Natives are ambiguous (that is, susceptible to more than one reasonable interpretation), any ambiguity is to be resolved in favor of the Indian tribes and Alaska Natives. Where there is no ambiguity, the "plain meaning" rule controls the interpretation.

c. Intervenors: Intervenors concur with the position of the United States stated above, except that Intervenors contend that the Native Allotment Act of 1906 (as extended so as to apply to lands valuable for coal, oil, or gas that originally were unavailable for entry under said Act) is a regular public land law and that any ambiguous reservations, exceptions, exclusion, and limitations included in conveyances made pursuant thereto are to be construed in favor of the United States.

38. Treaties, agreements and contracts with Indian Tribes, Indian people and Alaska Natives are to be construed to their benefit as they would have understood them.

a. Plaintiffs: Undisputed.

b. United States: Disputed. The government objects to the reference to contracts; the "Indian canon" of construction applicable to Indian treaties and statutes does not apply to contracts.

c. Intervenors: Intervenors concur with the position of the United States stated above, except that Intervenors contend that the Native Allotment Act of 1906 (as extended so as to apply to lands valuable for coal, oil, or gas that originally were unavailable for entry under said Act) is a regular public land law and that any ambiguous reservations, exceptions, exclusion, and limitations included in conveyances made pursuant thereto are to be construed in favor of the United States.

39. Deleted by Plaintiffs.

40. Agreements and contracts are to be construed against the drafter.

a. Plaintiffs: Undisputed.

b. United States: [Please provide us with supporting caselaw]

c. Intervenors: See Intervenors' position under Paragraph No. 39 above.

**J. Claim I – 25 CFR Part 212**

41. As alleged in Claim One, 25 CFR Part 212, and particularly 25 CFR 212.41, is applicable to the lease of Native Allotment F-14632 Parcel B and governs the collection of rent or royalties from 1994-2001 inclusive regarding oil and gas produced through it.

a. Plaintiffs: Undisputed.

b. United States: Disputed. Plaintiffs contention that 25 C.F.R. Part 212 and 25 C.F.R. § 212.41 are applicable is incorrect because neither Andrew Oenga nor the plaintiffs are "Indian mineral owners" within the meaning of Part 212. See 25 C.F.R. § 212.3 for the definition of "Indian mineral owner."

c. Intervenors: Intervenors concur with the position of the United States stated above.

42. From the time Native Allotment F-14632 Parcel B Lot 1 began being used to produce oil and gas from lands other than the Allotment, the Plaintiffs or their predecessors as title holders of the Native Allotment have been properly considered to be Indian mineral owners within the meaning of 25 CFR Part 212.

a. Plaintiffs: Undisputed.

b. United States: Disputed. See government's response to Paragraph No. 41, above.

c. Intervenors: Intervenors concur with the position of the United States stated above.

43. Under 25 CFR 212.41(b) in effect since March 22, 2001, the proper rent or royalty to be collected for the lease of Native Allotment F-14632 Parcel B has been a 4 1/6 percent royalty calculated by deducting from the 16 2/3 percent royalty of the regulation the 12 ½ percent royalty paid to the State of Alaska for the lease of the oil and gas property containing the oil and gas produced through the Native Allotment.

a. Plaintiffs: Undisputed.

b. United States: Disputed. Section 212.41 of 25 C.F.R. Part 212 does not apply to the subject lease because the Plaintiffs are not "Indian mineral owners." In addition, this contention is contrary to Paragraph 9 of the Lease.

c. Intervenors: Intervenors concur with the position of the United States stated above.

44. Under 25 CFR 212.41(b) in effect prior to March 22, 2001, the proper rent or royalty to be collected for the lease of Native Allotment F-14632 Parcel B is 4 1/6 percent royalty.

a. Plaintiffs: Undisputed.

b. United States: Disputed. See the government's response to Paragraph No. 43, above.

c. Intervenors: Intervenors concur with the position of the United States stated above.

45. The United States has breached its duty of trust or fiduciary obligation owed Plaintiffs regarding Native Allotment F-14632 Parcel B by failing to collect a 4 1/6 percent royalty on the value of all oil and gas produced through facilities constructed on the Native Allotment.

a. Plaintiffs: Undisputed.

b. United States: Disputed. Defendant has not breached the alleged trust or fiduciary obligation to Plaintiffs by failing to collect the 4 1/6 percent royalty because no such obligation exists; 25 C.F.R. Part 212 imposes no such obligation on the government with respect to plaintiffs because they are not "Indian mineral owners" under § 212.3. Also, this assertion is contrary to Paragraph 9 of the Lease.

c. Intervenors: Intervenors concur with the position of the United States stated above.

