**Effective: [See Text Amendments]**

United States Code Annotated Currentness
Title 30. Mineral Lands and Mining
→ Chapter 29. Oil and Gas Royalty Management

**§ 1701. Congressional statement of findings and purposes**

(a) Congress finds that--

(1) the Secretary of the Interior should enforce effectively and uniformly existing regulations under the mineral leasing laws providing for the inspection of production activities on lease sites on Federal and Indian lands;

(2) the system of accounting with respect to royalties and other payments due and owing on oil and gas produced from such lease sites is archaic and inadequate;

(3) it is essential that the Secretary initiate procedures to improve methods of accounting for such royalties and payments and to provide for routine inspection of activities related to the production of oil and gas on such lease sites; and

(4) the Secretary should aggressively carry out his trust responsibility in the administration of Indian oil and gas.

(b) It is the purpose of this chapter--

(1) to clarify, reaffirm, expand, and define the responsibilities and obligations of lessees, operators, and other persons involved in transportation or sale of oil and gas from the Federal and Indian lands and the Outer Continental Shelf;

(2) to clarify, reaffirm, expand, and define the authorities and responsibilities of the Secretary of the Interior to implement and maintain a royalty management system for oil and gas leases on Federal lands, Indian lands, and the Outer Continental Shelf;

(3) to require the development of enforcement practices that ensure the prompt and proper collection and disbursement of oil and gas revenues owed to the United States and Indian lessors and those inuring to the benefit of States;

(4) to fulfill the trust responsibility of the United States for the administration of Indian oil and gas resources; and

(5) to effectively utilize the capabilities of the States and Indian tribes in developing and maintaining an efficient and effective Federal royalty management system.

**Effective: September 22, 1996**

**§ 1702. Definitions**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

For the purposes of this chapter, the term--

(1) "Federal land" means all land and interests in land owned by the United States which are subject to the mineral leasing laws, including mineral resources or mineral estates reserved to the United States in the conveyance of a surface or nonmineral estate;

(2) "Indian allottee" means any Indian for whom land or an interest in land is held in trust by the United States or who holds title subject to Federal restriction against alienation;

(3) "Indian lands" means any lands or interest in lands of an Indian tribe or an Indian allottee held in trust by the United States or which is subject to Federal restriction against alienation or which is administered by the United States pursuant to section 1613(g) of Title 43, including mineral resources and mineral estates reserved to an Indian tribe or an Indian allottee in the conveyance of a surface or nonmineral estate, except that such term does not include any lands subject to the provisions of section 3 of the Act of June 28, 1906 (34 Stat. 539);

(4) "Indian tribe" means any Indian tribe, band, nation, pueblo, community, rancheria, colony, or other group of Indians, including the Metlakatla Indian Community of Annette Island Reserve, for which any land or interest in land is held by the United States in trust or which is subject to Federal restriction against alienation or which is administered by the United States pursuant to section 1613(g) of Title 43;

(5) "lease" means any contract, profit-share arrangement, joint venture, or other agreement issued or approved by the United States under a mineral leasing law that authorizes exploration for, extraction of, or removal of oil or gas;

(6) "lease site" means any lands or submerged lands, including the surface of a severed mineral estate, on which exploration for, or extraction or removal of, oil or gas is authorized pursuant to a lease;

(7) "lessee" means any person to whom the United States issues an oil and gas lease or any person to whom operating rights in a lease have been assigned;

(8) "mineral leasing law" means any Federal law administered by the Secretary authorizing the disposition under lease of oil or gas;

(9) "oil or gas" means any oil or gas originating from, or allocated to, the Outer Continental Shelf, Federal, or Indian lands;

(10) "Outer Continental Shelf" has the same meaning as provided in the Outer Continental Shelf Lands Act (Public Law 95-372);

(11) "operator" means any person, including a lessee, who has control of, or who manages operations on, an oil and gas lease site on Federal or Indian lands or on the Outer Continental Shelf;

(12) "person" means any individual, firm, corporation, association, partnership, consortium, or joint venture;

(13) "production" means those activities which take place for the removal of oil or gas, including such removal, field operations, transfer of oil or gas off the lease site, operation monitoring, maintenance, and workover drilling;

(14) "royalty" means any payment based on the value or volume of production which is due to the United States or an Indian tribe or an Indian allottee on production of oil or gas from the Outer Continental Shelf, Federal, or Indian lands, or any minimum royalty owed to the United States or an Indian tribe or an Indian allottee under any provision of a lease;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(15) "Secretary" means the Secretary of the Interior or his designee;

(16) "State" means the several States of the Union, the District of Columbia, Puerto Rico, the territories and possessions of the United States, and the Trust Territory of the Pacific Islands;

(17) "adjustment" means an amendment to a previously filed report on an obligation, and any additional payment or credit, if any, applicable thereto, to rectify an underpayment or overpayment on an obligation;

(18) "administrative proceeding" means any Department of the Interior agency process in which a demand, decision or order issued by the Secretary or a delegated State is subject to appeal or has been appealed;

(19) "assessment" means any fee or charge levied or imposed by the Secretary or a delegated State other than--

(A) the principal amount of any royalty, minimum royalty, rental bonus, net profit share or proceed of sale;

(B) any interest; or

(C) any civil or criminal penalty;

(20) "commence" means--

(A) with respect to a judicial proceeding, the service of a complaint, petition, counterclaim, cross claim, or other pleading seeking affirmative relief or seeking credit or recoupment: *Provided,* That if the Secretary commences a judicial proceeding against a designee, the Secretary shall give notice of that commencement to the lessee who designated the designee, but the Secretary is not required to give notice to other lessees who may be liable pursuant to section 1712(a) of this title, for the obligation that is the subject of the judicial proceeding; or

(B) with respect to a demand, the receipt by the Secretary or a delegated State or a lessee or its designee (with written notice to the lessee who designated the designee) of the demand;

(21) "credit" means the application of an overpayment (in whole or in part) against an obligation which has become due to discharge, cancel or reduce the obligation;

(22) "delegated State" means a State which, pursuant to an agreement or agreements under section 1735 of this title, performs authorities, duties, responsibilities, or activities of the Secretary;

(23) "demand" means--

(A) an order to pay issued by the Secretary or the applicable delegated State to a lessee or its designee (with written notice to the lessee who designated the designee) that has a reasonable basis to conclude that the obligation in the amount of the demand is due and owing; or

(B) a separate written request by a lessee or its designee which asserts an obligation due the lessee or its designee that provides a reasonable basis to conclude that the obligation in the amount of the demand is due and owing, but does not mean any royalty or production report, or any information contained therein, required by the Secretary or a delegated State;

(24) "designee" means the person designated by a lessee pursuant to section 1712(a) of this title, with such written designation effective on the date such designation is received by the Secretary and remaining in effect

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

until the Secretary receives notice in writing that the designation is modified or terminated;

(25) "obligation" means--

(A) any duty of the Secretary or, if applicable, a delegated State--

(i) to take oil or gas royalty in kind; or

(ii) to pay, refund, offset, or credit monies including (but not limited to)--

(I) the principal amount of any royalty, minimum royalty, rental, bonus, net profit share or proceed of sale; or

(II) any interest; and

(B) any duty of a lessee or its designee (subject to the provisions of section 1712(a) of this title)--

(i) to deliver oil or gas royalty in kind; or

(ii) to pay, offset or credit monies including (but not limited to)--

(I) the principal amount of any royalty, minimum royalty, rental, bonus, net profit share or proceed of sale;

(II) any interest;

(III) any penalty; or

(IV) any assessment,

which arises from or relates to any lease administered by the Secretary for, or any mineral leasing law related to, the exploration, production and development of oil or gas on Federal lands or the Outer Continental Shelf;

(26) "order to pay" means a written order issued by the Secretary or the applicable delegated State to a lessee or its designee (with notice to the lessee who designated the designee) which--

(A) asserts a specific, definite, and quantified obligation claimed to be due, and

(B) specifically identifies the obligation by lease, production month and monetary amount of such obligation claimed to be due and ordered to be paid, as well as the reason or reasons such obligation is claimed to be due, but such term does not include any other communication or action by or on behalf of the Secretary or a delegated State;

(27) "overpayment" means any payment by a lessee or its designee in excess of an amount legally required to be paid on an obligation and includes the portion of any estimated payment for a production month that is in excess of the royalties due for that month;

(28) "payment" means satisfaction, in whole or in part, of an obligation;

(29) "penalty" means a statutorily authorized civil fine levied or imposed for a violation of this chapter, any

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

mineral leasing law, or a term or provision of a lease administered by the Secretary;

(30) "refund" means the return of an overpayment;

(31) "State concerned" means, with respect to a lease, a State which receives a portion of royalties or other payments under the mineral leasing laws from such lease;

(32) "underpayment" means any payment or nonpayment by a lessee or its designee that is less than the amount legally required to be paid on an obligation; and

(33) "United States" means the United States Government and any department, agency, or instrumentality thereof, the several States, the District of Columbia, and the territories of the United States.

