Westlaw.



Code of Federal Regulations Currentness
Title 25. Indians
Chapter I. Bureau of Indian Affairs, Department of the Interior
Subchapter H. Land and Water
➡ Part 162. Leases and Permits (Refs & Annos)
Subpart A. General Provisions

**§ 162.100 What are the purposes of this part?**

(a) The purposes of this part are to:

(1) Identify the conditions and authorities under which certain interests in Indian land and Government land may be leased;

(2) Describe the manner in which various types of leases may be obtained;

(3) Identify terms and conditions that may be required in various types of leases;

(4) Describe the policies and procedures that will be applied in the administration and enforcement of various types of leases; and

(5) Identify special requirements that apply to leases made under special acts of Congress that apply only to certain Indian reservations.

(b) This part includes six subparts, including separate, self-contained subparts relating to Agricultural Leases (Subpart B), Residential Leases (Subpart C, reserved), Business Leases (Subpart D, reserved), and Non-Agricultural Leases (Subpart F), respectively. Subpart E identifies special provisions applicable only to leases made under special acts of Congress that apply only to certain Indian reservations. Leases covered by subpart E are also subject to the general provisions in subparts A through F, respectively, except to the extent those general provisions are inconsistent with any of the special provisions in subpart E or any special act of Congress under which those leases are made.

(c) These regulations apply to all leases in effect when the regulations are promulgated; however, unless otherwise agreed by the parties, these regulations will not affect the validity or terms of any existing lease.

**§ 162.101 What key terms do I need to know?**

For purposes of this part:

Adult means an individual who is 18 years of age or older.

Agricultural land means Indian land or Government land suited or used for the production of crops, livestock or other agricultural products, or Indian land suited or used for a business that supports the surrounding agricultural community.

Agricultural lease means a lease of agricultural land for farming and/or grazing purposes.

AIARMA means the American Indian Agricultural Resources Management Act of December 3, 1993 (107 Stat. 2011, 25 U.S.C. 3701 et seq.), as amended on November 2, 1994 (108 Stat. 4572).

Assignment means an agreement between a tenant and an assignee, whereby the assignee acquires all of the tenant's rights, and assumes all of the tenant's obligations, under a lease.

BIA means the Bureau of Indian Affairs within the Department of the Interior and any tribe acting on behalf of BIA under § 162.109 of this part.

Bond means security for the performance of certain lease obligations, as furnished by the tenant, or a guaranty of such performance as furnished by a third-party surety.

Day means a calendar day.

Emancipated minor means a person under 18 years of age who is married or who is determined by a court of competent jurisdiction to be legally able to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

care for himself or herself.

Fair annual rental means the amount of rental income that a leased tract of Indian land would most probably command in an open and competitive market.

Fee interest means an interest in land that is owned in unrestricted fee status, and is thus freely alienable by the fee owner.

Fractionated tract means a tract of Indian land owned in common by Indian landowners and/or fee owners holding undivided interests therein.

Government land means any tract, or interest therein, in which the surface estate is owned by the United States and administered by BIA, not including tribal land that has been reserved for administrative purposes.

Immediate family means a spouse, brother, sister, lineal ancestor, lineal descendant, or member of the household of an individual Indian landowner.

Indian land means any tract in which any interest in the surface estate is owned by a tribe or individual Indian in trust or restricted status.

Indian landowner means a tribe or individual Indian who owns an interest in Indian land in trust or restricted status.

Individually-owned land means any tract, or interest therein, in which the surface estate is owned by an individual Indian in trust or restricted status.

Interest, when used with respect to Indian land, means an ownership right to the surface estate of Indian land that is unlimited or uncertain in duration, including a life estate.

Lease means a written agreement between Indian landowners and a tenant or lessee, whereby the tenant or lessee is granted a right to possession of Indian land, for a specified purpose and duration. Unless otherwise provided, the use of this term will also include permits, as appropriate.

Lessee means tenant, as defined in this section.

Life estate means an interest in Indian land that is limited, in duration, to the life of the life tenant holding the interest, or the life of some other person.

Majority interest means more than 50% of the trust or restricted interests in a tract of Indian land.

Minor means an individual who is less than 18 years of age.

Mortgage means a mortgage, deed of trust or other instrument that pledges a tenant's leasehold interest as security for a debt or other obligation owed by the tenant to a lender or other mortgagee.

NEPA means the National Environmental Policy Act (42 U.S.C. § 4321, et seq.).

Non compos mentis means a person who has been legally determined by a court of competent jurisdiction to be of unsound mind or incapable of managing his or her own affairs.

Permit means a written agreement between Indian landowners and the applicant for the permit, also referred to as a permittee, whereby the permittee is granted a revocable privilege to use Indian land or Government land, for a specified purpose.

Remainder means an interest in Indian land that is created at the same time as a life estate, for the use and enjoyment of its owner after the life estate terminates.

Restricted land or restricted status means land the title to which is held by an individual Indian or a tribe and which can only be alienated or encumbered by the owner with the approval of the Secretary because of limitations contained in the conveyance instrument pursuant to federal law.

Secretary means the Secretary of the Interior or an authorized representative.

Sublease means a written agreement by which the tenant grants to an individual or entity a right to possession no greater than that held by the tenant under the lease.

Surety means one who guarantees the performance of another.

Tenant means a person or entity who has acquired a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

legal right of possession to Indian land by a lease or permit under this part.

Trespass means an unauthorized possession, occupancy or use of Indian land.

Tribal land means the surface estate of land or any interest therein held by the United States in trust for a tribe, band, community, group or pueblo of Indians, and land that is held by a tribe, band, community, group or pueblo of Indians, subject to federal restrictions against alienation or encumbrance, and includes such land reserved for BIA administrative purposes when it is not immediately needed for such purposes. The term also includes lands held by the United States in trust for an Indian corporation chartered under section 17 of the Act of June 18, 1934 (48 Stat. 984; 25 U.S.C. § 476).

Tribal laws means the body of law that governs land and activities under the jurisdiction of a tribe, including ordinances and other enactments by the tribe, tribal court rulings, and tribal common law.

Trust land means any tract, or interest therein, that the United States holds in trust status for the benefit of a tribe or individual Indian.

Undivided interest means a fractional share in the surface estate of Indian land, where the surface estate is owned in common with other Indian landowners or fee owners.

Us/We/Our means the Secretary or BIA and any tribe acting on behalf of the Secretary or BIA under § 162.110 of this part.

USPAP means the Uniform Standards of Professional Appraisal Practice, as promulgated by the Appraisal Standards Board of the Appraisal Foundation to establish requirements and procedures for professional real property appraisal practice.

**§ 162.102 What land, or interests in land, are subject to these regulations?**

(a) These regulations apply to Indian land and Government land, including any tract in which an interest is owned by an individual Indian or tribe in trust or restricted status.

(b) Where a life estate and remainder interest are both owned in trust or restricted status, the life estate and remainder interest must both be leased under these regulations, unless the lease is for less than one year in duration. Unless otherwise provided by the document creating the life estate or by agreement, rent payable under the lease must be paid to the life tenant under part 179 of this chapter.

(c) In approving a lease under these regulations, we will not lease any fee interest in Indian land, nor will we collect rent on behalf of any fee owners. The leasing of the trust and restricted interests of the Indian landowners will not be conditioned on a lease having been obtained from the owners of any fee interests. Where all of the trust or restricted interests in a tract are subject to a life estate held in fee status, we will approve a lease of the remainder interests only if such action is necessary to preserve the value of the land or protect the interests of the Indian landowners.

(d) These regulations do not apply to tribal land that is leased under a corporate charter issued by us pursuant to 25 U.S.C. § 477, or under a special act of Congress authorizing leases without our approval under certain conditions, except to the extent that the authorizing statutes require us to enforce such leases on behalf of the Indian landowners.

(e) To the extent any regulations in this part conflict with the Indian Land Consolidation Act Amendments of 2000, Public Law 106-462, the provisions of that Act will govern.

**§ 162.103 What types of land use agreements are covered by these regulations?**

(a) These regulations cover leases that authorize the possession of Indian land. These regulations do not apply to:

(1) Mineral leases, prospecting permits, or mineral development agreements, as covered by parts 211, 212 and 225 of this chapter and similar parts specific parts specific to particular tribes;

(2) Grazing permits, as covered by part 166 of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

this chapter and similar parts specific parts specific to particular tribes;

(3) Timber contracts, as covered by part 163 of this chapter;

(4) Management contracts, joint venture agreements, or other encumbrances of tribal land, as covered by 25 U.S.C. § 81, as amended;

(5) Leases of water rights associated with Indian land, except to the extent the use of such water rights is incorporated in a lease of the land itself; and

(6) Easements or rights-of-way, as covered by part 169 of this chapter.

(b) Where appropriate, the regulations in this part that specifically refer to leases will apply to permits that authorize the temporary, non-possessory use of Indian land or Government land, not including:

(1) Land assignments and similar instruments authorizing temporary uses by tribal members, in accordance with tribal laws or custom; and

(2) Trader's licenses issued under part 140 of this chapter.

**§ 162.104 When is a lease needed to authorize possession of Indian Land?**

(a) An Indian landowner who owns 100% of the trust or restricted interests in a tract may take possession without a lease or any other prior authorization from us.

(b) An Indian landowner of a fractional interest in a tract must obtain a lease of the other trust and restricted interests in the tract, under these regulations, unless the Indian co-owners have given the landowner's permission to take or continue in possession without a lease.

(c) A parent or guardian of a minor child who owns 100% of the trust interests in the land may take possession without a lease. We may require that the parent or guardian provide evidence of a direct benefit to the minor child. When the child reaches the age of majority, a lease must be obtained under these regulations to authorize continued possession.

(d) Any other person or legal entity, including an independent legal entity owned and operated by a tribe, must obtain a lease under these regulations before taking possession.

**§ 162.105 Can tracts with different Indian landowners be unitized for leasing purposes?**

(a) A lease negotiated by Indian landowners may cover more than one tract of Indian land, but the minimum consent requirements for leases granted by Indian landowners under subparts B through D of this part will apply to each tract separately. We may combine multiple tracts into a unit for leases negotiated or advertised by us, if we determine that unitization is in the Indian landowners' best interests and consistent with the efficient administration of the land.

(b) Unless otherwise provided in the lease, the rent or other consideration derived from a unitized lease will be distributed based on the size of each landowner's interest in proportion to the acreage within the entire unit.

