Westlaw.



Code of Federal Regulations Currentness
Title 25. Indians
Chapter I. Bureau of Indian Affairs, Department of the Interior
Subchapter I. Energy and Minerals
➡ Part 211. Leasing of Tribal Lands for Mineral Development (Refs & Annos)
Subpart A. General

**§ 211.1 Purpose and scope.**

(a) The regulations in this part govern leases and permits for the development of Indian tribal oil and gas, geothermal, and solid mineral resources except as provided under paragraph (e) of this section. These regulations are applicable to lands or interests in lands the title to which is held in trust by the United States or is subject to a restriction against alienation imposed by the United States. These regulations are intended to ensure that Indian mineral owners desiring to have their resources developed are assured that they will be developed in a manner that maximizes their best economic interests and minimizes any adverse environmental impacts or cultural impacts resulting from such development.

(b) The regulations in this part shall be subject to amendment at any time by the Secretary of the Interior. No regulation that becomes effective after the date of approval of any lease or permit shall operate to affect the duration of the lease or permit, rate of royalty, rental, or acreage unless agreed to by all parties to the lease or permit.

(c) The regulations of the Bureau of Land Management, the Office of Surface Mining Reclamation and Enforcement, and the Minerals Management Service that are referenced in §§ 211.4 , 211.5, and 211.6 are supplemental to the regulations in this part, and apply to parties holding leases or permits for development of Indian mineral resources unless specifically stated otherwise in this part or in such other Federal regulations.

(d) Nothing in the regulations in this part is intended to prevent Indian tribes from exercising their lawful governmental authority to regulate the conduct of persons, businesses, operations or mining within their territorial jurisdiction.

(e) The regulations in this part do not apply to leasing and development governed by regulations in 25 CFR Parts 213 (Members of the Five Civilized Tribes of Oklahoma), 226 (Osage), or 227 (Wind River Reservation).

**§ 211.2 Information collection.**

The information collection requirements contained in this part do not require a review by the Office of Management and Budget under the Paperwork Reduction Act (44 U.S.C. 3501; et seq.).

**§ 211.3 Definitions.**

As used in this part, the following words and phrases have the specified meaning except where otherwise indicated:

Applicant means any person seeking a permit, lease, or an assignment from the superintendent or area director.

Approving official means the Bureau of Indians Affairs official with delegated authority to approve a lease or permit.

Area director means the Bureau of Indian Affairs official in charge of an area office.

Authorized officer means any employee of the Bureau of Land Management authorized by law or by lawful delegation of authority to perform the duties described in this part and in 43 CFR Parts 3160, 3180, 3260, 3280, 3480 and 3590.

Cooperative agreement means a binding arrangement between two or more parties purporting to the act of agreeing or of coming to a mutual arrangement that is accepted by all parties to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

a transaction (e.g., communitization and unitization).

Director's representative means the Office of Surface Mining Reclamation and Enforcement director's representative authorized by law or lawful delegation of authority to perform the duties described in 30 CFR part 750.

Gas means any fluid, either combustible or non-combustible, that is produced in a natural state from the earth and that maintains a gaseous or rarefied state at ordinary temperature and pressure conditions.

Geological and geophysical permit means a written authorization to conduct on-site surveys to locate potential deposits of oil and gas, geothermal or solid mineral resources on the lands.

Geothermal resources means:

(1) All products of geothermal processes, including indigenous steam, hot water and hot brines;

(2) Steam and other gases, hot water, and hot brines, resulting from water, gas or other fluids artificially introduced into geothermal formations;

(3) Heat or other associated energy found in geothermal formations; and

(4) Any by-product derived therefrom.

In the best interest of the Indian mineral owner refers to the standards to be applied by the Secretary in considering whether to take an administrative action affecting the interests of an Indian mineral owner. In considering whether it is "in the best interest of the Indian mineral owner" to take a certain action (such as approval of a lease, permit, unitization or communitization agreement), the Secretary shall consider any relevant factor, including, but not limited to: economic considerations, such as date of lease expiration; probable financial effect on the Indian mineral owner; leasability of land concerned; need for change in the terms of the existing lease; marketability; and potential environmental, social, and cultural effects.

Indian lands means any lands owned by any individual Indian or Alaska Native, Indian tribe, band, nation, pueblo, community, rancheria, colony, or other tribal group which owns land or interests in the land, the title to which is held in trust by the United States or is subject to a restriction against alienation imposed by the United States.

Indian mineral owner means an Indian tribe, band, nation, pueblo community, rancheria, colony, or other tribal group which owns mineral interests in oil and gas, geothermal or solid mineral resources, title to which is held in trust by the United States, or is subject to a restriction against alienation imposed by the United States.

Indian surface owner means any individual Indian or Indian tribe whose surface estate is held in trust by the United States, or is subject to restriction against alienation imposed by the United States.

Lease means any contract approved by the United States under the Act of May 11, 1938 (52 Stat. 347) (25 U.S.C. 396a-396g), as amended, that authorizes exploration for, extraction of, or removal of any minerals.

Lessee means a natural person, proprietorship, partnership, corporation, or other entity that has entered into a lease with an Indian mineral owner, or who has been assigned an obligation to make royalty or other payments required by the lease.

Lessor means an Indian mineral owner who is a party to a lease.

Minerals includes both metalliferous and non-metalliferous minerals; all hydrocarbons, including oil and gas, coal and lignite of all ranks; geothermal resources; and includes but is not limited to, sand, gravel, pumice, cinders, granite, building stone, limestone, clay, silt, or any other energy or non-energy mineral.

