**30** C.F.R. s **206.**10

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart A--General Provisions**

s **206**.10 Information collection.

The information collection requirements contained in **30** CFR Part **206** have been approved by the Office of Management and Budget (OMB) under 44 U.S.C. 3501 et seq. The forms, filing date, and approved OMB clearance numbers are identified in **30** CFR 210.10 and **30** CFR 216.10.

[53 FR 1272, Jan. 15, 1988; 54 FR 1522, Jan. 13, 1989]

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

**30** C. F. R. s **206.**10

**30** CFR s **206.**10

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**100

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart C--Federal and Indian Oil**

s **206**.100 Purpose and scope.

(a) This subpart is applicable to all oil production from Federal and Indian (Tribal and allotted) oil and gas leases (except leases on the Osage Indian Reservation, Osage County, Oklahoma). The purpose of this subpart is to establish the value of production, for royalty purposes, consistent with the mineral leasing laws, other applicable laws, and lease terms.

(b) If the specific provisions of any statute, treaty, or settlement agreement between the United States (or Indian lessor) and a lessee resulting from administrative or judicial litigation, or oil and gas lease subject to the requirements of this subpart are inconsistent with any regulation in this subpart, then the statute, treaty, lease provision or settlement agreement shall govern to the extent of that inconsistency.

(c) All royalty payments made to MMS or to any Tribe or allottee are subject to audit and adjustment.

(d) The regulations in this subpart are intended to ensure that the trust responsibilities of the United States with respect to the administration of Indian oil and gas leases are discharged in accordance with the requirements of the governing mineral leasing laws, treaties, and lease terms.

[52 FR 3798, Feb. 6, 1987; 53 FR 1218, Jan. 15, 1988]

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart C--Federal and Indian Oil

SOURCE: 47 FR 47773-47775, Oct. 27, 1982; 48 FR 35641, Aug. 5, 1983; 53 FR 1218, Jan. 15, 1988, unless otherwise noted.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**101

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart C--Federal and Indian Oil**

s **206**.101 Definitions.

For the purposes of this subpart:

"Allowance" means an approved or an MMS-initially accepted deduction in determining value for royalty purposes. "Transportation allowance" means an allowance for the reasonable, actual costs incurred by the lessee for moving oil to a point of sale or point of delivery off the lease, unit area, or communitized area, excluding gathering, or an approved or MMS-initially accepted deduction for costs of such transportation, determined pursuant to this subpart.

"Area" means a geographic region at least as large as the defined limits of an oil and/or gas field in which oil and/or gas lease products have similar quality, economic, and legal characteristics.

"Arm's-length contract" means a contract or agreement that has been arrived at in the market place between independent, nonaffiliated persons with opposing economic interests regarding that contract. For purposes of this subpart, two persons are affiliated if one person controls, is controlled by, or is under common control with another person. For purposes of this subpart, based on the instruments of ownership of the voting securities of an entity, or based on other forms of ownership:

(a) Ownership in excess of 50 percent constitutes control;

(b) Ownership of 10 through 50 percent creates a presumption of control; and

(c) Ownership of less than 10 percent creates a presumption of noncontrol which MMS may rebut if it demonstrates actual or legal control, including the existence of interlocking directorates.

Notwithstanding any other provisions of this subpart, contracts between relatives, either by blood or by marriage, are not arm's-length contracts. The MMS may require the lessee to certify ownership control. To be considered arm's-length for any production month, a contract must meet the requirements of this definition for that production month, as well as when the contract was executed.

"Audit" means a review, conducted in accordance with generally accepted accounting and auditing standards, of royalty payment compliance activities of lessees or other interest holders who pay royalties, rents, or bonuses on Federal and Indian leases.

"BIA" means the Bureau of Indian Affairs of the Department of the Interior.

"BLM" means the Bureau of Land Management of the Department of the Interior.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**101

"Condensate" means liquid hydrocarbons (normally exceeding 40 degrees of API gravity) recovered at the surface without resorting to processing. Condensate is the mixture of liquid hydrocarbons that results from condensation of petroleum hydrocarbons existing initially in a gaseous phase in an underground reservoir.

"Contract" means any oral or written agreement, including amendments or revisions thereto, between two or more persons and enforceable by law that with due consideration creates an obligation.

"Field" means a geographic region situated over one or more subsurface oil and gas reservoirs encompassing at least the outermost boundaries of all oil and gas accumulations known to be within those reservoirs vertically projected to the land surface. Onshore fields are usually given names and their official boundaries are often designated by oil and gas regulatory agencies in the respective States in which the fields are located. Outer Continental Shelf (OCS) fields are named and their boundaries are designated by MMS.

"Gathering" means the movement of lease production to a central accumulation or treatment point on the lease, unit, or communitized area, or to a central accumulation or treatment point off the lease, unit, or communitized area as approved by BLM or MMS OCS operations personnel for onshore and offshore leases, respectively.

"Gross proceeds" (for royalty payment purposes) means the total monies and other consideration accruing to an oil and gas lessee for the disposition of the oil produced. Gross proceeds includes, but is not limited to, payments to the lessee for certain services such as dehydration, measurement, and/or gathering to the extent that the lessee is obligated to perform them at no cost to the Federal Government or Indian lessor. Gross proceeds, as applied to oil, also includes, but is not limited to, reimbursements for harboring or terminaling fees. Tax reimbursements are part of the gross proceeds accruing to a lessee even though the Federal or Indian royalty interest may be exempt from taxation. Monies and other consideration, including the forms of consideration identified in this paragraph, to which a lessee is contractually or legally entitled but which it does not seek to collect through reasonable efforts are also part of gross proceeds.

"Indian allottee" means any Indian for whom land or an interest in land is held in trust by the United States or who holds title subject to Federal restriction against alienation.

"Indian Tribe" means any Indian Tribe, band, nation, pueblo, community, rancheria, colony, or other group of Indians for which any land or interest in land is held in trust by the United States or which is subject to Federal restriction against alienation.

"Lease" means any contract, profit-share arrangement, joint venture, or other agreement issued or approved by the United States under a mineral leasing law that authorizes exploration for, development or extraction of, or removal of lease products--or the land area covered by that authorization, whichever is required by the context.

"Lease products" means any leased minerals attributable to, originating from, or allocated to Outer Continental Shelf or onshore Federal or Indian leases.

"Lessee" means any person to whom the United States, an Indian Tribe, or an Indian allottee issues a lease, and any person who has been assigned an obligation to make royalty or other payments required by the lease. This includes any person who has an interest in a lease as well as an operator or payor who has no interest in the lease but who has assumed the royalty payment responsibility.

"Like-quality lease products" means lease products which have similar chemical, physical, and legal characteristics.

"Load oil" means any oil which has been used with respect to the operation of oil or gas wells for wellbore stimulation, workover, chemical treatment, or production purposes. It does not include oil used at the surface to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

place lease production in marketable condition.

"Marketable condition" means lease products which are sufficiently free from impurities and otherwise in a condition that they will be accepted by a purchaser under a sales contract typical for the field or area.

"Marketing affiliate" means an affiliate of the lessee whose function is to acquire only the lessee's production and to market that production.

"Minimum royalty" means that minimum amount of annual royalty that the lessee must pay as specified in the lease or in applicable leasing regulations.

"Net-back method" (or workback method) means a method for calculating market value of oil at the lease. Under this method, costs of transportation, processing, or manufacturing are deducted from the proceeds received for the oil and any extracted, processed, or manufactured products, or from the value of the oil or any extracted, processed, or manufactured products at the first point at which reasonable values for any such products may be determined by a sale pursuant to an arm's-length contract or comparison to other sales of such products, to ascertain value at the lease.

"Net profit share" (for applicable Federal and Indian lessees) means the specified share of the net profit from production of oil and gas as provided in the agreement.

"Oil" means a mixture of hydrocarbons that existed in the liquid phase in natural underground reservoirs and remains liquid at atmospheric pressure after passing through surface separating facilities and is marketed or used as such. Condensate recovered in lease separators or field facilities is considered to be oil. For purposes of royalty valuation, the term tar sands is defined separately from oil.

"Oil shale" means a kerogen-bearing rock (i.e., fossilized, insoluble, organic material). Separation of kerogen from oil shale may take place in situ or in surface retorts by various processes. The kerogen, upon distillation, will yield liquid and gaseous hydrocarbons.

"Outer Continental Shelf (OCS") means all submerged lands lying seaward and outside of the area of lands beneath navigable waters as defined in Section 2 of the Submerged Lands Act (43 U.S.C. 1301) and of which the subsoil and seabed appertain to the United States and are subject to its jurisdiction and control.

"Person" means any individual, firm, corporation, association, partnership, consortium, or joint venture (when established as a separate entity).

"Posted price" means the price specified in publicly available posted price bulletins, offshore or onshore terminal postings, or other price notices net of all adjustments for quality (e.g., API gravity, sulfur content, etc.) and location for oil in marketable condition.

"Processing" means any process designed to remove elements or compounds (hydrocarbon and nonhydrocarbon) from gas, including absorption, adsorption, or refrigeration. Field processes which normally take place on or near the lease, such as natural pressure reduction, mechanical separation, heating, cooling, dehydration, and compression are not considered processing. The changing of pressures and/or temperatures in a reservoir is not considered processing.

"Section 6 lease" means an OCS lease subject to section 6 of the Outer Continental Shelf Lands Act, as amended, 43 U.S.C. 1335.

"Selling arrangement" means the individual contractual arrangements under which sales or dispositions of oil are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

made. Selling arrangements are described by illustration in the MMS Royalty Management Program (Oil and Gas or Solid Minerals) Payor Handbook.

"Spot sales agreement" means a contract wherein a seller agrees to sell to a buyer a specified amount of oil at a specified price over a fixed period, usually of short duration, which does not normally require a cancellation notice to terminate, and which does not contain an obligation, nor imply an intent, to continue in subsequent periods.

"Tar sands" means any consolidated or unconsolidated rock (other than coal, oil shale, or gilsonite) that either contains a hydrocarbonaceous material with a gas-free viscosity greater than 10,000 centipoise at original reservoir temperature, or contains a hydrocarbonaceous material and is produced by mining or quarrying.

[53 FR 1218, Jan. 15, 1988; 53 FR 45084, Nov. 8, 1988]

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart C--Federal and Indian Oil

SOURCE: 47 FR 47773-47775, Oct. 27, 1982; 48 FR 35641, Aug. 5, 1983; 53 FR 1218, Jan. 15, 1988, unless otherwise noted.

**30** C. F. R. s **206.**101

**30** CFR s **206.**101

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**102

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart C--Federal and Indian Oil**

s **206**.102 Valuation standards.

(a)(1) The value of production, for royalty purposes, of oil from leases subject to this subpart shall be the value determined pursuant to this section less applicable allowances determined pursuant to this subpart.

(2)(i) For any Indian leases which provide that the Secretary may consider the highest price paid or offered for a major portion of production (major portion) in determining value for royalty purposes, if data are available to compute a major portion, MMS will, where practicable, compare the value determined in accordance with this section with the major portion. The value to be used in determining the value of production, for royalty purposes, shall be the higher of those two values.

(ii) For purposes of this paragraph, major portion means the highest price paid or offered at the time of production for the major portion of oil production from the same field. The major portion will be calculated using like-quality oil sold under arm's-length contracts from the same field (or, if necessary to obtain a reasonable sample, from the same area) for each month. All such oil production will be arrayed from highest price to lowest price (at the bottom). The major portion is that price at which 50 percent (by volume) plus 1 barrel of the oil (starting from the bottom) is sold.

(b)(1)(i) The value of oil which is sold pursuant to an arm's-length contract shall be the gross proceeds accruing to the lessee, except as provided in paragraphs (b)(1)(ii) and (b)(1)(iii) of this section. The lessee shall have the burden of demonstrating that its contract is arm's-length. The value which the lessee reports, for royalty purposes, is subject to monitoring, review, and audit. For purposes of this section, oil which is sold or otherwise transferred to the lessee's marketing affiliate and then sold by the marketing affiliate pursuant to an arm's-length contract shall be valued in accordance with this paragraph based upon the sale by the marketing affiliate.

(ii) In conducting reviews and audits, MMS will examine whether the contract reflects the total consideration actually transferred either directly or indirectly from the buyer to the seller for the oil. If the contract does not reflect the total consideration, then the MMS may require that the oil sold pursuant to that contract be valued in accordance with paragraph (c) of this section. Value may not be less than the gross proceeds accruing to the lessee, including the additional consideration.

(iii) If the MMS determines that the gross proceeds accruing to the lessee pursuant to an arm's-length contract do not reflect the reasonable value of the production because of misconduct by or between two contracting parties, or because the lessee otherwise has breached its duty to the lessor to market the production for the mutual benefit of the lessee and the lessor, then MMS shall require that the oil production be valued pursuant to the first applicable of paragraph (c)(2), (c)(3), (c)(4), or (c)(5) of this section. When MMS determines that the value may be unreasonable, MMS will notify the lessee and give the lessee an opportunity to provide written information justifying the lessee's value. If the oil production is then valued pursuant to paragraph (c)(4) or (c)(5) of this section, the notification requirements of paragraph (e) of this section shall apply.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**102

(2) The MMS may require a lessee to certify that its arm's-length contract provisions include all of the consideration to be paid by the buyer, either directly or indirectly, for the oil.

(c) The value of oil production from leases subject to this section which is not sold pursuant to an arm's-length contract shall be the reasonable value determined in accordance with the first applicable of the following paragraphs:

(1) The lessee's contemporaneous posted prices or oil sales contract prices used in arm's-length transactions for purchases or sales of significant quantities of like-quality oil in the same field (or, if necessary to obtain a reasonable sample, from the same area); provided, however, that those posted prices or oil sales contract prices are comparable to other contemporaneous posted prices or oil sales contract prices used in arm's-length transactions for purchases or sales of significant quantities of like-quality oil in the same field (or, if necessary to obtain a reasonable sample, from the same area). In evaluating the comparability of posted prices or oil sales contract prices, the following factors shall be considered: Price, duration, market or markets served, terms, quality of oil, volume, and other factors as may be appropriate to reflect the value of the oil. If the lessee makes arm's-length purchases or sales at different postings or prices, then the volume-weighted average price for the purchases or sales for the production month will be used;

(2) The arithmetic average of contemporaneous posted prices used in arm's-length transactions by persons other than the lessee for purchases or sales of significant quantities of like-quality oil in the same field (or, if necessary to obtain a reasonable sample, from the same area);

(3) The arithmetic average of other contemporaneous arm's-length contract prices for purchases or sales of significant quantities of like-quality oil in the same area or nearby areas;

(4) Prices received for arm's-length spot sales of significant quantities of like-quality oil from the same field (or, if necessary to obtain a reasonable sample, from the same area), and other relevant matters, including information submitted by the lessee concerning circumstances unique to a particular lease operation or the saleability of certain types of oil;

(5) A net-back method or any other reasonable method to determine value;

(6) For purposes of this paragraph, the term lessee includes the lessee's designated purchasing agent, and the term contemporaneous means postings or contract prices in effect at the time the royalty obligation is incurred.

(d) Any Federal or Indian lessee will make available, upon request to the authorized MMS, State, or Indian representatives, to the Office of the Inspector General of the Department of the Interior, or other persons authorized to receive such information, arm's-length sales and volume data for like-quality production sold, purchased, or otherwise obtained by the lessee from the field or area or from nearby fields or areas.

(e)(1) Where the value is determined pursuant to paragraph (c) of this section, the lessee shall retain all data relevant to the determination of royalty value. Such data shall be subject to review and audit, and MMS will direct a lessee to use a different value if it determines that the reported value is inconsistent with the requirements of these regulations.

(2) A lessee shall notify MMS if it has determined value pursuant to paragraph (c)(4) or (c)(5) of this section. The notification shall be by letter to the MMS Associate Director for Royalty Management or his/her designee. The letter shall identify the valuation method to be used and contain a brief description of the procedure to be followed. The notification required by this paragraph is a one-time notification due no later than the end of the month following the month the lessee first reports royalties on a Form MMS-2014 using a valuation method authorized by paragraph (c)(4) or (c)(5) of this section and each time there is a change from one to the other of these two methods.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**102

(f) If MMS determines that a lessee has not properly determined value, the lessee shall pay the difference, if any, between royalty payments made based upon the value it has used and the royalty payments that are due based upon the value established by MMS. The lessee shall also pay interest on the difference computed pursuant to **30** CFR 218.54. If the lessee is entitled to a credit, MMS will provide instructions for the taking of that credit.

(g) The lessee may request a value determination from MMS. In that event, the lessee shall propose to MMS a value determination method and may use that value for royalty payment purposes until MMS issues a value determination. The lessee shall submit all available data relevant to its proposal. MMS shall expeditiously determine the value based upon the lessee's proposal and any additional information MMS deems necessary. In making a value determination, MMS may use any of the valuation criteria authorized by this subpart. That determination shall remain effective for the period stated therein. After MMS issues its determination, the lessee shall make the adjustments in accordance with paragraph (f) of this section.

(h) Notwithstanding any other provision of this section, under no circumstances shall the value of production, for royalty purposes, be less than the gross proceeds accruing to the lessee for lease production, less applicable allowances determined pursuant to this subpart.

(i) The lessee is required to place oil in marketable condition at no cost to the Federal Government or Indian lessor unless otherwise provided in the lease agreement or this section. Where the value established pursuant to this section is determined by a lessee's gross proceeds, that value shall be increased to the extent that the gross proceeds have been reduced because the purchaser, or any other person, is providing certain services the cost of which ordinarily is the responsibility of the lessee to place the oil in marketable condition.

(j) Value shall be based on the highest price a prudent lessee can receive through legally enforceable claims under its contract. Absent contract revision or amendment, if the lessee fails to take proper or timely action to receive prices or benefits to which it is entitled, it must pay royalty at a value based upon that obtainable price or benefit. Contract revisions or amendments shall be in writing and signed by all parties to an arm's-length contract. If the lessee makes timely application for a price increase or benefit allowed under its contract but the purchaser refuses, and the lessee takes reasonable measures, which are documented, to force purchaser compliance, the lessee will owe no additional royalties unless or until monies or consideration resulting from the price increase or additional benefits are received. This paragraph shall not be construed to permit a lessee to avoid its royalty payment obligation in situations where a purchaser fails to pay, in whole or in part or timely, for a quantity of oil.

(k) Notwithstanding any provision in these regulations to the contrary, no review, reconciliation, monitoring, or other like process that results in a redetermination by the MMS of value under this section shall be considered final or binding as against the Federal Government, its beneficiaries, the Indian Tribes, or allottees until the audit period is formally closed.

(l) Certain information submitted to MMS to support valuation proposals, including transportation allowances or extraordinary cost allowances, is exempted from disclosure by the Freedom of Information Act, 5 U.S.C. 552, or other Federal law. Any data specified by law to be privileged, confidential, or otherwise exempt, will be maintained in a confidential manner in accordance with applicable laws and regulations. All requests for information about determinations made under this part are to be submitted in accordance with the Freedom of Information Act regulation of the Department of the Interior, 43 CFR Part 2. Nothing in this section is intended to limit or diminish in any manner whatsoever the right of an Indian lessor to obtain any and all information to which such lessor may be lawfully entitled from MMS or such lessor's lessee directly under the terms of the lease, **30** U.S.C. 1733, or other applicable law.

[53 FR 1220, Jan. 15, 1988; 53 FR 45762, Nov. 14, 1988]

Title **30**--Mineral Resources

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**102

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart C--Federal and Indian Oil

SOURCE: 47 FR 47773-47775, Oct. 27, 1982; 48 FR 35641, Aug. 5, 1983; 53 FR 1218, Jan. 15, 1988, unless otherwise noted.

**30** C. F. R. s **206.**102

**30** CFR s **206.**102

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**103

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart C--Federal and Indian Oil**

s **206**.103 Point of royalty settlement.

(a)(1) Royalties shall be computed on the quantity and quality of oil as measured at the point of settlement approved by BLM or MMS for onshore and offshore leases, respectively.

(2) If the value of oil determined pursuant to s **206**.102 of this subpart is based upon a quantity and/or quality different from the quantity and/or quality at the point of royalty settlement approved by the BLM for onshore leases or the MMS for offshore leases, the value shall be adjusted for those differences in quantity and/or quality.

(b) No deductions may be made from the royalty volume or royalty value for actual or theoretical losses. Any actual loss that may be sustained prior to the royalty settlement metering or measurement point will not be subject to royalty provided that such actual loss is determined to have been unavoidable by BLM or MMS, as appropriate.

