affiliate of either of them, then sells the oil under an arm's-length contract, unless you exercise the option provided in paragraph (d)(2)(i) of this section.

(b) If you have multiple arm's-length contracts to sell oil produced from a lease that is valued under paragraph (a) of this section, the value of the oil is the volume-weighted average of the values established under this section for each contract for the sale of oil produced from that lease.

(c) This paragraph contains exceptions to the valuation rule in paragraph (a) of this section. Apply these exceptions on an individual contract basis.

(1) In conducting reviews and audits, if MMS determines that any arm's-length sales contract does not reflect the total consideration actually transferred either directly or indirectly from the buyer to the seller, MMS may require that you value the oil sold under that contract either under § 206.103 or at the total consideration received.

(2) You must value the oil under § 206.103 if MMS determines that the value under paragraph (a) of this section does not reflect the reasonable value of the production due to either:

(i) Misconduct by or between the parties to the arm's-length contract; or

(ii) Breach of your duty to market the oil for the mutual benefit of yourself and the lessor.

(A) MMS will not use this provision to simply substitute its judgment of the market value of the oil for the proceeds received by the seller under an arm's-length sales contract.

(B) The fact that the price received by the seller under an arm's length contract is less than other measures of market price, such as index prices, is insufficient to establish breach of the duty to market unless MMS finds additional evidence that the seller acted unreasonably or in bad faith in the sale of oil from the lease.

(d)(1) If you enter into an arm's-length exchange agreement, or multiple sequential arm's-length exchange agreements, and following the exchange(s) you or your affiliate sell(s) the oil received in the exchange(s) under an arm's-length contract, then you may use either § 206.102(a) or § 206.103 to value your production for royalty purposes.

(i) If you use § 206.102(a), your gross proceeds are the gross proceeds under your or your affiliate's arm's-length sales contract after the exchange(s) occur(s). You must adjust your gross proceeds for any location or quality differential, or other adjustments, you received or paid under the arm's-length exchange agreement(s). If MMS determines that any arm's-length exchange agreement does not reflect reasonable location or quality differentials, MMS may require you to value the oil under § 206.103. You may not otherwise use the price or differential specified in an arm's-length exchange agreement to value your production.

(ii) When you elect under § 206.102(d)(1) to use § 206.102(a) or § 206.103, you must make the same election for all of your production from the same unit, communitization agreement, or lease (if the lease is not part of a unit or communitization agreement) sold under arm's-length contracts following arm's-length exchange agreements. You may not change your election more often than once every 2 years.

(2)(i) If you sell or transfer your oil production to your affiliate and that affiliate or another affiliate then sells the oil under an arm's-length contract, you may use either § 206.102(a) or § 206.103 to value your production for royalty purposes.

(ii) When you elect under § 206.102(d)(2)(i) to use § 206.102(a) or § 206.103, you must make the same election for all of your production from the same unit, communitization agreement, or lease (if the lease is not part of a unit or communitization agreement) that your affiliates resell at arm's length. You may not change your election more often than once every 2 years.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(e) If you value oil under paragraph (a) of this section:

(1) MMS may require you to certify that your or your affiliate's arm's-length contract provisions include all of the consideration the buyer must pay, either directly or indirectly, for the oil.

(2) You must base value on the highest price the seller can receive through legally enforceable claims under the contract.

(i) If the seller fails to take proper or timely action to receive prices or benefits it is entitled to, you must pay royalty at a value based upon that obtainable price or benefit. But you will owe no additional royalties unless or until the seller receives monies or consideration resulting from the price increase or additional benefits, if:

(A) The seller makes timely application for a price increase or benefit allowed under the contract;

(B) The purchaser refuses to comply; and

(C) The seller takes reasonable documented measures to force purchaser compliance.

(ii) Paragraph (e)(2)(i) of this section will not permit you to avoid your royalty payment obligation where a purchaser fails to pay, pays only in part, or pays late. Any contract revisions or amendments that reduce prices or benefits to which the seller is entitled must be in writing and signed by all parties to the arm's-length contract.

**§ 206.103 How do I value oil that is not sold under an arm's-length contract?**

This section explains how to value oil that you may not value under § 206.102 or that you elect under § 206.102(d) to value under this section. First determine whether paragraph (a), (b), or (c) of this section applies to production from your lease, or whether you may apply paragraph (d) or (e) with MMS approval.

