provided that such loss is determined to have been unavoidable by BLM or MMS, as appropriate.

(2) Except as provided in paragraph (d)(1) of this section and 30 CFR 202.151(c), royalties are due on 100 percent of the volume determined in accordance with paragraphs (a) through (c) of this section. There can be no reduction in that determined volume for actual losses after the quantity basis has been determined or for theoretical losses that are claimed to have taken place. Royalties are due on 100 percent of the value of the unprocessed gas, residue gas, and/or gas plant products as provided in this subpart, less applicable allowances. There can be no deduction from the value of the unprocessed gas, residue gas, and/or gas plant products to compensate for actual losses after the quantity basis has been determined, or for theoretical losses that are claimed to have taken place.

**§ 206.155 Accounting for comparison.**

(a) Except as provided in paragraph (b) of this section, where the lessee (or a person to whom the lessee has transferred gas pursuant to a non-arm's-length contract or without a contract) processes the lessee's gas and after processing the gas the residue gas is not sold pursuant to an arm's-length contract, the value, for royalty purposes, shall be the greater of (1) the combined value, for royalty purposes, of the residue gas and gas plant products resulting from processing the gas determined pursuant to § 206.153 of this subpart, plus the value, for royalty purposes, of any condensate recovered downstream of the point of royalty settlement without resorting to processing determined pursuant to § 206.102 of this subpart; or (2) the value, for royalty purposes, of the gas prior to processing determined in accordance with § 206.152 of this subpart.

(b) The requirement for accounting for comparison contained in the terms of leases will govern as provided in Section 206.150(b) of this subpart. When accounting for comparison is required by the lease terms, such accounting for comparison shall be determined in accordance with paragraph (a) of this section.

**§ 206.156 Transportation allowances--general.**

(a) Where the value of gas has been determined pursuant to § 206.152 or § 206.153 of this subpart at a point (e.g., sales point or point of value determination) off the lease, MMS shall allow a deduction for the reasonable actual costs incurred by the lessee to transport unprocessed gas, residue gas, and gas plant products from a lease to a point off the lease including, if appropriate, transportation from the lease to a gas processing plant off the lease and from the plant to a point away from the plant.

(b) Transportation costs must be allocated among all products produced and transported as provided in § 206.157.

(c)(1) Except as provided in paragraph (c)(3) of this section, for unprocessed gas valued in accordance with § 206.152 of this subpart, the transportation allowance deduction on the basis of a selling arrangement shall not exceed 50 percent of the value of the unprocessed gas determined in accordance with § 206.152 of this subpart.

(2) Except as provided in paragraph (c)(3) of this section, for gas production valued in accordance with § 206.153 of this subpart the transportation allowance deduction on the basis of a selling arrangement shall not exceed 50 percent of the value of the residue gas or gas plant product determined in accordance with § 206.153 of this subpart. For purposes of this section, natural gas liquids shall be considered one product.

(3) Upon request of a lessee, MMS may approve a transportation allowance deduction in excess of the limitations prescribed by paragraphs (c)(1) and (c)(2) of this section. The lessee must demonstrate that the transportation costs incurred in excess of the limitations prescribed in paragraphs (c)(1) and (c)(2) of this section were reasonable, actual, and necessary. An application for exception (using Form MMS-4393, Request to Exceed Regulatory Allowance Limitation) shall contain all relevant and supporting documentation necessary for MMS to make a determination. Under no circumstances shall the value for royalty purposes under any selling arrangement

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

be reduced to zero.

(d) If, after a review and/or audit, MMS determines that a lessee has improperly determined a transportation allowance authorized by this subpart, then the lessee shall pay any additional royalties, plus interest, determined in accordance with 30 CFR 218.54, or shall be entitled to a credit, without interest. If the lessee takes a deduction for transportation on the Form MMS-2014 by improperly netting the allowance against the sales value of the unprocessed gas, residue gas, and gas plant products instead of reporting the allowance as a separate line item, he may be assessed an additional amount under 206.157(d).

**§ 206.157 Determination of transportation allowances.**

(a) Arm's-length transportation contracts.

(1)(i) For transportation costs incurred by a lessee under an arm's-length contract, the transportation allowance shall be the reasonable, actual costs incurred by the lessee for transporting the unprocessed gas, residue gas and/or gas plant products under that contract, except as provided in paragraphs (a)(1)(ii) and (a)(1)(iii) of this section, subject to monitoring, review, audit, and adjustment. The lessee shall have the burden of demonstrating that its contract is arm's-length. MMS' prior approval is not required before a lessee may deduct costs incurred under an arm's-length contract. Such allowances shall be subject to the provisions of paragraph (f) of this section. The lessee must claim a transportation allowance by reporting it as a separate line entry on the Form MMS-2014.

