for interest computed pursuant to 30 CFR 218.202. If the lessee is entitled to a credit, MMS will provide instructions for the taking of that credit.

(f) The lessee may request a value determination from MMS. In that event, the lessee shall propose to MMS a value determination method, and may use that method in determining value for royalty purposes until MMS issues its decision. The lessee shall submit all available data relevant to its proposal. MMS shall expeditiously determine the value based upon the lessee's proposal and any additional information MMS deems necessary. That determination shall remain effective for the period stated therein. After MMS issues its determination, the lessee shall make the adjustments in accordance with paragraph (e) of this section.

(g) Notwithstanding any other provisions of this section, under no circumstances shall the value for royalty purposes be less than the gross proceeds accruing to the lessee for the disposition of produced coal less applicable provisions of paragraph (b)(5) of this section and less applicable allowances determined pursuant to §§ 206.457 through 206.461 and § 206.464 of this subpart.

(h) The lessee is required to place coal in marketable condition at no cost to the Indian lessor. Where the value established pursuant to this section is determined by a lessee's gross proceeds, that value shall be increased to the extent that the gross proceeds has been reduced because the purchaser, or any other person, is providing certain services, the cost of which ordinarily is the responsibility of the lessee to place the coal in marketable condition.

(i) Value shall be based on the highest price a prudent lessee can receive through legally enforceable claims under its contract. Absent contract revision or amendment, if the lessee fails to take proper or timely action to receive prices or benefits to which it is entitled, it must pay royalty at a value based upon that obtainable price or benefit. Contract revisions or amendments shall be in writing and signed by all parties to an arm's-length contract, and may be retroactively applied to value for royalty purposes for a period not to exceed two years, unless MMS approves a longer period. If the lessee makes timely application for a price increase allowed under its contract but the purchaser refuses, and the lessee takes reasonable measures, which are documented, to force purchaser compliance, the lessee will owe no additional royalties unless or until monies or consideration resulting from the price increase are received. This paragraph shall not be construed to permit a lessee to avoid its royalty payment obligation in situations where a purchaser fails to pay, in whole or in part or timely, for a quantity of coal.

(j) Notwithstanding any provision in these regulations to the contrary, no review, reconciliation, monitoring, or other like process that results in a redetermination by MMS of value under this section shall be considered final or binding as against the Indian Tribes or allottees until the audit period is formally closed.

(k) Certain information submitted to MMS to support valuation proposals, including transportation, coal washing, or other allowances pursuant to §§ 206.457 through 206.461 and § 206.464 of this subpart, is exempted from disclosure by the Freedom of Information Act, 5 U.S.C. 522. Any data specified by the Act to be privileged, confidential, or otherwise exempt shall be maintained in a confidential manner in accordance with applicable law and regulations. All requests for information about determinations made under this Part are to be submitted in accordance with the Freedom of Information Act regulation of the Department of the Interior, 43 CFR part 2. Nothing in this section is intended to limit or diminish in any manner whatsoever the right of an Indian lessor to obtain any and all information as such lessor may be lawfully entitled from MMS or such lessor's lessee directly under the terms of the lease or applicable law.

**§ 206.457 Washing allowances--general.**

(a) For ad valorem leases subject to § 206.456 of this subpart, MMS shall, as authorized by this section, allow a deduction in determining value for royalty purposes for the reasonable, actual costs incurred to wash coal, unless the value determined pursuant to § 206.456 of this subpart was based upon like-quality unwashed coal. Under no circumstances will the authorized washing allowance and the transportation allowance reduce the value for royalty purposes to zero.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(b) If MMS determines that a lessee has improperly determined a washing allowance authorized by this section, then the lessee shall be liable for any additional royalties, plus interest determined in accordance with 30 CFR 218.202, or shall be entitled to a credit, without interest.

(c) Lessees shall not disproportionately allocate washing costs to Indian leases.

(d) No cost normally associated with mining operations and which are necessary for placing coal in marketable condition shall be allowed as a cost of washing.

(e) Coal washing costs shall only be recognized as allowances when the washed coal is sold and royalties are reported and paid.

**§ 206.458 Determination of washing allowances.**

(a) Arm's-length contracts.

