Westlaw.



Code of Federal Regulations Currentness
Title 43. Public Lands: Interior
Subtitle B. Regulations Relating to Public Lands
Chapter II. Bureau of Land Management, Department of the Interior
Subchapter C. Minerals Management(3000)
➡ Part 3160. Onshore Oil and Gas Operations (Refs & Annos)
Subpart 3160. Onshore Oil and Gas Operations--General

**§ 3160.0-1 Purpose.**

The regulations in this part govern operations associated with the exploration, development and production of oil and gas deposits from--

(a) Leases issued or approved by the United States;

(b) Restricted Indian land leases; and

(c) Those leases under the jurisdiction of the Secretary of the Interior by law or administrative arrangement including the National Petroleum Reserve-Alaska (NPR-A). However, provisions relating to suspension and royalty reductions contained in subpart 3165 of this part do not apply to the NPR-A.

**§ 3160.0-2 Policy.**

The regulations in this part are administered under the direction of the Director of the Bureau of Land Management; except that as to lands within naval petroleum reserves, they shall be administered under such official as the Secretary of Energy shall designate.

**§ 3160.0-3 Authority.**

The Mineral Leasing Act, as amended and supplemented (30 U.S.C. 181 et seq.), the Act of May 21, 1930 (30 U.S.C. 301-306), the Mineral Leasing Act for Acquired Lands, as amended (30 U.S.C. 351-359), the Act of March 3, 1909, as amended (25 U.S.C. 396), the Act of May 11, 1938, as amended (25 U.S.C. 396a-396q), the Act of February 28, 1891, as amended (25 U.S.C. 397), the Act of May 29, 1924 (25 U.S.C. 398), the Act of March 3, 1927 (25 U.S.C. 398a-398e), the Act of June 30, 1919, as amended (25 U.S.C. 399), R.S. § 441 (43 U.S.C. 1457), the Attorney General's Opinion of April 2, 1941 (40 Op.Atty.Gen. 41), the Federal Property and Administrative Services Act of 1949, as amended (40 U.S.C. 471 et seq.), the National Environmental Policy Act of 1969, as amended (42 U.S.C. 4321 et seq.), the Act of December 12, 1980 (94 Stat. 2964), the Combined Hydrocarbon Leasing Act of 1981 (95 Stat. 1070), the Federal Oil and Gas Royalty Management Act of 1982 (30 U.S.C. 1701), the Indian Mineral Development Act of 1982 (25 U.S.C. 2102), and Order Number 3087, dated December 3, 1982, as amended on February 7, 1983 (48 FR 8983) under which the Secretary consolidated and transferred the onshore minerals management functions of the Department, except mineral revenue functions and the responsibility for leasing of restricted Indian lands, to the Bureau of Land Management.

**§ 3160.0-4 Objectives.**

The objective of these regulations is to promote the orderly and efficient exploration, development and production of oil and gas.

**§ 3160.0-5 Definitions.**

As used in this part, the term:

Authorized representative means any entity or individual authorized by the Secretary to perform duties by cooperative agreement, delegation or contract.

Avoidably lost means the venting or flaring of produced gas without the prior authorization,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

approval, ratification or acceptance of the authorized officer and the loss of produced oil or gas when the authorized officer determines that such loss occurred as a result of:

(1) Negligence on the part of the operator; or

(2) The failure of the operator to take all reasonable measures to prevent and/or control the loss; or

(3) The failure of the operator to comply fully with the applicable lease terms and regulations, applicable orders and notices, or the written orders of the authorized officer; or

(4) Any combination of the foregoing.

Drainage means the migration of hydrocarbons, inert gases (other than helium), or associated resources caused by production from other wells.

Federal lands means all lands and interests in lands owned by the United States which are subject to the mineral leasing laws, including mineral resources or mineral estates reserved to the United States in the conveyance of a surface or nonmineral estate.

Fresh water means water containing not more than 1,000 ppm of total dissolved solids, provided that such water does not contain objectionable levels of any constituent that is toxic to animal, plant or aquatic life, unless otherwise specified in applicable notices or orders.

Knowingly or willfully means a violation that constitutes the voluntary or conscious performance of an act that is prohibited or the voluntary or conscious failure to perform an act or duty that is required. It does not include performances or failures to perform that are honest mistakes or merely inadvertent. It includes, but does not require, performances or failures to perform that result from a criminal or evil intent or from a specific intent to violate the law. The knowing or willful nature of conduct may be established by plain indifference to or reckless disregard of the requirements of the law, regulations, orders, or terms of the lease. A consistent pattern of performance or failure to perform also may be sufficient to establish the knowing or willful nature of the conduct, where such consistent pattern is neither the result of honest mistakes or mere inadvertency. Conduct that is otherwise regarded as being knowing or willful is rendered neither accidental nor mitigated in character by the belief that the conduct is reasonable or legal.

Lease means any contract, profit-share arrangement, joint venture or other agreement issued or approved by the United States under a mineral leasing law that authorizes exploration for, extraction of or removal of oil or gas.

Lease site means any lands, including the surface of a severed mineral estate, on which exploration for, or extraction and removal of, oil or gas is authorized under a lease.

Lessee means any person holding record title or owning operating rights in a lease issued or approved by the United States.

Lessor means the party to a lease who holds legal or beneficial title to the mineral estate in the leased lands.

Major violation means noncompliance that causes or threatens immediate, substantial, and adverse impacts on public health and safety, the environment, production accountability, or royalty income.

Maximum ultimate economic recovery means the recovery of oil and gas from leased lands which a prudent operator could be expected to make from that field or reservoir given existing knowledge of reservoir and other pertinent facts and utilizing common industry practices for primary, secondary or tertiary recovery operations.

Minor violation means noncompliance that does not rise to the level of a "major violation".

New or resumed production under section 102(b)(3) of the Federal Oil and Gas Royalty Management Act means the date on which a well commences production, or resumes production after having been off production for more than 90 days, and is to be construed as follows:

(1) For an oil well, the date on which liquid hydrocarbons are first sold or shipped from a temporary storage facility, such as a test tank, or the date on which liquid hydrocarbons are first

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

produced into a permanent storage facility, whichever first occurs; and

(2) For a gas well, the date on which gas is first measured through sales metering facilities or the date on which associated liquid hydrocarbons are first sold or shipped from a temporary storage facility, whichever first occurs. For purposes of this provision, a gas well shall not be considered to have been off of production unless it is incapable of production.

Notice to lessees and operators (NTL) means a written notice issued by the authorized officer. NTL's implement the regulations in this part and operating orders, and serve as instructions on specific item(s) of importance within a State, District, or Area.

Onshore oil and gas order means a formal numbered order issued by the Director that implements and supplements the regulations in this part.

Operating rights owner means a person who owns operating rights in a lease. A record title holder may also be an operating rights owner in a lease if it did not transfer all of its operating rights.

Operator means any person or entity including but not limited to the lessee or operating rights owner, who has stated in writing to the authorized officer that it is responsible under the terms and conditions of the lease for the operations conducted on the leased lands or a portion thereof.

Paying well means a well that is capable of producing oil or gas of sufficient value to exceed direct operating costs and the costs of lease rentals or minimum royalty.

Person means any individual, firm, corporation, association, partnership, consortium or joint venture.

Production in paying quantities means production from a lease of oil and/or gas of sufficient value to exceed direct operating costs and the cost of lease rentals or minimum royalties.

Protective well means a well drilled or modified to prevent or offset drainage of oil and gas resources from its Federal or Indian lease.

Record title holder means the person(s) to whom BLM or an Indian lessor issued a lease or approved the assignment of record title in a lease.

Superintendent means the superintendent of an Indian Agency, or other officer authorized to act in matters of record and law with respect to oil and gas leases on restricted Indian lands.

Surface use plan of operations means a plan for surface use, disturbance, and reclamation.

Waste of oil or gas means any act or failure to act by the operator that is not sanctioned by the authorized officer as necessary for proper development and production and which results in: (1) A reduction in the quantity or quality of oil and gas ultimately producible from a reservoir under prudent and proper operations; or (2) avoidable surface loss of oil or gas.

**§ 3160.0-7 Cross references.**

25 CFR Parts 221, 212, 213, and 227

30 CFR Group 200

40 CFR Chapter V

43 CFR Parts 2, 4, and 1820 and Groups 3000, 3100 and 3500

**§ 3160.0-9 Information collection.**

(a) The information collection requirements contained in §§ 3162.3, 3162.3-1, 3162.3-2, 3162.3-3, 3162.3-4, 3162.4-1, 3162.4-2, 3162.5-1, 3162.5-2, 3162.5-3, 3162.6, 3162.7-1, 3162.7-2, 3162.7-3, 3162.7-5, 3164.3, 3165.1, and 3165.3 have been approved by the Office of Management and Budget under 44 U.S.C. 3507 and assigned clearance Number 1004-0134. The information may be collected from some operators either to provide data so that proposed operations may be approved or to enable the monitoring of compliance with granted approvals. The information will be used to grant approval to begin or alter operations or to allow operations to continue. The obligation to respond is required to obtain benefits under the lease.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(b) Public reporting burden for this information is estimated to average 0.4962 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to the Information Collection Clearance Officer (783), Bureau of Land Management, Washington, DC 20240, and the Office of Management and Budget, Paperwork Reduction Project, 1004-0134, Washington, DC 20503.

