Section 1 of Pub.L. 99-221 provided that: "This Act [amending sections **415** and 450i(a) of this title, section 3121(b)(5)(B)(i) of Title 26, Internal Revenue Code, and section 410(a)(5)(B)(i) of Title 42, The Public Health and Welfare, and enacting a provision set out as a note under section 410 of Title 42] may be cited as the 'Cherokee Leasing Act'."

Legislative History

For legislative history and purpose of Act Aug. 9, 1955, see 1955 U.S.Code Cong. and Adm.News, p. 2691. See, also, Pub.L. 86-326, 1959 U.S.Code Cong. and Adm.News, p. 2680; Pub.L. 86-505, 1960 U.S.Code Cong. and Adm.News, p. 2352; Pub.L. 87-785, 1962 U.S.Code Cong. and Adm.News, p. 2940; Pub.L. 90-182, 1967 U.S.Code Cong. and Adm.News, p. 2117; Pub.L. 90-184, 1967 U.S.Code Cong. and Adm.News, p. 2126; Pub.L. 90-355, 1968 U.S.Code Cong. and Adm.News, p. 2317; Pub.L. 91-274, 1970 U.S.Code Cong. and Adm.News, p. 3237; Pub.L. 91-275, 1970 U.S.Code Cong. and Adm.News, p. 3243; Pub.L. 92-431, 1972 U.S.Code Cong. and Adm.News, p. 3362; Pub.L. 96-216, 1980 U.S.Code Cong. and Adm.News, p. 205.

For legislative history and purpose of Pub.L. 97-459, see 1982 U.S. Code Cong. and Adm. News, p. 4415. See, also, Pub.L. 98-70, 1983 U.S. Code Cong. and Adm. News, p. 707; Pub.L. 99-221, 1985 U.S. Code Cong. and Adm. News, p. 2640; Pub.L. 99-591, 1986 U.S. Code Cong. and Adm. News, p. 5627; Pub.L. 101-630, 1990 U.S. Code Cong. and Adm. News, p. 6330; Pub.L. 102-497, 1992 U.S. Code Cong. and Adm. News, p. 2620.

## REFERENCES

### CROSS REFERENCES

Land or natural resources within Passamaquoddy or Penobscot Indian Territory or held in trust for Houlton Band of Maliseet Indians leased in accordance with this section, see § 1724 of this title.

### CODE OF FEDERAL REGULATIONS

General grazing regulations, see **25** CFR 166.1 et seq.
Leasing and permitting, see **25** CFR 162.1 et seq.

### LAW REVIEW COMMENTARIES

Leasing Indian water off the reservation: A use consistent with the reservation's purpose. Lee Herold Storey, 76 Cal.L.Rev. 179 (1988).

### LIBRARY REFERENCES

Indians ⚿16(1).
C.J.S. Indians § 30 et seq.

## ANNOTATIONS

### NOTES OF DECISIONS

Amount of rents 6 .......................................... enter p25
Burden of proof 9 .......................................... enter p28
Case or controversy 7 ...................................... enter p26
Construction with other laws 1 .............................. enter p19
Declaratory judgment 10 ..................................... enter p29
Duty of federal government 5 ................................ enter p24

Injunction 12 ............................................. enter p31
Joinder of parties 8 ....................................... enter p27
Power of Secretary 4 ....................................... enter p23
Rules and regulations 2 .................................... enter p20
State regulation or control 3 .............................. enter p21
Termination of leases 11 ................................... enter p30
United States as party 13 .................................. enter p32

1. Construction with other laws

Amendment dealing primarily with addition of Indian tribes to group having long-term lease authority does not prevent National Environmental Policy Act, § 4321 et seq. of Title 42, from applying to leases on Indian lands. Davis v. Morton, C.A.N.M.1972, 469 F.2d 593.

