# EXHIBIT F

Native Allotment Certificate No. 50-2005-0580, dated September 27, 2005

2005-000771-0
Recording Dist: 413 - Barrow
10/12/2005 11:46 AM Pages: 1 of 2
ALASKA

985 2706

# The United States of America

## *Native Allotment*

F-14632
Parcel B, Lot 1

Heirs, Devisees and/or Assigns of Andrew Oenga

This Native Allotment is a deed issued by the UNITED STATES, Department of the Interior, Bureau of Land Management, 222 West Seventh Avenue, #13, Anchorage, Alaska 99513-7599, as GRANTOR, to the Heirs, Devisees and/or Assigns of Andrew Oenga, in care of the Inupiat Community of the Arctic Slope, P.O. Box 934, Barrow, Alaska 99723-0934, as GRANTEE, for lands in the Barrow Recording District.

IT IS HEREBY CERTIFIED That, the application F-14632, Parcel B, Lot 1, filed pursuant to the Act of May 17, 1906, as amended, 43 U.S.C. §§ 270-1 to 270-3 (1970), repealed with a savings provision by 43 U.S.C. § 1617(a) (2000), has been approved pursuant to that Act, as amended, for the following-described land:

Umiat Meridian, Alaska

T. 12 N., R. 15 E.,
Sec. 36, Tract B.

Containing 22.21 acres, as shown on the plat of survey officially filed November 18, 1996.

Therefore, let it be known that, pursuant to the Act of May 17, 1906, as amended, the land described above shall be deemed the homestead of the allottee and his heirs in perpetuity, and shall be inalienable and nontaxable until otherwise provided by Congress or until the Secretary of the Interior or his delegate, pursuant to the provisions of the Act of May 17, 1906, as amended, approves a deed of conveyance vesting in the purchaser a complete title to the land.

Certificate No. 50-2005-0580

EXCEPTING AND RESERVING TO THE UNITED STATES:

1. A right-of-way thereon for ditches or canals constructed by the authority of the United States. Act of August 30, 1890, 43 U.S.C. § 945 (2000); and

2. All of oil and gas in the land so allotted, and to it, or persons authorized by it, the right to prospect for, mine, and remove such deposits from the same upon compliance with the conditions and subject to the provisions and limitations of the Act of March 8, 1922, as amended, 43 U.S.C. §§ 270-11 (1982) (repealed with a savings provision) and 270-12 (2000).

THE GRANT OF THE ABOVE-DESCRIBED LAND IS SUBJECT TO, an easement fifty (50) feet in width adjacent to and north of the section line of Sec. 36, T. 12 N., R. 15 E., Umiat Meridian, for use as a public highway and for public utilities.

Krissell Crandall
Krissell Crandall
Chief, Branch of Adjudication I

Dated at ANCHORAGE, ALASKA

on SEPTEMBER 27 2005

985 2706
BUREAU OF INDIAN AFFAIRS
ALASKA REGIONAL OFFICE
05 SEP 30 AM 11:33
RECORDED

Return Recorded Document to:

Inupiat Community of the Arctic Slope
P.O. Box 934
Barrow, AK 99723
Attn: Realty Department

Certificate No. 50-2005-0580

Page 2 of 2



2 of 2
2005-000771-0

# EXHIBIT G

Tentative Approval decision dated October 9, 1964, as amended by the decision of February 7, 1969 (as corrected on February 19, 1969), as partially rescinded by the decision of March 11, 1980, and as partially rejected by the decision of August 4, 1980

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
Fairbanks District and Land Office
P.O. Box 1150
Fairbanks, Alaska 99701

Certified Mail
Return Receipt Requested

October 9, 1964

DECISION

State of Alaska
Division of Lands
344 Sixth Avenue
Anchorage, Alaska

General Purpose Grant
Act of July 7, 1958
Section 6(b)
F-031755 to F-031765, Incl.
F-031767 to F-031782, Incl.
F-031784 to F-031801, Incl.
F-031803 to F-031805, Incl.
F-031807 to F-031810, Incl.
F-031818 to F-031820, Incl.
F-031827 to F-031837, Incl.
F-031839 to F-031844, Incl.
F-031846, F-031851 and
F-031884

Lands Proper for Selection
Tentative Approval Granted

The State of Alaska has filed the above applications under Section 6(b) of the Act of July 7, 1958, for the following described unsurveyed lands:

UMIAT MERIDIAN

| FAIRBANKS SERIAL NUMBER | TOWNSHIP | RANGE | ACREAGE |
|---|---|---|---|
| 031755, S-1321 | 11 N. | 11 E. | 23,040 |
| 031756, S-1322 | 10 N. | 11 E. | 23,040 |
| 031757, S-1323 | 9 N. | 11 E. | 23,040 |
| 031758, S-1324 | 12 N. | 12 E. | 23,040 |
| 031759, S-1325 | 11 N. | 12 E. | 23,040 |
| 031760, S-1326 | 10 N. | 12 E. | 23,040 |
| 031761, S-1327 | 9 N. | 12 E. | 23,040 |
| 031762, S-1328 | 12 N. | 13 E. | 17,000 |
| 031763, S-1329 | 11 N. | 13 E. | 23,040 |
| 031764, S-1330 | 10 N. | 13 E. | 23,040 |
| 031765, S-1331 | 9 N. | 13 E. | 23,040 |
| 031767, S-1335 | 9 N. | 14 E. | 23,040 |
| 031768, S-1334 | 10 N. | 14 E. | 23,040 |
| 031769, S-1333 | 11 N. | 14 E. | 21,500 |

| FAIRBANKS SERIAL NUMBER | | TOWNSHIP | RANGE | ACREAGE |
|---|---|---|---|---|
| 031770, | S-1336 | 12 N. | 15 E. | 55 |
| 031771, | S-1337 | 11 N. | 15 E. | 16,000 |
| 031772, | S-1338 | 10 N. | 15 E. | 23,040 |
| 031773, | S-1339 | 9 N. | 15 E. | 23,040 |
| 031774, | S-1340 | 12 N. | 16 E. | 100 |
| 031775, | S-1341 | 11 N. | 16 E. | 19,500 |
| 031776, | S-1342 | 10 N. | 16 E. | 23,040 |
| 031777, | S-1343 | 9 N. | 16 E. | 23,040 |
| 031778, | S-1344 | 11 N. | 21 E. | 50 |
| x 031779, | S-1298 | 11 N. | 8 E. | 23,040 |
| 031780, | S-1299 | 10 N. | 8 E. | 23,040 |
| 031781, | S-1300 | 9 N. | 8 E. | 23,040 |
| 031782, | S-1301 | 14 N. | 9 E. | 250 |
| 031784, | S-1303 | 14 N. | 10 E. | 1,100 |
| 031785, | S-1304 | 13 N. | 10 E. | 19,000 |
| 031786, | S-1305 | 14 N. | 11 E. | 500 |
| 031787, | S-1306 | 13 N. | 11 E. | 16,500 |
| 031788, | S-1307 | 14 N. | 12 E. | 50 |
| 031789, | S-1308 | 13 N. | 12 E. | 10,240 |
| 031790, | S-1309 | 13 N. | 13 E. | 275 |
| 031791, | S-1310 | 13 N. | 15 E. | 100 |
| 031792, | S-1311 | 13 N. | 16 E. | 200 |
| 031793, | S-1312 | 12 N. | 9 E. | 23,040 |
| 031794, | S-1313 | 11 N. | 9 E. | 23,040 |
| 031795, | S-1314 | 10 N. | 9 E. | 23,040 |
| 031796, | S-1315 | 9 N. | 9 E. | 23,040 |
| 031797, | S-1316 | 12 N. | 10 E. | 23,040 |
| 031798, | S-1317 | 11 N. | 10 E. | 23,040 |
| 031799, | S-1318 | 10 N. | 10 E. | 23,040 |
| 031800, | S-1319 | 9 N. | 10 E. | 23,040 |
| 031801, | S-1320 | 12 N. | 11 E. | 23,040 |
| 031803, | S-1290 | 11 N. | 6 E. | 23,040 |
| 031804, | S-1291 | 10 N. | 6 E. | 23,040 |
| 031805, | S-1292 | 9 N. | 6 E. | 23,040 |
| 031807, | S-1294 | 11 N. | 7 E. | 23,040 |
| 031808, | S-1295 | 10 N. | 7 E. | 23,040 |
| 031809, | S-1296 | 9 N. | 7 E. | 23,040 |
| 031810, | S-1297 | 12 N. | 8 E. | 23,040 |
| 031818, | S-1282 | 13 N. | 7 E. | 400 |
| 031819, | S-1283 | 14 N. | 8 E. | 200 |
| 031820, | S-1284 | 13 N. | 8 E. | 5,800 |
| 031827, | S-1347 | 10 N. | 22 E. | 3,500 |
| 031828, | S-1348 | 9 N. | 22 E. | 23,040 |
| 031829, | S-1349 | 10 N. | 23 E. | 1,500 |
| 031830, | S-1350 | 9 N. | 23 E. | 23,040 |
| 031831, | S-1351 | 10 N. | 24 E. | 1,000 |
| 031832, | S-1352 | 9 N. | 24 E. | 18,000 |
| 031833, | S-1353 | 9 N. | 25 E. | 16,000 |
| 031834, | S-1354 | 9 N. | 26 E. | 300 |

| FAIRBANKS SERIAL NUMBER | TOWNSHIP | RANGE | ACREAGE |
|---|---|---|---|
| 031835, S-1355 | 11 N. | 17 E. | 8,000 |
| 031836, S-1356 | 10 N. | 17 E. | 19,000 |
| 031837, S-1357 | 9 N. | 17 E. | 23,040 |
| 031839, S-1358 | 12 N. | 18 E. | 100 |
| 031840, S-1359 | 10 N. | 18 E. | 9,000 |
| 031841, S-1360 | 9 N. | 18 E. | 23,040 |
| 031842, S-1361 | 12 N. | 19 E. | 100 |
| 031843, S-1362 | 10 N. | 19 E. | 7,000 |
| 031844, S-1363 | 9 N. | 19 E. | 22,700 |
| 031846, S-1365 | 9 N. | 20 E. | 19,200 |
| 031851, S-1364 | 11 N. | 20 E. | 200 |
| 031884, S-1371 | 10 N. | 20 E. | 20 |

