# ATTACHMENT No. 15

# LAST WILL AND TESTAMENT

# OF

# ANDREW OENGA

I, ANDREW OENGA, residing in Barrow, Alaska, being in good health, of sound and disposing mind and memory, do hereby make, publish and declare this to be my Last Will and Testament, hereby revoking all previous Wills and Codicils heretofore made by me.

## I.

I hereby appoint NELSON AHVAKANA of Barrow, Alaska, my Personal Representative to administer my estate under this, my Last Will and Testament.

## II.

It is my desire to avoid all unnecessary court intervention or supervision in the probate of this, my Last Will and Testament, and I therefore direct my Personal Representative to utilize only those proceedings determined to be required under the applicable Probate Code for the disposition of the assets of my estate.

## III.

I hereby direct that all of my legal debts, medical expenses of my last illness, funeral expenses, costs and expenses of administration be paid by my Personal Representative. I hereby authorize my Personal Representative to make whatever arrangements he deems most expedient with respect to the settlement of debts,

HARTIG, RHODES, NORMAN, MAHONEY & EDWARDS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE, ALASKA 99501-3397
TELEPHONE: (907) 276-1592
TELECOPIER: (907) 277-4352

claims and expenses owing by me and my estate. However, nothing herein shall accelerate or cause the acceleration of the maturity of any indebtedness owed by me at the time of my death, nor shall it be construed to require or authorize the prepayment of any indebtedness owed by me at the time of my death and not then due; but such prepayment of any indebtedness owed by me at the time of my death shall be solely at the discretion of my Personal Representative.

IV.

I direct my Personal Representative to distribute any and all items of identified tangible personal property owned by me at my death to the persons designated to received such property in accordance with any written statement or list that I may leave addressed to my Personal Representative. It is my wish that the directions with regard to the disposition of such items of personal property be strictly adhered to by my Personal Representative. Those items of personal property designated for distribution to persons who predecease me or which are not accepted by the persons named in the statement or list, shall be disposed of as part of my residual estate.

The following described real property or interest in real property shall be divided equally between the following named beneficiaries, such beneficiaries to take title or interest in such property as tenants in common. In the event one of the named beneficiaries shall not survive me, his or her share shall be

HARTIG, RHODES, HOGE, NORMAN, MAHONEY & EDWARDS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE, ALASKA 99501-3397
TELEPHONE: (907) 276-1592
TELECOPIER: (907) 277-4352

distributed to the living issue, collectively of each beneficiary, such issue to take by right of representation. The names of the beneficiary referred to within this paragraph are JENNIE OENGA, WALLACE OENGA, GEORGENE SHUGLUK, LEROY OENGA and MICHAEL DELIA. The property that I give, devise and bequeath by this paragraph is 40 acres more or less more particularly described as follows:

A. Alaska Native Allotment, F-14632B, U.S. Survey 6904, (Heald Point, Alaska), Township 11 North, Range 15 East, UM Section 1, Township 12 North, Range 15 East, UM Section 36.

B. The real property located at Lot 21, Block 40, U.S. Survey 4615, Townsite of Barrow, along with the building or structure located thereon and any personal property located therein.

All the rest and residue of my estate shall be divided into as many equal shares as there are beneficiaries of mine then living and beneficiaries of mine then deceased with issue then living, and I devise and bequeath one share to each living beneficiary of mine and one share to the living issue, collectively, of each deceased beneficiary of mine, such issue to take by right of representation. The names of the beneficiaries are JENNIE OENGA, WALLACE OENGA, GEORGENE SHUGLUK, LEROY OENGA, and MICHAEL DELIA.

V.

If all my lineal descendants and other persons who would be entitled to a portion of my estate under a provision of this Will die prior to vesting or complete distribution of my estate, all assets then held by my Personal Representative shall be distributed

HARTIG, RHODES, HORNAN, MAHONEY & EDWARDS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE, ALASKA 99501-3397
TELEPHONE: (907) 276-1592
TELECOPIER: (907) 277-4352

to those persons who would have inherited from me if I had died immediately after the death of my last surviving lineal descendant in accordance with the laws of intestate succession then in effect in the State of Alaska.

VI.

If NELSON AHVAKANA refuses to serve, fails to qualify, or, having qualified as Personal Representative, resigns or fails to continue serving for any reason, then GEORGENE SHUGLUK of Barrow, Alaska shall serve as substitute Personal Representative.

VII.

A Personal Representative appointed, pursuant to my nomination in this Will, shall not be required to furnish bond or other security.

The Personal Representative appointed to administer shall be entitled to a reasonable compensation for services provided and shall further be entitled to reimbursement for any reasonable expenses incurred on behalf of the administration of my estate. These fees and expenses may be paid out of either the income or corpus of my estate.

VIII.

My Personal Representative shall have the authority and discretion to question the levy of any tax; to pay any such tax without questioning the propriety of such levy; or to litigate,

HARTIG, RHODES, NORMAN, MAHONEY & EDWARDS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE, ALASKA 99501-3397
TELEPHONE: (907) 276-1592
TELECOPIER: (907) 277-4352

compromise or settle any such tax. The determination of my Personal Representative to question, litigate, compromise, settle or pay any such tax, shall be binding upon my heirs and all beneficiaries under this Will.

IX.

My Personal Representative shall have the discretion to arrange for extension of the time for the payment of estate and inheritance taxes. Any interest or penalty incurred on those taxes, whether or not resulting from the extension or postponement, shall be paid as provided in this Will.

All estate, inheritance and other death and succession taxes, other than generation-skipping taxes, payable by reason of my death, and any interest and penalties on such taxes, shall be paid out of and charged against the principal of my residuary estate. I waive any right of reimbursement for or recovery of those death taxes except reimbursement for or recovery of any federal or state estate tax attributable to property over which I have a power of appointment which passes as a result of my failure to exercise such power.

X.

My Personal Representative may, if such action is likely to reduce the total of the estimated death taxes payable by or with respect to my estate and the estimated income taxes payable by my estate and any one or more beneficiaries thereof, value my gross

HARTIG, RHODES, NORMAN, MAHONEY & EDWARDS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE, ALASKA 99501-3397
TELEPHONE: (907) 276-1592
TELECOPIER: (907) 277-4352

estate as of a date that causes larger death taxes to be payable than would have been the case if my Personal Representative had elected another date, claim as income tax deductions expenses that would otherwise qualify as estate tax deductions, and make such other elections under the tax laws as are deemed advisable. If my Personal Representative makes any such election, he may, in his absolute discretion, make compensating adjustments by apportioning tax savings among the persons, including any living trust of mine, having a beneficial interest in property passing by reason of my death, whether or not such interests pass under this Will, either by making distributions outright to such persons or by augmenting or reducing any gift made under this Will.

XI.

I hereby grant to my Personal Representative the continuing, absolute discretionary power to deal with any property in my estate, real or personal, as freely as I might if I were handling my own affairs. Such power may be exercised independently and without the prior approval of any judicial authority. My Personal Representative shall have, except as otherwise expressly provided herein, all the powers, duties, and responsibilities conferred upon personal representatives by the laws of the State of Alaska, as existing at the time of the execution of this Will and as those laws may be amended from time to time to enlarge the powers, duties, and responsibilities conferred upon my Personal Representatives.

HARTIG, RHODES, NORMAN, MAHONEY & EDWARDS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE, ALASKA 99501-3397
TELEPHONE: (907) 276-1592
TELECOPIER: (907) 277-4352

XII.

During the administration of my Estate, my Personal Representative may permit any beneficiary to have the use, possession and enjoyment, without charge, of any real estate or tangible personal property devised, bequeathed or ultimately distributable to said person so long as he lives; and if he dies before his right to said property becomes absolute, or before said property is distributed to him neither he nor his estate shall be held liable for any loss, destruction, damage, depreciation or waste of said property except through the fault or neglect of the beneficiary. Neither the existence nor exercise of this power shall be deemed a constructive or actual distribution of the property to which it relates.

XIII.

My Personal Representative shall not be liable for mistake of law or of fact, for errors of judgment, or for loss to any beneficiary hereunder or to any other person, except in the case of dishonesty, fraud or willful misconduct on the part of the Personal Representative to be charged.

XIV.

If any beneficiary contests the validity of this Will or any provision thereof or, except as a party defendant, institutes or joins in any proceeding to contest the validity of this Will or

HARTIG, RHODES, NORMAN, MAHONEY & EDWARDS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE, ALASKA 99501-3397
TELEPHONE: (907) 276-1592
TELECOPIER: (907) 277-4352

to prevent any provision hereof from being carried out in accordance with the terms hereof, unless the proceedings are instituted based on probable cause, all benefits provided for that beneficiary are revoked and those benefits shall pass to the noncontesting residuary beneficiaries of this Will.

If all of the residuary beneficiaries join in the proceedings, then the benefits shall pass to those other persons living at the time of my death who would have been my heirs had I died intestate a resident of the State of Alaska, and the person or persons contesting my Will had died immediately before me.

XV.

If any of the provisions of this Will are held invalid, the invalidity of those provisions shall not affect any of the remaining provisions, it being my intention that each of the provisions shall be independent of each of the others, so that all valid provisions shall be strictly enforced, irrespective of the invalidity of any other provision.

XVI.

Words of the masculine gender as used in this Will include the feminine and the neuter and, when the sense so indicates, words of the neuter gender may refer to any gender.

IN WITNESS WHEREOF, I sign my name in the presence of Mildred Akpik, and ALICE OKPEAHA,

HARTIG, RHODES, NORMAN, MAHONEY & EDWARDS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE, ALASKA 99501-3397
TELEPHONE: (907) 276-1592
TELECOPIER: (907) 277-4352

WITNESSES; who, at my request and in my presence, and in the presence of each other, sign their names as Witnesses this 18th day of December, 1989.

Andrew Oenga
Testator

STATE OF ALASKA )
).ss
SECOND JUDICIAL DISTRICT )

Mildred Akpik, being first duly sworn, deposes and states:

1. I am fluent in the Inupiaq and English language. At the request of Andrew Oenga, I translated his Last Will and Testament to him. He acknowledges that he understands each and every provision of this document, and he stated that the will accurately expresses his intent for the disposition of his estate on his death. To the best of my knowledge, he is over the age of 21 years of age, and of sound mind, and has voluntarily signed this will.

DATED at Barrow, Alaska, this 18th day of December, 1989.

Mildred Akpik
Mildred Akpik,

SWORN to and acknowledged before me this 18th day of December, 1989, by Mildred Akpik.

