# ATTACHMENT No. 28

October ~~21~~ 28, 1993

Mr. Feldman:

Leroy asked that I fax this to you for your comments. We met with BP Exploration on October 21. BIA for some reason was not able to attend. We agreed that I would submit a letter (narrative) and proposed amendments to BP. They in turn would work with their upper management and try responding to proposed amendments within 5 to 10 days. Basically, we were shooting for BP to pay for 40 acres over past 5 years. I based amount due ($291,000) on $1600 per acre times 30 acres not paid for and in bank at nine percent interest. Also requesting that they adjust lease to include entire 40 acres.

BP landman said would look at it. Felt he was somewhat convinced with the argument, although he didn't like the nine per cent interest (suggested using Consumer Price Index which averages about 3.4 percent I think).

I will call Friday or Monday to see if you have any comments, or how long legal review may take. THANKS.

Diane Stevens
Realty Officer
1-800-478-3303

also - BP suggested give them all the amendments at once? Good idea? or strategy to appease some parts of lease concern & not address major issue?

DS

DRAFT

October 26, 1993

Mr. Stu Hirsch, Senior Landman
Ms. Cynthia Bailey, Associate
BP Exploration, Inc.
900 East Benson Boulevard
P.O. Box 196612
Anchorage, AK 99519-6612

Dear Stu and Cindy,

SUBJECT: Proposed lease amendment -- BIA Lease No. F-89-01

First, my thanks and appreciation to you both for traveling to Barrow to meet with the Oenga heirs and myself. In hindsight, I realize that I could have relieved some pressure felt by the heirs by taking a more assertive role in explaining their concerns. I am still adjusting in how I facilitate meetings -- in the past I worked primarily with city and corporation representatives and I am adjusting now to working with individuals. Nonetheless, it sounds like both BP Exploration and the heirs are willing to overlook my deficiency and I am hoping that we can find some comfortable ground now between the heirs and BP Exploration.

attorney suggested delete

Enclosed is a proposed lease amendment. ~~I do expect BP to make a counteroffer on these provisions or provide alternate wording.~~ There were a few parts of the lease I thought were worded awkwardly, but the following amendments should address the major issues. Let me know if there are any other sections which should be addressed.

I promised to provide some narrative justification for this proposed lease amendment. In ~~bullet~~ outline form and without a lot of verbosity, I feel the major points are as follows:

1. A lease amendment was approved without consulting or prior notice to the heirs

2. The heirs were immediately concerned about how an amendment could be done without them. The amendment raised a number of issues and concerns by the heirs and confronted their understanding of this lease.

DRAFT

3. The heirs believed that lease payments would adjust dramatically when production began, and they individually had conversations with Andrew Oenga which indicated this universal understanding of the lease. There was also evidence in the file that the purpose of the lease may not have been fully clarified to Andrew Oenga (memo by Realty Officer David Scott). The heirs strongly assert that the purpose and rental adjustments of the lease were not clearly interpreted to Andrew Oenga One of the heirs was present during the initial lease negotiation and maintains there were major unresolved issues regarding the lease and its intent. The heirs believed that purpose of lease was for exploration and pre-production only and that the lease payments would adjust dramatically when development began.

4. The heirs met or telephoned Diane Stevens, Arctic Slope Native Association Realty Officer, to discuss a number of concerns with lease. Diane and heirs began a thorough review and research of lease issues over the course of September and October. After considerable research with appraisers, an attorney, the regional solicitor, BIA realty, DNR, ARCO, and senior land professioinals, Diane became convinced that valid concerns regarding the lease were raised and merited discussion. BP agreed to a meeting regarding the lease. The heirs requested Diane's assistance in negotiating lease issues with BP.

5. One of the heirs repeatedly requested legal review at the time of the lease, but Andrew was not encouraged to get his own legal review. The review by the Regional Solicitor is primarily a review on behalf of and for the Bureau of Indian Affairs. If there are any problems with the lease, the Regional Solicitor would defend the Bureau of Indian Affairs.

6. The lease should have provided the Lessor with better opportunities for adjustments, just as the lease provides BP with wonderful opportunities for opting out of the lease.

I need to beef this up.

7. The most contentious part of the lease from a technical standpoint is the legal description. It created a cloud of title over the entire parcel by not clearly describing the property being leased. This may not be the intention of the lease, but the intentions of the lease were also different five years ago. The intent was to provide for a corridor. The heirs were denied an opportunity to negotiate and control the development of this property at this five-year anniversary which also turned out to be the time when the project commenced. When ARCO expressed an interest in this property, BIA stated they could not lease properties until BP decided if they wanted to extend further on the allotment. Furthermore, the

DRAFT

development of the allotment impacts the entire parcel. BP has the benefit of 40 acres although it has only been paying for 10 acres. This situation is not in the best interest for the landowners. ~~and resulted in a lost opportunity for revenues.~~

8. The lease payments should be adjusted to compensate for lost revenues ($1600 per acre x 30 acres not included in lease x 5 years for a present net value of $290,000 at 9 per cent interest). Lease should be also be adjusted to reflect equitable compensation to the Lessors for the remaining lease term (20 years).

Sincerely,

Diane Stevens
Realty Officer

Enclosure: Proposed lease amendment

I need to add something about inspections.
Larry - any suggestions?

# ATTACHMENT No. 29

Post Office Box 1232 • Barrow • Alaska • 99723-1232 • (907) 852-2762 • FAX (907) 852-2763

Arctic Slope
Native Association Limited

October 29, 1993

Ms. Jenny Oenga
309 Paystreak
Fairbanks, AK 99712

Dear Jenny,

Here is the draft lease amendment. Please call me early next week and let me know your comments. Also, if Rita has any questions whatsoever about this paperwork, please call. Our toll-free number is 1-800-478-3033. THANKS.

Sincerely,

Diane

Diane Stevens
Realty Officer

DRAFT

Request to Amend BIA Lease F-89-01

On August 3, 1993 the Bureau of Indian Affairs approved an amendment to BIA Lease No. 89-01 as requested by the Lessee BP Exploration (Alaska) Inc. The lease amended the size of the leased premises from 10 acres to 20 acres. The amendment was executed without notice to or consultation with the heirs of the lease. For a ten-week period following this amendment, the heirs made weekly visits and phone calls to Arctic Slope Native Association requesting assistance in addressing their concerns regarding the lease.

After research with various contacts including BIA Realty Specialist Kathleen Dickinson, BIA Appraiser John Cress, Regional Solicitor Roger Hudson, the heirs' attorney, senior land professionals, ARCO, Department of Natural Resources, and other 93-638 contractors, ASNA Realty Officer in conjunction with the heirs requested a meeting with BP Exploration. A meeting was held in Barrow with Senior Landman Stu Hirsh and Government and Public Affairs Associate Cynthia Bailey on October 21, 1993. As a result of that meeting, BP Exploration Inc. and the heirs of this lease have agreed on the following amendments:

1. Lessor. Lessor in the original lease is hereby amended to refer to Lessors. Lessors shall include Wallace Oenga, Leroy Oenga, Michael M. Delia, Georgene Shugluk, and Jenny Oenga.

2. Leased premises. The lease is hereby amended to include the entire Parcel B of Alaska Native Allotment application F-14632, said allotment is described as U.S. Survey 6904, T11N, R15 E, U.M., Section 1, and T12N, R15E U.M. Section 36.

3. Anniversary Date. The anniversary date of this lease agreement is changed to November 1st of each year and shall become the effective anniversary date on November 1, 1994.

4. Lease Adjustment. Lessee agrees to pay rental adjustments for the present net value of rental payments for a total of 40 acres of leased premises for each of the first five years of the lease agreement for a sum of $ 291,000. This lease adjustment shall be paid upon approval of this lease amendment by the Bureau of Indian Affairs Superintendent.

5. Lease rentals. The rent shall be paid directly to "DOI/BIA for Wallace Oenga, Leroy Oenga, Jenny Oenga, Michael M. Delia, and Georgene Shugluk" and mailed to:

Collection Officer
BIA Realty Department

DRAFT

101 Twelfth Avenue, #16
Fairbanks, AK 99701

6. Notifications. Any provision of the lease which refers to notices to the Bureau of Indian Affairs is hereby amended to also include the Realty Officer, Arctic Slope Native Association Limited, P.O. Box 1232, Barrow, Alaska 99723. Any provision of the lease which refers to notifications to the Lessor is hereby amended to refer to the Lessors at the following addresses:

Mr. Leroy Oenga
P.O. Box 201
Barrow, AK 99723

Mr. Michael M. Delia
P.O. Box 201
Barrow, AK 99723

Ms. Georgene Shugluk
Box 91003
Atqasuk, AK 99791

Mr. Wallace Oenga
201 Moller Drive
Sitka, AK 99835

Ms. Jenny Oenga
c/o Fairbanks Community Mental Health Center
122 1st Ave., Pouch #5
Fairbanks, AK 99701

7. Reappraisal Procedures. In all cases, the Lessor and Lessee shall be proper parties with standing to contest the reasonableness of the Secretary's rental determination.

8. Improvements. The lease agreement may be amended to increase or decrease the size of the leased premises at any five-year interval upon mutual agreement of the Lessor and Lessee.

9. Subleases, assigns, or transfers.. The Lessee shall provide written notice to the Lessors and to Arctic Slope Native Association Limited setting forth the terms and provisions of any assignment, sublease, transfers, or other arrangements which provide a benefit to party outside this agreement with benefits derived from the leased premises.

10. Inspection. The Lessee agrees to provide transportation from Barrow to the leased premises for any one of the Lessors for six to eight times a year to inspect the premises during and until the drilling process is completed, and then for two to three times a year during the production process of the project.

DRAFT

FOR THE LESSORS:

| | |
|---|---|
| Date | Wallace Oenga |
| Date | Leroy Oenga |
| Date | Jenny Oenga |
| Date | Michael M. Delia |
| Date | Georgene Shugluk |

SK
ATHLEEN—
EED
OTARY?
IGNATURE

FOR THE LESSEE:

| | |
|---|---|
| Date | Stu Hirsch, CPL, Senior Landman |

SUPERINTENDENT, BUREAU OF INDIAN AFFAIRS

The within Lease Amendment is hereby approved, pursuant to the authority delegated by 209 DM 8 dated November 17, 1981, Secretary's Order No. 3150 dated May 11, 1992, as amended March 5, 1993, and 10 BIAM Bulletin 13, dated November 19, 1992, as amended April 8, 1993, and the Addendum to 10 BIAM 3, dated January 17, 1989.

| | |
|---|---|
| Date | Samuel Demientieff, Superintendent<br>Bureau of Indian Affairs, Fairbanks Agency |

# ATTACHMENT No. 30

Post Office Box 1232 • Barrow • Alaska • 99723-1232 • (907) 852-2762 • FAX (907) 852-2763

Arctic Slope
Native Association Limited

November 10, 1993

Mr. Stu Hirsch, Senior Landman
Ms. Cynthia Bailey, Associate
BP Exploration, Inc.
900 East Benson Boulevard
P.O. Box 196612
Anchorage, AK 99519-6612

Dear Stu and Cindy,

SUBJECT: Proposed lease amendment -- BIA Lease No. F-89-01

First, my thanks and appreciation to you both for traveling to Barrow on October 21 to meet with the Oenga heirs and myself. In hindsight, I realize that I could have relieved some pressure felt by the heirs by taking a more assertive role in explaining their concerns. I also felt the meeting got off to a bad start when we didn't follow the agenda. I am still adjusting to facilitating meetings with individuals rather than city and corporation representatives. I appreciate your patience and the patience of the heirs. Still, I am hoping that we can find some comfortable ground now between the heirs and BP Exploration.