46. The measure of damages owed Plaintiffs by the United States under Claim One is a 4 1/6 percent royalty on the value of all oil and gas produced through facilities on Plaintiffs' Native Allotment, less amounts previously collected as rent for Plaintiffs by the United States.

a. Plaintiffs: Undisputed.

b. United States: Disputed. A measure of damages based upon a 4 1/6 royalty is not owed to Plaintiffs. Not only are Plaintiffs not "Indian mineral owners", but such a measure of damages would violate Paragraph No. 9 of the Lease.

c. Intervenors: Intervenors concur with the position of the United States stated above.

**K. Claim II – 25 CFR Part 162, Lease**

47. As alternatively alleged in Claim II, 25 CFR Part 162, and particularly 25 CFR Part 162.604, governs the collection of rents regarding Native Allotment F-14632 Parcel B and requires the collection of "present fair annual rental."

a. Plaintiffs: Undisputed.

b. United States: Undisputed, except to point out that both Paragraph Nos. 5 and 9 specify that the rental rate shall be a "fair market rental rate," not merely a "fair annual rental."

c. Intervenors: Undisputed.

48. Under 25 CFR Part 162, the proper rent to be collected by the United States for Plaintiffs regarding the lease of Native Allotment F-14632 Parcel B from 1994-2001 inclusive as the "fair annual rental" is a royalty of 2 percent to 4 percent of the oil and gas produced through the Allotment.

a. Plaintiffs: Undisputed.

b. United States: Disputed. Section 162.604 does not require that the government collect the "fair annual rental" value of the subject allotment in the form of a royalty. Indeed, to do so would violate Paragraph No. 9 of the subject lease.

c. Intervenors: Intervenors concur with the position of the United States stated above.

49. The United States has breached its duty of trust or fiduciary obligation owed Plaintiffs regarding Native Allotment F-14632 Parcel B by failing to collect as rent on the lease of Native Allotment F-14632 Parcel B from 1994-2001 inclusive an amount equal to a 2 percent to 4

percent royalty of the oil and gas produced through the Allotment as the “fair annual rental.” 25 CFR 162.604. Finally,

a. Plaintiffs: Undisputed.

b. United States: Disputed. Section 162.604 does not impose an obligation on the government to collect the "fair annual rental" on the subject allotment in an amount equal to a 2 to 4 percent royalty. This assertion is contrary to Paragraph 9 of the Lease. In addition, we stress that Paragraph No. 5 of the 1989 Lease limited any rental adjustments to not "more than 50% in any single five (5) year period."

c. Intervenors: Intervenors concur with the position of the United States stated above.

50. The measure of damages owed Plaintiffs by the United States under Claim II is an amount equal to a 2 percent to 4 percent royalty of all oil and gas produced through facilities on Plaintiffs’ Native Allotment, less the amount previously collected as rent for Plaintiffs by the United States.

a. Plaintiffs: Undisputed.

b. United States: Disputed. The alleged measure of damages has no legal basis because Section 162.604 does not require the payment of a royalty, and such a requirement is also contrary to Paragraph 9 of the Lease.

c. Intervenors: Intervenors concur with the position of the United States stated above.

**L. Claim III – West Niakuk**

51. The Facility Access Agreement regarding the production of oil from West Niakuk P.A. through the Native Allotment F-14632 Parcel B Lot 1 was not signed by or provided to the Plaintiffs or the United States or its contractors. It is not authorized by and is contrary to ¶ 13 of

BIA Lease F89-01, as amended, and contrary to 25 CFR Part 162, and specifically 25 CFR 162.101 and 162.610.

a. Plaintiffs: Undisputed.

b. United States: Disputed. The original Lease allowed subleases without requiring any approvals. The 1994 amendment of Paragraph No. 13 of BIA Lease F89-01 provided that use of the subject allotment by a third party did not amount to a "sublease." Paragraph 13 refers only to subleases; the Facilities Access [or Sharing] Agreement is not a "sublease" and does not violate Paragraph 13. In addition, the Agreement is not a violation of Section 162.610. Finally, the Secretary of the Interior approved the 1994 amendment which had been negotiated by BP and the Plaintiffs.

c. Intervenors: Intervenors concur with the position of the United States stated above.