**Effective: [See Text Amendments]**

**Subchapter I. Federal Royalty Management and Enforcement**

**§ 1711. Duties of Secretary**

(a) Establishment of inspection, collection, and accounting and auditing system

The Secretary shall establish a comprehensive inspection, collection and fiscal and production accounting and auditing system to provide the capability to accurately determine oil and gas royalties, interest, fines, penalties, fees, deposits, and other payments owed, and to collect and account for such amounts in a timely manner.

(b) Annual inspection of lease sites; training

The Secretary shall--

(1) establish procedures to ensure that authorized and properly identified representatives of the Secretary will inspect at least once annually each lease site producing or expected to produce significant quantities of oil or gas in any year or which has a history of noncompliance with applicable provisions of law or regulations; and

(2) establish and maintain adequate programs providing for the training of all such authorized representatives in methods and techniques of inspection and accounting that will be used in the implementation of this chapter.

(c) Audit and reconciliation of lease accounts; contracts with certified public accountants; availability of books, accounts, records, etc., necessary for audit

(1) The Secretary shall audit and reconcile, to the extent practicable, all current and past lease accounts for leases of oil or gas and take appropriate actions to make additional collections or refunds as warranted. The Secretary shall conduct audits and reconciliations of lease accounts in conformity with the business practices and recordkeeping systems which were required of the lessee by the Secretary for the period covered by the audit. The Secretary shall give priority to auditing those lease accounts identified by a State or Indian tribe as having significant potential for underpayment. The Secretary may also audit accounts and records of selected lessees and operators.

(2) The Secretary may enter into contracts or other appropriate arrangements with independent certified public

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

accountants to undertake audits of accounts and records of any lessee or operator relating to the lease of oil or gas. Selection of such independent certified public accountants shall be by competitive bidding in accordance with the Federal Property and Administrative Services Act of 1949 (41 U.S.C. 252), except that the Secretary may not enter into a contract or other arrangement with any independent certified public accountant to audit any lessee or operator where such lessee or operator is a primary audit client of such certified public accountant.

(3) All books, accounts, financial records, reports, files, and other papers of the Secretary, or used by the Secretary, which are reasonably necessary to facilitate the audits required under this section shall be made available to any person or governmental entity conducting audits under this chapter.

**Effective: August 13, 1996**

**§ 1712. Duties of lessees, operators, and motor vehicle transporters**

(a) Liability for royalty payments

In order to increase receipts and achieve effective collections of royalty and other payments, a lessee who is required to make any royalty or other payment under a lease or under the mineral leasing laws, shall make such payments in the time and manner as may be specified by the Secretary or the applicable delegated State. A lessee may designate a person to make all or part of the payments due under a lease on the lessee's behalf and shall notify the Secretary or the applicable delegated State in writing of such designation, in which event said designated person may, in its own name, pay, offset or credit monies, make adjustments, request and receive refunds and submit reports with respect to payments required by the lessee. Notwithstanding any other provision of this chapter to the contrary, a designee shall not be liable for any payment obligation under the lease. The person owning operating rights in a lease shall be primarily liable for its pro rata share of payment obligations under the lease. If the person owning the legal record title in a lease is other than the operating rights owner, the person owning the legal record title shall be secondarily liable for its pro rata share of such payment obligations under the lease.

(b) Development of and compliance with site security plan and minimum site security measures by operators; notification to Secretary of well production

An operator shall--

(1) develop and comply with a site security plan designed to protect the oil or gas produced or stored on an onshore lease site from theft, which plan shall conform with such minimum standards as the Secretary may prescribe by rule, taking into account the variety of circumstances at lease sites;

(2) develop and comply with such minimum site security measures as the Secretary deems appropriate to protect oil or gas produced or stored on a lease site or on the Outer Continental Shelf from theft; and

(3) not later than the 5th business day after any well begins production anywhere on a lease site or allocated to a lease site, or resumes production in the case of a well which has been off of production for more than 90 days, notify the Secretary, in the manner prescribed by the Secretary, of the date on which such production has begun or resumed.

(c) Possession of documentation by transporters of oil or gas by motor vehicle or pipeline

(1) Any person engaged in transporting by motor vehicle any oil from any lease site, or allocated to any such lease site, shall carry, on his person, in his vehicle, or in his immediate control, documentation showing, at a minimum, the amount, origin, and intended first destination of the oil.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(2) Any person engaged in transporting any oil or gas by pipeline from any lease site, or allocated to any lease site, on Federal or Indian lands shall maintain documentation showing, at a minimum, amount, origin, and intended first destination of such oil or gas.

**Effective: [See Text Amendments]**

**§ 1713. Required recordkeeping**

(a) Maintenance and availability of records, reports, and information for inspection and duplication

A lessee, operator, or other person directly involved in developing, producing, transporting, purchasing, or selling oil or gas subject to this chapter through the point of first sale or the point of royalty computation, whichever is later, shall establish and maintain any records, make any reports, and provide any information that the Secretary may, by rule, reasonably require for the purposes of implementing this chapter or determining compliance with rules or orders under this chapter. Upon the request of any officer or employee duly designated by the Secretary or any State or Indian tribe conducting an audit or investigation pursuant to this chapter, the appropriate records, reports, or information which may be required by this section shall be made available for inspection and duplication by such officer or employee, State, or Indian tribe.

(b) Length of time maintenance required

Records required by the Secretary with respect to oil and gas leases from Federal or Indian lands or the Outer Continental Shelf shall be maintained for 6 years after the records are generated unless the Secretary notifies the record holder that he has initiated an audit or investigation involving such records and that such records must be maintained for a longer period. In any case when an audit or investigation is underway, records shall be maintained until the Secretary releases the record holder of the obligation to maintain such records.

**Effective: [See Text Amendments]**

**§ 1714. Deposit of royalty funds to Indian accounts**

Deposits of any royalty funds derived from the production of oil or gas from, or allocated to, Indian lands shall be made by the Secretary to the appropriate Indian account at the earliest practicable date after such funds are received by the Secretary but in no case later than the last business day of the month in which such funds are received.

**Effective: [See Text Amendments]**

**§ 1715. Explanation of payments**

(a) Description, period, source, etc., of payments to States or Indians

When any payment (including amounts due from receipt of any royalty, bonus, interest charge, fine, or rental) is made by the United States to a State with respect to any oil or gas lease on Federal lands or is deposited in the appropriate Indian account on behalf of an Indian tribe or Indian allottee with respect to any oil and gas lease on Indian lands, there shall be provided, together with such payment, a description of the type of payment being made, the period covered by such payment, the source of such payment, production amounts, the royalty rate, unit value and such other information as may be agreed upon by the Secretary and the recipient State, Indian tribe, or Indian allottee.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(b) Effective date

This section shall take effect with respect to payments made after October 1, 1983, unless the Secretary, by rule, prescribes an earlier effective date.

**Effective: [See Text Amendments]**

**§ 1716. Liabilities and bonding**

A person (including any agent or employee of the United States and any independent contractor) authorized to collect, receive, account for, or otherwise handle any moneys payable to, or received by, the Department of the Interior which are derived from the sale, lease, or other disposal of any oil or gas shall be--

(1) liable to the United States for any losses caused by any intentional or reckless action or inaction of such individual with respect to such moneys; and

(2) in the case of an independent contractor, required as the Secretary deems necessary to maintain a bond commensurate with the amount of money for which such individual could be liable to the United States.

**Effective: [See Text Amendments]**

**§ 1717. Hearings and investigations**

(a) Authorization; affidavits, oaths, subpenas, testimony, and payment of witnesses

In carrying out his duties under this chapter the Secretary may conduct any investigation or other inquiry necessary and appropriate and may conduct, after notice, any hearing or audit, necessary and appropriate to carrying out his duties under this chapter. In connection with any such hearings, inquiry, investigation, or audit, the Secretary is also authorized where reasonably necessary--

(1) to require by special or general order, any person to submit in writing such affidavits and answers to questions as the Secretary may reasonably prescribe, which submission shall be made within such reasonable period and under oath or otherwise, as may be necessary;

(2) to administer oaths;

(3) to require by subpena the attendance and testimony of witnesses and the production of all books, papers, production and financial records, documents, matter, and materials, as the Secretary may request;

(4) to order testimony to be taken by deposition before any person who is designated by the Secretary and who has the power to administer oaths, and to compel testimony and the production of evidence in the same manner as authorized under paragraph (3) of this subsection; and

(5) to pay witnesses the same fees and mileage as are paid in like circumstances in the courts of the United States.