**§ 162.106 What will BIA do if possession is taken without an approved lease or other proper authorization?**

(a) If a lease is required, and possession is taken without a lease by a party other than an Indian landowner of the tract, we will treat the unauthorized use as a trespass. Unless we have reason to believe that the party in possession is engaged in negotiations with the Indian landowners to obtain a lease, we will take action to recover possession on behalf of the Indian landowners, and pursue any additional remedies available under applicable law.

(b) Where a trespass involves Indian agricultural land, we will also assess civil penalties and costs under part 166, subpart I, of this chapter.

**§ 162.107 What are BIA's objectives in granting or approving leases?**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(a) We will assist Indian landowners in leasing their land, either through negotiations or advertisement. In reviewing a negotiated lease for approval, we will defer to the landowners' determination that the lease is in their best interest, to the maximum extent possible. In granting a lease on the landowners' behalf, we will obtain a fair annual rental and attempt to ensure (through proper notice) that the use of the land is consistent with the landowners' wishes. We will also recognize the rights of Indian landowners to use their own land, so long as their Indian co-owners are in agreement and the value of the land is preserved.

(b) We will recognize the governing authority of the tribe having jurisdiction over the land to be leased, preparing and advertising leases in accordance with applicable tribal laws and policies. We will promote tribal control and self-determination over tribal land and other land under the tribe's jurisdiction, through contracts and self-governance compacts entered into under the Indian Self-Determination and Education Assistance Act, as amended, 25 U.S.C. § 450f et seq.

**§ 162.108 What are BIA's responsibilities in administering and enforcing leases?**

(a) We will ensure that tenants meet their payment obligations to Indian landowners, through the collection of rent on behalf of the landowners and the prompt initiation of appropriate collection and enforcement actions. We will also assist landowners in the enforcement of payment obligations that run directly to them, and in the exercise of any negotiated remedies that apply in addition to specific remedies made available to us under these or other regulations.

(b) We will ensure that tenants comply with the operating requirements in their leases, through appropriate inspections and enforcement actions as needed to protect the interests of the Indian landowners and respond to concerns expressed by them. We will take immediate action to recover possession from trespassers operating without a lease, and take other emergency action as needed to preserve the value of the land.

**§ 162.109 What laws, other than these regulations, will apply to leases granted or approved under this part?**

(a) Leases granted or approved under this part will be subject to federal laws of general applicability and any specific federal statutory requirements that are not incorporated in these regulations.

(b) Tribal laws generally apply to land under the jurisdiction of the tribe enacting such laws, except to the extent that those tribal laws are inconsistent with these regulations or other applicable federal law. These regulations may be superseded or modified by tribal laws, however, so long as:

(1) The tribal laws are consistent with the enacting tribe's governing documents;

(2) The tribe has notified us of the superseding or modifying effect of the tribal laws;

(3) The superseding or modifying of the regulation would not violate a federal statute or judicial decision, or conflict with our general trust responsibility under federal law; and

(4) The superseding or modifying of the regulation applies only to tribal land.

(c) State law may apply to lease disputes or define the remedies available to the Indian landowners in the event of a lease violation by the tenant, if the lease so provides and the Indian landowners have expressly agreed to the application of state law.

**§ 162.110 Can these regulations be administered by tribes, on the Secretary's or on BIA's behalf?**

Except insofar as these regulations provide for the granting, approval, or enforcement of leases and permits, the provisions in these regulations that authorize or require us to take certain actions will extend to any tribe or tribal organization that is administering specific programs or providing specific services under a contract or self-governance compact entered into under the Indian Self-Determination and Education Assistance Act (25 U.S.C. § 450f et seq.).

**§ 162.111 Who owns the records associated with**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**this part?**

(a) Records are the property of the United States if they:

(1) Are made or received by a tribe or tribal organization in the conduct of a federal trust function under 25 U.S.C. § 450f et seq., including the operation of a trust program; and

(2) Evidence the organization, functions, policies, decisions, procedures, operations, or other activities undertaken in the performance of a federal trust function under this part.

(b) Records not covered by paragraph (a) of this section that are made or received by a tribe or tribal organization in the conduct of business with the Department of the Interior under this part are the property of the tribe.

**§ 162.112 How must records associated with this part be preserved?**

(a) Any organization, including tribes and tribal organizations, that have records identified in § 162.111(a) must preserve the records in accordance with approved Departmental records retention procedures under the Federal Records Act, 44 U.S.C. Chapters 29, 31 and 33. These records and related records management practices and safeguards required under the Federal Records Act are subject to inspection by the Secretary and the Archivist of the United States.

(b) A tribe or tribal organization should preserve the records identified in § 162.111(b) for the period of time authorized by the Archivist of the United States for similar Department of the Interior records in accordance with 44 U.S.C. Chapter 33. If a tribe or tribal organization does not preserve records associated with its conduct of business with the Department of the Interior under this part, it may prevent the tribe or tribal organization from being able to adequately document essential transactions or furnish information necessary to protect its legal and financial rights or those of persons directly affected by its activities.

**§ 162.113 May decisions under this part be appealed?**

Yes. Except where otherwise provided in this part, appeals from decisions by the BIA under this part may be taken pursuant to 25 CFR part 2.

**Subpart B. Agricultural Leases**

**General Provisions**

**§ 162.200 What types of leases are covered by this subpart?**

The regulations in this subpart apply to agricultural leases, as defined in this part. The regulations in this subpart may also apply to business leases on agricultural land, where appropriate.

**§ 162.201 Must agricultural land be managed in accordance with a tribe's agricultural resource management plan?**

(a) Agricultural land under the jurisdiction of a tribe must be managed in accordance with the goals and objectives in any agricultural resource management plan developed by the tribe, or by us in close consultation with the tribe, under AIARMA.

(b) A ten-year agricultural resource management and monitoring plan must be developed through public meetings and completed within three years of the initiation of the planning activity. Such a plan must be developed through public meetings, and be based on the public meeting records and existing survey documents, reports, and other research from federal agencies, tribal community colleges, and land grant universities. When completed, the plan must:

(1) Determine available agricultural resources;

(2) Identify specific tribal agricultural resource goals and objectives;

(3) Establish management objectives for the resources;

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(4) Define critical values of the Indian tribe and its members and identify holistic management objectives; and

(5) Identify actions to be taken to reach established objectives.

(c) Where the regulations in this subpart are inconsistent with a tribe's agricultural resource management plan, we may waive the regulations under part 1 of this title, so long as the waiver does not violate a federal statute or judicial decision or conflict with our general trust responsibility under federal law.

**§ 162.202 How will tribal laws be enforced on agricultural land?**

(a) Unless prohibited by federal law, we will recognize and comply with tribal laws regulating activities on agricultural land, including tribal laws relating to land use, environmental protection, and historic or cultural preservation.

(b) While the tribe is primarily responsible for enforcing tribal laws pertaining to agricultural land, we will:

(1) Assist in the enforcement of tribal laws;

(2) Provide notice of tribal laws to persons or entities undertaking activities on agricultural land, under § 162.204(c) of this subpart; and

(3) Require appropriate federal officials to appear in tribal forums when requested by the tribe, so long as such an appearance would not:

(i) Be inconsistent with the restrictions on employee testimony set forth at 43 CFR Part 2, Subpart E;

(ii) Constitute a waiver of the sovereign immunity of the United States; or

(iii) Authorize or result in a review of our actions by a tribal court.

(c) Where the regulations in this subpart are inconsistent with a tribal law, but such regulations cannot be superseded or modified by the tribal law under § 162.109 of this part, we may waive the regulations under part 1 of this chapter, so long as the waiver does not violate a federal statute or judicial decision or conflict with our general trust responsibility under federal law.

**§ 162.203 When can the regulations in this subpart be superseded or modified by tribal laws and leasing policies?**

(a) The regulations in this subpart may be superseded or modified by tribal laws, under the circumstances described in § 162.109(b) of this part.

(b) When specifically authorized by an appropriate tribal resolution establishing a general policy for the leasing of tribal and individually-owned agricultural land, we will:

(1) Waive the general prohibition against tenant preferences in leases advertised for bid under § 162.212 of this subpart, by allowing prospective Indian tenants to match the highest responsible bid (unless the tribal leasing policy specifies some other manner in which the preference must be afforded);

(2) Waive the requirement that a tenant post a bond under § 162.234 of this subpart;

(3) Modify the requirement that a tenant post a bond in a form described in § 162.235 of this subpart;

(4) Approve leases of tribal land at rates established by the tribe, as provided in § 162.222(b) of this subpart.

(c) When specifically authorized by an appropriate tribal resolution establishing a general policy for the leasing of "highly fractionated undivided heirship lands" (as defined in the tribal leasing policy), we may waive or modify the three-month notice requirement in § 162.209(b) of this subpart, so long as:

(1) The tribal law or leasing policy adopts an alternative plan for providing notice to Indian landowners, before an agricultural lease is granted by us on their behalf; and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(2) A waiver or modification of the three-month notice requirement is needed to prevent waste, reduce idle land acreage, and ensure lease income to the Indian landowners.

(d) Tribal leasing policies of the type described in paragraphs (b) through (c) of this section will not apply to individually-owned land that has been made exempt from such laws or policies under § 162.205 of this subpart.

**§ 162.204 Must notice of applicable tribal laws and leasing policies be provided?**

(a) A tribe must provide us with an official copy of any tribal law or leasing policy that supersedes or modifies these regulations under §§ 162.109 or 162.203 of this part. If the tribe has not already done so, we will provide notice of such a tribal law or leasing policy to affected Indian landowners and persons or entities undertaking activities on agricultural land. Such notice will be provided in the manner described in paragraphs (b) through (c) of this section.

(b) We will provide notice to Indian landowners, as to the superseding or modifying effect of any tribal leasing policy and their right to exempt their land from such a policy. Such notice will be provided by:

(1) Written notice included in a notice of our intent to lease the land, issued under § 162.209(b) of this subpart; or

(2) Public notice posted at the tribal community building or the United States Post Office, or published in the local newspaper that serves the area in which the Indian owners' land is located, at the time the tribal leasing policy is adopted.

(c) We will provide notice to persons or entities undertaking activities on agricultural land, as to the general applicability of tribal laws and the superseding or modifying effect of particular tribal laws and leasing policies. Such notice will be provided by:

(1) Written notice included in advertisements for lease, issued under § 162.212 of this subpart; or

(2) Public notice posted at the tribal community building or the United States Post Office, or published in a local newspaper of general circulation, at the time the tribal law is enacted or the leasing policy adopted.

**§ 162.205 Can individual Indian landowners exempt their agricultural land from certain tribal leasing policies?**

(a) Individual Indian landowners may exempt their agricultural land from the application of a tribal leasing policy of a type described in § 162.203(b) through (c) of this subpart, if the Indian owners of at least 50% of the trust or restricted interests in the land submit a written objection to us before a lease is granted or approved.