Minerals Management Service official means any employee of the Minerals Management Service (MMS) authorized by law or by lawful delegation of authority to perform the duties described in 30 CFR chapter II, subchapters A and C.

Mining means the science, technique, and business of mineral development including, but not limited to: opencast work, underground work, and in-situ leaching directed to severance and treatment of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

minerals; Provided, when sand, gravel, pumice, cinders, granite, building stone, limestone, clay or silt is the subject mineral, an enterprise is considered "mining" only if the extraction of such a mineral exceeds 5,000 cubic yards in any given year.

Oil means all nongaseous hydrocarbon substances other than those substances leasable as coal, oil shale, or gilsonite (including all vein-type solid hydrocarbons). Oil includes liquefiable hydrocarbon substances such as drip gasoline and other natural condensates recovered or recoverable in a liquid state from produced gas without resorting to a manufacturing process.

Permit means any contract issued by the superintendent and/or area director to conduct exploration on; or removal of less than 5,000 cubic yards per year of common varieties of minerals from Indian lands.

Permittee means a person holding or required by this part to hold a permit to conduct exploration operations on; or remove less than 5,000 cubic yards per year of common varieties of minerals from Indian lands.

Secretary means the Secretary of the Interior or an authorized representative.

Solid minerals means all minerals excluding oil, gas and geothermal resources.

Superintendent means the Bureau of Indian Affairs official in charge of the agency office having jurisdiction over the minerals subject to leasing under this part.

**§ 211.4 Authority and responsibility of the Bureau of Land Management (BLM).**

The functions of the Bureau of Land Management are found in 43 CFR part 3160--Onshore Oil and Gas Operations, 43 CFR part 3180--Onshore Oil and Gas Unit Agreements: Unproven Area, 43 CFR part 3260--Geothermal Resources Operations, 43 CFR part 3280--Geothermal Resources Unit Agreements: Unproven Areas, 43 CFR part 3480--Coal Exploration and Mining Operations, and 43 CFR part 3590--Solid Minerals (other than coal) Exploration and Mining Operations; and currently include, but are not limited to, resource evaluation, approval of drilling permits, mining and reclamation, production plans, mineral appraisals, inspection and enforcement, and production verification. These regulations, apply to leases and permits approved under this part.

**§ 211.5 Authority and responsibility of the Office of Surface Mining Reclamation and Enforcement (OSM).**

The OSM is the regulatory authority for surface coal mining and reclamation operations on Indian lands pursuant to the Surface Mining Control and Reclamation Act of 1977 (30 U.S.C. 1201 et seq.). The relevant regulations for surface coal mining and reclamation operations are found in 30 CFR part 750. Those regulations apply to mining and reclamation on leases approved under this part.

**§ 211.6 Authority and responsibility of the Minerals Management Service (MMS).**

The functions of the MMS for reporting, accounting, and auditing are found in 30 CFR chapter II, subchapters A and C, which, apply to leases approved under this part. To the extent the parties to a lease or permit are able to provide reasonable provisions satisfactorily addressing the functions governed by MMS regulations, the Secretary may approve alternate provisions in a lease or permit.

**§ 211.7 Environmental studies.**

(a) The Secretary shall ensure that all environmental studies are prepared as required by the National Environmental Policy Act of 1969 (NEPA) and the regulations promulgated by the Council on Environmental Quality (CEQ), found in 40 CFR parts 1500 through 1508.

(b) The Secretary shall ensure that all necessary surveys are performed and clearances obtained in accordance with 36 CFR parts 60, 63, and 800 and with the requirements of the Archaeological and Historic Preservation Act (16 U.S.C. 469 et seq.), the National Historic Preservation Act (16 U.S.C. 470 et seq.), The American Indian Religious

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Freedom Act (42 U.S.C. 1996), and Executive Order 11593, Protection and Enhancement of the Cultural Environment (3 CFR, 1971 through 1975 Comp., p. 559). If these surveys indicate that a mineral development will have an adverse effect on a property listed on or eligible for listing on the National Register of Historic Places, the Secretary shall:

(1) Seek the comments of the Advisory Council on Historic Preservation, in accordance with 36 CFR part 800;

(2) Ensure that the property is avoided, that the adverse effect is mitigated, or;

(3) Ensure that appropriate excavations or other related research is conducted and ensure that complete data describing the historic property is preserved.

**§ 211.8 Government employees cannot acquire leases.**

U.S. Government employees are prevented from acquiring leases or interests in leases by the provisions of 25 CFR part 140 and 43 CFR part 20 pertaining to conflicts of interest and ownership of an interest in trust land.

**§ 211.9 Existing permits or leases for minerals issued pursuant to 43 CFR chapter II and acquired for Indian tribes.**

(a) Title to the minerals underlying certain Federal lands, which were previously subject to general leasing and mining laws, is now held in trust by the United States for Indian tribes. Existing mineral prospecting permits, exploration and mining leases on these lands, issued prior to these lands being placed in trust status or becoming Indian lands, pursuant to 43 CFR chapter II (and its predecessor regulations), and all actions on the permits and leases shall be administered by the Secretary in accordance with the regulations set forth in 30 CFR chapters II and VII and 43 CFR chapter II, as applicable, provided, that all payment or reports required by a non-producing lease or permit, issued pursuant to 43 CFR chapter II, shall be made to the superintendent having administrative jurisdiction over the land involved, instead of the officer of the Bureau of Land Management designated in 43 CFR unless specifically stated otherwise in the statutes authorizing the United States to hold the land in trust for an Indian tribe. Producing lease payments and reports will be submitted to the Minerals Management Service in accordance with 30 CFR chapter II, subchapters A and C.