(c) Except as provided in paragraph (b) of this section, royalties are due on 100 percent of the volume measured at the approved point of royalty settlement. There can be no reduction in that measured volume for actual losses beyond the approved point of royalty settlement or for theoretical losses that are claimed to have taken place either prior to or beyond the approved point of royalty settlement. Royalties are due on 100 percent of the value of the oil as provided in this part. There can be no deduction from the value of the oil for royalty purposes to compensate for actual losses beyond the approved point of royalty settlement or for theoretical losses that are claimed to have taken place either prior to or beyond the approved point of royalty settlement.

[53 FR 1218, 1221, Jan. 15, 1988]

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart C--Federal and Indian Oil

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**103

SOURCE: 47 FR 47773-47775, Oct. 27, 1982; 48 FR 35641, Aug. 5, 1983; 53 FR 1218, Jan. 15, 1988, unless otherwise noted.

**30** C. F. R. s **206.**103

**30** CFR s **206.**103

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**104

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart C--Federal and Indian Oil**

s **206**.104 Transportation allowances--general.

(a) Where the value of oil has been determined pursuant to s **206**.102 of this subpart at a point (e.g., sales point or point of value determination) off the lease, MMS shall allow a deduction for the reasonable, actual costs incurred by the lessee to:

(1) Transport oil from an onshore lease to the point off the lease; provided, however, that for onshore leases, no transportation allowance will be granted for transporting oil taken as Royalty-In-Kind (RIK); or

(2) Transport oil from an offshore lease to the point off the lease; provided, however, that for oil taken as RIK, a transportation allowance shall be provided for the reasonable, actual costs incurred to transport that oil to the delivery point specified in the contract between the RIK oil purchaser and the Federal Government.

(b)(1) Except as provided in paragraph (b)(2) of this section, the transportation allowance deduction on the basis of a selling arrangement shall not exceed 50 percent of the value of the oil at the point of sale as determined pursuant to s **206**.102 of this subpart. Transportation costs cannot be transferred between selling arrangements or to other products.

(2) Upon request of a lessee, MMS may approve a transportation allowance deduction in excess of the limitation prescribed by paragraph (b)(1) of this section. The lessee must demonstrate that the transportation costs incurred in excess of the limitation prescribed in paragraph (b)(1) of this section were reasonable, actual, and necessary. An application for exception shall contain all relevant and supporting documentation necessary for the MMS to make a determination. Under no circumstances shall the value, for royalty purposes, under any selling arrangement, be reduced to zero.

(c) Transportation costs must be allocated among all products produced and transported as provided in s **206**.105. Transportation allowances for oil shall be expressed as dollars per barrel.

(d) If, after a review and/or audit, MMS determines that a lessee has improperly determined a transportation allowance authorized by this subpart, then the lessee shall pay any additional royalties, plus interest determined in accordance with 30 CFR 218.54, or shall be entitled to a credit, without interest.

[53 FR 1218, 1222, Jan. 15, 1988; 53 FR 24688, June 30, 1988; 53 FR 45762, Nov. 14, 1988]

Title 30--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**104

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart C--Federal and Indian Oil

SOURCE: 47 FR 47773-47775, Oct. 27, 1982; 48 FR 35641, Aug. 5, 1983; 53 FR 1218, Jan. 15, 1988, unless otherwise noted.

**30** C. F. R. s **206.**104

**30** CFR s **206.**104

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**105

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart C--Federal and Indian Oil**

s **206**.105 Determination of transportation allowances.

(a) Arm's-length transportation contracts. (1)(i) For transportation costs incurred by a lessee pursuant to an arm's-length contract, the transportation allowance shall be the reasonable, actual costs incurred by the lessee for transporting oil under that contract, except as provided in paragraphs (a)(1)(ii) and (a)(1)(iii) of this section, subject to monitoring, review, audit, and adjustment. The lessee shall have the burden of demonstrating that its contract is arm's-length. Such allowances shall be subject to the provisions of paragraph (f) of this section. Before any deduction may be taken, the lessee must submit a completed page one of Form MMS-4110 (and Schedule 1), Oil Transportation Allowance Report, in accordance with paragraph (c)(1) of this section. A transportation allowance may be claimed retroactively for a period of not more than 3 months prior to the first day of the month that Form MMS-4110 is filed with MMS, unless MMS approves a longer period upon a showing of good cause by the lessee.

(ii) In conducting reviews and audits, MMS will examine whether the contract reflects more than the consideration actually transferred either directly or indirectly from the lessee to the transporter for the transportation. If the contract reflects more than the total consideration, then the MMS may require that the transportation allowance be determined in accordance with paragraph (b) of this section.

(iii) If the MMS determines that the consideration paid pursuant to an arm's-length transportation contract does not reflect the reasonable value of the transportation because of misconduct by or between the contracting parties, or because the lessee otherwise has breached its duty to the lessor to market the production for the mutual benefit of the lessee and the lessor, then MMS shall require that the transportation allowance be determined in accordance with paragraph (b) of this section. When MMS determines that the value of the transportation may be unreasonable, MMS will notify the lessee and give the lessee an opportunity to provide written information justifying the lessee's transportation costs.

(2)(i) If an arm's-length transportation contract includes more than one liquid product, and the transportation costs attributable to each product cannot be determined from the contract, then the total transportation costs shall be allocated in a consistent and equitable manner to each of the liquid products transported in the same proportion as the ratio of the volume of each product (excluding waste products which have no value) to the volume of all liquid products (excluding waste products which have no value). Except as provided in this paragraph, no allowance may be taken for the costs of transporting lease production which is not royalty-bearing without MMS approval.

(ii) Notwithstanding the requirements of paragraph (i), the lessee may propose to MMS a cost allocation method on the basis of the values of the products transported. The MMS shall approve the method unless it determines that it is not consistent with the purposes of the regulations in this part.

(3) If an arm's-length transportation contract includes both gaseous and liquid products, and the transportation costs attributable to each product cannot be determined from the contract, the lessee shall propose an allocation

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

procedure to MMS. The lessee may use the oil transportation allowance determined in accordance with its proposed allocation procedure until MMS issues its determination on the acceptability of the cost allocation. The lessee shall submit all available data to support its proposal. The initial proposal must be submitted by June **30**, 1988 or within 3 months after the last day of the month for which the lessee requests a transportation allowance, whichever is later (unless MMS approves a longer period). The MMS shall then determine the oil transportation allowance based upon the lessee's proposal and any additional information MMS deems necessary.

(4) Where the lessee's payments for transportation under an arm's-length contract are not on a dollar-per-unit basis, the lessee shall convert whatever consideration is paid to a dollar value equivalent for the purposes of this section.

(5) Where an arm's-length sales contract price, or a posted price, includes a provision whereby the listed price is reduced by a transportation factor, MMS will not consider the transportation factor to be a transportation allowance. The transportation factor may be used in determining the lessee's gross proceeds for the sale of the product. The transportation factor may not exceed 50 percent of the base price of the product without MMS approval.

(b) Non-arm's-length or no contract. (1) If a lessee has a non-arm's-length transportation contract or has no contract, including those situations where the lessee performs transportation services for itself, the transportation allowance will be based upon the lessee's reasonable, actual costs as provided in this paragraph. All transportation allowances deducted under a non-arms-length or no-contract situation are subject to monitoring, review, audit, and adjustment. Before any estimated or actual deduction may be taken, the lessee must submit a completed Form MMS-4110 in its entirety in accordance with paragraph (c)(2) of this section. A transportation allowance may be claimed retroactively for a period of not more than 3 months prior to the first day of the month that Form MMS-4110 is filed with MMS, unless MMS approves a longer period upon a showing of good cause by the lessee. The MMS will monitor the allowance deductions to determine whether lessees are taking deductions that are reasonable and allowable. When necessary or appropriate, MMS may direct a lessee to modify its estimated or actual transportation allowance deduction.

(2) The transportation allowance for non-arms-length or no-contract situations shall be based upon the lessee's actual costs for transportation during the reporting period, including operating and maintenance expenses, overhead, and either depreciation and a return on undepreciated capital investment in accordance with paragraph (b)(2)(iv)(A) of this section, or a cost equal to the initial capital investment in the transportation system multiplied by a rate of return in accordance with paragraph (b)(2)(iv)(B) of this section. Allowable capital costs are generally those for depreciable fixed assets (including costs of delivery and installation of capital equipment) which are an integral part of the transportation system.

(i) Allowable operating expenses include: Operations supervision and engineering; operations labor; fuel; utilities; materials; ad valorem property taxes; rent; supplies; and any other directly allocable and attributable operating expense which the lessee can document.

(ii) Allowable maintenance expenses include: Maintenance of the transportation system; maintenance of equipment; maintenance labor; and other directly allocable and attributable maintenance expenses which the lessee can document.

(iii) Overhead directly attributable and allocable to the operation and maintenance of the transportation system is an allowable expense. State and Federal income taxes and severance taxes and other fees, including royalties, are not allowable expenses.

(iv) A lessee may use either depreciation or a return on depreciable capital investment. After a lessee has elected to use either method for a transportation system, the lessee may not later elect to change to the other alternative without approval of the MMS.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(A) To compute depreciation, the lessee may elect to use either a straight-line depreciation method based on the life of equipment or on the life of the reserves which the transportation system services or on a unit-of-production method. After an election is made, the lessee may not change methods without MMS approval. A change in ownership of a transportation system shall not alter the depreciation schedule established by the original transporter/lessee for purposes of the allowance calculation. With or without a change in ownership, a transportation system shall be depreciated only once. Equipment shall not be depreciated below a reasonable salvage value.

(B) The MMS shall allow as a cost an amount equal to the initial capital investment in the transportation system multiplied by the rate of return determined pursuant to paragraph (b)(2)(v) of this section. No allowance shall be provided for depreciation. This alternative shall apply only to transportation facilities first placed in service after March 1, 1988.

(v) The rate of return shall be the industrial rate associated with Standard and Poor's BBB rating. The rate of return shall be the monthly average rate as published in Standard and Poor's Bond Guide for the first month of the reporting period for which the allowance is applicable and shall be effective during the reporting period. The rate shall be redetermined at the beginning of each subsequent transportation allowance reporting period (which is determined pursuant to paragraph (c) of this section).

(3)(i) The deduction for transportation costs shall be determined on the basis of the lessee's cost of transporting each product through each individual transportation system. Where more than one liquid product is transported, allocation of costs to each of the liquid products transported shall be in the same proportion as the ratio of the volume of each liquid product (excluding waste products which have no value) to the volume of all liquid products (excluding waste products which have no value) and such allocation shall be made in a consistent and equitable manner. Except as provided in this paragraph, the lessee may not take an allowance for transporting lease production which is not royalty-bearing without MMS approval.

(ii) Notwithstanding the requirements of paragraph (i), the lessee may propose to the MMS a cost allocation method on the basis of the values of the products transported. The MMS shall approve the method unless it determines that it is not consistent with the purposes of the regulations in this part.

(4) Where both gaseous and liquid products are transported through the same transportation system, the lessee shall propose a cost allocation procedure to MMS. The lessee may use the oil transportation allowance determined in accordance with its proposed allocation procedure until MMS issues its determination on the acceptability of the cost allocation. The lessee shall submit all available data to support its proposal. The initial proposal must be submitted by June **30**, 1988 or within 3 months after the last day of the month for which the lessee requests a transportation allowance, whichever is later (unless MMS approves a longer period). The MMS shall then determine the oil transportation allowance on the basis of the lessee's proposal and any additional information MMS deems necessary.

(5) A lessee may apply to the MMS for an exception from the requirement that it compute actual costs in accordance with paragraphs (b)(1) through (b)(4) of this section. The MMS will grant the exception only if the lessee has a tariff for the transportation system approved by the Federal Energy Regulatory Commission (FERC) (for both Federal and Indian leases) or a State regulatory agency (for Federal leases). The MMS shall deny the exception request if it determines that the tariff is excessive as compared to arm's-length transportation charges by pipelines, owned by the lessee or others, providing similar transportation services in that area. If there are no arm's-length transportation charges, MMS shall deny the exception request if: (i) No FERC or State regulatory agency cost analysis exists and the FERC or State regulatory agency, as applicable, has declined to investigate pursuant to MMS timely objections upon filing; and (ii) the tariff significantly exceeds the lessee's actual costs for transportation as determined under this section.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(c) Reporting requirements. (1) Arm's-length contracts. (i) With the exception of those transportation allowances specified in paragraphs (c)(1)(v) and (c)(1)(vi) of this section, the lessee shall submit page one of the initial Form MMS-4110 (and Schedule 1), Oil Transportation Allowance Report, prior to, or at the same time as, the transportation allowance determined, pursuant to an arm's-length contract, is reported on Form MMS-2014, Report of Sales and Royalty Remittance. A Form MMS-4110 received by the end of the month that the Form MMS-2014 is due shall be considered to be timely received.

(ii) The initial Form MMS-4110 shall be effective for a reporting period beginning the month that the lessee is first authorized to deduct a transportation allowance and shall continue until the end of the calendar year, or until the applicable contract or rate terminates or is modified or amended, whichever is earlier.

(iii) After the initial reporting period and for succeeding reporting periods, lessees must submit page one of Form MMS-4110 (and Schedule 1) within 3 months after the end of the calendar year, or after the applicable contract or rate terminates or is modified or amended, whichever is earlier, unless MMS approves a longer period (during which period the lessee shall continue to use the allowance from the previous reporting period).

(iv) The MMS may require that a lessee submit arm's-length transportation contracts, production agreements, operating agreements, and related documents. Documents shall be submitted within a reasonable time, as determined by MMS.

(v) Transportation allowances which are based on arm's-length contracts and which are in effect at the time these regulations become effective will be allowed to continue until such allowances terminate. For the purposes of this section, only those allowances that have been approved by MMS in writing shall qualify as being in effect at the time these regulations become effective.

(vi) The MMS may establish, in appropriate circumstances, reporting requirements which are different from the requirements of this section.

(2) Non-arm's-length or no contract. (i) With the exception of those transportation allowances specified in paragraphs (c)(2)(v), (c)(2)(vii) and (c)(2)(viii) of this section, the lessee shall submit an initial Form MMS-4110 prior to, or at the same time as, the transportation allowance determined pursuant to a non-arm's-length contract or no-contract situation is reported on Form MMS-2014. A Form MMS-4110 received by the end of the month that the Form MMS-2014 is due shall be considered to be timely received. The initial report may be based upon estimated costs.

(ii) The initial Form MMS-4110 shall be effective for a reporting period beginning the month that the lessee first is authorized to deduct a transportation allowance and shall continue until the end of the calendar year, or until transportation under the non-arm's-length contract or the no-contract situation terminates, whichever is earlier.

(iii) For calendar-year reporting periods succeeding the initial reporting period, the lessee shall submit a completed Form MMS-4110 containing the actual costs for the previous reporting period. If oil transportation is continuing, the lessee shall include on Form MMS-4110 its estimated costs for the next calendar year. The estimated oil transportation allowance shall be based on the actual costs for the previous reporting period plus or minus any adjustments which are based on the lessee's knowledge of decreases or increases that will affect the allowance. MMS must receive the Form MMS-4110 within 3 months after the end of the previous reporting period, unless MMS approves a longer period (during which period the lessee shall continue to use the allowance from the previous reporting period).

(iv) For new transportation facilities or arrangements, the lessee's initial Form MMS-4110 shall include estimates of the allowable oil transportation costs for the applicable period. Cost estimates shall be based upon the most recently available operations data for the transportation system or, if such data are not available, the lessee shall

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

use estimates based upon industry data for similar transportation systems.

(v) Non-arm's-length contract or no-contract transportation allowances which are in effect at the time these regulations become effective will be allowed to continue until such allowances terminate. For the purposes of this section, only those allowances that have been approved by MMS in writing shall qualify as being in effect at the time these regulations become effective.

(vi) Upon request by MMS, the lessee shall submit all data used to prepare its Form MMS-4110. The data shall be provided within a reasonable period of time, as determined by MMS.

(vii) The MMS may establish, in appropriate circumstances, reporting requirements which are different from the requirements of this section.

(viii) If the lessee is authorized to use its FERC-approved or State regulatory agency-approved tariff as its transportation cost in accordance with paragraph (b)(5) of this section, it shall follow the reporting requirements of paragraph (c)(1) of this section.

(3) The MMS may establish reporting dates for individual lessees different from those specified in this subpart in order to provide more effective administration. Lessees will be notified of any change in their reporting period.

(4) Transportation allowances must be reported as a separate line item on Form MMS-2014, unless MMS approves a different reporting procedure.

(d) Interest assessments for incorrect or late reports and for failure to report. (1) If a lessee deducts a transportation allowance on its Form MMS-2014 without complying with the requirements of this section, the lessee shall pay interest only on the amount of such deduction until the requirements of this section are complied with. The lessee also shall repay the amount of any allowance which is disallowed by this section.

(2) If a lessee erroneously reports a transportation allowance which results in an underpayment of royalties, interest shall be paid on the amount of that underpayment.

(3) Interest required to be paid by this section shall be determined in accordance with 30 CFR 218.54.

(e) Adjustments. (1) If the actual transportation allowance is less than the amount the lessee has taken on Form MMS-2014 for each month during the allowance form reporting period, the lessee shall be required to pay additional royalties due plus interest computed pursuant to 30 CFR 218.54, retroactive to the first day of the first month the lessee is authorized to deduct a transportation allowance. If the actual transportation allowance is greater than the amount the lessee has taken on Form MMS-2014 for each month during the allowance form reporting period, the lessee shall be entitled to a credit without interest.

(2) For lessees transporting production from onshore Federal and Indian leases, the lessee must submit a corrected Form MMS-2014 to reflect actual costs, together with any payment, in accordance with instructions provided by MMS.

(3) For lessees transporting production from Federal OCS leases, if the lessee's estimated costs were more than the actual costs, the lessee must submit a corrected Form MMS2014 to reflect actual costs together with its payment, in accordance with instructions provided by MMS. If the lessee's estimated costs were less than its actual costs, the refund procedure will be specified by MMS.

(f) Actual or theoretical losses. Notwithstanding any other provisions of this subpart, for other than arm's-length contracts, no cost shall be allowed for oil transportation which results from payments (either volumetric or for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**105

value) for actual or theoretical losses. This section does not apply when the transportation allowance is based upon a FERC or State regulatory agency approved tariff.

(g) Other transportation cost determinations. The provisions of this section shall apply to determine transportation costs when establishing value using a netback valuation procedure or any other procedure that requires deduction of transportation costs.

[53 FR 1222, Jan. 15, 1988; 53 FR 45762, Nov. 14, 1988]

Title 30--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart C--Federal and Indian Oil

SOURCE: 47 FR 47773-47775, Oct. 27, 1982; 48 FR 35641, Aug. 5, 1983; 53 FR 1218, Jan. 15, 1988, unless otherwise noted.

**30** C. F. R. s **206.**105

**30** CFR s **206.**105

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.



**30** C.F.R. s **206.**150

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart D--Federal and Indian Gas**

s **206**.150 Purpose and scope.

(a) This subpart is applicable to all gas production from Federal and Indian (Tribal and allotted) oil and gas leases (except leases on the Osage Indian Reservation). The purpose of this subpart is to establish the value of production for royalty purposes consistent with the mineral leasing laws, other applicable laws and lease terms.

(b) If the specific provisions of any statute, treaty, settlement agreement between the United States (or Indian lessor) and a lessee resulting from administrative or judicial litigation, or oil and gas lease subject to the requirements of this subpart are inconsistent with any regulation in this subpart, then the lease, statute, treaty provision or settlement agreement shall govern to the extent of that inconsistency.

(c) All royalty payments made to MMS or to any Tribe or allottee are subject to audit and adjustment.

(d) The regulations in this subpart are intended to ensure that the trust responsibilities of the United States with respect to the administration of Indian oil and gas leases are discharged in accordance with the requirements of the governing mineral leasing laws, treaties, and lease terms.

(e)(1) Notice to Lessees and Operators of Federal Onshore Oil and Gas Leases Number 1 (NTL-1) is amended as of January 25, 1977, the effective date of NTL-1, by deleting the last paragraph of section III. NTL-1 was terminated effective March 1, 1988.

(2) Notice to Lessees and Operators of Indian Oil and Gas Leases Number 1A (NTL-1A) is amended as of April 5, 1977, the effective date of NTL-1A, by deleting the last paragraph of section III. NTL-1A was terminated effective March 1, 1988.

(3) Notice to Lessees 5 is terminated.