(a) Production from leases in California or Alaska. Value is the average of the daily mean ANS spot prices published in any MMS-approved publication during the trading month most concurrent with the production month. (For example, if the production month is June, compute the average of the daily mean prices using the daily ANS spot prices published in the MMS-approved publication for all the business days in June.)

(1) To calculate the daily mean spot price, average the daily high and low prices for the month in the selected publication.

(2) Use only the days and corresponding spot prices for which such prices are published.

(3) You must adjust the value for applicable location and quality differentials, and you may adjust it for transportation costs, under § 206.112.

(4) After you select an MMS-approved publication, you may not select a different publication more often than once every 2 years, unless the publication you use is no longer published or MMS revokes its approval of the publication. If you are required to change publications, you must begin a new 2-year period.

(b) Production from leases in the Rocky Mountain Region. This paragraph provides methods and options for valuing your production under different factual situations. You must consistently apply paragraph (b)(1), (b)(2), or (b)(3) of this section to value all of your production from the same unit, communitization agreement, or lease (if the lease or a portion of the lease is not part of a unit or communitization agreement) that you cannot value under § 206.102 or that you elect under § 206.102(d) to value under this section.

(1) If you have an MMS-approved tendering program, you must value oil produced from leases in the area the tendering program covers at the highest winning bid price for tendered volumes.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(i) The minimum requirements for MMS to approve your tendering program are:

(A) You must offer and sell at least 30 percent of your or your affiliates' production from both Federal and non-Federal leases in the area under your tendering program; and

(B) You must receive at least three bids for the tendered volumes from bidders who do not have their own tendering programs that cover some or all of the same area.

(ii) If you do not have an MMS-approved tendering program, you may elect to value your oil under either paragraph (b)(2) or (b)(3) of this section. After you select either paragraph (b)(2) or (b)(3) of this section, you may not change to the other method more often than once every 2 years, unless the method you have been using is no longer applicable and you must apply the other paragraph. If you change methods, you must begin a new 2-year period.

(2) Value is the volume-weighted average of the gross proceeds accruing to the seller under your or your affiliates' arm's-length contracts for the purchase or sale of production from the field or area during the production month.

(i) The total volume purchased or sold under those contracts must exceed 50 percent of your and your affiliates' production from both Federal and non-Federal leases in the same field or area during that month.

(ii) Before calculating the volume-weighted average, you must normalize the quality of the oil in your or your affiliates' arm's-length purchases or sales to the same gravity as that of the oil produced from the lease.

(3) Value is the NYMEX price (without the roll), adjusted for applicable location and quality differentials and transportation costs under § 206.112.

(4) If you demonstrate to MMS's satisfaction that paragraphs (b)(1) through (b)(3) of this section result in an unreasonable value for your production as a result of circumstances regarding that production, the MMS Director may establish an alternative valuation method.

(c) Production from leases not located in California, Alaska, or the Rocky Mountain Region.

(1) Value is the NYMEX price, plus the roll, adjusted for applicable location and quality differentials and transportation costs under § 206.112.

(2) If the MMS Director determines that use of the roll no longer reflects prevailing industry practice in crude oil sales contracts or that the most common formula used by industry to calculate the roll changes, MMS may terminate or modify use of the roll under paragraph (c)(1) of this section at the end of each 2-year period following July 6, 2004, through notice published in the Federal Register not later than 60 days before the end of the 2-year period. MMS will explain the rationale for terminating or modifying the use of the roll in this notice.

(d) Unreasonable value. If MMS determines that the NYMEX price or ANS spot price does not represent a reasonable royalty value in any particular case, MMS may establish reasonable royalty value based on other relevant matters.

(e) Production delivered to your refinery and the NYMEX price or ANS spot price is an unreasonable value.

(1) Instead of valuing your production under paragraph (a), (b), or (c) of this section, you may apply to the MMS Director to establish a value representing the market at the refinery if:

(i) You transport your oil directly to your or your affiliate's refinery, or exchange your oil for oil delivered to your or your affiliate's refinery; and

(ii) You must value your oil under this section at the NYMEX price or ANS spot price; and

(iii) You believe that use of the NYMEX price or ANS spot price results in an unreasonable royalty value.