(ii) In conducting reviews and audits, MMS will examine whether or not the contract reflects more than the consideration actually transferred either directly or indirectly from the lessee to the transporter for the transportation. If the contract reflects more than the total consideration, then the MMS may require that the transportation allowance be determined in accordance with paragraph (b) of this section.

(iii) If the MMS determines that the consideration paid pursuant to an arm's-length transportation contract does not reflect the reasonable value of the transportation because of misconduct by or between the contracting parties, or because the lessee otherwise has breached its duty to the lessor to market the production for the mutual benefit of the lessee and the lessor, then MMS shall require that the transportation allowance be determined in accordance with paragraph (b) of this section. When MMS determines that the value of the transportation may be unreasonable, MMS will notify the lessee and give the lessee an opportunity to provide written information justifying the lessee's transportation costs.

(2)(i) If an arm's-length transportation contract includes more than one product in a gaseous phase and the transportation costs attributable to each product cannot be determined from the contract, the total transportation costs shall be allocated in a consistent and equitable manner to each of the products transported in the same proportion as the ratio of the volume of each product (excluding waste products which have no value) to the volume of all products in the gaseous phase (excluding waste products which have no value). Except as provided in this paragraph, no allowance may be taken for the costs of transporting lease production which is not royalty bearing without MMS approval.

(ii) Notwithstanding the requirements of paragraph (i), the lessee may propose to MMS a cost allocation method on the basis of the values of the products transported. MMS shall approve the method unless it determines that it is not consistent with the purposes of the regulations in this part.

(3) If an arm's-length transportation contract includes both gaseous and liquid products and the transportation costs attributable to each cannot be determined from the contract, the lessee shall propose an allocation procedure to MMS. The lessee may use the transportation allowance determined in accordance with its proposed allocation procedure until MMS issues its determination on the acceptability of the cost allocation. The lessee shall submit all relevant data to support its proposal. MMS shall then determine the gas transportation

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

allowance based upon the lessee's proposal and any additional information MMS deems necessary. The lessee must submit the allocation proposal within 3 months of claiming the allocated deduction on the Form MMS-2014.

(4) Where the lessee's payments for transportation under an arm's-length contract are not based on a dollar per unit, the lessee shall convert whatever consideration is paid to a dollar value equivalent for the purposes of this section.

(5) Where an arm's-length sales contract price or a posted price includes a provision whereby the listed price is reduced by a transportation factor, MMS will not consider the transportation factor to be a transportation allowance. The transportation factor may be used in determining the lessee's gross proceeds for the sale of the product. The transportation factor may not exceed 50 percent of the base price of the product without MMS approval.

(b) Non-arm's-length or no contract.

(1) If a lessee has a non-arm's-length transportation contract or has no contract, including those situations where the lessee performs transportation services for itself, the transportation allowance will be based upon the lessee's reasonable actual costs as provided in this paragraph. All transportation allowances deducted under a non-arm's-length or no contract situation are subject to monitoring, review, audit, and adjustment. The lessee must claim a transportation allowance by reporting it as a separate line entry on the Form MMS-2014. When necessary or appropriate, MMS may direct a lessee to modify its estimated or actual transportation allowance deduction.

(2) The transportation allowance for non-arm's-length or no-contract situations shall be based upon the lessee's actual costs for transportation during the reporting period, including operating and maintenance expenses, overhead, and either depreciation and a return on undepreciated capital investment in accordance with paragraph (b)(2)(iv)(A) of this section, or a cost equal to the initial depreciable investment in the transportation system multiplied by a rate of return in accordance with paragraph (b)(2)(iv)(B) of this section. Allowable capital costs are generally those costs for depreciable fixed assets (including costs of delivery and installation of capital equipment) which are an integral part of the transportation system.

(i) Allowable operating expenses include: Operations supervision and engineering; operations labor; fuel; utilities; materials; ad valorem property taxes; rent; supplies; and any other directly allocable and attributable operating expense which the lessee can document.

(ii) Allowable maintenance expenses include: Maintenance of the transportation system; maintenance of equipment; maintenance labor; and other directly allocable and attributable maintenance expenses which the lessee can document.

(iii) Overhead directly attributable and allocable to the operation and maintenance of the transportation system is an allowable expense. State and Federal income taxes and severance taxes and other fees, including royalties, are not allowable expenses.