(1) For washing costs incurred by a lessee pursuant to an arm's-length contract, the washing allowance shall be the reasonable actual costs incurred by the lessee for washing the coal under that contract, subject to monitoring, review, audit, and possible future adjustment. MMS' prior approval is not required before a lessee may deduct costs incurred under an arm's-length contract. However, before any deduction may be taken, the lessee must submit a completed page one of Form MMS-4292, Coal Washing Allowance Report, in accordance with paragraph (c)(1) of this section. A washing allowance may be claimed retroactively for a period of not more than 3 months prior to the first day of the month that Form MMS-4292 is filed with MMS, unless MMS approves a longer period upon a showing of good cause by the lessee.

(2) In conducting reviews and audits, MMS will examine whether the contract reflects more than the consideration actually transferred either directly or indirectly from the lessee to the washer for the washing. If the contract reflects more than the total consideration paid, then MMS may require that the washing allowance be determined in accordance with paragraph (b) of this section.

(3) If MMS determines that the consideration paid pursuant to an arm's-length washing contract does not reflect the reasonable value of the washing because of misconduct by or between the contracting parties, or because the lessee otherwise has breached its duty to the lessor to market the production for the mutual benefit of the lessee and the lessor, then MMS shall require that the washing allowance be determined in accordance with paragraph (b) of this section. When MMS determines that the value of the washing may be unreasonable, MMS will notify the lessee and give the lessee an opportunity to provide written information justifying the lessee's washing costs.

(4) Where the lessee's payments for washing under an arm's-length contract are not based on a dollar-per-unit basis, the lessee shall convert whatever consideration is paid to a dollar value equivalent. Washing allowances shall be expressed as a cost per ton of coal washed.

(b) Non-arm's-length or no contract.

(1) If a lessee has a non-arm's-length contract or has no contract, including those situations where the lessee performs washing for itself, the washing allowance will be based upon the lessee's reasonable actual costs. All washing allowances deducted under a non-arm's-length or no contract situation are subject to monitoring, review, audit, and possible future adjustment. Prior MMS approval of washing allowances is not required for non-arm's-length or no contract situations. However, before any estimated or actual deduction may be taken, the lessee must submit a completed Form MMS-4292 in accordance with paragraph (c)(2) of this section. A washing allowance may be claimed retroactively for a period of not more than 3 months prior to the first day of the month that Form MMS-4292 is filed with MMS, unless MMS approves a longer period upon a showing of good cause by the lessee. MMS will monitor the allowance deduction to ensure that deductions are reasonable and allowable. When necessary or appropriate, MMS may direct a lessee to modify its actual

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

washing allowance.

(2) The washing allowance for non-arm's-length or no contract situations shall be based upon the lessee's actual costs for washing during the reported period, including operating and maintenance expenses, overhead, and either depreciation and a return on undepreciated capital investment in accordance with paragraph (b)(2)(iv)(A) of this section, or a cost equal to the depreciable investment in the wash plant multiplied by the rate of return in accordance with paragraph (b)(2)(iv)(B) of this section. Allowable capital costs are generally those for depreciable fixed assets (including costs of delivery and installation of capital equipment) which are an integral part of the wash plant.

(i) Allowable operating expenses include: Operations supervision and engineering; operations labor; fuel; utilities; materials; ad valorem property taxes; rent; supplies; and any other directly allocable and attributable operating expense which the lessee can document.

(ii) Allowable maintenance expenses include: Maintenance of the wash plant; maintenance of equipment; maintenance labor; and other directly allocable and attributable maintenance expenses which the lessee can document.

(iii) Overhead attributable and allocable to the operation and maintenance of the wash plant is an allowable expense. State and Federal income taxes and severance taxes, including royalties, are not allowable expenses.

(iv) A lessee may use either paragraph (b)(2)(iv)(A) or (b)(2)(iv) (B) of this section. After a lessee has elected to use either method for a wash plant, the lessee may not later elect to change to the other alternative without approval of MMS.

(A) To compute depreciation, the lessee may elect to use either a straight-line depreciation method based on the life of equipment or on the life of the reserves which the wash plant services, whichever is appropriate, or a unit of production method. After an election is made, the lessee may not change methods without MMS approval. A change in ownership of a wash plant shall not alter the depreciation schedule established by the original operator/lessee for purposes of the allowance calculation. With or without a change in ownership, a wash plant shall be depreciated only once. Equipment shall not be depreciated below a reasonable salvage value.