(c)(1) The information collection requirements contained in part 3160 have been approved by the Office of Management and Budget under 44 U.S.C. 3507 and assigned the following Clearance Numbers:

Operating Forms

| Form No. | Name and filing date | OMB No. |
|---|---|---|
| 3160-3 .. | Application for Permit to Drill, Deepen, or Plug Back--Filed 30 days prior to planned action ............. | 1004-0136 |
| 3160-4 .. | With Completion of Recompletion Report and Log--Due 30 days after well completion .............................. | 1004-0137 |
| 3160-5 .. | Sundry Notice and Reports on Wells--Subsequent report due 30 days after operations completed ...................... | 1004-0135 |

The information will be used to manage Federal and Indian oil and gas leases. It will be used to allow evaluation of the technical, safety, and environmental factors involved with drilling and producing oil and gas on Federal and Indian oil and gas leases. Response is mandatory only if the operator elects to initiate drilling, completion, or subsequent operations on an oil and gas well, in accordance with 30 U.S.C. 181 et seq.

(2) Public reporting burden for this information is estimated to average 25 minutes per response for clearance number 1004-0135, 30 minutes per response for clearance number 1004-0136, and 1 hour per response for clearance number 1004-0137, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to the Information Collection Clearance Officer (783), Bureau of Land Management, Washington, DC 20240, and the Office of Management and Budget, Paperwork Reduction Project, 1004-0135, 1004-0136, or 1004-0137, as appropriate, Washington, DC 20503.

(d) There are many leases and agreements currently in effect, and which will remain in effect, involving

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

both Federal and Indian oil and gas leases which specifically refer to the United States Geological Survey, USGS, Minerals Management Service, MMS, or Conservation Division. These leases and agreements also often specifically refer to various officers such as Supervisor, Conservation Manager, Deputy Conservation Manager, Minerals Manager, and Deputy Minerals Manager. In addition, many leases and agreements specifically refer to 30 CFR part 221 or specific sections thereof, which has been redesignated as 43 CFR part 3160. Those references shall now be read in the context of Secretarial Order 3087 and now mean either the Bureau of Land Management or Minerals Management Service, as appropriate.

## Subpart 3161. Jurisdiction and Responsibility

### § 3161.1 Jurisdiction.

(a) All operations conducted on a Federal or Indian oil and gas lease by the operator are subject to the regulations in this part.

(b) Regulations in this part relating to site security, measurement, reporting of production and operations, and assessments or penalties for noncompliance with such requirements are applicable to all wells and facilities on State or privately-owned mineral lands committed to a unit or communitization agreement which affects Federal or Indian interests, notwithstanding any provision of a unit or communitization agreement to the contrary.

### § 3161.2 Responsibility of the authorized officer.

The authorized officer is authorized and directed to approve unitization, communitization, gas storage and other contractual agreements for Federal lands; to assess compensatory royalty; to approve suspensions of operations or production, or both; to issue NTL's: to approve and monitor other operator proposals for drilling, development or production of oil and gas; to perform administrative reviews: to impose monetary assessments or penalties; to provide technical information and advice relative to oil and gas development and operations on Federal and Indian lands; to enter into cooperative agreements with States, Federal agencies and Indian tribes relative to oil and gas development and operations; to approve, inspect and regulate the operations that are subject to the regulations in this part; to require compliance with lease terms, with the regulations in this title and all other applicable regulations promulgated under the cited laws; and to require that all operations be conducted in a manner which protects other natural resources and the environmental quality, protects life and property and results in the maximum ultimate recovery of oil and gas with minimum waste and with minimum adverse effect on the ultimate recovery of other mineral resources. The authorized officer may issue written or oral orders to govern specific lease operations. Any such oral orders shall be confirmed in writing by the authorized officer within 10 working days from issuance thereof. Before approving operations on leasehold, the authorized officer shall determine that the lease is in effect, that acceptable bond coverage has been provided and that the proposed plan of operations is sound both from a technical and environmental standpoint.

### § 3161.3 Inspections.

(a) The authorized officer shall establish procedures to ensure that each Federal and Indian lease site which is producing or is expected to produce significant quantities of oil or gas in any year or which has a history of noncompliance with applicable provisions of law or regulations, lease terms, orders or directives shall be inspected at least once annually. Similarly, each lease site on non-Federal or non-Indian lands subject to a formal agreement such as a unit or communitization agreement which has been approved by the Department of the Interior and in which the United States or the Indian lessors share in production shall be inspected annually whenever any of the foregoing criteria are applicable.

(b) In accomplishing the inspections, the authorized officer may utilize Bureau personnel, may enter into cooperative agreements with States or Indian Tribes, may delegate the inspection authority to any State, or may contract with any non-Federal Government entities. Any cooperative agreement, delegation or contractual arrangement shall not be effective without concurrence of the Secretary and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

shall include applicable provisions of the Federal Oil and Gas Royalty Management Act.

**Subpart 3162. Requirements for Operating Rights Owners and Operators (Refs & Annos)**

**§ 3162.1 General requirements.**

(a) The operating rights owner or operator, as appropriate, shall comply with applicable laws and regulations; with the lease terms, Onshore Oil and Gas Orders, NTL's; and with other orders and instructions of the authorized officer. These include, but are not limited to, conducting all operations in a manner which ensures the proper handling, measurement, disposition, and site security of leasehold production; which protects other natural resources and environmental quality; which protects life and property; and which results in maximum ultimate economic recovery of oil and gas with minimum waste and with minimum adverse effect on ultimate recovery of other mineral resources.

(b) The operator shall permit properly identified authorized representatives to enter upon, travel across and inspect lease sites and records normally kept on the lease pertinent thereto without advance notice. Inspections normally will be conducted during those hours when responsible persons are expected to be present at the operation being inspected. Such permission shall include access to secured facilities on such lease sites for the purpose of making any inspection or investigation for determining whether there is compliance with the mineral leasing laws, the regulations in this part, and any applicable orders notices or directives.

(c) For the purpose of making any inspection or investigation, the Secretary or his authorized representative shall have the same right to enter upon or travel across any lease site as the operator has acquired by purchase, condemnation or otherwise.

**3162.2 Drilling, Producing, and Drainage Obligations. (Refs & Annos)**

**§ 3162.2-1 Drilling and producing obligations.**

(a) The operator at its election, may drill and produce other wells in conformity with any system of well spacing or production allotments affecting the field or area in which the leased lands are situated, and which is authorized and sanctioned by applicable law or by the authorized officer.

(b) After notice in writing, the lessee(s) and operating rights owner(s) shall promptly drill and produce such other wells as the authorized officer may reasonably require in order that the lease may be properly and timely developed and produced in accordance with good economic operating practices.

**§ 3162.2-2 What steps may BLM take to avoid uncompensated drainage of Federal or Indian mineral resources?**

If we determine that a well is draining Federal or Indian mineral resources, we may take any of the following actions:

(a) If the mineral resources being drained are in Federal or Indian leases, we may require the lessee to drill and produce all wells that are necessary to protect the lease from drainage, unless the conditions of this part are met. BLM will consider applicable Federal, State, or Tribal rules, regulations, and spacing orders when determining which action to take. Alternatively, we may accept other equivalent protective measures;

(b) If the mineral resources being drained are either unleased (including those which may not be subject to leasing) or in Federal or Indian leases, we may execute agreements with the owners of interests in the producing well under which the United States or the Indian lessor may be compensated for the drainage (with the consent of the Federal or (in consultation with the Indian mineral owner and BIA) Indian lessees, if any);

(c) We may offer for lease any qualifying unleased mineral resources under part 3120 of this chapter or enter into a communitization agreement; or

(d) We may approve a unit or communitization agreement that provides for payment of a royalty on production attributable to unleased mineral

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

resources as provided in § 3181.5.

**§ 3162.2-3 When am I responsible for protecting my Federal or Indian lease from drainage?**

You must protect your Federal or Indian lease from drainage if your lease is being drained of mineral resources by a well:

(a) Producing for the benefit of another mineral owner;

(b) Producing for the benefit of the same mineral owner but with a lower royalty rate; or

(c) Located in a unit or communitization agreement, which due to its Federal or Indian mineral owner's allocation or participation factor, generates less revenue for the United States or the Indian mineral owner for the mineral resources produced from your lease.

**§ 3162.2-4 What protective action may BLM require the lessee to take to protect the leases from drainage?**

We may require you to:

(a) Drill or modify and produce all wells that are necessary to protect the leased mineral resources from drainage;

(b) Enter into a unitization or communitization agreement with the lease containing the draining well; or

(c) Pay compensatory royalties for drainage that has occurred or is occurring.

**§ 3162.2-5 Must I take protective action when a protective well would be uneconomic?**

You are not required to take any of the actions listed in § 3162.2-4 if you can prove to BLM that when you first knew or had constructive notice of drainage you could not produce a sufficient quantity of oil or gas from a protective well on your lease for a reasonable profit above the cost of drilling, completing, and operating the protective well.

**§ 3162.2-6 When will I have constructive notice that drainage may be occurring?**

(a) You have constructive notice that drainage may be occurring when well completion or first production reports for the draining well are filed with either BLM, State oil and gas commissions, or regulatory agencies and are publicly available.

(b) If you operate or own any interest in the draining well or lease, you have constructive notice that drainage may be occurring when you complete drill stem, production, pressure analysis, or flow tests of the well.

**§ 3162.2-7 Who is liable for drainage if more than one person holds undivided interests in the record title or operating rights for the same lease?**

(a) If more than one person holds record title interests in a portion of a lease that is subject to drainage, each person is jointly and severally liable for taking any action we may require under this part to protect the lease from drainage, including paying compensatory royalty accruing during the period and for the area in which it holds its record title interest.

(b) Operating rights owners are jointly and severally liable with each other and with all record title holders for drainage affecting the area and horizons in which they hold operating rights during the period they hold operating rights.

**§ 3162.2-8 Does my responsibility for drainage protection end when I assign or transfer my lease interest?**

If you assign your record title interest in a lease or transfer your operating rights, you are not liable for drainage that occurs after the date we approve the assignment or transfer. However, you remain responsible for the payment of compensatory royalties for any drainage that occurred when you held the lease interest.