2. Rules and regulations

To extent that article of lease of Indian lands, which authorized tribe to enforce cancellation, conflicted with federal regulation providing procedure to be followed by Secretary of the Interior in event that there had been violation of lease, Secretary's approval of subject lease had effect of suspending or superseding regulation. Yavapai-Prescott Indian Tribe v. Watt, D.C.Ariz.1981, 528 F.Supp. 695, reversed on other grounds 707 F.2d 1072, certiorari denied 104 S.Ct. 548, 464 U.S. 1017, 78 L.Ed.2d 723.

3. State regulation or control

Tribe stated cognizable claim that transaction privilege tax which State of Arizona sought to impose on entertainment events occurring wholly on reservation property was preempted by federal law, even though state might provide law enforcement services in connection with events; tribe alleged that it worked closely with companies which it had selected to conduct sporting and theatrical activities on reservation and was closely involved in the provision of quality entertainment services to the public on its lands, that it received significant revenues from the events, that the tax was unrelated to any services provided by the state, and that there were strong federal interests in comprehensive federal regulatory scheme governing development and leasing of the property. Gila River Indian Community v. Waddell, C.A.9 (Ariz.) 1992, 967 F.2d 1404.

Application of local rent control ordinances to mobile park operated by non-Indian entity on Indian land held in trust by United States was preempted by federal law; comprehensive statutory and regulatory scheme governing leasing of Indian land existed, and land use regulation was within tribe's legitimate sovereign authority over its land. Segundo v. City of Rancho Mirage, C.A.9 (Cal.) 1987, 813 F.2d 1387.

Even if Congress intended outdoor advertising standards of Highway Beautification Act to apply on Indian reservations, it did not intend that the standards be enforced through assertion of state power; thus, Highway Beautification Act does not authorize state regulation of outdoor advertising on Indian reservation lands. People ex rel. Dept. of Transp. v. Naegele Outdoor Advertising Co. of California, Inc., 1985, 698 P.2d 150, 38 C.3d 509, 213 Cal.Rptr. 247, certiorari denied 106 S.Ct. 1260, 475 U.S. 1045, 89 L.Ed.2d 570.

Municipal exercise of planning and subdivision control authority over Indian lands leased by pueblo to development company for 99 years would conflict with authority which United States has preempted or reserved to itself. Sangre de Cristo Development Corp. Inc. v. City of Santa Fe, 1972, 503 P.2d 323, 84 N.M. 343, certiorari denied 93 S.Ct. 1900, 411 U.S. 938, 36 L.Ed.2d 400.

4. Power of Secretary

Department of Interior's approval of lease of Indian lands must be valid in order for lease to have

legal effect. Sangre De Cristo Development Co., Inc. v. U.S., C.A.10 (N.M.) 1991, 932 F.2d 891, certiorari denied 112 S.Ct. 1760, 118 L.Ed.2d 423.

Provision of this section authorizing restricted Indian lands to be leased for business purposes by Indian owners with approval of Secretary of the Interior does not authorize Secretary to enter into leases of restricted Indian lands for business purposes in behalf of Indian owners; rather, Indians may negotiate leases subject only to inclusion in any lease of "such terms and regulations as may be prescribed by the Secretary" and to his approval of lease. Yavapai-Prescott Indian Tribe v. Watt, D.C.Ariz.1981, 528 F.Supp. 695, reversed 707 F.2d 1072, certiorari denied 104 S.Ct. 548, 464 U.S. 1017, 78 L.Ed.2d 723.

5. Duty of federal government

Federal government, which issued to power company a license which included company's use of a site on Indian tribes' land and which required the company to sell power to federal government at a low rate, did not breach its fiduciary duty to Indian tribes, either subjectively or objectively, in dealing with the company. Confederated Salish and Kootenai Tribes of Flathead Reservation, Mont. v. U.S., 1972, 467 F.2d 1315, 199 Ct.Cl. 599.