Publication was directed by previous decision and all of the lands applied for were included in the Notice for Publication. The Affidavit of Publication is on file.

The selected lands meet the criteria for compactness; are unreserved; are not known to be occupied or appropriated under the public land laws, including the mining laws; are not valuable for hot or medicinal springs; and otherwise conform to the requirements of the act except exceeding the shorespace limitation on navigable waters which is hereby waived.

In view of the foregoing, the above described lands, aggregating approximately 1,153,000 acres, are considered proper for acquisition by the State and the selections are hereby tentatively approved.

When the lands are patented to the State, the patents will contain reservations for canals and ditches under the Act of August 30, 1890 (26 Stat. 391) and reservations to the United States of a right-of-way for the construction of railroads, telegraph and telephone lines under the Act of March 12, 1914 (36 Stat. 305).

Robert Hilton
Assistant Manager
Lands Branch

cc:
State of Alaska
Division of Lands
Room 107, Court & Office Bldg.
Fairbanks, Alaska

1,153,000
26,800
1,126,200

2222 (221)

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
P.O. Box 1150
Fairbanks, Alaska 99701

February 7, 1969

CERTIFIED MAIL-RETURN RECEIPT REQUESTED

DECISION

State of Alaska
Division of Lands
344 Sixth Avenue
Anchorage, Alaska 99501

: General Purpose Grants
Act of July 7, 1958
Section 6 (b)
: F-031755 et al

Plats Of Survey Officially Filed
Tentative Approval Modified

The decisions of October 9, 14, 19, November 23, 1964, and January 15, 1965, modified by decisions dated February 4, 1965, are hereby further modified to conform the tentatively approved acreage to that shown on the plats of survey filed in this office for the following State Selections:

UMIAT MERIDIAN

| Fairbanks Serial No. | Township | Range | Surveyed Acreage | |
|---|---|---|---|---|
| 031755, S-1321 | 11N. | 11E. | | 22,799.76 |
| 031756, S-1322 | 10N. | 11E. | | 22,896.00 |
| 031757, S-1323 | 9N. | 11E. | | 22,992.00 |
| 031758, S-1324 | 12N. | 12E. | Tract A | 22,666.52 |
| 031759, S-1325 | 11N. | 12E. | | 22,799.76 |
| 031760, S-1326 | 10N. | 12E. | | 22,896.00 |
| 031761, S-1327 | 9N. | 12E. | | 22,992.00 |
| 031762, S-1328 | 12N. | 13E. | Tract A | 19,910.52 |
| 031763, S-1329 | 11N. | 13E. | | 22,799.76 |
| 031764, S-1330 | 10N. | 13E. | | 22,896.00 |
| 031765, S-1331 | 9N. | 13E. | | 22,992.00 |
| 031766, S-1332 | 12N. | 14E. | Tract A | 10,523.56 |
| 031767, S-1335 | 9N. | 14E. | | 22,992.00 |
| 031768, S-1334 | 10N. | 14E. | | 22,896.00 |
| 031769, S-1333 | 11N. | 14E. | Tract A | 21,887.76 |
| 031770, S-1336 | 12N. | 15E. | Tract A | 75.52 |
| 031771, S-1337 | 11N. | 15E. | Tract A | 16,223.76 |
| 031772, S-1338 | 10N. | 15E. | | 22,896.00 |
| 031773, S-1339 | 9N. | 15E. | | 22,992.00 |
| 031774, S-1340 | 12N. | 16E. | Tract A | 70.00 |
| 031775, S-1341 | 11N. | 16E. | Tract A | 18,344.76 |
| 031776, S-1342 | 10N. | 16E. | | 22,896.00 |
| 031777, S-1343 | 9N. | 16E. | | 22,992.00 |
| 031778, S-1344 | 11N. | 21E. | Tract A | 51.00 |

UMIAT MERIDIAN

| Fairbanks Serial No. | Township | Range | Surveyed Acreage | |
|---|---|---|---|---|
| 031779, S-1298 | 11N. | 8E. | | 22,799.76 |
| 031780, S-1299 | 10N. | 8E. | | 22,896.00 |
| 031781, S-1300 | 9N. | 8E. | | 22,992.00 |
| 031782, S-1301 | 14N. | 9E. | Tract A | 301.00 |
| 031783, S-1302 | 13N. | 9E. | Tract A | 17,746.80 |
| 031784, S-1303 | 14N. | 10E. | Tract A | 1,406.00 |
| 031785, S-1304 | 13N. | 10E. | Tract A | 20,880.00 |
| 031786, S-1305 | 14N. | 11E. | Tract A | 400.00 |
| 031787, S-1306 | 13N. | 11E. | Tract A | 15,646.00 |
| 031788, S-1307 | 14N. | 12E. | Tract A | 42.00 |
| 031789, S-1308 | 13N. | 12E. | Tract A | 3,435.00 |
| 031790, S-1309 | 13N. | 13E. | Tract A | 250.00 |
| 031791, S-1310 | 13N. | 15E. | Tract A. | 188.00 |
| 031792, S-1311 | 13N. | 16E. | Tract A | 297.00 |
| 031793, S-1312 | 12N. | 9E. | | 22,703.52 |
| 031794, S-1313 | 11N. | 9E. | | 22,799.76 |
| 031795, S-1314 | 10N. | 9E. | | 22,896.00 |
| 031796, S-1315 | 9N. | 9E. | | 22,992.00 |
| 031797, S-1316 | 12N. | 10E. | | 22,703.76 |
| 031798, S-1317 | 11N. | 10E. | | 22,799.76 |
| 031799, S-1318 | 10N. | 10E. | | 22,896.00 |
| 031800, S-1319 | 9N. | 10E. | | 22,992.00 |
| 031801, S-1320 | 12N | 11E. | | 22,703.52 |
| 031802, S-1289 | 12N | 6E. | | 22,703.52 |
| 031803, S-1290 | 11N. | 6E. | | 22,799.76 |
| 031804, S-1291 | 10N. | 6E. | | 22,896.00 |
| 031805, S-1292 | 9N. | 6E. | | 22,992.00 |
| 031807, S-1294 | 11N. | 7E. | | 22,799.76 |
| 031808, S-1295 | 10N. | 7E. | | 22,896.00 |
| 031809, S-1296 | 9N. | 7E. | | 22,992.00 |
| 031810, S-1297 | 12N. | 8E. | Tract A | 22,578.52 |
| 031811, S-1275 | 13N. | 4E. | Tract A | 1,823.00 |
| 031812, S-1276 | 12N. | 4E. | Tract A | 13,821.58 |
| 031813, S-1277 | 11N. | 4E. | Tract A | 8,719.83 |
| | | | Tract C | 0.43 |
| 031814, S-1278 | 10N. | 4E. | Tract A | 1,100.69 |
| | | | Tract C | 12.21 |
| 031815, S-1279 | 9N. | 4E. | Tract A | 5,448.38 |
| 031816, S-1280 | 13N. | 5E. | Tract A | 7,735.00 |
| 031817, S-1281 | 13N. | 6E. | Tract A | 9,750.00 |
| 031818, S-1282 | 13N. | 7E. | Tract A excluding Unapproved U.S.S. 4326 | 7,754.34 |