Nancy S. Berry
Notary Public for Alaska
My commission expires: September 15, 1992

HARTIG, RHODES, NORMAN, MAHONEY & EDWARDS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE, ALASKA 99501-3397
TELEPHONE: (907) 276-1592
TELECOPIER: (907) 277-4352

THIS INSTRUMENT, consisting of 11 pages, was SIGNED,

PUBLISHED and DECLARED by ANDREW OENGA as his LAST WILL AND TESTAMENT, in the presence of the undersigned Attesting Witnesses, who, at his request and in his presence and in the presence of each other, sign our names as such Attesting Witnesses this 18th day of December, 1989.

Mildred Akpik
Mildred Akpik, residing at TH-5, Apt. #452 Barrow, AK 99723

Alice Okpeaha
ALICE OKPEAHA, residing at 4104 TAHAK ST. BRW. AK. 99723

I, ANDREW OENGA, the Testator, sign my name to this instrument this 18th day of December, 1989, and, being first sworn, declare to the undersigned authority that I willingly sign this instrument as my LAST WILL AND TESTAMENT, that I execute it as my free and voluntary act for the purposes expressed in it, and that I am eighteen years of age or older, of sound mind, and under no constraint or undue influence.

Andrew Oenga
Testator

We, Mildred Akpik and ALICE OKPEAHA, the Witnesses, sign our names to this instrument, and, being first sworn, declare to the undersigned authority that the Testator signs and executes this instrument as his LAST WILL AND TESTAMENT and that he signs it willingly, and that each of us, in the presence and hearing of the Testator, signs this Will as witness to the Testator's signing, and

ARTIG, RHODES, HOFFMAN, MAHONEY & EDWARDS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE, ALASKA 99501-3397
TELEPHONE: (907) 276-1592
TELECOPIER: (907) 277-4352

that to the best of our knowledge the Testator is eighteen years of age or older, of sound mind, and under no constraint or undue influence.

Mildred Akpik
Witness

Alice Okpeaha
Witness

STATE OF ALASKA )
: ss.:
THIRD JUDICIAL DISTRICT )

SUBSCRIBED, SWORN TO and acknowledged before me by ANDREW OENGA, the Testator, and subscribed and sworn to before me by MILDRED AKPIK and ALICE OKPEAHA, Witnesses, this 18th day of December, 1989.

Nancy S. Berry
Notary Public in and for Alaska
My Commission Expires: 09-15-92

\docs\6750\1\andrew.wil

HARTIG, RHODES, NORMAN, MAHONEY & EDWARDS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE, ALASKA 99501-3397
TELEPHONE: (907) 276-1592
TELECOPIER: (907) 277-4352

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
AT Second Judicial District

In the Matter of the Will of

Andrew Oenga
(Testator)

Date of Birth: 4-27-09

Mailing Address: North Slope Borough Senior Citizens Center, ~~P.O. Box 69~~
Barrow, AK 99723

Will No. ______

## AGREEMENT AND RECEIPT FOR DEPOSIT OF WILL

The purpose of depositing a Will with the court is to provide a safe place for the Will. It is not required by law that a Will be deposited with the court. The acceptance of a Will for safekeeping by the court in no way insures the validity of any provision contained in the Will, nor does acceptance in any way enhance the force or effect of that Will.

## AGREEMENT

I, the undersigned, hereby deposit the Last Will and Testament of Andrew Oenga for safekeeping with the Superior Court for the State of Alaska at Barrow, Alaska. I further state that Nelson Ahvakana, whose address is Barrow, Alaska, is named executor in said Will and is hereby designated to receive the Will upon my death and that Georgene Shugluk, whose address is Barrow, Alaska, is named as alternate executor and is designated to receive the Will upon my death if my executor above named is unable to serve or receive the said Will.

Upon a request by an interested party after my death, the Clerk of the Superior Court or the Superior Court Registrar is hereby authorized to open and inspect said Will in order that any burial or other emergency provisions of said Will may be carried out without delay if either my executor or the alternate above named is not immediately available to receive the Will.

1/2/90
Date

[signature]
Testator/Agent

## RECEIPT

I hereby acknowledge receipt of the above mentioned Will for safekeeping.

______
Date

______
Superior Court Clerk/Registrar

P-100 (10/87) (st.2)
AGREEMENT AND RECEIPT FOR DEPOSIT OF WILL

Probate Rule 3
AS 13.11.315

## DURABLE POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that I ANDREW OENGA of Barrow, Alaska, do hereby constitute and appoint NELSON AHVAKANA, of Barrow, to be my true and lawful attorneys with full power in my name and stead and on my behalf and with full power to substitute at any time or times for any of the purposes described below one or more attorneys and to revoke the appointment of any attorney so substituted and to do the following:

1. To manage my affairs, handle my investments, arrange for the investment, reinvestment and disposition of funds, exercise all rights with respect to my investments, accept remittances of income and disburse the same, including authority to open bank accounts in my name and to endorse checks for deposit therein or in any bank where I may at any time have money on deposit and sign checks covering withdrawals therefrom;

2. To endorse and deliver certificates for transfer of bonds or other securities to be sold for my account and receive the proceeds of such sale;

3. To sign, execute, acknowledge and deliver on my behalf any deed of transfer or conveyance covering personal property or real estate wherever situated (including transfers or conveyances to any trust established by me), any discharge or release of mortgage held by me on real estate or any other instrument in writing;

4. To negotiate and execute leases of any property, real or personal, which I may own, for terms that may extend beyond the duration of this power and to provide for the proper care and maintenance of such property and pay expenses incurred in connection therewith;

5. To subdivide, partition, improve, alter, repair, adjust boundaries of, manage, maintain and otherwise deal with any real estate held as trust property, including power to demolish any building in whole or in part and to erect buildings;

6. To enter into a lease or arrangement for exploration and removal of minerals or other natural resources or enter into a pooling or unitization agreement;

7. To hold securities in bearer form or in the name of a nominee or nominees and to hold real estate in the name of a nominee or nominees;

HARTIG, RHODES,
NORMAN, MAHONEY
& EDWARDS
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE, ALASKA
99501-3397
TELEPHONE:
(907) 276-1592
TELECOPIER:
(907) 277-4352

8. To continue or participate in the operation of any business or other enterprise;

9. To borrow money from time to time in my name, and to give promissory notes or other obligations therefor, and to deposit as collateral, pledge as security for the payment thereof or mortgage any or all my securities or other property of whatever nature;

10. To have access to any and all safe deposit boxes of which I am now or may become possessed, and to remove therefrom any securities, papers or other articles;

11. To make all tax returns and pay all taxes required by law, including federal and state returns, and to file all claims for abatement, refund or other papers relating thereto;

12. To demand, collect, sue for, receive and receipt for any money, debts, or property of any kind, now or hereafter payable, due or deliverable to me, to pay or contest claims against me, to settle claims by compromise, arbitration or otherwise and to release claims;

13. To employ as investment counsel, custodians, brokers, accountants, appraisers, attorneys-at-law or other agents such persons, firms or organizations, including any of my said attorneys and any firm of which any of my said attorneys may be a member or employee, as deemed necessary or desirable, and to pay such persons, firms, or organizations such compensation as is deemed reasonable and to determine whether or not to act upon the advice of any such agent without liability for acting or failing to act thereof;

14. To expend or distribute income or principal of my estate for the support, education, care or benefit of me and my dependents;

In general I give to my said attorney full power to act in the management and disposition of all my estate, affairs and property of every kind and wherever situate in such manner and with such authority as I myself might exercise if personally present.

This power of attorney shall be binding on me and my heirs, executors and administrators and shall remain in force up to the time of the receipt by my said attorneys of a written revocation signed by me.

This power of attorney shall become effective upon my disability or incapacity. I shall be deemed disabled or incapacitated upon the acceptance by my said attorneys of the

HARTIG, RHODES, NORMAN, MAHONEY & EDWARDS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE, ALASKA 99501-3397
TELEPHONE: (907) 276-1592
TELECOPIER: (907) 277-4352

certificate of a physician (who, in his opinion, is qualified) which states that such physician has examined me and that I am incapacitated mentally or physically and am therefore incapable of attending to my business affairs.

IN WITNESS WHEREOF, I have hereunto set my hand and seal on this 18th day of December, 1989.

Andrew Oenga
ANDREW OENGA

STATE OF ALASKA )
) .ss
SECOND JUDICIAL DISTRICT )

Mildred Akpik, being first duly sworn, deposes and states:

1. I am fluent in the Inupiaq and English language. At the request of Andrew Oenga, I translated his Last Will and Testament to him. He acknowledges that he understands each and every provision of this document, and he stated that the will accurately expresses his intent for the disposition of his estate on his death. To the best of my knowledge, he is over the age of 21 years of age, and of sound mind, and has voluntarily signed this will.

DATED at Barrow, Alaska, this 18th day of December, 1989.

Mildred Akpik
Mildred Akpik,

SWORN to and acknowledged before me this 18th day of December, 1989, by Mildred Akpik.

Nancy S. Berry
Notary Public for Alaska
My commission expires: September 15, 1992

HARTIG, RHODES, NORMAN, MAHONEY & EDWARDS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE, ALASKA 99501-3397
TELEPHONE: (907) 276-1592
TELECOPIER: (907) 277-4352

STATE OF ALASKA )
) ss:
THIRD JUDICIAL DISTRICT )

THIS IS TO CERTIFY that on this 18th day of December 1989, before me, the undersigned Notary Public, personally appeared ANDREW OENGA and acknowledged the execution of the foregoing instrument to be his free act and deed.

WITNESS my hand and official seal.

Nancy S. Berry
Notary Public in and for Alaska
My Commission Expires: 09/15/92

\docs\6750\1\andrew.poa

HARTIG, RHODES, NORMAN, MAHONEY & EDWARDS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
717 K STREET
ANCHORAGE, ALASKA 99501-3397
TELEPHONE: (907) 276-1592
TELECOPIER: (907) 277-4352

# ATTACHMENT No. 16

Received
FEB 11 REC'D
B.I.A.

Dear Sir: Feb. 2,1993

I'm writing on behalf of myself. I've been concerned lately - since my father's death on April 16,1990 - about the following things and I need information and answers to my questions:

1. I would like a copy of the Lease deal with the oil companies.
2. How much the Value of the land has changed in the last two years?
3. Who all gets money besides the Shareholders?
4. Also, if the land is not destroyed since it was last checked on.
5. To all shareholders, to be informed of any activity going on in our father's land.

In the matter of the Estate of Andrew Oenga, Deceased.