Enclosed is a proposed lease amendment. At your request, Stu, I am identifying the most obvious parts of the lease that need adjustment. There were a few parts of the lease I thought were worded awkwardly, but the following amendments should address the major issues. Let me know if there are any other sections that should be addressed.

I promised to provide some narrative justification for this proposed lease amendment. The major issues identified in the October meeting are outlined below:

1. A lease amendment was approved in August 1993 without consulting or prior notices to the heirs. The heirs were immediately concerned about how an amendment could be done without them. The amendment raised a number of issues and concerns by the heirs and confronted their understanding of this lease.

2. The heirs believed that lease payments would adjust dramatically when production began, and they individually had conversations with Andrew Oenga that indicated this universal understanding of the lease. There is also evidence in the file that the purpose of the lease may not have been fully clarified to Andrew Oenga (memo by former Realty Officer David Scott). The heirs strongly assert that the purpose and rental adjustments of the lease were not clearly interpreted to Andrew Oenga. Each understood and maintains that the lease governed exploration and pre-production and that significant changes would occur when production and development began.

3. The heirs met or telephoned Diane Stevens, Arctic Slope Native Association Realty Officer, to discuss a number of concerns with lease. The ASNA Realty Officer and the heirs began a thorough review and research of lease issues over the course of September and October. After considerable research with appraisers, an attorney, the regional solicitor, BIA realty, DNR, ARCO, and senior land professionals, Diane became convinced that valid concerns regarding the lease were raised and merited discussion. BP agreed to a meeting regarding the lease. The heirs requested Diane's assistance in negotiating lease issues with BP Exploration.

4. One of the heirs repeatedly requested legal review at the time of the lease, and asserts that Andrew was not encouraged to get his own legal review. The review by the Regional Solicitor is primarily a review on behalf of and for the Bureau of Indian Affairs. If there are any problems with the lease, the Regional Solicitor would be required to defend the Bureau of Indian Affairs. It is the position of the ASNA Realty Officer that legal review should be encouraged and sought for leases which present sufficient technical or legal issues. The lack of legal review for the Oenga lease indicates a significant deficiency in the negotiation and approval process for the Oenga - BP Exploration lease. While BP Exploration cannot remedy this past deficiency, approval of lease amendments by the existing heirs with legal review will establish a more congenial relationship between the Lessors and the Lessee.

5. The lease should have provided the Lessor with better opportunities for adjustments, just as the lease provides BP with wonderful opportunities for opting out of the lease and capping the amount of rental increases. It is with surprise that the ASNA Realty Officer and current legal counsel discovered the Oenga lease was primarily constructed by the Bureau of Indian Affairs. The ASNA Realty Officer has recommended the heirs consider a lease amendment despite discussion

about terminating the lease. A lease amendment signed by the heirs and BP will help in congealing the relationship between the parties.

6. The most contentious part of the lease is the legal description. It created a cloud of title over the entire parcel by not clearly describing the property being leased. This may not be the intent of the lease, but the reports regarding intent vary. One account is that the lease was meant to provide for a corridor. As plans changed, BIA and BP Exploration subsequently expanded the amount of acreage. The heirs, however, were denied an opportunity to confirm their understanding of the lease, and to negotiate and control the development of this property at the five-year anniversary of the lease and at a time when the project commenced.

   When ARCO expressed an interest in this property, BIA reported to ARCO and later to ASNA that the property could not be leased to ARCO until BP decided whether they wanted to exercise their option to extend on another 10 acres of the allotment. This event substantiates the position that the entire parcel was at the disposal of BP without proper compensation to the Lessor.

   Finally, ASNA and the heirs also maintain that the development of the allotment impacts the entire parcel. Although access is provided to the Lessors, the layout and existing type of improvements being developed impacts the entire parcel. For the combination of these reasons -- construction of the lease, potential lost opportunity for additional revenues, and impact to the entire parcel -- ASNA and the heirs are requesting amendments to the lease that more equitably benefit the Lessors.

   After some scoping of these issues at the October meeting, the heirs agreed to consider a proposal which would compensate them for the entire 40 acres. It is the position of ASNA and the heirs that this compensation should not only be reflected in adjustments to the rental payments from 1993 forward in time, but rental adjustments are rightfully due for the first five years of the lease.

7. The lease payments should be adjusted to compensate for lost revenues ($1600 per acre x 30 acres not included in lease x 5 years at nine percent interest for a present value of $290,506. The amount of lease rental adjustment due would subtract the amount promised for August 1993 to December 1993 (6666.50) or $283,839.50. The lease should also be adjusted to include the entire 40 acres for the remaining lease term (20 years).

8. Lease amendments being approved and permits being issued without notice to the heirs has created a climate of exclusion. Furthermore, the lease only requires an annual report which further adds to a situation where the lessor is given little information about development of the property. Also, one of the heirs had worked as an environmental officer for the borough and would like to be personally involved in the environmental monitoring of the property. The Lessors feel an inherent right of possession of this property and the desire to monitor and be kept apprised of the development is part of the responsibility they feel for the property. For these reasons, the Lessors would like better involvement and participation in the activities on this property. They would like to inspect the property during the drilling phase of the project with fewer inspections during the production phase. It is the position of the heirs that BP Exploration can further compensate the Lessors by offering transportation, room and board for these inspections.

9. Other proposed amendments to update the lease include identifying the existing heirs as lessors, providing addresses where they can be notified, adjusting the anniversary date to November 1 rather than January 1, providing flexibility in the lease to decrease acreages in the future upon mutual agreement of the parties, and finally providing notice requirements to the lessors when the property is being subleased, assigned, transferred or otherwise providing a benefit to parties outside this agreement. A stipulation which recognizes the standing of the Lessor to contest the reasonableness of rental determinations by the Secretary of Interior is also added.

I hope this letter provides sufficient information regarding the issues of concern. I apologize for the time it took to return a lease amendment proposal to you, however, I wanted to be sure I did not create a situation which did not get input from all the heirs and their legal counsel. I look forward to your response.

Sincerely,

Diane

Diane Stevens
Realty Officer

Enclosure: Proposed lease amendment

Request to Amend BIA Lease F-89-01

On August 3, 1993 the Bureau of Indian Affairs approved an amendment to BIA Lease No. 89-01 as requested by the Lessee BP Exploration (Alaska) Inc. The lease amended the size of the leased premises from 10 acres to 20 acres. The amendment was executed without notice to or consultation with the heirs of the lease. For a ten-week period following this amendment, the heirs made weekly visits and phone calls to Arctic Slope Native Association requesting assistance in addressing their concerns regarding the lease.

After research with various contacts including BIA Realty Specialist Kathleen Dickinson, BIA Appraiser John Cress, Regional Solicitor Roger Hudson, attorney for the the heirs, senior land professionals, ARCO, Department of Natural Resources, and other realty officers, ASNA Realty Officer determined that significant issues regarding the lease merited discussion and attention. ASNA in conjunction with the heirs requested a meeting with BP Exploration.

BP Exploration requested the attendance of BIA realty staff. ASNA extended an invitation to BIA but BIA was unable to attend the meeting. A meeting was held in Barrow with BP Senior Landman Stu Hirsch and Government and Public Affairs Associate Cynthia Bailey on October 21, 1993. The ASNA Realty Officer and four of the five heirs were also in attendance. As a result of that meeting, BP Exploration Inc. and the heirs of this lease hereby agree on the following amendments:

1. Lessor. Lessor in the original lease is hereby amended to refer to Lessors. Lessors shall include Wallace Oenga, Leroy Oenga, Michael M. Delia, Georgene Shugluk, and Jenny Oenga.

2. Leased premises. The lease is hereby amended to include the entire Parcel B of Alaska Native Allotment application F-14632, said allotment is described as U.S. Survey 6904, T11N, R15 E, U.M., Section 1, and T12N, R15E U.M. Section 36.

3. Anniversary Date. The anniversary date of this lease agreement is changed to November 1st of each year and shall become the effective anniversary date on November 1, 1994.

4. Lease Adjustment. Lessee agrees to pay rental adjustments for the present net value of rental payments for a total of 40 acres of leased premises for each of the first five years of the lease agreement for a sum of $ 283,839.50. This lease adjustment shall be paid upon approval of this lease amendment by the Bureau of Indian Affairs Superintendent.

5. Lease rentals. The rent shall be paid directly to "DOI/BIA for Wallace Oenga, Leroy Oenga, Jenny Oenga, Michael M. Delia, and Georgene Shugluk" and mailed to:

Collection Officer
BIA Realty Department
101 Twelfth Avenue, #16
Fairbanks, AK 99701

6. Notifications. Any provision of the lease which refers to notices to the Bureau of Indian Affairs is hereby amended to also include the Realty Officer, Arctic Slope Native Association Limited, P.O. Box 1232, Barrow, Alaska 99723. Any provision of the lease which refers to notifications to the Lessor is hereby amended to refer to the Lessors at the following addresses:

Mr. Leroy Oenga
P.O. Box 201
Barrow, AK 99723

Mr. Michael M. Delia
P.O. Box 201
Barrow, AK 99723

Ms. Georgene Shugluk
Box 91003
Atqasuk, AK 99791

Mr. Wallace Oenga
207 Moller Drive
Sitka, AK 99835

Ms. Jenny Oenga
c/o 309 Paystreak
Fairbanks, AK 99712

7. Reappraisal Procedures. In all cases, the Lessor and Lessee shall be proper parties with standing to contest the reasonableness of the Secretary's rental determination.

8. Improvements. The lease agreement may be amended to increase or decrease the size of the leased premises at any five-year interval upon mutual agreement of the Lessor and Lessee.

9. Subleases, assigns, or transfers.. The Lessee shall provide written notice to the Lessors and to Arctic Slope Native Association Limited setting forth the terms and provisions of any assignment, sublease, transfers, or other arrangements which provide a benefit to a party outside this agreement when benefits are directly or indirectly derived from the leased premises.

10. Inspection. The Lessee agrees to provide transportation from Barrow to the leased premises for any one of the Lessors for six to eight times a year to inspect the premises during and until the drilling process is completed, and then for two to three times a year during the production process of the project.

FOR THE LESSORS:

| | |
|---|---|
| ______________________ Date | ______________________ Wallace Oenga |
| ______________________ Date | ______________________ Leroy Oenga |
| ______________________ Date | ______________________ Jenny Oenga |
| ______________________ Date | ______________________ Michael M. Delia |
| ______________________ Date | ______________________ Georgene Shugluk |

ACKNOWLEDGEMENTS

STATE OF ALASKA )
) ss.
__________ Judicial District )

THIS IS TO CERTIFY that on this the ___ day of _______, 19______ before me the undersigned, a Notary Public for the State of Alaska personally appeared Wallace Oenga, executed the foregoing document. WITNESS my hand and official seal this ______ day of _______________, 1993 at Sitka, Alaska.