52. The Facility Sharing Agreement constitutes a breach of BIA Lease F-89-01 ¶ 13, as amended, and/or a violation of 25 CFR 162.610.

a. Plaintiffs: Undisputed.

b. United States: Disputed. The Facilities Access Agreement is neither a breach of Paragraph No. 13 of the Lease, as amended, nor a violation of 25 C.F.R. §162.610.

c. Intervenors: Intervenors concur with the position of the United States stated above.

53. The production of oil and gas from West Niakuk P.A. leases through facilities on Native Allotment F-14632 Parcel B constitutes a trespass.

a. Plaintiffs: Undisputed.

b. United States: Disputed. The production of oil and gas from West Niakuk P.A. leases did not constitute a "trespass" on the subject allotment because the use of the allotment as a "drill pad" or "oil production facility" was authorized by Paragraph No. 10 of the Lease.

c. Intervenors: Intervenors concur with the position of the United States stated above.

54. The United States' lack of action to halt this trespass constitutes a breach of the trust duty and fiduciary obligations owed Plaintiffs regarding Native Allotment F-14632 Parcel B.

a. Plaintiffs: Undisputed.

b. United States: Disputed. The government did not breach any trust or fiduciary obligation by not halting the alleged "trespass" because the production of oil from the West Niakuk P.A. was not a violation of the Lease and, therefore, did not constitute a trespass. In any event, the government's failure to take legal action against the oil companies which were parties to the Facilities Access [or Sharing] Agreement did not amount to a breach of trust. United States v. Creek Nation, 318 U.S. 629, 639 (1943) (held that the failure of the government to bring suit against non-Indian third parties which had trespassed upon the Creek Reservation did not amount to a breach of trust even though there was a treaty provision authorizing the Secretary of Interior to bring suits against trespassers). Finally, the Plaintiffs had, and continue to have, the legal capacity to sue BP and the other oil companies, on their own behalf, for the alleged trespass.

c. Intervenors: Intervenors concur with the position of the United States stated above.

55. The measure of damages owed Plaintiffs by the United States regarding the production of oil and gas from West Niakuk leases through facilities on Native Allotment F-14632 Parcel B is

as set out above under Claim I or Claim II but based on the production of oil or gas from West Niakuk leases through the facilities on the Allotment.

a. Plaintiffs: Undisputed.

b. United States: Disputed. The government denies liability on Claim Three, but, in any event, the measure of damages owed the Plaintiffs would not be a royalty of 2 ½ to 4 1/6 percent on the production of oil or gas from the West Niakuk leases using the oil production facilities on the subject allotment for the reasons given above under paragraph Nos. 48 through 50.

c. Intervenors: Intervenors concur with the position of the United States stated above.

**M. Interest**

56. Plaintiffs are entitled to an award of interest on any and all amounts found to be due Plaintiffs by the United States regarding rents or royalties that should have been, but were not, collected for Plaintiffs by the United States from BP or other Intervenors in this matter.

a. Plaintiffs: Undisputed.

b. United States: Disputed. Paragraph 7 of the Lease only authorizes interest when the lessee makes untimely rental payments.

c. Intervenors: Intervenors concur with the position of the United States stated above.

57. The proper amount of interest due on amounts found to be due Plaintiffs by the United States is the 18 percent compounded annually as set out in Lease F-89-01 ¶ 7.

a. Plaintiffs: Undisputed.

b. United States: Disputed. The United States is not liable for the payment of compound interest unless Congress has expressly waived the government's sovereign immunity against suits

for the recovery of compound interest. See United States v. Mescalero Apache Tribe, et al., 207 Ct. Cl 369, 404 - 409, 518 F.2d 1309, 1331 - 1334 (1975), cert. denied, 425 U.S. 911 (1976).

c. Intervenors: Intervenors concur with the position of the United States stated above.