(b) Refusal to obey subpena

In case of refusal to obey a subpena served upon any person under this section, the district court of the United States for any district in which such person is found, resides, or transacts business, upon application by the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Attorney General at the request of the Secretary and after notice to such person, shall have jurisdiction to issue an order requiring such person to appear and give testimony before the Secretary or to appear and produce documents before the Secretary. Any failure to obey such order of the court may be punished by such court as contempt thereof and subject to a penalty of up to $10,000 a day.

**Effective: [See Text Amendments]**

**§ 1718. Inspections**

(a) Motor vehicles on lease sites; vehicles not on lease site

**(1)** On any lease site on Federal or Indian lands, any authorized and properly identified representative of the Secretary may stop and inspect any motor vehicle that he has probable cause to believe is carrying oil from a lease site on Federal or Indian lands or allocated to such a lease site, for the purpose of determining whether the driver of such vehicle has documentation related to such oil as required by law.

**(2)** Any authorized and properly identified representative of the Secretary, accompanied by any appropriate law enforcement officer, or an appropriate law enforcement officer alone, may stop and inspect any motor vehicle which is not on a lease site if he has probable cause to believe the vehicle is carrying oil from a lease site on Federal or Indian lands or allocated to such a lease site. Such inspection shall be for the purpose of determining whether the driver of such vehicle has the documentation required by law.

(b) Inspection of lease sites for compliance with mineral leasing laws and this chapter.

Authorized and properly identified representatives of the Secretary may without advance notice, enter upon, travel across and inspect lease sites on Federal or Indian lands and may obtain from the operator immediate access to secured facilities on such lease sites, for the purpose of making any inspection or investigation for determining whether there is compliance with the requirements of the mineral leasing laws and this chapter. The Secretary shall develop guidelines setting forth the coverage and the frequency of such inspections.

(c) Right of Secretary to enter upon and travel across lease sites

For the purpose of making any inspection or investigation under this chapter, the Secretary shall have the same right to enter upon or travel across any lease site as the lessee or operator has acquired by purchase, condemnation, or otherwise.

**Effective: [See Text Amendments]**

**§ 1719. Civil penalties**

(a) Failure to comply with applicable law, to permit inspection, or to notify Secretary of assignment; exceptions to application of penalty

Any person who--

**(1)** after due notice of violation or after such violation has been reported under subparagraph (A), fails or refuses to comply with any requirements of this chapter or any mineral leasing law, any rule or regulation thereunder, or the terms of any lease or permit issued thereunder; or

**(2)** fails to permit inspection authorized in section 1718 of this title or fails to notify the Secretary of any

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

assignment under section 1712(a)(2) of this title

shall be liable for a penalty of up to $500 per violation for each day such violation continues, dating from the date of such notice or report. A penalty under this subsection may not be applied to any person who is otherwise liable for a violation of paragraph (1) if:

**(A)** the violation was discovered and reported to the Secretary or his authorized representative by the liable person and corrected within 20 days after such report or such longer time as the Secretary may agree to; or

**(B)** after the due notice of violation required in paragraph (1) has been given to such person by the Secretary or his authorized representative, such person has corrected the violation within 20 days of such notification or such longer time as the Secretary may agree to.

(b) Failure to take corrective action

If corrective action is not taken within 40 days or a longer period as the Secretary may agree to, after due notice or the report referred to in subsection (a)(1) of this section, such person shall be liable for a civil penalty of not more than $5,000 per violation for each day such violation continues, dating from the date of such notice or report.

(c) Failure to make royalty payment; failure to permit lawful entry, inspection, or audit; failure to notify Secretary of well production

Any person who--

**(1)** knowingly or willfully fails to make any royalty payment by the date as specified by statute, regulation, order or terms of the lease;

**(2)** fails or refuses to permit lawful entry, inspection, or audit; or

**(3)** knowingly or willfully fails or refuses to comply with section 1712(b)(3) of this title,

shall be liable for a penalty of up to $10,000 per violation for each day such violation continues.

(d) False information; unauthorized removal, etc., of oil or gas; purchase, sale, etc., of stolen oil or gas

Any person who--

**(1)** knowingly or willfully prepares, maintains, or submits false, inaccurate, or misleading reports, notices, affidavits, records, data, or other written information;

**(2)** knowingly or willfully takes or removes, transports, uses or diverts any oil or gas from any lease site without having valid legal authority to do so; or

**(3)** purchases, accepts, sells, transports, or conveys to another, any oil or gas knowing or having reason to know that such oil or gas was stolen or unlawfully removed or diverted,

shall be liable for a penalty of up to $25,000 per violation for each day such violation continues.

(e) Hearing

No penalty under this section shall be assessed until the person charged with a violation has been given the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

opportunity for a hearing on the record.

(f) Deduction of penalty from sums owed by United States

The amount of any penalty under this section, as finally determined [FN1] may be deducted from any sums owing by the United States to the person charged.

(g) Compromise or reduction of penalties

On a case-by-case basis the Secretary may compromise or reduce civil penalties under this section.

(h) Notice

Notice under this subsection (a) of this section shall be by personal service by an authorized representative of the Secretary or by registered mail. Any person may, in the manner prescribed by the Secretary, designate a representative to receive any notice under this subsection.

(i) Reasons on record for amount of penalty

In determining the amount of such penalty, or whether it should be remitted or reduced, and in what amount, the Secretary shall state on the record the reasons for his determinations.

(j) Review

Any person who has requested a hearing in accordance with subsection (e) of this section within the time the Secretary has prescribed for such a hearing and who is aggrieved by a final order of the Secretary under this section may seek review of such order in the United States district court for the judicial district in which the violation allegedly took place. Review by the district court shall be only on the administrative record and not de novo. Such an action shall be barred unless filed within 90 days after the Secretary's final order.

(k) Failure to pay penalty

If any person fails to pay an assessment of a civil penalty under this chapter--

**(1)** after the order making the assessment has become a final order and if such person does not file a petition for judicial review of the order in accordance with subsection (j) of this section, or

**(2)** after a court in an action brought under subsection (j) of this section has entered a final judgment in favor of the Secretary,

the court shall have jurisdiction to award the amount assessed plus interest from the date of the expiration of the 90-day period referred to in subsection (j) of this section. Judgment by the court shall include an order to pay.

(*l*) Nonliability for leases automatically terminated

No person shall be liable for a civil penalty under subsection (a) or (b) of this section for failure to pay any rental for any lease automatically terminated pursuant to section 188 of this title.

[FN1] So in original. Probably should be followed by a comma.

**Effective: [See Text Amendments]**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**§ 1720. Criminal penalties**

Any person who commits an act for which a civil penalty is provided in section 1719(d) of this title shall, upon conviction, be punished by a fine of not more than $50,000, or by imprisonment for not more than 2 years, or both.

**Effective: September 22, 1996**

**§ 1721. Royalty terms and conditions, interest, and penalties**

(a) Charge on late royalty payment or royalty payment deficiency

In the case of oil and gas leases where royalty payments are not received by the Secretary on the date that such payments are due, or are less than the amount due, the Secretary shall charge interest on such late payments or underpayments at the rate applicable under section 6621 of Title 26. In the case of an underpayment or partial payment, interest shall be computed and charged only on the amount of the deficiency and not on the total amount due.

(b) Charge on late payment made by Secretary to States

Any payment made by the Secretary to a State under section 191 of this title and any other payment made by the Secretary to a State from any oil or gas royalty received by the Secretary which is not paid on the date required under section 191 of this title shall include an interest charge computed at the rate applicable under section 6621 of Title 26.

(c) Deposit in royalty accounts of charges on royalties due and owing Indians

All interest charges collected under this chapter or under other applicable laws because of nonpayment, late payment or underpayment of royalties due and owing an Indian tribe or an Indian allottee shall be deposited to the same account as the royalty with respect to which such interest is paid.

(d) Charge on late deposit of royalty fund to an Indian account

Any deposit of royalty funds made by the Secretary to an Indian account which is not made by the date required under section 1714 of this title shall include an interest charge computed at the rate applicable under section 6621 of Title 26.

(e) Nonliability of States for Secretary's failure to comply with the Emergency Petroleum Allocation Act of 1973 or regulations thereunder

Notwithstanding any other provision of law, no State will be assessed for any interest or penalties found to be due against the Secretary for failure to comply with the Emergency Petroleum Allocation Act of 1973 [15 U.S.C.A. § 751 et seq.] or regulation of the Secretary of Energy thereunder concerning crude oil certification or pricing with respect to crude oil taken by the Secretary in kind as royalty. Any State share of an overcharge, resulting from such failure to comply, shall be assessed against moneys found to be due and owing to such State as a result of audits of royalty accounts for transactions which took place prior to January 12, 1983, except that if after the completion of such audits, sufficient moneys have not been found due and owing to any State, the State shall be assessed the balance of that State's share of the overcharge.