(b) Upon our receipt of a written objection from the Indian landowners that satisfies the requirements of paragraph (a) of this section, we will notify the tribe that the owners' land has been exempted from a specific tribal leasing policy. If the exempted land is part of a unitized lease tract, such land will be removed from the unit and leased separately, if appropriate.

(c) The procedures described in paragraphs (a) and (b) of this section will also apply to withdrawing an approved exemption.

**How to Obtain a Lease**

**§ 162.206 Can the terms of an agricultural lease be negotiated with the Indian landowners?**

An agricultural lease may be obtained through negotiation. We will assist prospective tenants in contacting the Indian landowners or their representatives for the purpose of negotiating a lease, and we will assist the landowners in those negotiations upon request.

**§ 162.207 When can the Indian landowners grant an agricultural lease?**

(a) Tribes grant leases of tribally-owned

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

agricultural land, including any tribally-owned undivided interest(s) in a fractionated tract, subject to our approval. Where tribal land is subject to a land assignment made to a tribal member or some other individual under tribal law or custom, the individual and the tribe must both grant the lease, subject to our approval.

(b) Adult Indian owners, or emancipated minors, may grant agricultural leases of their land, including undivided interests in fractionated tracts, subject to our approval.

(c) An agricultural lease of a fractionated tract may be granted by the owners of a majority interest in the tract, subject to our approval. Although prior notice to non-consenting individual Indian landowners is generally not needed prior to our approval of such a lease, a right of first refusal must be offered to any non-consenting Indian landowner who is using the entire lease tract at the time the lease is entered into by the owners of a majority interest. Where the owners of a majority interest grant such a lease on behalf of all of the Indian owners of a fractionated tract, the non-consenting Indian landowners must receive a fair annual rental.

(d) As part of the negotiation of a lease, Indian landowners may advertise their land to identify potential tenants with whom to negotiate.

**§ 162.208 Who can represent the Indian landowners in negotiating or granting an agricultural lease?**

The following individuals or entities may represent an individual Indian landowner:

(a) An adult with custody acting on behalf of his or her minor children;

(b) A guardian, conservator, or other fiduciary appointed by a court of competent jurisdiction to act on behalf of an individual Indian landowner;

(c) An adult or legal entity who has been given a written power of attorney that:

(1) Meets all of the formal requirements of any applicable tribal or state law;

(2) Identifies the attorney-in-fact and the land to be leased; and

(3) Describes the scope of the power granted and any limits thereon.

**§ 162.209 When can BIA grant an agricultural lease on behalf of an Indian landowner?**

(a) We may grant an agricultural lease on behalf of:

(1) Individuals who are found to be non compos mentis by a court of competent jurisdiction;

(2) Orphaned minors;

(3) The undetermined heirs and devisees of deceased Indian owners;

(4) Individuals who have given us a written power of attorney to lease their land; and

(5) Individuals whose whereabouts are unknown to us, after reasonable attempts are made to locate such individuals; and

(6) The individual Indian landowners of fractionated Indian land, when necessary to protect the interests of the individual Indian landowners.

(b) We may grant an agricultural lease on behalf of all of the individual Indian owners of a fractionated tract, where:

(1) We have provided the Indian landowners with written notice of our intent to grant a lease on their behalf, but the Indian landowners are unable to agree upon a lease during a three-month negotiation period immediately following such notice, or any other notice period established by a tribe under § 162.203(c) of this subpart; and

(2) The land is not being used by an Indian landowner under § 162.104(b) of this part.

**§ 162.210 When can BIA grant a permit covering agricultural land?**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(a) We may grant a permit covering agricultural land in the same manner as we would grant an agricultural lease under § 162.209 of this part. We may also grant a permit on behalf of individual Indian landowners, without prior notice, if it is impractical to provide notice to the owners and no substantial injury to the land will occur.

(b) We may grant a permit covering agricultural land, but not an agricultural lease, on government land.

(c) We will not grant a permit on tribal agricultural land, but a tribe may grant a permit, subject to our approval, in the same manner as it would grant a lease under § 162.207(a) of this subpart.

**§ 162.211 What type of valuation or evaluation methods will be applied in estimating the fair annual rental of Indian land?**

(a) To support the Indian landowners in their negotiations, and to assist in our consideration of whether an agricultural lease is in the Indian landowners' best interest, we must determine the fair annual rental of the land prior to our grant or approval of the lease, unless the land may be leased at less than a fair annual rental under § 162.222(b) through (c) of this subpart.

(b) A fair annual rental may be determined by competitive bidding, appraisal, or any other appropriate valuation method. Where an appraisal or other valuation is needed to determine the fair annual rental, the appraisal or valuation must be prepared in accordance with USPAP.

**§ 162.212 When will the BIA advertise Indian land for agricultural leases?**

(a) We will generally advertise Indian land for agricultural leasing:

(1) At the request of the Indian landowners; or

(2) Before we grant a lease under § 162.209(b) of this subpart.

(b) Advertisements will provide prospective tenants with notice of any superseding tribal laws and leasing policies that have been made applicable to the land under §§ 162.109 and 162.203 of this part, along with certain standard terms and conditions to be included in the lease. Advertisements will prohibit tenant preferences, and bidders at lease sales will not be afforded any preference, unless a preference in favor of individual Indians is required by a superseding tribal law or leasing policy.

(c) Advertisements will require sealed bids, and they may also provide for further competitive bidding among the prospective tenants at the conclusion of the bid opening. Competitive bidding should be supported, at a minimum, by a market study or rent survey that is consistent with USPAP.

**§ 162.213 What supporting documents must be provided prior to BIA's grant or approval of an agricultural lease?**

(a) If the tenant is a corporation, partnership or other legal entity, it must provide organizational and financial documents, as needed to show that the lease will be enforceable against the tenant and the tenant will be able to perform all of its lease obligations.

(b) Where a bond is required under § 162.234 of this subpart, the bond must be furnished before we grant or approve the lease.

(c) The tenant must provide environmental and archaeological reports, surveys, and site assessments, as needed to document compliance with NEPA and other applicable federal and tribal land use requirements.

**§ 162.214 How and when will BIA decide whether to approve an agricultural lease?**

(a) Before we approve a lease, we must determine in writing that the lease is in the best interest of the Indian landowners. In making that determination, we will:

(1) Review the lease and supporting documents;

(2) Identify potential environmental impacts and ensure compliance with all applicable environmental laws, land use laws, and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ordinances (including preparation of the appropriate review documents under NEPA);

(3) Assure ourselves that adequate consideration has been given, as appropriate, to:

(i) The relationship between the use of the leased premises and the use of neighboring lands;

(ii) The height, quality, and safety of any structures or other facilities to be constructed on the leased premises;

(iii) The availability of police and fire protection, utilities, and other essential community services;

(iv) The availability of judicial forums for all criminal and civil matters arising on the leased premises; and

(v) The effect on the environment of the proposed land use.

(4) Require any lease modifications or mitigation measures that are needed to satisfy any requirements of this subpart, or any other federal or tribal land use requirements.

(b) Where an agricultural lease is in a form that has previously been accepted or approved by us, and all of the documents needed to support the findings required by paragraph (a) of this section have been received, we will decide whether to approve the lease within 30 days of the date of our receipt of the lease and supporting documents. If we decide to approve or disapprove a lease, we will notify the parties immediately and advise them of their right to appeal the decision under part 2 of this chapter. Copies of agricultural leases that have been approved will be provided to the tenant, and made available to the Indian landowners upon request.

**§ 162.215 When will an agricultural lease be effective?**

Unless otherwise provided in the lease, an agricultural lease will be effective on the date on which the lease is approved by us. An agricultural lease may be made effective on some past or future date, by agreement, but such a lease may not be approved more than one year prior to the date on which the lease term is to commence.

**§ 162.216 When will a BIA decision to approve an agricultural lease be effective?**

Our decision to approve an agricultural lease will be effective immediately, notwithstanding any appeal that may be filed under part 2 of this chapter.

**§ 162.217 Must an agricultural lease or permit be recorded?**

(a) An agricultural lease or permit must be recorded in our Land Titles and Records Office with jurisdiction over the land. We will record the lease or permit immediately following our approval under this subpart.

(b) Agricultural leases of tribal land that do not require our approval, under § 162.102 of this part, must be recorded by the tribe in our Land Titles and Records Office with jurisdiction over the land.

**Lease Requirements**

**§ 162.218 Is there a standard agricultural lease form?**

Based on the need for flexibility in advertising, negotiating and drafting of appropriate lease terms and conditions, there is no standard agricultural lease form that must be used. We will assist the Indian landowners in drafting lease provisions that conform to the requirements of this part.

**§ 162.219 Are there any provisions that must be included in an agricultural lease?**

In addition to the other requirements of this part, all agricultural leases must provide that:

(a) The obligations of the tenant and its sureties to the Indian landowners will also be enforceable by

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the United States, so long as the land remains in trust or restricted status;

(b) Nothing contained in this lease shall operate to delay or prevent a termination of federal trust responsibilities with respect to the land by the issuance of a fee patent or otherwise during the term of the lease; however, such termination shall not serve to abrogate the lease. The owners of the land and the lessee and his surety or sureties shall be notified of any such change in the status of the land;

(c) There must not be any unlawful conduct, creation of a nuisance, illegal activity, or negligent use or waste of the leased premises; and

(d) The tenant must comply with all applicable laws, ordinances, rules, regulations, and other legal requirements, including tribal laws and leasing policies.

**§ 162.220 Are there any formal requirements that must be satisfied in the execution of an agricultural lease?**

(a) An agricultural lease must identify the Indian landowners and their respective interests in the leased premises, and the lease must be granted by or on behalf of each of the Indian landowners. One who executes a lease in a representative capacity under § 162.208 of this subpart must identify the owner being represented and the authority under which such action is being taken.

(b) An agricultural lease must be executed by individuals having the necessary capacity and authority to bind the tenant under applicable law.

(c) An agricultural lease must include a citation of the provisions in this subpart that authorize our approval, along with a citation of the formal documents by which such authority has been delegated to the official taking such action.

**§ 162.221 How should the land be described in an agricultural lease?**

An agricultural lease should describe the leased premises by reference to a public or private survey, if possible. If the land cannot be so described, the lease must include a legal description or other description that is sufficient to identify the leased premises, subject to our approval. Where there are undivided interests owned in fee status, the aggregate portion of trust and restricted interests should be identified in the description of the leased premises.