(b) Administrative actions regarding an existing lease or permit under this section, may be appealed pursuant to 25 CFR part 2.

**Subpart B. How to Acquire Leases**

**§ 211.20 Leasing procedures.**

(a) Indian mineral owners may, with the approval of the superintendent or area director, lease their land for mining purposes. No oil and gas lease shall be approved unless it has first been offered for bidding at an advertised lease sale in accordance with this section. Leases for minerals other than oil and gas shall be advertised for bids as prescribed in this section unless the Secretary grants the Indian mineral owners written permission to negotiate for lease. Application for leases shall be made to the superintendent having jurisdiction over the lands.

(b) Indian mineral owners may request that the Secretary prepare and advertise or negotiate (if the requirements of this section have been met) mineral leases on their behalf. If requested by an applicant interested in acquiring rights to Indian-owned minerals, the Secretary shall promptly notify the Indian mineral owner, and advise the owner in writing of the alternatives available, including the right to decline to lease. If the Indian mineral owner decides to have the leases advertised, the Secretary shall consult with the Indian mineral owner concerning the appropriate royalty rate and rental. The Secretary may then undertake the responsibility to advertise and lease in accordance with the following procedures:

(1) Leases shall be advertised to receive optimum competition for bonus consideration, under sealed bid, oral auction, or a combination of both. Notice of such advertisement shall be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

published in at least one local newspaper and in one trade publication at least thirty (30) days in advance of sale. If applicable, such notice must identify the reservation within which the tracts to be leased are found. No specific description of the tracts to be leased need be published. Specific description of such tracts shall be available at the office of the superintendent and/or area director upon request. The complete text of the advertisement, including a specific description, shall be mailed to each person listed on the appropriate agency or area mailing list. Individuals and companies interested in receiving advertisements of lease sales should send their mailing information to the appropriate superintendent or area director for future reference.

(2) The advertisement shall offer the tracts to the responsible bidder offering the highest bonus. The Secretary, after consultation with the Indian mineral owner, shall establish the rental and royalty rates which shall be stated in the advertisement and shall not be subject to negotiation. The advertisement shall provide that the Secretary reserves the right to reject any or all bids, and that acceptance of the lease bid by the Indian mineral owner is required.

(3) Each sealed bid must be accompanied by a cashier's check, certified check or postal money order, or any combination thereof, payable to the payee designated in the advertisement, in an amount not less than 25 percent of the bonus bid, which shall be returned if that bid is not accepted.

(4) A successful oral auction bidder will be allowed five (5) working days to remit the required 25 percent deposit of the bonus bid.

(5) A successful bidder shall, within thirty (30) days after notification of the bid award, remit to the Secretary the balance of the bonus, the first year's rental, a $75 filing fee, its prorated share of the advertising costs as determined by the Bureau of Indian Affairs, and file with the Secretary all required bonds. The successful bidder shall also file the lease in completed form at that time. However, for good reasons, the Secretary may grant extensions of time in thirty (30) day increments for filing of the lease and all required bonds, provided that additional extension requests are submitted and approved prior to the expiration of the original thirty (30) days or the previously granted extension. Failure on the part of the bidder to take all reasonable actions necessary to comply with the foregoing shall result in forfeiture of the required payment of 25 percent of any bonus bid for the use and benefit of the Indian mineral owner.

(6) If no satisfactory bid is received, or if the accepted bidder fails to complete all requirements necessary for the approval of the lease, or if the Secretary determines that it is not in the best interest of the Indian mineral owner to accept any of the bids the Secretary may re-advertise the lease for sale, or, subject to the consent of the Indian mineral owner, the lease may be let through private negotiations.

(c) The Secretary shall advise the Indian mineral owner of the results of the bidding, and shall not approve the lease until the consent of the Indian mineral owner has been obtained.

(d) The Indian mineral owner may also submit negotiated leases to the Secretary for review and approval.

**§ 211.21 [Reserved]**

**§ 211.22 Leases for subsurface storage of oil or gas.**

(a) The Secretary, with the consent of the Indian mineral owners, may approve storage leases, or modifications, amendments, or extensions of existing leases, on Indian lands to provide for the subsurface storage of oil or gas, irrespective of the lands from which production is initially obtained. The storage lease, or modification, amendment, or extension to an existing lease, shall provide for the payment of such storage fee or rental on such oil or gas as may be determined adequate in each case, or, in lieu thereof, for a royalty other than that prescribed in the oil and gas lease when such stored oil and gas is produced in conjunction with oil or gas not previously produced.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(b) The Secretary, with consent of the Indian mineral owners, may approve a provision in an oil and gas lease under which storage of oil and gas is authorized, for continuance of the lease at least for the period of such storage use and so long thereafter as oil or gas not previously produced is produced in paying quantities.

(c) Applications for subsurface storage of oil or gas shall be filed in triplicate with the authorized officer and shall disclose the ownership of the lands involved, the parties in interest, the storage fee, rental, or royalty offered to be paid for such storage, and all essential information showing the necessity for such project. Enough copies of the final agreement signed by the Indian mineral owners and other parties in interest shall be submitted for the approval of the Secretary to permit retention of five copies by the Department after approval.

**§ 211.23 Corporate qualifications and requests for information.**

(a) The signing in a representative capacity and delivery of bids, geological and geophysical permits, mineral leases, or assignments, bonds, or other instruments required by the regulations in this part constitutes certification that the individual signing (except a surety agent) is authorized to act in such capacity. An agent for a surety shall furnish a power of attorney.