(4) Notice to Lessees and Operators (NTL) on the Outer Continental Shelf (OCS) concerning royalty payments on oil and gas lost or used on leases or units on the OCS is terminated.

[53 FR 45084, Nov. 8, 1988]

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**150

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart D--Federal and Indian Gas

Source: 53 FR 1218, 1272, Jan. 15, 1988, unless otherwise noted.

**30** C. F. R. s **206.**150

**30** CFR s **206.**150

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**151

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart D--Federal and Indian Gas**

s **206**.151 Definitions.

For purposes of this subpart:

"Allowance" means an approved or an MMS-initially accepted deduction in determining value for royalty purposes. "Processing allowance" means an allowance for the reasonable, actual costs incurred by the lessee for processing gas, or an approved or MMS-initially accepted deduction for costs of such processing, determined pursuant to this subpart. "Transportation allowance" means an allowance for the reasonable, actual costs incurred by the lessee for moving unprocessed gas, residue gas, or gas plant products to a point of sale or point of delivery off the lease, unit area, communitized area, or away from a processing plant, excluding gathering, or an approved or MMS-initially accepted deduction for costs of such transportation, determined pursuant to this subpart.

"Area" means a geographic region at least as large as the defined limits of an oil and/or gas field, in which oil and/or gas lease products have similar quality, economic, and legal characteristics.

"Arm's length contract" means a contract or agreement that has been arrived at in the marketplace between independent, nonaffiliated persons with opposing economic interests regarding that contract. For purposes of this subpart, two persons are affiliated if one person controls, is controlled by, or is under common control with another person. For purposes of this subpart, based on the instruments of ownership of the voting securities of an entity, or based on other forms of ownership:

(a) Ownership in excess of 50 percent constitutes control;

(b) Ownership of 10 through 50 percent creates a presumption of control; and

(c) Ownership of less than 10 percent creates a presumption of noncontrol which MMS may rebut if it demonstrates actual or legal control, including the existence of interlocking directorates.

Notwithstanding any other provisions of this subpart, contracts between relatives, either by blood or by marriage, are not arm's-length contracts. The MMS may require the lessee to certify ownership control. To be considered arm's-length for any production month, a contract must meet the requirements of this definition for that production month as well as when the contract was executed.

"Audit" means a review, conducted in accordance with generally accepted accounting and auditing standards, of royalty payment compliance activities of lessees or other interest holders who pay royalties, rents, or bonuses on Federal and Indian leases.

"BIA" means the Bureau of Indian Affairs of the Department of the Interior.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"BLM" means the Bureau of Land Management of the Department of the Interior.

"Compression" means the process of raising the pressure of gas.

"Condensate" means liquid hydrocarbons (normally exceeding 40 degrees of API gravity) recovered at the surface without resorting to processing. Condensate is the mixture of liquid hydrocarbons that results from condensation of petroleum hydrocarbons existing initially in a gaseous phase in an underground reservoir.

"Contract" means any oral or written agreement, including amendments or revisions thereto, between two or more persons and enforceable by law that with due consideration creates an obligation.

"Field" means a geographic region situated over one or more subsurface oil and gas reservoirs encompassing at least the outermost boundaries of all oil and gas accumulations known to be within those reservoirs vertically projected to the land surface. Onshore fields are usually given names and their official boundaries are often designated by oil and gas regulatory agencies in the respective States in which the fields are located. Outer Continental Shelf (OCS) fields are named and their boundaries are designated by MMS.

"Gas" means any fluid, either combustible or noncombustible, hydrocarbon or nonhydrocarbon, which is extracted from a reservoir and which has neither independent shape nor volume, but tends to expand indefinitely. It is a substance that exists in a gaseous or rarefied state under standard temperature and pressure conditions.

"Gas plant products" means separate marketable elements, compounds, or mixtures, whether in liquid, gaseous, or solid form, resulting from processing gas, excluding residue gas.

"Gathering" means the movement of lease production to a central accumulation and/or treatment point on the lease, unit or communitized area, or to a central accumulation or treatment point off the lease, unit or communitized area as approved by BLM or MMS OCS operations personnel for onshore and OCS leases, respectively.

"Gross proceeds" (for royalty payment purposes) means the total monies and other consideration accruing to an oil and gas lessee for the disposition of unprocessed gas, residue gas, or gas plant products produced. Gross proceeds includes, but is not limited to, payments to the lessee for certain services such as compression, dehydration, measurement, and/or field gathering to the extent that the lessee is obligated to perform them at no cost to the Federal Government or Indian lessor, and payments for gas processing rights. Gross proceeds, as applied to gas, also includes but is not limited to reimbursements for severance taxes and other reimbursements. Tax reimbursements are part of the gross proceeds accruing to a lessee even though the Federal or Indian royalty interest may be exempt from taxation. Monies and other consideration, including the forms of consideration identified in this paragraph, to which a lessee is contractually or legally entitled but which it does not seek to collect through reasonable efforts are also part of gross proceeds.

"Indian allottee" means any Indian for whom land or an interest in land is held in trust by the United States or who holds title subject to Federal restriction against alienation.

"Indian Tribe" means any Indian Tribe, band, nation, pueblo, community, rancheria, colony, or other group of Indians for which any land or interest in land is held in trust by the United States or which is subject to Federal restriction against alienation.

"Lease" means any contract, profit-share arrangement, joint venture, or other agreement issued or approved by the United States under a mineral leasing law that authorizes exploration for, development or extraction of, or removal of lease products--or the land area covered by that authorization, whichever is required by the context.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"Lease products" means any leased minerals attributable to, originating from, or allocated to Outer Continental Shelf or onshore Federal or Indian leases.

"Lessee" means any person to whom the United States, an Indian Tribe, or an Indian allottee issues a lease, and any person who has been assigned an obligation to make royalty or other payments required by the lease. This includes any person who has an interest in a lease as well as an operator or payor who has no interest in the lease but who has assumed the royalty payment responsibility.

"Like-quality lease products" means lease products which have similar chemical, physical, and legal characteristics.

"Marketable condition" means lease products which are sufficiently free from impurities and otherwise in a condition that they will be accepted by a purchaser under a sales contract typical for the field or area.

"Marketing affiliate" means an affiliate of the lessee whose function is to acquire only the lessee's production and to market that production.

"Minimum royalty" means that minimum amount of annual royalty that the lessee must pay as specified in the lease or in applicable leasing regulations.

"Net-back method" (or work-back method) means a method for calculating market value of gas at the lease. Under this method, costs of transportation, processing, or manufacturing are deducted from the proceeds received for the gas, residue gas or gas plant products, and any extracted, processed, or manufactured products, or from the value of the gas, residue gas or gas plant products, and any extracted, processed, or manufactured products, at the first point at which reasonable values for any such products may be determined by a sale pursuant to an arm's-length contract or comparison to other sales of such products, to ascertain value at the lease.

"Net output" means the quantity of residue gas and each gas plant product that a processing plant produces.

"Net profit share" (for applicable Federal and Indian leases) means the specified share of the net profit from production of oil and gas as provided in the agreement.

"Outer Continental Shelf (OCS") means all submerged lands lying seaward and outside of the area of land beneath navigable waters as defined in section 2 of the Submerged Lands Act (43 U.S.C. 1301) and of which the subsoil and seabed appertain to the United States and are subject to its jurisdiction and control.

"Person" means any individual, firm, corporation, association, partnership, consortium, or joint venture (when established as a separate entity).

"Posted price" means the price, net of all adjustments for quality and location, specified in publicly available price bulletins or other price notices available as part of normal business operations for quantities of unprocessed gas, residue gas, or gas plant products in marketable condition.

"Processing" means any process designed to remove elements or compounds (hydrocarbon and nonhydrocarbon) from gas, including absorption, adsorption, or refrigeration. Field processes which normally take place on or near the lease, such as natural pressure reduction, mechanical separation, heating, cooling, dehydration, and compression, are not considered processing. The changing of pressures and/or temperatures in a reservoir is not considered processing.

"Residue gas" means that hydrocarbon gas consisting principally of methane resulting from processing gas.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**151

"Section 6 lease" means an OCS lease subject to section 6 of the Outer Continental Shelf Lands Act, as amended, 43 U.S.C. 1335.

"Selling arrangement" means the individual contractual arrangements under which sales or dispositions of gas, residue gas and gas plant products are made. Selling arrangements are described by illustration in the MMS Royalty Management Program Oil and Gas Payor Handbook.

"Spot sales agreement" means a contract wherein a seller agrees to sell to a buyer a specified amount of unprocessed gas, residue gas, or gas plant products at a specified price over a fixed period, usually of short duration, which does not normally require a cancellation notice to terminate, and which does not contain an obligation, nor imply an intent, to continue in subsequent periods.

"Warranty contract" means a long-term contract entered into prior to 1970, including any amendments thereto, for the sale of gas wherein the producer agrees to sell a specific amount of gas and the gas delivered in satisfaction of this obligation may come from fields or sources outside of the designated fields.

[53 FR 45084, Nov. 8, 1988]

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart D--Federal and Indian Gas

Source: 53 FR 1218, 1272, Jan. 15, 1988, unless otherwise noted.

**30** C. F. R. s **206.**151

**30** CFR s **206.**151

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**152

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart D--Federal and Indian Gas**

s **206**.152 Valuation standards--unprocessed gas.

(a)(1) This section applies to the valuation of all gas that is not processed and all gas that is processed but is sold or otherwise disposed of by the lessee pursuant to an arm's-length contract prior to processing. Where the lessee's contract includes a reservation of the right to process the gas and the lessee exercises that right, or where the lessee's contract for the sale of gas prior to processing provides for the value to be determined based upon a percentage of the purchaser's proceeds resulting from processing the gas, s **206**.153 shall apply instead of this section. This section also applies to processed gas which must be valued prior to processing in accordance with s **206**.155.

(2) The value of production, for royalty purposes, of gas subject to this subpart shall be the value of gas determined pursuant to this section less applicable allowances determined pursuant to this subpart.

(3)(i) For any Indian leases which provide that the Secretary may consider the highest price paid or offered for a major portion of production (major portion) in determining value of production for royalty purposes, if data are available to compute a major portion MMS will, where practicable, compare the value determined in accordance with this section with the major portion. The value to be used in determining the value of production for royalty purposes shall be the higher of those two values.

(ii) For purposes of this paragraph, major portion means the highest price paid or offered at the time of production for the major portion of gas production from the same field. The major portion will be calculated using like-quality gas sold under arm's-length contracts from the same field (or, if necessary to obtain a reasonable sample, from the same area) for each month. All such sales will be arrayed from highest price to lowest price (at the bottom). The major portion is that price at which 50 percent (by volume) plus 1 mcf of the gas (starting from the bottom) is sold.

(b)(1)(i) The value of gas which is sold pursuant to an arm's-length contract shall be the gross proceeds accruing to the lessee, except as provided in paragraphs (b)(1)(ii) and (b)(1)(iii) of this section. The lessee shall have the burden of demonstrating that its contract is arm's-length. The value which the lessee reports, for royalty purposes, is subject to monitoring, review, and audit. For purposes of this section, gas which is sold or otherwise transferred to the lessee's marketing affiliate and then sold by the marketing affiliate pursuant to an arm's-length contract shall be valued in accordance with this paragraph based upon the sale by the marketing affiliate.

(ii) In conducting reviews and audits, MMS will examine whether the contract reflects the total consideration actually transferred either directly or indirectly from the buyer to the seller for the gas. If the contract does not reflect the total consideration, then the MMS may require that the gas sold pursuant to that contract be valued in accordance with paragraph (c) of this section. Value may not be less than the gross proceeds accruing to the lessee, including the additional consideration.

(iii) If the MMS determines that the gross proceeds accruing to the lessee pursuant to an arm's-length contract do

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

not reflect the reasonable value of the production because of misconduct by or between the contracting parties, or because the lessee otherwise has breached its duty to the lessor to market the production for the mutual benefit of the lessee and the lessor, then MMS shall require that the gas production be valued pursuant to paragraphs (c)(2) or (c)(3) of this section, and in accordance with the notification requirements of paragraph (e) of this section. When MMS determines that the value may be unreasonable, MMS will notify the lessee and give the lessee an opportunity to provide written information justifying the lessee's value.

(2) Notwithstanding the provisions of paragraph (b)(1) of this section, the value of gas sold pursuant to a warranty contract shall be determined by MMS, and due consideration will be given to all valuation criteria specified in this section. The lessee must request a value determination in accordance with paragraph (g) of this section for gas sold pursuant to a warranty contract; provided, however, that any value determination for a warranty contract in effect on the effective date of these regulations shall remain in effect until modified by MMS.

(3) MMS may require a lessee to certify that its arm's-length contract provisions include all of the consideration to be paid by the buyer, either directly or indirectly, for the gas.

(c) The value of gas subject to this section which is not sold pursuant to an arm's-length contract shall be the reasonable value determined in accordance with the first applicable of the following methods:

(1) The gross proceeds accruing to the lessee pursuant to a sale under its non-arm's-length contract (or other disposition other than by an arm's-length contract), provided that those gross proceeds are equivalent to the gross proceeds derived from, or paid under, comparable arm's-length contracts for purchases, sales, or other dispositions of like-quality gas in the same field (or, if necessary to obtain a reasonable sample, from the same area). In evaluating the comparability of arm's-length contracts for the purposes of these regulations, the following factors shall be considered: price, time of execution, duration, market or markets served, terms, quality of gas, volume, and such other factors as may be appropriate to reflect the value of the gas;

(2) A value determined by consideration of other information relevant in valuing like-quality gas, including gross proceeds under arm's-length contracts for like-quality gas in the same field or nearby fields or areas, posted prices for gas, prices received in arm's-length spot sales of gas, other reliable public sources of price or market information, and other information as to the particular lease operation or the saleability of the gas; or

(3) A net-back method or any other reasonable method to determine value.

(d)(1) Notwithstanding any other provisions of this section, except paragraph (h) of this section, if the maximum price permitted by Federal law at which gas may be sold is less than the value determined pursuant to this section, then MMS shall accept such maximum price as the value. For purposes of this section, price limitations set by any State or local government shall not be considered as a maximum price permitted by Federal law.

(2) The limitation prescribed in paragraph (d)(1) of this section shall not apply to gas sold pursuant to a warranty contract and valued pursuant to paragraph (b)(2) of this section.

(e)(1) Where the value is determined pursuant to paragraph (c) of this section, the lessee shall retain all data relevant to the determination of royalty value. Such data shall be subject to review and audit, and MMS will direct a lessee to use a different value if it determines that the reported value is inconsistent with the requirements of these regulations.

(2) Any Federal or Indian lessee will make available upon request to the authorized MMS, State, or Indian representatives, to the Office of the Inspector General of the Department of the Interior, or other person authorized to receive such information, arm's-length sales and volume data for like-quality production sold, purchased or otherwise obtained by the lessee from the field or area or from nearby fields or areas.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**152

(3) A lessee shall notify MMS if it has determined value pursuant to paragraph (c)(2) or (c)(3) of this section. The notification shall be by letter to the MMS Associate Director for Royalty Management or his/her designee. The letter shall identify the valuation method to be used and contain a brief description of the procedure to be followed. The notification required by this paragraph is a one-time notification due no later than the end of the month following the month the lessee first reports royalties on a Form MMS-2014 using a valuation method authorized by paragraph (c)(2) or (c)(3) of this section, and each time there is a change in a method under paragraph (c)(2) or (c)(3) of this section.

(f) If MMS determines that a lessee has not properly determined value, the lessee shall pay the difference, if any, between royalty payments made based upon the value it has used and the royalty payments that are due based upon the value established by MMS. The lessee shall also pay interest on that difference computed pursuant to 30 CFR 218.54. If the lessee is entitled to a credit, MMS will provide instructions for the taking of that credit.

(g) The lessee may request a value determination from MMS. In that event, the lessee shall propose to MMS a value determination method, and may use that method in determining value for royalty purposes until MMS issues its decision. The lessee shall submit all available data relevant to its proposal. The MMS shall expeditiously determine the value based upon the lessee's proposal and any additional information MMS deems necessary. In making a value determination MMS may use any of the valuation criteria authorized by this subpart. That determination shall remain effective for the period stated therein. After MMS issues its determination, the lessee shall make the adjustments in accordance with paragraph (f) of this section.

(h) Notwithstanding any other provision of this section, under no circumstances shall the value of production for royalty purposes be less than the gross proceeds accruing to the lessee for lease production, less applicable allowances determined pursuant to this subpart.

(i) The lessee is required to place gas in marketable condition at no cost to the Federal Government or Indian lessor unless otherwise provided in the lease agreement. Where the value established pursuant to this section is determined by a lessee's gross proceeds, that value shall be increased to the extent that the gross proceeds have been reduced because the purchaser, or any other person, is providing certain services the cost of which ordinarily is the responsibility of the lessee to place the gas in marketable condition.

(j) Value shall be based on the highest price a prudent lessee can receive through legally enforceable claims under its contract. If there is no contract revision or amendment, and the lessee fails to take proper or timely action to receive prices or benefits to which it is entitled, it must pay royalty at a value based upon that obtainable price or benefit. Contract revisions or amendments shall be in writing and signed by all parties to an arm's-length contract. If the lessee makes timely application for a price increase or benefit allowed under its contract but the purchaser refuses, and the lessee takes reasonable measures, which are documented, to force purchaser compliance, the lessee will owe no additional royalties unless or until monies or consideration resulting from the price increase or additional benefits are received. This paragraph shall not be construed to permit a lessee to avoid its royalty payment obligation in situations where a purchaser fails to pay, in whole or in part or timely, for a quantity of gas.

(k) Notwithstanding any provision in these regulations to the contrary, no review, reconciliation, monitoring, or other like process that results in a redetermination by the MMS of value under this section shall be considered final or binding as against the Federal Government, its beneficiaries, the Indian Tribes, or allottees until the audit period is formally closed.

(l) Certain information submitted to MMS to support valuation proposals, including transportation or extraordinary cost allowances, is exempted from disclosure by the Freedom of Information Act, 5 U.S.C. 552, or other Federal Law. Any data specified by law to be privileged, confidential, or otherwise exempt will be maintained in a confidential manner in accordance with applicable law and regulations. All requests for information about determinations made under this subpart are to be submitted in accordance with the Freedom of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Information Act regulation of the Department of the Interior, 43 CFR Part 2. Nothing in this section is intended to limit or diminish in any manner whatsoever the right of an Indian lessor to obtain any and all information as such lessor may be lawfully entitled from MMS or such lessor's lessee directly under the terms of the lease, **30** U.S.C. 1733, or other applicable law.

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart D--Federal and Indian Gas

Source: 53 FR 1218, 1272, Jan. 15, 1988, unless otherwise noted.

**30** C. F. R. s **206.**152

**30** CFR s **206.**152

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**153

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart D--Federal and Indian Gas**

s **206**.153 Valuation standards--processed gas.

(a)(1) This section applies to the valuation of all gas that is processed by the lessee and any other gas production to which this subpart applies and that is not subject to the valuation provisions of s **206**.152 of this subpart. This section applies where the lessee's contract includes a reservation of the right to process the gas and the lessee exercises that right, or where the lessee's contract for the sale of gas prior to processing provides for the value to be determined based upon a percentage of the purchaser's proceeds resulting from processing the gas (in which event these regulations will apply to determine value as if the person actually selling or disposing of the residue gas or gas plant products were the lessee of the Federal or Indian lease).

(2) The value of production, for royalty purposes, of gas subject to this section shall be the combined value of the residue gas and all gas plant products determined pursuant to this section, plus the value of any condensate recovered downstream of the point of royalty settlement without resorting to processing determined pursuant to s **206**.102 of this part, less applicable transportation allowances and processing allowances determined pursuant to this subpart.

(3)(i) For any Indian leases which provide that the Secretary may consider the highest price paid or offered for a major portion of production (major portion) in determining value for royalty purposes, if data are available to compute a major portion MMS will, where practicable, compare the values determined in accordance with this section for any lease product with the major portion determined for that lease product. The value to be used in determining the value of production for royalty purposes shall be the higher of those two values.

(ii) For purposes of this paragraph, major portion means the highest price paid or offered at the time of production for the major portion of gas production from the same field, or for residue gas or gas plant products from the same processing plant, as applicable. The major portion will be calculated using like-quality lease products sold under arm's-length contracts from the same field or processing plant (or, if necessary to obtain a reasonable sample, from the same area or nearby processing plants) for each month. All such sales will be arrayed from highest price to lowest price (at the bottom). The major portion is that price at which 50 percent (by volume) plus 1 mcf of the gas (starting from the bottom) is sold, or for gas plant products, 50 percent (by volume) plus 1 unit.