(2) You must provide adequate documentation

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and evidence demonstrating the market value at the refinery. That evidence may include, but is not limited to:

(i) Costs of acquiring other crude oil at or for the refinery;

(ii) How adjustments for quality, location, and transportation were factored into the price paid for other oil;

(iii) Volumes acquired for and refined at the refinery; and

(iv) Any other appropriate evidence or documentation that MMS requires.

(3) If the MMS Director establishes a value representing market value at the refinery, you may not take an allowance against that value under § 206.112(b) unless it is included in the Director's approval.

**§ 206.104 What publications are acceptable to MMS?**

(a) MMS periodically will publish in the Federal Register a list of acceptable publications for the NYMEX price and ANS spot price based on certain criteria, including, but not limited to:

(1) Publications buyers and sellers frequently use;

(2) Publications frequently mentioned in purchase or sales contracts;

(3) Publications that use adequate survey techniques, including development of estimates based on daily surveys of buyers and sellers of crude oil, and, for ANS spot prices, buyers and sellers of ANS crude oil; and

(4) Publications independent from MMS, other lessors, and lessees.

(b) Any publication may petition MMS to be added to the list of acceptable publications.

(c) MMS will specify the tables you must use in the acceptable publications.

(d) MMS may revoke its approval of a particular publication if it determines that the prices or differentials published in the publication do not accurately represent NYMEX prices or differentials or ANS spot market prices or differentials.

**§ 206.105 What records must I keep to support my calculations of value under this subpart?**

If you determine the value of your oil under this subpart, you must retain all data relevant to the determination of royalty value.

(a) You must be able to show:

(1) How you calculated the value you reported, including all adjustments for location, quality, and transportation, and

(2) How you complied with these rules.

(b) Recordkeeping requirements are found at part 207 of this chapter.

(c) MMS may review and audit your data, and MMS will direct you to use a different value if it determines that the reported value is inconsistent with the requirements of this subpart.

**§ 206.106 What are my responsibilities to place production into marketable condition and to market production?**

You must place oil in marketable condition and market the oil for the mutual benefit of the lessee and the lessor at no cost to the Federal Government. If you use gross proceeds under an arm's-length contract in determining value, you must increase those gross proceeds to the extent that the purchaser, or any other person, provides certain services that the seller normally would be responsible to perform to place the oil in marketable condition or to market the oil.

**§ 206.107 How do I request a value determination?**

(a) You may request a value determination from MMS regarding any Federal lease oil production.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Your request must:

(1) Be in writing;

(2) Identify specifically all leases involved, the record title or operating rights owners of those leases, and the designees for those leases;

(3) Completely explain all relevant facts. You must inform MMS of any changes to relevant facts that occur before we respond to your request;

(4) Include copies of all relevant documents;

(5) Provide your analysis of the issue(s), including citations to all relevant precedents (including adverse precedents); and

(6) Suggest your proposed valuation method.

(b) MMS will reply to requests expeditiously. MMS may either:

(1) Issue a value determination signed by the Assistant Secretary, Land and Minerals Management; or

(2) Issue a value determination by MMS; or

(3) Inform you in writing that MMS will not provide a value determination. Situations in which MMS typically will not provide any value determination include, but are not limited to:

(i) Requests for guidance on hypothetical situations; and

(ii) Matters that are the subject of pending litigation or administrative appeals.

(c)(1) A value determination signed by the Assistant Secretary, Land and Minerals Management, is binding on both you and MMS until the Assistant Secretary modifies or rescinds it.

(2) After the Assistant Secretary issues a value determination, you must make any adjustments in royalty payments that follow from the determination and, if you owe additional royalties, pay late payment interest under 30 CFR 218.54.

(3) A value determination signed by the Assistant Secretary is the final action of the Department and is subject to judicial review under 5 U.S.C. 701-706.

(d) A value determination issued by MMS is binding on MMS and delegated States with respect to the specific situation addressed in the determination unless the MMS (for MMS-issued value determinations) or the Assistant Secretary modifies or rescinds it.

(1) A value determination by MMS is not an appealable decision or order under 30 CFR part 290 subpart B.

(2) If you receive an order requiring you to pay royalty on the same basis as the value determination, you may appeal that order under 30 CFR part 290 subpart B.

(e) In making a value determination, MMS or the Assistant Secretary may use any of the applicable valuation criteria in this subpart.

(f) A change in an applicable statute or regulation on which any value determination is based takes precedence over the value determination, regardless of whether the MMS or the Assistant Secretary modifies or rescinds the value determination.