(iv) A lessee may use either depreciation or a return on depreciable capital investment. After a lessee has elected to use either method for a transportation system, the lessee may not later elect to change to the other alternative without approval of the MMS.

(A) To compute depreciation, the lessee may elect to use either a straight-line depreciation method based on the life of equipment or on the life of the reserves which the transportation system services, or a unit of production method. After an election is made, the lessee may not change methods without MMS approval. A change in ownership of a transportation system shall not alter the depreciation schedule established by the original transporter/lessee for purposes of the allowance calculation. With or without a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

change in ownership, a transportation system shall be depreciated only once. Equipment shall not be depreciated below a reasonable salvage value.

(B) The MMS shall allow as a cost an amount equal to the allowable initial capital investment in the transportation system multiplied by the rate of return determined pursuant to paragraph (b)(2)(v) of this section. No allowance shall be provided for depreciation. This alternative shall apply only to transportation facilities first placed in service after March 1, 1988.

(v) The rate of return must be 1.3 times the industrial rate associated with Standard & Poor's BBB rating. The BBB rate must be the monthly average rate as published in Standard & Poor's Bond Guide for the first month for which the allowance is applicable. The rate must be redetermined at the beginning of each subsequent calendar year.

(3)(i) The deduction for transportation costs shall be determined on the basis of the lessee's cost of transporting each product through each individual transportation system. Where more than one product in a gaseous phase is transported, the allocation of costs to each of the products transported shall be made in a consistent and equitable manner in the same proportion as the ratio of the volume of each product (excluding waste products which have no value) to the volume of all products in the gaseous phase (excluding waste products which have no value). Except as provided in this paragraph, the lessee may not take an allowance for transporting a product which is not royalty bearing without MMS approval.

(ii) Notwithstanding the requirements of paragraph (b)(3)(i), the lessee may propose to the MMS a cost allocation method on the basis of the values of the products transported. MMS shall approve the method unless it determines that it is not consistent with the purposes of the regulations in this part.

(4) Where both gaseous and liquid products are transported through the same transportation system, the lessee shall propose a cost allocation procedure to MMS. The lessee may use the transportation allowance determined in accordance with its proposed allocation procedure until MMS issues its determination on the acceptability of the cost allocation. The lessee shall submit all relevant data to support its proposal. MMS shall then determine the transportation allowance based upon the lessee's proposal and any additional information MMS deems necessary. The lessee must submit the allocation proposal within 3 months of claiming the allocated deduction on the Form MMS-2014.

(5) You may apply for an exception from the requirement to compute actual costs under paragraphs (b)(1) through (b)(4) of this section.

(i) The MMS will grant the exception if:

(A) The transportation system has a tariff filed with the Federal Energy Regulatory Commission (FERC) or a state regulatory agency, that FERC or the state regulatory agency has permitted to become effective, and

(B) Third parties are paying prices, including discounted prices, under the tariff to transport gas on the system under arm's-length transportation contracts.

(ii) If MMS approves the exception, you must calculate your transportation allowance for each production month based on the lesser of the volume-weighted average of the rates paid by the third parties under arm's-length transportation contracts during that production month or the non-arm's-length payment by the lessee to the pipeline.

(iii) If during any production month there are no prices paid under the tariff by third parties to transport gas on the system under arm's-length transportation contracts, you may use the volume-weighted average of the rates paid by third parties under arm's-length transportation contracts in the most recent preceding production month in which the tariff remains in effect and third parties paid such rates, for up to five successive production months. You must use the non-arm's-length

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

payment by the lessee to the pipeline if it is less than the volume-weighted average of the rates paid by third parties under arm's-length contracts.

(c) Reporting requirements.

(1) Arm's-length contracts.

(i) You must use a separate entry on Form MMS-2014 to notify MMS of a transportation allowance.

(ii) The MMS may require you to submit arm's-length transportation contracts, production agreements, operating agreements, and related documents. Recordkeeping requirements are found at part 207 of this chapter.

(iii) You may not use a transportation allowance that was in effect before March 1, 1988. You must use the provisions of this subpart to determine your transportation allowance.

(2) Non-arm's-length or no contract.

(i) You must use a separate entry on Form MMS-2014 to notify MMS of a transportation allowance.

(ii) For new transportation facilities or arrangements, base your initial deduction on estimates of allowable gas transportation costs for the applicable period. Use the most recently available operations data for the transportation system or, if such data are not available, use estimates based on data for similar transportation systems. Paragraph (e) of this section will apply when you amend your report based on your actual costs.