(B) MMS shall allow as a cost an amount equal to the allowable capital investment in the wash plant multiplied by the rate of return determined pursuant to paragraph (b)(2)(v) of this section. No allowance shall be provided for depreciation. This alternative shall apply only to plants first placed in service or acquired after March 1, 1989.

(v) The rate of return shall be the industrial rate associated with Standard and Poor's BBB rating. The rate of return shall be the monthly average rate as published in Standard and Poor's Bond Guide for the first month of the reporting period for which the allowance is applicable and shall be effective during the reporting period. The rate shall be redetermined at the beginning of each subsequent washing allowance reporting period (which is determined pursuant to paragraph (c)(2) of this section).

(3) The washing allowance for coal shall be determined based on the lessee's reasonable and actual cost of washing the coal. The lessee may not take an allowance for the costs of washing lease production that is not royalty bearing.

(c) Reporting requirements.

(1) Arm's-length contracts.

(i) With the exception of those washing allowances specified in paragraphs (c)(1)(v) and (c)(1)(vi) of this section, the lessee shall submit page one of the initial Form MMS-4292

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

prior to, or at the same time, as the washing allowance determined pursuant to an arm's-length contract is reported on Form MMS-4430, Solid Minerals Production and Royalty Report. A Form MMS-4292 received by the end of the month that the Form MMS-4430 is due shall be considered to be received timely.

(ii) The initial Form MMS-4292 shall be effective for a reporting period beginning the month that the lessee is first authorized to deduct a washing allowance and shall continue until the end of the calendar year, or until the applicable contract or rate terminates or is modified or amended, whichever is earlier.

(iii) After the initial reporting period and for succeeding reporting periods, lessees must submit page one of Form MMS-4292 within 3 months after the end of the calendar year, or after the applicable contract or rate terminates or is modified or amended, whichever is earlier, unless MMS approves a longer period (during which period the lessee shall continue to use the allowance from the previous reporting period).

(iv) MMS may require that a lessee submit arm's-length washing contracts and related documents. Documents shall be submitted within a reasonable time, as determined by MMS.

(v) Washing allowances which are based on arm's-length contracts and which are in effect at the time these regulations become effective will be allowed to continue until such allowances terminate. For the purposes of this section, only those allowances that have been approved by MMS in writing shall qualify as being in effect at the time these regulations become effective.

(vi) MMS may establish, in appropriate circumstances, reporting requirements that are different from the requirements of this section.

(2) Non-arm's-length or no contract.

(i) With the exception of those washing allowances specified in paragraphs (c)(2)(v) and (c)(2)(vii) of this section, the lessee shall submit an initial Form MMS-4292 prior to, or at the same time as, the washing allowance determined pursuant to a non-arm's-length contract or no contract situation is reported on Form MMS-4430, Solid Minerals Production and Royalty Report. A Form MMS-4292 received by the end of the month that the Form MMS-4430 is due shall be considered to be timely received. The initial reporting may be based on estimated costs.

(ii) The initial Form MMS-4292 shall be effective for a reporting period beginning the month that the lessee first is authorized to deduct a washing allowance and shall continue until the end of the calendar year, or until the washing under the non-arm's-length contract or the no contract situation terminates, whichever is earlier.

(iii) For calendar-year reporting periods succeeding the initial reporting period, the lessee shall submit a completed Form MMS-4292 containing the actual costs for the previous reporting period. If coal washing is continuing, the lessee shall include on Form MMS-4292 its estimated costs for the next calendar year. The estimated coal washing allowance shall be based on the actual costs for the previous period plus or minus any adjustments which are based on the lessee's knowledge of decreases or increases which will affect the allowance. Form MMS-4292 must be received by MMS within 3 months after the end of the previous reporting period, unless MMS approves a longer period (during which period the lessee shall continue to use the allowance from the previous reporting period).

(iv) For new wash plants, the lessee's initial Form MMS-4292 shall include estimates of the allowable coal washing costs for the applicable period. Cost estimates shall be based upon the most recently available operations data for the plant, or if such data are not available, the lessee shall use estimates based upon industry data for similar coal wash plants.