**§ 3162.2-9 What is my duty to inquire about the potential for drainage and inform BLM of my**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**findings?**

(a) When you first acquire a lease interest, and at all times while you hold the lease interest, you must monitor the drilling of wells in the same or adjacent spacing units and gather sufficient information to determine whether drainage is occurring. This information can be in various forms, including but not limited to, well completion reports, sundry notices, or available production information. As a prudent lessee, it is your responsibility to analyze and evaluate this information and make the necessary calculations to determine:

(1) The amount of drainage from production of the draining well;

(2) The amount of mineral resources which will be drained from your Federal or Indian lease during the life of the draining well; and

(3) Whether a protective well would be economic to drill.

(b) You must notify BLM within 60 days from the date of actual or constructive notice of:

(1) Which of the actions in § 3162.2-4 you will take; or

(2) The reasons a protective well would be uneconomic.

(c) If you do not have sufficient information to comply with § 3162.2- 9(b)(1), indicate when you will provide the information.

(d) You must provide BLM with the analysis under paragraph (a) of this section within 60 days after we request it.

**§ 3162.2-10 Will BLM notify me when it determines that drainage is occurring?**

We will send you a demand letter by certified mail, return receipt requested, or personally serve you with notice, if we believe that drainage is occurring. However, your responsibility to take protective action arises when you first knew or had constructive notice of the drainage, even when that date precedes the BLM demand letter.

**§ 3162.2-11 How soon after I know of the likelihood of drainage must I take protective action?**

(a) You must take protective action within a reasonable time after the earlier of:

(1) The date you knew or had constructive notice that the potentially draining well had begun to produce oil or gas; or

(2) The date we issued a demand letter for protective action.

(b) Since the time required to drill and produce a protective well varies according to the location and conditions of the oil and gas reservoir, BLM will determine this on a case-by-case basis. When we determine whether you took protective action within a reasonable time, we will consider several factors including, but not limited to:

(1) Time required to evaluate the characteristics and performance of the draining well;

(2) Rig availability;

(3) Well depth;

(4) Required environmental analysis;

(5) Special lease stipulations which provide limited time frames in which to drill; and

(6) Weather conditions.

(c) If BLM determines that you did not take protection action timely, you will owe compensatory royalty for the period of the delay under § 3162.2-12.

**§ 3162.2-12 If I hold an interest in a lease, for what period will the Department assess compensatory royalty against me?**

The Department will assess compensatory royalty beginning on the first day of the month following the earliest reasonable time we determine you should have taken protective action. You must

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

continue to pay compensatory royalty until:

(a) You drill sufficient economic protective wells and remain in continuous production;

(b) We approve a unitization or communitization agreement that includes the mineral resources being drained;

(c) The draining well stops producing; or

(d) You relinquish your interest in the Federal or Indian lease.

**§ 3162.2-13 If I acquire an interest in a lease that is being drained, will the Department assess me for compensatory royalty?**

If you acquire an interest in a Federal or Indian lease through an assignment of record title or transfer of operating rights under this part, you are liable for all drainage obligations accruing on and after the date we approve the assignment or transfer.

**§ 3162.2-14 May I appeal BLM's decision to require drainage protective measures?**

You may appeal any BLM decision requiring you take drainage protective measures. You may request BLM State Director review under 43 CFR 3165.3 and/or appeal to the Interior Board of Land Appeals under 43 CFR part 4 and subpart 1840.

**§ 3162.2-15 Who has the burden of proof if I appeal BLM's drainage determination?**

BLM has the burden of establishing a prima facie case that drainage is occurring and that you knew of such drainage. Then the burden of proof shifts to you to refute the existence of drainage or to prove there was not sufficient information to put you on notice of the need for drainage protection. You also have the burden of proving that drilling and producing from a protective well would not be economically feasible.

**§ 3162.3 Conduct of operations.**

(a) Whenever a change in operator occurs, the authorized officer shall be notified promptly in writing, and the new operator shall furnish evidence of sufficient bond coverage in accordance with § 3106.6 and subpart 3104 of this title.

(b) A contractor on a leasehold shall be considered the agent of the operator for such operations with full responsibility for acting on behalf of the operator for purposes of complying with applicable laws, regulations, the lease terms, NTL's, Onshore Oil and Gas Orders, and other orders and instructions of the authorized officer.

**§ 3162.3-1 Drilling applications and plans.**

(a) Each well shall be drilled in conformity with an acceptable well-spacing program at a surveyed well location approved or prescribed by the authorized officer after appropriate environmental and technical reviews (see § 3162.5- 1 of this title). An acceptable well-spacing program may be either (1) one which conforms with a spacing order or field rule issued by a State Commission or Board and accepted by the authorized officer, or (2) one which is located on a lease committed to a communitized or unitized tract at a location approved by the authorized officer, or (3) any other program established by the authorized officer.

(b) Any well drilled on restricted Indian land shall be subject to the location restrictions specified in the lease and/or Title 25 of the Code of Federal Regulations.

(c) The operator shall submit to the authorized officer for approval an Application for Permit to Drill for each well. No drilling operations, nor surface disturbance preliminary thereto, may be commenced prior to the authorized officer's approval of the permit.

(d) The Application for Permit to Drill process shall be initiated at least 30 days before commencement of operations is desired. Prior to approval, the application shall be administratively and technically complete. A complete application consists of Form 3160-3 and the following attachments:

(1) A drilling plan, which may already be on file, containing information required by

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

paragraph (e) of this section and appropriate orders and notices.

(2) A surface use plan of operations containing information required by paragraph (f) of this section and appropriate orders and notices.

(3) Evidence of bond coverage as required by the Department of the Interior regulations, and

(4) Such other information as may be required by applicable orders and notices.

(e) Each drilling plan shall contain the information specified in applicable notices or orders, including a description of the drilling program, the surface and projected completion zone location, pertinent geologic data, expected hazards, and proposed mitigation measures to address such hazards. A drilling plan may be submitted for a single well or for several wells proposed to be drilled to the same zone within a field or area of geological and environmental similarity. A drilling plan may be modified from time to time as circumstances may warrant, with the approval of the authorized officer.

(f) The surface use plan of operations shall contain information specified in applicable orders or notices, including the road and drillpad location, details of pad construction, methods for containment and disposal of waste material, plans for reclamation of the surface, and other pertinent data as the authorized officer may require. A surface use plan of operations may be submitted for a single well or for several wells proposed to be drilled in an area of environmental similarity.

(g) For Federal lands, upon receipt of the Application for Permit to Drill or Notice of Staking, the authorized officer shall post the following information for public inspection at least 30 days before action to approve the Application for Permit to Drill: the company/operator name; the well name/number; the well location described to the nearest quarter-quarter section (40 acres), or similar land description in the case of lands described by metes and bounds, or maps showing the affected lands and the location of all tracts to be leased and of all leases already issued in the general area; and any substantial modifications to the lease terms. Where the inclusion of maps in such posting is not practicable, maps of the affected lands shall be made available to the public for review. This information also shall be provided promptly by the authorized officer to the appropriate office of the Federal surface management agency, for lands the surface of which is not under Bureau jurisdiction, requesting such agency to post the proposed action for public inspection for at least 30 days. The posting shall be in the office of the authorized officer and in the appropriate surface managing agency if other than the Bureau. The posting of an Application for Permit to Drill is for information purposes only and is not an appealable decision.

(h) Upon initiation of the Application for Permit to Drill process, the authorized officer shall consult with the appropriate Federal surface management agency and with other interested parties as appropriate and shall take one of the following actions as soon as practical, but in no event later than 5 working days after the conclusion of the 30-day notice period for Federal lands, or within 30 days from receipt of the application for Indian lands:

(1) Approve the application as submitted or with appropriate modifications or conditions;

(2) Return the application and advise the applicant of the reasons for disapproval; or

(3) Advise the applicant, either in writing or orally with subsequent written confirmation, of the reasons why final action will be delayed along with the date such final action can be expected.

The surface use plan of operations for National Forest System lands shall be approved by the Secretary of Agriculture or his/her representative prior to approval of the Application for Permit to Drill by the authorized officer. Appeals from the denial of approval of such surface use plan of operations shall be submitted to the Secretary of Agriculture.

(i) Approval of the Application for Permit to Drill does not warrant or certify that the applicant holds legal or equitable title to the subject lease(s) which would entitle the applicant to conduct drilling operations.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**§ 3162.3-2 Subsequent well operations.**

(a) A proposal for further well operations shall be submitted by the operator on Form 3160-5 for approval by the authorized officer prior to commencing operations to redrill, deepen, perform casing repairs, plug-back, alter casing, perform nonroutine fracturing jobs, recomplete in a different interval, perform water shut-off, commingling production between intervals and/or conversion to injection. If there is additional surface disturbance, the proposal shall include a surface use plan of operations. A subsequent report on these operations also will be filed on Form 31605. The authorized officer may prescribe that each proposal contain all or a portion of the information set forth in § 3162.3-1 of this title.

(b) Unless additional surface disturbance is involved and if the operations conform to the standard of prudent operating practice, prior approval is not required for routine fracturing or acidizing jobs, or recompletion in the same interval; however, a subsequent report on these operations must be filed on Form 3160-5.

(c) No prior approval or a subsequent report is required for well cleanout work, routine well maintenance, or bottom hole pressure surveys.

**§ 3162.3-3 Other lease operations.**

Prior to commencing any operation on the leasehold which will result in additional surface disturbance, other than those authorized under § 3162.3-1 or § 3162.3-2 of this title, the operator shall submit a proposal on Form 3160-5 to the authorized officer for approval. The proposal shall include a surface use plan of operations.