6. Amount of rents

Evidence, in action against United States by Indian tribes who claimed they were deprived of full power and value of their lands when Federal Power Commission [now Department of Energy] issued to power company a license which included company's use of a site on tribes' land and which required the company to sell power to federal government at a low rate, failed to establish that a prospective licensee would have anticipated an annual loss in consequence of requirement for furnishing power to United States at low rate, or, even if a prospective licensee would have anticipated an annual loss in consequence of such requirement, that the anticipation of loss would have diminished the rentals payable to tribes but for such requirement. Confederated Salish and Kootenai Tribes of Flathead Reservation, Mont. v. U.S., 1972, 467 F.2d 1315, 199 Ct.Cl. 599.

7. Case or controversy

Even though some sublessees had acquired some lands from long-term corporate lessee which sought to develop residential community on leased Indian land, where no buildings had been constructed or placed upon lands, all activities under lease which was within ambit of National Environmental Protection Act, § 4321 et seq. of Title 42, were in limbo because of injunction prohibiting such activities until there was compliance with mandates of Act and there was a possibility that project would not comply with Act, action by state to compel lessee to comply with applicable state laws in respect to proposed project did not present a case or controversy that could be decided by federal courts. Norvell v. Sangre de Cristo Development Co., Inc., C.A.N.M.1975, 519 F.2d 370.

8. Joinder of parties

Navajo Tribe, which was indispensable party to suit by five members of tribe for cancellation of certain paragraphs of leases negotiated by tribe and power companies, with approval of Secretary of the Interior, could not be joined as a party, in view of Tribe's immunity from suit. Yazzie v. Morton, D.C.Ariz.1973, 59 F.R.D. 377.

9. Burden of proof

In action against United States by Indian tribes who claimed they were deprived of full power and value of their lands when Federal Power Commission [now Department of Energy] issued to power company a license which included company's use of a site on tribes' land and which required company to sell power to federal government at a low rate, tribes had burden of proof on issue as to

what, if anything, they lost from requirement that company sell power to government at low rates. Confederated Salish and Kootenai Tribes of Flathead Reservation, Mont. v. U.S., 1972, 467 F.2d 1315, 199 Ct.Cl. 599.

10. Declaratory judgment

Suit by state to compel non-Indian long-term corporate lessee of Indian land to comply with applicable state laws regarding proposed residential project on Indian land was not properly one for declaratory disposition, where ongoing review of proposed project under National Environmental Protection Act, § 4321 et seq. of Title 42, could result in project not being approved. Norvell v. Sangre de Cristo Development Co., Inc., C.A.N.M.1975, 519 F.2d 370.

11. Termination of leases

Indian tribe lacked authority to unilaterally terminate commercial lease executed in accordance with this section requiring approval of Secretary of the Interior before certain Indian lands could be leased without obtaining Secretary's approval for lease termination. Yavapai-Prescott Indian Tribe v. Watt, C.A.Ariz.1983, 707 F.2d 1072, certiorari denied 104 S.Ct. 548, 464 U.S. 1017, 78 L.Ed.2d 723.

12. Injunction

Outdoor advertising company was not entitled to enjoin another advertising company from constructing billboards on Indian reservation land under theory of unfair competition, since, even if construction of billboards violated federal Highway Beautification Act, Department of Interior was appropriate agency to enforce Act's provisions. People ex rel. Dept. of Transp. v. Naegele Outdoor Advertising Co. of California, Inc., 1985, 698 P.2d 150, 38 C.3d 509, 213 Cal.Rptr. 247, certiorari denied 106 S.Ct. 1260, 475 U.S. 1045, 89 L.Ed.2d 570.

13. United States as party

Statutory requirement that Department of Interior approve lease of Indian land did not make United States party to lease. Sangre De Cristo Development Co., Inc. v. U.S., C.A.10 (N.M.) 1991, 932 F.2d 891, certiorari denied 112 S.Ct. 1760, 118 L.Ed.2d 423.