UMIAT MERIDIAN

| Fairbanks Serial No. | Township | Range | Surveyed Acreage | |
|---|---|---|---|---|
| 031819, S-1283 | 14N. | 8E. | Tract A | 123.00 |
| 031820, S-1284 | 13N. | 8E. | Tract A | 4,837.00 |
| 031821, S-1285 | 12N. | 5E. | | 22,703.52 |
| 031822, S-1286 | 11N. | 5E. | | 22,799.76 |
| 031823, S-1287 | 10N. | 5E. | Tract A | 19,843.43 |
| 031824, S-1288 | 9N. | 5E. | Tract A | 21,945.84 |
| 031825, S-1345 | 10N. | 21E. | Tract A | 1,072.00 |
| 031826, S-1346 | 9N. | 21E. | Tract A | 22,576.40 |
| 031827, S-1347 | 10N. | 22E. | Tract A | 3,142.00 |
| 031828, S-1348 | 9N. | 22E. | | 22,992.00 |
| 031829, S-1349 | 10N. | 23E. | Tract A | 1,492.00 |
| 031830, S-1350 | 9N. | 23E. | Tract A | 22,517.00 |
| 031831, S-1351 | 10N. | 24E. | Tract A | 865.00 |
| 031832, S-1352 | 9N. | 24E. | Tract A | 7,304.00 |
| 031835, S-1355 | 11N. | 17E. | Tract A | 6,561.76 |
| 031836, S-1356 | 10N. | 17E. | Tract A | 18,846.00 |
| 031837, S-1357 | 9N. | 17E. | | 22,992.00 |
| 031839, S-1358 | 12N. | 18E. | Tract A | 125.00 |
| 031840, S-1359 | 10N. | 18E. | Tract A | 8,221.00 |
| 031841, S-1360 | 9N. | 18E. | | 22,992.00 |
| 031842, S-1361 | 12N. | 19E. | Tract A | 75.00 |
| 031843, S-1362 | 10N. | 19E. | Tract A | 5,875.00 |
| 031844, S-1363 | 9N. | 19E. | Tract A | 22,802.00 |
| 031845, S-1366 | 7N. | 23E. | Tract A | 15,912.32 |
| 031846, S-1365 | 9N. | 20E. | Tract A | 18,642.00 |
| 031847, S-1367 | 8N. | 24E. | Tract A | 7,302.50 |
| 031848, S-1368 | 7N. | 24E. | Tract A | 25.00 |
| 031851, S-1364 | 11N. | 20E. | Tract A | 287.00 |
| 031884, S-1371 | 10N. | 20E. | Tract A | 60.00 |
| 031897, S-1376 | 8N. | 23E. | | 22,710.00 |
| 031911, S-1377 | 11N. | 19E. | Tract A | 24.76 |

Accordingly, the tentatively approved acreage is adjusted to the plats of survey and aggregates 1,374,735.87 acres. Except for the above, the terms and conditions of the tentative approval remain unchanged.

Joyce A. Fleske

Chief, Division of Land Office

cc;
each case file

AM, Fbx. (201)

State of Alaska
Division of Lands
Rm. 107, Court & Office Bldg.
Fairbanks, Alaska 99701

Director
Department of the Navy
Naval Petroleum and
Oil Shale Reserves
Washington, D.C. 20360
w/enclosures

2222 (221)

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
Fairbanks District and Land Office
P.O. Box 1150
Fairbanks, Alaska 99701

FEB 19 1969

CERTIFIED MAIL-RETURN RECEIPT REQUESTED

DECISION

| | |
|---|---|
| State of Alaska<br>Division of Lands<br>344 Sixth Avenue<br>Anchorage, Alaska 99501 | General Purpose Grants<br>Act of July 7, 1958<br>Section 6(b)<br>F-031755 et al |

Decision of February 7, 1969, Amended

The above decision conformed the tentatively approved acreage to that shown on the plats of survey filed in this office. The first paragraph of the decision is hereby corrected to read as follows:

> The decisions of October 9, 14, 16, November 23, 1964, and January 15, 1965, modified by decisions dated February 4, 1965, are hereby further modified to conform the tentatively approved acreage to that shown on the plats of survey filed in this office for the following State Selections:

Joyce A. Flecke
Chief, Division of Land Office

cc:
each case file

AM, Fbx. (201)

State of Alaska
Division of Lands
Rm. 107, Court & Office Bldg.
Fairbanks, Alaska 99701

Director
Department of the Navy
Naval Petroleum and
Oil Shale Reserves
Washington, D.C. 20360

FEB 20 [illegible]

LANDS BRANCH
Noted by Branch Chief..... Date.....
Main..... Copy.....
Hallback..... [illegible].....
Magnuson..... Taylor.....
Frisk..... [illegible].....
Sec'y.....
Suggested Action [illegible]

3/11/80

[see state selection abstract for date]

2561/2620 (941)
F-14632 (2561)
F-031770 (2620)
F-031835 (2620)

Bonnie 3-
Brown 3-
3 6-8

ALASKA STATE OFFICE
701 C STREET, BOX 13
ANCHORAGE, AK 99513

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

MAR 11 1980

DECISION

P08 5340144

Andrew Oenga
P.O. Box 201
Barrow, Alaska 99732

State of Alaska P08 5340145
Department of Natural Resources
Division of Research & Development
323 East Fourth Avenue
Anchorage, Alaska 99501

F-14632

Native Allotment

F-031770
F-031835

General Purposes Grant
State Selections

Native Allotment Application Held for Approval
Tentative Approval Given October 9, 1964, Modified
State Selection Application Held for Rejection in Part

On November 24, 1971, Andrew Oenga filed Native allotment application F-14632 for two parcels of land; Parcel A for approximately 120 acres, within Sec. 22, T. 11 N., R. 17 E., and Parcel B for approximately 40 acres within Sec. 36, T. 12 N., R. 15 E., Umiat Principal Meridian. Mr. Oenga claims occupancy and appropriation from 1932 to 1940 on Parcel A and from March 1935 to December 1940 on Parcel B.

On January 13, 1964, over seven and a half years before Mr. Oenga filed his allotment application, the State of Alaska filed general purposes grant selection applications F-031770 and F-031835, covering all the lands in T. 12 N., R. 15 E., and T. 11 N., R. 17 E., Umiat Principal Meridian, respectively. Since there was not at that time, any record of Mr. Oenga's interest in the land, the lands were tentatively approved to the State on October 9, 1964. Section 4 of the Alaska Statehood Act of July 7, 1958 (72 Stat. 339-343) provides that lands used and appropriated by an Alaska Native are not open to selection by the State but remain subject to the absolute jurisdiction and control of the United States.

The allotment application was filed pursuant to the act of May 17, 1906 (34 Stat. 197), as amended by the act of August 2, 1956 (70 Stat. 954), and is subject to the provisions of the act of March 8, 1922 (42 Stat. 415), which requires the reservation to the United States of all of the coal, oil, or gas in land patented thereunder, if prior to issuance of a final certificate it is discovered the lands are coal, oil, or gas in character. (See 43 CFR 2561.0-8(d) and 43 CFR 2093.4-1.) Parcel A of Mr. Oenga's allotment application was impressed with a reservation to the United States of the oil and gas, and Parcel B of the coal, oil, and gas by decision dated July 6, 1972.

The Native allotment has been examined and Parcels A and B found to be valid claims, proper for allotment to the applicant, predating the State selection applications. Since Mr. Oenga claims use and occupancy prior to 1940 and the State did not select the land until 1964, the tentative approval given the State of Alaska on October 9, 1964, is hereby rescinded, as to the lands and all the minerals except the oil and gas in Parcel A and the coal, oil, and gas in Parcel B, and the approximate 160 acres in T. 11 N., R. 17 E., and T. 12 N., R. 15 E., Umiat Principal Meridian are held for approval for allotment to Mr. Oenga.

State selection application F-031770 is therefore held for rejection as to the land and all the minerals except for the coal, oil, and gas in T. 12 N., R. 15 E., Umiat Principal Meridian which fall within Parcel B and application F-031835 as to the land and all the minerals, except oil and gas in T. 11 N., R. 17 E., Umiat Principal Meridian which fall within Parcel A of Native allotment F-14632.

The act of September 14, 1960 (74 Stat. 1024) which amended the Alaska Statehood Act defined, for the purposes of State selection, vacant, unappropriated public lands in Alaska to include the retained or reserved interest of the United States in lands which have been disposed of with reservation to the United States of any mineral or minerals. Although the land being used by Mr. Oenga was not subject to selection by the State, the coal, oil, and gas which by law must be reserved from his patent was subject to selection, and was properly selected by the State. The publication in the newspaper gave notice that the State had "selected the land including the reserved or retained mineral estate from beneath patented lands."

Therefore, while the tentative approval given the State on October 9, 1964, under selections F-031770 and F-031835 had to be rescinded and the selection applications held for rejection to permit Mr. Oenga's allotment application to be held for approval, the tentative approval to the State of the oil and gas in Parcel A and the coal, oil, and gas in Parcel B is considered valid and will remain in effect.

Ordinarily this office does not process a mineral estate application until after land has been patented. This situation is novel in that the State has had tentative approval to the coal, oil, and gas and the land itself for over 15 years. There is nothing in the law or regulations requiring that more should be rejected from the State's application and tentative approval than just what is necessary to accommodate the prior existing right of Mr. Oenga. There is therefore no reason to disturb the tentative approval given October 9, 1964, as to the restricted mineral estate. It should be noted that the decision to permit this restricted mineral estate to remain tentatively approved is not adverse to any other party. The lands in T. 11 N., R. 17 E. and T. 12 N., R. 15 E., Umiat Principal Meridian were not withdrawn for Native selection under the provisions of Sec. 11 of the Alaska Native Claims Settlement Act of December 18, 1971, but were set aside by Public Land Order 5186 of March 15, 1972 and withdrawn from all forms of appropriation except State selection.