Thank you for your help.

Sincerely Yours,

Wallace Oenga
207 Moller Drive
Sitka, Alaska 99835

# ATTACHMENT No. 17

February 18, 1993

Wallace Oenga
207 Moller Drive
Sitka, AK 99835

RE: Andrew Oenga's Native Allotment F-14632 Parcel B - Lease

Dear Wallace:

Enclosed per your request is a copy of the lease agreement with BP Exploration. Paragraph 4 explains about the annual lease payment of $16,000.00. The following paragraph specifies the lease income adjustments for the following years.

A copy of the Status Report of Niakuk Project is for your information. It is self explanatory and will answer a few of your questions that you had concerns about.

There is no change in the five (5) shareholders or heirs to your fathers estate.

We will contact the Lessee (BP Exploration) and request they contact all other heirs other than Leroy Oenga.

Please keep our office informed of your current address.

If you have any other concerns please do not hesitate to contact Beth Dexter at the above address or telephone 1-800-822-3596 Ext. 361.

Sincerely,

Stephen P. Thomas
Acting Superintendent

Enclosures

SPT/tmf
Bsd 2-18-93
S.Thomas 2-19-93

# ATTACHMENT No. 18

# REQUEST FOR REAL ESTATE APPRAISAL

BUREAU OF INDIAN AFFAIRS

TO: CHIEF APPRAISER

DATE: 6/15/93

AGENCY: Fairbanks/ASNA

VILLAGE: Prudhoe Bay

ALLOTMENT: FF014632

REQUEST NO: F93-69

TRANSACTION TYPE: Lease Rental Adjustment DATE

OWNER: Heirs of Andrew Oenga

APPRAISAL TO ESTIMATE rental VALUE OF A fee INTEREST IN THE FOLLOWING PROPERTY.

LEGAL DESCRIPTION:

U.S Survey 6904 at Heald Point, Alaska located in Section 1, Township 11N, Range 15 East and Section 36, Township 12N, Range 15E containing 40 acres. Current rental area is 10 acres (see map)

| LEASE (Effective date) | TYPE | DATE OF EXPIRATION |
|---|---|---|
| 1/1/89 | Long term development | 12/31/2014 |
| ANNUAL RENTAL | ADJUSTMENTS | IMPROVEMENTS REQUIRED |
| $16,000 | 5 year intervals | |

OTHER LEASE PROVISIONS

see attached lease agreement, particularly Clause 5. Lease Rental Adjustments.

(ATTACH COPIES OF COMPLEX LEASES)

| RIGHT OF WAY | TYPE | TERM |
|---|---|---|
| | | |

CONDITIONS

LAND CHARACTER: Remote

IMPROVEMENTS TO BE APPRAISED: No,

SPECIAL INSTRUCTIONS:

REQUEST STATUS:

Received JUN 17 1993

Assigned JUN 17 1993

Appraised

Recommended

Approved AUG 6 1993

Transmitted AUG 6

Appraiser Avess, J. R.

THE SUPERINTENDENT HAS REVIEWED THE NEED FOR APPRAISAL OF THE DESCRIBED PROPERTY FOR THE PURPOSE INDICATED AND CERTIFIES THAT THE APPRAISAL IS NEEDED AND REQUESTS THAT IT BE PREPARED ON A * routine PRIORITY BASIS.

*Insert the required priority
"ROUTINE" — Appraisal will be done in the order requested.
"RUSH" — Prepare Appraisal ahead of my other requests.

SIGNATURE

Superintendent
TITLE

# ATTACHMENT No. 19

COPY

Appraisal Report
of
A portion of U.S. Survey No. 6904
located in Heald Point, Alaska
containing 10 acres
as of
June 17, 1993

Owner(s): Heirs of Andrew Oenga
Fairbanks Agency
Our File No. 93-280

by:

Bureau of Indian Affairs
John R. Cress, BIA Staff Appraiser
1675 "C" Street, Room 130
Anchorage, Alaska 99501-5198

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS
BRANCH OF REAL ESTATE APPRAISALS
JUNEAU AREA OFFICE, ALASKA

**APPRAISAL REPORT**

**Owner**: Heirs of Andrew Oenga **Allotment No.**: FF-014632

**Agency**: Fairbanks / ASNA **Appraisal No.**: 93-280

**Purpose of Appraisal**: The function of this report is to estimate current market rent of fee simple ownership for a lease rental adjustment. The appraisal conforms to Volume 12 Code of Federal Regulations, Part 34, Subpart C (FIRREA) and is in compliance with the Uniform Standards of Professional Appraisal Practice (USPAP).

**Property Rights**: Fee Simple Estate.

**Legal Description**: A portion of U.S. Survey No. 6904 located in Section 1, T.11N., R.15E. and Section 36, T.12N., R.15E., Umiat Meridian, Heald Point, Alaska.

**Size of Subject**: 10 Acres

**Highest and Best Use**: Industrial

**Date of Appraisal**: June 17, 1993

**Date of Inspection**: June 17, 1993

**Market Rent**: $16,000

John R. Cress, SRA, Appraiser

Field Inspection: Airplane
Yes [✓] No [ ]

8/6/93
Date Prepared

J. Richard Larson
Area Chief Appraiser

Reviewer: Did [ ] Did Not [✓] Inspect Subject.

AUG 3 1993
Date Approved

APPRAISER - CLIENT PRIVILEGED/WORK PRODUCT
DO NOT RELEASE WITHOUT PROPER AUTHORIZATION




**Location Map**


BEAUFORT SEA
NORTH STAR ISLAND
MOBILE TELEPHON
LONG ISLAND
SEAL ISLAND
RETURN ISLANDS
MIDWAY ISLANDS
CROSS ISLA
NO NAME ISLAND
GWYDYR BAY
STUMP ISLAND
DEW SITE
N
PT. McINTYRE
WEST DOCK
RESOLUTION IS.
BP 37
ENDEAVOR IS.
MPI
SAG DELTA 3
PROPOSED ENDICOTT CAUSEWAY
SDI
DUCK IS.
FRONTIER CAMP
PROPOSED LISBURNE CAUSEWAY
SUBJECT
PRUDHOE BAY
SPINE
SERVICE CITY
SOHIO CAMP
GAS PIPLINE RD.
DEAD CHICKEN LAKE
EAST DOCK
BIG LAKE
CCP
WGI
NGI
LPC
ARCO CAMP
KUPARUK PIPELINE RD.
RIVER
PUMP STATION-1
OX BOW RD.
ALASKA TELECOM TRANSMISSION POINT # 2
COASTAL
EAST FORK
DEADHORSE
SEE-INSET
COMMUNICATION CENTER ALASKA TELECOM TRANSMISSION PT. # 1
ALYESKA PIPELINE
PUTULIGAYUK
MAIN CHANNEL
GAVANIRKTON
ROAD




## Neighborhood Map

# NORTH SLOPE BOROUGH AREA ANALYSIS

The North Slope Borough encompasses a land area of 90,000 square miles in northern Alaska, constituting approximately 15% of the State. It extends 650 miles from Point Hope on the Chuckchi Sea to the Canadian border, and 225 miles north from its southern boundary to Barrow, the most northern community in North America.

Barrow, the seat of the North Slope Borough government and its largest city, is 1,955 miles northwest of Seattle, 722 miles northwest of Anchorage and 503 miles northwest of Fairbanks.

There are no roads connecting any of the North Slope Borough communities. The communities are only accessible by air transportation on a year round basis. The only road to the North Slope is the "Dalton Highway" or "Haul Road", a gravel transportation corridor which parallels the Trans-Alaska Pipeline from Fairbanks to Prudhoe Bay. It serves mainly as a freight corridor for materials and equipment to the oil fields.

Three distinct areas make up the North Slope Borough: the Coast Plain, in which Barrow is located, varies in width from 30 to 100 miles. It is treeless lowland tundra dotted with numerous small lakes, marshes, meandering streams and rivers; to the south are foothills characterized by ridges and plateaus varying from 300' and 3,000'; and the rugged Brooks Range with its tallest peak reaching 9,050', separating the Arctic and Interior Alaskan drainage systems. The North Slope Borough has 2,044 miles of coastline. Sixty-four thousand square miles can be classified as wetlands. The northern Alaskan tundra has been described as a "frozen desert". Rain and snowfall average less than 10" per year. Were it not for the permafrost preventing underground drainage, a real desert would form.

For the newcomer, the tundra is a seemingly frigid, hostile, lifeless realm for three-fourths of the year; for those that consider this home, the tundra and the adjacent ocean abound with wildlife which supports our subsistence lifestyle. In June, a never setting sun brings forth plant species by the hundreds. Swans, ducks, geese and other birds by the thousands utilize the coastal plain as nesting grounds.

The factors that distinguish the seasons are the length of daylight and the degree of temperature. Arctic days start about January 23rd when the sun first peaks above the horizon at noontime for the first time in two months. Days gradually lengthen until about May 12th, when the sun doesn't set again until about August 2nd. From then on, the days grow shorter until about November 20th when the dark arctic winter begins.

Temperature changes cannot be regarded as extreme. In summer, the average temperatures hover somewhat above freezing, although highs of 60° to 70° Fahrenheit may be reached for short periods.

North Slope Borough Area Analysis - (Continued)

Inland the temperatures reach the mid-80's. From this, there is a gradual shift to winter temperatures, when the average is 30° to 35° below zero. The frigid winter is very long with blowing snow and the Arctic summer is brief.

The North Slope is a land of superlatives. On an annual basis, its coastal area has the coldest climate in Alaska; the region contains North America's largest oil field; and the region has one of the largest Eskimo populations in the world. In summer, the sun stays above the horizon for 84 days, and in winter it disappears for 67 days.

Source: North Slope Borough 1993 Economic Profile, Jeslie Kaleak, Sr., Mayor.

## NEIGHBORHOOD ANALYSIS

The subject property is situated in the Deadhorse-Prudhoe Bay neighborhood on Alaska's North Slope. More specifically it is located on the northeast side of the Prudhoe Bay oil field on the northeast edge of Prudhoe Bay. This is just north of the Sag Delta 6 production facility. The area is bounded on the south by Brooks Range. From Brooks Range, the area slopes northward in a wide, gentle plain to the shores of Beaufort Sea which is part of the Arctic Ocean.

This industrial neighborhood is the origin of the Trans-Alaska Pipeline which transports an average of 1.9 to 2.2 million barrels of crude oil per day to Valdez for the domestic consumption of the United States. As such, this neighborhood is critical to the future of Alaska and to the economy of the United States. The development of these oil fields and oil revenues generated are directly responsible for the large population growth and expansion of the Alaskan economy which has taken place in the last 20 years.