_________________________
NOTARY PUBLIC FOR ALASKA
My commission expires: _______________

STATE OF ALASKA )
) ss.
__________ Judicial District )

THIS IS TO CERTIFY that on this the ___ day of _______, 19_______ before me the undersigned, a Notary Public for the State of Alaska personally appeared Leroy Oenga, executed the foregoing document. WITNESS my hand and official seal this ______ day of ____________________________, 1993 at Barrow, Alaska.

_________________________
NOTARY PUBLIC FOR ALASKA
My commission expires: _______________

STATE OF ALASKA )
) ss.
__________ Judicial District )

THIS IS TO CERTIFY that on this the ___ day of ______, 19______ before me the undersigned, a Notary Public for the State of Alaska personally appeared Jenny Oenga, executed the foregoing document. WITNESS my hand and official seal this ______ day of _____________, 1993 at Fairbanks, Alaska.

_________________________________
NOTARY PUBLIC FOR ALASKA
My commission expires: _______________

STATE OF ALASKA )
) ss.
__________ Judicial District )

THIS IS TO CERTIFY that on this the ___ day of ______, 19_ before me the undersigned, a Notary Public for the State of Alaska personally appeared Michael M. Delia, executed the foregoing document. WITNESS my hand and official seal this ______ day of _______________, 19____ at _______________________, Alaska.

_________________________________
NOTARY PUBLIC FOR ALASKA
My commission expires: _______________

STATE OF ALASKA )
) ss.
__________ Judicial District )

THIS IS TO CERTIFY that on this the ___ day of ______, 19_____ before me the undersigned, a Notary Public for the State of Alaska personally appeared Georgene Shugluk, executed the foregoing document. WITNESS my hand and official seal this ______ day of _______________, 1993 at _________________, Alaska.

_________________________________
NOTARY PUBLIC FOR ALASKA
My commission expires: _______________

FOR THE LESSEE:

___________________________________ ___________________________________
Date Stu Hirsch, CPL, Senior Landman

SUPERINTENDENT, BUREAU OF INDIAN AFFAIRS

The within Lease Amendment is hereby approved, pursuant to the authority delegated by 209 DM 8 dated November 17, 1981, Secretary's Order No. 3150 dated May 11, 1992, as amended March 5, 1993, and 10 BIAM Bulletin 13, dated November 19, 1992, as amended April 8, 1993, and the Addendum to 10 BIAM 3, dated January 17, 1989.

| | |
|---|---|
| ____________________<br>Date | ____________________<br>Samuel Demientieff, Superintendent<br>Bureau of Indian Affairs, Fairbanks Agency |

# ATTACHMENT No. 31

BP EXPLORATION

BP Exploration (Alaska) Inc.
900 East Benson Boulevard
P.O. Box 196612
Anchorage, Alaska 99519-6612
(907) 561-5111

November 30, 1994

RECEIVED
DEC 3 1993

Diane Stevens
Realty Officer
Arctic Slope Native Association Limited
P. O. Box 1232
Barrow, AK 99723-1232

<u>Andrew Oenga Surface Lease at Heald Point</u>
<u>BIA Lease F-89-01</u>

Dear Diane:

I have received your letter of November 10th in which you set forth certain provisions of BIA Lease F-89-01 which the heirs of Andrew Oenga would like to revise.

Based upon the issues raised in your letter and our review of your requested amendments, we respectfully offer the following comments:

We basically feel that we entered into a fair and equitable agreement with Andrew Oenga, our original Lessor. The negotiations were entirely open and were conducted with an interpreter approved by both Mr. Oenga and the Bureau of Indian Affairs. We worked closely with the Bureau of Indian Affairs, the trustee for Andrew Oenga, and used a previously executed BIA surface lease as a template or model from which to proceed with our lease on Heald Point. The BIA required us to pay no less than fair market value for the leased premises and we paid fair market value based on an independent fee appraisal approved by the Secretary of the Interior's designate. Additionally, we paid a signing bonus of $25,000.00 to Mr. Oenga at his request. This is an amount equaling 1.5 years base rent.

We will respond to the heirs requested lease amendments in the order in which you have presented them.

1. <u>Lessor</u> - You have requested that the lease be amended to reflect that the heirs of Andrew Oenga (Wallace Oenga, Leroy Oenga, Michael M. Delia, Georgene Shugluk and Jenny Oenga) be referred to as the Lessors.

We do not believe that it is appropriate or necessary that the lease be so amended since the lease provides at Section 30 that "Each term, covenant, and condition contained in this Lease shall be binding upon and shall inure to

the benefit of the heirs, executors, administrators, successors, and assigns of the parties hereto". Section 30 of the lease, along with the Order of Probate for the Andrew Oenga estate, which Kathleen Dickinson of the BIA has indicated she will provide, is ample evidence that the heirs have succeeded to the interests of Andrew Oenga.

2. Leased Premises - You have requested that the leased premises described in the lease to be revised so as to included the entire Oenga Native Allotment, F-14632.

We appreciate and understand the concern of the heirs that our current plan for the development of Heald Point potentially adversely impacts the remaining undeveloped lands. For this reason, we will consent to a lease amendment which provides that the leased premises be increased from the current 20 acres to the entire 40 acres as described as Parcel B of Native Allotment F-14362.

The effective date for this amendment can be either August 1, 1993, the effective date we exercised our right to increase the size of the leases premises, or the date the BIA advised ARCO Alaska, Inc. that the allotment was unavailable for lease due to our lease F-89-01; provided there is documentation that ARCO was so advised.

3. Anniversary Date - You have requested that the anniversary date of the lease be changed from January 1st of each year back to the previous November 1st.

We do not feel that it appropriate or necessary to change the anniversary date of the lease. However, we will agree to make payments 60 days in advance of the lease anniversary date instead of our customary 30 days.

4. Lease Adjustment - You have requested that lease rental payments be adjusted to reflect that the entire 40 acres in Parcel B of this Native Allotment become the leased premises back to January 1, 1989. This would result in a payment to the heirs of $283,839.50.

We do not agree with your premise that the description of the leased premises is ambiguous and such ambiguities have essentially amounted to our use of the entirety of Parcel B from 1989 to the present. Further we do not feel that such a rental adjustment is appropriate or warranted. The preamble to the lease clearly indicates that the leased premises consist of 10 acres shown on the attached Exhibit A. Page 1 of Exhibit A clearly describes the leased premises as being a right-of-way 4,000' long and 100' wide being located essentially down the middle of Heald Point. A more precise description of the leased premises was not available at the time the lease was executed because the Niakuk Project was in the permitting process and a final location of the right-of-way had not been surveyed.

We also do not agree with your premise that our being able to use the unleased premises for geotechnical, survey and design work constitutes a significant enough use of the land that such a rental adjustment is required. At the most, our use of the unleased premises during the approximate five year period from January 1, 1989 to the present consisted of taking a small number of soil borings to test for soil stability for routing of the production pipelines .

5. Lease Rentals - You have requested that the lease rental payments be paid directly to "DOI/BIA for Wallace Oenga, Leroy Oenga, Jenny Oenga, Michale M. Delia, and Georgene Shugluk".

This manner of preparing a check is not practical as our check writing system does not provide enough room for a payee with so many characters in the name. The BIA Collection Officer in Fairbanks advises that they will accept a check prepared for "BIA for Lease of FF-14632". A payee of this nature can be processed by our accounting system. We will gladly prepare a check as the BIA Collection Officer requires provided that the payee can be processed by our accounting check preparation system.

6. Notification - You have requested that the lease be amended to provide for notification to ASNA and the heirs individually.

Section 31 of the lease provides that notices to the Lessor be mailed to "Mr. Andrew Oenga, P. O. Box 201, Barrow, Alaska 99723 or at such other address as the Lessor shall have furnished to the parties in writing". We accept the BIA's letter of August 3rd and your letter of November 10th to be the notice to Lessee required under Section 31 as to whom the Lessee shall provide notice. Therefore, we feel an amendment to the lease is not required.

7. Reappraisal Procedures - You have requested that the Lessor be added to the Lessee as a party with standing to contest the reasonableness of the Secretary's rental determination.

At this stage the life of the lease, we feel that this provision is unnecessary. Section 4 of the lease sets forth the base land value upon which rental payments shall be determined. The initial rental amount was based upon an independent fee appraisal of the native allotment approved by the BIA.

Section 5 of the lease provides that the rent shall increase at five year intervals bases on the higher of the fair market value of the land as determined by a BIA appraisal or by the rise in the CPI which ever is greater.

Since there is little, if any, discretion on the part of the Secretary to determine the rental amount at this time, we feel that this proposed amendment would serve no useful purpose.

8. Improvements - You have requested that any increase or decrease in the size of the leased premises require the mutual agreement of the Lessor and the Lessee.

BP has indicated in its comments to relative to item 2 above, that it is willing to increase the size of the leased premises to include all of Parcel B of this native allotment as of August 1, 1993 or when ARCO was advised that Heald Point was not available for lease due to BP's prior lease. If accepted by the heirs, BP agrees to amend the lease so as to waive its right to decrease the size of the leased premises at it's sole option.

Therefore, it is unlikely that this suggested amendment will be necessary.

9. Subleases, Assigns, or Transfers - You have requested that BP provide written notice to the Lessors and ASNA setting forth the terms and provisions of any assignment, sublease, transfer or other arrangements with third parties.

At this point in time, we do not foresee any assignment, sublease, transfer of the leased premises. The most likely scenario for third party involvement on Heald Point would be for one or more of the following to occur: 1.) BP assigns an interest in its Niakuk oil and gas leases to a third party; 2.) the Niakuk Participating Area is expanded to include oil and gas leases owned by parties other than BP and their leases are developed from Heald Point or 3.) BP enters into a production facility sharing arrangement with one or more third parties. Under neither of any of the three likely scenario's would the native allotment become a profit center for BP. Rather, BP would recover a portion of its capital costs plus O&M expenses.

I would like to point out that facility sharing agreements are normally considered to be confidential and thus the details of such agreements are not released.

I would like to point out that third party use of the Niakuk production pad could involve the portion of the pad located on fill placed in state waters and not on the native allotment itself. In this case, we do not believe notice would be warranted.

For these reasons, we do not believe the proposed lease amendment is necessary although we will agree to provide notice to ASNA and the heirs if we do indeed sublease the property.

10. Inspection - You have requested that BP provide transportation to Heald Point from Barrow for any one of the heirs to inspect the native allotment. Such inspections would occur 6 to 8 times annually during construction and drilling and 2 to 3 times annually thereafter.

Sections 25 and 26 of the lease reserves to the heirs the right to access their allotment at any time as long as such inspections do not conflict with BP's operations authorized by the lease.

We do not feel it is appropriate or necessary that BP provide them with transportation and/or accommodations.

On the issue on the heirs desire for information on how the allotment is being used and our plans for further development, we are most happy to answer any and all questions and provide information to answer all of their reasonable requests. Additionally, we are prepared to meet with them either in Barrow or at our office here in Anchorage for a detailed review of our activities.

From the stand point of our earlier meeting Barrow, our several telephone conversations and your letter of November 10th, it would appear that the issue of retroactive compensation for the unleased premises will be the most difficult to resolve. We have made what we consider to be a fair and reasonable offer considering that there is no legal basis for changing the current agreement. Please advise at your earliest opportunity whether our offer is acceptable to the heirs and how you view our responses to the lease amendments which you have proposed.