**LIKELIHOOD OF SETTLEMENT/ALTERNATIVE DISPUTE RESOLUTION – SPO ¶ 6(d) modifying App. A, III, ¶ 4(I).**

Plaintiffs: This case presents unique opportunities and obstacles regarding settlement. The appointment of a "Settlement Judge" under Appendix H ¶ 2(a) and SPO 6(d)(i)(1) could significantly aid the possibility of early settlement. This would be of particular value if the Settlement Judge acted "both as a mediator and as a neutral evaluator" as contemplated by Appendix H ¶ 2(a). The unique opportunities for settlement arise from several factors. First, this is a dispute involving three parties (Plaintiffs, United States, Intervenors). Second, the same basic dispute over rent and interest due from 1994-2001 which underlies this case also lies at the core of the related disputes 1) currently before the Interior Board of Indian Appeals case (2002-2005); b) for the present period (2006-2009) for which the United States is having a new appraisal conducted which will likely be challenged by either Plaintiffs or Intervenors or both; and c) for the future. Third, it appears that royalties or overriding royalties of 1 %, 1.667 % and 2% are being paid by one of the Intervenors for a comparable use of surface rights at the Colville River Unit 75 miles to the west. See Appendix 7, pp. 3-9, and its attachment 1, pp. 1, 4 and 5. Fourth, additional litigation will surely be filed in this, and/or other Federal Courts if all aspects of this matter are not resolved. Fifth, both the United States and the Intervenors have potential exposure if this matter is not resolved. Conversely, the procedural issues raised by the United States and Intervenors add uncertainty to Plaintiffs' position. All of this may actually benefit settlement. If

ADR is ordered, it is suggested that a May 31, 2007 deadline for settlement be imposed so that the case can be promptly litigated if settlement is not possible. It is premature to assess the potential for settlement, however, the positions taken here by the United States and Intervenors are not encouraging as to the potential for settlement.

United States: Disputed. The most efficient way for the case to proceed is to for the court to set a deadline for the filing of dispositive motions and establish a schedule for the filing of the response and reply briefs. The court should rule on these motions before setting any pretrial/trial schedule or taking any other steps. Depending upon the court's rulings, the parties could then confer with one another to decide whether to request trial on any remaining claims or to then seek the appointment of a Settlement Judge and pursue an ADR process to resolve this lawsuit. This approach would lead to the most efficient use of the court's limited resources and the parties' resources.

Intervenors: Intervenors concur with the position of the United States stated above.

**JOINT PROPOSED SCHEDULING PLAN – SPO ¶ 6(e) superceding App. A, III, ¶ 4(j) ¶5.**

(i) Trial - The requested place of trial is Washington, D.C., unless the Court would rather try the matter in Anchorage, Alaska. The duration should be 5-7 trial days in total, unless issues are narrowed through motion practice or factual issues resolved through discovery or stipulation. At this juncture it appears the earliest the case should be ready for trial would be June 1, 2008, or 60 days after the ruling on final dispositive motions, whichever is later.

a. Plaintiffs: Acceptable.

b. United States: Unacceptable in part. While the government generally agrees with the estimated duration of the trial, the date for trial to begin, and that the place of trial be Anchorage,

the United States requests that the court not set a pretrial/trial schedule yet but instead first order the filing of dispositive motions and set a deadline for the filing of said motions and a briefing schedule.

c. Intervenors: Intervenors concur with the position of the United States stated above.

(ii) Dispositive Motions – Plaintiffs intend to file a motion for partial summary judgment soon after the Status Conference and the receipt of appropriate discovery responses. The motions will likely be filed in April 2007, depending on the discovery responses. These include 1) Claim I – 25 CFR Part 212 is applicable in this situation and the appropriate method of calculating the amount of rent that should have been collected by the United States is a royalty based on the difference between the 16 2/3 % royalty in 25 CFR 212.41 and the 12 1/2 % royalty paid the State for the oil leases; 2) Claim II – the periodic review of the "fair annual rental" due for the periods 1994-1997 inclusive and 1998-2001 inclusive under 25 CFR 162.607 and the rent adjustment appraisals of BIA Lease F89-01 were not based on appropriate considerations and the amount of rent that should have been collected by the United States is an amount equal to a 2% to 4% royalty based on the value of oil and gas produced through BP's facilities on Native Allotment F-14632 Parcel B; and 3) Claim III – the production of oil from the West Niakuk P.A. through the BP facilities on Native Allotment F-14632 Parcel B is not authorized by lease, constitutes a trespass, and the proper measure of damages for the United States' failure to halt the trespass and collect and pay to Plaintiffs damages from the trespass is the rent or royalty on the volume of such West Niakuk oil and gas calculated as set out in Claim I or Claim II.