(f) Limitation on interest charged

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Interest shall be charged under this section only for the number of days a payment is late.

(g) Omitted

(h) Lessee or designee interest

Interest shall be allowed and paid or credited on any overpayment, with such interest to accrue from the date such overpayment was made, at the rate obtained by applying the provisions of subparagraphs (A) and (B) of section 6621(a)(1) of Title 26, but determined without regard to the sentence following subparagraph (B) of section 6621(a)(1). Interest which has accrued on any overpayment may be applied to reduce an underpayment. This subsection applies to overpayments made later than six months after August 13, 1996, or September 1, 1996, whichever is later. Such interest shall be paid from amounts received as current receipts from sales, bonuses, royalties (including interest charges collected under this section) and rentals of the public lands and the Outer Continental Shelf under the provisions of the Mineral Leasing Act [30 U.S.C.A. § 181 et seq.], and the Outer Continental Shelf Lands Act [43 U.S.C.A. § 1331 et seq.], which are not payable to a State or the Reclamation Fund. The portion of any such interest payment attributable to any amounts previously disbursed to a State, the Reclamation Fund, or any other recipient designated by law shall be deducted from the next disbursements to that recipient made under the applicable law. Such amounts deducted from subsequent disbursements shall be credited to miscellaneous receipts in the Treasury.

(i) Limitation on interest

Upon a determination by the Secretary that an excessive overpayment (based upon all obligations of a lessee or its designee for a given reporting month) was made for the sole purpose of receiving interest, interest shall not be paid on the excessive amount of such overpayment. For purposes of this chapter, an "excessive overpayment" shall be the amount that any overpayment a lessee or its designee pays for a given reporting month (excluding payments for demands for obligations determined to be due as a result of judicial or administrative proceedings or agreed to be paid pursuant to settlement agreements) for the aggregate of all of its Federal leases exceeds 10 percent of the total royalties paid that month for those leases.

(j) Estimated payment

A lessee or its designee may make a payment for the approximate amount of royalties (hereinafter in this subsection "estimated payment") that would otherwise be due for such lease by the date royalties are due for that lease. When an estimated payment is made, actual royalties are payable at the end of the month following the month in which the estimated payment is made. If the estimated payment was less than the amount of actual royalties due, interest is owed on the underpaid amount. If the estimated payment exceeds the actual royalties due, interest is owed on the overpayment. If the lessee or its designee makes a payment for such actual royalties, the lessee or its designee may apply the estimated payment to future royalties. Any estimated payment may be adjusted, recouped, or reinstated at any time by the lessee or its designee.

(k) Volume allocation of oil and gas production

**(1)** Except as otherwise provided by this subsection--

**(A)** a lessee or its designee of a lease in a unit or communitization agreement which contains only Federal leases with the same royalty rate and funds distribution shall report and pay royalties on oil and gas production for each production month based on the actual volume of production sold by or on behalf of that lessee;

**(B)** a lessee or its designee of a lease in any other unit or communitization agreement shall report and pay royalties on oil and gas production for each production month based on the volume of oil and gas produced from such agreement and allocated to the lease in accordance with the terms of the agreement; and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(C) a lessee or its designee of a lease that is not contained in a unit or communitization agreement shall report and pay royalties on oil and gas production for each production month based on the actual volume of production sold by or on behalf of that lessee.

(2) This subsection applies only to requirements for reporting and paying royalties. Nothing in this subsection is intended to alter a lessee's liability for royalties on oil or gas production based on the share of production allocated to the lease in accordance with the terms of the lease, a unit or communitization agreement, or any other agreement.

(3) For any unit or communitization agreement if all lessees contractually agree to an alternative method of royalty reporting and payment, the lessees may submit such alternative method to the Secretary or the delegated State for approval and make payments in accordance with such approved alternative method so long as such alternative method does not reduce the amount of the royalty obligation.

(4) The Secretary or the delegated State shall grant an exception from the reporting and payment requirements for marginal properties by allowing for any calendar year or portion thereof royalties to be paid each month based on the volume of production sold. Interest shall not accrue on the difference for the entire calendar year or portion thereof between the amount of oil and gas actually sold and the share of production allocated to the lease until the beginning of the month following such calendar year or portion thereof. Any additional royalties due or overpaid royalties and associated interest shall be paid, refunded, or credited within six months after the end of each calendar year in which royalties are paid based on volumes of production sold. For the purpose of this subsection, the term "marginal property" means a lease that produces on average the combined equivalent of less than 15 barrels of oil per well per day or 90 thousand cubic feet of gas per well per day, or a combination thereof, determined by dividing the average daily production of crude oil and natural gas from producing wells on such lease by the number of such wells, unless the Secretary, together with the State concerned, determines that a different production is more appropriate.

(5) Not later than two years after August 13, 1996, the Secretary shall issue any appropriate demand for all outstanding royalty payment disputes regarding who is required to report and pay royalties on production from units and communitization agreements outstanding on August 13, 1996, and collect royalty amounts owed on such production.

(l) Production allocation

The Secretary shall issue all determinations of allocations of production for units and communitization agreements within 120 days of a request for determination. If the Secretary fails to issue a determination within such 120-day period, the Secretary shall waive interest due on obligations subject to the determination until the end of the month following the month in which the determination is made.

**Effective: August 13, 1996**

**§ 1721a. Adjustments and refunds**

(a) Adjustments to royalties paid to the Secretary or a delegated State

(1) If, during the adjustment period, a lessee or its designee determines that an adjustment or refund request is necessary to correct an underpayment or overpayment of an obligation, the lessee or its designee shall make such adjustment or request a refund within a reasonable period of time and only during the adjustment period. The filing of a royalty report which reflects the underpayment or overpayment of an obligation shall constitute prior written notice to the Secretary or the applicable delegated State of an adjustment.

(2)(A) For any adjustment, the lessee or its designee shall calculate and report the interest due attributable to such

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

adjustment at the same time the lessee or its designee adjusts the principle [FN1] amount of the subject obligation, except as provided by subparagraph (B).

**(B)** In the case of a lessee or its designee who determines that subparagraph (A) would impose a hardship, the Secretary or such delegated State shall calculate the interest due and notify the lessee or its designee within a reasonable time of the amount of interest due, unless such lessee or its designee elects to calculate and report interest in accordance with subparagraph (A).

**(3)** An adjustment or a request for a refund for an obligation may be made after the adjustment period only upon written notice to and approval by the Secretary or the applicable delegated State, as appropriate, during an audit of the period which includes the production month for which the adjustment is being made. If an overpayment is identified during an audit, then the Secretary or the applicable delegated State, as appropriate, shall allow a credit or refund in the amount of the overpayment.

**(4)** For purposes of this section, the adjustment period for any obligation shall be the six-year period following the date on which an obligation became due. The adjustment period shall be suspended, tolled, extended, enlarged, or terminated by the same actions as the limitation period in section 1724 of this title.

(b) Refunds

(1) In general

A request for refund is sufficient if it--

**(A)** is made in writing to the Secretary and, for purposes of section 1724 of this title, is specifically identified as a demand;

**(B)** identifies the person entitled to such refund;

**(C)** provides the Secretary information that reasonably enables the Secretary to identify the overpayment for which such refund is sought; and

**(D)** provides the reasons why the payment was an overpayment.

(2) Payment by Secretary of the Treasury

The Secretary shall certify the amount of the refund to be paid under paragraph (1) to the Secretary of the Treasury who shall make such refund. Such refund shall be paid from amounts received as current receipts from sales, bonuses, royalties (including interest charges collected under this section) and rentals of the public lands and the Outer Continental Shelf under the provisions of the Mineral Leasing Act [30 U.S.C.A. § 181 et seq.] and the Outer Continental Shelf Lands Act [43 U.S.C.A. § 1331 et seq.], which are not payable to a State or the Reclamation Fund. The portion of any such refund attributable to any amounts previously disbursed to a State, the Reclamation Fund, or any recipient prescribed by law shall be deducted from the next disbursements to that recipient made under the applicable law. Such amounts deducted from subsequent disbursements shall be credited to miscellaneous receipts in the Treasury.

(3) Payment period

A refund under this subsection shall be paid or denied (with an explanation of the reasons for the denial) within 120 days of the date on which the request for refund is received by the Secretary. Such refund shall be subject to later audit by the Secretary or the applicable delegated State and subject to the provisions of this chapter.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(4) Prohibition against reduction of refunds or credits

In no event shall the Secretary or any delegated State directly or indirectly claim or offset any amount or amounts against, or reduce any refund or credit (or interest accrued thereon) by the amount of any obligation the enforcement of which is barred by section 1724 of this title.