**§ 162.222 How much rent must be paid under an agricultural lease?**

(a) An agricultural lease must provide for the payment of a fair annual rental at the beginning of the lease term, unless a lesser amount is permitted under paragraphs (b) through (d) of this section. The tenant's rent payments may be:

(1) In fixed amounts; or

(2) Based on a share of the agricultural products generated by the lease, or a percentage of the income to be derived from the sale of such agricultural products.

(b) We will approve an agricultural lease of tribal land at a nominal rent, or at less than a fair annual rental, if such a rent is negotiated or established by the tribe.

(c) We will approve an agricultural lease of individually-owned land at a nominal rent or at less than a fair annual rental, if:

(1) The tenant is a member of the Indian landowner's immediate family, or a co-owner in the lease tract; or

(2) The tenant is a cooperative or other legal entity in which the Indian landowners directly participate in the revenues or profits generated by the lease.

(d) We will grant or approve a lease at less than a fair annual rental, as previously determined by an appraisal or some other appropriate valuation method, if the land is subsequently advertised and the tenant is the highest responsible bidder.

**§ 162.223 Must the rent be adjusted under an**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**agricultural lease?**

(a) Except as provided in paragraph (c) of this section, an agricultural lease must provide for one or more rental adjustments if the lease term runs more than five years, unless the lease provides for the payment of:

(1) Less than a fair annual rental, as permitted under § 162.222(b) through (c) of this part; or

(2) A rental based primarily on a share of the agricultural products generated by the lease, or a percentage of the income derived from the sale of agricultural products.

(b) If rental adjustments are required, the lease must specify:

(1) How adjustments are made;

(2) Who makes the adjustments;

(3) When the adjustments are effective; and

(4) How disputes about the adjustments are resolved.

(c) An agricultural lease of tribal land may run for a term of more than five years, without providing for a rental adjustment, if the tribe establishes such a policy under § 162.203(b)(4) and negotiates such a lease.

**§ 162.224 When are rent payments due under an agricultural lease?**

An agricultural lease must specify the dates on which all rent payments are due. Unless otherwise provided in the lease, rent payments may not be made or accepted more than one year in advance of the due date. Rent payments are due at the time specified in the lease, regardless of whether the tenant receives an advance billing or other notice that a payment is due.

**§ 162.225 Will untimely rent payments made under an agricultural lease be subject to interest charges or late payment penalties?**

An agricultural lease must specify the rate at which interest will accrue on any rent payment not made by the due date or any other date specified in the lease. A lease may also identify additional late payment penalties that will apply if a rent payment is not made by a specified date. Unless otherwise provided in the lease, such interest charges and late payment penalties will apply in the absence of any specific notice to the tenant from us or the Indian landowners, and the failure to pay such amounts will be treated as a lease violation under § 162.251 of this subpart.

**§ 162.226 To whom can rent payments be made under an agricultural lease?**

(a) An agricultural lease must specify whether rent payments will be made directly to the Indian landowners or to us on behalf of the Indian landowners. If the lease provides for payment to be made directly to the Indian landowners, the lease must also require that the tenant retain specific documentation evidencing proof of payment, such as canceled checks, cash receipt vouchers, or copies of money orders or cashier's checks, consistent with the provisions of §§ 162.112 and 162.113 of this part.

(b) Rent payments made directly to the Indian landowners must be made to the parties specified in the lease, unless the tenant receives notice of a change of ownership. Unless otherwise provided in the lease, rent payments may not be made payable directly to anyone other than the Indian landowners.

(c) A lease that provides for rent payments to be made directly to the Indian landowners must also provide for such payments to be suspended and the rent thereafter paid to us, rather than directly to the Indian landowners, if:

(1) An Indian landowner dies;

(2) An Indian landowner requests that payment be made to us;

(3) An Indian landowner is found by us to be in need of assistance in managing his/her financial affairs; or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(4) We determine, in our discretion and after consultation with the Indian landowner(s), that direct payment should be discontinued.

**§ 162.227 What form of rent payment can be accepted under an agricultural lease?**

(a) When rent payments are made directly to the Indian landowners, the form of payment must be acceptable to the Indian landowners.

(b) Payments made to us may be delivered in person or by mail. We will not accept cash, foreign currency, or third-party checks. We will accept:

(1) Personal or business checks drawn on the account of the tenant;

(2) Money orders;

(3) Cashier's checks;

(4) Certified checks; or

(5) Electronic funds transfer payments.

**§ 162.228 What other types of payments are required under an agricultural lease?**

(a) The tenant may be required to pay additional fees, taxes, and/or assessments associated with the use of the land, as determined by the tribe having jurisdiction over the land. The tenant must pay these amounts to the appropriate tribal official.

(b) Except as otherwise provided in part 171 of this chapter, if the leased premises are within an Indian irrigation project or drainage district, the tenant must pay all operation and maintenance charges that accrue during the lease term. The tenant must pay these amounts to the appropriate official in charge of the irrigation project or drainage district. Failure to make such payments will constitute a violation of the lease under § 162.251.

**§ 162.229 How long can the term of an agricultural lease run?**

(a) An agricultural lease must provide for a definite lease term, specifying the commencement date. The commencement date of the lease may not be more than one year after the date on which the lease is approved.

(b) The lease term must be reasonable, given the purpose of the lease and the level of investment required. Unless otherwise provided by statute, the maximum term may not exceed ten years, unless a substantial investment in the improvement of the land is required. If such a substantial investment is required, the maximum term may be up to 25 years.

(c) Where all of the trust or restricted interests in a tract are owned by a deceased Indian whose heirs and devisees have not yet been determined, the maximum term may not exceed two years.

(d) An agricultural lease may not provide the tenant with an option to renew, and such a lease may not be renewed or extended by holdover.

**§ 162.230 Can an agricultural lease be amended, assigned, sublet, or mortgaged?**

(a) An agricultural lease may authorize amendments, assignments, subleases, or mortgages of the leasehold interest, but only with the written consent of the parties to the lease in the same manner the original lease was approved, and our approval. An attempt by the tenant to mortgage the leasehold interest or authorize possession by another party, without the necessary consent and approval, will be treated as a lease violation under § 162.251 of this subpart.

(b) An agricultural lease may authorize us, one or more of the Indian landowners, or a designated representative of the Indian landowners, to consent to an amendment, assignment, sublease, mortgage, or other type of agreement, on the landowners' behalf. A designated landowner or representative may not negotiate or consent to an amendment, assignment, or sublease that would:

(1) Reduce the rentals payable to the other Indian landowners; or

(2) Terminate or modify the term of the lease.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(c) Where the Indian landowners have not designated a representative for the purpose of consenting to an amendment, assignment, sublease, mortgage, or other type of agreement, such consent may be granted by or on behalf of the landowners in the same manner as a new lease, under §§ 162.207 through 162.209 of this subpart.

**§ 162.231 How can the land be used under an agricultural lease?**

(a) An agricultural lease must describe the authorized uses of the leased premises. Any use of the leased premises for an unauthorized purpose, or a failure by the tenant to maintain continuous operations throughout the lease term, will be treated as a lease violation under § 162.251 of this subpart.

(b) An agricultural lease must require that farming and grazing operations be conducted in accordance with recognized principles of sustained yield management, integrated resource management planning, sound conservation practices, and other community goals as expressed in applicable tribal laws, leasing policies, or agricultural resource management plans. Appropriate stipulations or conservation plans must be developed and incorporated in all agricultural leases.

**§ 162.232 Can improvements be made under an agricultural lease?**

An agricultural lease must generally describe the type and location of any improvements to be constructed by the lessee. Unless otherwise provided in the lease, any specific plans for the construction of those improvements will not require the consent of the Indian owners or our approval.

**§ 162.233 Who will own the improvements made under an agricultural lease?**

(a) An agricultural lease may specify who will own any improvements constructed by the tenant, during the lease term. The lease must indicate whether any improvements constructed by the tenant will remain on the leased premises upon the expiration or termination of the lease, providing for the improvements to either:

(1) Remain on the leased premises, in a condition satisfactory to the Indian landowners and us; or

(2) Be removed within a time period specified in the lease, at the tenant's expense, with the leased premises to be restored as close as possible to their condition prior to construction of such improvements.

(b) If the lease allows the tenant to remove the improvements, it must also provide the Indian landowners with an option to waive the removal requirement and take possession of the improvements if they are not removed within the specified time period. If the Indian landowners choose not to exercise this option, we will take appropriate enforcement action to ensure removal at the tenant's expense.

**§ 162.234 Must a tenant provide a bond under an agricultural lease?**

Unless otherwise provided by a tribe under § 162.203 of this subpart, or waived by us at the request of the owners of a majority interest in an agricultural lease tract, the tenant must provide a bond to secure:

(a) The payment of one year's rental;

(b) The construction of any required improvements;

(c) The performance of any additional lease obligations, including the payment of operation and maintenance charges under § 162.228(b) of this subpart; and

(d) The restoration and reclamation of the leased premises, to their condition at the commencement of the lease term or some other specified condition.

**§ 162.235 What form of bond can be accepted under an agricultural lease?**

(a) Except as provided in paragraph (b) of this section, a bond must be deposited with us and made payable only to us, and such a bond may not be modified or withdrawn without our approval. We will only accept a bond in one of the following

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

forms:

(1) Cash;

(2) Negotiable Treasury securities that:

(i) Have a market value at least equal to the bond amount; and

(ii) Are accompanied by a statement granting full authority to us to sell such securities in case of a violation of the terms of the lease.

(3) Certificates of deposit that indicate on their face that our approval is required prior to redemption by any party;

(4) Irrevocable letters of credit issued by federally-insured financial institutions authorized to do business in the United States. A letter of credit must:

(i) Contain a clause that grants us the authority to demand immediate payment if the tenant violates the lease or fails to replace the letter of credit at least 30 days prior to its expiration date;

(ii) Be payable to us;

(iii) Be irrevocable during its term and have an initial expiration date of not less than one year following the date of issuance; and

(iv) Be automatically renewable for a period of not less than one year, unless the issuing financial institution provides us with written notice that it will not be renewed, at least 90 calendar days before the letter of credit's expiration date.

(5) A surety bond issued by a company approved by the U.S. Department of the Treasury; or

(6) Any other form of highly liquid, non-volatile security that is easily convertible to cash and for which our approval is required prior to redemption by any party.

(b) A tribe may accept and hold any form of bond described in paragraph (a) of this section, to secure performance under an agricultural lease of tribal land.

**§ 162.236 How will a cash bond be administered?**

(a) If a cash bond is submitted, we will retain the funds in an account established in the name of the tenant.