(b) A corporate applicant proposing to acquire an interest in a permit or lease shall have on file with the superintendent or area director a statement showing:

(1) The State(s) in which the corporation is incorporated, and that the corporation is authorized to hold such interests in the State where the land described in the instrument is situated; and

(2) A notarized statement that the corporation has power to conduct all business and operations as described in the lease or permit.

(c) The Secretary may, either before or after the approval of a permit, mineral lease, assignment, or bond, call for any reasonable additional information necessary to carry out the regulations in this part, or other applicable laws and regulations.

**§ 211.24 Bonds.**

(a) The lessee, permittee or prospective lessee acquiring a lease, or any interest therein, by assignment shall furnish with each lease, permit or assignment a surety bond or personal bond in an amount sufficient to ensure compliance with all of the terms and conditions of the lease(s), permit(s), or assignment(s) and the statutes and regulations applicable to the lease, permit, or assignment. Surety bonds shall be issued by a qualified company approved by the Department of the Treasury (see Department of the Treasury Circular No. 570).

(b) An operator may file a $75,000 bond for all geothermal, mining, or oil and gas leases, permits, or assignments in any one State, which may also include areas on that part of an Indian reservation extending into any contiguous State. Statewide bonds are subject to approval in the discretion of the Secretary.

(c) An operator may file a $150,000 bond for full nationwide coverage to cover all geothermal or oil and gas leases, permits, or assignments without geographic or acreage limitation to which the operator is or may become a party. Nationwide bonds are subject to approval in the discretion of the Secretary.

(d) Personal bonds shall be accompanied by:

(1) Certificate of deposit issued by a financial institution, the deposits of which are federally insured, explicitly granting the Secretary full authority to demand immediate payment in case of default in the performance of the provisions and conditions of the lease or permit. The certificate shall explicitly indicate on its face that Secretarial approval is required prior to redemption of the certificate of deposit by any party;

(2) Cashier's check;

(3) Certified check;

(4) Negotiable Treasury securities of the United States of a value equal to the amount

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

specified in the bond. Negotiable Treasury securities shall be accompanied by a proper conveyance to the Secretary of full authority to sell such securities in case of default in the performance of the provisions and conditions of a lease or permit; or

(5) Letter of credit issued by a financial institution authorized to do business in the United States and whose deposits are federally insured, and identifying the Secretary as sole payee with full authority to demand immediate payment in the case of default in the performance of the provisions and conditions of a lease or permit.

(i) The letter of credit shall be irrevocable during its term.

(ii) The letter of credit shall be payable to the Bureau of Indian Affairs upon demand, in part or in full, upon receipt from the Secretary of a notice of attachment stating the basis thereof (e.g., default in compliance with the lease or permit provisions and conditions or failure to file a replacement in accordance with paragraph (d)(5)(v) of this section).

(iii) The initial expiration date of the letter of credit shall be at least one (1) year following the date it is filed in the proper Bureau of Indian Affairs office.

(iv) The letter of credit shall contain a provision for automatic renewal for periods of not less than one (1) year in the absence of notice to the proper Bureau of Indian Affairs office at least ninety (90) days prior to the originally stated or any extended expiration date.

(v) A letter of credit used as security for any lease or permit upon which operations have taken place and final approval for abandonment has not been given, or as security for a statewide or nationwide bond, shall be forfeited and shall be collected by the Secretary if not replaced by other suitable bond or letter of credit at least thirty (30) days before its expiration date.

(e) The required amount of bonds may be increased in any particular case at the discretion of the Secretary.

**§ 211.25 Acreage limitation.**

A lessee may acquire more than one lease but no single lease shall be granted for mineral leasing purposes on Indian tribal or restricted lands in excess of the following acreage except where the rule of approximation applies:

(a) Leases for oil and gas and all other minerals except coal are to be contained within one United States Governmental survey section of land and shall be described by legal subdivisions including lots or tract equivalents not to exceed 640 acres; in instances of irregular surveys, including lands not surveyed under the United States Governmental survey, lands shall be considered in multiples of 40 acres or the nearest aliquot equivalent thereof;

(b) Leases for coal shall ordinarily be limited to 2,560 acres in a reasonably compact form and shall be described by legal subdivisions including lots or tract equivalents. In instances of irregular surveys, including lands not surveyed under the United States Governmental survey, lands shall be considered in multiples of 40 acres or the nearest aliquot equivalent thereof. The Secretary may, upon application and with the consent of the Indian mineral owner, approve the issuance of a single lease for more than 2,560 acres, in a reasonably compact form, upon a finding that the issuance is in the best interest of the lessor.

**§ 211.26 [Reserved]**

**§ 211.27 Duration of leases.**

(a) All leases shall be for a term not to exceed a primary term of lease duration of ten (10) years and, absent specific lease provisions to the contrary, shall continue as long thereafter as the minerals specified in the lease are produced in paying quantities. Absent specific lease provisions to the contrary, all provisions in leases governing their duration shall be measured from the date of approval by the Secretary.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(b) An oil and gas or geothermal resource lease which stipulates that it shall continue in full force and effect beyond the expiration of the primary term of lease duration ("commencement clause") if drilling operations have commenced during the primary term, shall be valid and shall hold the lease beyond the primary term of lease duration if the lessee or the lessee's designee has commenced actual drilling by midnight of the last day of the primary term of the lease with a drilling rig designed to reach the total proposed depth, and drilling is continued with reasonable diligence until the well is completed to production or abandoned. However, in no case shall such drilling hold the lease longer than 120 days past the primary term of lease duration without actual production of oil, gas, or geothermal resources. Provided, that this extension does not allow a lease to continue past the 10-year statutory limitation. Drilling which meets the requirements of this section and occurs within a unit or communitization agreement to which the lease is committed shall be considered as if it occurs on the leasehold itself. If there is a conflict between the commencement clause and the habendum clause of a lease, the commencement clause will control.