(b)(1)(i) The value of the residue gas or any gas plant product which is sold pursuant to an arm's-length contract shall be the gross proceeds accruing to the lessee, except as provided in paragraphs (b)(1)(ii) and (b)(1)(iii) of this section. The lessee shall have the burden of demonstrating that its contract is arm's-length. The value that the lessee reports for royalty purposes is subject to monitoring, review, and audit. For purposes of this section, residue gas or any gas plant product which is sold or otherwise transferred to the lessee's marketing affiliate and then sold by the marketing affiliate pursuant to an arm's-length contract shall be valued in accordance with this paragraph based upon the sale by the marketing affiliate.

(ii) In conducting these reviews and audits, MMS will examine whether or not the contract reflects the total

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

consideration actually transferred either directly or indirectly from the buyer to the seller for the residue gas or gas plant product. If the contract does not reflect the total consideration, then the MMS may require that the residue gas or gas plant product sold pursuant to that contract be valued in accordance with paragraph (c) of this section. Value may not be less than the gross proceeds accruing to the lessee, including the additional consideration.

(iii) If the MMS determines that the gross proceeds accruing to the lessee pursuant to an arm's-length contract do not reflect the reasonable value of the residue gas or gas plant product because of misconduct by or between the contracting parties, or because the lessee otherwise has breached its duty to the lessor to market the production for the mutual benefit of the lessee and the lessor, then MMS shall require that the residue gas or gas plant product be valued pursuant to paragraphs (c)(2) or (c)(3) of this section, and in accordance with the notification requirements of paragraph (e) of this section. When MMS determines that the value may be unreasonable, MMS will notify the lessee and give the lessee an opportunity to provide written information justifying the lessee's value.

(2) Notwithstanding the provisions of paragraph (b)(1) of this section, the value of residue gas sold pursuant to a warranty contract shall be determined by MMS, and due consideration will be given to all valuation criteria specified in this section. The lessee must request a value determination in accordance with paragraph (g) of this section for gas sold pursuant to a warranty contract; provided, however, that any value determination for a warranty contract in effect on the effective date of these regulations shall remain in effect until modified by MMS.

(3) MMS may require a lessee to certify that its arm's-length contract provisions include all of the consideration to be paid by the buyer, either directly or indirectly, for the residue gas or gas plant product.

(c) The value of residue gas or any gas plant product which is not sold pursuant to an arm's-length contract shall be the reasonable value determined in accordance with the first applicable of the following methods:

(1) The gross proceeds accruing to the lessee pursuant to a sale under its non-arm's-length contract (or other disposition other than by an arm's-length contract), provided that those gross proceeds are equivalent to the gross proceeds derived from, or paid under, comparable arm's-length contracts for purchases, sales, or other dispositions of like quality residue gas or gas plant products from the same processing plant (or, if necessary to obtain a reasonable sample, from nearby plants). In evaluating the comparability of arm's-length contracts for the purposes of these regulations, the following factors shall be considered: price, time of execution, duration, market or markets served, terms, quality of residue gas or gas plant products, volume, and such other factors as may be appropriate to reflect the value of the residue gas or gas plant products;

(2) A value determined by consideration of other information relevant in valuing like-quality residue gas or gas plant products, including gross proceeds under arm's-length contracts for like-quality residue gas or gas plant products from the same gas plant or other nearby processing plants, posted prices for residue gas or gas plant products, prices received in spot sales of residue gas or gas plant products, other reliable public sources of price or market information, and other information as to the particular lease operation or the saleability of such residue gas or gas plant products; or

(3) A net-back method or any other reasonable method to determine value.

(d)(1) Notwithstanding any other provisions of this section, except paragraph (h) of this section, if the maximum price permitted by Federal law at which any residue gas or gas plant products may be sold is less than the value determined pursuant to this section, then MMS shall accept such maximum price as the value. For the purposes of this section, price limitations set by any State or local government shall not be considered as a maximum price permitted by Federal law.

(2) The limitation prescribed by paragraph (d)(1) of this section shall not apply to residue gas sold pursuant to a warranty contract and valued pursuant to paragraph (b)(2) of this section.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(e)(1) Where the value is determined pursuant to paragraph (c) of this section, the lessee shall retain all data relevant to the determination of royalty value. Such data shall be subject to review and audit, and MMS will direct a lessee to use a different value if it determines upon review or audit that the reported value is inconsistent with the requirements of these regulations.

(2) Any Federal or Indian lessee will make available upon request to the authorized MMS, State, or Indian representatives, to the Office of the Inspector General of the Department of the Interior, or other persons authorized to receive such information, arm's-length sales and volume data for like-quality residue gas and gas plant products sold, purchased or otherwise obtained by the lessee from the same processing plant or from nearby processing plants.

(3) A lessee shall notify MMS if it has determined any value pursuant to paragraph (c)(2) or (c)(3) of this section. The notification shall be by letter to the MMS Associate Director for Royalty Management or his/her designee. The letter shall identify the valuation method to be used and contain a brief description of the procedure to be followed. The notification required by this paragraph is a one-time notification due no later than the end of the month following the month the lessee first reports royalties on a Form MMS-2014 using a valuation method authorized by paragraph (c)(2) or (c)(3) of this section, and each time there is a change in a method under paragraph (c)(2) or (c)(3) of this section.

(f) If MMS determines that a lessee has not properly determined value, the lessee shall pay the difference, if any, between royalty payments made based upon the value it has used and the royalty payments that are due based upon the value established by MMS. The lessee shall also pay interest computed on that difference pursuant to 30 CFR 218.54. If the lessee is entitled to a credit, MMS will provide instructions for the taking of that credit.

(g) The lessee may request a value determination from MMS. In that event, the lessee shall propose to MMS a value determination method, and may use that method in determining value for royalty purposes until MMS issues its decision. The lessee shall submit all available data relevant to its proposal. The MMS shall expeditiously determine the value based upon the lessee's proposal and any additional information MMS deems necessary. In making a value determination, MMS may use any of the valuation criteria authorized by this subpart. That determination shall remain effective for the period stated therein. After MMS issues its determination, the lessee shall make the adjustments in accordance with paragraph (f) of this section.

(h) Notwithstanding any other provision of this section, under no circumstances shall the value of production for royalty purposes be less than the gross proceeds accruing to the lessee for residue gas and/or any gas plant products, less applicable transportation allowances and processing allowances determined pursuant to this subpart.

(i) The lessee is required to place residue gas and gas plant products in marketable condition at no cost to the Federal Government or Indian lessor unless otherwise provided in the lease agreement. Where the value established pursuant to this section is determined by a lessee's gross proceeds, that value shall be increased to the extent that the gross proceeds have been reduced because the purchaser, or any other person, is providing certain services the cost of which ordinarily is the responsibility of the lessee to place the residue gas or gas plant products in marketable condition.

(j) Value shall be based on the highest price a prudent lessee can receive through legally enforceable claims under its contract. Absent contract revision or amendment, if the lessee fails to take proper or timely action to receive prices or benefits to which it is entitled it must pay royalty at a value based upon that obtainable price or benefit. Contract revisions or amendments shall be in writing and signed by all parties to an arm's-length contract. If the lessee makes timely application for a price increase or benefit allowed under its contract but the purchaser refuses, and the lessee takes reasonable measures, which are documented, to force purchaser compliance, the lessee will owe no additional royalties unless or until monies or consideration resulting from the price increase or additional benefits are received. This paragraph shall not be construed to permit a lessee to avoid its royalty payment

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

obligation in situations where a purchaser fails to pay, in whole or in part, or timely, for a quantity of residue gas or gas plant product.

(k) Notwithstanding any provision in these regulations to the contrary, no review, reconciliation, monitoring, or other like process that results in a redetermination by MMS of value under this section shall be considered final or binding against the Federal Government, its beneficiaries, the Indian Tribes, or allottees, until the audit period is formally closed.

(l) Certain information submitted to MMS to support valuation proposals, including transportation allowances, processing allowances or extraordinary cost allowances, is exempted from disclosure by the Freedom of Information Act, 5 U.S.C. 552, or other Federal law. Any data specified by law to be privileged, confidential, or otherwise exempt, will be maintained in a confidential manner in accordance with applicable law and regulations. All requests for information about determinations made under this Part are to be submitted in accordance with the Freedom of Information Act regulation of the Department of the Interior, 43 CFR Part 2. Nothing in this section is intended to limit or diminish in any manner whatsoever the right of an Indian lessor to obtain any and all information as such lessor may be lawfully entitled from the MMS or such lessor's lessee directly under the terms of the lease, 30 U.S.C. 1733, or other applicable law.

Title 30--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart D--Federal and Indian Gas

Source: 53 FR 1218, 1272, Jan. 15, 1988, unless otherwise noted.

**30** C. F. R. s **206.**153

**30** CFR s **206.**153

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**154

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart D--Federal and Indian Gas**

s **206**.154 Determination of quantities and qualities for computing royalties.

(a)(1) Royalties shall be computed on the basis of the quantity and quality of unprocessed gas at the point of royalty settlement approved by BLM or MMS for onshore and OCS leases, respectively.

(2) If the value of gas determined pursuant to s **206**.152 of this subpart is based upon a quantity and/or quality that is different from the quantity and/or quality at the point of royalty settlement, as approved by BLM or MMS, that value shall be adjusted for the differences in quantity and/or quality.

(b)(1) For residue gas and gas plant products, the quantity basis for computing royalties due is the monthly net output of the plant even though residue gas and/or gas plant products may be in temporary storage.

(2) If the value of residue gas and/or gas plant products determined pursuant to s **206**.153 of this subpart is based upon a quantity and/or quality of residue gas and/or gas plant products that is different from that which is attributable to a lease, determined in accordance with paragraph (c) of this section, that value shall be adjusted for the differences in quantity and/or quality.

(c) The quantity of the residue gas and gas plant products attributable to a lease shall be determined according to the following procedure:

(1) When the net output of the processing plant is derived from gas obtained from only one lease, the quantity of the residue gas and gas plant products on which computations of royalty are based is the net output of the plant.

(2) When the net output of a processing plant is derived from gas obtained from more than one lease producing gas of uniform content, the quantity of the residue gas and gas plant products allocable to each lease shall be in the same proportions as the ratios obtained by dividing the amount of gas delivered to the plant from each lease by the total amount of gas delivered from all leases.

(3) When the net output of a processing plant is derived from gas obtained from more than one lease producing gas of nonuniform content, the quantity of the residue gas allocable to each lease will be determined by multiplying the amount of gas delivered to the plant from the lease by the residue gas content of the gas, and dividing the arithmetical product thus obtained by the sum of the similar arithmetical products separately obtained for all leases from which gas is delivered to the plant, and then multiplying the net output of the residue gas by the arithmetic quotient obtained. The net output of gas plant products allocable to each lease will be determined by multiplying the amount of gas delivered to the plant from the lease by the gas plant product content of the gas, and dividing the arithmetical product thus obtained by the sum of the similar arithmetical products separately obtained for all leases from which gas is delivered to the plant, and then multiplying the net output of each gas plant product by the arithmetic quotient obtained.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**154

(4) A lessee may request MMS approval of other methods for determining the quantity of residue gas and gas plant products allocable to each lease. If approved, such method will be applicable to all gas production from Federal and Indian leases that is processed in the same plant.

(d)(1) No deductions may be made from the royalty volume or royalty value for actual or theoretical losses. Any actual loss of unprocessed gas that may be sustained prior to the royalty settlement metering or measurement point will not be subject to royalty provided that such loss is determined to have been unavoidable by BLM or MMS, as appropriate.

(2) Except as provided in paragraph (d)(1) of this section and 30 CFR 202.151(c), royalties are due on 100 percent of the volume determined in accordance with paragraphs (a) through (c) of this section. There can be no reduction in that determined volume for actual losses after the quantity basis has been determined or for theoretical losses that are claimed to have taken place. Royalties are due on 100 percent of the value of the unprocessed gas, residue gas, and/or gas plant products as provided in this subpart, less applicable allowances. There can be no deduction from the value of the unprocessed gas, residue gas, and/or gas plant products to compensate for actual losses after the quantity basis has been determined, or for theoretical losses that are claimed to have taken place.

Title 30--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart D--Federal and Indian Gas

Source: 53 FR 1218, 1272, Jan. 15, 1988, unless otherwise noted.

**30** C. F. R. s **206.**154

**30** CFR s **206.**154

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**155

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart D--Federal and Indian Gas**

s **206**.155 Accounting for comparison.

(a) Except as provided in paragraph (b) of this section, where the lessee (or a person to whom the lessee has transferred gas pursuant to a non-arm's-length contract or without a contract) processes the lessee's gas and after processing the gas the residue gas is not sold pursuant to an arm's-length contract, the value, for royalty purposes, shall be the greater of (1) the combined value, for royalty purposes, of the residue gas and gas plant products resulting from processing the gas determined pursuant to s **206**.153 of this subpart, plus the value, for royalty purposes, of any condensate recovered downstream of the point of royalty settlement without resorting to processing determined pursuant to s **206**.102 of this subpart; or (2) the value, for royalty purposes, of the gas prior to processing determined in accordance with s **206**.152 of this subpart.

(b) The requirement for accounting for comparison contained in the terms of leases, particularly Indian leases, will govern as provided in s **206**.150(b) of this subpart. When accounting for comparison is required by the lease terms, such accounting for comparison shall be determined in accordance with paragraph (a) of this section.

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart D--Federal and Indian Gas

Source: 53 FR 1218, 1272, Jan. 15, 1988, unless otherwise noted.

**30** C. F. R. s **206.**155

**30** CFR s **206.**155

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**156

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart D--Federal and Indian Gas**

s **206**.156 Transportation allowances--general.

(a) Where the value of gas has been determined pursuant to s **206**.152 or s **206**.153 of this subpart at a point (e.g., sales point or point of value determination) off the lease, MMS shall allow a deduction for the reasonable actual costs incurred by the lessee to transport unprocessed gas, residue gas, and gas plant products from a lease to a point off the lease including, if appropriate, transportation from the lease to a gas processing plant off the lease and from the plant to a point away from the plant.

(b) Transportation costs must be allocated among all products produced and transported as provided in s **206**.157.

(c)(1) Except as provided in paragraph (c)(3) of this section, for unprocessed gas valued in accordance with s **206** .152 of this subpart, the transportation allowance deduction on the basis of a selling arrangement shall not exceed 50 percent of the value of the unprocessed gas determined in accordance with s **206**.152 of this subpart.

(2) Except as provided in paragraph (c)(3) of this section, for gas production valued in accordance with s **206**.153 of this subpart the transportation allowance deduction on the basis of a selling arrangement shall not exceed 50 percent of the value of the residue gas or gas plant product determined in accordance with s **206**.153 of this subpart. For purposes of this section, natural gas liquids shall be considered one product.

(3) Upon request of a lessee, MMS may approve a transportation allowance deduction in excess of the limitations prescribed by paragraphs (c)(1) and (c)(2) of this section. The lessee must demonstrate that the transportation costs incurred in excess of the limitations prescribed in paragraphs (c)(1) and (c)(2) of this section were reasonable, actual, and necessary. An application for exception shall contain all relevant and supporting documentation necessary for the MMS to make a determination. Under no circumstances shall the value for royalty purposes under any selling arrangement be reduced to zero.

(d) If, after a review and/or audit, MMS determines that a lessee has improperly determined a transportation allowance authorized by this subpart, then the lessee shall pay any additional royalties, plus interest, determined in accordance with **30** CFR 218.54, or shall be entitled to a credit, without interest.

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**156

U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart D--Federal and Indian Gas

Source: 53 FR 1218, 1272, Jan. 15, 1988, unless otherwise noted.

**30** C. F. R. s **206.**156

**30** CFR s **206.**156

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**157

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart D--Federal and Indian Gas**

s **206**.157 Determination of transportation allowances.

(a) Arm's-length transportation contracts. (1)(i) For transportation costs incurred by a lessee pursuant to an arm's-length contract, the transportation allowance shall be the reasonable, actual costs incurred by the lessee for transporting the unprocessed gas, residue gas and/or gas plant products under that contract, except as provided in paragraphs (a)(1)(ii) and (a)(1)(iii) of this section, subject to monitoring, review, audit, and adjustment. The lessee shall have the burden of demonstrating that its contract is arm's-length. Such allowances shall be subject to the provisions of paragraph (f) of this section. Before any deduction may be taken, the lessee must submit a completed page one of Form MMS-4295 (and Schedule 1), Gas Transportation Allowance Report, in accordance with paragraph (c)(1) of this section. A transportation allowance may be claimed retroactively for a period of not more than 3 months prior to the first day of the month that Form MMS-4295 is filed with MMS, unless MMS approves a longer period upon a showing of good cause by the lessee.

(ii) In conducting reviews and audits, MMS will examine whether or not the contract reflects more than the consideration actually transferred either directly or indirectly from the lessee to the transporter for the transportation. If the contract reflects more than the total consideration, then the MMS may require that the transportation allowance be determined in accordance with paragraph (b) of this section.

(iii) If the MMS determines that the consideration paid pursuant to an arm's-length transportation contract does not reflect the reasonable value of the transportation because of misconduct by or between the contracting parties, or because the lessee otherwise has breached its duty to the lessor to market the production for the mutual benefit of the lessee and the lessor, then MMS shall require that the transportation allowance be determined in accordance with paragraph (b) of this section. When MMS determines that the value of the transportation may be unreasonable, MMS will notify the lessee and give the lessee an opportunity to provide written information justifying the lessee's transportation costs.

(2)(i) If an arm's-length transportation contract includes more than one product in a gaseous phase and the transportation costs attributable to each product cannot be determined from the contract, the total transportation costs shall be allocated in a consistent and equitable manner to each of the products transported in the same proportion as the ratio of the volume of each product (excluding waste products which have no value) to the volume of all products in the gaseous phase (excluding waste products which have no value). Except as provided in this paragraph, no allowance may be taken for the costs of transporting lease production which is not royalty bearing without MMS approval.

(ii) Notwithstanding the requirements of paragraph (i), the lessee may propose to MMS a cost allocation method on the basis of the values of the products transported. MMS shall approve the method unless it determines that it is not consistent with the purposes of the regulations in this part.

(3) If an arm's-length transportation contract includes both gaseous and liquid products and the transportation costs

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

attributable to each cannot be determined from the contract, the lessee shall propose an allocation procedure to MMS. The lessee may use the transportation allowance determined in accordance with its proposed allocation procedure until MMS issues its determination on the acceptability of the cost allocation. The lessee shall submit all relevant data to support its proposal. The initial proposal must be submitted by June **30**, 1988, or within 3 months after the last day of the month for which the lessee requests a transportation allowance, whichever is later (unless MMS approves a longer period). The MMS shall then determine the gas transportation allowance based upon the lessee's proposal and any additional information MMS deems necessary.

(4) Where the lessee's payments for transportation under an arm's-length contract are not based on a dollar per unit, the lessee shall convert whatever consideration is paid to a dollar value equivalent for the purposes of this section.

(5) Where an arm's-length sales contract price or a posted price includes a provision whereby the listed price is reduced by a transportation factor, MMS will not consider the transportation factor to be a transportation allowance. The transportation factor may be used in determining the lessee's gross proceeds for the sale of the product. The transportation factor may not exceed 50 percent of the base price of the product without MMS approval.

(b) Non-arm's-length or no contract. (1) If a lessee has a non-arm's-length transportation contract or has no contract, including those situations where the lessee performs transportation services for itself, the transportation allowance will be based upon the lessee's reasonable actual costs as provided in this paragraph. All transportation allowances deducted under a non-arm's-length or no contract situation are subject to monitoring, review, audit, and adjustment. Before any estimated or actual deduction may be taken, the lessee must submit a completed Form MMS-4295 in accordance with paragraph (c)(2) of this section. A transportation allowance may be claimed retroactively for a period of not more than 3 months prior to the first day of the month that Form MMS-4295 is filed with MMS, unless MMS approves a longer period upon a showing of good cause by the lessee. The MMS will monitor the allowance deductions to ensure that deductions are reasonable and allowable. When necessary or appropriate, MMS may direct a lessee to modify its estimated or actual transportation allowance deduction.

(2) The transportation allowance for non-arm's-length or no-contract situations shall be based upon the lessee's actual costs for transportation during the reporting period, including operating and maintenance expenses, overhead, and either depreciation and a return on undepreciated capital investment in accordance with paragraph (b)(2)(iv)(A) of this section, or a cost equal to the initial depreciable investment in the transportation system multiplied by a rate of return in accordance with paragraph (b)(2)(iv)(B) of this section. Allowable capital costs are generally those costs for depreciable fixed assets (including costs of delivery and installation of capital equipment) which are an integral part of the transportation system.