(g) The MMS or the Assistant Secretary generally will not retroactively modify or rescind a value determination issued under paragraph (d) of this section, unless:

(1) There was a misstatement or omission of material facts; or

(2) The facts subsequently developed are materially different from the facts on which the guidance was based.

(h) MMS may make requests and replies under this section available to the public, subject to the confidentiality requirements under § 206.108.

**§ 206.108 Does MMS protect information I**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

provide?

Certain information you submit to MMS regarding valuation of oil, including transportation allowances, may be exempt from disclosure. To the extent applicable laws and regulations permit, MMS will keep confidential any data you submit that is privileged, confidential, or otherwise exempt from disclosure. All requests for information must be submitted under the Freedom of Information Act regulations of the Department of the Interior at 43 CFR part 2.

**§ 206.109 When may I take a transportation allowance in determining value?**

(a) Transportation allowances permitted when value is based on gross proceeds. MMS will allow a deduction for the reasonable, actual costs to transport oil from the lease to the point off the lease under §§ 206.110 or 206.111, as applicable. This paragraph applies when:

(1) You value oil under § 206.102 based on gross proceeds from a sale at a point off the lease, unit, or communitized area where the oil is produced, and

(2) The movement to the sales point is not gathering.

(b) Transportation allowances and other adjustments that apply when value is based on NYMEX prices or ANS spot prices. If you value oil using NYMEX prices or ANS spot prices under § 206.103, MMS will allow an adjustment for certain location and quality differentials and certain costs associated with transporting oil as provided under § 206.112.

(c) Limits on transportation allowances.

(1) Except as provided in paragraph (c)(2) of this section, your transportation allowance may not exceed 50 percent of the value of the oil as determined under § 206.102 or § 206.103 of this subpart. You may not use transportation costs incurred to move a particular volume of production to reduce royalties owed on production for which those costs were not incurred.

(2) You may ask MMS to approve a transportation allowance in excess of the limitation in paragraph (c)(1) of this section. You must demonstrate that the transportation costs incurred were reasonable, actual, and necessary. Your application for exception (using Form MMS-4393, Request to Exceed Regulatory Allowance Limitation) must contain all relevant and supporting documentation necessary for MMS to make a determination. You may never reduce the royalty value of any production to zero.

(d) Allocation of transportation costs. You must allocate transportation costs among all products produced and transported as provided in §§ 206.110 and 206.111. You must express transportation allowances for oil as dollars per barrel.

(e) Liability for additional payments. If MMS determines that you took an excessive transportation allowance, then you must pay any additional royalties due, plus interest under 30 CFR 218.54. You also could be entitled to a credit with interest under applicable rules if you understated your transportation allowance. If you take a deduction for transportation on Form MMS-2014 by improperly netting the allowance against the sales value of the oil instead of reporting the allowance as a separate entry, MMS may assess you an amount under § 206.116.

**§ 206.110 How do I determine a transportation allowance under an arm's-length transportation contract?**

(a) If you or your affiliate incur transportation costs under an arm's-length transportation contract, you may claim a transportation allowance for the reasonable, actual costs incurred as more fully explained in paragraph (b) of this section, except as provided in paragraphs (a)(1) and (a)(2) of this section and subject to the limitation in § 206.109(c). You must be able to demonstrate that your or your affiliate's contract is at arm's length. You do not need MMS approval before reporting a transportation allowance for costs incurred under an arm's-length transportation contract.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(b) You may deduct any of the following actual costs you (including your affiliates) incur for transporting oil. You may not use as a deduction any cost that duplicates all or part of any other cost that you use under this paragraph.

(1) The amount that you pay under your arm's-length transportation contract or tariff.

(2) Fees paid (either in volume or in value) for actual or theoretical line losses.

(3) Fees paid for administration of a quality bank.

(4) The cost of carrying on your books as inventory a volume of oil that the pipeline operator requires you to maintain, and that you do maintain, in the line as line fill. You must calculate this cost as follows:

(i) Multiply the volume that the pipeline requires you to maintain, and that you do maintain, in the pipeline by the value of that volume for the current month calculated under § 206.102 or § 206.103, as applicable; and

(ii) Multiply the value calculated under paragraph (b)(4)(i) of this section by the monthly rate of return, calculated by dividing the rate of return specified in § 206.111(i)(2) by 12.