(iii) The MMS may require you to submit all data used to calculate the allowance deduction. Recordkeeping requirements are found at part 207 of this chapter.

(iv) If you are authorized under paragraph (b)(5) of this section to use an exception to the requirement to calculate your actual transportation costs, you must follow the reporting requirements of paragraph (c)(1) of this section.

(v) You may not use a transportation allowance that was in effect before March 1, 1988. You must use the provisions of this subpart to determine your transportation allowance.

(d) Interest and assessments.

(1) If a lessee nets a transportation allowance against the royalty value on the Form MMS-2014, the lessee shall be assessed an amount of up to 10 percent of the allowance netted not to exceed $250 per lease selling arrangement per sales period.

(2) If a lessee deducts a transportation allowance on its Form MMS-2014 that exceeds 50 percent of the value of the gas transported without obtaining prior approval of MMS under § 206.156, the lessee shall pay interest on the excess allowance amount taken from the date such amount is taken to the date the lessee files an exception request with MMS.

(3) If a lessee erroneously reports a transportation allowance which results in an underpayment of royalties, interest shall be paid on the amount of that underpayment.

(4) Interest required to be paid by this section shall be determined in accordance with 30 CFR 218.54.

(e) Adjustments.

(1) If the actual transportation allowance is less than the amount the lessee has taken on Form MMS-2014 for each month during the allowance reporting period, the lessee shall be required to pay additional royalties due plus interest computed under 30 CFR 218.54 from the allowance reporting period when the lessee took the deduction to the date the lessee repays the difference to MMS. If the actual transportation allowance is greater than the amount the lessee has taken on Form MMS-2014 for each month during the allowance reporting period, the lessee shall be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

entitled to a credit without interest.

(2) For lessees transporting production from onshore Federal leases, the lessee must submit a corrected Form MMS-2014 to reflect actual costs, together with any payment, in accordance with instructions provided by MMS.

(3) For lessees transporting gas production from leases on the OCS, if the lessee's estimated transportation allowance exceeds the allowance based on actual costs, the lessee must submit a corrected Form MMS-2014 to reflect actual costs, together with its payment, in accordance with instructions provided by MMS. If the lessee's estimated transportation allowance is less than the allowance based on actual costs, the refund procedure will be specified by MMS.

(f) Allowable costs in determining transportation allowances. You may include, but are not limited to (subject to the requirements of paragraph (g) of this section), the following costs in determining the arm's-length transportation allowance under paragraph (a) of this section or the non-arm's-length transportation allowance under paragraph (b) of this section. You may not use any cost as a deduction that duplicates all or part of any other cost that you use under this paragraph.

(1) Firm demand charges paid to pipelines. You may deduct firm demand charges or capacity reservation fees paid to a pipeline, including charges or fees for unused firm capacity that you have not sold before you report your allowance. If you receive a payment from any party for release or sale of firm capacity after reporting a transportation allowance that included the cost of that unused firm capacity, or if you receive a payment or credit from the pipeline for penalty refunds, rate case refunds, or other reasons, you must reduce the firm demand charge claimed on the Form MMS-2014 by the amount of that payment. You must modify the Form MMS-2014 by the amount received or credited for the affected reporting period, and pay any resulting royalty and late payment interest due;

(2) Gas supply realignment (GSR) costs. The GSR costs result from a pipeline reforming or terminating supply contracts with producers to implement the restructuring requirements of FERC Orders in 18 CFR part 284;

(3) Commodity charges. The commodity charge allows the pipeline to recover the costs of providing service;

(4) Wheeling costs. Hub operators charge a wheeling cost for transporting gas from one pipeline to either the same or another pipeline through a market center or hub. A hub is a connected manifold of pipelines through which a series of incoming pipelines are interconnected to a series of outgoing pipelines;

(5) Gas Research Institute (GRI) fees. The GRI conducts research, development, and commercialization programs on natural gas related topics for the benefit of the U.S. gas industry and gas customers. GRI fees are allowable provided such fees are mandatory in FERC-approved tariffs;

(6) Annual Charge Adjustment (ACA) fees. FERC charges these fees to pipelines to pay for its operating expenses;

(7) Payments (either volumetric or in value) for actual or theoretical losses. However, theoretical losses are not deductible in non-arm's-length transportation arrangements unless the transportation allowance is based on arm's-length transportation rates charged under a FERC- or state regulatory-approved tariff under paragraph (b)(5) of this section. If you receive volumes or credit for line gain, you must reduce your transportation allowance accordingly and pay any resulting royalties and late payment interest due;

(8) Temporary storage services. This includes short duration storage services offered by market centers or hubs (commonly referred to as "parking" or "banking"), or other temporary storage services provided by pipeline transporters, whether actual or provided as a matter of accounting. Temporary storage is limited to 30 days or less; and

(9) Supplemental costs for compression, dehydration, and treatment of gas. MMS

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

allows these costs only if such services are required for transportation and exceed the services necessary to place production into marketable condition required under §§ 206.152(i) and 206.153(i) of this part.