(v) Washing allowances based on non-arm's-length or no contract situations

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

which are in effect at the time these regulations become effective will be allowed to continue until such allowances terminate. For the purposes of this section, only those allowances that have been approved by MMS in writing shall qualify as being in effect at the time these regulations become effective.

(vi) Upon request by MMS, the lessee shall submit all data used by the lessee to prepare its Forms MMS-4292. The data shall be provided within a reasonable period of time, as determined by MMS.

(vii) MMS may establish, in appropriate circumstances, reporting requirements which are different from the requirements of this section.

(3) MMS may establish coal washing allowance reporting dates for individual leases different from those specified in this subpart in order to provide more effective administration. Lessees will be notified of any change in their reporting period.

(4) Washing allowances must be reported as a separate line on the Form MMS-4430, unless MMS approves a different reporting procedure.

(d) Interest assessments for incorrect or late reports and failure to report.

(1) If a lessee deducts a washing allowance on its Form MMS-4430 without complying with the requirements of this section, the lessee shall be liable for interest on the amount of such deduction until the requirements of this section are complied with. The lessee also shall repay the amount of any allowance which is disallowed by this section.

(2) If a lessee erroneously reports a washing allowance which results in an underpayment of royalties, interest shall be paid on the amount of that underpayment.

(3) Interest required to be paid by this section shall be determined in accordance with 30 CFR 218.202.

(e) Adjustments.

(1) If the actual coal washing allowance is less than the amount the lessee has taken on Form MMS-4430 for each month during the allowance form reporting period, the lessee shall be required to pay additional royalties due plus interest computed pursuant to 30 CFR 218.202, retroactive to the first month the lessee is authorized to deduct a washing allowance. If the actual washing allowance is greater than the amount the lessee has estimated and taken during the reporting period, the lessee shall be entitled to a credit, without interest.

(2) The lessee must submit a corrected Form MMS-4430 to reflect actual costs, together with any payment, in accordance with instructions provided by MMS.

(f) Other washing cost determinations. The provisions of this section shall apply to determine washing costs when establishing value using a net-back valuation procedure or any other procedure that requires deduction of washing costs.

**§ 206.459 Allocation of washed coal.**

(a) When coal is subjected to washing, the washed coal must be allocated to the leases from which it was extracted.

(b) When the net output of coal from a washing plant is derived from coal obtained from only one lease, the quantity of washed coal allocable to the lease will be based on the net output of the washing plant.

(c) When the net output of coal from a washing plant is derived from coal obtained from more than one lease, unless determined otherwise by BLM, the quantity of net output of washed coal allocable to each lease will be based on the ratio of measured quantities of coal delivered to the washing plant and washed from each lease compared to the total measured quantities of coal delivered to the washing plant and washed.

**§ 206.460 Transportation allowances--general.**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(a) For ad valorem leases subject to § 206.456 of this subpart, where the value for royalty purposes has been determined at a point remote from the lease or mine, MMS shall, as authorized by this section, allow a deduction in determining value for royalty purposes for the reasonable, actual costs incurred to:

(1) Transport the coal from an Indian lease to a sales point which is remote from both the lease and mine; or

(2) Transport the coal from an Indian lease to a wash plant when that plant is remote from both the lease and mine and, if applicable, from the wash plant to a remote sales point. In-mine transportation costs shall not be included in the transportation allowance.

(b) Under no circumstances will the authorized washing allowance and the transportation allowance reduce the value for royalty purposes to zero.

(c)(1) When coal transported from a mine to a wash plant is eligible for a transportation allowance in accordance with this section, the lessee is not required to allocate transportation costs between the quantity of clean coal output and the rejected waste material. The transportation allowance shall be authorized for the total production which is transported. Transportation allowances shall be expressed as a cost per ton of cleaned coal transported.

(2) For coal that is not washed at a wash plant, the transportation allowance shall be authorized for the total production which is transported. Transportation allowances shall be expressed as a cost per ton of coal transported.

(3) Transportation costs shall only be recognized as allowances when the transported coal is sold and royalties are reported and paid.

(d) If, after a review and/or audit, MMS determines that a lessee has improperly determined a transportation allowance authorized by this section, then the lessee shall pay any additional royalties, plus interest, determined in accordance with 30 CFR 218.202, or shall be entitled to a credit, without interest.

(e) Lessees shall not disproportionately allocate transportation costs to Indian leases.