**§ 3162.3-4 Well abandonment.**

(a) The operator shall promptly plug and abandon, in accordance with a plan first approved in writing or prescribed by the authorized officer, each newly completed or recompleted well in which oil or gas is not encountered in paying quantities or which, after being completed as a producing well, is demonstrated to the satisfaction of the authorized officer to be no longer capable of producing oil or gas in paying quantities, unless the authorized officer shall approve the use of the well as a service well for injection to recover additional oil or gas or for subsurface disposal of produced water. In the case of a newly drilled or recompleted well, the approval to abandon may be written or oral with written confirmation.

(b) Completion of a well as plugged and abandoned may also include conditioning the well as water supply source for lease operations or for use by the surface owner or appropriate Government Agency, when authorized by the authorized officer. All costs over and above the normal plugging and abandonment expense will be paid by the party accepting the water well.

(c) No well may be temporarily abandoned for more than 30 days without the prior approval of the authorized officer. The authorized officer may authorize a delay in the permanent abandonment of a well for a period of 12 months. When justified by the operator, the authorized officer may authorize additional delays, no one of which may exceed an additional 12 months. Upon the removal of drilling or producing equipment from the site of a well which is to be permanently abandoned, the surface of the lands disturbed in connection with the conduct of operations shall be reclaimed in accordance with a plan first approved or prescribed by the authorized officer.

**3162.4 Records and Reports.**

**§ 3162.4-1 Well records and reports.**

(a) The operator shall keep accurate and complete records with respect to all lease operations including, but not limited to, production facilities and equipment, drilling, producing, redrilling, deepening, repairing, plugging back, and abandonment operations, and other matters pertaining to operations. With respect to production facilities and equipment, the record shall include schematic diagrams as required by applicable orders and notices.

(b) Standard forms for providing basic data are listed in NOTE 1 at the beginning of this title. As

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

noted on Form 3160-4, two copies of all electric and other logs run on the well must be submitted to the authorized officer. Upon request, the operator shall transmit to the authorized officer copies of such other records maintained in compliance with paragraph (a) of this section.

(c) Not later than the 5th business day after any well begins production on which royalty is due anywhere on a lease site or allocated to a lease site, or resumes production in the case of a well which has been off production for more than 90 days, the operator shall notify the authorized officer by letter or sundry notice, Form 3160-5, or orally to be followed by a letter or sundry notice, of the date on which such production has begun or resumed.

(d) All records and reports required by this section shall be maintained for 6 years from the date they were generated. In addition, if the Secretary, or his/her designee notifies the recordholder that the Department of the Interior has initiated or is participating in an audit or investigation involving such records, the records shall be maintained until the Secretary, or his/her designee, releases the recordholder from the obligation to maintain such records.

**§ 3162.4-2 Samples, tests, and surveys.**

(a) During the drilling and completion of a well, the operator shall, when required by the authorized officer, conduct tests, run logs, and make other surveys reasonably necessary to determine the presence, quantity, and quality of oil, gas, other minerals, or the presence or quality of water; to determine the amount and/or direction of deviation of any well from the vertical; and to determine the relevant characteristics of the oil and gas reservoirs penetrated.

(b) After the well has been completed, the operator shall conduct periodic well tests which will demonstrate the quantity and quality of oil and gas and water. The method and frequency of such well tests will be specified in appropriate notices and orders. When needed, the operator shall conduct reasonable tests which will demonstrate the mechanical integrity of the downhole equipment.

(c) Results of samples, tests, and surveys approved or prescribed under this section shall be provided to the authorized officer without cost to the lessor.

**§ 3162.4-3 Monthly report of operations (Form 3160-6).**

The operator shall report production data to BLM in accordance with the requirements of this section until required to begin reporting to MMS pursuant to 30 CFR 216.50. When reporting production data to BLM in accordance with the requirements of this section, the operator shall either use Form BLM 3160-6 or Form MMS- 3160. A separate report of operations for each lease shall be made on Form 3160-6 for each calendar month, beginning with the month in which drilling operations are initiated, and shall be filed with the authorized officer on or before the 10th day of the second month following the operation month, unless an extension of time for the filing of such report is granted by the authorized officer. The report on this form shall disclose accurately all operations conducted on each well during each month, the status of operations on the last day of the month, and a general summary of the status of operations on the leased lands, and the report shall be submitted each month until the lease is terminated or until omission of the report is authorized by the authorized officer. It is particularly necessary that the report shall show for each calendar month:

(a) The lease be identified by inserting the name of the United States land office and the serial number, or in the case of Indian land, the lease number and lessor's name, in the space provided in the upper right corner;

(b) Each well be listed separately by number, its location be given by 40-acre subdivision ( 1/4 1/4 sec. or lot), section number, township, range, and meridian;

(c) The number of days each well produced, whether oil or gas, and the number of days each input well was in operation be stated:

(d) The quantity of oil, gas and water produced, the total amount of gasoline, and other lease products recovered, and other required information. When oil and gas, or oil, gas and gasoline, or other hydrocarbons are concurrently produced from the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

same lease, separate reports on this form should be submitted for oil and for gas and gasoline, unless otherwise authorized or directed by the authorized officer.

(e) The depth of each active or suspended well, and the name, character, and depth of each formation drilled during the month, the date each such depth was reached, the date and reason for every shut-down, the names and depths of important formation changes and contents of formations, the amount and size of any casing run since last report, the dates and results of any tests such as production, water shut-off, or gasoline content, and any other noteworthy information on operations not specifically provided for in the form.

(f) The footnote shall be completely filled out as required by the authorized officer. If no runs or sales were made during the calendar month, the report shall so state.

**§ 3162.5 Environment and safety.**

**§ 3162.5-1 Environmental obligations.**

(a) The operator shall conduct operations in a manner which protects the mineral resources, other natural resources, and environmental quality. In that respect, the operator shall comply with the pertinent orders of the authorized officer and other standards and procedures as set forth in the applicable laws, regulations, lease terms and conditions, and the approved drilling plan or subsequent operations plan. Before approving any Application for Permit to Drill submitted pursuant to § 3162.3-1 of this title, or other plan requiring environmental review, the authorized officer shall prepare an environmental record of review or an environmental assessment, as appropriate. These environmental documents will be used in determining whether or not an environmental impact statement is required and in determining any appropriate terms and conditions of approval of the submitted plan.

(b) The operator shall exercise due care and diligence to assure that leasehold operations do not result in undue damage to surface or subsurface resources or surface improvements. All produced water must be disposed of by injection into the subsurface, by approved pits, or by other methods which have been approved by the authorized officer. Upon the conclusion of operations, the operator shall reclaim the disturbed surface in a manner approved or reasonably prescribed by the authorized officer.

(c) All spills or leakages of oil, gas, produced water, toxic liquids, or waste materials, blowouts, fires, personal injuries, and fatalities shall be reported by the operator in accordance with these regulations and as prescribed in applicable order or notices. The operator shall exercise due diligence in taking necessary measures, subject to approval by the authorized officer, to control and remove pollutants and to extinguish fires. An operator's compliance with the requirements of the regulations in this part shall not relieve the operator of the obligation to comply with other applicable laws and regulations.

(d) When reasonably required by the authorized officer, a contingency plan shall be submitted describing procedures to be implemented to protect life, property, and the environment.

(e) The operator's liability for damages to third parties shall be governed by applicable law.

**§ 3162.5-2 Control of wells.**

(a) Drilling wells. The operator shall take all necessary precautions to keep each well under control at all times, and shall utilize and maintain materials and equipment necessary to insure the safety of operating conditions and procedures.

(b) Vertical drilling. The operator shall conduct drilling operations in a manner so that the completed well does not deviate significantly from the vertical without the prior written approval of the authorized officer. Significant deviation means a projected deviation of the well bore from the vertical of 10° or more, or a projected bottom hole location which could be less than 200 feet from the spacing unit or lease boundary. Any well which deviates more than 10° from the vertical or could result in a bottom hole location less than 200 feet from the spacing unit or lease boundary without prior written approval must be promptly reported to the authorized officer. In these cases, a directional

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

survey is required.

(c) High pressure or loss of circulation. The operator shall take immediate steps and utilize necessary resources to maintain or restore control of any well in which the pressure equilibrium has become unbalanced.

(d) Protection of fresh water and other minerals. The operator shall isolate freshwater-bearing and other usable water containing 5,000 ppm or less of dissolved solids and other mineral-bearing formations and protect them from contamination. Tests and surveys of the effectiveness of such measures shall be conducted by the operator using procedures and practices approved or prescribed by the authorized officer.

**§ 3162.5-3 Safety precautions.**

The operator shall perform operations and maintain equipment in a safe and workmanlike manner. The operator shall take all precautions necessary to provide adequate protection for the health and safety of life and the protection of property. Compliance with health and safety requirements prescribed by the authorized officer shall not relieve the operator of the responsibility for compliance with other pertinent health and safety requirements under applicable laws or regulations.

**§ 3162.6 Well and facility identification.**

(a) Every well within a Federal or Indian lease or supervised agreement shall have a well identification sign. All signs shall be maintained in a legible condition.

(b) For wells located on Federal and Indian lands, the operator shall properly identify, by a sign in a conspicuous place, each well, other than those permanently abandoned. The well sign shall include the well number, the name of the operator, the lease serial number, the surveyed location (the quarter-quarter section, section, township and range or other authorized survey designation acceptable to the authorized officer; such as metes and bounds). When approved by the authorized officer, individual well signs may display only a unique well name and number. When specifically requested by the authorized officer, the sign shall include the unit or communitization name or number. The authorized officer may also require the sign to include the name of the Indian allottee lessor(s) preceding the lease serial number. In all cases, individual well signs in place on the effective date of this rulemaking which do not have the unit or communitization agreement number or do not have quarter-quarter identification will satisfy these requirements until such time as the sign is replaced. All new signs shall have identification as above, including quarter-quarter section.