The State of Alaska has 60 days from receipt of this notice in which to initiate a private contest against the Native allotment applicant pursuant to Departmental regulation 43 CFR 4.450 (copy enclosed). Copies of the Native allotment field reports are also enclosed.

Failure of the State to initiate private contest within the time indicated above will result in the Native allotment being approved and the State selections being rejected as to the lands in Mr. Oenga's allotment application.

If a private contest is to be initiated, the adverse party to be served is:

Mr. Andrew Oenga
P.O. Box 201
Barrow, Alaska 99732

/s/ Valliere A. Cacy

Acting Chief, Branch of Lands
and Minerals Operations

Enclosures:
Cy 43 CFR 4.450
Field Reports

Copy furnshied to:

State Attorney General's Office
Attn: Barbara Miracle, Attorney
420 L Street, Suite 100
Anchorage, Alaska 99501
(w/cys of field reports)

cc:

Mr. James Wickwire
Wickwire, Lewis, Goldmark, Dystel & Schorr
500 Maynard Building
Seattle, Washington 98104

Tanana Chiefs Realty
Doyon Building
First and Hall Streets
Fairbanks, Alaska 99701
(w/cys of field reports)

DM-F (200)

John Westoby (920)

Micki Smith (941)

941:EBonnell:jm:2/28/80:x3316:3/F

SENDER: Complete items 1, 2, and 3.
Add your address in the "RETURN TO" space on reverse.

PS Form 3811, Jan. 1979 RETURN RECEIPT, REGISTERED, INSURED AND CERTIFIED MAIL

1. The following service is requested (check one.)
- [x] Show to whom and date delivered ............ ¢
- [ ] Show to whom, date and address of delivery ..... ¢
- [ ] RESTRICTED DELIVERY
  Show to whom and date delivered ............ ¢
- [ ] RESTRICTED DELIVERY.
  Show to whom, date, and address of delivery. $

3/13/80 PM

(CONSULT POSTMASTER FOR FEES)

2. ARTICLE ADDRESSED TO: EB

State of Alaska
2561/2620 (941) 60 day suspense
F-14632, F-031770, F-031835

F14632 (2561)

3. ARTICLE DESCRIPTION:

| REGISTERED NO. | CERTIFIED NO. | INSURED NO. |
|---|---|---|
| | P08 5340145 | |

(Always obtain signature of addressee or agent)

I have received the article described above.
SIGNATURE ☐Addressee ☐Authorized agent

4. DATE OF DELIVERY — POSTMARK

5. ADDRESS (Complete only if requested)

6. UNABLE TO DELIVER BECAUSE: — CLERK'S INITIALS

jm

☆GPO : 1979-288-848

---

SENDER: Complete items 1, 2, and 3.
Add your address in the "RETURN TO" space on reverse.

PS Form 3811, Jan. 1979 RETURN RECEIPT, REGISTERED, INSURED AND CERTIFIED MAIL

1. The following service is requested (check one.)
- [x] Show to whom and date delivered ............ ¢
- [ ] Show to whom, date and address of delivery ..... ¢
- [ ] RESTRICTED DELIVERY
  Show to whom and date delivered ............ ¢
- [ ] RESTRICTED DELIVERY.
  Show to whom, date, and address of delivery. $

3/13/80 PM

(CONSULT POSTMASTER FOR FEES)

2. ARTICLE ADDRESSED TO: EB

Andrew Oenga
2561/2620 (941) 60 day suspense
F-14632, F-031770, F-031835

3. ARTICLE DESCRIPTION:

| REGISTERED NO. | CERTIFIED NO. | INSURED NO. |
|---|---|---|
| | P08 5340144 | |

(Always obtain signature of addressee or agent)

I have received the article described above.
SIGNATURE ☐Addressee ☐Authorized agent

Caroline Oenga

4. DATE OF DELIVERY 3/18/80 — POSTMARK MAR 1980 BARROW, AK

5. ADDRESS (Complete only if requested)

6. UNABLE TO DELIVER BECAUSE: — CLERK'S INITIALS

j

ALASKA STATE OFFICE
701 C STREET, BOX 13
ANCHORAGE, AK 99513

2561/2620 (941)
F-14632 (2561)
F-031770 (2620)
F-031835 (2620)

EBonnell 7/22/8
7/27/8
7-30-8

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

DECISION

AUG 4 1980

| | | |
|---|---|---|
| Andrew Oenga P085404289 | : | F-14632 |
| P.O. Box 201 | : | |
| Barrow, Alaska 99732 | : | Native Allotment |
| | : | |
| State of Alaska P085404290 | : | F-031770 |
| Department of Natural Resources | : | F-031835 |
| Division of Research & Development | : | |
| 323 East Fourth Avenue | : | General Purposes Grant |
| Anchorage, Alaska 99501 | : | State Selections |

<u>Native Allotment Approved</u>
<u>State Selection Rejected in Part</u>

On March 11, 1980, the State of Alaska was issued a notice which held Native allotment application F-14632 for approval and State selection applications F-031770 and F-031835 for rejection in part. The lands at issue were the approximately 160 acres in Mr. Oenga's allotment described as follows:

> That portion of protracted Sec. 22, T. 11 N., R. 17 E., Umiat Meridian in State selection F-031835 covered by Parcel A containing approximately 120 acres, and
>
> That portion of protracted Sec. 36, T. 12 N., R. 15 E., Umiat Meridian in State selection F-031770 covered by Parcel B containing approximately 40 acres.

At that time, the State of Alaska was given 60 days in which to file a private contest action against the Native allotment applicant. To date, no such action has been initiated. Hence, Native allotment application F-14632 is hereby approved and State selection applications F-031770 and F-031835 are therefore rejected in part for the lands described herein. The State's application will be closed as to the above cited lands when this decision becomes final, excepting the mineral estate reserved to the United States by our decision of July 6, 1972.

An appeal from this decision may be taken to the Board of Land Appeals, Office of Hearings and Appeals, in accordance with the attached regulations in Title 43 <u>Code of Federal Regulations</u> (CFR), Part 4, Subpart E. If an appeal is taken, the notice of appeal must be filed in the Alaska State Office of the Bureau of Land Management within 30 days of the receipt of this decision. Do



E.S.B.

not send the appeal directly to the Board. The appeal and case history file will be sent to be Board from this office. The regulations also require the appellant to serve a copy of the notice of appeal, statement of reasons written arguments or briefs on the Associate Solicitor, Division of Energy and Resources, Office of the Solicitor, U.S. Department of the Interior, Washington D.C. 20240. To avoid summary dismissal of the appeal, there must be strict compliance with the regulations. Form 1842-1 is enclosed for additional information.

If an appeal is forthcoming, the adverse party to be served is:

Mr. Andrew Oenga
P.O. Box 201
Barrow, Alaska 99732

/s/ ROBERT E. SORENSON

Chief, Branch of Lands
and Minerals Operations

Enclosures:
Form 1842-1
Regulation 43 CFR Part 4

cc:

State of Alaska
State Attorney General's Office
Attn: Barbara Miracle
420 L Street, Suite 100
Anchorage, Alaska 99501
(w/cy of encl)

Mr. James Wickwire
Wickwire, Lewis, Goldmark, Dystel and Schorr
500 Maynard Building
Seattle, Washington 98104

Tanana Chiefs Realty
Doyon Building
First and Hall Streets
Fairbanks, Alaska 99701

DM-F (200)

DM-F (240)

J. Westoby (920)

941:EBonnell:hr:pe:7/22/80:9d

# EXHIBIT H

State of Alaska Competitive Oil and Gas Lease ADL-34630 effective as of April 1, 1967

BOOK 0054 PAGE 875

NOATAK - KOBUK
Serial No. 69-113

FORM NO. DL-1
(REVISED OCT., 1963)

STATE OF ALASKA
DEPARTMENT OF NATURAL RESOURCES
Division of Lands

BOOK 47 PAGE 205
Noatak - Kobuk Recording District

LEASE NO. ADL 34630

# Competitive Oil and Gas Lease

THIS LEASE is made by and between the State of Alaska, acting by and through the Director of the Division of Lands, Department of Natural Resources or his authorized agent, hereinafter called "Lessor", and
BP EXPLORATION U.S.A. INC.

hereinafter called "Lessee", whether one or more.

1. GRANT. For and in consideration of a cash bonus and the first year's rental, the receipt of which is hereby acknowledged, and of the rentals, royalties, covenants, and conditions herein contained on the part of the Lessee to be paid, kept and performed, and subject to the conditions and reservations herein contained, Lessor does hereby grant and lease unto Lessee, exclusively, without warranty, for the sole and only purposes of exploration, development, production, processing and marketing of oil, gas, and associated substances produced therewith, and of installing pipe lines and structures thereon to find, produce save, store, treat, process, transport, take care of and market all such substances, and for drilling water wells and taking underground and surface water for use in its operations thereon, and for housing and boarding employees in its operation thereon, the following described tract of land in Alaska:

**Tract No. C18-9**

All Section 25, T12N, R15E, UM
All Section 26, T12N, R15E, UM
All Section 35, T12N, R15E, UM
All Section 36, T12N, R15E, UM




RECORDED - FILED
Noatak-Kobuk REC. DIST.
DATE Jan. 10, 1969
TIME 2:30 P M
Requested by Alaska Title Guaranty Co.
Address 615-4th Ave.
Fairbanks, Alaska
99701

containing 2,560 acres, more or less, hereinafter called "said land".