The central core area of industrial companies serving the oil facilities is centered in and around the Deadhorse Airport. Here many industrial buildings are located along with different "camps" which provide food and lodging for slope workers.

The subject is about 14 miles north of the core area. The only development near the subject in this area is Sag Delta 6, a production facility and the Niakuk Island site located about a mile offshore to the northwest.

Neighborhood Analysis - (Continued)

Air transportation in and out of the area is via both scheduled and charter airlines. Trucking goods are brought in over the Haul Road or Dalton Highway from Fairbanks, which is a State maintained gravel road. This road is not open to the general public past the Yukon River in the winter and Disaster Creek in the summer.

Within the Prudhoe Bay field, there is the gravel surfaced Spine Road some 30 miles in length which, along with numerous gravel access roads. The closest road to the subject is the access road to Sag Delta 6 which ends about one half mile southeast of the subject.

Water transportation to the area is normally limited to about a six-week period during the summer when the ocean ice moves offshore and allows barges to be brought in with modules, heavy equipment and supplies.

The area is expected to be economically viable for many years although there will be a general shift in the work complexion which is taking place at this time from exploration to production.




IMPROVEMENT

FROM W.C.M.C. No. 2

THE WEST COR. OF AN ICE CELLAR, 2 1/2 X 2 1/2 FT., BEARS N.32°55' E., 4.81 CHS. DIST., ONE SIDE EXTENDS N 40° E.

MEANDERS

ALONG AN ERODING SHORELINE 8 TO 16 FT. HIGH.

| | | | | | |
|---|---|---|---|---|---|
| 1. | N.49°01' E., 2.88 CHS. | | 17. | N.46°52' E., | 1.90 CHS. |
| 2. | N.28°23' E., 1.98 CHS. | | 18. | N.40°43' E., | 9.67 CHS. |
| 3. | N.51°33' E., 2.03 CHS. | | 19. | S.87°07' W., | 1.47 CHS. |
| 4. | N.48°14' E., 3.27 CHS. | | 20. | S.68°05' W., | 3.99 CHS. |
| 5. | N.34°02' E., 2.00 CHS. | | 21. | S.56°28' W., | 3.69 CHS. |
| *6.* | N.18°18' E., *3.48 CHS. | | *22.* | S.88°47' W., | *3.11 CHS. |
| 7. | N.45°49' E., 3.90 CHS. | | 23. | S.50°37' W., | 5.86 CHS. |
| 8. | N.27°14' E., 2.57 CHS. | | 24. | S.40°43' W., | 8.75 CHS. |
| 9. | N.41°31' E., 2.72 CHS. | | 25. | S.47°22' W., | 3.43 CHS. |
| 10. | N.30°25' E., 1.74 CHS. | | 26. | S.40°08' W., | 3.71 CHS. |
| 11. | N.34°01' E., 2.13 CHS. | | 27. | S.37°30' W., | 8.27 CHS. |
| 12. | N.42°08' E., 3.43 CHS. | | 28. | S.35°25' W., | 4.18 CHS. |
| 13 | N.36°09' E., 2.54 CHS. | | 29. | S.34°58' W., | 5.58 CHS. |
| 14. | N.49°36' E., 2.10 CHS. | | 30. | S.32°23' W., | 3.04 CHS. |
| 15 | N.31°51' E., 5.32 CHS. | | 31. | S.49°34' W., | 3.14 CHS. |
| 16. | N 25°41' E., 1.61 CHS. | | 32. | S.32°45' W., | 6.14 CHS. |

**Plat Map**

I, Michael D. Wilson, HEREBY CERTIFY upon honor that in pursuance of Special Instructions dated April 20, 1981, I have executed the survey represented upon this plat in strict conformity with said Special Instructions, the Manual of Instructions for the Survey of the Public Lands of the United States, 1973, and in the specific manner described on this plat.

15 May 1985
Date

Michael D. Wilson
Cadastral Surveyor

1 0 1 2 3 4 5 10 15 20
Chains

Allottee: Heirs of Andrew Denga Allotment No. FF-[illegible]
Taken By: John R. Cress Date: 06-17-[illegible]
Location: U.S. Survey No. [illegible], Heald Point, Alaska.



View is northeast, the subject is the narrow needle of land protruding into the Beaufort Sea.



View of subject in center left of the photograph. Sag Delta production facility is faintly visible in the right center.

Allottee: Heirs of Andrew [illegible] Allotment No. FF-[illegible]
Taken By: John R. Cress Date: [illegible] '93
Location: U.S. Survey No. [illegible], [illegible] Point, Alaska.



View is of the Sag Delta # production facility. Subject is not visible in this photograph.

## PROPERTY DESCRIPTION

Date of Inspection: The property was inspected by the appraiser on June 16, 1993.

Location: The subject property is located on a long narrow peninsula called Heald Point on the east side of Prudhoe Bay of the Beaufort Sea, Alaska.

Size and Shape: The shape is like a finger, the size is 10 acres or the tip of the peninsula. It is 600' wide at its widest point.

Terrain, Soils and Vegetative Cover: The terrain is very flat or level with a very slight southeastern slope. The soils are gravelly sands with tundra grasses on top. The ground is with permafrost and no trees.

Access: Access to the site is by gravel road to within half a mile, aircraft with floats or by sea.

Utilities: Utilities are not present at the site.

Easements: None, except the subject is part of a Native allotment restricted from alienation and taxation. Also, exceptions and reservations of right-of-way for roads, pipelines, communication lines, ditches, canals have been imposed on the property by the United States.

Zoning: None, restricted only by the State of Alaska D.E.C., pertaining to water supply (wells, lakes, and rivers) and sanitation.

Tax Assessment: The subject is exempted from real estate tax assessments.

History: The subject has been used as an unimproved site for the last five years. There have been no real estate transactions for the last 4-½ years, since the original lease January 1, 1989. The land remains undeveloped.

Potential Hazardous Waste/Toxic Material: The appraiser did not detect any signs of spillage or hazardous waste and was unable to ascertain any conditions of the subsurface (regolith) components. The appraisal is based on the assumption that no hazardous waste or toxic material are present which would alter the appraisal of the subject property.

Mineral Rights: Although there are mineral deposits in this area, the appraiser has no information that the subject has minerals in commercial quantities. However, the market does not indicate the retention of mineral rights would lower the value of this property.

## HIGHEST AND BEST USE

That reasonable and probable use that supports the highest present value, as defined, as of the effective date of appraisal. Alternatively, that use, from among reasonably probable and legal alternative uses, found to be physically possible, appropriately supported, financially feasible, and which results in highest land value.

The definition immediately above applies specifically to the highest and best use of the land. It is to be recognized that in cases where a site has existing improvements on it, the highest and best use may very well be determined to be different from the existing use. The existing use will continue, however, unless and until the land value in its highest and best use exceeds the total value of the property in its existing use.

Implied within these definitions is recognition of the contribution of that specific use to community environment or to community development goals in addition to wealth maximization of individual property owners. Also implied is that the determination of highest and best use results from the appraiser's judgment and analytical skill, i.e., that the use determined from analysis represents an opinion, not a fact to be found.

In appraisal practice, the concept of highest and best use represents the premise upon which value is based. In the context of most probable selling price (market value) another appropriate term to reflect highest and best use would be most probable use. In the context of investment value an alternative term would be most profitable use.

The optimum use of the land unzoned was concluded and based on physical inspection of the site, observing the tangible surroundings near the subject 10 acres. Due to the lack of data to support an economic study, logic, productivity and profitability were used for testing the validity of the highest and best use.

The highest and best use is Industrial - oil or natural gas related development or production site. This is substantiated by the land capabilities, the use of adjacent properties and the parcel size and shape.

## VALUATION ANALYSIS

The estimate of market rent of the subject property is normally based upon the indications of three approaches to value, namely the Market Data Approach, Cost Approach and Income Approach. Since the subject is an unimproved property and yields no income, the latter two approaches to value are not applicable. The Market Data Approach to value alone will provide the basis for estimating the current market rent. The market data is to be compared to lease data in the neighborhood.

## DEFINITION OF MARKET RENT

The rental income that a property would most probably command on the open market as indicated by current rents being paid for comparable space (as of the effective date of the appraisal). Real Estate Appraisal Terminology, Boyce, Ballinger Page 160.

## MARKET DATA APPROACH

An appraisal procedure where the market rent estimate is predicated upon prices paid in the actual market.

It is a process of analyzing lease data of similar properties in order to derive an indication of the most probable market rent of the property being appraised. The factors listed below are the primary areas of consideration by buyers and sellers in the market and are used in our comparative analysis:

Terms: In some instances the lease price is affected by the terms of a transaction. Leases are very versatile and very considerable, some with signing bonus, some with increasing or decreasing income streams.

Time: This factor reflects social and economic conditions at the time of lease. It measures the changes in values between the dates of sale and appraisal. Adjustment is based on market analysis, published reports and the appraiser's judgement.

Location: This is an economic concept which considers the effect of spatial distributions upon the value of real estate. Properties having choice or favorable location tend to rent for higher prices.

Size: Market analysis indicates that smaller parcels normally tend to rent for a higher unit price than larger tracts because there is greater demand for small tracts.

Access: Availability of legal and physical access influences prices. Lack of either or both varies greatly among the properties. Quality of physical access is directly related to the prices. The better the access, the higher the price.

Market Data Approach - (Continued)

<u>Utilities</u>: Electricity and telephone systems are the most common utilities available in rural areas. These vary from none to a complete line on the site. The cost to bring these to the property is generally reflected in the rental price.

<u>Water Frontage</u>: Tracts with water frontage are favored because they offer more recreational amenities including boating, rafting, and commercial and sport fishing as well as scenery. Lakes, rivers and ocean beach frontage in Alaska are also used as landing sites.

<u>Topography, Vegetation, and View</u>: The typical industrial renter prefers some level topography.

## LAND VALUATION

There are six basic valuation techniques that may be used in valuing land. They are the Sales or Rental Comparison, The Land Residual, Land Allocation, Extraction, Subdivision Development and Ground Rent Capitalization techniques. The Sales Comparison technique is preferred when there is an active real estate market of similar vacant land sales. The ground rent comparison of similar competitive properties is the preferred technique in estimating land leases.

Land being appraised is analyzed using one or more unit measurements depending on the market. The price per square foot, per front foot, per acre or per unit on the site are typical. The per acre basis is the most common method used by buyers and sellers in valuing larger tracts of land in the subject area.