Sincerely,

Stu Hirsh, CPL
Senior Landman

Copies: Kathleen Dickenson

# ATTACHMENT No. 32

# Log of call, visits, or correspondence -- Oenga lease

Diane Stevens
ASNA Realty Officer

| Date | Phone # or visit | Individual, or Agency | Comments |
|---|---|---|---|
| mid-July | visit | Leroy Oenga | came into office to discuss status of Native allotment – ASNA Realty Officer summarized current activities in 7/30/93 letter |
| August | visits | Leroy Oenga | continues to visit office to discuss recent lease amendment approved by BIA, current provisions of the lease, and understanding of heirs of this lease. Also receive and discuss appraisal. |
| 8/30/93 | letter | Leroy Oenga | requests assistance to renegotiate lease |
| 9/28/93 | call in | Wallace Oenga | discuss lease negotiations |
| | call in | Leroy Oenga | discuss lease negotiations |
| | call in | Roger Hudson | called me after talking with Leroy Oenga. His conversation was curt, basically informing me that he sees no issues to discuss regarding lease, that it is a valid lease, and there are no legal issues. |
| | visit | Leroy Oenga and Georgene Shugluk | discussed Solicitor's comments |
| | call in | Stu Hirsch | Comments not dissimilar to Solicitor's comments. |
| | ASNA call | Glen Feldman | called Oenga's attorney to get his input regarding the lease and potential for proposing amendments to BP exploration. He was not in, left message. |
| 9/29/93 | call in | Cindy Bailey, BP | discussed current research going on regarding lease. She indicated a willingness to meet. |
| 10/18 | meeting scheduled | | ASNA officer with assistance from Cindy Bailey sets up a meeting on 10/18 in Barrow. Stu Hirsch wants BIA in attendance and ASNA extends an invitation to BIA. Travel is not authorized in time for meeting. Meeting moved to 10/21 because of weather conditions (BP not able to get into Barrow). |
| 10/21 | meeting held | | Meeting held in Barrow. In attendance: Stu Hirsch and Cindy Bailey from BP Exploration. Heirs Wallace Oenga, Leroy Oenga, Michael Delia, and Georgene Shugluk, and ASNA Officer Diane Stevens. |
| 10/28 | letter | | ASNA letter to BIA requesting documentation for their lack of attendance at meeting |
| 11/3 | letter | | BIA response, letter on file |
| 10/29 | fax, visit, express mail | draft lease amendments to heirs and heirs' attorney | ASNA officer drafts some amendments based on meeting, comments with heirs attorneys, and cumulative knowledge from conversations with appraiser, other realty officers, advice from senior land professionals, and BIA Realty Specialist Kathleen Dickinson. ASNA officer spends next 10 days getting review and comments from ALL heirs. |
| 11/10 | fax then mail | proposal to BP | ASNA officer submits proposed lease amendments to BP by fax (hard copy in mail) |
| 11/30 | fax then mail | BP response | BP Landman responds to amendments -- nearly entirely negative. Phone record on file |
| December | | | Most of December spent in travel status -- at Statewide Realty Conference and with consultant to catch up on backlog of Realty work and to set up Realty office procedures. Off and on attempting to discuss lease with other BP staff and ASNA staff attorney regarding options. |

| | | | |
|---|---|---|---|
| 1/5/94 | fax | ASNA resubmits amendments | ASNA Realty Officer drops some proposed amendments which are not considered crucial, amends some other provisions to be more conciliatory. Heirs agree to payments back to July 1 (time that ARCO was first interested in property) after they talked with North Slope Borough Mayor George Ahmaogak. |
| 1/11/94 | fax | BP response | BP landman returns response after consultation with Cindy Bailey |
| 1/12/94 | phone | | BP and ASNA discuss BP's response. ASNA will not drop notice provision to ASNA but concedes no notice to heirs. ASNA will be responsible for notice to heirs although Stu promises courtesy notices will be sent to heirs. ASNA will not drop notice regarding subleases, and Stu eventually concedes to provide alternative language. Although he attempts to renege on promise for alternative language, ASNA officer continues to assert that we will wait for alternative language. BP agrees to biennual payments and allows rental adjustments every four years instead of every five (administrative convenient with biennual payments). ASNA agrees to drop section 5 which clarifies payment going to BIA collection officer for "Heirs of Andrew Oenga". BP states this will be their practice anyway, however Leroy and Wallace now want direct payments to bank. ASNA will consult with them and provide BP with final comments regarding payment procedures. ASNA agrees to drop Section 7 since ASNA believes Lessor has standing anyway with regard to rental determinations. ASNA does not want to drop Section 8 which would allow mutual agreement if leased premises are decreased. I told Stu I would discuss this section with heirs for their decision. |
| 1/12/94 | evening meeting | | ASNA requests heirs to meet at ASNA office. In attendance are ASNA Realty Officer Diane Stevens and heirs Georgene Shugluk, Michael Delia, and Georgene Shugluk. Heirs agree with all changes but group discussed Section 8. ASNA officer gives them two options. One drop Section 8 as an amendment, realizing that it will, as before, be BP's option if they want to decrease acreage. The second option offered was to continue negotiations. ASNA proposed that further negotiations be done by ASNA realty officer and ASNA staff attorney (giving the appearance of elevating the negotiatiators) in Anchorage during the week of January 17th. Heirs were adamant about closing negotitions now. Voices were raised and feelings were intense. Realty Officer adamantly stated that the heirs' expectations for immediate payment were unrealistic and heirs' gave comments that were interpreted as a frustration and unhappiness with ASNA in taking so long with the negotiations. Eventually, the heirs decided they did not want further negotiations, so Section 8 is dropped as an amendment. After a lively discussion, ASNA officer said she would not recommend direct payments for Georgene Shugluk, Michael Delia, or Jenny Oenga. Eventually, all agreed to continue receiving their lease payments through IIM. |
| 1/12/94 | fax | | ASNA officer faxes proposed amendments to BIA Realty Specialist to get final review and ensure there is nothing that would prevent BIA approval. Realty Specialist ill and unavailable. |
| 1/13/94 | phone call | | ASNA officer discusses final BP amendments with BIA Realty Specialist Kathleen Dickinson. During discussion, additional BP amendments come in and we discuss. |
| 1/13/94 | fax | | ASNA faxes final comments to BP. |
| 1/14/94 | DHL | | ASNA receives two signed original amendments from BP |
| 1/16/94 | | | Report of investigation |
| 1/17/94 | | | Four of five heirs in Barrow sign counselling record and amendments. BIA will hopefully secure final signature in Fairbanks. |

# ATTACHMENT No. 33

# Counseling Record
## Leroy Oenga
## January 14, 1994

The following items were reviewed with me by the Realty Officer for Arctic Slope Native Association Limited. I show that I understand each statement below by signing my initials:

I understand that the lease signed by Andrew Oenga legally allows BP Exploration to develop and manage this Native allotment. ____________

I understand that the original lease is still in effect except for those parts changed by the amendment signed in August by BIA and those parts changed by these amendments. ____________

I understand that this lease amendment increases the acres being leased by BP from 20 acres to 40 acres. I understand that even though ASNA Limited and the heirs attempted to get back payments to 1989, I agree to receiving a payment which only goes back to July 1 1993. ____________

I understand that BP now agrees to pay the heirs every two years instead of every year. I understand that I will not receive a payment every year. I understand that once 1995 payment is made, the next payment will not be until November 1996. ____________

I understand that BP is not required to protect the property from erosion and I understand that there is natural erosion taking place on the western part of the allotment. ____________

I understand that the original lease gives BP the option to cancel and they do not need my permission to cancel the lease. ____________

I understand that the original lease gives BP the option to decrease the amount of acres they lease and they do not need my permission to decrease the amount of acres they lease. I understand that decreasing the acres under the lease means less money paid to the heirs. ____________

I understand that ASNA Limited was willing to continue negotiating the lease with the assistance of their staff attorney. The heirs instead decided to end negotiations now so that they could get their 1995 payment and their back payment. I agree with the decision of the heirs and do not want ASNA Limited to continue the negotiation. I understand that by agreeing to end the negotiation now, it may not be possible for ASNA Limited to reopen negotiations on the lease. ____________

I understand that the lease is a legal document which gives BP the full right to develop and manage this property. I understand that BP may enter into any arrangement with ARCO to develop this property. I understand that I will not receive any changes in payment because BP has full legal right to develop the property and enter into any agreements with ARCO. LLO

I understand that I will not receive any changes in payments except for a possible change every four years because raw land values may go up or because the Consumer Price Index may go up. LLO

I understand that amending a legal document is a long and hard process and that it is unlikely that any further amendments will be made. I understand that now is the most important time to make any changes to the lease. I understand that I shouldn't sign the amendment if I don't feel comfortable with what I am signing. LLO

I understand that ASNA Limited has assisted in negotiating this lease amendment because the heirs requested assistance. I understand that ASNA only provides advice on land issues and is not responsible or liable to provide legal advice. I understand that ASNA has cooperated with the heirs' attorney and encouraged the heirs' to seek legal advice. I understand that ASNA Limited and ASNA's Realty Officer have worked only to provide land management advice and is not getting any money or other special benefits by working on this lease. LLO

I understand that the money I receive under this lease and the way I handle money is my responsibility alone. ASNA Limited is not responsible for my financial situation and is not responsible for any tax advice or any debts that I may develop. Although ASNA Limited may give me advice on how to manage the money I receive, the final responsibility to pay debts and manage this money is my sole responsibility. LLO

I understand and agree with the lease amendments and so I am signing the amendment of my own free will. LLO

Leroy L. Oenga Sr
Leroy Oenga

1/17/94
Date

I hereby certify that I reviewed this counseling record with Leroy Oenga and provided Leroy with the opportunity to change his mind and to answer any questions about the final lease amendment with BP Exploration.

Diane Stevens
Diane Stevens, Realty Officer
Arctic Slope Native Association

1-17-94
Date

I hereby certify that I witnessed the discussion and signature of this counseling record between Leroy Oenga and ASNA Realty Officer Diane Stevens.

Nelson Ahvakana
Nelson Ahvakana, Acting Executive Director
Arctic Slope Native Association, Limited

1/17/94
Date

# Counseling Record
# Michael Delia
# January 14, 1994

The following items were reviewed with me by the Realty Officer for Arctic Slope Native Association Limited. I show that I understand each statement below by signing my initials:

I understand that the lease signed by Andrew Oenga legally allows BP Exploration to develop and manage this Native allotment. M.M.D.

I understand that the original lease is still in effect except for those parts changed by the amendment signed in August by BIA and those parts changed by these amendments. M.M.D.

I understand that this lease amendment increases the acres being leased by BP from 20 acres to 40 acres. I understand that even though ASNA Limited and the heirs attempted to get back payments to 1989, I agree to receiving a payment which only goes back to July 1 1993. M.M.D.

I understand that BP now agrees to pay the heirs every two years instead of every year. I understand that I will not receive a payment every year. M.M.D.

I understand that BP is not required to protect the property from erosion and I understand that there is natural erosion taking place on the western part of the allotment. M.M.D.

I understand that the original lease gives BP the option to cancel and they do not need my permission to cancel the lease. M.M.D

I understand that the original lease gives BP the option to decrease the amount of acres they lease and they do not need my permission to decrease the amount of acres they lease. I understand that decreasing the acres under the lease means less money paid to the heirs. M.M.D.