Expert discovery is not currently expected to be necessary prior to these motions.

a. Plaintiffs: Acceptable.

b. United States: Unacceptable. Defendant believes the dispositive motions can be filed without first having discovery. If the court agrees with plaintiffs, then an April, 2007 date for filing of dispositive motions is too early; in that event, the parties should be given until June 30, 2007, to file their motions. Furthermore, whether or not discovery is scheduled to take place before the motions are due to be filed, the Plaintiffs should be required to file their motion first. The government's motion should be due for filing no sooner than 60 days after the Plaintiffs' motion is filed. Again, dispositive motions should be ruled upon before further proceedings are scheduled. We do not necessarily agree with the way plaintiffs have characterized their three claims. Finally, we agree that expert discovery may not be necessary prior to the filing of the dispositive motions.

c. Intervenors: Intervenors concur with the position of the United States stated above. In addition, Intervenors should be required to file dispositive motion in accordance with the same schedule established for the filing of such motions by the United States.

(iii) Phasing – Liability matters will likely dominate the early stages of the case, but there is no advantage in delaying or phasing discovery or motion practice on damages. Doing so would only delay ultimate resolution.

a. Plaintiffs: Acceptable.

b. United States: Unacceptable. Since the plaintiffs have advanced a different liability theory for each of their three claims, liability issues should be resolved first. Therefore, the issues of liability and damages should be bifurcated.

c. Intervenors: Intervenors concur with the position of the United States stated above.

(iv) Fact Discovery - Completed by July 1, 2007. No discovery of classified material will be

involved, although some parties may consider discovered material to be proprietary.

a. Plaintiffs: Acceptable.

b. United States: If fact discovery is allowed to proceed before the filing of the dispositive motions, then Defendant agrees with a July 1, 2007 date.

c. Intervenors: Intervenors concur with the position of the United States stated above.

(v) Expert Witness Disclosure and Reports - Simultaneous initial disclosure of experts by July 1, 2007. Simultaneous disclosure of rebuttal experts by August 1, 2007.

a. Plaintiffs: Acceptable.

b. United States: Unacceptable. If discovery is to proceed before the filing of dispositive motions, the government will not be able to conduct discovery and do the extensive briefing envisioned and at the same time find and retain expert witnesses by June 1, 2007. Also, the Department of Justice is on a continuing budget resolution for Fiscal Year 2007, and, as a result, there is great uncertainty as to how much funding for expert witnesses the Environment & Natural Resources Division will have available in Fiscal Year 2007.

c. Intervenors: Intervenors concur with the position of the United States stated above.

(vi) Expert Discovery – Expert reports simultaneously filed by September 1, 2007. Rebuttal expert reports simultaneously filed by October 1, 2007. Expert discovery, including depositions, completed by November 15, 2007.

a. Plaintiffs: Acceptable.

b. United States: Unacceptable. Counsel for the government is adamantly opposed to the simultaneous exchange of expert reports and rebuttal expert reports. Based upon his many years of experience in litigating suits involving alleged mismanagement of trust property and

resources, counsel is convinced that the simultaneous exchange of expert reports strongly prejudices the government's opportunity to prepare its defense, because it is not until the receipt of an Indian plaintiff's expert reports that the government first obtains detailed information about the plaintiff's claims sufficient to enable the defendant's experts to have a fair/adequate opportunity to respond to these claims. Therefore, there should be staggered submission of both initial and rebuttal expert reports.

c. Intervenors: Intervenors concur with the position of the United States stated above.

(vii) Presumptive Discovery Limits – No present reason to vary from presumptive limits.

a. Plaintiffs and United States: Acceptable.

(viii) Physical or Mental Examinations – N/A.

a. Plaintiffs and United States: Acceptable.

(x) Other Matters – All dispositive motions filed by January 15, 2008, with 30 days to respond and 15 days to reply.

a. Plaintiffs: Acceptable.

b. United States: Unacceptable. The United States requests that it be given 60 days after trial is over (assuming a trial will be necessary) in which to file its post-trial brief (including any further dispositive motion). In addition, there should be staggered submission of post-trial briefs.

c. Intervenors: Intervenors concur with the position of the United States stated above.