[FN1] So in original. Probably should be "principal".

**Effective: [See Text Amendments]**

**§ 1722. Injunction and specific enforcement authority**

(a) Civil action by Attorney General

In addition to any other remedy under this chapter or any mineral leasing law, the Attorney General of the United States or his designee may bring a civil action in a district court of the United States, which shall have jurisdiction over such actions--

(1) to restrain any violation of this chapter; or

(2) to compel the taking of any action required by or under this chapter or any mineral leasing law of the United States.

(b) Venue

A civil action described in subsection (a) of this section may be brought only in the United States district court for the judicial district wherein the act, omission, or transaction constituting a violation under this chapter or any other mineral leasing law occurred, or wherein the defendant is found or transacts business.

**Effective: [See Text Amendments]**

**§ 1723. Rewards**

Where amounts representing royalty or other payments owed to the United States with respect to any oil and gas lease on Federal lands or the Outer Continental Shelf are recovered pursuant to any action taken by the Secretary under this chapter as a result of information provided to the Secretary by any person, the Secretary is authorized to pay to such person an amount equal to not more than 10 percent of such recovered amounts. The preceding sentence shall not apply to information provided by an officer or employee of the United States, an officer or employee of a State or Indian tribe acting pursuant to a cooperative agreement or delegation under this chapter, or any person acting pursuant to a contract authorized by this chapter.

**Effective: September 22, 1996**

**§ 1724. Secretarial and delegated States' actions and limitation periods**

(a) In general

The respective duties, responsibilities, and activities with respect to a lease shall be performed by the Secretary, delegated States, and lessees or their designees in a timely manner.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(b) Limitation period

(1) In general

A judicial proceeding or demand which arises from, or relates to an obligation, shall be commenced within seven years from the date on which the obligation becomes due and if not so commenced shall be barred. If commencement of a judicial proceeding or demand for an obligation is barred by this section, the Secretary, a delegated State, or a lessee or its designee (A) shall not take any other or further action regarding that obligation, including (but not limited to) the issuance of any order, request, demand or other communication seeking any document, accounting, determination, calculation, recalculation, payment, principal, interest, assessment, or penalty or the initiation, pursuit or completion of an audit with respect to that obligation; and (B) shall not pursue any other equitable or legal remedy, whether under statute or common law, with respect to an action on or an enforcement of said obligation.

(2) Rule of construction

A judicial proceeding or demand that is timely commenced under paragraph (1) against a designee shall be considered timely commenced as to any lessee who is liable pursuant to section 1712(a) of this title for the obligation that is the subject of the judicial proceeding or demand.

(3) Application of certain limitations

The limitations set forth in sections 2401, 2415, 2416, and 2462 of Title 28 and section 226-2 of this title shall not apply to any obligation to which this chapter applies. Section 3716 of Title 31 may be applied to an obligation the enforcement of which is not barred by this chapter, but may not be applied to any obligation the enforcement of which is barred by this chapter.

(c) Obligation becomes due

(1) In general

For purposes of this chapter, an obligation becomes due when the right to enforce the obligation is fixed.

(2) Royalty obligations

The right to enforce any royalty obligation for any given production month for a lease is fixed for purposes of this chapter on the last day of the calendar month following the month in which oil or gas is produced.

(d) Tolling of limitation period

The running of the limitation period under subsection (b) of this section shall not be suspended, tolled, extended, or enlarged for any obligation for any reason by any action, including an action by the Secretary or a delegated State, other than the following:

(1) Tolling agreement

A written agreement executed during the limitation period between the Secretary or a delegated State and a lessee or its designee (with notice to the lessee who designated the designee) shall toll the limitation period for the amount of time during which the agreement is in effect.

(2) Subpoena

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(A) The issuance of a subpoena to a lessee or its designee (with notice to the lessee who designated the designee, which notice shall not constitute a subpoena to the lessee) in accordance with the provisions of subparagraph (B)(i) shall toll the limitation period with respect to the obligation which is the subject of a subpoena only for the period beginning on the date the lessee or its designee receives the subpoena and ending on the date on which (i) the lessee or its designee has produced such subpoenaed records for the subject obligation, (ii) the Secretary or a delegated State receives written notice that the subpoenaed records for the subject obligation are not in existence or are not in the lessee's or its designee's possession or control, or (iii) a court has determined in a final decision that such records are not required to be produced, whichever occurs first.

(B)(i) A subpoena for the purposes of this section which requires a lessee or its designee to produce records necessary to determine the proper reporting and payment of an obligation due the Secretary may be issued only by an Assistant Secretary of the Interior or an Acting Assistant Secretary of the Interior who is a schedule C employee (as defined by section 213.3301 of title 5, Code of Federal Regulations), or the Director or Acting Director of the respective bureau or agency, and may not be delegated to any other person. If a State has been delegated authority pursuant to section 1735 of this title, the State, acting through the highest State official having ultimate authority over the collection of royalties from leases on Federal lands within the State, may issue such subpoena, but may not delegate such authority to any other person.

(ii) A subpoena described in clause (i) may only be issued against a lessee or its designee during the limitation period provided in this section and only after the Secretary or a delegated State has in writing requested the records from the lessee or its designee related to the obligation which is the subject of the subpoena and has determined that--

(I) the lessee or its designee has failed to respond within a reasonable period of time to the Secretary's or the applicable delegated State's written request for such records necessary for an audit, investigation or other inquiry made in accordance with the Secretary's or such delegated State's responsibilities under this chapter; or

(II) the lessee or its designee has in writing denied the Secretary's or the applicable delegated State's written request to produce such records in the lessee's or its designee's possession or control necessary for an audit, investigation or other inquiry made in accordance with the Secretary's or such delegated State's responsibilities under this chapter; or

(III) the lessee or its designee has unreasonably delayed in producing records necessary for an audit, investigation or other inquiry made in accordance with the Secretary's or the applicable delegated State's responsibilities under this chapter after the Secretary's or delegated State's written request.

(C) In seeking records, the Secretary or the applicable delegated State shall afford the lessee or its designee a reasonable period of time after a written request by the Secretary or such delegated State in which to provide such records prior to the issuance of any subpoena.

(3) Misrepresentation or concealment

The intentional misrepresentation or concealment of a material fact for the purpose of evading the payment of an obligation in which case the limitation period shall be tolled for the period of such misrepresentation or such concealment.

(4) Order to perform restructured accounting

(A)(i) The issuance of a notice under subparagraph (D) that the lessee or its designee has not substantially complied with the requirement to perform a restructured accounting shall toll the limitation period with respect to the obligation which is the subject of the notice only for the period beginning on the date the lessee or its

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

designee receives the notice and ending 120 days after the date on which (I) the Secretary or the applicable delegated State receives written notice that the accounting or other requirement has been performed, or (II) a court has determined in a final decision that the lessee is not required to perform the accounting, whichever occurs first.

**(ii)** If the lessee or its designee initiates an administrative appeal or judicial proceeding to contest an order to perform a restructured accounting issued under subparagraph (B)(i), the limitation period in subsection (b) of this section shall be tolled from the date the lessee or its designee received the order until a final, nonappealable decision is issued in any such proceeding.

**(B)(i)** The Secretary or the applicable delegated State may issue an order to perform a restructured accounting to a lessee or its designee when the Secretary or such delegated State determines during an audit of a lessee or its designee that the lessee or its designee should recalculate royalty due on an obligation based upon the Secretary's or the delegated State's finding that the lessee or its designee has made identified underpayments or overpayments which are demonstrated by the Secretary or the delegated State to be based upon repeated, systemic reporting errors for a significant number of leases or a single lease for a significant number of reporting months with the same type of error which constitutes a pattern of violations and which are likely to result in either significant underpayments or overpayments.

**(ii)** The power of the Secretary to issue an order to perform a restructured accounting may not be delegated below the most senior career professional position having responsibility for the royalty management program, which position is currently designated as the "Associate Director for Royalty Management", and may not be delegated to any other person. If a State has been delegated authority pursuant to section 1735 of this title, the State, acting through the highest ranking State official having ultimate authority over the collection of royalties from leases on Federal lands within the State, may issue such order to perform, which may not be delegated to any other person. An order to perform a restructured accounting shall--

**(I)** be issued within a reasonable period of time from when the audit identifies the systemic, reporting errors;

**(II)** specify the reasons and factual bases for such order;

**(III)** be specifically identified as an "order to perform a restructured accounting";

**(IV)** provide the lessee or its designee a reasonable period of time (but not less than 60 days) within which to perform the restructured accounting; and

**(V)** provide the lessee or its designee 60 days within which to file an administrative appeal of the order to perform a restructured accounting.