(b) We will not pay interest on a cash performance bond.

(c) If the bond is not forfeited under § 162.252(a) of this subpart, we will refund the bond to the tenant upon the expiration or termination of the lease.

**§ 162.237 What insurance is required under an agricultural lease?**

When necessary to protect the interests of the Indian landowners, an agricultural lease must require that a tenant provide insurance. Such insurance may include property, crop, liability and/or casualty insurance. If insurance is required, it must identify both the Indian landowners and the United States as insured parties, and be sufficient to protect all insurable improvements on the leased premises.

**§ 162.238 What indemnities are required under an agricultural lease?**

(a) An agricultural lease must require that the tenant indemnify and hold the United States and the Indian landowners harmless from any loss, liability, or damages resulting from the tenant's use or occupation of the leased premises, unless:

(1) The tenant would be prohibited by law from making such an agreement; or

(2) The interests of the Indian landowners are adequately protected by insurance.

(b) Unless the tenant would be prohibited by law from making such an agreement, an agricultural lease must specifically require that the tenant

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

indemnify the United States and the Indian landowners against all liabilities or costs relating to the use, handling, treatment, removal, storage, transportation, or disposal of hazardous materials, or the release or discharge of any hazardous materials from the leased premises that occurs during the lease term, regardless of fault.

**§ 162.239 How will payment rights and obligations relating to agricultural land be allocated between the Indian landowners and the tenant?**

(a) Unless otherwise provided in an agricultural lease, the Indian landowners will be entitled to receive any settlement funds or other payments arising from certain actions that diminish the value of the land or the improvements thereon. Such payments may include (but are not limited to):

(1) Insurance proceeds;

(2) Trespass damages; and

(3) Condemnation awards.

(b) An agricultural lease may provide for the tenant to assume certain cost-share or other payment obligations that have attached to the land through past farming and grazing operations, so long as those obligations are specified in the lease and considered in any determination of fair annual rental made under this subpart.

**§ 162.240 Can an agricultural lease provide for negotiated remedies in the event of a violation?**

(a) A lease of tribal agricultural land may provide the tribe with certain negotiated remedies in the event of a lease violation, including the power to terminate the lease. An agricultural lease of individually-owned land may provide the individual Indian landowners with similar remedies, so long as the lease also specifies the manner in which those remedies may be exercised by or on behalf of the landowners.

(b) The negotiated remedies described in paragraph (a) of this section will apply in addition to the cancellation remedy available to us under § 162.252(c) of this subpart. If the lease specifically authorizes us to exercise any negotiated remedies on behalf of the Indian landowners, the exercise of such remedies may substitute for cancellation.

(c) An agricultural lease may provide for lease disputes to be resolved in tribal court or any other court of competent jurisdiction, or through arbitration or some other alternative dispute resolution method. We may not be bound by decisions made in such forums, but we will defer to ongoing proceedings, as appropriate, in deciding whether to exercise any of the remedies available to us under § 162.252 of this subpart.

**Lease Administration**

**§ 162.241 Will administrative fees be charged for actions relating to agricultural leases?**

(a) We will charge an administrative fee each time we approve an agricultural lease, amendment, assignment, sublease, mortgage, or related document. These fees will be paid by the tenant, assignee, or subtenant, to cover our costs in preparing or processing the documents and administering the lease.

(b) Except as provided in paragraph (c) of this section, we will charge administrative fees based on the rent payable under the lease. The fee will be 3% of the annual rent payable, including any percentage-based rent that can be reasonably estimated.

(c) The minimum administrative fee is $10.00 and the maximum administrative fee is $500.00, and any administrative fees that have been paid will be non-refundable. However, we may waive all or part of these administrative fees, in our discretion.

(d) If all or part of the expenses of the work are paid from tribal funds, the tribe may establish an additional or alternate schedule of fees.

**§ 162.242 How will BIA decide whether to approve an amendment to an agricultural lease?**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

We will approve an agricultural lease amendment if:

(a) The required consents have been obtained from the parties to the lease under § 162.230 and any sureties; and

(b) We find the amendment to be in the best interest of the Indian landowners, under the standards set forth in § 162.213 of this subpart.

**§ 162.243 How will BIA decide whether to approve an assignment or sublease under an agricultural lease?**

(a) We will approve an assignment or sublease under an agricultural lease if:

(1) The required consents have been obtained from the parties to the lease under § 162.230 and the tenant's sureties;

(2) The tenant is not in violation of the lease;

(3) The assignee agrees to be bound by, or the subtenant agrees to be subordinated to, the terms of the lease; and

(4) We find no compelling reason to withhold our approval in order to protect the best interests of the Indian owners.

(b) In making the finding required by paragraph (a)(4) of this section, we will consider whether:

(1) The Indian landowners should receive any income derived by the tenant from the assignment or sublease, under the terms of the lease;

(2) The proposed use by the assignee or subtenant will require an amendment of the lease;

(3) The value of any part of the leased premises not covered by the assignment or sublease would be adversely affected; and

(4) The assignee or subtenant has bonded its performance and provided supporting documents that demonstrate that the lease or sublease will be enforceable against the assignee or subtenant, and that the assignee or subtenant will be able to perform its obligations under the lease or sublease.

**§ 162.244 How will BIA decide whether to approve a leasehold mortgage under an agricultural lease?**

(a) We will approve a leasehold mortgage under an agricultural lease if:

(1) The required consents have been obtained from the parties to the lease under § 162.230 and the tenant's sureties;

(2) The mortgage covers only the tenant's interest in the leased premises, and no unrelated collateral;

(3) The loan being secured by the mortgage will be used only in connection with the development or use of the leased premises, and the mortgage does not secure any unrelated debts owed by the tenant to the mortgagee; and

(4) We find no compelling reason to withhold our approval in order to protect the best interests of the Indian landowners.

(b) In making the finding required by paragraph (a)(4) of this section, we will consider whether:

(1) The tenant's ability to comply with the lease would be adversely affected by any new loan obligations;

(2) Any lease provisions would be modified by the mortgage;

(3) The remedies available to us or to the Indian landowners would be limited (beyond any additional notice and cure rights to be afforded to the mortgagee), in the event of a lease violation; and

(4) Any rights of the Indian landowners would be subordinated or adversely affected in the event of a loan default by the tenant.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**§ 162.245 When will a BIA decision to approve an amendment, assignment, sublease, or mortgage under an agricultural lease be effective?**

Our decision to approve an amendment, assignment, sublease, or mortgage under an agricultural lease will be effective immediately, notwithstanding any appeal that may be filed under part 2 of this chapter. Copies of approved documents will be provided to the party requesting approval, and made available to the Indian landowners upon request.

**§ 162.246 Must an amendment, assignment, sublease, or mortgage approved under an agricultural lease be recorded?**

An amendment, assignment, sublease, or mortgage approved under an agricultural lease must be recorded in our Land Titles and Records Office that has jurisdiction over the leased premises. We will record the document immediately following our approval under this subpart.

**Lease Enforcement**

**§ 162.247 Will BIA notify a tenant when a rent payment is due under an agricultural lease?**

We may issue bills or invoices to a tenant in advance of the dates on which rent payments are due under an agricultural lease, but the tenant's obligation to make such payments in a timely manner will not be excused if such bills or invoices are not delivered or received.

**§ 162.248 What will BIA do if rent payments are not made in the time and manner required by an agricultural lease?**

(a) A tenant's failure to pay rent in the time and manner required by an agricultural lease will be a violation of the lease, and a notice of violation will be issued under § 162.251 of this subpart. If the lease requires that rent payments be made to us, we will send the tenant and its sureties a notice of violation within five business days of the date on which the rent payment was due. If the lease provides for payment directly to the Indian landowners, we will send the tenant and its sureties a notice of violation within five business days of the date on which we receive actual notice of non-payment from the landowners.

(b) If a tenant fails to provide adequate proof of payment or cure the violation within the requisite time period described in § 162.251(b) of this subpart, and the amount due is not in dispute, we may immediately take action to recover the amount of the unpaid rent and any associated interest charges or late payment penalties. We may also cancel the lease under § 162.252 of this subpart, or invoke any other remedies available under the lease or applicable law, including collection on any available bond or referral of the debt to the Department of the Treasury for collection. An action to recover any unpaid amounts will not be conditioned on the prior cancellation of the lease or any further notice to the tenant, nor will such an action be precluded by a prior cancellation.

(c) Partial payments may be accepted by the Indian landowners or us, but acceptance will not operate as a waiver with respect to any amounts remaining unpaid or any other existing lease violations. Unless otherwise provided in the lease, overpayments may be credited as an advance against future rent payments, or refunded.

(d) If a personal or business check is dishonored, and a rent payment is therefore not made by the due date, the failure to make the payment in a timely manner will be a violation of the lease, and a notice of violation will be issued under § 162.251 of this subpart. Any payment made to cure such a violation, and any future payments by the same tenant, must be made by one of the alternative payment methods listed in § 162.227(b) of this subpart.

**§ 162.249 Will any special fees be assessed on delinquent rent payments due under an agricultural lease?**

The following special fees will be assessed if rent is not paid in the time and manner required, in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

addition to any interest or late payment penalties that must be paid to the Indian landowners under an agricultural lease. The following special fees will be assessed to cover administrative costs incurred by the United States in the collection of the debt:

| The tenant will pay * * * | For * * * |
|---|---|
| (a) $50.00 .......... | Administrative fee for dishonored checks. |
| (b) $15.00 .......... | Administrative fee for BIA processing of each notice or demand letter. |
| (c) 18% of balance due ............... | Administrative fee charged by Treasury following referral for collection of delinquent debt. |

**§ 162.250 How will BIA determine whether the activities of a tenant under an agricultural lease are in compliance with the terms of the lease?**

(a) Unless an agricultural lease provides otherwise, we may enter the leased premises at any reasonable time, without prior notice, to protect the interests of the Indian landowners and ensure that the tenant is in compliance with the operating requirements of the lease.

(b) If an Indian landowner notifies us that a specific lease violation has occurred, we will initiate an appropriate investigation within five business days of that notification.

**§ 162.251 What will BIA do in the event of a violation under an agricultural lease?**

(a) If we determine that an agricultural lease has been violated, we will send the tenant and its sureties a notice of violation within five business days of that determination. The notice of violation must be provided by certified mail, return receipt requested.

(b) Within ten business days of the receipt of a notice of violation, the tenant must:

(1) Cure the violation and notify us in writing that the violation has been cured;

(2) Dispute our determination that a violation has occurred and/or explain why we should not cancel the lease; or

(3) Request additional time to cure the violation.