(c) A solid minerals lease which stipulates that it shall continue in full force and effect beyond the expiration of the primary term of lease duration if mining operations have commenced during the primary term (commencement clause), shall be valid and hold the lease beyond the primary term of lease duration if the lessee or the lessee's designee has by midnight of the last day of the primary term of the lease commenced actual removal of mineral materials intended for sale and upon which royalties will be paid. If there is a conflict between the commencement clause and the habendum clause of a lease, the commencement clause will control.

**§ 211.28 Unitization and communitization agreements, and well spacing.**

(a) For the purpose of promoting conservation and efficient utilization of minerals, the Secretary may approve a cooperative unit, drilling or other development plan on any leased area upon a determination that approval is advisable and in the best interest of the Indian mineral owner. For the purposes of this section, a cooperative unit, drilling or other development plan means an agreement for the development or operation of a specifically designated area as a single unit without regard to separate ownership of the land included in the agreement. Such cooperative agreements include, but are not limited to, unit agreements, communitization agreements and other types of agreements that allocate costs and benefits.

(b) The consent of the Indian mineral owner to such unit or cooperative agreement shall not be required unless such consent is specifically required in the lease. However, the Secretary shall consult with the Indian mineral owner prior to making a determination concerning a cooperative agreement or well spacing plan.

(c) Requests for approval of cooperative agreements which comply with the requirements of all applicable rules and regulations shall be filed with the superintendent or area director.

(d) All Indian mineral owners of any right, title or interest in the mineral resources to be included in a cooperative agreement must be notified by the lessee at the time the agreement is submitted to the superintendent or area director. An affidavit from the lessee stating that a notice was mailed to each mineral owner of record for whom the superintendent or area director has an address will satisfy this notice requirement.

(e) A request for approval of a proposed cooperative agreement, and all documents incident to such agreement, must be filed with the superintendent or area director at least ninety (90) days prior to the first expiration date of any of the Indian leases in the area proposed to be covered by the cooperative agreement.

(f) Unless otherwise provided in the cooperative agreement, approval of the agreement commits each lease to the unit in the area covered by the agreement on the date approved by the Secretary or the date of first production, whichever is earlier, as long as the agreement is approved before the lease expiration date.

(g) Any lease committed in part to any such cooperative agreement shall be segregated into a separate lease or leases as to the lands committed and lands not committed to the agreement. Segregation shall be effective on the date the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

agreement is effective.

(h) Wells shall be drilled in conformity with a well spacing program approved by the authorized officer.

**§ 211.29 Exemption of leases and permits made by organized tribes.**

The regulations in this part may be superseded by the provisions of any tribal constitution, bylaw or charter issued pursuant to the Indian Reorganization Act of June 18, 1934 (48 Stat. 984; 25 U.S.C. 461-479), the Alaska Act of May 1, 1936 (49 Stat. 1250; 48 U.S.C. 362,258a), or the Oklahoma Indian Welfare Act of June 26, 1936 (49 Stat. 1967; 25 U.S.C., and Sup., 501-509), or by ordinance, resolution, or other action authorized under such constitution, bylaw or charter; Provided, that such tribal law may not supersede the requirements of Federal statutes applicable to Indian mineral leases. The regulations in this part, in so far as they are not so superseded, shall apply to leases and permits made by organized tribes if the validity of the lease or permit depends upon the approval of the Secretary of the Interior.

**Subpart C. Rents, Royalties, Cancellations and Appeals**

**§ 211.40 Manner of payments.**

Unless otherwise specifically provided for in a lease, once production has been established, all payments shall be made to the MMS or such other party as may be designated, and shall be made at such time as provided in 30 CFR chapter II, subchapters A and C. Prior to production, all bonus and rental payments, shall be made to the superintendent or area director.

**§ 211.41 Rentals and production royalty on oil and gas leases.**

(a) A lessee shall pay, in advance, beginning with the effective date of the lease, an annual rental of $2.00 per acre or fraction of an acre or such other greater amount as prescribed in the lease. This rental shall not be credited against production royalty nor shall the rental be prorated or refunded because of surrender or cancellation.

(b) The Secretary shall not approve leases with a royalty rate less than 16 2/3 percent of the amount or value of production produced and sold from the lease unless a lower royalty rate is agreed to by the Indian mineral owner and is found to be in the best interest of the Indian mineral owner. Such approval may only be granted by the area director if the approving official is the superintendent and by the Assistant Secretary for Indian Affairs if the approving official is the area director.

(c) Value of lease production for royalty purposes shall be determined in accordance with applicable lease provisions and regulations in 30 CFR chapter II, subchapters A and C. If the valuation provisions in the lease are inconsistent with the regulations in 30 CFR chapter II, subchapters A and C, the lease provisions shall govern.

(d) If the leased premises produce gas in excess of the lessee's requirements for the development and operation of said premises, then the lessor may use sufficient gas, free of charge, for any desired school or other buildings belonging to the tribe, by making his own connections to a regulator installed, connected to the well and maintained by the lessee, and the lessee shall not be required to pay royalty on gas so used. The use of such gas shall be at the lessor's risk at all times.

**§ 211.42 Annual rentals and expenditures for development on leases other than oil and gas, and geothermal resources.**

(a) Unless otherwise authorized by the Secretary, a lease for minerals other than oil, gas and geothermal resources shall provide for a yearly development expenditure of not less than $20 per acre. All such leases shall provide for a rental payment of not less than $2.00 for each acre or fraction of an acre payable on or before the first day of each lease year.