(i) Allowable operating expenses include: Operations supervision and engineering; operations labor; fuel; utilities; materials; ad valorem property taxes; rent; supplies; and any other directly allocable and attributable operating expense which the lessee can document.

(ii) Allowable maintenance expenses include: Maintenance of the transportation system; maintenance of equipment; maintenance labor; and other directly allocable and attributable maintenance expenses which the lessee can document.

(iii) Overhead directly attributable and allocable to the operation and maintenance of the transportation system is an allowable expense. State and Federal income taxes and severance taxes and other fees, including royalties, are not allowable expenses.

(iv) A lessee may use either depreciation or a return on depreciable capital investment. After a lessee has elected to use either method for a transportation system, the lessee may not later elect to change to the other alternative

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

without approval of the MMS.

(A) To compute depreciation, the lessee may elect to use either a straight-line depreciation method based on the life of equipment or on the life of the reserves which the transportation system services, or a unit of production method. After an election is made, the lessee may not change methods without MMS approval. A change in ownership of a transportation system shall not alter the depreciation schedule established by the original transporter/lessee for purposes of the allowance calculation. With or without a change in ownership, a transportation system shall be depreciated only once. Equipment shall not be depreciated below a reasonable salvage value.

(B) The MMS shall allow as a cost an amount equal to the allowable initial capital investment in the transportation system multiplied by the rate of return determined pursuant to paragraph (b)(2)(v) of this section. No allowance shall be provided for depreciation. This alternative shall apply only to transportation facilities first placed in service after March 1, 1988.

(v) The rate of return shall be the industrial rate associated with Standard and Poor's BBB rating. The rate of return shall be the monthly average rate as published in Standard and Poor's Bond Guide for the first month of the reporting period for which the allowance is applicable and shall be effective during the reporting period. The rate shall be redetermined at the beginning of each subsequent transportation allowance reporting period (which is determined pursuant to paragraph (c) of this section).

(3)(i) The deduction for transportation costs shall be determined on the basis of the lessee's cost of transporting each product through each individual transportation system. Where more than one product in a gaseous phase is transported, the allocation of costs to each of the products transported shall be made in a consistent and equitable manner in the same proportion as the ratio of the volume of each product (excluding waste products which have no value) to the volume of all products in the gaseous phase (excluding waste products which have no value). Except as provided in this paragraph, the lessee may not take an allowance for transporting a product which is not royalty bearing without MMS approval.

(ii) Notwithstanding the requirements of paragraph (i), the lessee may propose to the MMS a cost allocation method on the basis of the values of the products transported. MMS shall approve the method unless it determines that it is not consistent with the purposes of the regulations in this part.

(4) Where both gaseous and liquid products are transported through the same transportation system, the lessee shall propose a cost allocation procedure to MMS. The lessee may use the transportation allowance determined in accordance with its proposed allocation procedure until MMS issues its determination on the acceptability of the cost allocation. The lessee shall submit all relevant data to support its proposal. The initial proposal must be submitted by June **30**, 1988 or within 3 months after the last day of the month for which the lessee begins the transportation, whichever is later, unless MMS approves a longer period. The MMS shall then determine the transportation allowance based upon the lessee's proposal and any additional information MMS deems necessary.

(5) A lessee may apply to the MMS for an exception from the requirement that it compute actual costs in accordance with paragraphs (b)(1) through (b)(4) of this section. The MMS will grant the exception only if the lessee has a tariff for the transportation system approved by the Federal Energy Regulatory Commission (FERC) (for both Federal and Indian leases) or a State regulatory agency (for Federal leases). The MMS shall deny the exception request if it determines that the tariff is excessive as compared to arm's-length transportation charges by pipelines, owned by the lessee or others, providing similar transportation services in that area. If there are no arm's-length transportation charges, MMS shall deny the exception request if: (i) No FERC or State regulatory agency cost analysis exists and the FERC or State regulatory agency, as applicable, has declined to investigate pursuant to MMS timely objections upon filing; and (ii) the tariff significantly exceeds the lessee's actual costs for transportation as determined under this section.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(c) Reporting requirements--(1) Arm's-length contracts. (i) With the exception of those transportation allowances specified in paragraphs (c)(1)(v) and (c)(1)(vi) of this section, the lessee shall submit page one of the initial Form MMS-4295 (and Schedule 1) prior to, or at the same time as, the transportation allowance determined pursuant to an arm's-length contract is reported on Form MMS-2014, Report of Sales and Royalty Remittance. A Form MMS-4295 received by the end of the month that the Form MMS-2014 is due shall be considered to be timely received.

(ii) The initial Form MMS-4295 shall be effective for a reporting period beginning the month that the lessee is first authorized to deduct a transportation allowance and shall continue until the end of the calendar year, or until the applicable contract or rate terminates or is modified or amended, whichever is earlier.

(iii) After the initial reporting period and for succeeding reporting periods, lessees must submit page one of Form MMS-4295 (and Schedule 1) within 3 months after the end of the calendar year, or after the applicable contract or rate terminates or is modified or amended, whichever is earlier, unless MMS approves a longer period (during which period the lessee shall continue to use the allowance from the previous reporting period).

(iv) The MMS may require that a lessee submit arm's-length transportation contracts, production agreements, operating agreements, and related documents. Documents shall be submitted within a reasonable time, as determined by MMS.

(v) Transportation allowances which are based on arm's-length contracts and which are in effect at the time these regulations become effective will be allowed to continue until such allowances terminate. For the purposes of this section, only those allowances that have been approved by MMS in writing shall qualify as being in effect at the time these regulations become effective.

(vi) The MMS may establish, in appropriate circumstances, reporting requirements which are different from the requirements of this section.

(2) Non-arm's-length or no contract. (i) With the exception of those transportation allowances specified in paragraphs (c)(2)(v), (c)(2)(vii), and (c)(2)(viii) of this section, the lessee shall submit an initial Form MMS-4295 prior to, or at the same time as, the transportation allowance determined pursuant to a non-arm's-length contract or no-contract situation is reported on Form MMS-2014, Report of Sales and Royalty Remittance. A Form MMS-4295 received by the end of the month that the Form MMS-2014 is due shall be considered to be timely received. The initial report may be based upon estimated costs.

(ii) The initial Form MMS-4295 shall be effective for a reporting period beginning the month that the lessee first is authorized to deduct a transportation allowance and shall continue until the end of the calendar year, or until the transportation under the non-arm's-length contract or the no contract situation terminates, whichever is earlier.

(iii) For calendar-year reporting periods succeeding the initial reporting period, the lessee shall submit a completed Form MMS-4295 containing the actual costs for the previous reporting period. If the transportation is continuing, the lessee shall include on Form MMS-4295 its estimated costs for the next calendar year. The estimated transportation allowance shall be based on the actual costs for the previous reporting period plus or minus any adjustments which are based on the lessee's knowledge of decreases or increases which will affect the allowance. Form MMS-4295 must be received by MMS within 3 months after the end of the previous reporting period, unless MMS approves a longer period (during which period the lessee shall continue to use the allowance from the previous reporting period).

(iv) For new transportation facilities or arrangements, the lessee's initial Form MMS-4295 shall include estimates of the allowable transportation costs for the applicable period. Cost estimates shall be based upon the most recently available operations data for the transportation system, or if such data are not available, the lessee shall

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

use estimates based upon industry data for similar transportation systems.

(v) Non-arm's-length contract or no contract based transportation allowances which are in effect at the time these regulations become effective will be allowed to continue until such allowances terminate. For the purposes of this section, only those allowances that have been approved by MMS in writing shall qualify as being in effect at the time these regulations become effective.

(vi) Upon request by MMS, the lessee shall submit all data used to prepare its Form MMS-4295. The data shall be provided within a reasonable period of time, as determined by MMS.

(vii) The MMS may establish in appropriate circumstances, reporting requirements which are different from the requirements of this section.

(viii) If the lessee is authorized to use its FERC-approved or State regulatory agency-approved tariff as its transportation cost in accordance with paragraph (b)(5) of this section, it shall follow the reporting requirements of paragraph (c)(1) of this section.

(3) The MMS may establish reporting dates for individual lessees different than those specified in this subpart in order to provide more effective administration. Lessees will be notified of any change in their reporting period.

(4) Transportation allowances must be reported as a separate line item on Form MMS-2014, unless MMS approves a different reporting procedure.

(d) Interest assessments for incorrect or late reports and failure to report. (1) If a lessee deducts a transportation allowance on its Form MMS-2014 without complying with the requirements of this section, the lessee shall pay interest only on the amount of such deduction until the requirements of this section are complied with. The lessee also shall repay the amount of any allowance which is disallowed by this section.

(2) If a lessee erroneously reports a transportation allowance which results in an underpayment of royalties, interest shall be paid on the amount of that underpayment.

(3) Interest required to be paid by this section shall be determined in accordance with 30 CFR 218.54.

(e) Adjustments. (1) If the actual transportation allowance is less than the amount the lessee has taken on Form MMS-2014 for each month during the allowance form reporting period, the lessee shall be required to pay additional royalties due plus interest computed pursuant to 30 CFR 218.54, retroactive to the first day of the first month the lessee is authorized to deduct a transportation allowance. If the actual transportation allowance is greater than the amount the lessee has taken on Form MMS-2014 for each month during the allowance form reporting period, the lessee shall be entitled to a credit without interest.

(2) For lessees transporting production from onshore Federal and Indian leases, the lessee must submit a corrected Form MMS-2014 to reflect actual costs, together with any payment, in accordance with instructions provided by MMS.

(3) For lessees transporting gas production from leases on the OCS, if the lessee's estimated transportation allowance exceeds the allowance based on actual costs, the lessee must submit a corrected Form MMS-2014 to reflect actual costs, together with its payment, in accordance with instructions provided by MMS. If the lessee's estimated transportation allowance is less than the allowance based on actual costs, the refund procedure will be specified by MMS.

(f) Actual or theoretical losses. Notwithstanding any other provisions of this subpart, for other than arm's-length

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

contracts no cost shall be allowed for transportation which results from payments (either volumetric or for value) for actual or theoretical losses. This section does not apply when the transportation allowance is based upon a FERC or state regulatory agency approved tariff.

(g) Other transportation cost determinations. The provisions of this section shall apply to determine transportation costs when establishing value using a net-back valuation procedure or any other procedure that requires deduction of transportation costs.

[53 FR 45762, Nov. 14, 1988]

Title 30--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart D--Federal and Indian Gas

Source: 53 FR 1218, 1272, Jan. 15, 1988, unless otherwise noted.

**30** C. F. R. s **206.**157

**30** CFR s **206.**157

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**158

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart D--Federal and Indian Gas**

s **206**.158 Processing allowances--general.

(a) Where the value of gas is determined pursuant to s **206**.153 of this subpart, a deduction shall be allowed for the reasonable actual costs of processing.

(b) Processing costs must be allocated among the gas plant products. A separate processing allowance must be determined for each gas plant product and processing plant relationship. Natural gas liquids (NGL's) shall be considered as one product.

(c)(1) Except as provided in paragraph (d)(2) of this section, the processing allowance shall not be applied against the value of the residue gas. Where there is no residue gas MMS may designate an appropriate gas plant product against which no allowance may be applied.

(2) Except as provided in paragraph (c)(3) of this section, the processing allowance deduction on the basis of an individual product shall not exceed 664 2/3 percent of the value of each gas plant product determined in accordance with s **206**.153 of this subpart (such value to be reduced first for any transportation allowances related to postprocessing transportation authorized by s **206**.156 of this subpart).

(3) Upon request of a lessee, MMS may approve a processing allowance in excess of the limitation prescribed by paragraph (c)(2) of this section. The lessee must demonstrate that the processing costs incurred in excess of the limitation prescribed in paragraph (c)(2) of this section were reasonable, actual, and necessary. An application for exception shall contain all relevant and supporting documentation for MMS to make a determination. Under no circumstances shall the value for royalty purposes of any gas plant product be reduced to zero.

(d)(1) Except as provided in paragraph (d)(2) of this section, no processing cost deduction shall be allowed for the costs of placing lease products in marketable condition, including dehydration, separation, compression, or storage, even if those functions are performed off the lease or at a processing plant. Where gas is processed for the removal of acid gases, commonly referred to as "sweetening," no processing cost deduction shall be allowed for such costs unless the acid gases removed are further processed into a gas plant product. In such event, the lessee shall be eligible for a processing allowance as determined in accordance with this subpart. However, MMS will not grant any processing allowance for processing lease production which is not royalty bearing.

(2)(i) If the lessee incurs extraordinary costs for processing gas production from a gas production operation, it may apply to MMS for an allowance for those costs which shall be in addition to any other processing allowance to which the lessee is entitled pursuant to this section. Such an allowance may be granted only if the lessee can4 demonstrate that the costs are, by reference to standard industry conditions and practice, extraordinary, unusual, or unconventional.

(ii) Prior MMS approval to continue an extraordinary processing cost allowance is not required. However, to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

retain the authority to deduct the allowance the lessee must report the deduction to MMS in a form and manner prescribed by MMS.

(e) If MMS determines that a lessee has improperly determined a processing allowance authorized by this subpart, then the lessee shall pay any additional royalties, plus interest determined in accordance with **30** CFR 218.54, or shall be entitled to a credit, without interest.

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart D--Federal and Indian Gas

Source: 53 FR 1218, 1272, Jan. 15, 1988, unless otherwise noted.

**30** C. F. R. s **206.**158

**30** CFR s **206.**158

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**159

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart D--Federal and Indian Gas**

s **206**.159 Determination of processing allowances.

(a) Arm's-length processing contracts. (1)(i) For processing costs incurred by a lessee pursuant to an arm's-length contract, the processing allowance shall be the reasonable actual costs incurred by the lessee for processing the gas under that contract, except as provided in paragraphs (a)(1)(ii) and (a)(1)(iii) of this section, subject to monitoring, review, audit, and adjustment. The lessee shall have the burden of demonstrating that its contract is arm's-length. Before any deduction may be taken, the lessee must submit a completed page one of Form MMS-4109, Gas Processing Allowance Summary Report, in accordance with paragraph (c)(1) of this section. A processing allowance may be claimed retroactively for a period of not more than 3 months prior to the first day of the month that Form MMS-4109 is filed with MMS, unless MMS approves a longer period upon a showing of good cause by the lessee.

(ii) In conducting reviews and audits, MMS will examine whether the contract reflects more than the consideration actually transferred either directly or indirectly from the lessee to the processor for the processing. If the contract reflects more than the total consideration, then the MMS may require that the processing allowance be determined in accordance with paragraph (b) of this section.

(iii) If MMS determines that the consideration paid pursuant to an arm's-length processing contract does not reflect the reasonable value of the processing because of misconduct by or between the contracting parties, or because the lessee otherwise has breached its duty to the lessor to market the production for the mutual benefit of the lessee and lessor, then MMS shall require that the processing allowance be determined in accordance with paragraph (b) of this section. When MMS determines that the value of the processing may be unreasonable, MMS will notify the lessee and give the lessee an opportunity to provide written information justifying the lessee's processing costs.

(2) If an arm's-length processing contract includes more than one gas plant product and the processing costs attributable to each product can be determined from the contract, then the processing costs for each gas plant product shall be determined in accordance with the contract. No allowance may be taken for the costs of processing lease production which is not royalty-bearing.

(3) If an arm's-length processing contract includes more than one gas plant product and the processing costs attributable to each product cannot be determined from the contract, the lessee shall propose an allocation procedure to MMS. The lessee may use its proposed allocation procedure until MMS issues its determination. The lessee shall submit all relevant data to support its proposal. The initial proposal must be submitted by [June **30**, 1988] or within 3 months after the last day of the month for which the lessee requests a processing allowance, whichever is later (unless MMS approves a longer period). The MMS shall then determine the processing allowance based upon the lessee's proposal and any additional information MMS deems necessary. No processing allowance will be granted for the costs of processing lease production which is not royalty bearing.

(4) Where the lessee's payments for processing under an arm's-length contract are not based on a dollar per unit

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

basis, the lessee shall convert whatever consideration is paid to a dollar value equivalent for the purposes of this section.

(b) Non-arm's-length or no contract. (1) If a lessee has a non-arm's-length processing contract or has no contract, including those situations where the lessee performs processing for itself, the processing allowance will be based upon the lessee's reasonable actual costs as provided in this paragraph. All processing allowances deducted under a non-arm's-length or no-contract situation are subject to monitoring, review, audit, and adjustment. Before any estimated or actual deduction may be taken, the lessee must submit a completed Form MMS4-4109 in accordance with paragraph (c)(2) of this section. A processing allowance may be claimed retroactively for a period of not more than 3 months prior to the first day of the month that Form MMS-4109 is filed with MMS, unless MMS approves a longer period upon a showing of good cause by the lessee. The MMS will monitor the allowance deduction to ensure that deductions are reasonable and allowable. When necessary or appropriate, MMS may direct a lessee to modify its estimated or actual processing allowance.

(2) The processing allowance for non-arm's-length or no-contract situations shall be based upon the lessee's actual costs for processing during the reporting period, including operating and maintenance expenses, overhead, and either depreciation and a return on undepreciated capital investment in accordance with paragraph (b)(2)(iv)(A) of this section, or a cost equal to the initial depreciable investment in the processing plant multiplied by a rate of return in accordance with paragraph (b)(2)(iv)(B) of this section. Allowable capital costs are generally those costs for depreciable fixed assets (including costs of delivery and installation of capital equipment) which are an integral part of the processing plant.

(i) Allowable operating expenses include: Operations supervision and engineering; operations labor; fuel; utilities; materials; ad valorem property taxes; rent; supplies; and any other directly allocable and attributable operating expense which the lessee can document.

(ii) Allowable maintenance expenses include: maintenance of the processing plant; maintenance of equipment; maintenance labor; and other directly allocable and attributable maintenance expenses which the lessee can document.

(iii) Overhead directly attributable and allocable to the operation and maintenance of the processing plant is an allowable expense. State and Federal income taxes and severance taxes, including royalties, are not allowable expenses.

(iv) A lessee may use either depreciation or a return on depreciable capital investment. When a lessee has elected to use either method for a processing plant, the lessee may not later elect to change to the other alternative without approval of the MMS.

(A) To compute depreciation, the lessee may elect to use either a straight-line depreciation method based on the life of equipment or on the life of the reserves which the processing plant services, or a unit-of-production method. After an election is made, the lessee may not change methods without MMS approval. A change in ownership of a processing plant shall not alter the depreciation schedule established by the original processor/lessee for purposes of the allowance calculation. With or without a change in ownership, a processing plant shall be depreciated only once. Equipment shall not be depreciated below a reasonable salvage value.

(B) The MMS shall allow as a cost an amount equal to the allowable initial capital investment in the processing plant multiplied by the rate of return determined pursuant to paragraph (b)(2)(v) of this section. No allowance shall be provided for depreciation. This alternative shall apply only to plants first placed in service after March 1, 1988.

(v) The rate of return shall be the industrial rate associated with Standard and Poor's BBB rating. The rate of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

return shall be the monthly average rate as published in Standard and Poor's Bond Guide for the first month of the reporting period for which the allowance is applicable and shall be effective during the reporting period. The rate shall be redetermined at the beginning of each subsequent processing allowance reporting period (which is determined pursuant to paragraph (c)(2) of this section).

(3) The processing allowance for each gas plant product shall be determined based on the lessee's reasonable and actual cost of processing the gas. Allocation of costs to each gas plant product shall be based upon generally accepted accounting principles. The lessee may not take an allowance for the costs of processing lease production which is not royalty bearing.

(4) A lessee may apply to MMS for an exception from the requirement that it compute actual costs in accordance with paragraphs (b)(1) through (b)(3) of this section. The MMS may grant the exception only if: (i) The lessee has arm's-length contracts for processing other gas production at the same processing plant; and (ii) at least 50 percent of the gas processed annually at the plant is processed pursuant to arm's-length processing contracts; if the MMS grants the exception, the lessee shall use as its processing allowance the volume weighted average prices charged other persons pursuant to arm's-length contracts for processing at the same plant.

(c) Reporting requirements. (1) Arm's-length contracts. (i) With the exception of those processing allowances specified in paragraphs (c)(1)(v) and (c)(1)(vi) of this section, the lessee shall submit page one of the initial Form MMS-4109 (and Schedule 1) prior to the time, or at the same time as, the processing allowance determined pursuant to an arm's-length contract is reported on Form MMS-2014, Report of Sales and Royalty Remittance. A Form MMS-4109 received by the end of the month that the Form MMS-2014 is due shall be considered to be timely received.