(5) Fees paid to a terminal operator for loading and unloading of crude oil into or from a vessel, vehicle, pipeline, or other conveyance.

(6) Fees paid for short-term storage (30 days or less) incidental to transportation as required by a transporter.

(7) Fees paid to pump oil to another carrier's system or vehicles as required under a tariff.

(8) Transfer fees paid to a hub operator associated with physical movement of crude oil through the hub when you do not sell the oil at the hub. These fees do not include title transfer fees.

(9) Payments for a volumetric deduction to cover shrinkage when high-gravity petroleum (generally in excess of 51 degrees API) is mixed with lower-gravity crude oil for transportation.

(10) Costs of securing a letter of credit, or other surety, that the pipeline requires you as a shipper to maintain.

(c) You may not deduct any costs that are not actual costs of transporting oil, including but not limited to the following:

(1) Fees paid for long-term storage (more than 30 days).

(2) Administrative, handling, and accounting fees associated with terminalling.

(3) Title and terminal transfer fees.

(4) Fees paid to track and match receipts and deliveries at a market center or to avoid paying title transfer fees.

(5) Fees paid to brokers.

(6) Fees paid to a scheduling service provider.

(7) Internal costs, including salaries and related costs, rent/space costs, office equipment costs, legal fees, and other costs to schedule, nominate, and account for sale or movement of production.

(8) Gauging fees.

(d) If your arm's-length transportation contract includes more than one liquid product, and the transportation costs attributable to each product cannot be determined from the contract, then you must allocate the total transportation costs to each of the liquid products transported.

(1) Your allocation must use the same proportion as the ratio of the volume of each product (excluding waste products with no value) to the volume of all liquid products (excluding waste products with no value).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(2) You may not claim an allowance for the costs of transporting lease production that is not royalty-bearing.

(3) You may propose to MMS a cost allocation method on the basis of the values of the products transported. MMS will approve the method unless it is not consistent with the purposes of the regulations in this subpart.

(e) If your arm's-length transportation contract includes both gaseous and liquid products, and the transportation costs attributable to each product cannot be determined from the contract, then you must propose an allocation procedure to MMS.

(1) You may use your proposed procedure to calculate a transportation allowance until MMS accepts or rejects your cost allocation. If MMS rejects your cost allocation, you must amend your Form MMS-2014 for the months that you used the rejected method and pay any additional royalty and interest due.

(2) You must submit your initial proposal, including all available data, within 3 months after first claiming the allocated deductions on Form MMS-2014.

(f) If your payments for transportation under an arm's-length contract are not on a dollar-per-unit basis, you must convert whatever consideration is paid to a dollar-value equivalent.

(g) If your arm's-length sales contract includes a provision reducing the contract price by a transportation factor, do not separately report the transportation factor as a transportation allowance on Form MMS-2014.

(1) You may use the transportation factor in determining your gross proceeds for the sale of the product.

(2) You must obtain MMS approval before claiming a transportation factor in excess of 50 percent of the base price of the product.

**§ 206.111 How do I determine a transportation allowance if I do not have an arm's-length transportation contract or arm's-length tariff?**

(a) This section applies if you or your affiliate do not have an arm's-length transportation contract, including situations where you or your affiliate provide your own transportation services. Calculate your transportation allowance based on your or your affiliate's reasonable, actual costs for transportation during the reporting period using the procedures prescribed in this section.

(b) Your or your affiliate's actual costs include the following:

(1) Operating and maintenance expenses under paragraphs (d) and (e) of this section;

(2) Overhead under paragraph (f) of this section;

(3) Depreciation under paragraphs (g) and (h) of this section;

(4) A return on undepreciated capital investment under paragraph (i) of this section; and

(5) Once the transportation system has been depreciated below ten percent of total capital investment, a return on ten percent of total capital investment under paragraph (j) of this section.

(6) To the extent not included in costs identified in paragraphs (d) through (j) of this section, you may also deduct the following actual costs. You may not use any cost as a deduction that duplicates all or part of any other cost that you use under this section:

(i) Volumetric adjustments for actual (not theoretical) line losses.

(ii) The cost of carrying on your books as inventory a volume of oil that the pipeline operator requires you as a shipper to maintain, and that you do maintain, in the line as line fill. You must calculate this cost as follows:

(A) Multiply the volume that the pipeline

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.