(10) Costs of surety. You may deduct the costs of securing a letter of credit, or other surety, that the pipeline requires you as a shipper to maintain under an arm's-length transportation contract.

(g) Nonallowable costs in determining transportation allowances. Lessees may not include the following costs in determining the arm's-length transportation allowance under paragraph (a) of this section or the non-arm's-length transportation allowance under paragraph (b) of this section:

(1) Fees or costs incurred for storage. This includes storing production in a storage facility, whether on or off the lease, for more than 30 days;

(2) Aggregator/marketer fees. This includes fees you pay to another person (including your affiliates) to market your gas, including purchasing and reselling the gas, or finding or maintaining a market for the gas production;

(3) Penalties you incur as shipper. These penalties include, but are not limited to:

(i) Over-delivery cash-out penalties. This includes the difference between the price the pipeline pays you for over-delivered volumes outside the tolerances and the price you receive for over-delivered volumes within the tolerances;

(ii) Scheduling penalties. This includes penalties you incur for differences between daily volumes delivered into the pipeline and volumes scheduled or nominated at a receipt or delivery point;

(iii) Imbalance penalties. This includes penalties you incur (generally on a monthly basis) for differences between volumes delivered into the pipeline and volumes scheduled or nominated at a receipt or delivery point; and

(iv) Operational penalties. This includes fees you incur for violation of the pipeline's curtailment or operational orders issued to protect the operational integrity of the pipeline;

(4) Intra-hub transfer fees. These are fees you pay to hub operators for administrative services (e.g., title transfer tracking) necessary to account for the sale of gas within a hub;

(5) Fees paid to brokers. This includes fees paid to parties who arrange marketing or transportation, if such fees are separately identified from aggregator/marketer fees;

(6) Fees paid to scheduling service providers. This includes fees paid to parties who provide scheduling services, if such fees are separately identified from aggregator/marketer fees;

(7) Internal costs. This includes salaries and related costs, rent/space costs, office equipment costs, legal fees, and other costs to schedule, nominate, and account for sale or movement of production; and

(8) Other nonallowable costs. Any cost you incur for services you are required to provide at no cost to the lessor.

(h) Other transportation cost determinations. Use this section when calculating transportation costs to establish value using a netback procedure or any other procedure that requires deduction of transportation costs.

**§ 206.158 Processing allowances--general.**

(a) Where the value of gas is determined pursuant to § 206.153 of this subpart, a deduction shall be allowed for the reasonable actual costs of processing.

(b) Processing costs must be allocated among the gas plant products. A separate processing allowance must be determined for each gas plant product and processing plant relationship. Natural gas liquids (NGL's) shall be considered as one product.

(c)(1) Except as provided in paragraph (d)(2) of this

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

section, the processing allowance shall not be applied against the value of the residue gas. Where there is no residue gas MMS may designate an appropriate gas plant product against which no allowance may be applied.

(2) Except as provided in paragraph (c)(3) of this section, the processing allowance deduction on the basis of an individual product shall not exceed 66 2/3 percent of the value of each gas plant product determined in accordance with § 206.153 of this subpart (such value to be reduced first for any transportation allowances related to postprocessing transportation authorized by § 206.156 of this subpart).

(3) Upon request of a lessee, MMS may approve a processing allowance in excess of the limitation prescribed by paragraph (c)(2) of this section. The lessee must demonstrate that the processing costs incurred in excess of the limitation prescribed in paragraph (c)(2) of this section were reasonable, actual, and necessary. An application for exception (using Form MMS-4393, Request to Exceed Regulatory Allowance Limitation) shall contain all relevant and supporting documentation for MMS to make a determination. Under no circumstances shall the value for royalty purposes of any gas plant product be reduced to zero.

(d)(1) Except as provided in paragraph (d)(2) of this section, no processing cost deduction shall be allowed for the costs of placing lease products in marketable condition, including dehydration, separation, compression, or storage, even if those functions are performed off the lease or at a processing plant. Where gas is processed for the removal of acid gases, commonly referred to as "sweetening," no processing cost deduction shall be allowed for such costs unless the acid gases removed are further processed into a gas plant product. In such event, the lessee shall be eligible for a processing allowance as determined in accordance with this subpart. However, MMS will not grant any processing allowance for processing lease production which is not royalty bearing.