**§ 206.461 Determination of transportation allowances.**

(a) Arm's-length contracts.

(1) For transportation costs incurred by a lessee pursuant to an arm's-length contract, the transportation allowance shall be the reasonable, actual costs incurred by the lessee for transporting the coal under that contract, subject to monitoring, review, audit, and possible future adjustment. MMS' prior approval is not required before a lessee may deduct costs incurred under an arm's-length contract. However, before any deduction may be taken, the lessee must submit a completed page one of Form MMS-4293, Coal Transportation Allowance Report, in accordance with paragraph (c)(1) of this section. A transportation allowance may be claimed retroactively for a period of not more than 3 months prior to the first day of the month that Form MMS-4293 is filed with MMS, unless MMS approves a longer period upon a showing of good cause by the lessee.

(2) In conducting reviews and audits, MMS will examine whether the contract reflects more than the consideration actually transferred either directly or indirectly from the lessee to the transporter for the transportation. If the contract reflects more than the total consideration paid, then MMS may require that the transportation allowance be determined in accordance with paragraph (b) of this section.

(3) If MMS determines that the consideration paid pursuant to an arm's-length transportation contract does not reflect the reasonable value of the transportation because of misconduct by or between the contracting parties, or because the lessee otherwise has breached its duty to the lessor to market the production for the mutual benefit of the lessee and the lessor, then MMS shall require that the transportation allowance be determined in accordance with paragraph (b) of this section. When MMS determines that the value of the transportation may be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

unreasonable, MMS will notify the lessee and give the lessee an opportunity to provide written information justifying the lessee's transportation costs.

(4) Where the lessee's payments for transportation under an arm's-length contract are not based on a dollar-per-unit basis, the lessee shall convert whatever consideration is paid to a dollar value equivalent for the purposes of this section.

(b) Non-arm's-length or no contract.

(1) If a lessee has a non-arm's-length contract or has no contract, including those situations where the lessee performs transportation services for itself, the transportation allowance will be based upon the lessee's reasonable actual costs. All transportation allowances deducted under a non-arm's-length or no contract situation are subject to monitoring, review, audit, and possible future adjustment. Prior MMS approval of transportation allowances is not required for non-arm's-length or no contract situations. However, before any estimated or actual deduction may be taken, the lessee must submit a completed Form MMS-4293 in accordance with paragraph (c)(2) of this section. A transportation allowance may be claimed retroactively for a period of not more than 3 months prior to the first day of the month that Form MMS-4293 is filed with MMS, unless MMS approves a longer period upon a showing of good cause by the lessee. MMS will monitor the allowance deductions to ensure that deductions are reasonable and allowable. When necessary or appropriate, MMS may direct a lessee to modify its estimated or actual transportation allowance deduction.

(2) The transportation allowance for non-arm's-length or no contract situations shall be based upon the lessee's actual costs for transportation during the reporting period, including operating and maintenance expenses, overhead, and either depreciation and a return on undepreciated capital investment in accordance with paragraph (b)(2)(iv)(A) of this section, or a cost equal to the depreciable investment in the transportation system multiplied by the rate of return in accordance with paragraph (b)(2)(iv)(B) of this section. Allowable capital costs are generally those for depreciable fixed assets (including costs of delivery and installation of capital equipment) which are an integral part of the transportation system.

(i) Allowable operating expenses include: Operations supervision and engineering; operations labor; fuel; utilities; materials; ad valorem property taxes; rent; supplies; and any other directly allocable and attributable operating expense which the lessee can document.

(ii) Allowable maintenance expenses include: Maintenance of the transportation system; maintenance of equipment; maintenance labor; and other directly allocable and attributable maintenance expenses which the lessee can document.

(iii) Overhead attributable and allocable to the operation and maintenance of the transportation system is an allowable expense. State and Federal income taxes and severance taxes and other fees, including royalties, are not allowable expenses.

(iv) A lessee may use either paragraph (b)(2)(iv)(A) or paragraph (b)(2)(iv)(B) of this section. After a lessee has elected to use either method for a transportation system, the lessee may not later elect to change to the other alternative without approval of MMS.