(c) All facilities at which Federal or Indian oil is stored shall be clearly identified with a sign that contains the name of the operator, the lease serial number or communitization or unit agreement identification number, as appropriate, and in public land states, the quarter-quarter section, township, and range. On Indian leases, the sign also shall include the name of the appropriate Tribe and whether the lease is tribal or allotted. For situations of 1 tank battery servicing 1 well in the same location, the requirements of this paragraph and paragraph (b) of this section may be met by 1 sign as long as it includes the information required by both paragraphs. In addition, each storage tank shall be clearly identified by a unique number. All identification shall be maintained in legible condition and shall be clearly apparent to any person at or approaching the sales or transportation point. With regard to the quarter-quarter designation and the unique tank number, any such designation established by state law or regulation shall satisfy this requirement.

(d) All abandoned wells shall be marked with a permanent monument containing the information in paragraph (b) of this section. The requirement for a permanent monument may be waived in writing by the authorized officer.

**3162.7 Measurement, Disposition, and Protection of Production.**

**§ 3162.7-1 Disposition of production.**

(a) The operator shall put into marketable condition, if economically feasible, all oil, other

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

hydrocarbons, gas, and sulphur produced from the leased land.

(b) Where oil accumulates in a pit, such oil must either be (1) recirculated through the regular treating system and returned to the stock tanks for sale, or (2) pumped into a stock tank without treatment and measured for sale in the same manner as from any sales tank in accordance with applicable orders and notices. In the absence of prior approval from the authorized officer, no oil should go to a pit except in an emergency. Each such occurrence must be reported to the authorized officer and the oil promptly recovered in accordance with applicable orders and notices.

(c)(1) Any person engaged in transporting by motor vehicle any oil from any lease site, or allocated to any such lease site, shall carry on his/her person, in his/her vehicle, or in his/her immediate control, documentation showing at a minimum; the amount, origin, and intended first purchaser of the oil.

(2) Any person engaged in transporting any oil or gas by pipeline from any lease site, or allocated to any lease site, shall maintain documentation showing, at a minimum, the amount, origin, and intended first purchaser of such oil or gas.

(3) On any lease site, any authorized representative who is properly identified may stop and inspect any motor vehicle that he/she has probable cause to believe is carrying oil from any such lease site, or allocated to such lease site, to determine whether the driver possesses proper documentation for the load of oil.

(4) Any authorized representative who is properly identified and who is accompanied by an appropriate law enforcement officer, or an appropriate law enforcement officer alone, may stop and inspect any motor vehicle which is not on a lease site if he/she has probable cause to believe the vehicle is carrying oil from a lease site, or allocated to a lease site, to determine whether the driver possesses proper documentation for the load of oil.

(d) The operator shall conduct operations in such a manner as to prevent avoidable loss of oil and gas. A operator shall be liable for royalty payments on oil or gas lost or wasted from a lease site, or allocated to a lease site, when such loss or waste is due to negligence on the part of the operator of such lease, or due to the failure of the operator to comply with any regulation, order or citation issued pursuant to this part.

(e) When requested by the authorized officer, the operator shall furnish storage for royalty oil, on the leasehold or at a mutually agreed upon delivery point off the leased land without cost to the lessor, for 30 days following the end of the calendar month in which the royalty accrued.

(f) Any records generated under this section shall be maintained for 6 years from the date they were generated or, if notified by the Secretary, or his designee, that such records are involved in an audit or investigation, the records shall be maintained until the recordholder is released by the Secretary from the obligation to maintain them.

**§ 3162.7-2 Measurement of oil.**

All oil production shall be measured on the lease by tank gauging, positive displacement metering system, or other methods acceptable to the authorized officer, pursuant to methods and procedures prescribed in applicable orders and notices. Where production cannot be measured due to spillage or leakage, the amount of production shall be determined in accordance with the methods and procedures approved or prescribed by the authorized officer. Off-lease storage or measurement, or commingling with production from other sources prior to measurement, may be approved by the authorized officer.

**§ 3162.7-3 Measurement of gas.**

All gas production shall be measured by orifice meters or other methods acceptable to the authorized officer on the lease pursuant to methods and procedures prescribed in applicable orders and notices. The measurement of the volume of all gas produced shall be adjusted by computation to the standard pressure and temperature of 14.73 pisa and 60° F unless otherwise prescribed by the authorized officer, regardless of the pressure and temperature

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

at which the gas is actually measured. Gas lost without measurement by meter shall be estimated in accordance with methods prescribed in applicable orders and notices. Off-lease measurement or commingling with production from other sources prior to measurement may be approved by the authorized officer.

**§ 3162.7-4 Royalty rates on oil; sliding and step-scale leases (public land only).**

Sliding- and step-scale royalties are based on the average daily production per well. The authorized officer shall specify which wells on a leasehold are commercially productive, including in that category all wells, whether produced or not, for which the annual value of permissible production would be greater than the estimated reasonable annual lifting cost, but only wells that yield a commercial volume of production during at least part of the month shall be considered in ascertaining the average daily production per well. The average daily production per well for a lease is computed on the basis of a 28-, 29-, 30-, or 31-day month (as the case may be), the number of wells on the leasehold counted as producing, and the gross production from the leasehold. The authorized officer will determine which commercially productive wells shall be considered each month as producing wells for the purpose of computing royalty in accordance with the following rules, and in the authorized officer's discretion may count as producing any commercially productive well shut in for conservation purposes.

(a) For a previously producing leasehold, count as producing for every day of the month each previously producing well that produced 15 days or more during the month, and disregard wells that produced less than 15 days during the month.

(b) Wells approved by the authorized officer as input wells shall be counted as producing wells for the entire month if so used 15 days or more during the month and shall be disregarded if so used less than 15 days during the month.

(c) When the initial production of a leasehold is made during the calendar month, compute royalty on the basis of producing well days.

(d) When a new well is completed for production on a previously producing leasehold and produces for 10 days or more during the calendar month in which it is brought in, count such new wells as producing every day of the month in arriving at the number of producing well days. Do not count any new well that produces for less than 10 days during the calendar month.

(e) Consider "head wells" that make their best production by intermittent pumping or flowing as producing every day of the month, provided they are regularly operated in this manner with approval of the authorized officer.

(f) For previously producing leaseholds on which no wells produced for 15 days or more, compute royalty on the basis of actual producing well days.

(g) For previously producing leaseholds on which no wells were productive during the calendar month but from which oil was shipped, compute royalty at the same royalty percentage as that of the last preceding calendar month in which production and shipments were normal.

(h) Rules for special cases not subject to definition, such as those arising from averaging the production from two distinct sands or horizons when the production of one sand or horizon is relatively insignificant compared to that of the other, shall be made by the authorized officer as need arises.

(i)(1) In the following summary of operations on a typical leasehold for the month of June, the wells considered for the purpose of computing royalty on the entire production of the property for the months are indicated.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| Well No. and record | Count (marked X) |
|---|---|
| 1. Produced full time for 30 days ..................................... | X |
| 2. Produced for 26 days; down 4 days for repairs....................... | X |
| 3. Produced for 28 days; down June 5, 12 hours, rods; June 14, 6 hours, engine down; June 26, 24 hours, pulling rods and tubing.......................................................... | X |
| 4. Produced for 12 days; down June 13 to 30 | |
| 5. Produced for 8 hours every day (head well)........................... | X |
| 6. Idle producer (not operated) | |
| 7. New well, completed June 17; produced for 14 days.................... | X |
| 8. New well, completed June 22; produced for 9 days. | |

(2) In this example, there are eight wells on the leasehold, but wells No. 4, 6, and 8 are not counted in computing royalties. Wells No. 1, 2, 3, 5, and 7 are counted as producing for 30 days. The average production per well per day is determined by dividing the total production of the leasehold for the month (including the oil produced by wells 4 and 8) by 5 (the number of wells counted as producing), and dividing the quotient thus obtained by the number of days in the month.

**§ 3162.7-5 Site security on Federal and Indian (except Osage) oil and gas leases.**

(a) Definitions--

Appropriate valves. Those valves in a particular piping system, i.e., fill lines, equalizer or overflow lines, sales lines, circulating lines, and drain lines, that shall be sealed during a given operation.

Effectively sealed. The placement of a seal in such a manner that the position of the sealed valve may not be altered without the seal being destroyed.

Production phase. That period of time or mode of operation during which crude oil is delivered directly to or through production vessels to the storage facilities and includes all operations at the facility other than those defined by the sales phase.

Sales phase. That period of time or mode of operation during which crude oil is removed from the storage facilities for sales, transportation or other purposes.

Seal. A device, uniquely numbered, which completely secures a valve.

(b) Minimum Standards. Each operator of a Federal or Indian lease shall comply with the following minimum standards to assist in providing accountability of oil or gas production:

(1) All lines entering or leaving oil storage tanks shall have valves capable of being effectively sealed during the production and sales operations unless otherwise modified by other subparagraphs of this paragraph, and any equipment needed for effective sealing, excluding the seals, shall be located at the site. For a minimum of 6 years the operator shall maintain a record of seal numbers used and shall document on which valves or connections they were used as well as when they were installed and removed. The site facility diagram(s) shall show which valves will be sealed in which position during both the production and sales phases of operation.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(2) Each Lease Automatic Custody Transfer (LACT) system shall employ meters that have non-resettable totalizers. There shall be no by-pass piping around the LACT. All components of the LACT that are used for volume or quality determinations of the oil shall be effectively sealed. For systems where production may only be removed through the LACT, no sales or equalizer valves need be sealed. However, any valves which may allow access for removal of oil before measurement through the LACT shall be effectively sealed.