For the purposes of this lease, said land contains the legal subdivisions, as shown on the plat of said land attached hereto, marked Exhibit A and by this reference made a part of this lease.

If said land is described above by protracted legal subdivision and Lessor hereafter causes said land to be surveyed under the public land rectangular system, the boundaries of said land shall be those established by such survey, when approved, subject, however, to the provisions of the regulations relating to such surveys.

2. "OIL AND GAS". "Oil" means crude petroleum oil and other hydrocarbons regardless of gravity which are produced and saved in liquid form at the well by ordinary production methods. "Gas" means all natural gas and all hydrocarbons produced at the well not defined herein as oil. "Associated substances" mean all substances produced in association with oil or gas and not defined herein as oil or gas.

3. TERM. This lease is issued for an initial primary term of 10 years from date hereof, subject to extension as provided in Paragraph 4 hereof, and shall continue so long thereafter as oil and gas or either or any of them are produced in paying quantities from said land; provided, that this lease may be extended beyond its primary term as provided in Paragraph 5 hereof and shall not expire under the conditions set forth in Paragraphs 6, 7, and 8 hereof.

4. EXTENSION BY SUSPENSION OF OPERATIONS. If, prior to the expiration of the primary term, Lessor, in the interest of conservation, directs or assents to the suspension of all operations and production, if any, hereunder, the primary term will be extended by adding the period of suspension thereto.

5. EXTENSION BY UNIT PRODUCTION. (a) This lease shall without application be extended beyond its primary term if upon or prior to the expiration date of such term the lease is committed to a unit agreement approved or prescribed by Lessor as provided in the regulations, production of oil or gas is had in paying quantities under the agreement, and a portion of such production is allocated to said land under the agreement. In such event this lease shall continue in effect so long as it remains subject to such agreement and actual production under said agreement is allocated to said land; (b) The Commissioner may, in his discretion provide for the extension of the term of this lease, if such lease is on the expiration date thereof included in an approved unit plan or if it is included in a program of secondary recovery operation designed to bring about or restore production, provided, however, that if any lease or portion thereof is eliminated from such unit plan or recovery program, or if such unit plan or recovery program is terminated, then any such lease or portion thereof shall continue in full force and effect for ninety (90) days from the date of such elimination or termination and so long thereafter as drilling or redrilling operations are being conducted thereon and so long thereafter as oil or gas is produced in paying quantities.

6. EXTENSION BY DRILLING. (a) If production shall have been obtained in paying quantities during the primary term, and if, at the end of the primary term, or at any time prior to the end of the primary term, such production shall have ceased from any cause, or in the event production shall at any time or times after the expiration of the primary term cease from any cause, then this lease shall not terminate if the Lessee commences drilling or reworking operations (either in a well from which such production has ceased or in a new well) within sixty days after the cessation of production, and the lease shall remain in full force and effect so long as such operations are prosecuted with reasonable diligence or are suspended under Paragraph 27 hereof; and, if such drilling or reworking operations result in the production of oil or gas, the lease shall remain in full force and effect so long as oil or gas is produced therefrom in paying quantities; (b) if actual drilling has commenced on the expiration date of the primary term of the lease and is continued with reasonable diligence, such operations to include redrilling, sidetracking or other means necessary to reach the originally proposed bottom hole location, the lease shall continue in full force and effect until ninety (90) days after such drilling had ceased and for so long thereafter as oil or gas is produced in paying quantities; (c) if all or part of the lands covered by the lease are lands that have been selected by Alaska under the laws of the United States granting lands to Alaska and the conditional lease was issued thereon, the term of the lease shall be extended for a period equal to the period during which the lease was conditional.

7. EXTENSION BY SHUT-IN PRODUCTION. If, upon the expiration of the primary term or at any time or times thereafter, there is on said land a well capable of producing oil or gas in paying quantities, this lease shall not expire because Lessee fails to produce the same unless Lessor gives notice to Lessee allowing a reasonable time, which shall not be less than sixty days, after such notice to place the well on a producing status, and Lessee fails to do so; provided, that after such status is established such production shall continue on the said land unless and until suspension of production is allowed by Lessor.

8. EXTENSION BY SUSPENSION OF PRODUCTION. This lease shall not expire because of any suspension of operations in or upon or production from said land if such suspension is made under any order or with the consent of Lessor.

9. RENTAL. This lease shall terminate on any anniversary date hereof prior to the completion on said land of a well capable of producing oil or gas in paying quantities, unless on or before said anniversary date Lessee shall pay or tender to Lessor as annual rental a sum equal to $1.00 per acre, or fraction thereof, then included in this lease, or unless such annual rental has been waived or suspended as provided in Paragraph 13 of this lease. If Lessor's office is not open for business on the anniversary date, the time for payment is extended to include the next day on which said office is open for business.

10. MINIMUM ROYALTY. Commencing with the lease year beginning on or after completion on said land of a well capable of producing oil or gas in paying quantities, Lessee shall pay Lessor, at the expiration of each lease year, in lieu of rental a minimum royalty equal to $1.00 per acre, or fraction thereof, then included in this lease, or the difference between the actual royalty paid on production during the year if less than $1.00 per acre and the prescribed minimum royalty.

11. ROYALTY ON PRODUCTION. Except for oil and gas used on said land for development and production or unavoidably lost, Lessee shall pay Lessor as royalty the following:

(a) On oil ..12.5.. per cent in amount or value of the oil produced and saved and removed or sold from said land.

(b) On gas 12.5... per cent in amount or value of the gas produced and saved and sold or used off said land or used for the extraction of natural gasoline or other products therefrom.

(c) On associated substances 12.5... per cent in amount or value of such substances produced and saved and removed or sold from said lands.

12. REDUCTION OF ROYALTY RATES FOR DISCOVERY. If Lessee shall drill on said land and make the first discovery of oil or gas in commercial quantities in any geological structure, the royalty rate under this lease shall, instead of the rates prescribed in Paragraph 11, be five per cent for a period of ten years following the date of such discovery, and thereafter the royalty rates shall be those prescribed in Paragraph11. If this lease is committed to a unit agreement approved or prescribed by Lessor as provided in the regulations, the five per cent royalty rate shall not apply to all, but only, the production allocated to this lease under such agreement.

13. REDUCTION OF RENTAL AND ROYALTY. Rental or minimum royalty may be waived, suspended, or reduced, or royalty may be reduced on all of said land or any tract or portion thereof segregated for royalty purposes if Lessor finds that such relief is necessary for the purpose of encouraging the greatest ultimate recovery of oil or gas and is in the interest of conservation of natural resources and either that such relief is necessary in order to promote development or that the lease cannot be successfully operated under the terms provided herein.

14. ROYALTY IN KIND. Whenever, at the option of Lessor, which may be exercised from time to time upon not less than six months notice to Lessee, Lessor elects to take its royalty in kind, Lessee shall deliver free of charge (on said land or at such place as Lessor and Lessee mutually agree upon) to Lessor or to such individual, firm, or corporation as Lessor may designate all royalty oil and/or gas produced and saved from said land. Such oil and/or gas shall be in good and merchantable condition. Lessee shall, if necessary, furnish storage for royalty oil free of charge for thirty days after the end of the calendar month in which the oil is produced from said land; provided, that Lessee shall not be held liable for loss or destruction of royalty oil and/or gas from causes beyond Lessee's reasonable control. Should Lessee dehydrate or clean the oil or gas produced from said land, Lessee shall be entitled to an allowance of the actual cost of dehydrating or cleaning said royalty oil or gas.

15. ROYALTY IN VALUE. At the option of Lessor, which may be exercised from time to time upon not less than six months notice to Lessee, and in lieu of royalty in kind, Lessee shall pay to Lessor the field market price or value at the well of all royalty oil and/or gas. All royalty that may become payable in money to Lessor shall be paid on or before the last day of the calendar month following the month in which the oil or gas is produced. The payments shall be accompanied by copies of run tickets or other satisfactory evidence of sales, shipments, and amounts of gross production.

16. PRICE. The field market price or value of royalty oil or gas shall not be less than the highest of: (1) The price actually paid or agreed to be paid to Lessee at the well by the purchaser thereof, if any; or (2) The posted price of Lessee in the field for such oil or gas at the well, if any; or, (3) The prevailing price received by other producers in the field at the well for oil of like grade and gravity or gas of like kind and quality at the time such oil or gas is removed from said land or run into storage, or such gas is delivered to an extraction plant.