In Prudhoe / Deadhorse there are several leases that could be considered very similar, therefore, the Direct Comparison is the only method used in this valuation problem. In fact, leasing is the main vehicle for legally using the land in the neighborhood because of a scarcity of privately owned fee simple property.

Land Valuation - (Continued)

**Summary of Comparable Leases**

| No. | Location | Date | Lease /year | Size | Price Ac/Year | Comments |
|---|---|---|---|---|---|---|
| 1. 305L | Spine Road Mile 2.5 Deadhorse | 09/01/88 | $ 7623 | 2.50 | $3049.20 | State lease |
| 2. 73L | Spine Road Mile 3.0 Deadhorse | 08/01/88 | $ 9500 | 14.48 | $ 656.08 | State lease |
| 3. 318L | Spine Road Deadhorse | 02/01/90 | $12960 | 11.90 | $1089.00 | State lease |
| 4. 319L | Spine Road Mile 2.0 Deadhorse | 08/01/90 | $14850 | 7.43 | $1998.65 | State lease |
| 5. 321L | Mouth of Colville Rvr (Ahsogeak) | 03/01/93 | $19200 | 12.00 | $1600.00 | Plus $50,000 bonus to sign |
| 6. 64L | West Dock Prudhoe Bay | 07/01/82 | $45000 | 24.00 | $1875.00 | Plus $800,000 bonus to sign |
| 7. 320L | Airport (10 leases) Deadhorse | 07/21/81 | $12000 to $31000 | 2.19 to 4.88 | $3689.00 to $6725.00 | 10 State leases at auction |
| 8. 23L | Spine Road Mile 2.0 Deadhorse | 10/01/80 | $13100 | 7.0 | $1871.00 | 800′ south of Spine Road |

**MARKET DATA ANALYSIS**

The location of the comparable leases can be found in the Addendum of this report. Comparables No. 1, 2, 3, 4, 6, 7, and 8 are in the Prudhoe Bay / Deadhorse oil field industrial area. While Comparable No. 5 is a very recent oil exploratory site in the general vicinity of the subject. While the subject is similar to many leases in the Prudhoe Bay / Deadhorse industrial complex, it is also a very similar to Comparables No. 5 and 6 because of frontage on tidelands. When studying the comparables, the appraiser especially noted the general differences between the smaller tracts and larger tracts and how the smaller lots rent for higher unit (per acre) prices. Premium rents are also paid for sites closer to Deadhorse airport.

Market Data Analysis - (Continued)

Comparable Lease No. 1: This is a State of Alaska, Department of Natural Resources lease to VECO, Inc. It is a raw land lease that is 2.5 miles north of Deadhorse Airport. It is on the good gravel Spine Road, making it accessible to all areas of the oil fields being developed. The lot is 7.5 acres smaller suggesting a negative adjustment to the price per acre. The adjusted market rent would be approximately $1,600/acre/year.

Comparable Lease No. 2: This lease is also a State of Alaska, Department of Natural Resources lease to Kodiak Oil Field Haulers. It is a combination of two industrial lots, Tract 34 is 7.48 acres and Tract 39 is 7.0 acres, combined, amounting to 14.48 acres. The property has a good gravel access road right-of-way on three sides. The location is at Mile 3 on the Spine Road. The combined lots are larger by 4.48 acres suggesting a positive adjustment. The adjusted market rent would be approximately $920/acre/year.

Comparable Lease No. 3: This lease is also by the State of Alaska, Department of Natural Resources to Alascom. This is a very recent lease, two miles north of Deadhorse Airport and is well located in the industrial complex. The size is larger by 1.90 acres but considered similar in size requiring no adjustment. There is good gravel access on the Spine Road. The adjusted market rent would be approximately $1,089/acre/year.

Comparable Lease No. 4: This recent lease by the State of Alaska, Department of Natural Resources to K and K Recycling is also at approximately Mile 2 on the Spine Road. It has access to both natural gas and electricity which some leases do not possess, suggesting a negative adjustment for utilities. It is smaller by 2.57 acres considerd similar, with no adjustment. The adjusted market rent would be approximately $1,800/acre/year.

Comparable Lease No. 5: This recent lease is for 12 acres by a Native Allottee to Arco Alaska, Inc. for oil exploration and long-term site control for future development. This comparable has frontage on the Beaufort Sea, unlike most of the comparables, but is very similar to the subject. The size is only slightly larger by 2 acres suggesting no size adjustment. The market rent after adjustments would be approximately $1,600/acre/year.

Comparable Lease No. 6: This long-term lease is by a Native Allotment / BIA to Arco Alaska, Inc. The lease is for $1,875 per acre and increases automatically every five years. This lease is 14 acres larger than the subject and is in a unique location suitable for the West Dock, end causeway project. The tidelands and core location in Prudhoe Bay makes the site very comparable

with the subject. The lease was signed after development on the private land had begun. The trespass was settled in the form of a lucrative signing bonus ($800,000) and above market rent. This comparable is considered to be high in the Prudhoe Bay area market. The adjusted market rent is $1,875/acre/year excluding bonus or other settlements.

Comparable Lease No. 7: This comparable summarizes the Deadhorse Auction No. 1 where the State auctioned off 10 parcels of land at the Deadhorse Airport on July 21, 1981. Only one of these leases was for aviation use, the remaining nine leases were for non-aviation uses with an arbitrarily established minimum bid of $0.05/SF/Year. Successful lease bids ranged from $3,688.52 to $6,724.51 per acre per year. Parcel size, however, is very small and ranges from 2.19 to 4.88 acres. When compared to the subject site on a per acre basis a large negative adjustment is indicated for size and location. The indicated market rent after adjustment is $1,475/acre/year to $2,690/acre/year.

Comparable Lease No. 8: This lease is by the State of Alaska, Department of Natural Resources to VECO, Inc. This 7 acre lot is located 800' south of Spine Road and 1,600' east of the Haul Road (Dalton Highway). It has legal access to Haul Road. The site is well located in Prudhoe Bay in relation to the airport, Haul Road, Spine Road, and all the oil fields for services. The size is 3 acres smaller than the subject suggesting a negative size adjustment. The adjusted market rent is $1,680/acre/year.

## LEASE VALUATION

The market data search in the subject neighborhood revealed the land ownership to be predominately State owned with a small percentage of privately owned land by Natives administered by B.I.A.. There were no land sales in the neighborhood but there were numerous leases by the State and a few leases by private owners.

The appraiser selected representative leases from the neighborhood. These leases were compared to the subject property and adjusted for superiority or inferiority when compared to the subject, to get an indicated market rent.

Lease Valuation - (Continued)

| Summary of Comparable Leases | | | | | |
|---|---|---|---|---|---|
| Lease No. | Location | Date | Area Acre | Annual Rental Acre | Adjusted Rental Acre |
| 1. | Mile 2.5 Spine Road | 09/88 | 2.50 | $3,049 | $1,600 |
| 2. | Mile 3 Spine Road | 08/88 | 14.48 | $ 656 | $ 920 |
| 3. | Spine Road | 03/90 | 11.90 | $1,089 | $1,089 |
| 4. | Mile 2 Spine Road | 08/90 | 7.43 | $1,999 | $1,800 |
| 5. | Mouth of Colville Rvr | 02/93 | 12.00 | $1,600 | $1,600 |
| 6. | West Dock, Prudhoe Bay | 07/82 | 24.00 | $1,875 | $1,875 |
| 7. | Deadhorse Airport | 07/81 | 2.19 to 4.88 | $3,689 to $6,725 | $1,475 to $2,690 |
| 8. | Mile 2 Spine Road | 10/80 | 7.00 | $1,871 | $1,680 |

**FINAL RECONCILIATION**

Reconciliation: The data, where adjusted by the appraiser, indicates a value range of $920 to $2,690 per acre per year with the strongest support of $1,600 per acre.

Comparable No. 5 is given the most weight being most comparable in use, utility, tidewater frontage, is the most recent, and is a Native Allotment lease.

10 acres x $1,600 per acre = $16,000

Conclusion: The estimated market rent of the subject as of June 17, 1993 is $16,000 per year.

ADDENDUM




**Market Data Map**

# LEASE DATA AND ANALYSIS

SCC-305L ①

AREA
Deadhorse

STATE
ALASKA

LESSOR
State of Alaska, DRN

LESSEE
VECO, Inc.

DATE
09/01/88

INSTRUMENT
L

RECORDED
Barrow Bk 0 Page 0

ANNUAL RENT
7623.00

VERIFICATION DATE
06/17/93

AUTHORITY FOR CONSIDERATION
Alaska Valuation Service, Inc./CO
Verified by:

LEASE TERM / RENEWALS
30

RENT ADJUSTMENT BASIS
15 years, then 25 years




LEGAL DESCRIPTION/PROPERTY RIGHTS LEASED:

Portion of Tract 24, North Slope Lease Tracts, ASLS # 76-227, Deadhorse, Alaska

| USE - CHARACTER | ACRES | UNIT RENT | ANNUAL RENT |
|---|---|---|---|
| Industrial | | | |
| Site | 2.50 | 3049.20 | 7623.00 |
| LESSOR IMPROVEMENTS None | | | 0 |
| LESSEE IMPROVEMENTS/USE | | | |
| None | | | |
| TOTAL | | | 7623.00 |

LOCATION : Spine Road, Deadhorse
NEIGHBORHOOD: Industrial
ZONING : Unrestricted
ACCESS : Graded-gd
TOPOGRAPHY : Unknown
SOILS : Unknown
VEGETATION : Arctic tundra, wetlands
UTILITIES : None
AMENITIES : None
WATERFRONT : None
COMMENTS : The site was restricted to oil and gas exploration and development related uses. Located approximately 2.5 miles north of Deadhorse Airport.