I understand that ASNA Limited was willing to continue negotiating the lease with the assistance of their staff attorney. The heirs instead decided to end negotiations now so that they could get their 1995 payment and their back payment. I agree with the decision of the heirs and do not want ASNA Limited to continue the negotiation. I understand that by agreeing to end the negotiation now, it may not be possible for ASNA Limited to reopen negotiations on the lease. M.M.D.

I understand that the lease is a legal document which gives BP the full right to develop and manage this property. I understand that BP may enter into any arrangement with ARCO to develop this property. I understand that I will not receive any changes in payment because BP has full legal right to develop the property and enter into any agreements with ARCO. M.M.D.

I understand that I will not receive any changes in payments except for a possible change every four years because raw land values may go up or because the Consumer Price Index may go up. M.M.D.

I understand that amending a legal document is a long and hard process and that it is unlikely that any further amendments will be made. I understand that now is the most important time to make any changes to the lease. I understand that I shouldn't sign the amendment if I don't feel comfortable with what I am signing. M.M.D.

I understand that ASNA Limited has assisted in negotiating this lease amendment because the heirs requested assistance. I understand that ASNA only provides advice on land issues and is not responsible or liable to provide legal advice. I understand that ASNA has cooperated with the heirs' attorney and encouraged the heirs' to seek legal advice. I understand that ASNA Limited and ASNA's Realty Officer have worked only to provide land management advice and is not getting any money or other special benefits by working on this lease. M.M.D.

I understand that the money I receive under this lease and the way I handle money is my responsibility alone. ASNA Limited is not responsible for my financial situation and is not responsible for any tax advice or any debts that I may develop. Although ASNA Limited may give me advice on how to manage the money I receive, the final responsibility to pay debts and manage this money is my sole responsibility. M.M.D.

I understand and agree with the lease amendments and so I am signing the amendment of my own free will. M.M.D.

Michael M. Delia
Michael Delia

1-17-94
Date

I hereby certify that I reviewed this counseling record with Michael Delia and provided Michael with the opportunity to change his mind and to answer any questions about the final lease amendment with BP Exploration.

Diane Stevens

Diane Stevens, Realty Officer
Arctic Slope Native Association

1-17-94
Date

I hereby certify that I witnessed the discussion and signature of this counseling record between Michael Delia and ASNA Realty Officer Diane Stevens.

Nelson Ahvakana

Nelson Ahvakana, Acting Executive Director
Arctic Slope Native Association, Limited

1/17/94
Date

# Counseling Record
## Wallace Oenga
## January 14, 1994

The following items were reviewed with me by the Realty Officer for Arctic Slope Native Association Limited. I show that I understand each statement below by signing my initials:

I understand that the lease signed by Andrew Oenga legally allows BP Exploration to develop and manage this Native allotment. WO even though Andrew Oenga was not represented by an attorney which he was suppose to be.

I understand that the original lease is still in effect except for those parts changed by the amendment signed in August by BIA and those parts changed by these amendments. WO even though [illegible] I believe BP is paying off the Bureau [illegible] and the North Slope Borough to cover up the lease.

I understand that this lease amendment increases the acres being leased by BP from 20 acres to 40 acres. I understand that even though ASNA Limited and the heirs attempted to get back payments to 1989, I agree to receiving a payment which only goes back to July 1 1993. WO

I understand that BP now agrees to pay the heirs every two years instead of every year. I understand that I will not receive a payment every year. WO

I understand that BP is not required to protect the property from erosion and I understand that there is natural erosion taking place on the western part of the allotment. WO

I understand that the original lease gives BP the option to cancel and they do not need my permission to cancel the lease. WO

I understand that the original lease gives BP the option to decrease the amount of acres they lease and they do not need my permission to decrease the amount of acres they lease. I understand that decreasing the acres under the lease means less money paid to the heirs. WO

I understand that ASNA Limited was willing to continue negotiating the lease with the assistance of their staff attorney. The heirs instead decided to end negotiations now so that they could get their 1995 payment and their back payment. I agree with the decision of the heirs and do not want ASNA Limited to continue the negotiation. I understand that by agreeing to end the negotiation now it may not be possible for ASNA Limited to reopen negotiations on the lease. WO

I understand that the lease is a legal document which gives BP the full right to develop and manage this property. I understand that BP may enter into any arrangement with ARCO to develop this property. I understand that I will not receive any changes in payment because BP has full legal right to develop the property and enter into any agreements with ARCO. WO

I understand that I will not receive any changes in payments except for a possible change every four years because raw land values may go up or because the Consumer Price Index may go up. WO

I understand that amending a legal document is a long and hard process and that it is unlikely that any further amendments will be made. I understand that now is the most important time to make any changes to the lease. I understand that I shouldn't sign the amendment if I don't feel comfortable with what I am signing. WO

I understand that ASNA Limited has assisted in negotiating this lease amendment because the heirs requested assistance. I understand that ASNA only provides advice on land issues and is not responsible or liable to provide legal advice. I understand that ASNA has cooperated with the heirs' attorney and encouraged the heirs' to seek legal advice. I understand that ASNA Limited and ASNA's Realty Officer have worked only to provide land management advice and is not getting any money or other special benefits by working on this lease. WO

I understand that the money I receive under this lease and the way I handle money is my responsibility alone. ASNA Limited is not responsible for my financial situation and is not responsible for any tax advice or any debts that I may develop. Although ASNA Limited may give me advice on how to manage the money I receive, the final responsibility to pay debts and manage this money is my sole responsibility.

________________

I understand and agree with the lease amendments and so I am signing the amendment of my own free will. WO

Wallace Oenga
Wallace Oenga

1-17-94 WO
Date

I hereby certify that I reviewed this counseling record with Wallace Oenga and provided Wallace with the opportunity to change his mind and to answer any questions about the final lease amendment with BP Exploration.

Diane Stevens

Diane Stevens, Realty Officer
Arctic Slope Native Association

1-17-94
Date

I hereby certify that I witnessed the discussion and signature of this counseling record between Wallace Oenga and ASNA Realty Officer Diane Stevens.

Nelson Ahvakana

Nelson Ahvakana, Acting Executive Director
Arctic Slope Native Association, Limited

1/17/94
Date

# Counseling Record
# Georgene Shugluk
# January 14, 1994

The following items were reviewed with me by the Realty Officer for Arctic Slope Native Association Limited. I show that I understand each statement below by signing my initials:

I understand that the lease signed by Andrew Oenga legally allows BP Exploration to develop and manage this Native allotment. ___gs___

I understand that the original lease is still in effect except for those parts changed by the amendment signed in August by BIA and those parts changed by these amendments. ___gs___

I understand that this lease amendment increases the acres being leased by BP from 20 acres to 40 acres. I understand that even though ASNA Limited and the heirs attempted to get back payments to 1989, I agree to receiving a payment which only goes back to July 1 1993. ___gs___

I understand that BP now agrees to pay the heirs every two years instead of every year. I understand that I will not receive a payment every year.___gs___

I understand that BP is not required to protect the property from erosion and I understand that there is natural erosion taking place on the western part of the allotment.___gs___

I understand that the original lease gives BP the option to cancel and they do not need my permission to cancel the lease. ___gs___

I understand that the original lease gives BP the option to decrease the amount of acres they lease and they do not need my permission to decrease the amount of acres they lease. I understand that decreasing the acres under the lease means less money paid to the heirs. ___gs___

I understand that ASNA Limited was willing to continue negotiating the lease with the assistance of their staff attorney. The heirs instead decided to end negotiations now so that they could get their 1995 payment and their back payment. I agree with the decision of the heirs and do not want ASNA Limited to continue the negotiation. I understand that by agreeing to end the negotiation now, it may not be possible for ASNA Limited to reopen negotiations on the lease. ___gs___

I understand that the lease is a legal document which gives BP the full right to develop and manage this property. I understand that BP may enter into any arrangement with ARCO to develop this property. I understand that I will not receive any changes in payment because BP has full legal right to develop the property and enter into any agreements with ARCO. gs

I understand that I will not receive any changes in payments except for a possible change every four years because raw land values may go up or because the Consumer Price Index may go up. gs

I understand that amending a legal document is a long and hard process and that it is unlikely that any further amendments will be made. I understand that now is the most important time to make any changes to the lease. I understand that I shouldn't sign the amendment if I don't feel comfortable with what I am signing. gs

I understand that ASNA Limited has assisted in negotiating this lease amendment because the heirs requested assistance. I understand that ASNA only provides advice on land issues and is not responsible or liable to provide legal advice. I understand that ASNA has cooperated with the heirs' attorney and encouraged the heirs' to seek legal advice. I understand that ASNA Limited and ASNA's Realty Officer have worked only to provide land management advice and is not getting any money or other special benefits by working on this lease. gs

I understand that the money I receive under this lease and the way I handle money is my responsibility alone. ASNA Limited is not responsible for my financial situation and is not responsible for any tax advice or any debts that I may develop. Although ASNA Limited may give me advice on how to manage the money I receive, the final responsibility to pay debts and manage this money is my sole responsibility. gs

I understand and agree with the lease amendments and so I am signing the amendment of my own free will. gs

Georgene Shugluk
Georgene Shugluk

January 17, 1994
Date

I hereby certify that I reviewed this counseling record with Georgene Shugluk and provided Georgene with the opportunity to change her mind and to answer any questions about the final lease amendment with BP Exploration.

Diane Stevens

Diane Stevens, Realty Officer
Arctic Slope Native Association

1-17-94
Date

I hereby certify that I witnessed the discussion and signature of this counseling record between Georgene Shugluk and ASNA Realty Officer Diane Stevens.

Nelson Ahvakana

Nelson Ahvakana, Acting Executive Director
Arctic Slope Native Association, Limited

1/17/94
Date

# Counseling Record
# Jenny Oenga
# January 18, 1994

The following items were reviewed with me by the Realty Specialist with the Bureau of Indian Affairs. I show that I understand each statement below by signing my initials:

I understand that the lease signed by Andrew Oenga legally allows BP Exploration to develop and manage this Native allotment. ______

I understand that the original lease is still in effect except for those parts changed by the amendment signed in August by BIA and those parts changed by these amendments. ______

I understand that this lease amendment increases the acres being leased by BP from 20 acres to 40 acres. I understand that even though ASNA Limited and the heirs attempted to get back payments to 1989, I agree to receiving a payment which only goes back to July 1 1993. ______

I understand that BP now agrees to pay the heirs every two years instead of every year. I understand that I will not receive a payment every year. ______

I understand that BP is not required to protect the property from erosion and I understand that there is natural erosion taking place on the western part of the allotment. ______

I understand that the original lease gives BP the option to cancel and they do not need my permission to cancel the lease. ______

I understand that the original lease gives BP the option to decrease the amount of acres they lease and they do not need my permission to decrease the amount of acres they lease. I understand that decreasing the acres under the lease means less money paid to the heirs. ______

I understand that ASNA Limited was willing to continue negotiating the lease with the assistance of their staff attorney. The heirs instead decided to end negotiations now so that they could get their 1995 payment and their back payment. I agree with the decision of the heirs and do not want ASNA Limited to continue the negotiation. I understand that by agreeing to end the negotiation now, it may not be possible for ASNA Limited to reopen negotiations on the lease. ______

I understand that the lease is a legal document which gives BP the full right to develop and manage this property. I understand that BP may enter into any arrangement with ARCO to develop this property. I understand that I will not receive any changes in payment because BP has full legal right to develop the property and enter into any agreements with ARCO. JO

I understand that I will not receive any changes in payments except for a possible change every four years because raw land values may go up or because the Consumer Price Index may go up. JO

I understand that amending a legal document is a long and hard process and that it is unlikely that any further amendments will be made. I understand that now is the most important time to make any changes to the lease. I understand that I shouldn't sign the amendment if I don't feel comfortable with what I am signing. JO

I understand that ASNA Limited has assisted in negotiating this lease amendment because the heirs requested assistance. I understand that ASNA only provides advice on land issues and is not responsible or liable to provide legal advice. I understand that ASNA has cooperated with the heirs' attorney and encouraged the heirs' to seek legal advice. I understand that ASNA Limited and ASNA's Realty Officer have worked only to provide land management advice and is not getting any money or other special benefits by working on this lease. JO

I understand that the money I receive under this lease and the way I handle money is my responsibility alone. ASNA Limited is not responsible for my financial situation and is not responsible for any tax advice or any debts that I may develop. Although ASNA Limited may give me advice on how to manage the money I receive, the final responsibility to pay debts and manage this money is my sole responsibility. JO

I understand and agree with the lease amendments and so I am signing the amendment of my own free will. JO

Jennie Oenga
Jenny Oenga

1/18/94
Date

I hereby certify that I reviewed this counseling record with Jenny Oenga and provided her with the opportunity to change her mind and to answer any questions about the final lease amendment with BP Exploration.