**SPECIAL ISSUES REGARDING ELECTRONIC CASE MANAGEMENT NEEDS – App. A, III, ¶ 4(k).**

Plaintiffs, United States, Intervenors: The parties agree there are no special issues regarding electronic case management.

**OTHER INFORMATION/MEETING/INITIAL DISCLOSURES – SPO ¶ 6(f) modifying App. A, III, ¶**

**4(l).**

Plaintiffs, United States, Intervenors: The parties know of no other information of which the court should be made aware. Counsel for Plaintiffs, the United States and Intervenors met by telephone on January 26, 2007, as required by Appendix A paragraph 3. As to initial disclosures, the United States has already provided extensive material to Plaintiffs that would normally be provided at the initial disclosure stage. This same information will be provided by the United States to Intervenors. Because of this, the nature of the case, and the ability to use selected discovery for any additional necessary discovery, the parties propose that further initial disclosures be waived.

**PRELIMINARY STATUS CONFERENCE DATES – SPO ¶ 6(g) modifying App. A, IV, ¶7.**

Plaintiffs, United States, Intervenors: Due to location of counsel and the Court in different time zones, alternative dates that are mutually agreeable for a status conference are:

March 9, 13, or 15, 2007 – any time between 1:00 p.m. to 5:00 p.m. (EST).

The United States and the Invervenors reserve the right to revise/supplement this JPSR once factual (not expert witness) discovery by all parties has been completed and the Intervenors have finished gathering and organizing the documents which they wish to submit to the Court by way of a supplemental Appendix.

**APPENDIX – SPO ¶ 7.**

Plaintiffs: The contracts (Leases) relevant to this case were attached to the Original Complaint as Attachments A-D. An initial estimated damages computation was attached to the Original Complaint as Attachment E, and a revised statement is attached as Appendix 8. The various appraisals relevant to Claim Two are voluminous and not attached.

The documents in the Appendix are:

A. Contracts, Correspondence, Damage Calculations

- BIA Lease F89-01, as amended, attached to original Complaint, Docket 1.

- Plaintiffs' request for accounting and US' responses, Appendix 1A through 1D.

- Plaintiffs' request that Notice of Default, Breach and Failure to Perform or Comply be given to BP Exploration (Alaska) Inc, Appendix 2.

- Plaintiffs' request for Notice to Halt Trespass and US' notice provided to BP, Appendix 3.

- Plaintiffs' Notice of Intent to Sue, Appendix 4.

- Certificate of Allotment, Parcel B Lot 1, Appendix 5.

- Tolling Agreement, Appendix 6.

- Plaintiffs' estimated damage calculations. Attached as Appendix 8.

- Findings of the Director re Application for the Third Expansion of the Unit Area, Colville River Unit, Alaska Department of Natural Resources, Appendix 7 (highlighted material at pp. 3-9, and its attachment 1, pp 1, 4, 5).

B. Relevant statutes and regulations [Not presently attached because readily accessible to Court within meaning of Paragraph 7 of Special Procedures Order].

- Claims I and III statutes and regulations

- Claim II statutes and regulations

Dated this 21st day of February, 2007.

s/Raymond C. Givens
RAYMOND C. GIVENS
Givens Law Firm
P.O. Box 400
912 E. Sherman Ave.
Coeur d'Alene, Idaho 83816-0400
Tel. (208) 676-1310
Fax: (208) 676-1296
E-mail: raygivens@givenslaw.com
Attorney for Plaintiffs

s/James M. Upton
JAMES M. UPTON
U. S. Department of Justice
Environment & Natural Resources Div.
Natural Resources Section
P. O. Box 663
Washington, D.C. 20044-0663
Tel. (202) 305-0482
Fax: (202) 305-0506
E-mail: james.upton@usdoj.gov
Attorney for Defendant

s/ Joseph J. Perkins, Jr.
JOSEPH J. PERKINS, Jr.
Guess & Rudd P.C.
510 L Street, Suite 700
Anchorage, AK 99501
907.793.2200 (switchboard)
907.793.2263 (direct dial/voice mail)
907.793.2299 (fax)
907.227.3853 (cell/voice mail)
E-mail: jperkins@guessrudd.com