**(C)** An order to perform a restructured accounting shall not mean or be construed to include any other action by or on behalf of the Secretary or a delegated State.

**(D)** If a lessee or its designee fails to substantially comply with the requirement to perform a restructured accounting pursuant to this subsection, a notice shall be issued to the lessee or its designee that the lessee or its designee has not substantially complied with the requirements to perform a restructured accounting. A lessee or its designee shall be given a reasonable time within which to perform the restructured accounting. Such notice may be issued under this section only by an Assistant Secretary of the Interior or an acting Assistant Secretary of the Interior who is a schedule C employee (as defined by section 213.3301 of title 5, Code of Federal Regulations ) and may not be delegated to any other person. If a State has been delegated authority pursuant to section 1735 of this title, the State, acting through the highest State official having ultimate authority over the collection of royalties from leases on Federal lands within the State, may issue such notice, which may not be delegated to any

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

other person.

(e) Termination of limitations period

An action or an enforcement of an obligation by the Secretary or delegated State or a lessee or its designee shall be barred under this section prior to the running of the seven-year period provided in subsection (b) of this section in the event--

(1) the Secretary or a delegated State has notified the lessee or its designee in writing that a time period is closed to further audit; or

(2) the Secretary or a delegated State and a lessee or its designee have so agreed in writing.

For purposes of this subsection, notice to, or an agreement by, the designee shall be binding on any lessee who is liable pursuant to section 1712(a) of this title for obligations that are the subject of the notice or agreement.

(f) Records required for determining collections

Records required pursuant to section 1713 of this title by the Secretary or any delegated State for the purpose of determining obligations due and compliance with any applicable mineral leasing law, lease provision, regulation or order with respect to oil and gas leases from Federal lands or the Outer Continental Shelf shall be maintained for the same period of time during which a judicial proceeding or demand may be commenced under subsection (b) of this section. If a judicial proceeding or demand is timely commenced, the record holder shall maintain such records until the final nonappealable decision in such judicial proceeding is made, or with respect to that demand is rendered, unless the Secretary or the applicable delegated State authorizes in writing an earlier release of the requirement to maintain such records. Notwithstanding anything herein to the contrary, under no circumstance shall a record holder be required to maintain or produce any record relating to an obligation for any time period which is barred by the applicable limitation in this section. In connection with any hearing, administrative proceeding, inquiry, investigation, or audit by the Secretary or a delegated State under this chapter, the Secretary or the delegated State shall minimize the submission of multiple or redundant information and make a good faith effort to locate records previously submitted by a lessee or a designee to the Secretary or the delegated State, prior to requiring the lessee or the designee to provide such records.

(g) Timely collections

In order to most effectively utilize resources available to the Secretary to maximize the collection of oil and gas receipts from lease obligations to the Treasury within the seven-year period of limitations, and consequently to maximize the State share of such receipts, the Secretary should not perform or require accounting, reporting, or audit activities if the Secretary and the State concerned determine that the cost of conducting or requiring the activity exceeds the expected amount to be collected by the activity, based on the most current 12 months of activity. This subsection shall not provide a defense to a demand or an order to perform a restructured accounting. To the maximum extent possible, the Secretary and delegated States shall reduce costs to the United States Treasury and the States by discontinuing requirements for unnecessary or duplicative data and other information, such as separate allowances and payor information, relating to obligations due. If the Secretary and the State concerned determine that collection will result sooner, the Secretary or the applicable delegated State may waive or forego interest in whole or in part.

(h) Appeals and final agency action

(1) 33-month period

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Demands or orders issued by the Secretary or a delegated State are subject to administrative appeal in accordance with the regulations of the Secretary. No State shall impose any conditions which would hinder a lessee's or its designee's immediate appeal of an order to the Secretary or the Secretary's designee. The Secretary shall issue a final decision in any administrative proceeding, including any administrative proceedings pending on August 13, 1996, within 33 months from the date such proceeding was commenced or 33 months from August 13, 1996, whichever is later. The 33-month period may be extended by any period of time agreed upon in writing by the Secretary and the appellant.

(2) Effect of failure to issue decision

If no such decision has been issued by the Secretary within the 33-month period referred to in paragraph (1)--

**(A)** the Secretary shall be deemed to have issued and granted a decision in favor of the appellant as to any nonmonetary obligation and any monetary obligation the principal amount of which is less than $10,000; and

**(B)** the Secretary shall be deemed to have issued a final decision in favor of the Secretary, which decision shall be deemed to affirm those issues for which the agency rendered a decision prior to the end of such period, as to any monetary obligation the principal amount of which is $10,000 or more, and the appellant shall have a right to judicial review of such deemed final decision in accordance with Title 5.

(i) Collections of disputed amounts due

To expedite collections relating to disputed obligations due within the seven-year period beginning on the date the obligation became due, the parties shall hold not less than one settlement consultation and the Secretary and the State concerned may take such action as is appropriate to compromise and settle a disputed obligation, including waiving or reducing interest and allowing offsetting of obligations among leases.

(j) Enforcement of a claim for judicial review

In the event a demand subject to this section is properly and timely commenced, the obligation which is the subject of the demand may be enforced beyond the seven-year limitations period without being barred by this statute of limitations. In the event a demand subject to this section is properly and timely commenced, a judicial proceeding challenging the final agency action with respect to such demand shall be deemed timely so long as such judicial proceeding is commenced within 180 days from receipt of notice by the lessee or its designee of the final agency action.

(k) Implementation of final decision

In the event a judicial proceeding or demand subject to this section is timely commenced and thereafter the limitation period in this section lapses during the pendency of such proceeding, any party to such proceeding shall not be barred from taking such action as is required or necessary to implement a final unappealable judicial or administrative decision, including any action required or necessary to implement such decision by the recovery or recoupment of an underpayment or overpayment by means of refund or credit.

(l) Stay of payment obligation pending review

Any person ordered by the Secretary or a delegated State to pay any obligation (other than an assessment) shall be entitled to a stay of such payment without bond or other surety instrument pending an administrative or judicial proceeding if the person periodically demonstrates to the satisfaction of the Secretary that such person is financially solvent or otherwise able to pay the obligation. In the event the person is not able to so demonstrate, the Secretary may require a bond or other surety instrument satisfactory to cover the obligation. Any person ordered by the Secretary or a delegated State to pay an assessment shall be entitled to a stay without bond or other

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

surety instrument.

**Effective: August 13, 1996**

**§ 1725. Assessments**

Beginning eighteen months after August 13, 1996, to encourage proper royalty payment the Secretary or the delegated State shall impose assessments on a person who chronically submits erroneous reports under this chapter. Assessments under this chapter may only be issued as provided for in this section.

**Effective: September 22, 1996**

**§ 1726. Alternatives for marginal properties**

(a) Determination of best interests of State concerned and United States

The Secretary and the State concerned, acting in the best interests of the United States and the State concerned to promote production, reduce administrative costs, and increase net receipts to the United States and the States, shall jointly determine, on a case by case basis, the amount of what marginal production from a lease or leases or well or wells, or parts thereof, shall be subject to a prepayment under subsection (b) of this section or regulatory relief under subsection (c) of this section. If the State concerned does not consent, such prepayments or regulatory relief shall not be made available under this section for such marginal production: *Provided,* That if royalty payments from a lease or leases, or well or wells are not shared with any State, such determination shall be made solely by the Secretary.

(b) Prepayment of royalty

(1) In general

Notwithstanding the provisions of any lease to the contrary, for any lease or leases or well or wells identified by the Secretary and the State concerned pursuant to subsection (a) of this section, the Secretary is authorized to accept a prepayment for royalties in lieu of monthly royalty payments under the lease for the remainder of the lease term if the affected lessee so agrees. Any prepayment agreed to by the Secretary, State concerned and lessee which is less than an average $500 per month in total royalties shall be effectuated under this section not earlier than two years after August 13, 1996, and, any prepayment which is greater than an average $500 per month in total royalties shall be effectuated under this section not earlier than three years after August 13, 1996. The Secretary and the State concerned may condition their acceptance of the prepayment authorized under this section on the lessee's agreeing to such terms and conditions as the Secretary and the State concerned deem appropriate and consistent with the purposes of this chapter. Such terms may--

**(A)** provide for prepayment that does not result in a loss of revenue to the United States in present value terms;

**(B)** include provisions for receiving additional prepayments or royalties for developments in the lease or leases or well or wells that deviate significantly from the assumptions and facts on which the valuation is determined; and

**(C)** require the lessee or its designee to provide such periodic production reports as may be necessary to allow the Secretary and the State concerned to monitor production for the purposes of subparagraph (B).