**§ 162.252 What will BIA do if a violation of an agricultural lease is not cured within the requisite time period?**

(a) If the tenant does not cure a violation of an agricultural lease within the requisite time period, we will consult with the Indian landowners, as appropriate, and determine whether:

(1) The lease should be canceled by us under paragraph (c) of this section and §§ 162.253 through 162.254 of this subpart;

(2) We should invoke any other remedies available to us under the lease, including collecting on any available bond;

(3) The Indian landowners wish to invoke any remedies available to them under the lease; or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(4) The tenant should be granted additional time in which to cure the violation.

(b) If we decide to grant a tenant additional time in which to cure a violation, the tenant must proceed diligently to complete the necessary corrective actions within a reasonable or specified time period from the date on which the extension is granted.

(c) If we decide to cancel the lease, we will send the tenant and its sureties a cancellation letter within five business days of that decision. The cancellation letter must be sent to the tenant by certified mail, return receipt requested. We will also provide actual or constructive notice of a cancellation decision to the Indian landowners, as appropriate. The cancellation letter will:

(1) Explain the grounds for cancellation;

(2) Notify the tenant of the amount of any unpaid rent, interest charges, or late payment penalties due under the lease;

(3) Notify the tenant of its right to appeal under part 2 of this chapter, as modified by § 162.253 of this subpart, including the amount of any appeal bond that must be posted with an appeal of the cancellation decision; and

(4) Order the tenant to vacate the property within 30 days of the date of receipt of the cancellation letter, if an appeal is not filed by that time.

**§ 162.253 Will BIA's regulations concerning appeal bonds apply to cancellation decisions involving agricultural leases?**

(a) The appeal bond provisions in § 2.5 of part 2 of this chapter will not apply to appeals from lease cancellation decisions made under § 162.252 of this subpart. Instead, when we decide to cancel an agricultural lease, we may require that the tenant post an appeal bond with an appeal of the cancellation decision. The requirement to post an appeal bond will apply in addition to all of the other requirements in part 2 of this chapter.

(b) An appeal bond should be set in an amount necessary to protect the Indian landowners against financial losses that will likely result from the delay caused by an appeal. Appeal bond requirements will not be separately appealable, but may be contested during the appeal of the lease cancellation decision.

**§ 162.254 When will a cancellation of an agricultural lease be effective?**

A cancellation decision involving an agricultural lease will not be effective until 30 days after the tenant receives a cancellation letter from us. The cancellation decision will remain ineffective if the tenant files an appeal under § 162.253 of this subpart and part 2 of this chapter, unless the decision is made immediately effective under part 2. While a cancellation decision is ineffective, the tenant must continue to pay rent and comply with the other terms of the lease. If an appeal is not filed in accordance with § 162.253 of this subpart and part 2 of this chapter, the cancellation decision will be effective on the 31st day after the tenant receives the cancellation letter from us.

**§ 162.255 Can BIA take emergency action if the leased premises are threatened with immediate and significant harm?**

If a tenant or any other party causes or threatens to cause immediate and significant harm to the leased premises during the term of an agricultural lease, we will take appropriate emergency action. Emergency action may include trespass proceedings under part 166, subpart I, of this chapter, or judicial action seeking immediate cessation of the activity resulting in or threatening the harm. Reasonable efforts will be made to notify the Indian landowners, either before or after the emergency action is taken.

**§ 162.256 What will BIA do if a tenant holds over after the expiration or cancellation of an agricultural lease?**

If a tenant remains in possession after the expiration or cancellation of an agricultural lease, we will treat the unauthorized use as a trespass. Unless we have reason to believe that the tenant is engaged in negotiations with the Indian landowners to obtain a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

new lease, we will take action to recover possession on behalf of the Indian landowners, and pursue any additional remedies available under applicable law, including the assessment of civil penalties and costs under part 166, subpart I, of this chapter.

**Subpart C. Residential Leases [Reserved]**

**Subpart D. Business Leases [Reserved]**

**Subpart E. Special Requirements for Certain Reservations**

**§ 162.500 Crow Reservation.**

(a) Notwithstanding the regulations in other sections of this part 162, Crow Indians classified as competent under the Act of June 4, 1920 (41 Stat. 751), as amended, may lease their trust lands and the trust lands of their minor children for farming or grazing purposes without the approval of the Secretary pursuant to the Act of May 26, 1926 (44 Stat. 658), as amended by the Act of March 15, 1948 (62 Stat. 80). However, at their election Crow Indians classified as competent may authorize the Secretary to lease, or assist in the leasing of such lands, and an appropriate notice of such action shall be made a matter of record. When this prerogative is exercised, the general regulations contained in this part 162 shall be applicable. Approval of the Secretary is required on leases signed by Crow Indians not classified as competent or made on inherited or devised trust lands owned by more than five competent devisees or heirs.

(b) The Act of May 26, 1926 (44 Stat. 658), as amended by the Act of March 15, 1948 (62 Stat. 80), provides that no lease for farming or grazing purposes shall be made for a period longer than five years, except irrigable lands under the Big Horn Canal; which may be leased for periods of ten years. No such lease shall provide the lessee a preference right to future leases which, if exercised, would thereby extend the total period of encumbrance beyond the five or ten years authorized by law.

(c) All leases entered into by Crow Indians classified as competent, under the above-cited special statutes, must be recorded at the Crow Agency. Such recording shall constitute notice to all persons. Under these special statutes, Crow Indians classified as competent are free to lease their property within certain limitations. The five-year (ten-year in the case of lands under the Big Horn Canal) limitation is intended to afford a protection to the Indians. The essence of this protection is the right to deal with the property free, clear, and unencumbered at intervals at least as frequent as those provided by law. If lessees are able to obtain new leases long before the termination of existing leases, they are in a position to set their own terms. In these circumstances lessees could perpetuate their leaseholds and the protection of the statutory limitations as to terms would be destroyed. Therefore, in implementation of the foregoing interpretation, any lease which, on its face, is in violation of statutory limitations or requirements, and any grazing lease executed more than 12 months, and any farming lease executed more than 18 months, prior to the commencement of the term thereof or any lease which purports to cancel an existing lease with the same lessee as of a future date and take effect upon such cancellation will not be recorded. Under a Crow tribal program, approved by the Department of the Interior, competent Crow Indians may, under certain circumstances, enter into agreements which require that, for a specified term, their leases be approved. Information concerning whether a competent Crow Indian has executed such an instrument is available at the office of the Superintendent of the Crow Agency, Bureau of Indian Affairs, Crow Agency, Montana. Any lease entered into with a competent Crow Indian during the time such instrument is in effect and which is not in accordance with such instrument will be returned without recordation.

(d) Where any of the following conditions are found to exist, leases will be recorded but the lessee and lessor will be notified upon discovery of the condition:

(1) The lease in single or counterpart form has not been executed by all owners of the land

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

described in the lease;

(2) There is, of record, a lease on the land for all or a part of the same term;

(3) The lease does not contain stipulations requiring sound land utilization plans and conservation practices; or

(4) There are other deficiencies such as, but not limited to, erroneous land descriptions, and alterations which are not clearly endorsed by the lessor.

(e) Any adult Crow Indian classified as competent shall have the full responsibility for obtaining compliance with the terms of any lease made by him pursuant to this section. This shall not preclude action by the Secretary to assure conservation and protection of these trust lands.

(f) Leases made by competent Crow Indians shall be subject to the right to issue permits and leases to prospect for, develop, and mine oil, gas, and other minerals, and to grant rights-of-way and easements, in accordance with applicable law and regulations. In the issuance or granting of such permits, leases, rights-of-way or easements due consideration will be given to the interests of lessees and to the adjustment of any damages to such interests. In the event of a dispute as to the amount of such damage, the matter will be referred to the Secretary whose determination will be final as to the amount of said damage.

**§ 162.501 Fort Belknap Reservation.**

Not to exceed 20,000 acres of allotted and tribal lands (non-irrigable as well as irrigable) on the Fort Belknap Reservation in Montana may be leased for the culture of sugar beets and other crops in rotation for terms not exceeding ten years.

**§ 162.502 Cabazon, Augustine, and Torres-Martinez Reservations, California.**

(a) Upon a determination by the Secretary that the owner or owners are not making beneficial use thereof, restricted lands on the Cabazon, Augustine, and Torres-Martinez Indian Reservations which are or may be irrigated from distribution facilities administered by the Coachella Valley County Water District in Riverside County, California, may be leased by the Secretary in accordance with the regulations in this part for the benefit of the owner or owners.

(b) All leases granted or approved on restricted lands of the Cabazon, Augustine, and Torres-Martinez Indian Reservations shall be filed for record in the office of the county recorder of the county in which the land is located, the cost thereof to be paid by the lessee. A copy of each such lease shall be filed by the lessee with the Coachella Valley County Water District or such other irrigation or water district within which the leased lands are located. All such leases shall include a provision that the lessee, in addition to the rentals provided for in the lease, shall pay all irrigation charges properly assessed against the land which became payable during the term of the lease. Act of August 25, 1950 (64 Stat. 470); Act of August 28, 1958 (72 Stat. 968).

**§ 162.503 San Xavier and Salt River Pima-Maricopa Reservations.**

(a) Purpose and scope. The Act of November 2, 1966 (80 Stat. 1112), provides statutory authority for long-term leasing on the San Xavier and Salt River Pima-Maricopa Reservations, Arizona, in addition to that contained in the Act of August 9, 1955 (69 Stat. 539), as amended (25 U.S.C. 415). When leases are made under the 1955 Act on the San Xavier or Salt River Pima-Maricopa Reservations, the regulations in part 162 apply. The purpose of this section is to provide regulations for implementation of the 1966 Act. The 1966 Act does not apply to leases made for purposes that are subject to the laws governing mining leases on Indian lands.

(b) Duration of leases. Leases made under the 1966 Act for public, religious, educational, recreational, residential, or business purposes may be made for terms of not to exceed 99 years. The terms of a grazing lease shall not exceed ten years; the term of a farming lease that does not require the making of a substantial investment in the improvement of the land shall not exceed ten years; and the term of a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

farming lease that requires the making of a substantial investment in the improvement of the land shall not exceed 40 years. No lease shall contain an option to renew which extends the total term beyond the maximum term permitted by this section.

(c) Required covenant and enforcement thereof. Every lease under the 1966 Act shall contain a covenant on the part of the lessee that he will not commit or permit on the leased land any act that causes waste or a nuisance or which creates a hazard to health of persons or to property wherever such persons or property may be.