(b) Within twenty (20) days after the lease year, an itemized statement, in duplicate, of the expenditure for development under a lease for minerals other than oil and gas shall be filed with the superintendent or area director. The lessee must

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

certify the statement under oath.

**§ 211.43 Royalty rates for minerals other than oil and gas.**

(a) Except as provided in paragraph (b) of this section, the minimum rates for leases of minerals other than oil and gas shall be as follows:

(1) For substances other than coal, the royalty rate shall be 10 percent of the value of production produced and sold from the lease at the nearest shipping point.

(2) For coal to be strip or open pit mined the royalty rate shall be 12 1/2 percent of the value of production produced and sold from the lease, and for coal removed from an underground mine, the royalty rate shall be 8 percent of the value of production produced and sold from the lease.

(3) For geothermal resources, the royalty rate shall be 10 percent of the amount or value of steam, or any other form of heat or energy derived from production of geothermal resources under the lease and sold or utilized by the lessee. In addition, the royalty rate shall be 5 percent of the value of any byproduct derived from production of geothermal resources under the lease and sold or utilized or reasonably susceptible of sale or utilization by the lessee, except that the royalty for any mineral byproduct shall be governed by the appropriate paragraph of this section.

(b) A lower royalty rate shall be allowed if it is determined to be in the best interest of the Indian mineral owner. Approval of a lower rate may only be granted by the area director if the approving official is the superintendent or by the Assistant Secretary for Indian Affairs, if the approving official is the area director.

**§ 211.44 Suspension of operations.**

(a) After the expiration of the primary term of the lease the Secretary may approve suspension of operations for remedial purposes which are necessary for continued production, to protect the resource, the environment, or for other good reasons. Provided, that such remedial operations are conducted in accordance with 43 CFR part 3160, subpart 3165 and under such stipulations and conditions as may be prescribed by the Secretary and are conducted with reasonable diligence. Any suspension shall not relieve the lessee from liability for the payment of rental and other payments as required by lease provisions.

(b) An application for permission to suspend operations or production for economic or marketing reasons on a lease capable of production after the expiration of the primary term of lease duration must be accompanied by the written consent of the Indian mineral owner, an economic analysis, and an executed amendment by the parties to the lease setting forth the provisions pertaining to the suspension of operations and production. Such application shall be treated as a negotiated change to lease provisions, and as such, shall be subject to review and approval by the Secretary.

**§ 211.45 [Reserved]**

**§ 211.46 Inspection of premises, books and accounts.**

Lessees shall allow the Indian mineral owner, the Indian mineral owner's representatives, or any authorized representative of the Secretary to enter all parts of the leased premises for the purpose of inspection and audit. Lessees shall keep a full and correct account of all operations and submit all related reports required by the lease and applicable regulations. Books and records shall be available for inspection during regular business hours.

**§ 211.47 Diligence, drainage and prevention of waste.**

The lessee shall:

(a) Exercise diligence in mining, drilling and operating wells on the leased lands while minerals production can be secured in paying quantities;

(b) Protect the lease from drainage (if oil and gas or geothermal resources are being drained from the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

lease premises by a well or wells located on lands not included in the lease, the Secretary reserves the right to impose reasonable and equitable terms and conditions to protect the interest of the Indian mineral owner of the lands, such as payment of compensatory royalty for the drainage);

(c) Carry on operations in a good and workmanlike manner in accordance with approved methods and practices;

(d) Have due regard for the prevention of waste of oil or gas or other minerals, the entrance of water through wells drilled by the lessee to other strata, to the destruction or injury of the oil or gas, other mineral deposits, or fresh water aquifers, the preservation and conservation of the property for future productive operations, and the health and safety of workmen and employees;

(e) Securely plug all wells and effectively shut off all water from the oil or gas-bearing strata before abandoning them;

(f) Not construct any well pad location within 200 feet of any structures or improvements without the Indian surface owner's written consent;

(g) Carry out, at the lessee's expense, all reasonable orders and requirements of the authorized officer relative to prevention of waste;

(h) Bury all pipelines crossing tillable lands below plow depth unless other arrangements are made with the Indian surface owner; and

(i) Pay the Indian surface owner all damages, including damages to crops, buildings, and other improvements of the Indian surface owner occasioned by the lessee's operations as determined by the superintendent.

**§ 211.48 Permission to start operations.**

(a) No exploration, drilling, or mining operations are permitted on any Indian lands before the Secretary has granted written approval of a mineral lease or permit pursuant to the regulations in this part.

(b) After a lease or permit is approved, written permission must be secured from the Secretary before any operations are started on the leased premises, in accordance with applicable rules and regulations in 25 CFR part 216; 30 CFR chapter II, subchapters A and C; 30 CFR part 750 (Requirements for Surface Coal Mining and Reclamation Operations on Indian Lands), 43 CFR parts 3160, 3260, 3480, 3590, and Orders or Notices to Lessees (NTLs) issued thereunder.

**§ 211.49 Restrictions on operations.**

Leases issued under the provisions of the regulations in this part shall be subject to such restrictions as to time or times for well operations and production from any leased premises as the Secretary judges may be necessary or proper for the protection of the natural resources of the leased land and in the interest of the lessor.