(ii) The initial Form MMS-4109 shall be effective for a reporting period beginning the month that the lessee is first authorized to deduct a processing allowance and shall continue until the end of the calendar year, or until the applicable contract or rate terminates or is modified or amended, whichever is earlier.

(iii) After the initial reporting period and for succeeding reporting periods, lessees must submit page 1 of Form MMS-4109 (and Schedule 1) within 3 months after the end of the calendar year, or after the applicable contract or rate terminates or is modified or amended, whichever is earlier, unless MMS approves a longer period (during which period the lessee shall continue to use the allowance from the previous reporting period).

(iv) The MMS may require that a lessee submit arm's-length processing contracts and related documents. Documents shall be submitted within a reasonable time, as determined by MMS.

(v) Processing allowances which are based on arm's-length contracts and which are in effect at the time these regulations become effective will be allowed to continue until such allowances terminate. For the purpose of this section, only those allowances that have been approved by MMS in writing shall qualify as being in effect at the time these regulations became effective.

(vi) The MMS may establish, in appropriate circumstances, reporting requirements which are different from the requirements of this section.

(2) Non-arm's-length or no contract.

(i) With the exception of those processing allowances specified in paragraphs (c)(2)(v), (c)(2)(vii) and (c)(2)(viii) of this section, the lessee shall submit an initial Form MMS-4109 prior to, or at the same time as, the processing allowance determined pursuant to a non-arm's-length contract or no contract situation is reported on Form MMS-2014, Report of Sales and Royalty Remittance. A Form MMS-4109 received by the end of the month that the Form MMS-2014 is due shall be considered to be timely received. The initial report may be based upon

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

estimated costs.

(ii) The initial Form MMS-4109 shall be effective for a reporting period beginning the month that the lessee first is authorized to deduct a processing allowance and shall continue until the end of the calendar year, or until the processing under the non-arm's-length contract or the no-contract situation terminates, whichever is earlier.

(iii) For calendar-year reporting periods succeeding the initial reporting period, the lessee shall submit a completed Form MMS-4109 containing the actual costs for the previous reporting period. If gas processing is continuing, the lessee shall include on Form MMS-4109 its estimated costs for the next calendar year. The estimated gas processing allowance shall be based on the actual costs for the previous period plus or minus any adjustments which are based on the lessee's knowledge of decreases or increases which will affect the allowance. Form MMS-4109 must be received by MMS within 3 months after the end of the previous reporting period, unless MMS approves a longer period (during which period the lessee shall continue to use the allowance from the previous reporting period).

(iv) For new processing plants, the lessee's initial Form MMS-4109 shall include estimates of the allowable gas processing costs for the applicable period. Cost estimates shall be based upon the most recently available operations data for the plant, or if such data are not available, the lessee shall use estimates based upon industry data for similar gas processing plants.

(v) Processing allowances based on non-arm's-length or no contract situations which are in effect at the time these regulations become effective will be allowed to continue until such allowances terminate for gas production from onshore Federal and Indian leases. For gas production from OCS leases such allowances will be allowed to continue until they terminate or until the end of the calendar year, whichever is earlier. For the purposes of this section, only those allowances that have been approved by MMS in writing shall qualify as being in effect at the time these regulations become effective.

(vi) Upon request by MMS, the lessee shall submit all data used by the lessee to prepare its Form MMS-4109. The data shall be provided within a reasonable period of time, as determined by MMS.

(vii) The MMS may establish, in appropriate circumstances, reporting requirements which are different from the requirements of this section.

(viii) If the lessee is authorized to use the volume weighted average prices charged other persons as its processing allowance in accordance with paragraph (b)(4) of this section, it shall follow the reporting requirements of paragraph (c)(1) of this section.

(3) The MMS may establish reporting dates for individual leases different from those specified in this subpart in order to provide more effective administration. Lessees will be notified of any change in their reporting period.

(4) Processing allowances must be reported as a separate line on the Form MMS-2014, unless MMS approves a different reporting procedure.

(d) Interest assessments for incorrect or late reports and failure to report. (1) If a lessee deducts a processing allowance on its Form MMS-2014 without complying with the requirements of this section, the lessee shall pay interest only on the amount of such deduction until the requirements of this section are complied with. The lessee also shall repay the amount of any allowance which is disallowed by this section.

(2) If a lessee erroneously reports a processing allowance which results in an underpayment of royalties, interest shall be paid on the amount of that underpayment.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**159

(3) Interest required to be paid by this section shall be determined in accordance with **30** CFR 218.54.

(e) Adjustments. (1) If the actual gas processing allowance is less than the amount the lessee has taken on Form MMS-2014 for each month during the allowance form reporting period, the lessee shall be required to pay additional royalties due plus interest computed pursuant to 30 CFR 218.54, retroactive to the first day of the first month the lessee is authorized to deduct a processing allowance. If the actual processing allowance is greater than the amount the lessee has taken on Form MMS-2014 for each month during the allowance period, the lessee shall be entitled to a credit without interest.

(2) For lessees processing production from onshore Federal and Indian leases, the lessee must submit a corrected Form MMS-2014 to reflect actual costs, together with any payment, in accordance with instructions provided by MMS.

(3) For lessees processing gas production from leases on the OCS, if the lessee's estimated processing allowance exceeds the allowance based on actual costs, the lessee must submit a corrected Form MMS-2014 to reflect actual costs, together with its payment, in accordance with instructions provided by MMS. If the lessee's estimated costs were less than the actual costs, the refund procedure will be specified by MMS.

(f) Other processing cost determinations. The provisions of this section shall apply to determine processing costs when establishing value using a net back valuation procedure or any other procedure that requires deduction of processing costs.

[53 FR 45762, Nov. 14, 1988]

Title 30--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart D--Federal and Indian Gas

Source: 53 FR 1218, 1272, Jan. 15, 1988, unless otherwise noted.

**30** C. F. R. s **206.**159

**30** CFR s **206.**159

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**250

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart F--Coal**

s **206**.250 Purpose and scope.

(a) This subpart prescribes the procedures to establish the value, for royalty purposes, of all coal from Federal and Indian Tribal and allotted leases (except leases on the Osage Indian Reservation).

(b) If the specific provisions of any statute, treaty, or settlement agreement between the United States (or Indian lessor) and a lessee resulting from administrative or judicial litigation, or any coal lease subject to the requirements of this subpart, are inconsistent with any regulation in this subpart, then the statute, treaty, lease provision, or settlement shall govern to the extent of that inconsistency.

(c) All royalty payments made to the Mineral Management Service (MMS) are subject to later audit and adjustment.

(d) The regulations in this subpart are intended to ensure that the trust responsibilities of the United States with respect to the administration of Indian coal leases are discharged in accordance with the requirements of the governing mineral leasing laws, treaties, and lease terms.

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart F--Coal

Source: 54 FR 1523, Jan. 13, 1989, unless otherwise noted.

**30** C. F. R. s **206.**250

**30** CFR s **206.**250

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**251

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart F--Coal**

s **206**.251 Definitions.

"Ad valorem lease" means a lease where the royalty due to the lessor is based upon a percentage of the amount or value of the coal.

"Allowance" means an approved, or an MMS-initially accepted deduction in determining value for royalty purposes. "Coal washing allowance" means an allowance for the reasonable, actual costs incurred by the lessee for coal washing, or an approved or MMS-initially accepted deduction for the costs of washing coal, determined pursuant to this subpart. "Transportation allowance" means an allowance for the reasonable, actual costs incurred by the lessee for moving coal to a point of sale or point of delivery remote from both the lease and mine or wash plant, or an approved MMS-initially accepted deduction for costs of such transportation, determined pursuant to this subpart.

"Area" means a geographic region in which coal has similar quality and economic characteristics. Area boundaries are not officially designated and the areas are not necessarily named.

"Arm's-length contract" means a contract or agreement that has been arrived at in the marketplace between independent, nonaffiliated persons with opposing economic interests regarding that contract. For purposes of this subpart, two persons are affiliated if one person controls, is controlled by, or is under common control with another person. For purposes of this subpart, based on the instruments of ownership of the voting securities of an entity, or based on other forms of ownership:

(a) Ownership in excess of 50 percent constitutes control;

(b) Ownership of 10 through 50 percent creates a presumption of control; and

(c) Ownership of less than 10 percent creates a presumption of noncontrol which MMS may rebut if it demonstrates actual or legal control, including the existence of interlocking directorates.

Notwithstanding any other provisions of this subpart, contracts between relatives, either by blood or by marriage, are not arm's-length contracts. The MMS may require the lessee to certify ownership control. To be considered arm's-length for any production month, a contract must meet the requirements of this definition for that production month as well as when the contract was executed.

"Audit" means a review, conducted in accordance with generally accepted accounting and auditing standards, of royalty payment compliance activities of lessees or other interest holders who pay royalties, rents, or bonuses on Federal or Indian leases.

"BIA" means the Bureau of Indian Affairs of the Department of the Interior.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"BLM" means the Bureau of Land Management of the Department of the Interior.

"Coal" means coal of all ranks from lignite through anthracite.

"Coal washing" means any treatment to remove impurities from coal. Coal washing may include, but is not limited to, operations such as flotation, air, water, or heavy media separation; drying; and related handling (or combination thereof).

"Contract" means any oral or written agreement, including amendments or revisions thereto, between two or more persons and enforceable by law that with due consideration creates an obligation.

"Gross proceeds" (for royalty payment purposes) means the total monies and other consideration accruing to a coal lessee for the production and disposition of the coal produced. Gross proceeds includes, but is not limited to, payments to the lessee for certain services such as crushing, sizing, screening, storing, mixing, loading, treatment with substances including chemicals or oils, and other preparation of the coal to the extent that the lessee is obligated to perform them at no cost to the Federal Government or Indian lessor. Gross proceeds, as applied to coal, also includes but is not limited to reimbursements for royalties, taxes or fees, and other reimbursements. Tax reimbursements are part of the gross proceeds accruing to a lessee even though the Federal or Indian royalty interest may be exempt from taxation. Monies and other consideration, including the forms of consideration identified in this paragraph, to which a lessee is contractually or legally entitled but which it does not seek to collect through reasonable efforts are also part of gross proceeds.

"Indian allottee" means any Indian for whom land or an interest in land is held in trust by the United States or who holds title subject to Federal restriction against alienation.

"Indian Tribe" means any Indian Tribe, band, nation, pueblo, community, rancheria, colony, or other group of Indians for which any land or interest in land is held in trust by the United States or which is subject to Federal restriction against alienation.

"Lease" means any contract, profit-share arrangement, joint venture, or other agreement issued or approved by the United States for a Federal or Indian coal resource under a mineral leasing law that authorizes exploration for, development or extraction of, or removal of coal--or the land covered by that authorization, whichever is required by the context.

"Lessee" means any person to whom the United States, an Indian Tribe, or an Indian allottee issues a lease, and any person who has been assigned an obligation to make royalty or other payments required by the lease. This includes any person who has an interest in a lease as well as an operator or payor who has no interest in the lease but who has assumed the royalty payment responsibility.

"Like-quality coal" means coal has similar chemical and physical characteristics.

"Marketable condition" means coal that is sufficiently free from impurities and otherwise in a condition that it will be accepted by a purchaser under a sales contract typical for that area.

"Mine" means an underground or surface excavation or series of excavations and the surface or underground support facilities that contribute directly or indirectly to mining, production, preparation, and handling of lease products.

"Net-back method" means a method for calculating market value of coal at the lease or mine. Under this method, costs of transportation, washing, handling, etc., are deducted from the ultimate proceeds received for the coal at the first point at which reasonable values for the coal may be determined by a sale pursuant to an arm's-length contract

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**251

or by comparison to other sales of coal, to ascertain value at the mine.

"Net output" means the quantity of washed coal that a washing plant produces.

"Person" means by individual, firm, corporation, association, partnership, consortium, or joint venture.

"Selling arrangement" means the individual contractual arrangements under which sales or dispositions of coal are made to a purchaser.

"Severance tax" means any tax paid to any government agency based upon the quantity of coal produced as a function of either the volume or the value of production and does not include any tax upon the value of mining equipment, machinery, or buildings and lands, any tax upon a person's net income derived in whole or in part from the value of coal, or any license fee, unless such license fee is based on either the volume or the value of production. Mineral royalties are not taxed.

"Spot market price" means the price received under any sales transaction when planned or actual deliveries span a short period of time, usually not exceeding one year.

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart F--Coal

Source: 54 FR 1523, Jan. 13, 1989, unless otherwise noted.

**30** C. F. R. s **206.**251

**30** CFR s **206.**251

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.



**30** C.F.R. s **206.**252

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart F--Coal**

s **206**.252 Information collection.

The information collection requirements contained in this subpart have been approved by the Office of Management and Budget (OMB) under 44 U.S.C. 3501 et seq. The forms, filing date, and approved OMB clearance numbers are identified in **30** CFR 210.10 and **30** CFR 216.10.

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart F--Coal

Source: 54 FR 1523, Jan. 13, 1989, unless otherwise noted.

**30** C. F. R. s **206.**252

**30** CFR s **206.**252

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**253

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart F--Coal**

s **206**.253 Coal subject to royalties--general provisions.

(a) All coal (except coal unavoidably lost as determined by BLM pursuant to 43 CFR Group 3400) from a Federal or Indian lease subject to this part is subject to royalty. This includes coal used, sold, or otherwise disposed of by the lessee on or off the lease.

(b) If a lessee receives compensation for unavoidably lost coal through insurance coverage or other arrangements, royalties at the rate specified in the lease are to be paid on the amount of compensation received for the coal. No royalty is due on insurance compensation received by the lessee for other losses.

(c) In the event waste piles or slurry ponds are reworked to recover coal, the lessee shall pay royalty at the rate specified in the lease at the time the recovered coal is used, sold, or otherwise finally disposed of. The royalty rate shall be that rate applicable to the production method used to initially mine coal in the waste pile or slurry pond; i.e., underground mining method or surface mining method. Coal in waste pits or slurry ponds initially mined from Federal or Indian leases shall be allocated to such leases regardless of whether it is stored on Federal or Indian lands. The lessee shall maintain accurate records to determine to which individual Federal or Indian lease coal in the waste pit or slurry pond should be allocated. However, nothing in this section requires payment of a royalty on coal for which a royalty has already been paid.

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart F--Coal

Source: 54 FR 1523, Jan. 13, 1989, unless otherwise noted.

**30** C. F. R. s **206.**253

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**254

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart F--Coal**

s **206**.254 Quality and quantity measurement standards for reporting and paying royalties.

(a) For leases subject to s **206**.257 of this subpart, the quality of coal on which royalty is due shall be reported on the basis of percent sulfur, percent ash, and number of British thermal units (Btu) per pound of coal. Coal quality determinations shall be made at intervals prescribed in the lessee's sales contract. If there is no contract, or if the contract does not specify the intervals of coal quality determination, the lessee shall propose a quality test schedule to MMS. In no case, however, shall quality tests be performed less than quarterly using standard industry-recognized testing methods. Coal quality information shall be reported on the appropriate forms required under **30** CFR Part 216.

(b) For all leases subject to this subpart, the quantity of coal on which royalty is due shall be measured in short tons (of 2,000 pounds each) by methods prescribed by the BLM. Coal quantity information shall be reported on appropriate forms required under **30** CFR Part 216 and on the Report of Sales and Royalty Remittance, Form MMS-4014, as required under **30** CFR Part 210.

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart F--Coal

Source: 54 FR 1523, Jan. 13, 1989, unless otherwise noted.

**30** C. F. R. s **206.**254

**30** CFR s **206.**254

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**255

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart F--Coal**

s **206**.255 Point of royalty determination.

(a) For all leases subject to this subpart, royalty shall be computed on the basis of the quantity and quality of Federal or Indian coal in marketable condition measured at the point of royalty measurement as determined jointly by BLM and MMS.

(b) Coal produced and added to stockpiles or inventory does not require payment of royalty until such coal is later used, sold, or otherwise finally disposed of. The MMS may ask BLM or BIA to increase the lease bond to protect the lessor's interest when BLM determines that stockpiles or inventory become excessive so as to increase the risk of degradation of the resource.

(c) The lessee shall pay royalty at a rate specified in the lease at the time the coal is used, sold, or otherwise finally disposed of, unless otherwise provided for at s **206**.256(d) of this subpart.

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart F--Coal

Source: 54 FR 1523, Jan. 13, 1989, unless otherwise noted.

**30** C. F. R. s **206.**255

**30** CFR s **206.**255

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**256

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart F--Coal**

s **206**.256 Valuation standards for cents-per-ton leases.

(a) This section is applicable to coal leases on Federal, Indian Tribal, and allotted Indian lands (except leases on the Osage Indian Reservation) which provide for the determination of royalty on a cents-per-ton (or other quantity) basis.

(b) The royalty for coal from leases subject to this section shall be based on the dollar rate per ton prescribed in the lease. That dollar rate shall be applicable to the actual quantity of coal used, sold, or otherwise finally disposed of, including coal which is avoidably lost as determine by BLM pursuant to 43 CFR Part 3400.

(c) For leases subject to this section, there shall be no allowances for transportation, removal of impurities, coal washing, or any other processing or preparation of the coal.

(d) When a coal lease is readjusted pursuant to 43 CFR Part 3400 and the royalty valuation method changes from a cents-per-ton basis to an ad valorem basis, coal which is produced prior to the effective date of readjustment and sold or used within **30** days of the effective date of readjustment shall be valued pursuant to this section. All coal that is not used, sold, or otherwise finally disposed of within **30** days after the effective date of readjustment shall be valued pursuant to the provisions of s **206**.257 of this subpart, and royalties shall be paid at the royalty rate specified in the readjusted lease.

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart F--Coal

Source: 54 FR 1523, Jan. 13, 1989, unless otherwise noted.

**30** C. F. R. s **206.**256

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**257

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart F--Coal**

s **206**.257 Valuation standards for ad valorem leases.

(a) This section is applicable to coal leases on Federal, Indian Tribal, and allotted Indian lands (except leases on the Osage Indian Reservation) which provide for the determination of royalty as a percentage of the amount of value of coal (ad valorem). The value for royalty purposes of coal from such leases shall be the value of coal determined pursuant to this section, less applicable coal washing allowances and transportation allowances determine pursuant to ss **206**.258 through **206**.262 of this subpart, or any allowance authorized by s **206**.265 of this subpart. The royalty due shall be equal to the value for royalty purposes multiplied by the royalty rate in the lease.

(b)(1) The value of coal that is sold pursuant to an arm's-length contract shall be the gross proceeds accruing to the lessee, except as provided in paragraphs (b)(2), (b)(3), (b)(5), and (b)(6) of this section. The lessee shall have the burden of demonstrating that its contract is arm's-length. The value which the lessee reports, for royalty purposes, is subject to monitoring, review, and audit.

(2) In conducting reviews and audits, MMS will examine whether the contract reflects the total consideration actually transferred either directly or indirectly from the buyer to the seller for the coal produced. If the contract does not reflect the total consideration, then the MMS may require that the coal sold pursuant to that contract be valued in accordance with paragraph (c) of this section. Value may not be based on less than the gross proceeds accruing to the lessee for the coal production, including the additional consideration.

(3) If the MMS determines that the gross proceeds accruing to the lessee pursuant to an arm's-length contract do not reflect the reasonable value of the production because of misconduct by or between the contracting parties, or because the lessee otherwise has breached its duty to the lessor to market the production for the mutual benefit of the lessee and the lessor, then MMS shall require that the coal production be valued pursuant to paragraph (c)(2)(ii), (iii), (iv), or (v) of this section, and in accordance with the notification requirements of paragraph (d)(3) of this section. When MMS determines that the value may be unreasonable, MMS will notify the lessee and give the lessee an opportunity to provide written information justifying the lessee's reported coal value.

(4) The MMS may require a lessee to certify that its arm's-length contract provisions include all of the consideration to be paid by the buyer, either directly or indirectly, for the coal production.