(2)(i) If the lessee incurs extraordinary costs for processing gas production from a gas production operation, it may apply to MMS for an allowance for those costs which shall be in addition to any other processing allowance to which the lessee is entitled pursuant to this section. Such an allowance may be granted only if the lessee can demonstrate that the costs are, by reference to standard industry conditions and practice, extraordinary, unusual, or unconventional.

(ii) Prior MMS approval to continue an extraordinary processing cost allowance is not required. However, to retain the authority to deduct the allowance the lessee must report the deduction to MMS in a form and manner prescribed by MMS.

(e) If MMS determines that a lessee has improperly determined a processing allowance authorized by this subpart, then the lessee shall pay any additional royalties, plus interest determined in accordance with 30 CFR 218.54, or shall be entitled to a credit, without interest. If the lessee takes a deduction for processing on the Form MMS-2014 by improperly netting the allowance against the sales value of the gas plant products instead of reporting the allowance as a separate line item, he may be assessed an additional amount under 206.159(d).

**§ 206.159 Determination of processing allowances.**

(a) Arm's-length processing contracts.

(1)(i) For processing costs incurred by a lessee under an arm's-length contract, the processing allowance shall be the reasonable actual costs incurred by the lessee for processing the gas under that contract, except as provided in paragraphs (a)(1)(ii) and (a)(1)(iii) of this section, subject to monitoring, review, audit, and adjustment. The lessee shall have the burden of demonstrating that its contract is arm's-length. MMS' prior approval is not required before a lessee may deduct costs incurred under an arm's-length contract. The lessee must claim a processing allowance by reporting it as a separate line entry on the Form MMS-2014.

(ii) In conducting reviews and audits, MMS will examine whether the contract reflects more

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

than the consideration actually transferred either directly or indirectly from the lessee to the processor for the processing. If the contract reflects more than the total consideration, then the MMS may require that the processing allowance be determined in accordance with paragraph (b) of this section.

(iii) If MMS determines that the consideration paid pursuant to an arm's-length processing contract does not reflect the reasonable value of the processing because of misconduct by or between the contracting parties, or because the lessee otherwise has breached its duty to the lessor to market the production for the mutual benefit of the lessee and lessor, then MMS shall require that the processing allowance be determined in accordance with paragraph (b) of this section. When MMS determines that the value of the processing may be unreasonable, MMS will notify the lessee and give the lessee an opportunity to provide written information justifying the lessee's processing costs.

(2) If an arm's-length processing contract includes more than one gas plant product and the processing costs attributable to each product can be determined from the contract, then the processing costs for each gas plant product shall be determined in accordance with the contract. No allowance may be taken for the costs of processing lease production which is not royalty-bearing.

(3) If an arm's-length processing contract includes more than one gas plant product and the processing costs attributable to each product cannot be determined from the contract, the lessee shall propose an allocation procedure to MMS. The lessee may use its proposed allocation procedure until MMS issues its determination. The lessee shall submit all relevant data to support its proposal. MMS shall then determine the processing allowance based upon the lessee's proposal and any additional information MMS deems necessary. No processing allowance will be granted for the costs of processing lease production which is not royalty bearing. The lessee must submit the allocation proposal within 3 months of claiming the allocated deduction on Form MMS-2014.

(4) Where the lessee's payments for processing under an arm's-length contract are not based on a dollar per unit basis, the lessee shall convert whatever consideration is paid to a dollar value equivalent for the purposes of this section.

(b) Non-arm's-length or no contract.

(1) If a lessee has a non-arm's-length processing contract or has no contract, including those situations where the lessee performs processing for itself, the processing allowance will be based upon the lessee's reasonable actual costs as provided in this paragraph. All processing allowances deducted under a non-arm's-length or no-contract situation are subject to monitoring, review, audit, and adjustment. The lessee must claim a processing allowance by reflecting it as a separate line entry on the Form MMS-2014. When necessary or appropriate, MMS may direct a lessee to modify its estimated or actual processing allowance.

(2) The processing allowance for non-arm's-length or no-contract situations shall be based upon the lessee's actual costs for processing during the reporting period, including operating and maintenance expenses, overhead, and either depreciation and a return on undepreciated capital investment in accordance with paragraph (b)(2)(iv)(A) of this section, or a cost equal to the initial depreciable investment in the processing plant multiplied by a rate of return in accordance with paragraph (b)(2)(iv)(B) of this section. Allowable capital costs are generally those costs for depreciable fixed assets (including costs of delivery and installation of capital equipment) which are an integral part of the processing plant.