(A) To compute depreciation, the lessee may elect to use either a straight-line depreciation method based on the life of equipment or on the life of the reserves which the transportation system services, whichever is appropriate, or a unit of production method. After an election is made, the lessee may not change methods without MMS approval. A change in ownership of a transportation system shall not alter the depreciation schedule established by the original transporter/lessee for purposes of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

allowance calculation. With or without a change in ownership, a transportation system shall be depreciated only once. Equipment shall not be depreciated below a reasonable salvage value.

(B) MMS shall allow as a cost an amount equal to the allowable capital investment in the transportation system multiplied by the rate of return determined pursuant to paragraph (b)(2)(B)(v) of this section. No allowance shall be provided for depreciation. This alternative shall apply only to transportation facilities first placed in service or acquired after March 1, 1989.

(v) The rate of return shall be the industrial rate associated with Standard and Poor's BBB rating. The rate of return shall be the monthly average as published in Standard and Poor's Bond Guide for the first month of the reporting period of which the allowance is applicable and shall be effective during the reporting period. The rate shall be redetermined at the beginning of each subsequent transportation allowance reporting period (which is determined pursuant to paragraph (c)(2) of this section).

(3) A lessee may apply to MMS for exception from the requirement that it compute actual costs in accordance with paragraphs (b)(1) and (b)(2) of this section. MMS will grant the exception only if the lessee has a rate for the transportation approved by a Federal agency for Indian leases. MMS shall deny the exception request if it determines that the rate is excessive as compared to arm's-length transportation charges by systems, owned by the lessee or others, providing similar transportation services in that area. If there are no arm's-length transportation charges, MMS shall deny the exception request if:

(i) No Federal regulatory agency cost analysis exists and the Federal regulatory agency has declined to investigate pursuant to MMS timely objections upon filing; and

(ii) The rate significantly exceeds the lessee's actual costs for transportation as determined under this section.

(c) Reporting requirements.

(1) Arm's-length contracts.

(i) With the exception of those transportation allowances specified in paragraphs (c)(1)(v) and (c)(1)(vi) of this section, the lessee shall submit page one of the initial Form MMS-4293 prior to, or at the same time as, the transportation allowance determined pursuant to an arm's-length contract is reported on Form MMS-4430, Solid Minerals Production and Royalty Report.

(ii) The initial Form MMS-4293 shall be effective for a reporting period beginning the month that the lessee is first authorized to deduct a transportation allowance and shall continue until the end of the calendar year, or until the applicable contract or rate terminates or is modified or amended, whichever is earlier.

(iii) After the initial reporting period and for succeeding reporting periods, lessees must submit page one of Form MMS-4293 within 3 months after the end of the calendar year, or after the applicable contract or rate terminates or is modified or amended, whichever is earlier, unless MMS approves a longer period (during which period the lessee shall continue to use the allowance from the previous reporting period). Lessees may request special reporting procedures in unique allowance reporting situations, such as those related to spot sales.

(iv) MMS may require that a lessee submit arm's-length transportation contracts, production agreements, operating agreements, and related documents. Documents shall be submitted within a reasonable time, as determined by MMS.

(v) Transportation allowances that are based on arm's-length contracts and which are in effect at the time these regulations become effective will be allowed to continue until such allowances terminate. For the purposes of this section, only those allowances that have been approved by MMS in writing shall qualify as being in effect at the time these regulations become

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

effective.

(vi) MMS may establish, in appropriate circumstances, reporting requirements that are different from the requirements of this section.

(2) Non-arm's-length or no contract.

(i) With the exception of those transportation allowances specified in paragraphs (c)(2)(v) and (c)(2)(vii) of this section, the lessee shall submit an initial Form MMS-4293 prior to, or at the same time as, the transportation allowance determined pursuant to a non-arm's-length contract or no contract situation is reported on Form MMS-4430, Solid Minerals Production and Royalty Report. The initial report may be based on estimated costs.

(ii) The initial Form MMS-4293 shall be effective for a reporting period beginning the month that the lessee first is authorized to deduct a transportation allowance and shall continue until the end of the calendar year, or until the transportation under the non-arm's-length contract or the no contract situation terminates, whichever is earlier.