(3) There shall be no by-pass piping around gas meters. Equipment which permits changing the orifice plate without bleeding the pressure off the gas meter run is not considered a by-pass.

(4) For oil measured and sold by hand gauging, all appropriate valves shall be sealed during the production or sales phase, as applicable.

(5) Circulating lines having valves which may allow access to remove oil from storage and sales facilities to any other source except through the treating equipment back to storage shall be effectively sealed as near the storage tank as possible.

(6) The operator, with reasonable frequency, shall inspect all leases to determine production volumes and that the minimum site security standards are being met. The operator shall retain records of such inspections and measurements for 6 years from generation. Such records and measurements shall be available to any authorized officer or authorized representative upon request.

(7) Any person removing oil from a facility by motor vehicle shall possess the identification documentation required by applicable NTL's or onshore Orders while the oil is removed and transported.

(8) Theft or mishandling of oil from a Federal or Indian lease shall be reported to the authorized officer as soon as discovered, but not later than the next business day. Said report shall include an estimate of the volume of oil involved. Operators also are expected to report such thefts promptly to local law enforcement agencies and internal company security.

(9) Any operator may request the authorized officer to approve a variance from any of the minimum standards prescribed by this section. The variance request shall be submitted in writing to the authorized officer who may consider such factors as regional oil field facility characteristics and fenced, guarded sites. The authorized officer may approve a variance if the proposed alternative will ensure measures equal to or in excess of the minimum standards provided in paragraph (b) of this section will be put in place to detect or prevent internal and external theft, and will result in proper production accountability.

(c) Site security plans.

(1) Site security plans, which include the operator's plan for complying with the minimum standards enumerated in paragraph (b) of this section for ensuring accountability of oil/condensate production are required for all facilities and such facilities shall be maintained in compliance with the plan. For new facilities, notice shall be given that it is subject to a specific existing plan, or a notice of a new plan shall be submitted, no later than 60 days after completion of construction or first production or following the inclusion of a well on committed non-Federal lands into a federally supervised unit or communitization agreement, whichever occurs first, and on that date the facilities shall be in compliance with the plan. At the operator's option, a single plan may include all of the operator's leases, unit and communitized areas, within a single BLM district, provided the plan clearly identifies each lease, unit, or communitized area included within the scope of the plan and the extent to which the plan is applicable to each lease, unit, or communitized area so identified.

(2) The operator shall retain the plan but shall notify the authorized officer of its completion and which leases, unit and communitized areas are involved. Such notification is due at the time the plan is completed as required by paragraph (c)(1) of this section, Such notification shall include the location and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

normal business hours of the office where the plan will be maintained. Upon request, all plans shall be made available to the authorized officer.

(3) The plan shall include the frequency and method of the operator's inspection and production volume recordation. The authorized officer may, upon examination, require adjustment of the method or frequency of inspection.

(d) Site facility diagrams.

(1) Facility diagrams are required for all facilities which are used in storing oil/condensate produced from, or allocated to, Federal or Indian lands. Facility diagrams shall be filed within 60 days after new measurement facilities are installed or existing facilities are modified or following the inclusion of the facility into a federally supervised unit or communitization agreement.

(2) No format is prescribed for facility diagrams. They are to be prepared on 8 1/2 " x 11" paper, if possible, and be legible and comprehensible to a person with ordinary working knowledge of oil field operations and equipment. The diagram need not be drawn to scale.

(3) A site facility diagram shall accurately reflect the actual conditions at the site and shall, commencing with the header if applicable, clearly identify the vessels, piping, metering system, and pits, if any, which apply to the handling and disposal of oil, gas and water. The diagram shall indicate which valves shall be sealed and in what position during the production or sales phase. The diagram shall clearly identify the lease on which the facility is located and the site security plan to which it is subject, along with the location of the plan.

**§ 3162.8 [Reserved]**

**Subpart 3163. Noncompliance, Assessments, and Penalties (Refs & Annos)**

**§ 3163.1 Remedies for acts of noncompliance.**

(a) Whenever an operating rights owner or operator fails or refuses to comply with the regulations in this part, the terms of any lease or Permit, or the requirements of any notice or order, the authorized officer shall notify the operating rights owner or operator, as appropriate, in writing of the violation or default. Such notice shall also set forth a reasonable abatement period:

(1) If the violation or default is not corrected within the time allowed, the authorized officer may subject the operating rights owner or operator, as appropriate, to an assessment of not more than $500 per day for each day nonabatement continues where the violation or default is deemed a major violation;

(2) Where noncompliance involves a minor violation, the authorized officer may subject the operating rights owner or operator, as appropriate, to an assessment of $250 for failure to abate the violation or correct the default within the time allowed;

(3) When necessary for compliance, or where operations have been commenced without approval, or where continued operations could result in immediate, substantial, and adverse impacts on public health and safety, the environment, production accountability, or royalty income, the authorized officer may shut down operations. Immediate shut-in action may be taken where operations are initiated and conducted without prior approval, or where continued operations could result in immediate, substantial, and adverse impacts on public health and safety, the environment, production accountability, or royalty income. Shut-in actions for other situations may be taken only after due notice, in writing, has been given;

(4) When necessary for compliance, the authorized officer may enter upon a lease and perform, or have performed, at the sole risk and expense of the operator, operations that the operator fails to perform when directed in writing by the authorized officer. Appropriate charges shall include the actual cost of performance, plus an additional 25 percent of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

such amount to compensate the United States for administrative costs. The operator shall be provided with a reasonable period of time either to take corrective action or to show why the lease should not be entered;

(5) Continued noncompliance may subject the lease to cancellation and forfeiture under the bond. The operator shall be provided with a reasonable period of time either to take corrective action or to show why the lease should not be recommended for cancellation;

(6) Where actual loss or damage has occurred as a result of the operator's noncompliance, the actual amount of such loss or damage shall be charged to the operator.

(b) Certain instances of noncompliance are violations of such a serious nature as to warrant the imposition of immediate assessments upon discovery. Upon discovery the following violations shall result in immediate assessments, which may be retroactive, in the following specified amounts per violation:

(1) For failure to install blowout preventer or other equivalent well control equipment, as required by the approved drilling plan, $500 per day for each day that the violation existed, including days the violation existed prior to discovery, not to exceed $5,000;

(2) For drilling without approval or for causing surface disturbance on Federal or Indian surface preliminary to drilling without approval, $500 per day for each day that the violation existed, including days the violation existed prior to discovery, not to exceed $5,000;

(3) For failure to obtain approval of a plan for well abandonment prior to commencement of such operations, $500.

(c) Assessments under paragraph (a)(1) of this section shall not exceed $1,000 per day, per operating rights owner or operator, per lease. Assessments under paragraph (a)(2) of this section shall not exceed a total of $500 per operating rights owner or operator, per lease, per inspection.

(d) Continued noncompliance shall subject the operating rights owner or operator, as appropriate, to penalties described in § 3163.2 of this title.

(e) On a case-by-case basis, the State Director may compromise or reduce assessments under this section. In compromising or reducing the amount of the assessment, the State Director shall state in the record the reasons for such determination.

**§ 3163.2 Civil penalties.**

(a) Whenever an operating rights owner or operator, as appropriate, fails or refuses to comply with any applicable requirements of the Federal Oil and Gas Royalty Management Act, any mineral leasing law, any regulation thereunder, or the terms of any lease or permit issued thereunder, the authorized officer shall notify the operating rights owner or operator, as appropriate, in writing of the violation, unless the violation was discovered and reported to the authorized officer by the liable person or the notice was previously issued under § 3163.1 of this title. If the violation is not corrected within 20 days of such notice or report, or such longer time as the authorized officer may agree to in writing, the operating rights owner or operator, as appropriate, shall be liable for a civil penalty of up to $500 per violation for each day such violation continues, dating from the date of such notice or report. Any amount imposed and paid as assessments under the provisions of § 3163.1(a)(1) of this title shall be deducted from penalties under this section.

(b) If the violation specified in paragraph (a) of this section is not corrected within 40 days of such notice or report, or a longer period as the authorized officer may agree to in writing, the operating rights owner or operator, as appropriate, shall be liable for a civil penalty of up to $5,000 per violation for each day the violation continues, not to exceed a maximum of 60 days, dating from the date of such notice or report. Any amount imposed and paid as assessments under the provisions of § 3163.1(a)(1) of this title shall be deducted from penalties under this section.

(c) In the event the authorized officer agrees to an abatement period of more than 20 days, the date of notice shall be deemed to be 20 days prior to the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

end of such longer abatement period for the purpose of civil penalty calculation.

(d) Whenever a transporter fails to permit inspection for proper documentation by any authorized representative, as provided in § 3162.7-1(c) of this title, the transporter shall be liable for a civil penalty of up to $500 per day for the violation, not to exceed a maximum of 20 days, dating from the date of notice of the failure to permit inspection and continuing until the proper documentation is provided.

(e) Any person shall be liable for a civil penalty of up to $10,000 per violation for each day such violation continues, not to exceed a maximum of 20 days if he/she:

(1) Fails or refuses to permit lawful entry or inspection authorized by § 3162.1(b) of this title; or

(2) Knowingly or willfully fails to notify the authorized officer by letter or Sundry Notice, Form 3160-5 or orally to be followed by a letter or Sundry Notice, not later than the 5th business day after any well begins production on which royalty is due, or resumes production in the case of a well which has been off of production for more than 90 days, from a well located on a lease site, or allocated to a lease site, of the date on which such production began or resumed.