17. PAYMENTS. All payments to Lessor under this lease shall be made payable to the Department of Revenue of the State of Alaska and shall be tendered to Lessor at the place designated under Paragraph 44 for giving notices to Lessor.

18. OFFSET WELLS. Lessee shall drill such wells as a reasonably prudent operator would drill to protect Lessor adequately from loss by reason of drainage resulting from production on other land. Without limiting the generality of the foregoing sentence, if oil or gas should be produced in a well on other land not owned by Lessor or on which Lessor receives a lower rate of royalty than the royalty under this lease, which well is within 500 feet in the case of an oil well or 1,500 feet in the case of a gas well of lands then subject to this lease, and such well shall produce oil or gas in paying quantities for a period of thirty consecutive days, and if, after notice to Lessee and an opportunity to be heard, Lessor finds that production from such well is draining lands then subject to this lease, Lessee shall within 120 days after written demand by Lessor begin in good faith and prosecute diligently drilling operations for an offset well on said land. In lieu of drilling any well required by this paragraph, Lessee may with Lessor's consent compensate Lessor in full each month for the estimated loss of royalty through drainage in the amount determined by lessor.

19. OTHER WELLS. This lease contemplates the reasonable development of said land for oil and gas as the facts may justify. Upon discovery of oil or gas in paying quantities on said land, Lessee shall drill such wells as a reasonably prudent operator would drill having due regard for the interests of Lessor as well as the interests of Lessee.

20. DILIGENCE; PREVENTION OF WASTE. Lessee shall exercise reasonable diligence in drilling, producing, and operating wells on said land unless consent to suspend operations temporarily is granted by Lessor; shall carry on all operations hereunder in a good and workmanlike manner in accordance with approved methods and practices, having due regard for the prevention of waste of oil and gas and the entrance of water to the oil and gas bearing sands or strata to the destruction or injury of such deposits and the preservation and conservation of the property for the future productive operations; shall use reasonable care and all proper safeguards to prevent the pollution of water; shall plug securely in an approved manner any well before abandoning it; shall allow Lessor to inspect all operations at any time; shall carry out at Lessee's expense all reasonable orders and requirements of Lessor relative to the prevention of waste and the preservation of said land, and on failure of Lessee so to do, Lessor shall have the right together with any other recourse available to it to enter on said land to repair damage or prevent waste at Lessee's expense; and shall, abide by and conform to valid applicable rules and regulations of the Alaska Oil and Gas Conservation Commission and the regulations of Lessor relating to the matters covered by this paragraph in effect on the effective date hereof or hereafter in effect if not inconsistent with any specific provisions of this lease.

21. WELL LOCATIONS. Lessee shall within five days after spudding in a well advise Lessor in writing of the location and date of spudding of said well.

22. APPROVAL OF PLANS. Lessee shall not place into actual operation any plan or method for the purpose of stimulating or increasing production on said land other than plans and methods in common use without first having obtained the written approval of Lessor.

23. LOGS AND RECORDS. An electric log or radioactive log, if taken, and a descriptive geologic sample log, if taken, and a record of all tests run for each well drilled on said land, together with a plat showing the exact location of each such well, shall be filed with Lessor within thirty (30) days after such well has been completed, suspended, or abandoned. Any and all information filed by Lessee with Lessor in connection with this lease shall be available at all times for the confidential use of Lessor for the purpose of enforcing compliance with the terms, covenants, and conditions of this lease and the regulations of the Lessor but shall not be open for inspection by any person other than officers, or employees of Lessor and persons performing any function or work assigned to them by Lessor for a period of twenty-four (24) months after the thirty (30) day filing period, except upon written consent of Lessee. Notwithstanding any other provision hereof, said information may be disclosed to any person where such disclosure is reasonably necessary for the administration of the functions, responsibilities, and duties vested by law in the Commissioner of the Department of Natural Resources or in the Division of Lands or the Director thereof. Including but not limited to functions, responsibilities, and duties arising in connection with any litigation or administrative adjudication relating to this lease or to the rights, duties, and obligations arising hereunder.

24. RECORDS. Lessee shall keep and [illegible] in [illegible] possession books and records showing t[illegible] produc[illegible] and disposition of all oil and gas products from said land and shall permit Le[illegible] or [illegible] agents at all reasonable hours to examine [illegible] same [illegible]ch records and reports of production shall be based upon such methods and techniques as shall insure the most accurate figures reasonably available without requiring the Lessee to provide sepa-

by Lessor or its Lessee until provision has been made to pay the owner of the land upon which the reserved rights are sought to be exercised full payment for all damages sustained by said owner by reason of entering on said land; provided, that if said owner for any cause whatever refuses or neglects to settle said damages, Lessor or its Lessee shall have the right to institute such legal proceedings in a court of competent jurisdiction wherein the land is situated as may be necessary to determine the damage which the owner of such land may suffer. Lessee hereby agrees to pay any damage that may become payable under said statutory provisions and to indemnify Lessor and hold it harmless from and against any claims, demands, liabilities, and expenses arising from or in connection with such damage. The furnishing of a bond in compliance with this Lease will be regarded by Lessor as a sufficient provision for the payment of all damage that may become payable under said statutory provisions.

26. BONDS.

(a) If required by Lessor, Lessee shall furnish a bond prior to the issuance of this lease in an amount equal to at least $2.00 per acre or fraction thereof contained in said land but not less than $1,000.00 and shall maintain said bond as long as required by Lessor.

(b) Before beginning drilling operations on said land Lessee must have furnished and shall maintain a bond in an amount of at least $5,000.00.

(c) Lessee may, in lieu of the foregoing, furnish and maintain a statewide bond in the amount of $100,000.00

(d) Lessor may, after notice to Lessee and an opportunity to be heard, require a bond in a reasonable amount greater than the amount specified above in this paragraph where such greater amount is justified by the nature of the surface and its uses and improvements in the vicinity of said land and the degree of the risks involved in the types of operations being or to be carried out under this lease. A statewide bond will not satisfy any requirement of a bond imposed under this subparagraph but will be considered by Lessor in determining the need for and the amount of any additional bond under this subparagraph.

(e) If said land is committed in whole or in part to a cooperative or unit agreement approved or prescribed by Lessor pursuant to law and the regulations and a unit bond is furnished in accordance with the regulations, Lessee need not thereafter maintain any bond with respect to the portion of said land so committed to such agreement.

27. ACTS OF GOD. Should Lessee be prevented from complying with any expressed or implied covenant of this lease, from conducting drilling operations thereon, or from producing or marketing oil or gas from said land after efforts made in good faith, by reason of war, riots, acts of God, severe weather in the area of said land, acts of governmental authorities, failure or lack of adequate transportation facilities, or any other cause beyond Lessee's reasonable control whether similar to those enumerated or not, then while so prevented and for a reasonable time thereafter within which to resume operations, Lessee's obligation to comply with such covenant shall be suspended and Lessee shall not be liable for damages for failure to comply therewith. If drilling or reworking operations are suspended by virtue of this paragraph and the prosecution of such operations would have had the effect of preventing the expiration or termination of this lease, then this lease shall not terminate during the period which the obligation to perform such operations is suspended under this paragraph; provided, however, that nothing in this paragraph shall be construed to suspend the payment of rentals or of minimum royalties.

28. SUSPENSION. Lessor may from time to time direct or assent to the suspension of production or other operations or both under this lease if such action is necessary or justified in the interest of conservation.

29. RESERVATIONS. Lessor reserves the right to dispose of the surface of said land to others subject to this lease, and the right to authorize others by grant, lease, or permit subject to this lease and under such conditions as will prevent unnecessary or unreasonable interference with the rights of Lessee and operations under this lease, to enter upon and use said land:

(a) To explore for oil or gas by geological or geophysical means including the drilling of shallow core holes or stratigraphic tests to a depth of not more than 1,000 feet.

(b) To explore for, develop and remove natural resources other than oil, gas, and associated substances on or from said land.

(c) For nonexclusive easements and rights of way for any lawful purpose including shafts and tunnels necessary or appropriate for the working of said land or other lands for natural resources other than oil, gas or associated substances.

(d) For well sites and well bores of wells drilled from or through said land to explore for or produce oil, gas, and associated substances in and from other lands.

(e) For any other purpose now or hereafter authorized by law and not inconsistent with the rights of Lessee under this lease.

30. UNDERGROUND STORAGE. This lease does not authorize the subsurface storage of oil or gas except as a necessary incident to recycling pressure maintenance, repressuring, or other similar operation designed to increase the ultimate recovery of oil or gas or prevent the waste of oil or gas produced from said land or from any unit area of which the said land is a part. Lessor reserves the right to authorize the subsurface storage of oil or gas in said land by Lessee or by others in order to avoid waste or to promote conservation of natural resources and upon such conditions as will prevent unnecessary or unreasonable interference with the rights and operations of Lessee under this lease, including conditions prohibiting the storage of oil or gas without the consent of Lessee in any reservoir covered by this lease capable of producing oil or gas in paying quantities.