PRICE (VALUE): 0.00
RATE OF RETURN: 0.00%

BUREAU OF INDIAN AFFAIRS

ANALYSIS OF LEASE BY
John Cress

DATE
06/17/93

# LEASE DATA AND ANALYSIS

SCC-73L (2)

AREA
Deadhorse

STATE
ALASKA

LESSOR
State of Alaska, DNR

LESSEE
Kodiak Oil Field Haulers

DATE
08/01/88

INSTRUMENT
L

RECORDED
Barrow Bk 0 Page 0

ANNUAL RENT
9500.00

VERIFICATION DATE
11/01/90

AUTHORITY FOR CONSIDERATION
Alaska Valuation Service, Inc./CO
Verified by:

LEASE TERM / RENEWALS
30

RENT ADJUSTMENT BASIS
15 years, then 25 years




LEGAL DESCRIPTION/PROPERTY RIGHTS LEASED:

Tracts 34 and 39, North Slope Lease Tracts, ASLS #76-227, Deadhorse, Alaska

| USE - CHARACTER | ACRES | UNIT RENT | ANNUAL RENT |
|---|---|---|---|
| Industrial | 14.48 | 656.08 | 9500.00 |
| Acreage | | | |
| | | | |
| LESSOR IMPROVEMENTS None | | | 0 |
| LESSEE IMPROVEMENTS/USE | | | |
| None | | | |
| | | | |
| TOTAL | | | 9500.00 |

LOCATION : Mile 3 Spine Rd, NE airpt
NEIGHBORHOOD: Industrial (oil)
ZONING : Unrestricted
ACCESS : Graded-gd
TOPOGRAPHY : Level
SOILS : Tundra
VEGETATION : Arctic tundra, wetlands
UTILITIES : None
AMENITIES : None
WATERFRONT : None
COMMENTS : Tract 34 is 7.48 ac, Tract 39 is 7 ac. Road has right-of-ways on 3 sides. The site was restricted to oil and gas exploration and development related uses, on northern fringe of state subdivision

PRICE (VALUE): 0.00
RATE OF RETURN: 0.00%

ANALYSIS OF LEASE BY | DATE

# LEASE DATA AND ANALYSIS

SCC-318L ③

AREA
Deadhorse

STATE
ALASKA

LESSOR
State of Alaska, DNR

LESSEE
Alascom

DATE
03/01/90

INSTRUMENT
L

RECORDED
Barrow Bk 0 Page 0

ANNUAL RENT
12960.00

VERIFICATION DATE
11/01/90

AUTHORITY FOR CONSIDERATION
Alaska Valuation Service, Inc.
Verified by:

LEASE TERM / RENEWALS
28

RENT ADJUSTMENT BASIS
13 years, then 23 years




LEGAL DESCRIPTION/PROPERTY RIGHTS LEASED:

Tracts 67B and 68, North Slope Lease Tracts, ASLS #76-227, Deadhorse, Alaska

| USE - CHARACTER | ACRES | UNIT RENT | ANNUAL RENT |
|---|---|---|---|
| Industrial | 11.90 | 1089.08 | 12960.00 |
| Acreage | | | |
| | | | |
| LESSOR IMPROVEMENTS None | | | |
| LESSEE IMPROVEMENTS/USE | | | 0 |
| None | | | |
| | | | |
| TOTAL | | | 12960.00 |

LOCATION : Spine Road, Deadhorse
NEIGHBORHOOD: Industrial
ZONING : Unrestricted
ACCESS : Graded-gd
TOPOGRAPHY : Level
SOILS : Tundra
VEGETATION : Arctic tundra, wetlands
UTILITIES : Telephone
AMENITIES : None
WATERFRONT : None
COMMENTS : Two miles northeast of Deadhorse Airport. The site was restricted to oil and gas exploration and development related uses.
SCC-44L

PRICE (VALUE): 0.00
RATE OF RETURN: 0.00%

BUREAU OF INDIAN AFFAIRS | ANALYSIS OF LEASE BY | DATE

LEASE DATA AND ANALYSIS SCC-319L (4)

AREA
Deadhorse

STATE
ALASKA

LESSOR
State of Alaska, DNR

LESSEE
K & K Recycling

DATE
08/01/90

INSTRUMENT
L

RECORDED
Barrow Bk 0 Page 0

ANNUAL RENT
14850.00

VERIFICATION DATE
11/01/90

AUTHORITY FOR CONSIDERATION
Alaska Valuation Service, Inc.
Verified by: CO

LEASE TERM / RENEWALS
30

RENT ADJUSTMENT BASIS
15 years, then 25 years




LEGAL DESCRIPTION/PROPERTY RIGHTS LEASED:

Portion of Tract 67A, North Slope Lease Tracts, ASLS #76-227, Deadhorse, Alaska

| USE - CHARACTER | ACRES | UNIT RENT | ANNUAL RENT |
|---|---|---|---|
| Industrial | 7.43 | 1998.65 | 14850.00 |
| Acreage | | | |
| | | | |
| LESSOR IMPROVEMENTS None | | | |
| LESSEE IMPROVEMENTS/USE | | | 0 |
| None | | | |
| | | | |
| | | | |
| TOTAL | | | 14850.00 |

LOCATION : Mile 2 Spine Rd, NE Airpt
NEIGHBORHOOD: Industrial
ZONING : Unrestricted
ACCESS : Graded-gd
TOPOGRAPHY : Level
SOILS : Tundra
VEGETATION : Arctic tundra, wetlands
UTILITIES : Electric, Gas
AMENITIES : None
WATERFRONT : None
COMMENTS : Two miles northeast of Deadhorse Airport. Natural gas is available from Norgasco and electrical service could be obtained from the NANA generating plant.

PRICE (VALUE): 0.00
RATE OF RETURN: 0.00%

SCC-326

ANALYSIS OF LEASE BY | DATE

# LEASE DATA AND ANALYSIS

SCC-321L (5)

AREA
Deadhorse

STATE
ALASKA




LESSOR
Heirs of Woodrow Ahsogeak

LESSEE
Arco Alaska, Inc.

DATE
02/01/93

INSTRUMENT
L

RECORDED
Barrow Bk 66 Page 981

ANNUAL RENT
19200.00

VERIFICATION DATE
03/26/93

AUTHORITY FOR CONSIDERATION
BIA Realty: Kathleen Dickinson
Verified by: D. Larson

LEASE TERM / RENEWALS
25 Expires 01/31/2018*

RENT ADJUSTMENT BASIS

LEGAL DESCRIPTION/PROPERTY RIGHTS LEASED:

Sections 4 and 5, T.12N., R.8E., Umiat Meridian, Alaska

| USE - CHARACTER | ACRES | UNIT RENT | ANNUAL RENT |
|---|---|---|---|
| Recreational | 12.00 | 1600.00 | 19200.00 |
| Acreage | | | |
| | | | |
| LESSOR IMPROVEMENTS None | | | 0 |
| LESSEE IMPROVEMENTS/USE | | | |
| None | | | |
| | | | |
| TOTAL | | | 19200.00 |

LOCATION : .5 mile w of Harrison Bay
NEIGHBORHOOD: Remote
ZONING : None
ACCESS : Paved roadoor Boat/FP
TOPOGRAPHY : Level
SOILS : Wet tundra type, permafrost
VEGETATION : Tundra grasses
UTILITIES : None
AMENITIES : None
WATERFRONT : None
COMMENTS : Lessee to conduct delineation drilling within acreage from ice rd ice pad. Lessor bonus $50000 before 3/1/93 upon agreement before 3/1/93. Receive $25000 addl bonus.*Option to cancel during 1st 5y

PRICE (VALUE): 0.00
RATE OF RETURN: 0.00%

BUREAU OF INDIAN AFFAIRS

ANALYSIS OF LEASE BY
John Cress

DATE
03/26/93

LEASE DATA AND ANALYSIS — BAR-64L (6)

| | |
|---|---|
| AREA<br>Barrow | STATE<br>ALASKA |
| LESSOR<br>Walton I. Ahmaogak | |
| LESSEE<br>ARCO Alaska, Inc. | |
| DATE<br>07/01/87 | INSTRUMENT<br>L |
| RECORDED<br>Barrow Bk 0 Page 0 | |
| ANNUAL RENT<br>45000.00 | VERIFICATION DATE<br>/ / |
| AUTHORITY FOR CONSIDERATION<br>BIA Records<br>Verified by: DB Trosper | |
| LEASE TERM / RENEWALS<br>25 | |
| RENT ADJUSTMENT BASIS<br>Based on appraisal | |




LEGAL DESCRIPTION/PROPERTY RIGHTS LEASED:

Portion of Allotment No. F-11322, Parcel B,
Township 12 North, Range 14 East, Umiat Meridian, Alaska.

| USE - CHARACTER | ACRES | UNIT RENT | ANNUAL RENT |
|---|---|---|---|
| Industrial | 24.00 | 1875.00 | 45000.00 |
| Acreage | | | |
| | | | |
| LESSOR IMPROVEMENTS None | | | 0 |
| LESSEE IMPROVEMENTS/USE | | | |
| | | | |
| | | | |
| TOTAL | | | 45000.00 |

LOCATION : Prudhoe Bay, Alaska
NEIGHBORHOOD: Rural
ZONING : None
ACCESS : GRailroad
TOPOGRAPHY : Gentle
SOILS : Permafrost
VEGETATION : Tundra
UTILITIES : None
AMENITIES :
WATERFRONT : Beaufort Sea
COMMENTS : $800,000 bonus. The bonus could be considered a settlement for development on land prior to site control (trespass) & lucrative lease terms w\escalation of rents in future. Above market rents.

PRICE (VALUE): 630000.00
RATE OF RETURN: 7.10%

BUREAU OF INDIAN AFFAIRS

ANALYSIS OF LEASE BY John Cress — DATE 01/09/90

## LEASE DATA AND ANALYSIS

SCC-320L (7)

**AREA**
Deadhorse

**STATE**
ALASKA

**LESSOR**
State of Alaska

**LESSEE**
Various

**DATE**
07/21/81

**INSTRUMENT**
L

**RECORDED**
Barrow Bk 0 Page 0

**ANNUAL RENT**
$12,000 to
$31,000

**VERIFICATION DATE**
/ /

**AUTHORITY FOR CONSIDERATION**
State of Alaska
Verified by: M. Renfro

**LEASE TERM / RENEWALS**
30

**RENT ADJUSTMENT BASIS**




**LEGAL DESCRIPTION/PROPERTY RIGHTS LEASED:**

Ten legal descriptions, see attached documents

| USE - CHARACTER | ACRES | UNIT RENT | ANNUAL RENT |
|---|---|---|---|
| Industrial | | | |
| Acreage | 2.19 to 4.88 | 3688.52 to 6724.51 | $12,000 to $31,000 |
| LESSOR IMPROVEMENTS None | | | |
| LESSEE IMPROVEMENTS/USE | | | 0 |
| None | | | |
| TOTAL | | | |