Kathleen Dickinson, Realty Specialist
Bureau of Indian Affairs Fairbanks Agency

Date 1/18/94

I hereby certify that I witnessed the discussion and signature of this counseling record between Jenny Oenga and BIA Realty Specialist Kathleen Dickinson.

Rita Gomez

1-18-94
Date

# ATTACHMENT No. 34

Post Office Box 1232 • Barrow • Alaska • 99723-1232 • (907) 852-2762 • FAX (907) 852-2763

**Arctic Slope Native Association Limited**

January 18, 1994

Ms. Samuel Demientieff
Superintendent
BIA Fairbanks Agency
101 Twelfth Avenue, Box 16
Fairbanks, AK 99701

Dear Mr. Demientieff:

Subject: BIA approval of lease amendments

Enclosed is a report of investigation for lease amendments to BIA Lease F89-01 of Native Allotment FF014632 Parcel B, U.S. Survey 6904, Heirs of Andrew Oenga. The heirs requested assistance from ASNA Limited on August 30. A great deal of research, coordination, and negotiation has taken place over the past five months. It is typical in negotiations not to get all that you bargain for and this negotiation was no different.

A number of complex issues were discussed and the final package of amendments signed by BP Exploration and the heirs was a fair compromise. My only reservation in recommending approval of this package was BP's unwillingness to amend the lease to require mutual agreement if acreage is decreased under the lease. I felt that with further negotiation, it was still possible to get this provision included in the amendments.

The heirs, however, show a great deal of stress and frustration with continuing the negotiations. As you can see with the counseling records, they decided to end the negotiations at this point. If the lease amendments are approved by BIA, Arctic Slope Native Association Limited will submit the signed amendments to the BP President summarizing our position that a great deal of compromise was offered on both sides and that we continue to believe that the entire 40 acres of the allotment should remain under lease during the term of the lease. Although we know this letter would not create any legal commitments, we hope to document our position and describe the nature of compromise reached.

We appreciate your consideration and approval of the lease.

Sincerely,

Diane

Diane Stevens
Realty Officer

# REPORT OF INVESTIGATION

Amendment to BIA Lease F89-01
of
Native Allotment FF014632 Parcel B
U.S. Survey
Heirs of Andrew Oenga

## INVESTIGATED BY:

Diane Stevens — 1-17-94

Diane Stevens, Realty Officer — Date
Arctic Slope Native Association Limited

## REVIEWED BY:

Beth Dexter — 1-19-94

Realty Officer or Specialist — Date
Bureau of Indian Affairs Fairbanks Agency

## APPROVED BY:

1-20-94

Samuel S. Demientieff, Superintendent — Date
Bureau of Indian Affairs, Fairbanks Agency

# CERTIFICATION OF INSPECTION

I, Diane Stevens, hereby certify the following to be true and accurate to the best of my knowledge and belief.

1. That I conducted the investigation hereinafter described.

2. That I prepared the report of investigation from by observations, field notes and conversations during the investigation.

3. That the information hereinafter is an accurate report of said investigation and findings.

4. That I believe my conclusions and recommendations to be valid for the reasons I stated in said report.

Certified this 17 day of January, 1994.

By: Diane Stevens
Diane Stevens, Realty Officer
Arctic Slope Native Association Limited

## Authority

Pursuant to the Act of August 9, 1955, (69 Stat. 539) as amended, (25 U.S.C. 415) provides the statutory authority for leasing of restricted land. The implementing regulations are contained in 25 CFR part 162. The Area Director is delegated the Secretary's authority to act under 25 CFR 162 (see 230 DM 1 and 10 BIAM 3.1, dated January 20, 1975). Authority has been redelegated to Superintendents to exercise all authority set forth in 25 CFR 162 (see Juneau Area Office Redelegation of Authority dated July 1, 1988).

## Purpose

The heirs want to amend the existing lease of the subject allotment. Once they were informed about the August 3, 1993 amendment to BIA Lease No. 89-01, a number of concerns were raised by the heirs.

## Background and findings

On August 3, 1993 the Bureau of Indian Affairs approved an amendment to BIA Lease No. 89-01 as requested by the Lessee BP Exploration (Alaska) Inc. The lease amended the size of the leased premises from 10 acres to 20 acres. The amendment was executed without notice to or consultation with the heirs of the lease. For a ten-week period following this amendment, the heirs made weekly visits and phone calls to Arctic Slope Native Association requesting assistance in addressing their concerns regarding the lease.

After research with various contacts including BIA Realty Specialist Kathleen Dickinson, BIA Appraiser John Cress, Regional Solicitor Roger Hudson, attorney for the heirs, senior land professionals, ARCO, Department of Natural Resources, and other realty officers, ASNA Realty Officer determined that significant issues regarding the lease merited discussion and attention. ASNA in conjunction with the heirs requested a meeting with BP Exploration.

BP Exploration agreed to meet in Barrow but requested the attendance of BIA realty staff. ASNA extended an invitation to BIA but BIA was unable to attend the meeting due to a travel freeze. A meeting was held in Barrow with BP Senior Landman Stu Hirsch and Government and Public Affairs Associate Cynthia Bailey on October 21, 1993. The ASNA Realty Officer and four of the five heirs were also in attendance. A draft outline/agenda of the meeting was developed by the ASNA Realty Officer and reviewed with the heirs before the BP meeting (enclosed). In summary, the heirs had the following concerns regarding the lease with BP Exploration and these concerns were expressed in the October meeting:

1. Amendment was approved without consulting or prior notice to the heirs

2. Heirs were concerned about how an amendment could be done without them and were concerned with other issues in the lease.

3. Heirs believed that lease payments would adjust dramatically when production began, and believe that Andrew Oenga had the same understanding of the lease. The purpose and rental adjustments of lease were not clearly interpreted to the heirs and Andrew Oenga. Heirs believed that purpose of lease was for exploration and pre-production only and that the lease payments would adjust dramatically when development began.

4. Heirs met or telephoned Diane Stevens, Arctic Slope Native Association Realty Officer, to discuss a number of concerns with lease. Diane and heirs began a thorough review and research of lease issues over the course of September and October. Diane became convinced that a meeting with BP is needed for a number of reasons. Heirs requested Diane's assistance in negotiating lease issues with BP.

5. Heirs requested legal review at the time of the lease, but believe that Andrew was discouraged from getting legal review.

6. Heirs believe the entire lease is entirely constructed in favor of the oil company. Oil company gets option to extend. Oil company given all options in the lease while the landowner is given little control.

7. Heirs want a more equitable lease and amendments to the lease. The most contentious issue are provisions of the lease that affect compensation (purpose, adjustments to compensation, subleasing).

8. BP felt the Bureau of Indian Affairs represented Andrew and was there to make sure he received a fair lease. On the surface, it would be easy for BP to deduct that any further lease amendments are not necessary. However, after considerable research with appraisers, senior land professionals experienced with oil properties, and discussions with past participants of the lease (BIA, regional solicitor), ASNA Realty Officer now believes that there is technical merit in amending the lease.

9. It is in the best interest of the heirs to meet and air their concerns with BP. It is not ASNA's position or strategy to replace them in a relationship with BP. The ASNA Realty Officer role is as a technical adviser to the heirs and to facilitate or negotiate meetings when they request.

10. It is in the best interest of BP to develop a relationship with the existing lessons of the property and find ways to address their concern. Although BIA Realty Specialist had good intentions of facilitating an amendment while newly contracted ASNA set up a

functioning realty office, BIA should have consulted the heirs before approval of a lease amendment.

11. The lease is improper in how it adjusted compensation and that it should have provided the landowner with better opportunities for adjustments, just as the lease provides BP with wonderful opportunities for opting out of the lease.

12. The most contentious part of the lease from a technical standpoint is the legal description. It created a cloud of title over the entire allotment by not clearly describing the property being leased. When ARCO expressed an interest in this property, BIA stated they could not lease properties until BP decided if they wanted to extend further on the allotment. The language of this document, and this fact demonstrates that BP has been paying for 10 acres when they have in fact tied up the entire allotment. This situation is not in the best interest for the landowners and resulted in a lost opportunity for revenues.

13. Lease should be adjusted to compensate for lost opportunity ($1600 per acre x 30 acres not included in lease x 5 years for a present net value of $290,000 at 9 per cent interest) or compensated for benefits BP incurred in their relationship with Arco. Lease should be also be adjusted to reflect equitable compensation to the Lessors for the remaining lease term (20 years).

14. Problems with the compensation provision -- based on market approach data, not income approach or substitution approach.

The meeting with BP Exploration was intense with some profanity and threats made, unfortunately. The frustration of the heirs was evident and it was apparent they felt a great deal of pressure in defending their position. At the end of the meeting, Stu Hirsch gave a positive comment that the ASNA Realty Officer only needs to provide some form of written justification and they hope to work positively on these issues. It seemed to the ASNA Officer that the issue of back payments would be the hardest to resolve, but otherwise the reaction was fairly positive despite the intensity of the meeting.

After the October meeting, the ASNA Realty Officer worked on a draft letter and amendments and received review by the heirs and the heirs' attorney. On November 11, 1993, ASNA submitted proposed lease amendments to BP Exploration (enclosed). BP Exploration responded by 11/30 and despite the positive comments made in Barrow, the response was entirely negative except to an agreement to lease 40 acres (enclosed phone call record and BP written response).

ASNA Realty Officer and the heirs decided to elevate the proposal to the extent possible. A lull in activity occurred while the ASNA Realty Officer attended the Statewide Realty Meeting in Anchorage and met with a land consultant in Fairbanks on other realty projects and procedures. On January 5, ASNA resubmitted revised amendments to BP Exploration (enclosed). BP responds by January 11. Once again the response is nearly entirely negative. ASNA Realty Officer and Executive Director are willing to use a staff

attorney to negotiate the remaining terms of the lease amendments in person in Anchorage. After a 45-minute phone conversation with BP Landman Stu Hirsch, however, ASNA Realty Officer was able to get a few concessions regarding notice to the heirs and ASNA and regarding subleases. ASNA Realty Officer agrees to drop some sections which she knows were not crucial to heirs. However, ASNA Realty Officer does not want to drop Section 8 which requires mutual consent before acreage is decreased. ASNA Realty Officer agrees to discuss this section with the heirs.