(2) State share

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A prepayment under this section shall be shared by the Secretary with any State or other recipient to the same extent as any royalty payment for such lease.

(3) Satisfaction of obligation

Except as may be provided in the terms and conditions established by the Secretary under subsection (b) of this section, a lessee or its designee who makes a prepayment under this section shall have satisfied in full the lessee's obligation to pay royalty on the production stream sold from the lease or leases or well or wells.

(c) Alternative accounting and auditing requirements

Within one year after August 13, 1996, the Secretary or the delegated State shall provide accounting, reporting, and auditing relief that will encourage lessees to continue to produce and develop properties subject to subsection (a) of this section: *Provided,* That such relief will only be available to lessees in a State that concurs, which concurrence is not required if royalty payments from the lease or leases or well or wells are not shared with any State. Prior to granting such relief, the Secretary and, if appropriate, the State concerned shall agree that the type of marginal wells and relief provided under this paragraph is in the best interest of the United States and, if appropriate, the State concerned.

**Effective: [See Text Amendments]**

**Subchapter II. States and Indian Tribes**

**§ 1731. Application of subchapter**

This subchapter shall apply only with respect to oil and gas leases on Federal lands or Indian lands. Nothing in this subchapter shall be construed to apply to any lease on the Outer Continental Shelf.

**Effective: [See Text Amendments]**

**§ 1731a. Application of subchapter to leases of lands within three miles of seaward boundaries of coastal States**

For fiscal year 1990 and each fiscal year thereafter, notwithstanding the provisions of section 1731 of this title, sections 1732 through 1736 of this title shall apply to any lease or portion of a lease subject to section 1337(g) of Title 43, which, for purposes of those provisions and for no other purposes, shall be regarded as within the coastal State or States entitled to receive revenues from it under section 1337(g) of Title 43.

**Effective: [See Text Amendments]**

**§ 1732. Cooperative agreements**

(a) Authorization of Secretary; permission of Indian tribe required for activities on Indian lands

The Secretary is authorized to enter into a cooperative agreement or agreements with any State or Indian tribe to share oil or gas royalty management information, to carry out inspection, auditing, investigation or enforcement (not including the collection of royalties, civil or criminal penalties or other payments) activities under this chapter

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

in cooperation with the Secretary, and to carry out any other activity described in section 1718 of this title. The Secretary shall not enter into any such cooperative agreement with a State with respect to any such activities on Indian lands, except with the permission of the Indian tribe involved.

(b) Access to royalty accounting information

Except as provided in section 1733 of this title, and pursuant to a cooperative agreement--

(1) each State shall, upon request, have access to all royalty accounting information in the possession of the Secretary respecting the production, removal, or sale of oil or gas from leases on Federal lands within the State; and

(2) each Indian tribe shall, upon request, have access to all royalty accounting information in the possession of the Secretary respecting the production, removal, or sale of oil or gas from leases on Indian lands under the jurisdiction of such tribe.

Information shall be made available under paragraphs (1) and (2) as soon as practicable after it comes into the possession of the Secretary. Effective October 1, 1983, such information shall be made available under paragraphs (1) and (2) not later than 30 days after such information comes into the possession of the Secretary.

(c) Agreements in accordance with chapter 63 of Title 31; terms and conditions

Any cooperative agreement entered into pursuant to this section shall be in accordance with the provisions of chapter 63 of Title 31, and shall contain such terms and conditions as the Secretary deems appropriate and consistent with the purposes of this chapter, including, but not limited to, a limitation on the use of Federal assistance to those costs which are directly required to carry out the agreed upon activities.

**Effective: [See Text Amendments]**

**§ 1733. Information**

(a) Availability of confidential information by Secretary pursuant to cooperative agreements; conditions

Trade secrets, proprietary and other confidential information shall be made available by the Secretary, pursuant to a cooperative agreement, to a State or Indian tribe upon request only if--

(1) such State or Indian tribe consents in writing to restrict the dissemination of the information to those who are directly involved in an audit or investigation under this chapter and who have a need to know;

(2) such State or tribe accepts liability for wrongful disclosure;

(3) in the case of a State, such State demonstrates that such information is essential to the conduct of an audit or investigation or to litigation under section 1734 of this title; and

(4) in the case of an Indian tribe, such tribe demonstrates that such information is essential to the conduct of an audit or investigation and waives sovereign immunity by express consent for wrongful disclosure by such tribe.

(b) Nonliability of United States for wrongful disclosure

The United States shall not be liable for the wrongful disclosure by any individual, State, or Indian tribe of any

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

information provided to such individual, State, or Indian tribe pursuant to any cooperative agreement or a delegation, authorized by this chapter.

(c) Law governing disclosure

Whenever any individual, State, or Indian tribe has obtained possession of information pursuant to a cooperative agreement authorized by this section, or any individual or State has obtained possession of information pursuant to a delegation under section 1735 of this title, the individual shall be subject to the same provisions of law with respect to the disclosure of such information as would apply to an officer or employee of the United States or of any department or agency thereof and the State or Indian tribe shall be subject to the same provisions of law with respect to the disclosure of such information as would apply to the United States or any department or agency thereof. No State or State officer or employee who receives trade secrets, proprietary information, or other confidential information under this chapter may be required to disclose such information under State law.

**Effective: [See Text Amendments]**

**§ 1734. State suits under Federal law**

(a) Action for royalty, interest, or civil penalty; limitations; notice of suit; award of costs and fees

**(1)** A State may commence a civil action under this section against any person to recover any royalty, interest, or civil penalty which the State believes is due, based upon credible evidence, with respect to any oil and gas lease on Federal lands located within the State.

**(2)(A)** No action may be commenced under paragraph (1) prior to 90 days after the State has given notice in writing to the Secretary of the payment required. Such 90-day limitation may be waived by the Secretary on a case-by-case basis.

**(B)** If, within the 90-day period specified in subparagraph (A), the Secretary issues a demand for the payment concerned, no action may be commenced under paragraph (1) with respect to such payment during a 45-day period after issuance of such demand. If, during such 45-day period, the Secretary receives payment in full, no action may be commenced under paragraph (1).

**(C)** If the Secretary refers the case to the Attorney General of the United States within the 45-day period referred to in subparagraph (B) or within 10 business days after the expiration of such 45-day period, no action may be commenced under paragraph (1) if the Attorney General, within 45 days after the date of such referral, commences, and thereafter diligently prosecutes, a civil action in a court of the United States with respect to the payment concerned.

**(3)** The State shall notify the Secretary and the Attorney General of the United States of any suit filed by the State under this section.

**(4)** A court in issuing any final order in any action brought under paragraph (1) may award costs of litigation including reasonable attorney and expert witness fees, to any party in such action if the court determines such an award is appropriate.

(b) Venue; jurisdiction of district court

An action brought under subsection (a) of this section may be brought only in a United States district court for the judicial district in which the lease site or the leasing activity complained of is located. Such district court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to require

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

compliance or order payment in any such action.

(c) Recovery of civil penalty by State; deposit of rent, royalty, or interest recovery in Treasury of the United States

(1) Notwithstanding any other provision of law, any civil penalty recovered by a State under subsection (a) of this section shall be retained by the State and may be expended in such manner and for such purposes as the State deems appropriate.

(2) Any rent, royalty, or interest recovered by a State under subsection (a) of this section shall be deposited in the Treasury of the United States in the same manner, and subject to the same requirements, as are applicable in the case of any rent, royalty, or interest collected by an officer or employee of the United States, except that such amounts shall be deposited in the Treasury not later than 10 days after receipt by the State.

**Effective: August 13, 1996**

**§ 1735. Delegation of royalty collections and related activities**

(a) Authorization of Secretary

Upon written request of any State, the Secretary is authorized to delegate, in accordance with the provisions of this section, all or part of the authorities and responsibilities of the Secretary under this chapter to:

(1) conduct inspections, audits, and investigations;

(2) receive and process production and financial reports;

(3) correct erroneous report data;

(4) perform automated verification; and

(5) issue demands, subpoenas, and orders to perform restructured accounting, for royalty management enforcement purposes,

to any State with respect to all Federal land within the State.

(b) Prerequisites

After notice and opportunity for a hearing, the Secretary is authorized to delegate such authorities and responsibilities granted under this section as the State has requested, if the Secretary finds that--

(1) it is likely that the State will provide adequate resources to achieve the purposes of this chapter;

(2) the State has demonstrated that it will effectively and faithfully administer the rules and regulations of the Secretary under this chapter in accordance with the requirements of subsections (c) and (d) of this section;

(3) such delegation will not create an unreasonable burden on any lessee;

(4) the State agrees to adopt standardized reporting procedures prescribed by the Secretary for royalty and production accounting purposes, unless the State and all affected parties (including the Secretary) otherwise agree;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(5) the State agrees to follow and adhere to regulations and guidelines issued by the Secretary pursuant to the mineral leasing laws regarding valuation of production; and

(6) where necessary for a State to have authority to carry out and enforce a delegated activity, the State agrees to enact such laws and promulgate such regulations as are consistent with relevant Federal laws and regulations

with respect to the Federal lands within the State.