(d) Notification regarding leasing proposals. If the Secretary determines that a proposed lease to be made under the 1966 Act for public, religious, educational, recreational, residential, or business purposes will substantially affect the governmental interests of a municipality contiguous to the San Xavier Reservation or the Salt River Pima-Maricopa Reservation, as the case may be, he shall notify the appropriate authority of such municipality of the pendency of the proposed lease. The Secretary may, in his discretion, furnish such municipality with an outline of the major provisions of the lease which affect its governmental interests and shall consider any comments on the terms of the lease affecting the municipality or on the absence of such terms from the lease that the authorities may offer. The notice to the authorities of the municipality shall set forth a reasonable period, not to exceed 30 days, within which any such comments shall be submitted.

(e) Applicability of other regulations. The regulations in part 162 of this title shall apply to leases made under the 1966 Act except where such regulations are inconsistent with this section.

(f) Mission San Xavier del Bac. Nothing in the 1966 Act authorizes development that would detract from the scenic, historic, and religious values of the Mission San Xavier del Bac owned by the Franciscan Order of Friars Minor and located on the San Xavier Reservation.

**Subpart F. Non-Agricultural Leases**

**§ 162.600 What types of leases are covered by this subpart?**

The regulations in this subpart apply to any leases other than agricultural leases, as defined in this part. To the extent that any of the regulations in this subpart conflict with the provisions of the Indian Land Consolidation Act Amendments of 2000, Pub. Law. 106-462, the provisions of that Act will govern.

**§ 162.601 Grants of leases by Secretary.**

(a) The Secretary may grant leases on individually owned land on behalf of:

(1) Persons who are non compos mentis;

(2) Orphaned minors;

(3) The undetermined heirs of a decedent's estate;

(4) The heirs or devisees to individually owned land who have not been able to agree upon a lease during the three-month period immediately following the date on which a lease may be entered into; provided, that the land is not in use by any of the heirs or devisees; and

(5) Indians who have given the Secretary written authority to execute leases on their behalf.

(b) The Secretary may grant leases on the individually owned land of an adult Indian whose whereabouts is unknown, on such terms as are necessary to protect and preserve such property.

(c) The Secretary may grant permits on Government land.

**§ 162.602 Grants of leases by owners or their representatives.**

The following may grant leases:

(a) Adults, other than those non compos mentis,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(b) Adults, other than those non compos mentis, on behalf of their minor children, and on behalf of minor children to whom they stand in loco parentis when such children do not have a legal representative,

(c) The guardian, conservator or other fiduciary, appointed by a state court or by a tribal court operating under an approved constitution or law and order code, of a minor or persons who are non compos mentis or are otherwise under legal disability,

(d) Tribes or tribal corporations acting through their appropriate officials.

**§ 162.603 Use of land of minors.**

The natural or legal guardian, or other person standing in loco parentis of minor children who have the care and custody of such children may use the individually owned land of such children during the period of minority without charge for the use of the land if such use will enable such person to engage in a business or other enterprise which will be beneficial to such minor children.

**§ 162.604 Special requirements and provisions.**

(a) All leases made pursuant to the regulations in this part shall be in the form approved by the Secretary and subject to his written approval.

(b) Except as otherwise provided in this part no lease shall be approved or granted at less than the present fair annual rental.

(1) An adult Indian owner of trust or restricted land may lease his land for religious, educational, recreational or other public purposes to religious organizations or to agencies of the federal, state or local government at a nominal rental. Such adult Indian may lease land to members of his immediate family with or without rental consideration.

(2) In the discretion of the Secretary, tribal land may be leased at a nominal rental for religious, educational, recreational, or other public purposes to religious organizations or to agencies of federal, state, or local governments; for purposes of subsidization for the benefit of the tribe; and for homesite purposes to tribal members provided the land is not commercial or industrial in character.

(3) Leases may be granted or approved by the Secretary at less than the fair annual rental when in his judgment such action would be in the best interest of the landowners.

(c) Unless otherwise provided by the Secretary a satisfactory surety bond will be required in an amount that will reasonably assure performance of the contractual obligations under the lease. Such bond may be for the purpose of guaranteeing:

(1) Not less than one year's rental unless the lease contract provides that the annual rental shall be paid in advance.

(2) The estimated construction cost of any improvement to be placed on the land by the lessee.

(3) An amount estimated to be adequate to insure compliance with any additional contractual obligations.

(d) The lessee may be required to provide insurance in an amount adequate to protect any improvements on the leased premises; the lessee may also be required to furnish appropriate liability insurance, and such other insurance as may be necessary to protect the lessor's interest.

(e) No lease shall provide the lessee a preference right to future leases nor shall any lease contain provisions for renewal, except as otherwise provided in this part. No lease shall be entered into more than 12 months prior to the commencement of the term of the lease. Except with the approval of the Secretary no lease shall provide for payment of rent in advance of the beginning of the annual use period for which such rent is paid. The lease contract shall contain provisions as to the dates rents shall become due and payable.

(f) Leases granted or approved under this part shall contain provisions as to whether payment of rentals is to be made direct to the owner of the land or his

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

representative or to the official of the Bureau of Indian Affairs having jurisdiction over the leased premises.

(g) All leases issued under this part shall contain the following provisions:

(1) While the leased premises are in trust or restricted status, all of the lessee's obligations under this lease, and the obligations of his sureties, are to the United States as well as to the owner of the land.

(2) Nothing contained in this lease shall operate to delay or prevent a termination of federal trust responsibilities with respect to the land by the issuance of a fee patent or otherwise during the term of the lease; however, such termination shall not serve to abrogate the lease. The owners of the land and the lessee and his surety or sureties shall be notified of any such change in the status of the land.

(3) The lessee agrees that he will not use or cause to be used any part of the leased premises for any unlawful conduct or purpose.

(h) Leases granted or approved under this part on individually owned lands which provide for payment of rental direct to the owner or his representative shall contain the following provisions:

(1) In the event of the death of the owner during the term of this lease and while the leased premises are in trust or restricted status, all rentals remaining due or payable to the decedent or his representative under the provisions of the lease shall be paid to the official of the Bureau of Indian Affairs having jurisdiction over the leased premises.

(2) While the leased premises are in trust or restricted status, the Secretary may in his discretion suspend the direct rental payment provisions of this lease in which event the rentals shall be paid to the official of the Bureau of Indian Affairs having jurisdiction over the leased premises.

**§ 162.605 Negotiation of leases.**

(a) Leases of individually owned land or tribal land may be negotiated by those owners or their representatives who may execute leases pursuant to § 162.602 of this subpart.

(b) Where the owners of a majority interest, or their representatives, who may grant leases under § 162.602 of this subpart, have negotiated a lease satisfactory to the Secretary he may join in the execution of the lease and thereby commit the interests of those persons in whose behalf he is authorized to grant leases under § 162.601(a)(1), (2) , (3), and (5) of this subpart.

(c) Where the Secretary may grant leases under § 162.601 of this subpart he may negotiate leases when in his judgment the fair annual rental can thus be obtained.

**§ 162.606 Advertisement.**

Except as otherwise provided in this part, prior to granting a lease or permit as authorized under § 162.601 of this subpart the Secretary shall advertise the land for lease. Advertisements will call for sealed bids and will not offer preference rights.

**§ 162.607 Duration of leases.**

Leases granted or approved under this part shall be limited to the minimum duration, commensurate with the purpose of the lease, that will allow the highest economic return to the owner consistent with prudent management and conservation practices, and except as otherwise provided in this part shall not exceed the number of years provided for in this section. Except for those leases authorized by § 162.604(b)(1) and (2) of this subpart, unless the consideration for the lease is based primarily on percentages of income produced by the land, the lease shall provide for periodic review, at not less than five-year intervals, of the equities involved. Such review shall give consideration to the economic conditions at the time, exclusive of improvement or development required by the contract or the contribution value of such improvements. Any adjustments of rental resulting from such review may be made by the Secretary where he has the authority to grant leases, otherwise the adjustment must be made with the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

written concurrence of the owners and the approval of the Secretary.

(a) Leases for public, religious, educational, recreational, residential, or business purposes shall not exceed 25 years but may include provisions authorizing a renewal or an extension for one additional term of not to exceed 25 years, except such leases of land on the Hollywood (formerly Dania) Reservation, Fla.; the Navajo Reservation, Ariz., N. Mex., and Utah; the Palm Springs Reservation, Calif.; the Southern Ute Reservation, Colo.; the Fort Mohave Reservation, Calif., Ariz., and Nev.; the Pyramid Lake Reservation, Nev.; the Gila River Reservation, Ariz.; the San Carlos Apache Reservation, Ariz.; the Spokane Reservation, Wash.; the Hualapai Reservation, Ariz.; the Swinomish Reservation, Wash.; the Pueblos of Cochiti, Pojoaque, Tesuque, and Zuni, N. Mex.; and land on the Colorado River Reservation, Ariz., and Calif.; which leases may be made for terms of not to exceed 99 years.

(b) Leases granted by the Secretary pursuant to § 162.601(a)(3) of this subpart shall be for a term of not to exceed two years except as otherwise provided in § 162.605(b) of this subpart.

**§ 162.608 Ownership of improvements.**

Improvements placed on the leased land shall become the property of the lessor unless specifically excepted therefrom under the terms of the lease. The lease shall specify the maximum time allowed for removal of any improvements so excepted.

**§ 162.609 Unitization for leasing.**

Where it appears advantageous to the owners and advantageous to the operation of the land a single lease contract may include more than one parcel of land in separate ownerships, tribal or individual, provided the statutory authorities and other applicable requirements of this part are observed.

**§ 162.610 Subleases and assignments.**

(a) Except as provided in paragraphs (b), (c), and (d) of this section, a sublease, assignment, amendment or encumbrance of any lease or permit issued under this part may be made only with the approval of the Secretary and the written consent of all parties to such lease or permit, including the surety or sureties.

(b) With the consent of the Secretary, the lease may contain a provision authorizing the lessee to sublease the premises, in whole or in part, without further approval. Subleases so made shall not serve to relieve the sublessor from any liability nor diminish any supervisory authority of the Secretary provided for under the approved lease.

(c) With the consent of the Secretary, the lease may contain provisions authorizing the lessee to encumber his leasehold interest in the premises for the purpose of borrowing capital for the development and improvement of the leased premises. The encumbrance instrument, must be approved by the Secretary. If a sale or foreclosure under the approved encumbrance occurs and the encumbrancer is the purchaser, he may assign the leasehold without the approval of the Secretary or the consent of the other parties to the lease, provided, however, that the assignee accepts and agrees in writing to be bound by all the terms and conditions of the lease. If the purchaser is a party other than the encumbrancer, approval by the Secretary of any assignment will be required, and such purchaser will be bound by the terms of the lease and will assume in writing all the obligations thereunder.