**§ 211.50 [Reserved]**

**§ 211.51 Surrender of leases.**

A lessee may, with the approval of the Secretary, surrender a lease or any part of it, on the following conditions:

(a) All royalties and rentals due on the date the request for surrender is received must be paid;

(b) The superintendent, after consultation with the authorized officer, must be satisfied that proper provisions have been made for the conservation and protection of the property, and that all operations on the portion of the lease surrendered have been properly reclaimed, abandoned, or conditioned, as required;

(c) If a lease has been recorded, the lessee must submit a release along with the recording information of the original lease so that, after acceptance of the release, it may be recorded;

(d) If a lessee requests to surrender an entire lease or an entire undivided portion of a lease document, the lessee must deliver to the superintendent or area director the original lease documents; Provided, that where the request is made by an assignee to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

whom no copy of the lease was delivered, the assignee must deliver to the superintendent or area director only its copy of the assignment;

(e) If the lease (or a portion thereof being surrendered) is owned in undivided interests, all lessees owning undivided interests in the lease must join in the request for surrender;

(f) No part of any advance rental shall be refunded to the lessee, nor shall any subsequent surrender or termination of a lease relieve the lessee of the obligation to pay advance rental if advance rental became due prior to the date the request for surrender was received by the superintendent or area director;

(g) If oil, gas, or geothermal resources are being drained from the leased premises by a well or wells located on lands not included in the lease, the Secretary reserves the right, prior to acceptance of the surrender, to impose reasonable and equitable terms and conditions to protect the interests of the Indian mineral owners of the lands surrendered. Such terms and conditions may include payment of compensatory royalty for any drainage; and

(h) Upon expiration or surrender of a solid mineral lease the lessee shall deliver the leased premises in a condition conforming to the approved reclamation plan. Unless otherwise provided in the lease, the machinery necessary to operate the mine is the property of the lessee. However, the machinery may not be removed from the leased premises without the written permission of the Secretary.

**§ 211.52 Fees.**

Unless otherwise authorized by the Secretary, each permit, lease, sublease, or other contract, or assignment, thereof shall be accompanied by a filing fee of $75.00 at the time of filing.

**§ 211.53 Assignments, overriding royalties, and operating agreements.**

(a) Approved leases or any interest therein may be assigned or transferred only with the approval of the Secretary. The Indian mineral owner must also consent if approval of the Indian mineral owner is required in the lease. If consent is not required, then the Secretary shall notify the Indian mineral owner of the proposed assignment. To obtain the approval of the Secretary the assignee must be qualified to hold the lease under existing rules and regulations and shall furnish a satisfactory bond conditioned for the faithful performance of the covenants and conditions of the lease.

(b) No lease or interest therein or the use of such lease shall be assigned, sublet, or transferred, directly or indirectly, by working or drilling contract, or otherwise, without the consent of the Secretary.

(c) Assignments of leases, and stipulations modifying the provisions of existing leases, which stipulations are also subject to the approval of the Secretary, shall be filed with the superintendent within five (5) working days after the date of execution. Upon execution of satisfactory bonds by the assignee the Secretary may permit the release of any bonds executed by the assignor. Upon execution of satisfactory bonds the assignee accepts all the assignor's responsibilities and prior obligations and liabilities of the assignor (including but not limited to any underpaid royalties and rentals) under the lease.

(d) Agreements creating overriding royalties or payments out of production shall not be considered as interests in the leases as such provision is used in this section. Agreements creating overriding royalties or payments out of production, or agreements designating operators are hereby authorized and the approval of the Secretary shall not be required with respect thereto, but such agreements shall be subject to the condition that nothing in such agreements shall be construed as modifying any of the obligations of the lessee, including, but not limited to, obligations imposed by requirements of the MMS for reporting, accounting, and auditing; obligations for diligent development and operation, protection against drainage and mining in trespass, compliance with oil and gas, geothermal, and mining regulations (25 CFR part 216; 43 CFR parts 3160, 3260, 3480, and 3590; and those applicable rules found in 30 CFR chapter II, subchapters A and C) and the requirements for Secretarial approval before abandonment of any oil and gas or geothermal well or mining operation. All such obligations are to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

remain in full force and effect, the same as if free of any such overriding royalties or payments. The existence of agreements creating overriding royalties or payments out of production, whether or not actually paid, shall not be considered as justification for the approval of abandonment of any oil and gas or geothermal well or mining operation. Nothing in this paragraph revokes the requirement for approval of assignments and other instruments which is required in this section, but any overriding royalties or payments out of production created by the provisions of such assignments or instruments shall be subject to the condition stated in this section. Agreements creating overriding royalties or payments out of production, or agreements designating operators shall be filed with the superintendent unless incorporated in assignments or instruments required to be filed pursuant to this section.

**§ 211.54 Lease or permit cancellation; Bureau of Indian Affairs notice of noncompliance.**

(a) If the Secretary determines that a permittee or lessee has failed to comply with the terms of the permit or lease; the regulations in this part; or other applicable laws or regulations; the Secretary may:

(1) Serve a notice of noncompliance specifying in what respect the permittee or lessee has failed to comply with the requirements referenced in this paragraph, and specifying what actions, if any, must be taken to correct the noncompliance; or

(2) Serve a notice of proposed cancellation of the lease or permit. The notice of proposed cancellation shall set forth the reasons why lease or permit cancellation is proposed and shall specify what actions, if any, must be taken to avoid cancellation.

(b) The notice of noncompliance or proposed cancellation shall specify in what respect the permittee or lessee has failed to comply with the requirements referenced in paragraph (a), and shall specify what actions, if any, must be taken to correct the noncompliance.

(c) The notice shall be served upon the permittee or lessee by delivery in person or by certified mail to the permittee or lessee at the permittee's or lessee's last known address. When certified mail is used, the date of service shall be deemed to be when the notice is received or five (5) working days after the date it is mailed, whichever is earlier.

(d) The lessee or permittee shall have thirty (30) days (or such longer time as specified in the notice) from the date that the notice is served to respond, in writing, to the official or the Bureau of Indian Affairs office that issued the notice.