(5) Notwithstanding any other regulations in this subpart, except for Indian leases, the value of coal for royalty purposes shall not include amounts of Federal Black Lung excise taxes authorized by the Black Lung Benefits Revenue Act of 1977 (26 U.S.C. 4121), abandoned mine lands fees authorized by the Surface Mining Control and Reclamation Act of 1977 (30 U.S.C. 1232(a)), and severance taxes. These exclusions include only the costs of the Federal Black Lung excise tax, abandoned mine land fee, and severance tax themselves and do not include late payment charges and/or other monetary penalties which may be levied on coal producers for nonpayment or underpayment of either the Federal Black Lung excise tax, the abandoned mine land fee, or the severance tax.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(6) The value of production for royalty purposes shall not include payments received by the lessee pursuant to a contract which the lessee demonstrates, to MMS's satisfaction, were not part of the total consideration paid for the purchase of coal production.

(c)(1) The value of coal from leases subject to this section and which is not sold pursuant to an arm's-length contract shall be determined in accordance with this section.

(2) If the value of the coal cannot be determined pursuant to paragraph (b) of this section, then the value shall be determined through application of other valuation criteria. The criteria shall be considered in the following order, and the value shall be based upon the first applicable criterion:

(i) The gross proceeds accruing to the lessee pursuant to a sale under its non-arm's-length contract (or other disposition of produced coal by other than an arm's-length contract), provided that those gross proceeds are within the range of the gross proceeds derived from, or paid under, comparable arm's-length contracts between buyers and sellers neither of whom is affiliated with the lessee for sales, purchases, or other dispositions of like-quality coal produced in the area. In evaluating the comparability of arm's-length contracts for the purposes of these regulations, the following factors shall be considered: Price, time of execution, duration, market or markets served, terms, quality of coal, quantity, and such other factors as may be appropriate to reflect the value of the coal;

(ii) Prices reported for that coal to a public utility commission;

(iii) Prices reported for that coal to the Energy Information Administration of the Department of Energy;

(iv) Other relevant matters including, but not limited to, published or publicly available spot market prices, or information submitted by the lessee concerning circumstances unique to a particular lease operation or the saleability of certain types of coal;

(v) If a reasonable value cannot be determined using paragraphs (c)(2) (i), (ii), (iii), or (iv) of this section, then a net-back method or any other reasonable method shall be used to determine value.

(3) When the value of coal is determined pursuant to paragraph (c)(2) of this section, that value determination shall be consistent with the provisions contained in paragraphs (b)(5) and (b)(6) of this section, as appropriate.

(d)(1) Where the value is determined pursuant to paragraph (c) of this section, that value does not require MMS's prior approval. However, the lessee shall retain all data relevant to the determination of royalty value. Such data shall be subject to review and audit, and MMS will direct a lessee to use a different value if it determines that the reported value is inconsistent with the requirements of these regulations.

(2) Any Federal or Indian lessee will make available upon request to the authorized MMS, State, or Indian representatives, or to the Inspector General of the Department of the Interior or other persons authorized to receive such information, arm's-length sales and sales quantity data for like-quality coal sold, purchased, or otherwise obtained by the lessee from the area.

(3) A lessee shall notify MMS if it has determined value pursuant to paragraphs (c)(2) (ii), (iii), (iv), or (v) of this section. The notification shall be by letter to the Associate Director for Royalty Management of his/her designee. The letter shall identify the valuation method to be used and contain a brief description of the procedure to be followed. The notification required by this section is a one-time notification due no later than the month the lessee first reports royalties on the Form MMS-4014 using a valuation method authorized by paragraphs (c)(2) (ii), (iii), (iv), or (v) of this section, and each time there is a change in a method under paragraphs (c)(2) (iv) or (v) of this section.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**257

(e) If MMS determines that a lessee has not properly determined value, the lessee shall be liable for the difference, if any, between royalty payments made based upon the value it has used and the royalty payments that are due based upon the value established by MMS. The lessee shall also be liable for interest computed pursuant to 30 CFR 218.202. If the lessee is entitled to a credit, MMS will provide instructions for the taking of that credit.

(f) The lessee may request a value determination from MMS. In that event, the lessee shall propose to MMS a value determination method, and may use that method in determining value for royalty purposes until MMS issues its decision. The lessee shall submit all available data relevant to its proposal. The MMS shall expeditiously determine the value based upon the lessee's proposal and any additional information MMS deems necessary. That determination shall remain effective for the period stated therein. After MMS issues its determination, the lessee shall make the adjustments in accordance with paragraph (e) of this section.

(g) Notwithstanding any other provisions of this section, under no circumstances shall the value for royalty purposes be less than the gross proceeds accruing to the lessee for the deposition of produced coal less applicable exclusions of paragraphs (b)(5) and (b)(6) of this section and less applicable allowances determined pursuant to ss **206**.258 through **206**.262, and s **206**.265 of this subpart.

(h) The lessee is required to place coal in marketable condition at no cost to the Federal Government or Indian lessor. Where the value established pursuant to this section is determined by a lessee's gross proceeds, that value shall be increased to the extent that the gross proceeds has been reduced because the purchaser, or any other person, is providing certain services, the cost of which ordinarily is the responsibility of the lessee to place the coal in marketable condition.

(i) Value shall be based on the highest price a prudent lessee can receive through legally enforceable claims under its contract. Absent contract revision or amendment, if the lessee fails to take proper or timely action to receive prices or benefits to which it is entitled, it must pay royalty at a value based upon that obtainable price or benefit. Contract revisions or amendments shall be in writing and signed by all parties to an arm's-length contract, and may be retroactively applied to value for royalty purposes for a period not to exceed two years, unless MMS approves a longer period. If the lessee makes timely application for a price increase allowed under its contract but the purchaser refuses, and the lessee takes reasonable measures, which are documented, to force purchaser compliance, the lessee will owe no additional royalties unless or until monies or consideration resulting from the price increase are received. This paragraph shall not be construed to permit a lessee to avoid its royalty payment obligation in situations where a purchaser fails to pay, in whole or in part or timely, for a quantity of coal.

(j) Notwithstanding any provision in these regulations to the contrary, no review, reconciliation, monitoring, or other like process that results in a redetermination by the MMS of value under this section shall be considered final or binding as against the Federal Government, its beneficiaries, the Indian Tribes, or allottees until the audit period is formally closed.

(k) Certain information submitted to MMS to support valuation proposals, including transportation, coal washing, or other allowances pursuant to s 206.265 of this subpart, is exempted from disclosure by the Freedom of Information Act, 5 U.S.C. 522. Any data specified by the Act to be privileged, confidential, or otherwise exempt shall be maintained in a confidential manner in accordance with applicable law and regulations. All requests for information about determinations made under this Part are to be submitted in accordance with the Freedom of Information Act regulation of the Department of the Interior, 43 CFR Part 2. Nothing in this section is intended to limit or diminish in any manner whatsoever the right of an Indian lessor to obtain any and all information as such lessor may be lawfully entitled from MMS or such lessor's lessee directly under the terms of the lease or applicable law.

Title 30--Mineral Resources

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**257

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart F--Coal

Source: 54 FR 1523, Jan. 13, 1989, unless otherwise noted.

**30** C. F. R. s **206.**257

**30** CFR s **206.**257

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**258

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart F--Coal**

s **206**.258 Washing allowances--general.

(a) For ad valorem leases subject to s **206**.257 of this subpart, MMS shall, as authorized by this section, allow a deduction in determining value for royalty purposes for the reasonable, actual costs incurred to wash coal, unless the value determined pursuant to s **206**.257 of this subpart was based upon like-quality unwashed coal. Under no circumstances shall the washing allowance and the transportation allowance authorized by s **206**.262 of this subpart reduce the value for royalty purposes to zero.

(b) If MMS determines that a lessee has improperly determined a washing allowance authorized by this section, then the lessee shall be liable for any additional royalties, plus interest determined in accordance with **30** CFR 218.202, or shall be entitled to a credit without interest.

(c) Lessees shall not disproportionately allocate washing costs to Federal or Indian leases.

(d) No cost normally associated with mining operations and which are necessary for placing coal in marketable condition shall be allowed as a cost of washing.

(e) Coal washing costs shall only be recognized as allowances when the washed coal is sold and royalties are reported and paid.

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart F--Coal

Source: 54 FR 1523, Jan. 13, 1989, unless otherwise noted.

**30** C. F. R. s **206.**258

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**259

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart F--Coal**

s **206**.259 Determination of washing allowances.

(a) Arm's-length contracts. (1) For washing costs incurred by a lessee pursuant to an arm's-length contract, the washing allowance shall be the reasonable actual costs incurred by the lessee for washing the coal under that contract, subject to monitoring, review, audit, and possible future adjustment. The MMS's prior approval is not required before a lessee may deduct costs incurred under an arm's-length contract. However, before any deduction may be taken, the lessee must submit a completed page one of Form MMS-4292, Coal Washing Allowance Report, in accordance with paragraph (c)(1) of this section. A washing allowance may be claimed retroactively for a period of not more than 3 months prior to the first day of the month that Form MMS-4292 is filed with MMS, unless MMS approves a longer period upon a showing of good cause by the lessee.

(2) In conducting reviews and audits, MMS will examine whether the contract reflects more than the consideration actually transferred either directly or indirectly from the lessee to the washer for the washing. If the contract reflects more than the total consideration paid, then the MMS may require that the washing allowance be determined in accordance with paragraph (b) of this section.

(3) If the MMS determines that the consideration paid pursuant to an arm's-length washing contract does not reflect the reasonable value of the washing because of misconduct by or between the contracting parties, or because the lessee otherwise has breached its duty to the lessor to market the production for the mutual benefit of the lessee and the lessor, then MMS shall require that the washing allowance be determined in accordance with paragraph (b) of this section. When MMS determines that the value of the washing may be unreasonable, MMS will notify the lessee and give the lessee an opportunity to provide written information justifying the lessee's washing costs.

(4) Where the lessee's payments for washing under an arm's-length contract are not based on a dollar-per-unit basis, the lessee shall convert whatever consideration is paid to a dollar value equivalent. Washing allowances shall be expressed as a cost per ton of coal washed.

(b) Non-arm's-length or no contract. (1) If a lessee has a non-arm's-length contract or has no contract, including those situations where the lessee performs washing for itself, the washing allowance will be based upon the lessee's reasonable actual costs. All washing allowances deducted under a non-arm's-length or no contract situation are subject to monitoring, review, audit, and possible future adjustment. Prior MMS approval of washing allowances is not required for non-arm's-length or no contract situations. However, before any estimated or actual deduction may be taken, the lessee must submit a completed Form MMS-4292 in accordance with paragraph (c)(2) of this section. A washing allowance may be claimed retroactively for a period of not more than 3 months prior to the first day of the month that Form MMS-4292 is filed with MMS, unless MMS approves a longer period upon a showing of good cause by the lessee. The MMS will monitor the allowance deduction to ensure that deductions are reasonable and allowable. When necessary or appropriate, MMS may direct a lessee to modify its estimated or actual washing allowance.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(2) The washing allowance for non-arm's-length or no contract situations shall be based upon the lessee's actual costs for washing during the reported period, including operating and maintenance expenses, overhead, and either depreciation and a return on undepreciated capital investment in accordance with paragraph (b)(2)(iv)(A) of this section, or a cost equal to the depreciable investment in the wash plant multiplied by the rate of return in accordance with paragraph (b)(2)(iv)(B) of this section. Allowable capital costs are generally those for depreciable fixed assets (including costs of delivery and installation of capital equipment) which are an integral part of the wash plant.

(i) Allowable operating expenses include: Operations supervision and engineering; operations labor; fuel; utilities; materials; ad valorem property taxes, rent; supplies; and any other directly allocable and attributable operating expense which the lessee can document.

(ii) Allowable maintenance expenses include: Maintenance of the wash plant; maintenance of equipment; maintenance labor; and other directly allocable and attributable maintenance expenses which the lessee can document.

(iii) Overhead attributable and allocable to the operation and maintenance of the wash plant is an allowable expense. State and Federal income taxes and severance taxes, including royalties, are not allowable expenses.

(iv) A lessee may use either paragraph (b)(2)(iv)(A) or (B) of this section. After a lessee has elected to use either method for a wash plant, the lessee may not later elect to change to the other alternative without approval of the MMS.

(A) To compute depreciation, the lessee may elect to use either a straight-line depreciation method based on the life of equipment or on the life of the reserves which the wash plant services, whichever is appropriate, or a unit of production method. After an election is made, the lessee may not change methods without MMS approval. A change in ownership of a wash plant shall not alter the depreciation schedule established by the original operator/lessee for purposes of the allowance calculation. With or without a change in ownership, a wash plant shall be depreciated only once. Equipment shall not be depreciated below a reasonable salvage value.

(B) The MMS shall allow as a cost an amount equal to the allowable capital investment in the wash plant multiplied by the rate of return determined pursuant to paragraph (b)(2)(v) of this section. No allowance shall be provided for depreciation. This alternative shall apply only to plants first placed in service or acquired after March 1, 1989.

(v) The rate of return shall be the industrial rate associated with Standard and Poor's BBB rating. The rate of return shall be the monthly average rate as published in Standard and Poor's Bond Guide for the first month of the reporting period for which the allowance is applicable and shall be effective during the reporting period. The rate shall be redetermined at the beginning of each subsequent washing allowance reporting period (which is determined pursuant to paragraph (c)(2) of this section).

(3) The washing allowance for coal shall be determined based on the lessee's reasonable and actual cost of washing the coal. The lessee may not take an allowance for the costs of washing lease production that is not royalty bearing.

(c) Reporting requirements.--(1) Arm's-length contracts. (i) With the exception of those washing allowances specified in paragraphs (c)(1)(v) and (vi) of this section, the lessee shall submit page one of the initial Form MMS-4292 prior to, or at the same time, as the washing allowance determined pursuant to an arm's-length contract is reported on Form MMS-4014, Report of Sales and Royalty Remittance. A Form MMS-4292 received by the end of the month that the Form MMS-4014 is due shall be considered to be received timely.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**259

(ii) The initial Form MMS-4292 shall be effective for a reporting period beginning the month that the lessee is first authorized to deduct a washing allowance and shall continue until the end of the calendar year, or until the applicable contract or rate terminates or is modified or amended, whichever is earlier.

(iii) After the initial reporting period and for succeeding reporting periods, lessees must submit page one of Form MMS-4292 within 3 months after the end of the calendar year, or after the applicable contract or rate terminates or is modified or amended, whichever is earlier, unless MMS approves a longer period (during which period the lessee shall continue to use the allowance from the previous reporting period).

(iv) The MMS may require that a lessee submit arm's-length washing contracts and related documents. Documents shall be submitted within a reasonable time, as determined by MMS.

(v) Washing allowances which are based on arm's-length contracts and which are in effect at the time these regulations become effective will be allowed to continue until such allowances terminate. For the purposes of this section, only those allowances that have been approved by MMS in writing shall qualify as being in effect at the time these regulations become effective.

(vi) The MMS may establish, in appropriate circumstances, reporting requirements that are different from the requirements of this section.

(2) Non-arm's-length or no contract. (i) With the exception of those washing allowances specified in paragraphs (c)(2)(v) and (vii) of this section, the lessee shall submit an initial Form MMS-4292 prior to, or at the same time as, the washing allowance determined pursuant to a non-arm's-length contract or no contract situation is reported on Form MMS-4014, Report of Sales and Royalty Remittance. A Form MMS-4292 received by the end of the month that the Form MMS-4014 is due shall be considered to be timely received. The initial reporting may be based on estimated costs.

(ii) The initial Form MMS-4292 shall be effective for a reporting period beginning the month that the lessee first is authorized to deduct a washing allowance and shall continue until the end of the calendar year, or until the washing under the non-arm's-length contract or the no contract situation terminates, whichever is earlier.

(iii) For calendar-year reporting periods succeeding the initial reporting period, the lessee shall submit a completed Form MMS-4292 containing the actual costs for the previous reporting period. If coal washing is continuing, the lessee shall include on Form MMS-4292 its estimated costs for the next calendar year. The estimated coal washing allowance shall be based on the actual costs for the previous period plus or minus any adjustments which are based on the lessee's knowledge of decreases or increases which will affect the allowance. Form MMS-4292 must be received by MMS within 3 months after the end of the previous reporting period, unless MMS approves a longer period (during which period the lessee shall continue to use the allowance from the previous reporting period).

(iv) For new wash plants, the lessee's initial Form MMS-4292 shall include estimates of the allowable coal washing costs for the applicable period. Cost estimates shall be based upon the most recently available operations data for the plant, or if such data are not available, the lessee shall use estimates based upon industry data for similar coal wash plants.

(v) Washing allowances based on non-arm's-length or no-contract situations which are in effect at the time these regulations become effective will be allowed to continue until such allowances terminate. For the purposes of this section, only those allowances that have been approved by MMS in writing shall qualify as being in effect at the time these regulations become effective.

(vi) Upon request by MMS, the lessee shall submit all data used by the lessee to prepare its Forms MMS-4292.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**259

The data shall be provided within a reasonable period of time, as determined by MMS.

(vii) The MMS may establish, in appropriate circumstances, reporting requirements which are different from the requirements of this section.

(3) The MMS may establish coal washing allowance reporting dates for individual leases different from those specified in this subpart in order to provide more effective administration. Lessees will be notified of any change in their reporting period.

(4) Washing allowances must be reported as a separate line on the Form MMS-4014, unless MMS approves a different reporting procedure.

(d) Interest assessments for incorrect or late reports and failure to report. (1) If a lessee deducts a washing allowance on its Form MMS-4014 without complying with the requirements of this section, the lessee shall be liable for interest on the amount of such deduction until the requirements of this section are complied with. The lessee also shall repay the amount of any allowance which is disallowed by this section.

(2) If a lessee erroneously reports a washing allowance which results in an underpayment of royalties, interest shall be paid on the amount of that underpayment.

(3) Interest required to be paid by this section shall be determined in accordance with **30** CFR 218.202.

(e) Adjustments. (1) If the actual coal washing allowance is less than the amount the lessee has taken on Form MMS-4014 for each month during the allowance form reporting period, the lessee shall be required to pay additional royalties due plus interest computed pursuant to **30** CFR 218.202, retroactive to the first month the lessee is authorized to deduct a washing allowance. If the actual washing allowance is greater than the amount the lessee has estimated and taken during the reporting period, the lessee shall be entitled to a credit without interest.

(2) The lessee must submit a corrected Form MMS-4014 to reflect actual costs, together with any payment, in accordance with instructions provided by MMS.

(f) Other washing cost determinations. The provisions of this section shall apply to determine washing costs when establishing value using a net-back valuation procedure or any other procedure that requires deduction of washing costs.

Title 30--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart F--Coal

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**260

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart F--Coal**

s **206**.260 Allocation of washed coal.

(a) When coal is subjected to washing, the washed coal must be allocated to the leases from which it was extracted.

(b) When the net output of coal from a washing plant is derived from coal obtained from only one lease, the quantity of washed coal allocable to the lease will be based on the net output of the washing plant.

(c) When the net output of coal from a washing plant is derived from coal obtained from more than one lease, unless determined otherwise by BLM, the quantity of net output of washed coal allocable to each lease will be based on the ratio of measured quantities of coal delivered to the washing plant and washed from each lease compared to the total measured quantities of coal delivered to the washing plant and washed.

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart F--Coal

Source: 54 FR 1523, Jan. 13, 1989, unless otherwise noted.

**30** C. F. R. s **206.**260

**30** CFR s **206.**260

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**261

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart F--Coal**

s **206**.261 Transportation allowances--general.

(a) For ad valorem leases subject to s **206**.257 of this subpart, where the value for royalty purposes has been determined at a point remote from the lease or mine, MMS shall, as authorized by this section, allow a deduction in determining value for royalty purposes for the reasonable, actual costs incurred to:

(1) Transport the coal from a Federal or Indian lease to a sales point which is remote from both the lease and mine; or

(2) Transport the coal from a Federal or Indian lease to a wash plant when that plant is remote from both the lease and mine and, if applicable, from the wash plant to a remote sales point. In-mine transportation costs shall not be included in the transportation allowance.

(b) Under no circumstances shall the washing allowance and the transportation allowance authorized by s **206**.257 of this subpart reduce the value of coal under any selling arrangement to zero.

(c)(1) When coal transported from a mine to a wash plant is eligible for a transportation allowance in accordance with this section, the lessee is not required to allocate transportation costs between the quantity of clean coal output and the rejected waste material. The transportation allowance shall be authorized for the total production which is transported. Transportation allowances shall be expressed as a cost per ton of cleaned coal transported.

(2) For coal that is not washed at a wash plant, the transportation allowance shall be authorized for the total production which is transported. Transportation allowances shall be expressed as a cost per ton of coal transported.

(3) Transportation costs shall only be recognized as allowances when the transported coal is sold and royalties are reported and paid.