(i) Allowable operating expenses include: Operations supervision and engineering; operations labor; fuel; utilities; materials; ad valorem property taxes; rent; supplies; and any other directly allocable and attributable operating expense which the lessee can document.

(ii) Allowable maintenance expenses include:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

maintenance of the processing plant; maintenance of equipment; maintenance labor; and other directly allocable and attributable maintenance expenses which the lessee can document.

(iii) Overhead directly attributable and allocable to the operation and maintenance of the processing plant is an allowable expense. State and Federal income taxes and severance taxes, including royalties, are not allowable expenses.

(iv) A lessee may use either depreciation or a return on depreciable capital investment. When a lessee has elected to use either method for a processing plant, the lessee may not later elect to change to the other alternative without approval of the MMS.

(A) To compute depreciation, the lessee may elect to use either a straight-line depreciation method based on the life of equipment or on the life of the reserves which the processing plant services, or a unit-of-production method. After an election is made, the lessee may not change methods without MMS approval. A change in ownership of a processing plant shall not alter the depreciation schedule established by the original processor/lessee for purposes of the allowance calculation. With or without a change in ownership, a processing plant shall be depreciated only once. Equipment shall not be depreciated below a reasonable salvage value.

(B) The MMS shall allow as a cost an amount equal to the allowable initial capital investment in the processing plant multiplied by the rate of return determined pursuant to paragraph (b)(2)(v) of this section. No allowance shall be provided for depreciation. This alternative shall apply only to plants first placed in service after March 1, 1988.

(v) The rate of return must be the industrial rate associated with Standard and Poor's BBB rating. The rate of return must be the monthly average rate as published in Standard and Poor's Bond Guide for the first month for which the allowance is applicable. The rate must be redetermined at the beginning of each subsequent calendar year.

(3) The processing allowance for each gas plant product shall be determined based on the lessee's reasonable and actual cost of processing the gas. Allocation of costs to each gas plant product shall be based upon generally accepted accounting principles. The lessee may not take an allowance for the costs of processing lease production which is not royalty bearing.

(4) A lessee may apply to MMS for an exception from the requirement that it compute actual costs in accordance with paragraphs (b)(1) through (b)(3) of this section. The MMS may grant the exception only if: (i) The lessee has arm's-length contracts for processing other gas production at the same processing plant; and (ii) at least 50 percent of the gas processed annually at the plant is processed pursuant to arm's-length processing contracts; if the MMS grants the exception, the lessee shall use as its processing allowance the volume weighted average prices charged other persons pursuant to arm's-length contracts for processing at the same plant.

(c) Reporting requirements

(1) Arm's-length contracts.

(i) The lessee must notify MMS of an allowance based on incurred costs by using a separate line entry on the Form MMS-2014.

(ii) The MMS may require that a lessee submit arm's-length processing contracts and related documents. Documents shall be submitted within a reasonable time, as determined by MMS.

(2) Non-arm's-length or no contract.

(i) The lessee must notify MMS of an allowance based on the incurred costs by using a separate line entry on the Form MMS-2014.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(ii) For new processing plants, the lessee's initial deduction shall include estimates of the allowable gas processing costs for the applicable period. Cost estimates shall be based upon the most recently available operations data for the plant or, if such data are not available, the lessee shall use estimates based upon industry data for similar gas processing plants.

(iii) Upon request by MMS, the lessee shall submit all data used to prepare the allowance deduction. The data shall be provided within a reasonable period of time, as determined by MMS.

(iv) If the lessee is authorized to use the volume weighted average prices charged other persons as its processing allowance in accordance with paragraph (b)(4) of this section, it shall follow the reporting requirements of paragraph (c)(1) of this section.

(d) Interest and assessments.

(1) If a lessee nets a processing allowance against the royalty value on the Form MMS-2014, the lessee shall be assessed an amount of up to 10 percent of the allowance netted not to exceed $250 per lease selling arrangement per sales period.

(2) If a lessee deducts a processing allowance on its Form MMS-2014 that exceeds 66 2/3 percent of the value of the gas processed without obtaining prior approval of MMS under Section 206.158, the lessee shall pay interest on the excess allowance amount taken from the date such amount is taken to the date the lessee files an exception request with MMS.

(3) If a lessee erroneously reports a processing allowance which results in an underpayment of royalties, interest shall be paid on the amount of that underpayment.

(4) Interest required to be paid by this section shall be determined in accordance with 30 CFR 218.54.