(iii) For calendar-year reporting periods succeeding the initial reporting period, the lessee shall submit a completed Form MMS-4293 containing the actual costs for the previous reporting period. If the transportation is continuing, the lessee shall include on Form MMS-4293 its estimated costs for the next calendar year. The estimated transportation allowance shall be based on the actual costs for the previous reporting period plus or minus any adjustments that are based on the lessee's knowledge of decreases or increases that will affect the allowance. Form MMS-4293 must be received by MMS within 3 months after the end of the previous reporting period, unless MMS approves a longer period (during which period the lessee shall continue to use the allowance from the previous reporting period).

(iv) For new transportation facilities or arrangements, the lessee's initial Form MMS-4293 shall include estimates of the allowable transportation costs for the applicable period. Cost estimates shall be based upon the most recently available operations data for the transportation system, or, if such data are not available, the lessee shall use estimates based upon industry data for similar transportation systems.

(v) Non-arm's-length contract or no contract-based transportation allowances that are in effect at the time these regulations become effective will be allowed to continue until such allowances terminate. For purposes of this section, only those allowances that have been approved by MMS in writing shall qualify as being in effect at the time these regulations become effective.

(vi) Upon request by MMS, the lessee shall submit all data used to prepare its Form MMS-4293. The data shall be provided within a reasonable period of time, as determined by MMS.

(vii) MMS may establish, in appropriate circumstances, reporting requirements that are different from the requirements of this section.

(viii) If the lessee is authorized to use its Federal-agency-approved rate as its transportation cost in accordance with paragraph (b)(3) of this section, it shall follow the reporting requirements of paragraph (c)(1) of this section.

(3) MMS may establish reporting dates for individual lessees different than those specified in this paragraph in order to provide more effective administration. Lessees will be notified as to any change in their reporting period.

(4) Transportation allowances must be reported as a separate line item on Form MMS-4430, unless MMS approves a different reporting procedure.

(d) Interest assessments for incorrect or late reports and failure to report.

(1) If a lessee deducts a transportation allowance on its Form MMS-4430 without

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

complying with the requirements of this section, the lessee shall be liable for interest on the amount of such deduction until the requirements of this section are complied with. The lessee also shall repay the amount of any allowance which is disallowed by this section.

(2) If a lessee erroneously reports a transportation allowance which results in an underpayment of royalties, interest shall be paid on the amount of that underpayment.

(3) Interest required to be paid by this section shall be determined in accordance with 30 CFR 218.202.

(e) Adjustments.

(1) If the actual transportation allowance is less than the amount the lessee has taken on Form MMS-4430 for each month during the allowance form reporting period, the lessee shall be required to pay additional royalties due plus interest, computed pursuant to 30 CFR 218.202, retroactive to the first month the lessee is authorized to deduct a transportation allowance. If the actual transportation allowance is greater than the amount the lessee has estimated and taken during the reporting period, the lessee shall be entitled to a credit, without interest.

(2) The lessee must submit a corrected Form MMS-4430 to reflect actual costs, together with any payment, in accordance with instructions provided by MMS.

(f) Other transportation cost determinations. The provisions of this section shall apply to determine transportation costs when establishing value using a net-back valuation procedure or any other procedure that requires deduction of transportation costs.

**§ 206.462 [Reserved]**

**§ 206.463 In-situ and surface gasification and liquefaction operations.**

If an ad valorem Federal coal lease is developed by in-situ or surface gasification or liquefaction technology, the lessee shall propose the value of coal for royalty purposes to MMS. MMS will review the lessee's proposal and issue a value determination. The lessee may use its proposed value until MMS issues a value determination.

**§ 206.464 Value enhancement of marketable coal.**

If, prior to use, sale, or other disposition, the lessee enhances the value of coal after the coal has been placed in marketable condition in accordance with § 206.456(h) of this subpart, the lessee shall notify MMS that such processing is occurring or will occur. The value of that production shall be determined as follows:

(a) A value established for the feedstock coal in marketable condition by application of the provisions of § 206.456(c)(2)(i) through (iv) of this subpart; or,

(b) In the event that a value cannot be established in accordance with paragraph (a) of this section, then the value of production will be determined in accordance with § 206.456(c)(2)(v) of this subpart and the value shall be the lessee's gross proceeds accruing from the disposition of the enhanced product, reduced by MMS-approved processing costs and procedures including a rate of return on investment equal to two times the Standard and Poor's BBB bond rate applicable under § 206.458(b)(2)(v) of this subpart.

Current through February 15, 2007; 72 FR 7524
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.