(f) Any person shall be liable for a civil penalty of up to $25,000 per violation for each day such violation continues, not to exceed a maximum of 20 days if he/she:

(1) Knowingly or willfully prepares, maintains or submits false, inaccurate or misleading reports, notices, affidavits, records, data or other written information required by this part; or

(2) Knowingly or willfully takes or removes, transports, uses or diverts any oil or gas from any Federal or Indian lease site without having valid legal authority to do so; or

(3) Purchases, accepts, sells, transports or conveys to another any oil or gas knowing or having reason to know that such oil or gas was stolen or unlawfully removed or diverted from a Federal or Indian lease site.

(g) Determinations of Penalty Amounts for this section are as follows:

(1) For major violations, all initial proposed penalties shall be at the maximum rate provided in paragraphs (a), (b), and (d) through (f) of this section, i.e., in paragraph (a) of this section, the initial proposed penalty for a major violation shall be at the rate of $500 per day through the 40th day of a noncompliance beginning after service of notice, and in paragraph (b) of this section, $5,000 per day for each day the violation remains uncorrected after the date of notice or report of the violation. Such penalties shall not exceed a rate of $1,000 per day, per operating rights owner or operator per lease under paragraph (a) of this section or $10,000 per day, per operating rights owner or operator per lease under paragraph (b) of this section. For paragraphs (d) through (f) of this section, the rate shall be $500, $10,000, and $25,000, respectively.

(2) For minor violations, no penalty under paragraph (a) of this section shall be assessed unless:

(i) The operating rights owner or operator, as appropriate, has been notified of the violation in writing and did not correct the violation within the time allowed; and

(ii) The operating rights owner or operator, as appropriate, has been assessed $250 under § 3163.1 of this title and a second notice has been issued giving an abatement period of not less than 20 days; and

(iii) The noncompliance was not abated within the time allowed by the second notice. The initial proposed penalty for a minor violation under paragraph (a) of this section shall be at the rate of $50 per day beginning with the date of the second notice. Under paragraph (b) of this section, the penalty shall be at a daily rate of $500. Such penalties shall not exceed a rate of $100 per day, per operating rights owner or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

operator, per lease under paragraph (a) of this section, of $1,000 per day, per operating rights owner or operator, per lease under paragraph (b) of this section.

(h) On a case-by-case basis, the Secretary may compromise or reduce civil penalties under this section. In compromising or reducing the amount of a civil penalty, the Secretary shall state on the record the reasons for such determination.

(i) Civil penalties provided by this section shall be supplemental to, and not in derogation of, any other penalties or assessments for noncompliance in any other provision of law, except as provided in paragraphs (a) and (b) of this section.

(j) If the violation continues beyond the 60-day maximum specified in paragraph (b) of this section or beyond the 20 day maximum specified in paragraphs (e) and (f) of this section, lease cancellation proceedings shall be initiated under either Title 43 or Title 25 of the Code of Federal Regulations.

(k) If the violation continues beyond the 20-day maximum specified in paragraph (d) of this section, the authorized officer shall revoke the transporter's authority to remove crude oil or other liquid hydrocarbons from any Federal or Indian lease under the authority of that authorized officer or to remove any crude oil or liquid hydrocarbons allocation to such lease site. This revocation of the transporter's authority shall continue until compliance is achieved and related penalty paid.

**§ 3163.3 Criminal penalties.**

Any person who commits an act for which a civil penalty is provided in § 3163.2(f) shall, upon conviction, be punished by a fine of not more than $50,000, or by imprisonment for not more than 2 years, or both.

**§ 3163.4 Failure to pay.**

If any person fails to pay an assessment or a civil penalty under § 3163.1 or § 3163.2 of this title after the order making the assessment or penalty becomes a final order, and if such person does not file a petition for judicial review in accordance with this subpart, or, after a court in an action brought under this subpart has entered a final judgment in favor of the Secretary, the court shall have jurisdiction to award the amount assessed plus interest from the date of the expiration of the 90-day period provided by § 3165.4(e) of this title. The Federal Oil and Gas Royalty Management Act requires that any judgment by the court shall include an order to pay.

**§ 3163.5 Assessments and civil penalties.**

(a) Assessments made under § 31363.1 of this title are due upon issuance and shall be paid within 30 days of receipt of certified mail written notice or personal service, as directed by the authorized officer in the notice. Failure to pay assessed damages timely will be subject to late payment charges as prescribed under Title 30 CFR Group 202.

(b) Civil penalties under § 3163.2 of this title shall be paid within 30 days of completion of any final order of the Secretary or the final order of the Court.

(c) Payments made pursuant to this section shall not relieve the responsible party of compliance with the regulations in this part or from liability for waste or any other damage. A waiver of any particular assessment shall not be construed as precluding an assessment pursuant to § 3163.1 of this title for any other act of noncompliance occurring at the same time or at any other time. The amount of any civil penalty under § 3163.2 of this title, as finally determined, may be deducted from any sums owing by the United States to the person charged.

**§ 3163.6 Injunction and specific performance.**

(a) In addition to any other remedy under this part or any mineral leasing law, the Attorney General of the United States or his designee may bring a civil action in a district court of the United States to:

(1) Restrain any violation of the Federal Oil and Gas Royalty and Management Act or any mineral leasing law of the United States; or

(2) Compel the taking of any action required by or under the Act or any mineral leasing law of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the United States.

(b) A civil action described in paragraph (a) may be brought only in the United States district court of the judicial district wherein the act, omission or transaction constituting a violation under the Act or any other mineral leasing law occurred, or wherein the defendant is found or transacts business.

**Subpart 3164. Special Provisions**

**§ 3164.1 Onshore Oil and Gas Orders.**

(a) The Director is authorized to issue Onshore Oil and Gas Orders when necessary to implement and supplement the regulations in this part. All orders will be published in the FEDERAL REGISTER both for public comment and in final form.

(b) These Orders are binding on operating rights owners and operators, as appropriate, of Federal and restricted Indian oil and gas leases which have been, or may hereafter be, issued. The Onshore Oil and Gas Orders listed below are currently in effect:

| Order No. | Subject | Effective date | Federal Register reference | Supersedes |
|---|---|---|---|---|
| 1 | Approval of operations | Nov. 21, 1983 | 48 FR 48916 and 48 FR 56226 | NTL-6. |
| 2 | Drilling | Dec. 19, 1988 | 53 FR 46790 | None. |
| 3 | Site security | Mar. 27, 1989 | 54 FR 8056 | NTL-7. |
| 4 | Measurement of oil | Aug. 23, 1989 | 54 FR 8086 | None. |
| 5 | Measurement of gas | Mar. 27, 1989, new facilities greater than 200 MCF production; Aug. 23, 1989, existing facility greater than 200 MCF production; Feb. 26, 1990, existing facility less than 200 | | |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

```
                              MCF production ......... 54 FR 8100 ... None.
6......... Hydrogen
             Sulfide

             Operations .. Jan. 22, 1991 ........... 55 FR 48958 .. None.
7......... Disposal of
             Produced
             Water ....... Oct. 8, 1993 ............ 58 FR 47354 .. NTL-2B
 ______________________________________________________________________________
FNNote: Numbers to be assigned sequentially by the Washington Office as
  proposed Orders are prepared for publication.
```

**§ 3164.2 NTL's and other implementing procedures.**

(a) The authorized officer is authorized to issue NTL's when necessary to implement the onshore oil and gas orders and the regulations in this part. All NTL's will be issued after notice and opportunity for comment.

(b) All NTL's issued prior to the promulgation of these regulations shall remain in effect until modified, superseded by an Onshore Oil and Gas Order, or otherwise terminated.

(c) A manual and other written instructions will be used to provide policy and procedures for internal guidance of the Bureau of Land Management.

**§ 3164.3 Surface rights.**

(a) Operators shall have the right of surface use only to the extent specifically granted by the lease. With respect to restricted Indian lands, additional surface rights may be exercised when granted by a written agreement with the Indian surface owner and approved by the Superintendent of the Indian agency having jurisdiction.

(b) Except for National Forest System lands, the authorized officer is responsible for approving and supervising the surface use of all drilling, development, and production activities on the leasehold. This includes storage tanks and processing facilities, sales facilities, all pipelines upstream from such facilities, and other facilities to aid production such as water disposal pits and lines, and gas or water injection lines.

(c) On National Forest System lands, the Forest Service shall regulate all surface disturbing activities in accordance with Forest Service regulations, including providing to the authorized officer appropriate approvals of such activities.

**§ 3164.4 Damages on restricted Indian lands.**

Assessments for damages to lands, corps, buildings, and to other improvements on restricted Indian lands shall be made by the Superintendent and be payable in the manner prescribed by said official.

**Subpart 3165. Relief, Conflicts, and Appeals**

**§ 3165.1 Relief from operating and producing requirements.**

(a) Applications for relief from either the operating or the producing requirements of a lease, or both, shall be filed with the authorized officer, and shall include a full statement of the circumstances that render such relief necessary.

(b) The authorized officer shall act on applications submitted for a suspension of operations or production, or both, filed pursuant to § 3103.4-4 of this title. The application for suspension shall be filed with the authorized officer prior to the expiration date of the lease; shall be executed by all operating rights owners or, in the case of a Federal unit approved under Part 3180 of this title, by the unit operator on behalf of the committed tracts or by all operating rights owners of such tracts; and shall include a full statement of the circumstances that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

makes such relief necessary.

(c) If approved, a suspension of operations and production will be effective on the first of the month in which the completed application was filed or the date specified by the authorized officer. Suspensions will terminate when they are no longer justified in the interest of conservation, when such action is in the interest of the lessor, or as otherwise stated by the authorized officer in the approval letter.

**§ 3165.1-1 Relief from royalty and rental requirements.**

Applications for any modification authorized by law of the royalty or rental requirements of a lease for lands of the United States shall be filed in the office of the authorized officer having jurisdiction of the lands. (For other regulations relating to royalty and rental relief, and suspension of operations and production, see Part 3103 of this title.)