31. ASSIGNMENTS. This lease or any undivided interest herein may with the approval of Lessor be assigned or subleased as to said land or any one or more legal subdivisions included therein, or any separate and distinct zone or geological horizon underlying said land or such one or more legal subdivisions, to any person or persons qualified to hold a lease. No transfer of any interest in this lease including assignments of working or royalty interests and operating agreements and subleases shall be binding upon Lessor unless approved by Lessor. Lessee shall remain liable for all obligations under this lease accruing prior to the approval of such transfer. Approval of transfer of this lease or an interest therein will not be denied except (1) for failure to comply with the regulations, (2) in the discretion of Lessor, where the transfer covers any distinct zone or geological horizon, or (3) where Lessor determines that the best interests of Lessor justify such action. Applications for approval of a transfer under this paragraph must comply with the regulations and must be filed within ninety days after the date of final execution of the instrument of transfer. Where a transfer is made of all or a part of Lessee's interest in and to a portion of the acreage in said land the assigned acreage shall, at the option of Lessor, or may upon request of the transferee and with the approval of Lessor be segregated into a separate and distinct lease having the same effective date as this lease.

32. UNITIZATION. Whenever determined and certified by Lessor to be necessary or advisable in the public interest for the purpose of properly conserving the natural resources of any oil or gas pool, field or like area or any part thereof, which includes or underlies said land or any part thereof, Lessee may unite with other Lessees of Lessor or with others owning or operating lands not belonging to Lessor including lands belonging to the United States and with others, jointly or separately, in collectively adopting and operating under a cooperative or unit agreement for the development or operation of the pool or field or like area or part thereof. Lessee shall within thirty days after demand by Lessor subscribe to such a cooperative or unit agreement, which agreement shall be reasonable and shall adequately protect all parties in interest including Lessor. Lessor may with the consent of Lessee establish, alter, change, or revoke drilling, producing, rental, minimum royalty, and royalty requirements of this lease if committed to any such cooperative or unit agreement and may make such regulations with reference to this lease with the like consent of Lessee in connection with the institution and operation of any such cooperative or unit agreement as Lessor may determine to be necessary or proper to secure the proper protection of the public interest. If a portion of said land is committed to an approved or prescribed unit agreement, the committed acreage shall at the option of Lessor and may upon the request of Lessee and with the approval of Lessor be segregated into a separate and distinct lease having the same effective date as this lease.

33. SURRENDER. Lessee may at any time make and file with Lessor a written surrender of all rights under this lease or any portion thereof comprising one or more legal subdivisions or, with the consent of Lessor, of any separate and distinct zone or geological horizon underlying said lands or such one or more legal subdivisions thereof. Such a surrender shall be effective as of the date of filing subject to the continued obligations of Lessee and his surety to make payment of all royalties theretofore accrued and to place all wells on the surrendered land or in the surrendered zones or horizons in condition satisfactory to Lessor for suspension or abandonment; thereupon, Lessee shall be released from all other obligations accrued or to accrue under this lease with respect to the surrendered lands, zones, or horizons.

34. DEFAULT; TERMINATION. Whenever Lessee fails to comply with any of the provisions of this lease other than the payment of rental and and Lessee fails within sixty days after written notice of such default to commence to remedy and thereafter prosecute diligently operations to remedy such default, Lessor may cancel this lease if at that time there is no well on said land capable of producing oil or gas in paying quantities. If at such time there is on said land a well capable of producing oil or gas in paying quantities, this lease may be cancelled only by judicial proceedings. In the event of any cancellation under this paragraph, Lessee shall have the right to retain under this lease any and all drilling or producing wells as to which no default exists together with a parcel of land surrounding each such well or wells and such rights of way through said land as may be reasonably necessary to enable Lessee to drill and operate such retained well or wells.

BOOK 47 PAGE 209
Noatak - Kobuk Recording District



BOOK 0054 PAGE 877

35. EXCESS AREA. If for any reason said land includes more acreage than the maximum permitted under applicable laws and/or regulations, this lease shall not be void but the acreage included in said land shall be reduced to the permitted maximum. Whenever Lessor determines that this lease so exceeds the permitted acreage and notifies Lessee stating the amount of acreage that must be eliminated, Lessee may within sixty days after such notice surrender one or more legal subdivisions included in said lands comprising at least the amount of acreage that must be eliminated. If such a surrender is not filed within such sixty days Lessor may terminate this lease as to the acreage that must be eliminated by mailing notice of such termination to Lessee describing the parcel or parcels eliminated. Such a notice shall have the effect of terminating this lease as to the parcel or parcels described in such notice.

36. RIGHTS ON TERMINATION. Upon the expiration or earlier termination of this lease as to all or any portion of said lands, Lessee shall have the privilege at any time within a period of six months thereafter, or such extension thereof as may be granted Lessor, of removing from said land or portion thereof all machinery, equipment, tools, and materials other than improvements needed for producing wells. Any materials, tools, appliances, machinery, structures, and equipment subject to removal as above provided which are allowed to remain on said land or portion thereof shall become the property of Lessor upon expiration of such period; provided, that Lessee shall remove any and all of such properties when so directed by Lessor. Subject to the foregoing, Lessee shall deliver up said lands or such portion or portions thereof in good order and condition.

37. INTEREST IN LAND. It is the intention of the parties that the rights vested in Lessee by this lease shall constitute an interest in real property in said land.

38. LESSER INTEREST. If Lessor owns a lesser interest in the oil and gas deposits in said land than the entire and undivided fee simple estate, then the royalties and rentals herein provided shall be paid Lessor only in the proportion which its interest bears to the whole and undivided fee.

39. CONDITIONAL LEASE. If all or a part of said land is land that has been selected by the Lessor under laws of the United States granting lands to Lessor, but such land has not been patented to Lessor by the United States, then this lease is a conditional lease as provided by law until such patent becomes effective. If for any reason such a selection is not finally approved or such a patent does not become effective, any rental, royalty or minimum royalty payments made to Lessor under this lease will not be refunded.

40. DRILLING OPERATIONS. As used in this lease "drilling operations" mean any work or actual operations undertaken or commenced in good faith for the purpose of carrying out any of the rights, privileges or duties of Lessee under this lease, followed diligently and in due course by the construction of a road or derrick and/or other necessary structures for the drilling of an oil or gas well, and by the actual operation of drilling in the ground. Any such work or operations preliminary to drilling in the ground may be undertaken either on said land or in the vicinity of said land in any order Lessee shall see fit.

41. ACTUAL DRILLING. As used in this lease, "actual drilling" means any and all operations necessary or convenient to the drilling of a well in the ground after the first drilling or spudding with equipment of sufficient size and capacity to drill to the total depth proposed for the well.

42. RULES AND REGULATIONS. As used in this lease "regulations" mean the applicable and valid oil and gas leasing regulations of the Commissioner of the Department of Natural Resources in effect on the effective date of this lease unless otherwise specified.

43. INTERPRETATION. As used in this lease words which are defined in the regulations have the meaning assigned by such definition except where the context clearly requires a different meaning. The paragraph headings are not a part of this lease and are inserted only for convenience.

44. NOTICES. Any notice required or permitted under this lease shall be in writing and shall be given by registered or certified mail, return receipt requested, addressed as follows:

To Lessor:

Director, Division of Lands
State of Alaska
344 Sixth Avenue
Anchorage, Alaska 99501

To Lessee:

BP EXPLORATION U.S.A. INC.
900 Wilshire Boulevard
Los Angeles, California 90017

Any such notice shall be deemed given when delivered to the foregoing address. Either party may change the address to which such notices are to be sent, by a notice given in accordance with this paragraph.

45. HEIRS AND ASSIGNS. Subject to the other provisions of this lease, the covenants, conditions, and agreements contained in this lease shall extend to and be binding upon the heirs, executors, administrators, successors, or assigns of Lessor and Lessee.

46. WILDLIFE STIPULATIONS. This lease is subject to such stipulations as are attached.

IN WITNESS WHEREOF the parties have executed this lease effective as of the 1st day of April 1967.

BP EXPLORATION U.S.A. INC.
By [signature]
R. J. Stephens, President
By [signature]
D. W. Gough, Secretary

LESSEE

STATE OF ALASKA

By [signature]

Title Minerals Officer LESSOR

THE UNITED STATES OF AMERICA )
STATE OF ALASKA ) ss



This certifies that on the 14th day of March, 1967, before me, a notary public in and for the State of Alaska, duly commissioned and sworn, personally appeared Pedro Denton, to me known and known to me to be the person described in and who executed the foregoing lease on behalf of the State of Alaska as Director of the Division of Lands, Department of Natural Resources, or his authorized agent. The said Pedro Denton executed said lease in my presence and, after being duly sworn according to law, stated to me under oath that he is the Director of the Division of Lands, Department of Natural Resources, or his authorized agent, and has authority pursuant to law to execute the foregoing lease as such Director, or authorized agent, on behalf of the State of Alaska, acting through the Division of Lands, Department of Natural Resources and that he executed the same freely and voluntarily as the free and voluntary act and deed of the said State of Alaska and for the Division of Lands, Department of Natural Resources.

WITNESS my hand and official seal of the day and year in this certificate above written.