LOCATION : Deadhorse Airport Plat
NEIGHBORHOOD: Industrial oil patch
ZONING : Resource Development
ACCESS : Air/GrvlRd
TOPOGRAPHY : Level
SOILS : Permafrost in sand and gravel
VEGETATION : Tundra
UTILITIES : W.E./Sewer haul sys
AMENITIES : None
WATERFRONT : None
COMMENTS : Leases were auctioned with a miniumum bid of $0.05/SF/year. All 10 of these offers were leased at auction to the highest bidder

PRICE (VALUE): 0.00
RATE OF RETURN: 0.00%

ANALYSIS OF LEASE BY | DATE

## SUMMARY SHEET

Division of Aviation Auction #1
July 21, 1981
No Preference Right Limitations

| Parcel | Acreage | Annual Rental | Rental Per Acre |
|---|---|---|---|
| Lot 1, Block 50 | 2.19 | $12,000 | $5,479.45 |
| Lot 1, Block 70 | 2.75 | 16,000 | 5,818.18 |
| Lot 2, Block 70 | 2.75 | 16,000 | 5,818.18 |
| Lot 3, Block 70 | 3.44 | 13,000 | 3,779.07 |
| Lot 4, Block 70 | 3.47 | 13,000 | 3,746.40 |
| Lot 5, Block 70 | 4.30 | 22,000 | 5,116.28 |
| Lot 9, Block 70 | 4.61 | 31,000 | 6,724.51 |
| Lot 1, Block 80 | 4.36 | 20,000 | 4,587.16 |
| Lot 2, Block 80 | 4.88 | 18,000 | 3,688.52 |
| Lot 2, Block 400 | 3.44 | 16,000 | 4,651.16 |

LEASE DATA AND ANALYSIS SCC-23L (8)

AREA
Deadhorse

STATE
ALASKA

LESSOR
State of Alaska

LESSEE
VECO, Inc.

DATE
10/01/80

INSTRUMENT
L

RECORDED
Barrow Bk 0 Page 0

ANNUAL RENT
13100.00

VERIFICATION DATE
/ /

AUTHORITY FOR CONSIDERATION

Verified by:

LEASE TERM / RENEWALS
25

RENT ADJUSTMENT BASIS




LEGAL DESCRIPTION/PROPERTY RIGHTS LEASED:

Tract 44A, North Slope Lease Tracts, Deadhorse, Alaska

| USE - CHARACTER | ACRES | UNIT RENT | ANNUAL RENT |
|---|---|---|---|
| Industrial Site | 7.00 | 1871.43 | 13100.00 |
| LESSOR IMPROVEMENTS | | | |
| LESSEE IMPROVEMENTS/USE | | | 0 |
| TOTAL | | | 13100.00 |

LOCATION : 800' South of Spine Road
NEIGHBORHOOD: Prudhoe Bay
ZONING : None
ACCESS : None
TOPOGRAPHY : Level, below road grade
SOILS : Requires gravel fill
VEGETATION : Marshy tundra - typical
UTILITIES : None
AMENITIES : None
WATERFRONT : None
COMMENTS : 1,600' east of the North Slope Haul Road
Legal access platted from North Slope Haul Road

PRICE (VALUE): 0.00
RATE OF RETURN: 0.00%

ANALYSIS OF LEASE BY | DATE


BEECHEY POINT (B-3)
(BEECHEY POINT B-2)
PRUDHOE BAY
SUBJECT
Niakuk Islands
Gull Island
Prudhoe Dock
PIPELINE
RIVER




IMPROVEMENT

FROM W.C.M.C. No. 2

THE WEST COR. OF AN ICE CELLAR, 2 1/2 X 2 1/2 FT., BEARS N.32°55' E., 4.81 CHS. DIST., ONE SIDE EXTENDS N.40°E.

MEANDERS

ALONG AN ERODING SHORELINE 8 TO 18 FT. HIGH.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1. | N.45°01' E., | 2.88 | CHS. | 17. | N.48°52' E., | 1.90 | CHS. |
| 2. | N.28°23' E., | 1.98 | CHS. | 18. | N.40°43' E., | 9.67 | CHS. |
| 3. | N.51°33' E., | 2.03 | CHS. | 19. | S.87°07' W., | 1.47 | CHS. |
| 4. | N.48°14' E., | 3.27 | CHS. | 20. | S.68°05' W., | 3.99 | CHS. |
| 5. | N.34°02' E., | 2.00 | CHS. | 21. | S.56°28' W., | 3.60 | CHS. |
| 6. | N.19°18' E., | 3.48 | CHS. | 22. | S.88°47' W., | 3.11 | CHS. |
| 7. | N 45°49' E., | 3.50 | CHS. | 23. | S.50°37' W., | 5.86 | CHS. |
| 8 | N.21°14' E., | 2.57 | CHS. | 24. | S.40°43' W., | 8.75 | CHS. |
| 9. | N.41°31' E., | 2.72 | CHS. | 25. | S.47°22' W., | 3.43 | CHS. |
| 10. | N.30°25' E., | 1.74 | CHS. | 26. | S.40°09' W., | 3.71 | CHS. |
| 11. | N.34°01' E., | 2.13 | CHS. | 27. | S.37°30' W., | 6.27 | CHS. |
| 12. | N.42°08' E., | 3.43 | CHS. | 28. | S.35°25' W., | 4.18 | CHS. |
| 13 | N.36°09' E., | 2.54 | CHS. | 29. | S.34°58' W., | 5.58 | CHS. |
| 14 | N 49°36' E., | 2.10 | CHS. | 30. | S.32°23' W., | 3.04 | CHS. |
| 15 | N.31°51' E., | 5.32 | CHS. | 31. | S.49°34' W., | 3.14 | CHS. |
| 16. | N 25°41' E., | 1.61 | CHS | 32. | S.32°49' W., | 8.14 | CHS. |

**Survey**

I, Michael D. Wilson, HEREBY CERTIFY upon honor that in pursuance of Special Instructions dated April 30, 1981, I have executed the survey represented on this plat in strict conformity with said Special Instructions, the Manual of Instructions for the Survey of the Public Lands of the United States, 1973, and in the specific manner described on this plat.

15 May 1985 — Date

[signature] — Cadastral Surveyor

1 0 1 2 3 4 5 10 15 20
Chains

# ATTACHMENT No. 20

985 1373

BP EXPLORATION

BP Exploration (Alaska) Inc.
900 East Benson Boulevard
PO Box 196612
Anchorage, Alaska 99519 6612
(907) 561-5111

July 29, 1993

Mr. Samuel Demientieff, Superintendent
Bureau of Indian Affairs
101 12th Avenue, Box 16
Fairbanks, Alaska 99701

**Notification of Niakuk Project Commencement**

**Request to Amend Surface Lease F89-01**

Dear Mr. Demientieff:

On January 1, 1989, BP Exploration (Alaska) Inc. (formerly Standard Alaska Production Company) entered into a surface lease agreement with Mr. Andrew Oenga for 10 acres of his 40 acre native allotment (F-14632) on Heald Point. The Lease provided authorization for BP to construct production facilities to support development of, and production from, our Niakuk oil accumulation.

Pursuant to requirements of Section 1 of the Lease, BP hereby provides notice to the Bureau of Indian Affairs that the first phase of the Niakuk Development Project has been approved and that development will procede on an accelerated schedule during the latter half of 1993. Further pursuant to Section 1, the Lease is converted from a year-to-year basis to a fixed twenty-five year term.

In order to make effective use of both the Leased and Unleased Premises and to protect our facilities from erosion, an armored production pad will be constructed at the tip of Heald Point. We have also redesigned and relocated our pipelines to the east side of the access road.

Consequently, pursuant to Section 11 of the Lease, BP hereby requests that the Lease be amended so as to increase the size of the Leased Premises from 10 acres to 20 acres effective August 1, 1993. The new Leased Premises are shown on the enclosed general location map. We will provide you with a more detailed exhibit to be attached to the Lease as soon as it becomes available.

Rent for the enlarged Leased Premises will be due January 1, 1994 and will be prorated back to the effective date of the Lease amendment.

Please indicate your approval of this amendment by signing in the space provided below and returning one original of this letter to the undersigned at our letterhead address. The remaining original is for your records.

Barrow Recording District

Case 1:06-cv-00491-NBF Document 42-3 Filed 05/14/2007 Page 59 of 79

We would appreciate your early attention to this matter as we hope to be in a position to begin gravel placement in early August.. Please contact me at 564-4841 if you have any questions or if you need any addtional information.

Sincerely,

Stu Hirsh, CPL
Senior Landman

The within Lease Amendment is hereby approved, pursuant to the authority delegated by 209 DM 8 dated November 17, 1981, Secretary's Order No. 3150 dated May 11, 1992, as amended March 5, 1993, and 10 BIAM Bulletin 13, dated November 19, 1992, as amended April 8, 1993, and the Addendum to 10 BIAM 3, dated January 17, 1989.

8-3-93

Samuel Demientieff, Superintendent — Date
Bureau of Indian Affairs
Fairbanks, Agency

985 1373

Return to:

Arctic Slope Native Association
Realty Office
600 University Avenue
Fairbanks, Alaska 99709

# ATTACHMENT No. 21

# REPORT OF INVESTIGATION

## AMENDMENT TO LEASE F89-01

OF

Native Allotment FF014632 parcel B
Heirs of Andrew Oenga

INVESTIGATED BY:

Kathleen F. Dickinson
Realty Specialist

REVIEWED BY:

Beth Dexter
Realty Officer

APPROVED:

Samuel S. Demientieff
Superintendent

Date

# CERTIFICATION OF INVESTIGATION

I, Kathleen F. Dickinson, hereby certify the following to be true and accurate to the best of my knowledge and belief.

1. That I conducted the investigation hereinafter described.

2. That I prepared the hereinafter report of said investigation from my observations, field notes and conversations during the investigation.

3. That the hereinafter contained information is an accurate report of said investigation and findings.

4. That I believe my conclusions and recommendations to be valid for the reasons I stated in said report.

Certified to this [illegible] day of [illegible], 199[illegible].

By [signature]
Kathleen F. Dickinson
Realty Specialist
BIA, Fairbanks Agency

AUTHORITY

Pursuant to the Act of August 9, 1955 (69 Stat. 539 25 USC 415) an Alaska Native may lease individual restricted lands with the approval of the Secretary of Interior.

PURPOSE

BP Exploration wants to amend their existing lease of the subject allotment. The existing lease allows the Lessor, at its sole discretion to increase the size of the leased premises.

BACKGROUND

On January 1, 1989, BP Exploration entered into a surface lease agreement with Mr. Andrew Oenga for 10 acres of his 40 acre native allotment on Heald Point. The Lease provided authorization for BP to construct production facilities to support development of, and production from, their Niakuk oil accumulation.