On the evening of January 12, ASNA Limited discusses the BP counter-amendments with three of the heirs (Wallace Oenga, Leroy Oenga, and Georgene Shugluk). ASNA Realty Officer offers two options regarding Section 8. The first option is to end the negotiation and accept no change in BP's ability to reduce acreage. The second option is to continue negotiation through ASNA Realty Officer and ASNA staff attorney. I did not believe it would be that difficult to get BP to add this provision but it would mean a delay in another payment. The heirs decided to end negotiation (see enclosed contact log and counseling records). The decision to drop this section from the lease amendment was the hardest decision in signing the final lease amendment for the heirs and for the ASNA Realty Officer.

ASNA Realty Officer telefaxes a response to BP on January 13 after getting review and comments from BIA Realty Specialist Kathleen Dickinson. BP sends final amendment to ASNA on January 14. Because of the intensity of issues and opinions regarding the lease, ASNA Realty Officer reviews the final amendment with each individual heir and has each heir sign a counseling record (enclosed). One heir, however, is in Fairbanks and ASNA is requesting that BIA review the final agreement with this heir and also obtain a counseling record.

## Conclusion and recommendation

Renegotiating and requesting lease amendments for a signed lease is an uphill battle. It requires a great deal of empathy and willingness to review issues from both sides and created a monumental challenge. Despite this fact, the ASNA Realty Officer agreed to work with the heirs at negotiating amendments to the lease. In practice, the ASNA Realty Officer was required to coordinate and sometime react to the efforts of the heirs who demonstrated a great deal of self-initiative in getting their concerns addressed. For a period of time and throughout the past six months, the option of "cashing out" the lease was discussed. This option would have asked BP to pay the entire amount of revenue due under the lease, factoring in the CPI index and interest rates. During the hardest parts of the negotiation, one heir would raise this option or more adamantly would state that the entire lease should be thrown out in court and a new one negotiated. Collectively the heirs did not agree with these choices, however, and continue to believe that revenues over time are better.

The payments every two years helps the heirs, however, in that it provides large enough payments to purchase large-ticket items like snowmachines since many live on a mixed cash-subsistence economy and do not have a steady cash flow that fosters getting credit and making credit payments. The heirs feel comfortable that notice will be given, however I believe they still feel the lease is constructed to the benefit of the oil company. One heir is still bitter and stated he signed the counseling record and lease amendments just to get it over with and continues to make threatening comments regarding the improvements on the property or the people involved with the lease or lease amendments. Other than the opinion of this heir, the others seem comfortable with the lease amendments except for the absence of a provision requiring mutual agreement before acres are decreased. Despite the fact that they disagree with dropping this provision, they are more adamant that payment is received immediately. The ASNA Realty Officer has impressed upon each of them during the signing of the counseling record that it will be extremely difficult to revisit this issue later.

Finally, it was my impression overall that the Landman with BP Exploration often debated and resisted provisions which had little impact on BP Exploration and which would have gone a long way in meeting the concerns of the heirs. I believe that Cynthia Bailey, BP's Associate for Government and Public Affairs did much negotiating within the company to get some of the heirs' concerns addressed. Overall, I feel the final amendments represents a tremendous compromise on the part of the heirs regarding all the concerns they raised over the past six months. The heirs are basically at the end of their rope with any further negotiations despite the fact that they would like to see a provision in the lease amendment which requires mutual consent when acres are decreased. The ASNA Realty Officer recommends approval of the lease amendment with the sole reservation that a provision to require mutual consent should have been included. If the lease amendments are approved by the Bureau of Indian Affairs, ASNA Limited will send a summary letter to the BP President reinforcing the position that all 40 acres should remain under lease during the term of the lease and describing the contributions of Cynthia Bailey in resolving these concerns and recognizing the willingness of the heirs to compromise on some of their positions.

Based on this report and with the reservation described above, I recommend approval of the lease amendments.

# ATTACHMENT No. 35

# AGREEMENT TO AMEND BIA LEASE F-89-01

This Agreement is made and entered into by and between Leroy Oenga, Wallace Oenga and Michael M. Delia whose address is P. O. Box 201, Barrow, Alaska 99723, Georgene Shugluk whose address is P. O. Box 91003, Atqasuk, Alaska 99791 and Jenny Oenga whose address is 309 Paystreak, Fairbanks, Alaska who are the immediate heirs and successors in interest of Andrew Oenga ("Lessors") [with the approval of the Secretary of the Department of the Interior ("the Secretary")] and BP Exploration (Alaska) Inc., the successor in interest to Standard Alaska Production Company ("Lessee") whose mailing address is P. O. Box 196612, Anchorage, Alaska 99519-6612 all of whom are collectively hereinafter are referred to as the ('Parties").

**Whereas,** the Lessee has previously leased a 20 acre portion of Lessor's Parcel B of Native Allotment F-14632 under provisions of BIA Lease F-89-01 (as amended) ("Lease") from the Lessors; and

**Whereas,** the Lessee desires to exercise its rights under the Paragraph 11 of the Lease to increase the size of the Leased Premises to include the entirety of Parcel B of Native Allotment F-14632; and

**Whereas,** the Lessors desire to lease the remaining unleased 20 acres of Parcel B to the Lessee; and

**Whereas,** the Parties desire to provide that lease rental payments be made in biennially instead of annually; and

**Whereas,** the Parties desire to provide for lease rental adjustments every four years instead of every five years: and

**Whereas,** the Parties desire that the Lease reflect the current heirs and successors in interest of the original Lessor and Lessee; and

**Whereas,** the Parties desire to amend the Lease to reflect the contractual relationship between the Arctic Slope Native Association Limited ("ASNA") and the Bureau of Indian Affairs ("BIA") wherein ASNA performs certain administrative realty related services on the behalf of the BIA; and

**Now Therefore,** in consideration of the mutual promises and covenants contained herein, the Parties agree as follows:

**Lease Preamble**

The description of the Leased Premised in the Lease Preamble is revised to read "The Leased Premises consists of the entire Parcel B of Alaska Native Allotment F-14632 legally described as USS 6904 T11N, R15E UM Sec. 1 and T12N, R15E UM Sec. 36."

**Paragraph 4. - Lease Rentals**

The last sentence in Paragraph 4 is revised to read "Lease rental payments are due on the anniversary date of the lease and are due and payable sixty (60) days in

advance for the next succeeding biennial period beginning with the rental payment due January 1, 1994 for the period January 1, 1994 through December 31, 1995. Lessee shall continue to make rental payments on a biennial basis sixty days before the anniversary date of the Lease. Lessors shall make no additional claims, requests or demands of Lessee for Lease rental payments, rental payment adjustments or rental payment advances except as set forth in paragraph 5."

**Paragraph 5. - Lease Rental Adjustments**

The first sentence in Paragraph 5 is revised to read "Rental payments may be increased at successive four-year intervals beginning in the sixth year after rental payments have begun".

**Paragraph 12.**

Paragraph 12 is revised to read :

"The Lessee, at its sole expense, shall keep the leased premises, and any improvements placed thereon, in good order and repair, ordinary wear and tear excepted; provided however that this provision shall not in any manner be construed so as to require the Lessee to protect the Leased Premises from natural erosion beyond the measures which, in its sole discretion, it deems necessary to protect its improvements placed thereon.

**Paragraph 13.**

The following paragraph is added to Paragraph 13:

"The Lessee shall provide written notice to the Lessor and to the Arctic Slope Native Association Limited if the Leased Premises are subleased. For the purposes of this Agreement, a sublease shall not include (a) facility sharing agreements or other transactions which do not convey an interest in real property, (b) any interest in the mineral estate underlying this Surface Lease or (c) any use of State of Alaska tidelands adjacent to the Leased Premises."

**Paragraph 15. Option to Cancel**

The second sentence in Paragraph 15 is revised to read:

"Such cancellation will be effective upon written notice to the Lessor and the Arctic Slope Native Association Limited in Barrow, Alaska not less than ninety (90) days prior to the end of each five (5) year period."

**Paragraph 31. Notices**

Item (a) is revised to read:

"Realty Officer, Arctic Slope Native Association Limited, P. O. Box 1232, Barrow, Alaska 99723."

Item (b) is revised to read;

"Mr. Leroy Oenga
P. O. Box 201
Barrow, AK 99723

Mr. Michael M. Delia
P. O. Box 201
Barrow, AK 99723

Ms. Georgene Shugluk
P. O. Box 91003
Atqasuk, AK 99791

Mr. Wallace Oenga
P. O. Box 201
Barrow, AK 99723

Ms. Jenny Oenga
c/o 309 Paystreak
Fairbanks, AK 99712"

Item (c) is revised to read:

"BP Exploration (Alaska) Inc. Attn. Land Manager
P. O. Box 196612
Anchorage, AK 99519-6612"

**Effective Date of This Agreement**

This Agreement shall be effective when fully executed and approved by the Secretary; provided however, that the Lessee's election to increase the size of the Leased Premises shall be deemed effective on July 1, 1993 for the purposes of calculating rental payments pursuant to Paragraph 11 of the Lease.

**Entire Agreement**

This Agreement constitutes the entire agreement between the Parties in so far as this Lease amendment is concerned and supersedes any previous understandings whether written or oral. With the exception of the Lease amendments described above, the remaining provisions of Lease remain unchanged.

Agreement to Amend
BIA Lease F-89-01

In Witness Whereof, the Parties have executed this Agreement on the dates below their respective signatures.

FOR THE LESSOR

Wallace Oenga 1-17-94 — Date

Leroy Oenga 1/17/94 — Date

Jenny Oenga 1/18/94 — Date

Michael M. Delia 1-17-94 — Date

Georgene Shugluk 1-17-94 — Date

FOR THE LESSEE

Jack E. Golden — Date
Vice President Endicott and
Development Programs

FOR THE SECRETARY

The within Lease Amendment is hereby approved, pursuant to the authority delegated by 209 DM 8 dated November 17, 1981, Secretary's Order No. 3150 dated May 11, 1992, as amended March 5, 1993, and 10 BIAM Bulletin 13, dated November 19, 1992, as amended April 8, 1993, and the Addendum to 10 BIAM 3, dated January 17, 1989.

1-20-94

Samuel Demientieff, Superintendent — Date
Bureau of Indian Affairs
Fairbanks, Agency

Agreement to Amend
BIA Lease F-89-01

## ACKNOWLEDGEMENTS

STATE OF ALASKA )
) ss.
SECOND JUDICIAL DISTRICT )

THIS IS TO CERTIFY that on this the 17 day of January, 1994 before me the undersigned, a Notary Public for the State of Alaska personally appeared Leroy Oenga, and Michael M. Delia, and executed the foregoing document. WITNESS my hand and official seal this 17 day of January, 1994 at Barrow, Alaska.