(c) Ruling as to consistency of State's proposal

After notice and opportunity for hearing, the Secretary shall issue a ruling as to the consistency of a State's proposal with the provisions of this section and regulations under subsection (d) of this section within 90 days after submission of such proposal. In any unfavorable ruling, the Secretary shall set forth the reasons therefor and state whether the Secretary will agree to delegate to the State if the State meets the conditions set forth in such ruling.

(d) Promulgation of standards and regulations with respect to delegation

After consultation with State authorities, the Secretary shall by rule promulgate, within 12 months after August 13, 1996, standards and regulations pertaining to the authorities and responsibilities to be delegated under subsection (a) of this section, including standards and regulations pertaining to--

(1) audits to be performed;

(2) records and accounts to be maintained;

(3) reporting procedures to be required by States under this section;

(4) receipt and processing of production and financial reports;

(5) correction of erroneous report data;

(6) performance of automated verification;

(7) issuance of standards and guidelines in order to avoid duplication of effort;

(8) transmission of report data to the Secretary; and

(9) issuance of demands, subpoenas, and orders to perform restructured accounting, for royalty management enforcement purposes.

Such standards and regulations shall be designed to provide reasonable assurance that a uniform and effective royalty management system will prevail among the States. The records and accounts under paragraph (2) shall be sufficient to allow the Secretary to monitor the performance of any State under this section.

(e) Revocation; issuance of demand or order by Secretary

If, after notice and opportunity for a hearing, the Secretary finds that any State to which any authority or responsibility of the Secretary has been delegated under this section is in violation of any requirement of this section or any rule thereunder, or that an affirmative finding by the Secretary under subsection (b) of this section can no longer be made, the Secretary may revoke such delegation. If, after providing written notice to a delegated State and a reasonable opportunity to take corrective action requested by the Secretary, the Secretary determines

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that the State has failed to issue a demand or order to a Federal lessee within the State, that such failure may result in an underpayment of an obligation due the United States by such lessee, and that such underpayment may be uncollected without Secretarial intervention, the Secretary may issue such demand or order in accordance with the provisions of this chapter prior to or absent the withdrawal of delegated authority.

(f) Compensation to State for costs of delegation; allocation of costs

Subject to appropriations, the Secretary shall compensate any State for those costs which may be necessary to carry out the delegated activities under this Section [FN1]. Payment shall be made no less than every quarter during the fiscal year. Compensation to a State may not exceed the Secretary's reasonably anticipated expenditure for performance of such delegated activities by the Secretary. Such costs shall be allocable for the purposes of section 191(b) of this title to the administration and enforcement of laws providing for the leasing of any onshore lands or interests in land owned by the United States. Any further allocation of costs under section 191(b) of this title made by the Secretary for oil and gas activities, other than those costs to compensate States for delegated activities under this chapter, shall be only those costs associated with onshore oil and gas activities and may not include any duplication of costs allocated pursuant to the previous sentence. Nothing in this section affects the Secretary's authority to make allocations under section 191(b) of this title for non-oil and gas mineral activities. All moneys received from sales, bonuses, rentals, royalties, assessments and interest, including money claimed to be due and owing pursuant to a delegation under this section, shall be payable and paid to the Treasury of the United States.

(g) Judicial review

Any action of the Secretary to approve or disapprove a proposal submitted by a State under this section shall be subject to judicial review in the United States district court which includes the capital of the State submitting the proposal.

(h) Existing delegation

Any State operating pursuant to a delegation existing on August 13, 1996, may continue to operate under the terms and conditions of the delegation, except to the extent that a revision of the existing agreement is adopted pursuant to this section.

[FN1] So in original.

**Effective: [See Text Amendments]**

**§ 1736. Shared civil penalties**

An amount equal to 50 per centum of any civil penalty collected by the Federal Government under this chapter resulting from activities conducted by a State or Indian tribe pursuant to a cooperative agreement under section 1732 of this title or a State under a delegation under section 1735 of this title, shall be payable to such State or tribe. Such amount shall be deducted from any compensation due such State or Indian tribe under section 1732 of this title or such State under section 1735 of this title.

**Effective: [See Text Amendments]**

**Subchapter III. General Provisions**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**§ 1751. Secretarial authority**

(a) Prescription of rules and regulations

The Secretary shall prescribe such rules and regulations as he deems reasonably necessary to carry out this chapter.

(b) Conformity with rulemaking provisions

Rules and regulations issued to implement this chapter shall be issued in conformity with section 553 of Title 5, notwithstanding section 553(a)(2) of that title.

(c) Contracts with non-Federal Government inspectors, auditors, etc.; coordination of auditing and enforcement functions

In addition to entering into cooperative agreements or delegation of authority authorized under this chapter, the Secretary may contract with such non-Federal Government inspectors, auditors, and other persons as he deems necessary to aid in carrying out his functions under this chapter and its implementation. With respect to his auditing and enforcement functions under this chapter, the Secretary shall coordinate such functions so as to avoid to the maximum extent practicable, subjecting lessees, operators, or other persons to audits or investigations of the same subject matter by more than one auditing or investigating entity at the same time.

**Effective: November 10, 1998**

**§ 1752. Reports**

The Secretary shall submit to the Congress an annual report on the implementation of this chapter. The information to be included in the report and the format of the report shall be developed by the Secretary after consulting with the Committees on Natural Resources of the House of Representatives and on Energy and Natural Resources of the Senate. The Secretary shall also report on the progress of the Department in reconciling account balances.

**Effective: November 10, 1998**

**§ 1753. Relation to other laws**

(a) Supplemental nature of chapter

The penalties and authorities provided in this chapter are supplemental to, and not in derogation of, any penalties or authorities contained in any other provision of law.

(b) Responsibilities of Secretary related to minerals on Federal and Indian lands

Nothing in this chapter shall be construed to reduce the responsibilities of the Secretary to ensure prompt and proper collection of revenues from coal, uranium and other energy and nonenergy minerals on Federal and Indian lands, or to restrain the Secretary from entering into cooperative agreements or other appropriate arrangements with States and Indian tribes to share royalty management responsibilities and activities for such minerals under existing authorities.

(c) Authority and responsibilities of Inspector General and Comptroller General unaffected

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Nothing in this chapter shall be construed to enlarge, diminish, or otherwise affect the authority or responsibility of the Inspector General of the Department of the Interior or of the Comptroller General of the United States.

(d) Lands and land interests entrusted to Tennessee Valley Authority unaffected

No provision of this chapter impairs or affects lands and interests in land entrusted to the Tennessee Valley Authority.

**Effective: [See Text Amendments]**

**§ 1754. Funding**

Effective October 1, 1983, there are hereby authorized to be appropriated such sums as may be necessary to carry out the provisions of this chapter, including such sums as may be necessary for the cooperative agreements, contracts, and delegations authorized by this chapter: *Provided,* That nothing in this chapter shall be construed to affect or impair any authority to enter into contracts or make payments under any other provision of law.

**Effective: [See Text Amendments]**

**§ 1755. Statute of limitations**

Except in the case of fraud, any action to recover penalties under this chapter shall be barred unless the action is commenced within 6 years after the date of the act or omission which is the basis for the action.

**Effective: [See Text Amendments]**

**§ 1756. Expanded royalty obligations**

Any lessee is liable for royalty payments on oil or gas lost or wasted from a lease site when such loss or waste is due to negligence on the part of the operator of the lease, or due to the failure to comply with any rule or regulation, order or citation issued under this chapter or any mineral leasing law.

**Effective: [See Text Amendments]**

**§ 1757. Severability**

If any provision of this chapter or the applicability thereof to any person or circumstances is held invalid, the remainder of this chapter and the application of such provision to other persons or circumstances shall not be affected thereby.

**Effective: February 08, 2005**

**§ 1758. Minerals Management Service; royalty-in-kind program**

That in fiscal year 2006 and thereafter, the MMS may under the royalty-in-kind program, or under its authority to transfer oil to the Strategic Petroleum Reserve, use a portion of the revenues from royalty-in-kind sales, without regard to fiscal year limitation, to pay for transportation to wholesale market centers or upstream pooling points, to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

process or otherwise dispose of royalty production taken in kind, and to recover MMS transportation costs, salaries, and other administrative costs directly related to the royalty-in-kind program.

Current through P.L. 109-237 (excluding P.L. 109-233, 109-234) approved 06-23-06
END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.