(d) With the consent of the Secretary, leases of tribal land to individual members of the tribe or to tribal housing authorities may contain provisions permitting the assignment of the lease without further consent or approval where a lending institution or an agency of the United States makes, insures or guarantees a loan to an individual member of the tribe or to a tribal housing authority for the purpose of providing funds for the construction of housing for Indians on the leased premises; provided, the leasehold has been pledged as security for the loan and the lender has obtained the leasehold by foreclosure or otherwise. Such leases may with the consent of the Secretary also contain provisions permitting the lessee to assign the lease without further consent or approval.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**§ 162.611 Payment of fees and drainage and irrigation charges.**

(a) Any lease covering lands within an irrigation project or drainage district shall require the lessee to pay annually on or before the due date, during the term of the lease and in the amounts determined, all charges assessed against such lands. Such charges shall be in addition to the rental payments prescribed in the lease. All payments of such charges and penalties shall be made to the official designated in the lease to receive such payments.

(b) We will charge an administrative fee each time we approve an agricultural lease, amendment, assignment, sublease, mortgage, or related document. These fees will be paid by the tenant, assignee, or subtenant, to cover our costs in preparing or processing the documents and administering the lease.

(c) Except as provided in paragraph (d) of this section, we will charge administrative fees based on the rent payable under the lease. The fee will be 3% of the annual rent payable, including any percentage or cropshare rent that can be reasonably estimated.

(d) The minimum administrative fee is $10.00 and the maximum administrative fee is $500.00, and any administrative fees that have been paid will be non-refundable. However, we may waive all or part of these administrative fees, in our discretion.

(e) If all or part of the expenses of the work are paid from tribal funds, the tribe may establish an additional or alternate schedule of fees.

**§ 162.612 Can a lease provide for negotiated remedies in the event of a violation?**

(a) A lease of tribal land may provide the tribe with certain negotiated remedies in the event of a lease violation, including the power to terminate the lease. A lease of individually-owned land may provide the individual Indian landowners with similar remedies, so long as the lease also specifies the manner in which those remedies may be exercised by or on behalf of the landowners.

(b) The negotiated remedies described in paragraph (a) of this section will apply in addition to the cancellation remedy available to us under § 162.619(c) of this subpart. If the lease specifically authorizes us to exercise any negotiated remedies on behalf of the Indian landowners, the exercise of such remedies may substitute for cancellation.

(c) A lease may provide for lease disputes to be resolved in tribal court or any other court of competent jurisdiction, or through arbitration or some other alternative dispute resolution method. We may not be bound by decisions made in such forums, but we will defer to ongoing proceedings, as appropriate, in deciding whether to exercise any of the remedies available to us under § 162.619 of this subpart.

**§ 162.613 Will BIA notify a tenant when a rent payment is due under a lease?**

We may issue bills or invoices to a tenant in advance of the dates on which rent payments are due under a lease, but the tenant's obligation to make such payments in a timely manner will not be excused if such bills or invoices are not delivered or received.

**§ 162.614 Will untimely rent payments made under a lease be subject to interest charges or late payment penalties?**

A lease must specify the rate at which interest will accrue on any rent payment not made by the due date or any other date specified in the lease. A lease may also identify additional late payment penalties that will apply if a rent payment is not made by a specified date. Unless otherwise provided in the lease, such interest charges and late payment penalties will apply in the absence of any specific notice to the tenant from us or the Indian landowners, and the failure to pay such amounts will be treated as a lease violation under § 162.618 of this subpart.

**§ 162.615 What will BIA do if rent payments are not made in the time and manner required by a lease?**

(a) A tenant's failure to pay rent in the time and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

manner required by a lease will be a violation of the lease, and a notice of violation will be issued under § 162.618 of this subpart. If the lease requires that rent payments be made to us, we will send the tenant and its sureties a notice of violation within five business days of the date on which the rent payment was due. If the lease provides for payment directly to the Indian landowners, we will send the tenant and its sureties a notice of violation within five business days of the date on which we receive actual notice of non-payment from the landowners.

(b) If a tenant fails to provide adequate proof of payment or cure the violation within the requisite time period described in § 162.618(b) of this subpart, and the amount due is not in dispute, we may immediately take action to recover the amount of the unpaid rent and any associated interest charges or late payment penalties. We may also cancel the lease under § 162.619 of this subpart, or invoke any other remedies available under the lease or applicable law, including collection on any available bond or referral of the debt to the Department of the Treasury for collection. An action to recover any unpaid amounts will not be conditioned on the prior cancellation of the lease or any further notice to the tenant, nor will such an action be precluded by a prior cancellation.

(c) Partial payments and underpayments may be accepted by the Indian landowners or us, but acceptance will not operate as a waiver with respect to any amounts remaining unpaid or any other existing lease violations. Unless otherwise provided in the lease, overpayments may be credited as an advance against future rent payments, or refunded.

(d) If a personal or business check is dishonored, and a rent payment is therefore not made by the due date, the failure to make the payment in a timely manner will be a violation of the lease, and a notice of violation will be issued under § 162.618 of this subpart. Any payment made to cure such a violation, and any future payments by the same tenant, must be made by an alternative payment method approved by us.

**§ 162.616 Will any special fees be assessed on delinquent rent payments due under a lease?**

The following special fees will be assessed if rent is not paid in the time and manner required, in addition to any interest or late payment penalties that must be paid to the Indian landowners under a lease. The following special fees will be assessed to cover administrative costs incurred by the United States in the collection of the debt:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| The tenant will pay * * * | For * * * |
|---|---|
| (a) $50.00 .......... | Administrative fee for dishonored checks. |
| (b) $15.00 .......... | Administrative fee for BIA processing of each notice or demand letter. |
| (c) 18% of balance due ............... | Administrative fee charged by Treasury following referral for collection of delinquent debt. |

**§ 162.617 How will BIA determine whether the activities of a tenant under a lease are in compliance with the terms of the lease?**

(a) Unless a lease provides otherwise, we may enter the leased premises at any reasonable time, without prior notice, to protect the interests of the Indian landowners and ensure that the tenant is in compliance with the operating requirements of the lease.

(b) If an Indian landowner notifies us that a specific lease violation has occurred, we will initiate an appropriate investigation within five business days of that notification.

**§ 162.618 What will BIA do in the event of a violation under a lease?**

(a) If we determine that a lease has been violated, we will send the tenant and its sureties a notice of violation within five business days of that determination. The notice of violation must be provided by certified mail, return receipt requested.

(b) Within ten business days of the receipt of a notice of violation, the tenant must:

(1) Cure the violation and notify us in writing that the violation has been cured;

(2) Dispute our determination that a violation has occurred and/or explain why we should not cancel the lease; or

(3) Request additional time to cure the violation.

**§ 162.619 What will BIA do if a violation of a lease is not cured within the requisite time period?**

(a) If the tenant does not cure a violation of a lease within the requisite time period, we will consult with the Indian landowners, as appropriate, and determine whether:

(1) The lease should be canceled by us under paragraph (c) of this section and §§ 162.620 through 162.621 of this subpart;

(2) We should invoke any other remedies available to us under the lease, including collecting on any available bond;

(3) The Indian landowners wish to invoke any remedies available to them under the lease; or

(4) The tenant should be granted additional time in which to cure the violation.

(b) If we decide to grant a tenant additional time in which to cure a violation, the tenant must proceed diligently to complete the necessary corrective actions within a reasonable or specified time period from the date on which the extension is granted.

(c) If we decide to cancel the lease, we will send the tenant and its sureties a cancellation letter within five business days of that decision. The cancellation letter must be sent to the tenant by

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

certified mail, return receipt requested. We will also provide actual or constructive notice of a cancellation decision to the Indian landowners, as appropriate. The cancellation letter will:

(1) Explain the grounds for cancellation;

(2) Notify the tenant of the amount of any unpaid rent, interest charges, or late payment penalties due under the lease;

(3) Notify the tenant of its right to appeal under part 2 of this chapter, as modified by § 162.620 of this subpart, including the amount of any appeal bond that must be posted with an appeal of the cancellation decision; and

(4) Order the tenant to vacate the property within 30 days of the date of receipt of the cancellation letter, if an appeal is not filed by that time.

**§ 162.620 Will BIA's regulations concerning appeal bonds apply to cancellation decisions involving leases?**

(a) The appeal bond provisions in § 2.5 of part 2 of this chapter will not apply to appeals from lease cancellation decisions made under § 162.619 of this subpart. Instead, when we decide to cancel an agricultural lease, we may require that the tenant post an appeal bond with an appeal of the cancellation decision. The requirement to post an appeal bond will apply in addition to all of the other requirements in part 2 of this chapter.

(b) An appeal bond should be set in an amount necessary to protect the Indian landowners against financial losses that will likely result from the delay caused by an appeal. Appeal bond requirements will not be separately appealable, but may be contested during the appeal of the lease cancellation decision.

**§ 162.621 When will a cancellation of a lease be effective?**

A cancellation decision involving an agricultural lease will not be effective until 30 days after the tenant receives a cancellation letter from us. The cancellation decision will remain ineffective if the tenant files an appeal under § 162.620 of this subpart and part 2 of this chapter, unless the decision is made immediately effective under part 2. While a cancellation decision is ineffective, the tenant must continue to pay rent and comply with the other terms of the lease. If an appeal is not filed in accordance with § 162.620 of this subpart and part 2 of this chapter, the cancellation decision will be effective on the 31st day after the tenant receives the cancellation letter from us.

**§ 162.622 Can BIA take emergency action if the leased premises are threatened with immediate and significant harm?**

If a tenant or any other party causes or threatens to cause immediate and significant harm to the leased premises during the term of a lease, we will take appropriate emergency action. Emergency action may include judicial action seeking immediate cessation of the activity resulting in or threatening the harm. Reasonable efforts will be made to notify the Indian landowners, either before or after the emergency action is taken.

**§ 162.623 What will BIA do if a tenant holds over after the expiration or cancellation of a lease?**

If a tenant remains in possession after the expiration or cancellation of a lease, we will treat the unauthorized use as a trespass. Unless we have reason to believe that the tenant is engaged in negotiations with the Indian landowners to obtain a new lease, we will take action to recover possession on behalf of the Indian landowners, and pursue any additional remedies available under applicable law.

Current through February 16, 2007; 72 FR 7582
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.