(e) If a permittee or lessee fails to take any action that is prescribed in the notice of proposed cancellation, fails to file a timely written response to the notice, or files a written response that does not, in the discretion of the Secretary, adequately justify the permittee's or lessee's actions, then the Secretary may cancel the lease or permit, specifying the basis for the cancellation.

(f) If a permittee or lessee fails to take corrective action or to file a timely written response adequately justifying the permittee's or lessee's actions pursuant to a notice of noncompliance, the Secretary may issue an order of cessation of operations. If the permittee or lessee fails to comply with the order of cessation, or fails to timely file an appeal of the order of cessation pursuant to paragraph (h), the Secretary may issue an order of lease or permit cancellation.

(g) Cancellation of a lease or permit shall not relieve the lessee or permittee of any continuing obligations under the lease or permit.

(h) Orders of cessation or of lease or permit cancellation issued pursuant to this section may be appealed under 25 CFR part 2.

(i) This section does not limit any other remedies of the Indian mineral owner as set forth in the lease or permit.

(j) Nothing in this section is intended to limit the authority of the authorized officer or the MMS official to take any enforcement action authorized pursuant to statute or regulation.

(k) The authorized officer, MMS official, and the superintendent and/or area director should consult with one another before taking any enforcement

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

actions.

**§ 211.55 Penalties.**

(a) In addition to or in lieu of cancellation under § 211.54, violations of the terms and conditions of any lease, or the regulations in this part, or failure to comply with a notice of noncompliance or a cessation order issued by the Secretary, or, in the case of solid minerals the authorized officer, may subject a lessee or permittee to a penalty of not more than $1,000 per day for each day that such a violation or noncompliance continues beyond the time limits prescribed for corrective action.

(b) A notice of a proposed penalty shall be served on the lessee or permittee either personally or by certified mail to the lessee or permittee at the lessee's or permittee's last known address. The date of service by certified mail shall be deemed to be the date when received or five (5) working days after the date mailed, whichever is earlier.

(c) The notice shall specify the nature of the violation and the proposed penalty, and shall specifically advise the lessee or permittee of the lessee's or permittee's right to either request a hearing within thirty (30) days from receipt of the notice or pay the proposed penalty. Hearings shall be held before the superintendent and/or area director whose findings shall be conclusive, unless an appeal is taken pursuant to 25 CFR part 2.

(d) If the lessee or permittee served with a notice of proposed penalty requests a hearing, penalties shall accrue each day the violations or noncompliance set forth in the notice continue beyond the time limits prescribed for corrective action. The Secretary may issue a written suspension of the requirement to correct the violations pending completion of the hearings provided by this section only upon a determination, at the discretion of the Secretary, that such a suspension will not be detrimental to the lessor and upon submission and acceptance of a bond deemed adequate to indemnify the lessor from loss or damage. The amount of the bond must be sufficient to cover the cost of correcting the violations set forth in the notice or any disputed amounts plus accrued penalties and interest.

(e) Payment in full of penalties more than ten (10) days after a final decision imposing a penalty shall subject the lessee or permittee to late payment charges. Late payment charges shall be calculated on the basis of a percentage assessment rate of the amount unpaid per month for each month or fraction thereof until payment is received by the Secretary. In the absence of a specific lease provision prescribing a different rate, the interest rate on late payments and underpayments shall be a rate applicable under § 6621(a)(2) of the Internal Revenue Code of 1954. Interest shall be charged only on the amount of payment not received and only for the number of days the payment is late.

(f) None of the provisions of this section shall be interpreted as:

(1) Replacing or superseding the independent authority of the authorized officer, the director's representative or the MMS official to impose penalties for violations of applicable regulations pursuant to 43 CFR part 3160, and 43 CFR Groups 3400 and 3500, 30 CFR part 750, or 30 CFR chapter II, subchapters A and C;

(2) Replacing or superseding any penalty provision in the terms and conditions of a lease or permit approved by the Secretary pursuant to this part; or

(3) Authorizing the imposition of a penalty for violations of lease or permit terms for which the authorized officer, director's representative or MMS official, have either statutory or regulatory authority to assess a penalty.

**§ 211.56 Geological and geophysical permits.**

Permits to conduct geological and geophysical operations on Indian lands which do not conflict with any mineral leases entered into pursuant to this part, may be approved by the Secretary with the consent of the Indian mineral owner under the following conditions:

(a) The permit must describe the area to be explored, the duration, and the consideration to be paid the Indian owner;

(b) The permit will not grant the permittee any

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

option or preference rights to a lease or other development contract, or authorize the production of, or removal of oil and gas, geothermal resources, or other minerals, except samples for assay and experimental purposes, unless specifically so stated in the permit; and

(c) Copies of all data collected pursuant to operations conducted under the permit shall be forwarded to the Secretary and the Indian mineral owner, unless otherwise provided in the permit. Data collected under a permit may be held by the Secretary as privileged and proprietary information for the time prescribed in the permit. Where no time period is prescribed in the permit, the Secretary may release such information after six (6) years, with the consent of the Indian mineral owner.

**§ 211.57 Forms.**

Leases, bonds, permits, assignments, and other instruments relating to mineral leasing shall be on forms, prescribed by the Secretary, that may be obtained from the superintendent or area director. The provisions of a standard lease or permit may be changed, deleted, or added to by written agreement of all parties with the approval of the Secretary.

**§ 211.58 Appeals.**

Appeals from decisions of Bureau of Indian Affairs officers under this part may be taken pursuant to 25 CFR part 2.

Current through February 16, 2007; 72 FR 7582
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.