(d) If, after a review and/or audit, MMS determines that a lessee has improperly determined a transportation allowance authorized by this section, then the lessee shall pay any additional royalties, plus interest, determined in accordance with **30** CFR 218.202, or shall be entitled to a credit, without interest.

(e) Lessees shall not disproportionately allocate transportation costs to Federal or Indian leases.

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**261

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart F--Coal

Source: 54 FR 1523, Jan. 13, 1989, unless otherwise noted.

**30** C. F. R. s **206.**261

**30** CFR s **206.**261

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.262**

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206--PRODUCT VALUATION**
**Subpart F--Coal**

s **206.262** Determination of transportation allowances.

(a) Arm's-length contracts. (1) For transportation costs incurred by a lessee pursuant to an arm's-length contract, the transportation allowance shall be the reasonable, actual costs incurred by the lessee for transporting the coal under that contract, subject to monitoring, review, audit, and possible future adjustment. The MMS's prior approval is not required before a lessee may deduct costs incurred under an arm's-length contract. However, before any deduction may be taken, the lessee must submit a completed page one of Form MMS-4293, Coal Transportation Allowance Report, in accordance with paragraph (c)(1) of this section. A transportation allowance may be claimed retroactively for a period of not more than 3 months prior to the first day of the month that Form MMS-24293 is filed with MMS, unless MMS approves a longer period upon a showing of good cause by the lessee.

(2) In conducting reviews and audits, MMS will examine whether the contract reflects more than the consideration actually transferred either directly or indirectly from the lessee to the transporter for the transportation. If the contract reflects more than the total consideration paid, then the MMS may require that the transportation allowance be determined in accordance with paragraph (b) of this section.

(3) If the MMS determines that the consideration paid pursuant to an arm's-length transportation contract does not reflect the reasonable value of the transportation because of misconduct by or between the contracting parties, or because the lessee otherwise has breached its duty to the lessor to market the production for the mutual benefit of the lessee and the lessor, then MMS shall require that the transportation allowance be determined in accordance with paragraph (b) of this section. When MMS determines that the value of the transportation may be unreasonable, MMS will notify the lessee and give the lessee an opportunity to provide written information justifying the lessee's transportation costs.

(4) Where the lessee's payments for transportation under an arm's-length contract are not based on a dollar-per-unit basis, the lessee shall convert whatever consideration is paid to a dollar value equivalent for the purposes of this section.

(b) Non-arm's-length or no contract. (1) If a lessee has a non-arm's-length contract or has no contract, including those situations where the lessee performs transportation services for itself, the transportation allowance will be based upon the lessee's reasonable actual costs. All transportation allowances deducted under a non-arm's-length or no-contract situation are subject to monitoring, review, audit, and possible future adjustment. Prior MMS approval of transportation allowances is not required for non-arm's-length or no-contract situations. However, before any estimated or actual deduction may be taken, the lessee must submit a completed Form MMS-4293 in accordance with paragraph (c)(2) of this section. A transportation allowance may be claimed retroactively for a period of not more than 3 months prior to the first day of the month that Form MMS-4293 is filed with MMS, unless MMS approves a longer period upon a showing of good cause by the lessee. The MMS will monitor the allowance deductions to ensure that deductions are reasonable and allowable. When necessary or appropriate,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.262**

MMS may direct a lessee to modify its estimated or actual transportation allowance deduction.

(2) The transportation allowance for non-arm's-length or no-contract situations shall be based upon the lessee's actual costs for transportation during the reporting period, including operating and maintenance expenses, overhead, and either depreciation and a return on undepreciated capital investment in accordance with paragraph (b)(2)(iv)(A) of this section, or a cost equal to the depreciable investment in the transportation system multiplied by the rate of return in accordance with paragraph (b)(2)(iv)(B) of this section. Allowable capital costs are generally those for depreciable fixed assets (including costs of delivery and installation of capital equipment) which are an integral part of the transportation system.

(i) Allowable operating expenses include: Operations supervision and engineering; operations labor; fuel; utilities; materials; ad valorem property taxes; rent; supplies; and any other directly allocable and attributable operating expense which the lessee can document.

(ii) Allowable maintenance expenses include: Maintenance of the transportation system; maintenance of equipment; maintenance labor; and other directly allocable and attributable maintenance expenses which the lessee can document.

(iii) Overhead attributable and allocable to the operation and maintenance of the transportation system is an allowable expense. State and Federal income taxes and severance taxes and other fees, including royalties, are not allowable expenses.

(iv) A lessee may use either paragraph (b)(2)(iv)(A) or paragraph (b)(2)(iv)(B) of this section. After a lessee has elected to use either method for a transportation system, the lessee may not later elect to change to the other alternative without approval of the MMS.

(A) To compute depreciation, the lessee may elect to use either a straight-line depreciation method based on the life of equipment or on the life of the reserves which the transportation system services, whichever is appropriate, or a unit of production method. After an election is made, the lessee may not change methods without MMS approval. A change in ownership of a transportation system shall not alter the depreciation schedule established by the original transporter/lessee for purposes of the allowance calculation. With or without a change in ownership, a transportation system shall be depreciated only once. Equipment shall not be depreciated below a reasonable salvage value.

(B) The MMS shall allow as a cost an amount equal to the allowable capital investment in the transportation system multiplied by the rate of return determined pursuant to paragraph (b)(2)(B)(v) of this section. No allowance shall be provided for depreciation. This alternative shall apply only to transportation facilities first placed in service or acquired after March 1, 1989.

(v) The rate of return shall be the industrial rate associated with Standard and Poor's BBB rating. The rate of return shall be the monthly average as published in Standard and Poor's Bond Guide for the first month of the reporting period of which the allowance is applicable and shall be effective during the reporting period. The rate shall be redetermined at the beginning of each subsequent transportation allowance reporting period (which is determined pursuant to paragraph (c)(2) of this section).

(3) A lessee may apply to the MMS for exception from the requirement that it compute actual costs in accordance with paragraphs (b)(1) and (b)(2) of this section. The MMS will grant the exception only if the lessee has a rate for the transportation approved by a Federal agency (for both Federal and Indian leases) or by a State regulatory agency (for Federal leases). The MMS shall deny the exception request if it determines that the rate is excessive as compared to arm's-length transportation charges by systems, owned by the lessee or others, providing similar transportation services in that area. If there are no arm's-length transportation charges, MMS shall deny the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

exception request if: (i) No Federal or State regulatory agency costs analysis exists and the Federal or State regulatory agency, as applicable, has declined to investigate pursuant to MMS timely objections upon filing; and (ii) The rate significantly exceeds the lessee's actual costs for transportation as determined under this section.

(c) Reporting requirements--(1) Arm's-length contracts. (i) With the exception of those transportation allowances specified in paragraphs (c)(1) (v) and (vi) of this section, the lessee shall submit page one of the initial Form MMS-4293 prior to, or at the same time as, the transportation allowance determined pursuant to an arm's-length contract is reported on Form MMS-4014, Reports of Sales and Royalty Remittance.

(ii) The initial Form MMS-4293 shall be effective for a reporting period beginning the month that the lessee is first authorized to deduct a transportation allowance and shall continue until the end of the calendar year, or until the applicable contract or rate terminates or is modified or amended, whichever is earlier.

(iii) After the initial reporting period and for succeeding reporting periods, lessees must submit page one of Form MMS-4293 within 3 months after the end of the calendar year, or after the applicable contract or rate terminates or is modified or amended, whichever is earlier, unless MMS approves a longer period (during which period the lessee shall continue to use the allowance from the previous reporting period). Lessees may request special reporting procedures in unique allowance reporting situations, such as those related to spot sales.

(iv) The MMS may require that a lessee submit arm's-length transportation contracts, production agreements, operating agreements, and related documents. Documents shall be submitted within a reasonable time, as determined by MMS.

(v) Transportation allowances that are based on arm's-length contracts and which are in effect at the time these regulations become effective will be allowed to continue until such allowances terminate. For the purposes of this section, only those allowances that have been approved by MMS in writing shall qualify as being in effect at the time these regulations become effective.

(vi) The MMS may establish, in appropriate circumstances, reporting requirements that are different from the requirements of this section.

(2) Non-arm's-length or no contract. (i) With the exception of those transportation allowances specified in paragraphs (c)(2) (v) and (vii) of this section, the lessee shall submit an initial Form MMS-4293 prior to, or at the same time as, the transportation allowance determined pursuant to a non-arm's-length contract or no-contract situation is reported on Form MMS-4014, Report of Sales and Royalty Remittance. The initial report may be based on estimated costs.

(ii) The initial Form MMS-4293 shall be effective for a reporting period beginning the month that the lessee first is authorized to deduct a transportation allowance and shall continue until the end of the calendar year, or until the transportation under the non-arm's-length contract or the no-contract situation terminates, whichever is earlier.

(iii) For calendar-year reporting periods succeeding the initial reporting period, the lessee shall submit a completed Form MMS-4293 containing the actual costs for the previous reporting period. If the transportation is continuing, the lessee shall include on Form MMS-4293 its estimated costs for the next calendar year. The estimated transportation allowance shall be based on the actual costs for the previous reporting period plus or minus any adjustments that are based on the lessee's knowledge of decreases or increases that will affect the allowance. Form MMS-4293 must be received by MMS within 3 months after the end of the previous reporting period, unless MMS approves a longer period (during which period the lessee shall continue to use the allowance from the previous reporting period).

(iv) For new transportation facilities or arrangements, the lessee's initial Form MMS-4293 shall include estimates

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of the allowable transportation costs for the applicable period. Cost estimates shall be based upon the most recently available operations data for the transportation system, or, if such data are not available, the lessee shall use estimates based upon industry data for similar transportation systems.

(v) Non-arm's-length contract or no-contract-based transportation allowances that are in effect at the time these regulations become effective will be allowed to continue until such allowances terminate. For purposes of this section, only those allowances that have been approved by MMS in writing shall qualify as being in effect at the time these regulations become effective.

(vi) Upon request by MMS, the lessee shall submit all data used to prepare its Form MMS-4293. The data shall be provided within a reasonable period of time, as determined by MMS.

(vii) The MMS may establish, in appropriate circumstances, reporting requirements that are different from the requirements of this section.

(viii) If the lessee is authorized to use its Federal- or State-agency-approved rate as its transportation cost in accordance with paragraph (b)(3) of this section, it shall follow the reporting requirements of paragraph (c)(1) of this section.

(3) The MMS may establish reporting dates for individual lessees different than those specified in this paragraph in order to provide more effective administration. Lessees will be notified as to any change in their reporting period.

(4) Transportation allowances must be reported as a separate line item on Form MMS-4014, unless MMS approves a different reporting procedure.

(d) Interest assessments for incorrect or late reports and failure to report. (1) If a lessee deducts a transportation allowance on its Form MMS-4014 without complying with the requirements of this section, the lessee shall be liable for interest on the amount of such deduction until the requirements of this section are complied with. The lessee also shall repay the amount of any allowance which is disallowed by this section.

(2) If a lessee erroneously reports a transportation allowance which results in an underpayment of royalties, interest shall be paid on the amount of that underpayment.

(3) Interest required to be paid by this section shall be determined in accordance with **30** CFR 218.202.

(e) Adjustments. (1) If the actual transportation allowance is less than the amount the lessee has taken on Form MMS-4014 for each month during the allowance form reporting period, the lessee shall be required to pay additional royalties due plus interest, computed pursuant to **30** CFR 218.202, retroactive to the first month the lessee is authorized to deduct a transportation allowance. If the actual transportation allowance is greater than the amount the lessee has estimated and taken during the reporting period, the lessee shall be to a credit without interest.

(2) The lessee must submit a corrected Form MMS-4014 to reflect actual costs, together with any payment, in accordance with instructions provided by MMS.

(f) Other transportation cost determinations. The provisions of this section shall apply to determine transportation costs when establishing value using a net-back valuation procedure or any other procedure that requires deduction of transportation costs.

Title 30--Mineral Resources

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.262**

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART 206--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart F--Coal

Source: 54 FR 1523, Jan. 13, 1989, unless otherwise noted.

**30** C. F. R. s **206.262**

**30** CFR s **206.262**

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**263

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart F--Coal**

s **206**.263 Contract submission.

(a) The lessee and other payors shall submit to MMS, upon request, contracts for the sale of coal from ad valorem leases subject to this subpart. The MMS must receive the contracts within a reasonable period of time, as specified by MMS. Lessees shall include as part of the submittal requirements any contracts, agreements, contract amendments, or other documents that affect the gross proceeds received for the sale of coal, as well as any other information regarding any consideration received for the sale or disposition of coal that is not included in such contracts. At the time of its contract submittals, MMS may require the lessee to certify in writing that it has provided all documents and information that reflect the total consideration provided by purchasers of coal from ad valorem leases subject to this subpart. Information requested under this section may include contracts for both ad valorem and cents-per-ton leases and shall be available in the lessee's offices during normal business hours or provided to MMS at such time and in such manner as may be requested by authorized Department of the Interior personnel. Any oral sales arrangement negotiated by the lessee must be placed in a written form and be retained by the lessee. Nothing in this section shall be construed to limit the authority of MMS to obtain or have access to information pursuant to **30** CFR Part 212.

(b) Lessees and other payors shall designate, for each contract submitted pursuant to this section, whether the contract in arm's-length or non-arm's-length.

(c) A lessee's or other payor's determination that its contract is arm's-length is subject to future audit to verify that the contract meets the criteria of the arm's-length contract definition in s **206**.251 of this subpart.

(d) Information required to be submitted under this section that constitutes trade secrets and commercial and financial information that is identified as privileged or confidential shall not be available for public inspection or made public or disclosed without the consent of the lessee or other payor, except as otherwise provided by law or regulation.

Title 30--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**264

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart F--Coal**

s **206**.264 In-situ and surface gasification and liquefaction operations.

In an ad valorem Federal coal lease is developed by in-situ or surface gasification or liquefaction technology, the lessee shall propose the value of coal for royalty purposes to MMS. The MMS will review the lessee's proposal and issue a value determination. The lessee may use its proposed value until MMS issues a value determination.

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart F--Coal

Source: 54 FR 1523, Jan. 13, 1989, unless otherwise noted.

**30** C. F. R. s **206.**264

**30** CFR s **206.**264

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**265

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart F--Coal**

s **206**.265 Value enhancement of marketable coal.

If, prior to use, sale, or other disposition, the lessee enhances the value of coal after the coal has been placed in marketable condition in accordance with s **206**.257(h) of this subpart, the lessee shall notify MMS that such processing is occurring or will occur. The value of that production shall be determined as follows:

(a) A value established for the feedstock coal in marketable condition by application of the provisions of s **206**.257(c)(2)(i-iv) of this subpart; or,

(b) In the event that a value cannot be established in accordance with subsection (a), then the value of production will be determined in accordance with s **206**.257(c)(2)(v) of this subpart and the value shall be the lessee's gross proceeds accruing from the disposition of the enhanced product, reduced by MMS-approved processing costs and procedures including a rate of return on investment equal to two times the Standard and Poor's BBB bond rate applicable under s **206**.259(b)(2)(v) of this subpart.

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart F--Coal

Source: 54 FR 1523, Jan. 13, 1989, unless otherwise noted.

**30** C. F. R. s **206.**265

**30** CFR s **206.**265

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**301

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart H--Geothermal Resources**

s **206**.301 Value basis for royalty computation.

(a) The gross value for royalty purposes shall be the sale or contract unit price times the number of units sold, Provided, however, That where the authorized officer determines:

(1) That a contract of sale or other business arrangement between the lessee and a purchaser of some or all of the commodities produced from the lease is not a bona fide transaction between independent parties because it is based in whole or in part upon considerations other than the value of the commodities, or (2) That no bona fide sales price is received for some or all of such commodities because the lessee is consuming them, the authorized officer shall determine their gross value, taking into account: (i) All prices received by the lessee in all bona fide transactions, (ii) Prices paid for commodities of like quality produced from the same general area, and (iii) Such other relevant factors as the authorized officer may deem appropriate; and Provided further, That in a situation where an estimated value is used, the authorized officer shall require the payment of such additional royalties, or allow such credits or refunds as may be necessary to adjust royalty payment to reflect the actual gross value.

(b) The lessee is required to certify that the values reported for royalty purposes are bona fide sales not involving considerations other than the sale of the mineral, and he may be required by the authorized officer to supply supporting information.

[43 FR 10341, Mar. 13, 1978. Redesignated at 48 FR 36588, Aug. 12, 1983, and amended at 48 FR 44795, Sept. **30**, 1983. Redesignated at 51 FR 15212, Apr. 22, 1986; 53 FR 39461, Oct. 7, 1988]

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart H--Geothermal Resources

Source: 53 FR 1218, Jan. 15, 1988, unless otherwise noted.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**350

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart H--Geothermal Resources**

s **206**.350 Value of geothermal production for computing royalties.

(a) The value of geothermal production from the leased premises for the purpose of computing royalties shall be the reasonable value of the energy and the byproducts attributable to the lease as determined by the Supervisor. In determining the reasonable value of the energy and the byproducts the Supervisor shall consider:

(1) The highest price paid for a majority of the production of like quality in the same field or area;

(2) The total consideration accruing to the lessee from any disposition of the geothermal production;

(3) The value of the geothermal production used by the lessee;

(4) The value and cost of alternate available energy sources and byproducts;

(5) The cost of exploration and production, exclusive of taxes;

(6) The economic value of the resource in terms of its ultimate utilization;

(7) Production agreements between producer and purchaser; and

(8) Any other matters which he may consider relevant.

(b) Under no circumstances shall the value of any geothermal production for the purposes of computing royalties be less than:

(1) The total consideration accruing to the lessee from the sale thereof in cases where geothermal resources are sold by the lessee to another party;

(2) That amount which is the value of the end product attributable to the geothermal resource produced from a particular lease where geothermal resources are not sold by the lessee before being utilized, but are instead directly used in manufacturing, power production, or other industrial activity; or

(3) When a part of the resource only is utilized by the lessee and the remainder sold, the sum of the value of the end product attributable to the geothermal resource and the sales price received for the geothermal resources.

[38 FR 35068, Dec. 21, 1973. Redesignated at 48 FR 35641, Aug. 5, 1983]

Title **30**--Mineral Resources

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**350

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart H--Geothermal Resources

Source: 53 FR 1218, Jan. 15, 1988, unless otherwise noted.

**30** C. F. R. s **206.**350

**30** CFR s **206.**350

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**30** C.F.R. s **206.**351

**CODE OF FEDERAL REGULATIONS**
**Title 30**--Mineral Resources
**CHAPTER II--MINERALS MANAGEMENT SERVICE, DEPARTMENT OF THE INTERIOR**
**SUBCHAPTER A--ROYALTY MANAGEMENT**
**PART 206**--PRODUCT VALUATION
**Subpart H--Geothermal Resources**

s **206**.351 Computation of royalties.

(a) The value of geothermal production from a particular lease as determined pursuant to s **206**.350 hereof, shall be apportioned between geothermal steam, heat, and other forms of energy and the byproducts.

(b) The royalties payable shall be the sum of (1) the amount resulting from the multiplication of the value attributable to the geothermal steam, heat, and other forms of energy by the royalty rate set for such forms of geothermal energy in the lease and (2) the amount resulting from the multiplication of the value attributable to byproducts by the royalty rate for byproducts set in the lease.

[38 FR 35068, Dec. 21, 1973. Redesignated at 48 FR 35641, Aug. 5, 1983]

Title **30**--Mineral Resources

Editorial Note: Other regulations issued by the Department of Interior appear in Title 25, Chapters I and II; Title 36, Chapter I; Title 41, Chapter 114; Title 43; and Title 50, Chapters I and IV.

PART **206**--PRODUCT VALUATION

Authority: 25 U.S.C. 396 et seq.; 25 U.S.C. 396a et seq.; 25 U.S.C. 2101 et seq.; **30** U.S.C. 181 et seq.; **30** U.S.C. 351 et seq.; **30** U.S.C. 1001 et seq.; **30** U.S.C. 1701 et seq.; 31 U.S.C. 9701; 43 U.S.C. 1301 et seq.; 43 U.S.C. 1331 et seq.; and 43 U.S.C. 1801 et seq.

Source: 52 FR 3798, Feb. 6, 1987; 53 FR 45084, Nov. 8, 1988; 53 FR 45762, Nov. 14, 1988; 54 FR 1522, Jan. 13, 1989, unless otherwise noted.

Subpart H--Geothermal Resources

Source: 53 FR 1218, Jan. 15, 1988, unless otherwise noted.

**30** C. F. R. s **206.**351

**30** CFR s **206.**351

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.