(e) Adjustments.

(1) If the actual processing allowance is less than the amount the lessee has taken on Form MMS-2014 for each month during the allowance reporting period, the lessee shall pay additional royalties due plus interest computed under 30 CFR 218.54 from the allowance reporting period when the lessee took the deduction to the date the lessee repays the difference to MMS. If the actual processing allowance is greater than the amount the lessee has taken on Form MMS-2014 for each month during the allowance reporting period, the lessee shall be entitled to a credit without interest.

(2) For lessees processing production from onshore Federal leases, the lessee must submit a corrected Form MMS-2014 to reflect actual costs, together with any payment, in accordance with instructions provided by MMS.

(3) For lessees processing gas production from leases on the OCS, if the lessee's estimated processing allowance exceeds the allowance based on actual costs, the lessee must submit a corrected Form MMS-2014 to reflect actual costs, together with its payment, in accordance with instructions provided by MMS. If the lessee's estimated costs were less than the actual costs, the refund procedure will be specified by MMS.

(f) Other processing cost determinations. The provisions of this section shall apply to determine processing costs when establishing value using a net back valuation procedure or any other procedure that requires deduction of processing costs.

**§ 206.160 Operating allowances.**

Notwithstanding any other provisions in these regulations, an operating allowance may be used for the purpose of computing payment obligations when specified in the notice of sale and the lease. The allowance amount or formula shall be specified in the notice of sale and in the lease agreement.

**Subpart E. Indian Gas (Refs & Annos)**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

§ 206.170 What does this subpart contain?

This subpart contains royalty valuation provisions applicable to Indian lessees.

(a) This subpart applies to all gas production from Indian (tribal and allotted) oil and gas leases (except leases on the Osage Indian Reservation). The purpose of this subpart is to establish the value of production for royalty purposes consistent with the mineral leasing laws, other applicable laws, and lease terms. This subpart does not apply to Federal leases.

(b) If the specific provisions of any Federal statute, treaty, negotiated agreement, settlement agreement resulting from any administrative or judicial proceeding, or Indian oil and gas lease are inconsistent with any regulation in this subpart, then the Federal statute, treaty, negotiated agreement, settlement agreement, or lease will govern to the extent of that inconsistency.

(c) You may calculate the value of production for royalty purposes under methods other than those the regulations in this title require, but only if you, the tribal lessor, and MMS jointly agree to the valuation methodology. For leases on Indian allotted lands, you and MMS must agree to the valuation methodology.

(d) All royalty payments you make to MMS are subject to monitoring, review, audit, and adjustment.

(e) The regulations in this subpart are intended to ensure that the trust responsibilities of the United States with respect to the administration of Indian oil and gas leases are discharged in accordance with the requirements of the governing mineral leasing laws, treaties, and lease terms.

§ 206.171 What definitions apply to this subpart?

The following definitions apply to this subpart and to subpart J of part 202 of this title:

Accounting for comparison means the same as dual accounting.

Active spot market means a market where one or more MMS-acceptable publications publish bidweek prices (or if bidweek prices are not available, first of the month prices) for at least one index-pricing point in the index zone.

Allowance means a deduction in determining value for royalty purposes. Processing allowance means an allowance for the reasonable, actual costs of processing gas determined under this subpart. Transportation allowance means an allowance for the reasonable, actual cost of transportation determined under this subpart.

Approved Federal Agreement (AFA) means a unit or communitization agreement approved under departmental regulations.

Area means a geographic region at least as large as the defined limits of an oil or gas field, in which oil or gas lease products have similar quality, economic, or legal characteristics. An area may be all lands within the boundaries of an Indian reservation.

Arm's-length contract means a contract or agreement that has been arrived at in the marketplace between independent, nonaffiliated persons with opposing economic interests regarding that contract. For purposes of this subpart, two persons are affiliated if one person controls, is controlled by, or is under common control with another person. The following percentages (based on the instruments of ownership of the voting securities of an entity, or based on other forms of ownership) determine if persons are affiliated:

(1) Ownership in excess of 50 percent constitutes control.

(2) Ownership of 10 through 50 percent creates a presumption of control.

(3) Ownership of less than 10 percent creates a presumption of noncontrol which MMS may rebut if it demonstrates actual or legal control, including the existence of interlocking directorates. Notwithstanding any other provisions of this subpart, contracts between relatives, either by blood or by marriage, are not arm's-length contracts. MMS may require the lessee to certify the percentage of ownership or control of the entity. To be considered arm's-length for any production month, a contract must meet the requirements of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.