**§ 3165.2 Conflicts between regulations.**

In the event of any conflict between the regulations in this part and the regulations in Title 25 CFR concerning oil and gas operations on Federal and Indian leaseholds, the regulations in this part shall govern with respect to the obligations in the conduct of oil and gas operations, acts of noncompliance, and the jurisdiction and authority of the authorized officer.

**§ 3165.3 Notice, State Director review and hearing on the record.**

(a) Notice. Whenever an operating rights owner or operator, as appropriate, fails to comply with any provisions of the lease, the regulations in this part, applicable orders or notices, or any other appropriate orders of the authorized officer, written notice shall be given the appropriate party and the lessee(s), to remedy any defaults or violations. Written orders or a notice of violation, assessment, or proposed penalty shall be issued and served by personal service by an authorized officer or by certified mail. Service shall be deemed to occur when received or 7 business days after the date it is mailed, whichever is earlier. Any person may designate a representative to receive any notice of violation, assessment, or proposed penalty on his/her behalf. In the case of a major violation, the authorized officer shall make a good faith effort to contact such designated representative by telephone to be followed by a written notice. Receipt of notice shall be deemed to occur at the time of such verbal communication, and the time of notice and the name of the receiving party shall be confirmed in the file. If the good faith effort to contact the designated representative is unsuccessful, notice of the major violation may be given to any person conducting or supervising operations subject to the regulations in this part. In the case of a minor violation, written notice shall be provided as described above. A copy of all orders, notices, or instructions served on any contractor or field employee or designated representative shall also be mailed to the operator. Any notice involving a civil penalty shall be mailed to the operating rights owner.

(b) State Director review. Any adversely affected party that contests a notice of violation or assessment or an instruction, order, or decision of the authorized officer issued under the regulations in this part, may request an administrative review, before the State Director, either with or without oral presentation. Such request, including all supporting documentation, shall be filed in writing with the appropriate State Director within 20 business days of the date such notice of violation or assessment or instruction, order, or decision was received or considered to have been received and shall be filed with the appropriate State Director. Upon request and showing of good cause, an extension for submitting supporting data may be granted by the State Director. Such review shall include all factors or circumstances relevant to the particular case. Any party who is adversely affected by the State Director's decision may appeal that decision to the Interior Board of Land Appeals as provided in § 3165.4 of this part.

(c) Review of proposed penalties. Any adversely affected party wishing to contest a notice of proposed penalty shall request an administrative review before the State Director under the procedures set out in paragraph (b) of this section. However, no civil penalty shall be assessed under this part until the party charged with the violation

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

has been given the opportunity for a hearing on the record in accordance with section 109(e) of the Federal Oil and Gas Royalty Management Act. Therefore, any party adversely affected by the State Director's decision on the proposed penalty, may request a hearing on the record before an Administrative Law Judge or, in lieu of a hearing, may appeal that decision directly to the Interior Board of Land Appeals as provided in § 3165.4(b)(2) of this part. If such party elects to request a hearing on the record, such request shall be filed in the office of the State Director having jurisdiction over the lands covered by the lease within 30 days of receipt of the State Director's decision on the notice of proposed penalty. Where a hearing on the record is requested, the State Director shall refer the complete case file to the Office of Hearings and Appeals for a hearing before an Administrative Law Judge in accordance with part 4 of this title. A decision shall be issued following completion of the hearing and shall be served on the parties. Any party, including the United States, adversely affected by the decision of the Administrative Law Judge may appeal to the Interior Board of Land Appeals as provided in § 3163.4 of this title.

(d) Action on request for State Director review. Action on request for administrative review. The State Director shall issue a final decision within 10 business days of the receipt of a complete request for administrative review or, where oral presentation has been made, within 10 business days therefrom. Such decision shall represent the final Bureau decision from which further review may be obtained as provided in paragraph (c) of this section for proposed penalties, and in § 3165.4 of this title for all decisions.

(e) Effect of request for State Director review or for hearing on the record.

(1) Any request for review by the State Director under this section shall not result in a suspension of the requirement for compliance with the notice of violation or proposed penalty, or stop the daily accumulation of assessments or penalties, unless the State Director to whom the request is made so determines.

(2) Any request for a hearing on the record before an administrative law judge under this section shall not result in a suspension of the requirement for compliance with the decision, unless the administrative law judge so determines. Any request for hearing on the record shall stop the accumulation of additional daily penalties until such time as a final decision is rendered, except that within 10 days of receipt of a request for a hearing on the record, the State Director may, after review of such request, recommend that the Director reinstate the accumulation of daily civil penalties until the violation is abated. Within 45 days of the filing of the request for a hearing on the record, the Director may reinstate the accumulation of civil penalties if he/she determines that the public interest requires a reinstatement of the accumulation and that the violation is causing or threatening immediate, substantial and adverse impacts on public health and safety, the environment, production accountability, or royalty income. If the Director does not reinstate the daily accumulation within 45 days of the filing of the request for a hearing on the record, the suspension shall continue.

**§ 3165.4 Appeals.**

(a) Appeal of decision of State Director. Any party adversely affected by the decision of the State Director after State Director review, under § 3165.3(b) of this title, of a notice of violation or assessment or of an instruction, order, or decision may appeal that decision to the Interior Board of Land Appeals pursuant to the regulations set out in Part 4 of this title.

(b) Appeal from decision on a proposed penalty after a hearing on the record.

(1) Any party adversely affected by the decision of an Administrative Law Judge on a proposed penalty after a hearing on the record under § 3165.3(c) of this title may appeal that decision to the Interior Board of Land Appeals pursuant to the regulations in Part 4 of this title.

(2) In lieu of a hearing on the record under § 3165.3(c) of this title, any party adversely affected by the decision of the State Director

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

on a proposed penalty may waive the opportunity for such a hearing on the record by appealing directly to the Interior Board of Land Appeals under Part 4 of this title. However, if the right to a hearing on the record is waived, further appeal to the District Court under section 109(j) of the Federal Oil and Gas Royalty Management Act is precluded.

(c) Effect of an appeal on an approval/decision by a State Director or Administrative Law Judge. All decisions and approvals of a State Director or Administrator Law Judge under this part shall remain effective pending appeal unless the Interior Board of Land Appeals determines otherwise upon consideration of the standards stated in this paragraph. The provisions of 43 CFR 4.21(a) shall not apply to any decision or approval of a State Director or Administrative Law Judge under this part. A petition for a stay of a decision or approval of a State Director or Administrative Law Judge shall be filed with the Interior Board of Land Appeals, Office of Hearings and Appeals, Department of the Interior, and shall show sufficient justification based on the following standards:

(1) The relative harm to the parties if the stay is granted or denied,

(2) The likelihood of the appellant's success on the merits,

(3) The likelihood of irreparable harm to the appellant or resources if the stay is not granted, and

(4) Whether the public interest favors granting the stay.

Nothing in this paragraph shall diminish the discretionary authority of a State Director or Administrative Law Judge to stay the effectiveness of a decision subject to appeal pursuant to paragraph (a) or (b) of this section upon a request by an adversely affected party or on the State Director's or Administrative Law Judge's own initiative. If a State Director or Administrative Law Judge denies such a request, the requester can petition for a stay of the denial decision by filing a petition with the Interior Board of Land Appeals that addresses the standards described above in this paragraph.

(d) Effect of appeal on compliance requirements. Except as provided in paragraph (d) of this section, any appeal filed pursuant to paragraphs (a) and (b) of this section shall not result in a suspension of the requirement for compliance with the order or decision from which the appeal is taken unless the Interior Board of Land Appeals determines that suspension of the requirements of the order or decision will not be detrimental to the interests of the lessor or upon submission and acceptance of a bond deemed adequate to indemnify the lessor from loss or damage.

(e) Effect of appeal on assessments and penalties.

(1) Except as provided in paragraph (3) of this section, an appeal filed pursuant to paragraph (a) of this section shall suspend the accumulation of additional daily assessments. However, the pendency of an appeal shall not bar the authorized officer from assessing civil penalties under § 3163.2 of this title in the event the operator has failed to abate the violation which resulted in the assessment. The Board of Land Appeals may issue appropriate orders to coordinate the pending appeal and the pending civil penalty proceeding.

(2) Except as provided in paragraph (3) of this section, an appeal filed pursuant to paragraph (b) of this section shall suspend the accumulation of additional daily civil penalties.

(3) When an appeal is filed under paragraph (a) or (b) of this section, the State Director may, within 10 days of receipt of the notice of appeal, recommend that the Director reinstate the accumulation of assessments and daily civil penalties until such time as a final decision is rendered or until the violation is abated. The Director may, if he/she determines that the public interest requires it, reinstate such accumulation(s) upon a finding that the violation is causing or threatening immediate substantial and adverse impacts on public health and safety, the environment, production accountability, or royalty income. If the Director does not act on the recommendation to reinstate the accumulation(s) within 45 days of the filing of the notice of appeal, the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

suspension shall continue.

(4) When an appeal is filed under paragraph (a) of this section from a decision to require drainage protection, BLM's drainage determination will remain in effect during the appeal, notwithstanding the provisions of 43 CFR 4.21. Compensatory royalty and interest determined under 30 CFR Part 218 will continue to accrue throughout the appeal.

(f) Judicial review. Any person who is aggrieved by a final order of the Secretary under this section may seek review of such order in the United States District Court for the judicial district in which the alleged violation occurred. Because section 109 of the Federal Oil and Gas Royalty Management Act provides for judicial review of civil penalty determinations only where a person has requested a hearing on the record, a waiver of such hearing precludes further review by the district court. Review by the district court shall be on the administrative record only and not de novo. Such an action shall be barred unless filed within 90 days after issuance of final decision as provided in § 4.21 of this title.

Current through February 16, 2007; 72 FR 7582
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.