[signature: Alberta V. Sprecher] Notary Public in and for Alaska. My Commission expires June 7, 1967

Return to:
STU HIRSH
BP EXPLORATION (ALASKA) INC.
P.O. Box 196612
Anchorage, AK 99519-6612

BOOK 47 PAGE 207
Noatak - Kobuk Recording District

BOOK 0054 PAGE 879

EXHIBIT "A"

TRACT NO. C 18-9

T 12 N., R. 15 E., U.M.

Section 25: 640 acres.
Section 26: 640 acres.
Section 35: 640 acres.
Section 36: 640 acres.
containing 2,460 acres, more or less.




89-0262
22-
CIC2-

RECORDED-~~FILED~~
BARROW RECORDING
DISTRICT

APR 20 2 13 PM '89
REQUESTED BY BP Explo. Ak Inc.
ADDRESS

WILDLIFE STIPULATIONS

BOOK 47 PAGE 208
Noatak - Kobuk Recording District

The lessee shall:

(1) Obtain the written approval of the Department of Natural Resources for the location and type of each structure before it is erected on tide, shore or submerged lands. Department action on applications for such structure shall be taken within 30 days of receipt of such applications.

(2) Appoint and maintain at all times during the construction or operations on the tide, shore and submerged lands a local agent upon whom may be served written orders or notices respecting matters contained in these stipulations and to provide the Commissioner of the State of Alaska Department of Natural Resources, with the name and address of such agent.

(3) Assure that all construction or development activities carried on under the lease shall be conducted in a manner satisfactory to the State of Alaska Department of Natural Resources, with due regard for fish and game conservation, and shall utilize proper methods in drilling and completing wells.

(4) Install adequate blowout prevention control equipment and take other safety measures provided for in the oil and gas conservation regulations or ordered by the Commissioner of the State of Alaska Department of Natural Resources.

(5) Maintain offshore platforms or barges in such a manner that all oil by-products may be drained through scuppers and disposed of in a manner satisfactory to the State of Alaska Department of Natural Resources with due regard to their effects on fish and game.

(6) Reimburse the State of Alaska for any loss or damage to fish or game resulting from any operation or construction under this lease or resulting from any violation of or failure to comply with any valid law, regulations, or terms of any applicable lease. The lessee's responsibility shall also encompass acts or omissions of its agents, employees and contractors.

Phil R. Holdsworth
Phil R. Holdsworth, Commissioner

# EXHIBIT I

U.S. Patent No. 50-74-0093, dated March 27, 1974

(formerly 4—1043)

Fairbanks 031755 etc.
(See Appendix A)

278/413

The United States of America

To all to whom these presents shall come, Greeting:

WHEREAS

State of Alaska

is entitled to a Land Patent pursuant to the Statehood Act of July 7, 1958, 72 Stat. 339, as amended, for the following described land:

Umiat Meridian, Alaska.
T. 11 N., R. 7 E.,
All.

S-1294

Containing 22,799.76 acres;

Umiat Meridian, Alaska.
T. 11 N., R. 8 E.,
All.

S-1298

Containing 22,799.76 acres;

Umiat Meridian, Alaska.
T. 11 N., R. 9 E.,
All.

S-1313

Containing 22,799.76 acres;

Umiat Meridian, Alaska.
T. 11 N., R. 10 E.,
All.

S-1317

Containing 22,799.76 acres;

Umiat Meridian, Alaska.
T. 11 N., R. 11 E.,
All.

S-1321

Containing 22,799.76 acres;

Umiat Meridian, Alaska.
T. 11 N., R. 12 E.,
All.

S-1325

Containing 22,799.76 acres;

Umiat Meridian, Alaska.
T. 11 N., R. 13 E.,
All.

S-1329

Containing 22,799.76 acres;

Umiat Meridian, Alaska.
T. 11 N., R. 14 E.,
Tract A.

S-1333

Containing 21,887.76 acres;

Umiat Meridian, Alaska.
T. 11 N., R. 15 E.,
Tract A.

S-1337

Containing 16,223.76 acres;

"INTEGRATED INTO RECORDS"

Patent Number 50-74-0093



IR 4-16-74

Fairbanks 031755 etc.
(See Appendix A)

278/414

Umiat Meridian, Alaska.
T. 11 N., R. 16 E.,
Tract A. S-1341

Containing 18,344.76 acres;

Umiat Meridian, Alaska.
T. 11 N., R. 19 E.,
Tract A. S-1377

Containing 24.76 acres;

Umiat Meridian, Alaska.
T. 11 N., R. 20 E.,
Tract A. S-1364

Containing 287.00 acres;

Umiat Meridian, Alaska.
T. 11 N., R. 21 E.,
Tract A. S-1344

Containing 51.00 acres;

Umiat Meridian, Alaska.
T. 12 N., R. 8 E.,
Tract A. ~~S-1?~~ S-1297

Containing 22,578.52 acres;

Umiat Meridian, Alaska.
T. 12 N., R. 9 E.,
All. S-1312

Containing 22,703.52 acres;

Umiat Meridian, Alaska.
T. 12 N., R. 10 E.,
All. S-1316

Containing 22,703.76 acres;

Umiat Meridian, Alaska.
T. 12 N., R. 11 E.,
All. S-1320

Containing 22,703.52 acres;

Umiat Meridian, Alaska.
T. 12 N., R. 13 E.,
All. Should be Tr. A. S-1328 F-031762

Containing 19,910.52 acres;

Umiat Meridian, Alaska.
T. 12 N., R. 16 E.,
Tract A. S-1340

Containing 70.00 acres;

Patent Number 50-74-0093

278/415

Fairbanks 031755 etc.
(See Appendix A)

Umiat Meridian, Alaska.
T. 12 N., R. 18 E., S-1358

Containing 125.00 acres;

Umiat Meridian, Alaska.
T. 12 N., R. 19 E., S-1361
Tract A.

Containing 75.00 acres:

NOW KNOW YE, that there is, therefore, granted by the UNITED STATES, unto the above named claimant the land above described; TO HAVE AND TO HOLD the said land with all the rights, privileges, immunities, and appurtenances, of whatsoever nature, thereunto belonging, unto the said claimant, forever;

EXCEPTING AND RESERVING TO THE UNITED STATES

1. A right-of-way thereon for ditches and canals constructed by the authority of the United States. Act of August 30, 1890, 26 Stat. 391; 43 U.S.C. 945.

2. A right-of-way thereon for the construction of railroads, telegraph, and telephone lines, as prescribed and directed by the Act of March 12, 1914, 38 Stat. 305.

Pursuant to Sec. 9(c) of the Act of December 18, 1971 (85 Stat. 688), there is reserved for the benefit of the Alaska Natives, and for payment into the Alaska Native Fund, (1) a royalty of 2 per centum upon the gross value (as such gross value is determined for royalty purposes under any disposition by the State of Alaska) of the minerals hereafter produced or removed from such lands, and (2) 2 per centum of all revenues hereafter derived by the State of Alaska from rentals and bonuses from the disposition of such minerals. Pursuant to Sec. 9(g) of the 1971 Act, the reservation hereby made shall continue only until $500,000,000 has been paid into the Alaska Native Fund from sources identified in Sec. 9 of the 1971 Act.



IN TESTIMONY WHEREOF, the undersigned authorized officer of the Department of the Interior, in accordance with the provisions of the Act of June 17, 1948 (62 Stat. 476), has, in the name of the United States, caused these letters to be made Patent, and the Seal of the Department of the Interior to be hereunto affixed.

GIVEN under my hand, in Anchorage, Alaska the TWENTY-SEVENTH day of March in the year of our Lord one thousand nine hundred and SEVENTY-FOUR and of the Independence of the United States the one hundred and NINETY-EIGHTH.

By [signature]
Director

Patent Number 50-74-0093

BOOK 278 416

Appendix A

| | | | |
|---|---|---|---|
| 11N | 7E | F-031807 | S-1294 |
| | 8 | F-031779 | S-1298 |
| | 9 | F-031794 | S-1313 |
| | | F-031798 | S-~~1309~~ 1317 |
| | 11 | F-031755 | S-1321 |
| | 12 | F-031759 | S-1325 |
| | 13 | F-031763 | S-1329 |
| | 14 | F-031769 | S-1333 |
| | 15 | F-031771 | S-1337 |
| | 16 | F-031775 | S-1341 |
| | 19 | F-031911 | S-1377 |
| | 20 | F-031851 | S-1364 |
| | 21 | F-031778 | S-1344 |
| 12N | 8E | F-031810 | S-1297 |
| | 9 | F-031793 | S-1312 |
| | 10 | F-031797 | S-1316 |
| | 11 | F-031801 | S-1320 |
| | 13 | F-031762 | S-1328 |
| | | F-031774 | S-1340 |
| | 18 | F-031839 | S-1359 |
| | 19 | F-031842 | S-1361 |

7403775

RECORDED-FILED
FAIRBANKS REC.
DISTRICT

APR 1 2 07 PM '74

REQUESTED BY AS/DL

ADDRESS 323 E. 4th Ave.
Anch., Ak. 99501
Attn: Dorothy Olmstead

INDEXED

Page 82



50-74-0093