Their initial purpose was to construct a causeway out to Niakuk island where their drilling facility was to be placed. The leased area was for a road and pipelines through the middle of the allotment, though the Lease allowes them to use the leased area for all purposes connected with oil exploration (see Section 10 of the Lease). They were unable to secure the necessary permits for the causeway and revised their plans to place a production pad on Heald Point.

FINDINGS

On July 7, 1993 I was contacted by Stu Hirsh, Senior Landman at BP Exploration, advising me that they would be increasing the leased area of the premises and would be putting a production pad on the point. He said that he was awaiting plans from their engineering department and would send a request for the lease amendment when he received them.

On July 28, 1993 Mr. Hirsh advised me that there is a continual erosion on the west side (the ocean side) of the allotment and they would therefore be using the east side of the point. The Lease amendment will also serve as written notice that BP intends to procede with the Niakuk project and the lease will now be deemed to be taken for consecutive five year periods and BP can now only cancel the lease at the end of each five year period (up to this point they could cancel at the end of each year).

The Lease adjustment is due January 1, 1994. I have requested an appraisal review and a determination of the change in Consumer Price Index will be pursued. The rent for the additional 10 acres from August 1, 1993 through December 31, 1993 will be $6,666.65 and will be paid by January 1, 1994 as specified in the Lease under Section 11.

On July 29, 1993 I received a fax of their letter requesting the Lease amendment. The letter is very clear, it sets forth the terms and is self-explanatory.

CONCLUSION AND RECOMMENDATION

Based upon the findings in this report, I recommend that this lease amendment be approved.

**ATTACHMENTS**

BLM case file abstract
Native allotment application (see file)
Original Lease (see file)
7/29/93 Letter from BP requesting Lease Amendment

# ATTACHMENT No. 22

UNITED STATES GOVERNMENT
Bureau of Indian Affairs
**MEMORANDUM**

**Date:** July 30, 1993

**From:** Realty Specialist, Fairbanks Agency

**Subject:** Amendment to Lease

**To:** Samuel S. Demientieff, Superintendent
**Through:** Beth Dexter, Realty Officer

==========================================================

Attached is a letter requesting that an Amendment to Lease be granted for the Lease of Andrew Oenga's Native Allotment F-14632 parcel B, along with supporting documents for review and approval. The existing Lease gives the Lessor, at its sole discretion, the right to increase or decrease the size of the leased area. This Amendment to Lease will increase the area of the existing Lease by 10 acres, at the current lease rental.

I recommend that you sign the two original Amendment to Lease. Thank you.

Kathleen F. Dickinson

Attachment

# ATTACHMENT No. 23

Post Office Box 1232 • Barrow • Alaska • 99723-1232 • (907) 852-2762 • FAX (907) 852-2763

Arctic Slope
Native Association Limited

July 30, 1993

Mr. Leroy Oenga, Sr.
P.O. Box 201
Barrow, AK 99723

Dear Leroy,

SUBJECT: Update on Native Allotment FF 14632, Heirs of Andrew Oenga

As promised, this letter is a short written update related to Allotment FF 14632. BP Alaska has decided to exercise their option to expand onto another 10 acres of the allotment so that the total lease area will total 20 acres. Although ASNA now has this file, Kathleen Dickinson with BIA Fairbanks has graciously and efficiently carried out recent action on this lease while I get on my feet in Barrow.

Some type of letter to exercise their option should be forthcoming. Kathleen requested an appraisal on June 16. The appraiser has flown over the property recently and his report should be out soon. Next year's lease will be based either on the appraisal, or on the change in the consumer price index, whichever is greater. Kathleen estimates that the CPI has increased about 23 percent since the beginning of the lease.

The lease provides for a prorated increase in the rental amount for this year, beginning on August 1 and going through December 30. Kathleen reported this would be an increase in payment of $6666.65 (based on $1600 per acre per year for five months). This increment will be paid at the year's end and will of course be divided among the heirs. Kathleen stated that BP is now locked into five-year increments and that the prospect of continued revenues from this allotment is likely.

The option to expand onto another 10 acres means that the east half of the allotment will be used and the west half is still open. As you know, BP will be constructing a pad at the point. According to my file information, this allotment is approved and surveyed but has not been certified. Kathleen reports that a portion of the allotment is under state ownership since it fell into a section that was transferred to the State. I will get a current abstract (summary), survey map, and status plat while I am in Anchorage next week. I will also ask the BLM staff for a current report on the title recovery for a portion of this lot.

Mr. Leroy Oenga, Sr.
July 30, 1993
Page Two

Thanks for taking time to drop by the office and being patient as I get the Realty office organized. I sent a special thank-you letter to Kathleen. She has worked above and beyond her normal responsibilities by taking care of this extension. I look forward to working with you. I am sending Kathleen a copy of this letter so that she can let me know if I misunderstood or improperly reported any information. I'll be talking with you again once I get more information from BLM.

Sincerely,

Diane

Diane Stevens
Realty Officer

cc: Kathleen Dickinson, BIA Fairbanks

# ATTACHMENT No. 24

IN REPLY REFER TO:

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS
101 12TH AVENUE, BOX 16
FAIRBANKS, ALASKA 99701

Arctic Slope Native Assn. Realty
AUG 9 1993
RECEIVED

August 3, 1993

Stu Hirsh, CPL
Senior Landman
BP Exploration (Alaska), Inc.
P.O. Box 196612
Anchorage, AK 99519-6612

Re: Amendment to Lease F89-01 on Native Allotment FF014632, Andrew Oenga

Dear Mr. Hirsh:

Enclosed is an original signed Amendment to the subject Lease for the Native Allotment belonging to the Heirs of Andrew Oenga.

I would like to take this opportunity to advise you that the Arctic Slope Native Association (ASNA) has a contract with the Bureau to provide Real Estate services to restricted land owners in several villages on the North Slope, including the heirs to Mr. Oenga.

Please direct any future correspondence regarding this Native Allotment to their Realty Office at the following address:

Diane Stevens, Realty Officer
Arctic Slope Native Association
P.O. Box 1232
Barrow, AK 99723

The annual rental payment should be sent to the following address with a copy of the payment to ASNA:

Collection Officer
Bureau of Indian Affairs
101 12th Ave., #16
Fairbanks, Alaska 99701

I have requested an appraisal review as required in the subject lease for the five year rental adjustment. As you are aware, the rental adjustment will be based either on the increase in the fair market rental value or on the Consumer

Price Index, whichever is higher. The only problem I foresee is that the CPI adjustment figure for December 1993 will not be available until mid January, 1994 and your rental payment is due January 1st. However, once we receive the appraisal we will have a good idea of which adjustment to use and we can at that time discuss how to deal with this. If you have any questions you may call Diane at 852-2762 or Kathleen at 456-0223. Thank you.

Sincerely,

Samuel S. Demientieff
Superintendent

KD

Enclosure

cc: Diane Stevens, Realty Officer, ASNA

# ATTACHMENT No. 25

*Law Offices*
**O'CONNOR, CAVANAGH, ANDERSON, WESTOVER, KILLINGSWORTH & BESHEARS**
A Professional Association
One East Camelback Road, Suite 1100
Phoenix, Arizona 85012-1656
Telephone (602) 263-2400

Facsimile (602) 263-2900 or (602) 263-2902

Writer's Direct Dial Number
(602) 263-2452

Client-Matter Number
1-2

August 27, 1993 4:27pm

TELECOMMUNICATION INFORMATION COVER SHEET

**The information contained in this Facsimile message is attorney/client privileged and confidential information intended only for the use of the individual(s) named below. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited! If you have received this communication in error, please immediately notify us by telephone, and return the original message to us at the above address via the U.S. Postal Service. If you have received this communication in error, please DO NOT MAKE ANY COPIES of it. Thank You.**

PLEASE DELIVER THE FOLLOWING PAGES TO:

| NAME | COMPANY | FACSIMILE NO. |
|---|---|---|
| **George Ahmaok** | **c/o Whaling Commission** | **(907) 852-2303** |

FROM: **Glenn Feldman**

TOTAL NUMBER OF PAGES INCLUDING THIS COVER PAGE: **61**

**IF YOU DO NOT RECEIVE ALL 61 PAGE(S), PLEASE CALL: (602) 263-2844.**

MESSAGE:

# ATTACHMENT No. 26

O'CONNOR CAVANAGH

*The Law Offices of*
O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears
A Professional Association

Glenn M. Feldman, Esq.
602-263-2452

File No.: 1-2

August 30, 1993

Mr. Leroy L. Oenga, Sr.
P. O. Box 201
Barrow, Alaska 99723

VIA EXPRESS MAIL

RE: Heald Point Lease

Dear Leroy:

I am returning the materials you sent me concerning the Heald Point lease. As I mentioned to you on the telephone today, the lease your grandfather signed in 1989 for this property is extremely one-sided in favor of the oil company. The lease gives the oil company the absolute right to decide how much of the 40-acre allotment will be leased, and for how long, up to a maximum of 50 years. At the same time, the lease gave your grandfather, and now gives the family members, virtually no control over the future use or development of that property. In addition, because the lease requires that the property be reappraised every five years as undeveloped land, the rental increases are likely to be very small and will be unrelated to the amount of revenue that the oil company receives from the use of the property.

In short, the lease appears to me to be very unfavorable to the landowners.

Please give me a call after you have met with representatives of the oil company and let me know what they say.

Sincerely yours,

O'CONNOR, CAVANAGH, ANDERSON
WESTOVER, KILLINGSWORTH & BESHEARS

Glenn M. Feldman

GMF:spl
Enclosure
PNN0516F

# ATTACHMENT No. 27

RECEIVED
AUG 31 1993

August 30, 1993

Arctic Slope Native Association
P.O. Box 1232
Barrow, Alaska 99723

Attn: Diane Stevens

Re: **HEIRS OF ANDREW OENGA**

Dear Ms. Stevens:

I'm requesting your assistance to set-up a meeting with BP in regards to the lease, so we could come to an understanding and work at a better lease agreement. The family feels we should work out some kind of understanding for a lump sum to be paid to the heirs of Andrew Oenga.

The reason why we are asking is we have family dreams to fulfill. For example: houses, vehicles, snow machines, boats and trust accounts on our family members.

If you have any questions, please notify me at 852-5628-home, or 852-5133-work.

Thank you for your assistance on this matter.

Sincerely,

Leroy L. Oenga Sr.
Leroy L. Oenga, Sr.
Advisor

cc: Files