OFFICIAL SEAL
DIANE L. STEVENS
NOTARY PUBLIC
BARROW, ALASKA
My Comm. Expires July 29, 1997

Diane L. Stevens
NOTARY PUBLIC FOR ALASKA

My commission expires: 7/29/97

STATE OF ALASKA )
) ss.
FOURTH JUDICIAL DISTRICT )

THIS IS TO CERTIFY that on this the 18th day of Jan, 1994 before me the undersigned, a Notary Public for the State of Alaska personally appeared Jennie Oenga, and executed the foregoing document. WITNESS my hand and official seal this 18th day of Jan., 1994 at Fairbanks, Alaska.

OFFICIAL SEAL
KATHLEEN F. DICKINSON
NOTARY PUBLIC
FAIRBANKS, ALASKA
My Comm. Expires January 27, 1996

[signature]
NOTARY PUBLIC FOR ALASKA

My commission expires: 1/27/96

STATE OF ALASKA )
) ss.
SECOND JUDICIAL DISTRICT )

THIS IS TO CERTIFY that on this the 17 day of January, 1994 before me the undersigned, a Notary Public for the State of Alaska personally appeared Wallace Oenga, and executed the foregoing document. WITNESS my hand and official seal this 17 day of January, 1994 at Barrow, Alaska.

OFFICIAL SEAL
DIANE L. STEVENS
NOTARY PUBLIC
BARROW, ALASKA
My Comm. Expires July 29, 1997

Diane L. Stevens
NOTARY PUBLIC FOR ALASKA

My commission expires: 7/29/97

Agreement to Amend
BIA Lease F-89-01

STATE OF ALASKA )
) ss.
Second JUDICIAL DISTRICT )

THIS IS TO CERTIFY that on this the 17 day of January, 1994 before me the undersigned, a Notary Public for the State of Alaska personally appeared Georgene Shugluk, and executed the foregoing document. WITNESS my hand and official seal this 17 day of January, 1994 at Barrow, Alaska.

OFFICIAL SEAL
DIANE L. STEVENS
NOTARY PUBLIC
BARROW, ALASKA
My Comm. Expires July 28, 1997

Diane L. Stevens
NOTARY PUBLIC FOR ALASKA

My commission expires: 7/29/97

STATE OF ALASKA )
) ss.
THIRD JUDICIAL DISTRICT )

The foregoing instrument was acknowledged before me this 13th day of January 1994, by Jack E. Golden, the Vice President of Endicott and Development Programs of BP Exploration (Alaska) Inc., a Delaware corporation, on behalf of the Corporation.

Dawn R. Conatzer
NOTARY PUBLIC FOR ALASKA

My commission expires: 8/14/96

# ATTACHMENT No. 36

BP EXPLORATION

BP Exploration (Alaska) Inc.
900 East Benson Boulevard
P.O. Box 196612
Anchorage, Alaska 99519-6612
(907) 561-5111

January 21, 1994

Collection Officer
Bureau of Indian Affairs
101 12th Ave., #16
Fairbanks, Alaska 99701

Heirs of Andrew Oenga Native Allotment FF014632
Heald Point Surface Lease F 89-1

Dear Sir or Madam:

Transmitted herewith is BP Exploration (Alaska) Inc. check # H051620 in the amount of one hundred thirty-seven thousand one hundred twenty dollars ($137,120.00) which is payment in full for the rental payments now owing on the above cited surface lease, as amended by the Parties and approved by the Bureau of Indian Affairs on January 20, 1994.

This payment consists of the following components:

| | |
|---|---|
| Rent for 20 Acres from 7/1/93 through 12/31/93 | $16,000.00 |
| Rent for 20 Acres from 1/1/94 through 12/31/94 | $40,320.00 |
| Rent for 40 Acres from 1/1/95 through 12/31/95 | $80,640.00 |
| Rent diff. between estimated payment made and actual rent due on 20 acres from 1/1/94 through 12/31/94 | $160.00 |
| | $137,120.00 |

Please feel free to call me at 564-4841 if you have any regarding this matter.

Sincerely,

Stu Hirsh, CPL
Senior Landman

Copy: Diane Stevens ASNA

# ATTACHMENT No. 37

**PEPPER HAMILTON & SCHEETZ**
ATTORNEYS AT LAW

1300 NINETEENTH STREET, N.W. • WASHINGTON, D.C. • 20036-1685
PHONE (202) 828-1200 • FAX (202) 828-1665

**FAX INFORMATION SHEET**

Date: June 6, 1994

Danyl Number: 38812

Recipient(s): Leroy Oenga

Company:

Recipient's General Number:

Recipient's Fax Number(s): (907) 852-2763

Sender: Charles Carpenter

Sender's Direct Line: (202) 828-1307

Total Pages Including Cover: 3

Comments:

Diane Stevens
457-2762
600 University Ave
Suite 85

An original or a copy has [ ] or has not been [x ] sent to you by mail [ ] or by overnight service [ ].

**Transmission and Billing Information**

Client/Project Number: 999928 Client/Project Name: Oenga

Matter Number: 20006 Matter Name:

**If transmission is not received, please call: (202) 828-1619**

Confidentiality Note: The documents accompanying this telecopy transmission contain information from the law firm of Pepper, Hamilton & Scheetz which is confidential and/or legally privileged. The information is intended only for the use of the individual or entity named on this transmission sheet. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited, and that the documents should be returned to this Firm immediately. In this regard, if you have received this telecopy in error, please notify us by telephone immediately so that we can arrange for the return of the original documents to us at no cost to you.

**Operator's Use Only**

*Machine Telephone Number Used:*

*Start Time:* : am [ ] pm [ ] *End Time:* : am [ ] pm [ ]

*Operator:*

**EMERALD ENTERPRISES, INC.**
P. O. Box 53687
Lafayette, Louisiana 70505-3687
(318) 235-0052

Thomas N. Burdette
President

May 31, 1994

Mr. Charles H. Carpenter
Pepper, Hamilton & Scheetz
1300 Nineteenth Street, N.W.
Washington, D.C. 20036-1685

Re: Oenga Lease

Dear Mr. Carpenter:

Pursuant to your earlier request, I have preliminarily reviewed the materials forwarded to me with your letter of May 23, 1994 concerning the captioned lease. While I do not find any of the actions of BP either unusual or suspect, a more thorough investigation should be conducted to determine whether or not the lessor or his heirs were properly informed by the Bureau of Indian Affairs' representatives, and whether or not the property appraisal process, if being conducted properly, represents an equitable process for the determination of future rental payments.

Even though the Oenga Lease provides, inter alia, "... may use the leased premises for any and all oil field exploration, development, construction, facilities, production and support purposes....", the Exhibit A attached to the Oenga Lease only depicts the lease area being used for the location of pipelines and an access road. However, the approved Niakuk project provides for the Oenga leased premises to include, in addition to the above referred to road and pipelines, a 20 well production pad at the tip of Heald Point. From the materials you provided me I am unable to determine whether or not representatives of the Bureau of Indian Affairs communicated with the lessors prior to approving the lease amendment and confirming the rental structure. Of particular concern is the property appraisal process which utilizes surface leases, described as comparable, which do not include activities similar to that for which the Oenga lease is being utilized and selects as a most comparable site one which is most distantly removed from the Oenga lease and includes no production facilities.

My preliminary opinion, limited to inferences which can be drawn from the materials which you provided me, is that neither the original Lessor nor his heirs were cognizant of the implications for full development of Heald Point as a production facility and that all future payments were related only to undeveloped property being utilized in a similar fashion, for which there is no direct corollary.

Charles H. Carpenter
May 31, 1994
Page 2.

At this time, I do not see any evidence that BP acted in bad faith or fraudulently; however, I see no evidence that the Bureau of Indian Affairs either fully understood or fully communicated the implications associated with operations which are permissible on the Oenga lease, to Mr. Oenga (through an interpreter) or his heirs. Based on the potential that the Bureau of Indian Affairs may not have fully performed their custodial responsibility for the benefit of a native Alaskan Indian with limited knowledge and communication skills, you may wish to have additional investigations conducted to determine the scope of the Bureau of Indian Affairs communication with the lessor and to have additional appraisals conducted which may more correctly reveal the value of Heald Point as a production site.

I am including my invoice for services rendered in accordance with our earlier discussions. I look forward to continuing to work with you on this matter. Please call me if you have any questions.

Yours very truly,

Thomas N. Burdette

Thomas N. Burdette, CPL/ESA

# PEPPER, HAMILTON & SCHEETZ

ATTORNEYS AT LAW

PHILADELPHIA, PENNSYLVANIA
NEW YORK, NEW YORK
DETROIT, MICHIGAN
HARRISBURG, PENNSYLVANIA
BERWYN, PENNSYLVANIA

1300 NINETEENTH STREET, N.W.
WASHINGTON, D.C. 20036-1685
202-828-1200
TELEX CABLE ADDRESS: 440653 (ITT)
FAX: 202-828-1665

WILMINGTON, DELAWARE
WESTMONT, NEW JERSEY
LONDON, ENGLAND
MOSCOW, RUSSIA

WRITER'S DIRECT NUMBER

(202) 828-1307

July 20, 1994

BY TELECOPY

Leroy L. Oenga, Sr.
P.O. Box 201
Barrow AK 99723

Re: Lease on Heald Point

Dear Leroy:

Please find enclosed an estimate to perform an initial evaluation of the market value of the BP lease on Heald Point. Unless you have some objection to employing Mr. Hines, we recommend that you proceed with this evaluation. Please give me a call when you have made a decision.

Yours,

Charley

Charles H. Carpenter

cc: Charles Edwardsen

**E. CHILTON HINES, MAI**
**REAL ESTATE APPRAISER, CONSULTANT AND MARKET ANALYST**

*E. CHILTON HINES, INC.*
*1107 JOYCE DRIVE*
*FAIRBANKS, ALASKA 99701*

*TELEPHONE: 907-452-1222*
*FAX: 907-452-1445*

July 15, 1994

Mr. Thomas N. Burdette, President
Emerald Enterprises
Box 53687
Lafayette, Louisiana 70505-3687

RE: **Oenga lease** - Heald Point, Alaska.

Dear Tom:

I enjoyed talking with you on the phone yesterday. I have reviewed the package of information you sent pertaining to the above.

I can complete an initial "evaluation" on the lease and BIA appraisal and any other written materials that are pertinent to this case. My time-frame is seven (7) to ten (10) days after written confirmation to proceed. This initial "evaluation" will consist of a desk review only (and phone calls, if necessary) and will not consist of any field inspection or other work. I will issue a brief letter only, but I cannot issue any written or verbal "valuation" or "Annual Market Rent" conclusion (estimate) on the subject site until complete inspection(s) and analyses are done. The cost for the initial evaluation **will not exceed $1,500.00**. I charge $750.00/day or $100.00/hour. I really expect this initial cost to be more like $1,000.00 to $1,200.00, but there are always unknown variables.

It is my understanding that your client is Pepper, Hamilton, and Scheetz in Washington, D.C. and that you must obtain approval from them to proceed. I will need to know who my client will be and who will pay my billing. I normally expect payment within two (2) weeks of submittal.

If you and your client want to proceed, please send me all pertinent materials and billing confirmation via Fed Ex or similar service as soon as possible. I may be out of town for about one week in early August.

If your client decides to proceed beyond the initial evaluation, I can quote a fee range and an estimate of expenses at that time. I will wait to hear from you. Please let me know at your/your client's earliest convenience.

Sincerely,

E. Chilton Hines, MAI