# ATTACHMENT No. 38

COPY

Office of the Regional Solicitor
Alaska Region
FEB 16 [illegible]
Received

# APPRAISAL OF
# U.S. SURVEY 6904
# HEALD POINT, PRUDHOE BAY, ALASKA
# (40 ACRES VACANT LAND)

FOR
STUART HIRSH
BP EXPLORATION INC.
P.O. BOX 196612
ANCHORAGE, ALASKA 99519

VALUATION DATE
DECEMBER 5, 1994

FILE 94-2446

BY
ROGER N. BONNETT, MAI

APPRAISAL COMPANY OF ALASKA
3900 ARCTIC BOULEVARD - SUITE 304
ANCHORAGE, ALASKA 99503

Appraisal Company of Alaska

Telephone (907)
562-2424

Appraisal Company of Alaska

3900 ARCTIC BOULEVARD, SUITE 304
ANCHORAGE, ALASKA 99503

December 9, 1994

Stuart Hirsh
BP Exploration (Alaska) Inc.
P.O. Box 196612
Anchorage, Alaska 99519-6612

Re: Heald Point Native Allotment, U.S. Survey 6904
40 Acres of Vacant Land, Prudhoe Bay, Alaska

Dear Mr. Hirsh:

As requested, I have completed an appraisal of the above referenced real property which is described in the following report. The purpose of the report is to estimate both a value range and the market value of the fee simple surface estate of the subject property.

As a result of the investigation and analysis, subject to the assumptions and limiting conditions, it is my opinion the estimated market value of the subject property, as of December 5, 1994, is:

**SIX HUNDRED EIGHTY THOUSAND DOLLARS**
**($680,000)**

This appraisal is intended to comply with the Bureau of Indian Affairs appraisal requirements and review.

I hope this appraisal proves relevant to your decisions regarding the property. If you have any questions, please contact me at this office.

Sincerely,

APPRAISAL COMPANY OF ALASKA

Roger N. Bonnett

Roger N. Bonnett, MAI

94-2446

## TABLE OF CONTENTS

Cover Page
Letter of Transmittal
Table of Contents

APPRAISAL REPORT — Page

Summary of Important Data . . . . . . . . . . . . 1
Assumptions and Limiting Conditions . . . . . . . 2
Purpose of Appraisal . . . . . . . . . . . . . 3
Location. . . . . . . . . . . . . . . . . . . . 3
Legal Description . . . . . . . . . . . . . . . 3
Property Owner . . . . . . . . . . . . . . . . 3
Three Year Sales History . . . . . . . . . . . . 4
Date of Appraisal . . . . . . . . . . . . . . . 4
Real Estate Taxes . . . . . . . . . . . . . . . 4
Zoning. . . . . . . . . . . . . . . . . . . . . 4
Lease Agreement . . . . . . . . . . . . . . . . 4
Neighborhood Data . . . . . . . . . . . . . . . 5
Site Description. . . . . . . . . . . . . . . . 6
Highest and Best Use . . . . . . . . . . . . . 7
Appraisal Process . . . . . . . . . . . . . . . 9
Land Valuation. . . . . . . . . . . . . . . . . 9
Certificate of Appraisal . . . . . . . . . . . . 15

ADDENDA
Subject Lease
Comparable Market Data
Qualifications of Appraiser
Representative List of Clients


Prudhoe Bay
Subject
Approximate Location
of Southern Boundary
Taken By: North Pacific
Aerial Surveys

# SUMMARY OF IMPORTANT DATA

| | |
|---|---|
| PROPERTY TYPE: | 40 acres - Land only |
| LOCATION: | The property is located on Heald Point, Prudhoe Bay, Alaska |
| LEGAL DESCRIPTION: | U.S. Survey 6904 located in Sections 1 and 36, Township 12 North, Range 15 East, Umiat Meridian, Alaska |
| OWNER: | Andrew Oenga |
| ZONING: | Resource Development District |
| HIGHEST AND BEST USE: | Oil & Gas Production or Development |
| ESTATE APPRAISED: | Fee simple surface estate |
| DATE OF APPRAISAL: | December 5, 1994 |

SUMMARY OF VALUE ESTIMATE:

| | |
|---|---|
| Cost Approach | N/A |
| Sales Comparison Approach Range | $640,000 to $720,000 |
| Income Approach | N/A |

| | |
|---|---|
| INDICATED MARKET VALUE OF THE 40 ACRE SURFACE ESTATE: | $680,000 |

## ASSUMPTIONS AND LIMITING CONDITIONS

This appraisal is subject to the following assumptions and limiting conditions:

1. The title to the property is assumed to be marketable and free of all liens and encumbrances, except as noted in the report.

2. No responsibility is assumed for matters which are legal in nature, nor is any opinion rendered on the title of the property appraised.

3. All maps, areas, and other data furnished have been assumed to be correct. The information obtained from others is considered to be reliable, but no guarantee is made to the absolute correctness of this information.

4. No part of this appraisal should be used out of context. Where the value of the land and improvements is shown separately, the value of each is segregated only as an aid to better estimate the value of the whole parcel.

5. There shall be no obligation to appear or testify in court by reason of this appraisal, unless mutually satisfactory arrangements are made in advance.

6. Disclosure of the contents of this appraisal report is governed by the Bylaws and Regulations of the Appraisal Institute. Neither all, nor any part of, the contents of this report shall be disseminated to the public through advertising, public relations, news, sales, or any other media without the prior written consent and approval of the appraiser.

7. The appraisal is subject to your agreement that the liability of the Appraisal Company of Alaska, as well as the individual appraisers signing the report, due to professional negligent acts, errors or omissions of the appraisers, are limited to the amount of the appraisal fee. All persons utilizing and relying upon this report, in any manner, bind themselves to accept this limitation of liability.

8. The appraiser did not perform an on site inspection of the subject property. He is, however, familiar with the North Slope area and has viewed some of the comparable sales. Site information was obtained from aerial photographs and U.S. Geological Survey topographic maps.

## PURPOSE OF THE APPRAISAL

The purpose of the appraisal report is to estimate a market value range of the subject property. Market value is defined by the American Institute of Real Estate Appraisers in their Ninth Edition of The Appraisal of Real Estate as follows:

> "The most probable price, as of a specified date, in cash, or in terms equivalent to cash, or in other precisely revealed terms, for which the specified property rights should sell after reasonable exposure in a competitive market under all conditions requisite to fair sale, with the buyer and seller each acting prudently, knowledgeably, and for self-interest, and assuming that neither is under undue duress."

## PROPERTY RIGHTS APPRAISED

This appraisal is made of the fee simple surface estate of the subject property. Fee simple estate is defined in The Dictionary of Real Estate Appraisal as follows:

> "Absolute ownership unencumbered by any other interest or estate; subject only to the limitations of eminent domain, escheat, police power, and taxation."

The surface right reflects the right to use only the surface of the land.

## LOCATION

The subject property is located on the Sagavanirktok River Delta at Heald Point, Prudhoe Bay, Alaska. This is 14 miles north of the Deadhorse airport.

## LEGAL DESCRIPTION

The property being appraised is legally defined as:

> U. S. Survey 6904 located in Sections 1 and 36, Township 12 North, Range 15 East, Umiat Meridian, Alaska. Also known as Native Allotment F-14632B

## PROPERTY OWNER

The present property owners are reported to be Leroy Oenga, Wallace Oenga and Michael M. Delia whose address is P.O. Box 201, Barrow, Alaska 99723, Georgene Shugluk whose address is P.O. Box 91003, Atqasuk, Alaska 99791 and Jenny Oenga whose address is 309 Paystreak, Fairbanks, Alaska who are the immediate heirs and successors in interest of Andrew Oenga.

## THREE YEAR SALES HISTORY

No sales involving the subject property were reported or have occurred in the past three years.

## DATE OF APPRAISAL

The date of this appraisal is December 5, 1994. This date is important as valuation can be affected by a variety of economic, financial and political factors which can vary over time.

## REAL ESTATE TAXES

The taxing jurisdiction for the subject property is the North Slope Borough. The Borough is divided into service areas. All properties within a given service area are taxed at the same rate; as a result, there is no discrimination between various property types. The subject is situated in the Prudhoe Bay Service area with a present mill rate of 18.50 mills.

The subject property is presently held by Alaskan Natives and as such is exempt from taxation by Federal Law. However, there is the possibility of a possessory interest tax on any improvements if the property is leased or sold to a non-native.

## ZONING

The subject site is zoned Resource Development District by the North Slope Borough. The only restriction of the zoning is a permit requirement.

## LEASE AGREEMENT

The January 1, 1989, ground lease or BIA Lease No. F-89-01 was between Andrew Oenga and Standard Alaska Production Company. It originally covered ten acres of the property and called for rental payments of $16,000 per year of $1,600 per acre. In addition to the rental, a Lease Bonus of $25,000 was paid to the lessor upon approval of the lease. In July of 1993, another ten acres were leased for $1,600 per acre. In July, 1994, the Lessee elected to increase the size of the Leased Premises to 40 acres, retroactive to July, 1993, and the overall rental was increased to $80,640 per year or $2,016 per acre based on a Consumer Price Index adjustment. The present owners previously noted are heirs and successors to Andrew Oenga and BP Exploration (Alaska) is now the successor in interest to Standard Alaska Production Company.


DOCK #2
STAGING PAD
N
NORTH PRUDHOE BAY STATE #2
GULL ISLAND
WEST BEACH STATE #1
TERM WELL A
NIAKUK ISLAND
PRUDHOE BAY
SUBJECT PROPERTY
HEALD PT.
PAD
NGI
WEST BAY STATE #1
SAG DELTA 8
WGI
PRUDHOE BAY UNIT DISCOVERY WELL
CCP
EAST DOCK
GAS PIPELINE PAD
PUT. 23 MINE SITE
SOUTH PT. STATE
T3-C
DS-15
DS-18
SOUTH BAY STATE
PINGUT ST. #1
NSB LANDFILL
STORAGE PAD
PINGUT
SANITARY LANDFILL (closed)
PUT. 27 MINE SITE
DS-11
DS-4
OPERATIONS STORAGE PAD
DS-7
DS-5
FS-2
DS-2
SIP
WEBSTER RES.
FS-1
MCC
ARCO BASE CAMP
FS-3
ROAD
AIRSTRIP
DUCK ISLAND GRAVEL PIT
DS-9
DS-6
DS-1
SAG C MINE
EXXON
DS-3
DEADHORSE(ACI)
NABORS
KODIAK-NABORS
CHARLIE HORSE
BAKER
HALLIBURTON
OIL TOOL
CAMP
VECO
DOWELL INC.
SCHLUMBERGER
OTIS
DRESSER ATLAS WIRELINE
TRISTATE
MUKLUK
DS-13
FRONTIER
CHILDS
HAPPY HORSE
DS-12
DS-16
NANA RES.
ACI/ CAMCO
DEADHORSE
ESKIMO
CRAZY HORSE
ACI
DS-17
LOCAL 942
HOUSTON
NANA CAMP
PCI
FAA
ERA
DEADHORSE AIRPORT
SAGAVANIRKTOK




## IMPROVEMENT

FROM W.C.M.C. No. 2

THE WEST COR. OF AN ICE CELLAR, 2 1/2 X 2 1/2 FT., BEARS N.32°55' E., 41.81 CHS. DIST. ONE SIDE EXTENDS N.40°E.

## MEANDERS

ALONG AN ERODING SHORELINE 8 TO 18 FT. HIGH.

| | | | | | |
|---|---|---|---|---|---|
| 1. | N.45°01' E., 2.88 CHS. | 17. | N.46°52' E., 1.90 CHS. |
| 2. | N 26°23' E., 1.98 CHS. | 18. | N.40°43' E., 9.67 CHS. |
| 3. | N.51°33' E., 2.03 CHS. | 19. | S.87°07' W., 1.47 CHS. |
| 4. | N.46°14' E., 3.27 CHS. | 20. | S.68°05' W., 3.99 CHS. |
| 5. | N.34°02' E., 2.00 CHS. | 21. | S.56°28' W., 3.89 CHS. |
| 6. | N.19°18' E., 3.48 CHS. | 22. | S.88°47' W., 3.11 CHS. |
| 7. | N 45°49' E., 3.50 CHS. | 23. | S.50°37' W., 5.86 CHS. |
| 8. | N.21°14' E., 2.57 CHS. | 24. | S.40°43' W., 8.75 CHS. |
| 9. | N.41°31' E., 2.72 CHS. | 25. | S.47°22' W., 3.43 CHS. |
| 10. | N.30°25' E., 1.74 CHS. | 26. | S.40°08' W., 3.71 CHS. |
| 11. | N.34°01' E., 2.13 CHS. | 27. | S.37°30' W., 6.27 CHS. |
| 12. | N.42°08' E., 3.43 CHS. | 28. | S.35°25' W., 4.18 CHS. |
| 13. | N 36°09' E., 2.54 CHS. | 29. | S.34°58' W., 5.59 CHS. |
| 14. | N.49°38' E., 2.10 CHS. | 30. | S.32°23' W., 3.04 CHS. |
| 15. | N.31°51' E., 5.32 CHS. | 31. | S.49°34' W., 3.14 CHS. |
| 16. | N 25°41' E., 1.81 CHS. | 32. | S.32°45' W., 6.14 CHS. |

I, Michael D. Wilson, HEREBY CERTIFY upon honor that in pursuance of Special Instructions dated April 30, 1981, I have executed the survey depicted on this plat in strict conformity with said Special Instructions, the Manual of Instructions for the Survey of the Public Lands of the United States, 1973, and in the specific manner described on this plat.

15 MAY 1985
Date

Michael D. Wilson
Cadastral Surveyor

1 0 1 2 3 4 5 10 15 20
Chains

# SITE DESCRIPTION

## Shape and Area

The subject is located on a long narrow peninsula which the subject encompasses the last 3/4 mile. The subject is 600 feet wide at its widest point. The area according to the U. S. Survey is 40 acres.

## Topography

The subject is relatively flat with a slight southeasterly slope.

## Soils, Drainage, and Flood Plain

No flood plain or drainage information was provided, however, the subject is a coastal property. The soils are reported to be tundra with no tree or large vegetation.

## Access

No public road access is available to the subject site. Traditional access would be by boat during the short summer season and by snow machine or all terrain vehicle in the winter. For security and safety reasons, unescorted vehicles are not allowed on the existing area roads.

## Utilities

There are no public utilities available to the site.

## Easements

None noted on the survey.

# HIGHEST AND BEST USE

In common appraisal practice, the concept of highest and best use represents the premise upon which a value estimate is based. The highest and best use estimated is the result of the appraiser's judgment and analytical skill. The use determined from analysis represents an opinion, not a fact to be found.

Highest and best use is defined in The Appraisal of Real Estate (ninth edition, American Institute of Real Estate Appraisers) as:

> "The reasonably probable and legal use of vacant land or an improved property, which is physically possible, appropriately supported, financially feasible, and that results in the highest value."

It is to be recognized that, in cases where a site has existing improvements, the highest and best use of the land may very well be determined to be different from the existing use. The existing use will continue, however, unless and until land value in its highest and best use exceeds the total value of the property in its existing use.

In estimating highest and best use, the following criteria are considered:

1. Physically possible use: What uses of the site in question are physically possible?

2. Legally permissible use: What uses are permitted on the site by zoning, deed restrictions, subdivision covenants?

3. Financially feasible use: Which possible and permissible uses will produce a positive net return to the owner of the site?

4. Maximum productive use: Of the feasible uses, which use will produce the highest net return or the highest present worth?

Implied here is a recognition that the determination of highest and best use takes into account the contribution of a specific use to the public or community, as well as the benefits of that use to individual property owners. Hence, in certain situations, the highest and best use of land may be for parks, greenbelts, preservation, and the like.

Highest and Best Use "As Vacant"

In analyzing the highest and best use, as if vacant, the appraiser hypothetically removes all improvements, if any, in order to estimate the most likely and probable use of the vacant site. From the stated definition, it can be seen that there are various tests to be examined in determining the highest and best use of a site.

The first constraints imposed on a site are its shape and size. The subject site is a long narrow peninsula with water frontage on three sides. It encompasses 40 acres which would allow adequate development. Neither size or shape would present any development problems.

Allowable uses under private and public restrictions must also be addressed and considered when analyzing the site for potential development. As mentioned, the subject site is zoned resource development which allows for any use that would be typical for the area.

Feasible uses would include any uses that would be associated with development or production of oil and gas resources surrounding or under the subject. These feasible uses would be consistent with the surrounding area.

In conclusion, the highest and best use of the subject "as vacant" site is judged to be oil or gas related production or development property. This type of highest and best use is similar to much of the land in the Prudhoe Bay area.

Highest and Best Use "As Improved"

The subject site is presently improved with a relatively new production facility that was developed when the plans for the offshore Niakuk Island facility were dropped. The highest and best use of the subject property is considered to be a continuation of the existing present or designed use. At present, there is no economically feasible use which would justify removal of the existing improvements. The subject improvements are substantial and contribute to the overall property value. The highest and best use of the subject property is to continue its present use.

## THE APPRAISAL PROCESS

Typically, in the appraisal process, all three approaches to value are utilized, i.e., the cost, sales comparison and income approaches. The subject of this report, however, consists of only vacant land. As such, only the Sales Comparison Approach is considered to be applicable.

## LAND VALUATION

A number of valuation techniques may be used in valuing land. The approaches available are the market comparison approach, the land residual technique, the land abstraction procedure, and the anticipated use for development procedure. Of these procedures, the market comparison is the preferred method when there is an active real estate market that involves vacant land sales of similar type properties.

The sales comparison approach is based upon the principle of substitution, the rationale being that an informed buyer will pay no more for a given site than the cost of an alternative site offering the same utility. A basic consumption of this approach is that the site be valued as vacant and that development be to its highest and best use. Sales are sought which, after adjusting for differences, can be compared directly to the subject property.

The majority of the surface estates in the Prudhoe Bay area are controlled by the State of Alaska which limits the number of sales of fee owned property. Most of the surface estates are transferred through the use of long term leases to oil or support service companies. For this reason, land value is estimated by analyzing these leases and capitalizing or discounting the annual rental incomes instead of by traditional comparison methods.

The following is a list of typical market transactions found in the Prudhoe Bay and North Slope area.

NEIGHBORHOOD DATA

Due to the knowledge of the readers of this report a limited overview of the neighborhood is provided. The subject property is situated in the Deadhorse-Prudhoe Bay area on Alaska's North Slope. More specifically it is located on the northeast side of the Prudhoe Bay oil field on the Northeast edge of Prudhoe Bay. This is just north of the Sag 6 production facility. The North Slope is a 70,000 square mile area that extends across the northern or arctic portion of the State of Alaska. The area is bounded on the south by the Brooks Range. From the Brooks Range, the area slopes northward in a wide, gentle plain to the shores of the Beaufort Sea which is part of the Arctic Ocean.

This area is the origin of the Trans Alaska Pipeline which can transport an average of two million barrels of crude oil per day to Valdez for the domestic consumption of the United States. As such, this area is critical to the future of Alaska and to the economy of the United States. The development of these oilfields and oil revenues generated are directly responsible for the large population growth and expansion of the Alaskan economy which has taken place in the last twenty years.

The central core area of industrial companies serving the oil facilities is centered in and around the Deadhorse Airport about 14 miles southwest of the subject. Here many industrial buildings are located along with different "camps" which provide food and lodging for slope workers.

The immediate area surrounding the subject is about 14 miles north of the core area. The nearest development to the subject in this area is the Sag Delta 6 production facility. Other developed sites are situated on the south and west side of Prudhoe Bay.

Air transportation in and out of the area is via both scheduled and charter airlines. Trucking goods are brought in over the Haul Road or Dalton Highway from Fairbanks, which is a State maintained gravel road. This road is not open to the general public past the Yukon River in the winter and Disaster Creek in the summer. Within the Prudhoe Bay field, there is the gravel surfaced Spine Road some 30 miles in length plus numerous gravel access roads. The closest road to the subject is the access road to Sag 6 which ends about one half mile southwest of the subject. Water transportation to the area is normally limited to about a six-week period during the summer when the ocean ice moves offshore and allows barges to be brought in with modules, heavy equipment, and supplies.

The area is expected to be economically viable for several years with a general shift in the work complexion taking place from exploration to production.

Summary of Land Comparables

| Sale No. | Location | Date | Price | Acres | Price/ Acre | Remarks |
|---|---|---|---|---|---|---|
| 1 | Kuparuk River area | 1/90 | $150,000 | 16.59 | $9,042 | Smaller 16.59 acre site acquired by BP Exploration. Negotiated settlement agreement created when exploration company relied on an erroneous status map. Situated some 20 miles to the west of the subject. |
| 2 | Harrison Bay east of Colville River | 2/93 | $217,000 | 12.0 | $18,083 | Lease of 12.0 acre drill site just east of the Colville River on Harrison Bay. Located some 40 miles west of Prudhoe Bay in the Kuparuk area of the North Slope. Price reflects $2,083 per acre for probable signing bonus. |
| 3 | Spine Road area near Deadhorse Airport | 12/89 | $76,230 | 2.5 | $30,492 | Lease of smaller 2.5 acre site situated in the State of Alaska's North Slope Lease Tract. This is one of the relatively few "recent" land leases in the Prudhoe Bay area. |

Summary of Land Comparables - Cont'd

| Sale No. | Location | Date | Price | Acres | Price/ Acre | Remarks |
|---|---|---|---|---|---|---|
| 4 | West Dock area of Prudhoe Bay | 7/82 | $630,000 | 24.0 | $26,250 | Relatively flat 24 acre parcel located in West Dock staging area at the south end of the West Dock Causeway. Discounted cash flow of future land rental payments indicates a $630,000 land value. |
| 5 | West Dock area of Prudhoe Bay | 10/80 | $360,000 | 142.0 | $2,535 | Lease of two ATS parcels from the State of Alaska by ARCO. Lease is for a total of 40 years and provides for a combined rent of $32,400 or about $228 per acre. "Sold" parcels consist mostly of submerged tidelands. |
| 6 | South of Barrow Airport | 4/87 | $400,000 | 8.35 | $47,904 | Sale of smaller fee parcel located south of Barrow Airport with all utilities available. With a location close to a larger community and all utilities available, sold property is considered to be superior on a per acre basis. |

Summary of Land Comparables - Cont'd

| Sale No. | Location | Date | Price | Acres | Price/ Acre | Remarks |
|---|---|---|---|---|---|---|
| 7 | 4th Street south in Kaktovik | 10/86 | $168,750 | 2.58 | $65,407 | Smaller fee parcel situated in Kaktovik. Typical North Slope lot with permafrost type soils and flat topography. Electricity and telephone available. USDW Building was built after purchase. |

Analysis: The location of the comparables can be found on the comparable map in the addenda. Comparables one through five are situated in the general Prudhoe Bay - Kuparuk area of the North Slope and represent a range of uses and size. Comparables six and seven are sales of two fee owned sites located on either side of Prudhoe Bay in Barrow and Kaktovik. These sales provide general support for the available value indications in the more comparable Prudhoe Bay - Kuparuk area. They are, however, sales of smaller sites and indicate higher per acre values. The sales were analyzed as follows.

Comparable No. 1 is the grant of a perpetual right of way in January, 1990 of 16.59 acres for $150,000 or $9,042 per acre. This involves mostly relatively flat tundra and a negotiated settlement agreement. The need for the agreement was created when the exploration company relied on an erroneous status map and built certain facilities on a portion of the Grantor's Allotment Claim. Settlement agreement was based on preliminary value of $10,000 per acre.

Comparable No. 2 reflects a 2/93 lease of a 12.0 acre Kuparuk drill site consisting of generally wet tundra type land situated some 40 miles west of Prudhoe Bay. This 25 year lease calls for annual rental payments of $19,200 plus an estimated signing bonus of $25,000 or $2,083 per acre. Including the signing bonus, a value of $18,083 per acre is indicated by this transaction. "Sold" property provides a relatively remote location, inferior access but a much smaller parcel.

Comparable No. 3 reflects the 12/89 lease of a smaller 2.5 acre site situated within the State's North Slope Lease Tracts. With the decline in activity at Prudhoe Bay this is one of a limited number of "current" leases in the area. With an annual rental of $7,623, a land value of $76,230 or $30,492 per acre is indicated.

When compared to the subject site on a per acre basis, the leased parcel is considered to be superior because of its much smaller size.

Comparable No. 4 is the 7/82 lease of a 24 acre site at the south end of the West Dock, near the Prudhoe Bay staging area. This comparable is felt to be similar to the subject. It was leased as a vacant site, it is in a strategic location, and it is fee land administered by Bureau of Indian Affairs. This comparable indicates a relatively high value when compared to similar size sites. Not included in the analysis of this lease is a reported signing bonus paid to the lessor. We were unable to confirm from any of the parties whether this bonus was actually paid.

Comparable No. 5 is the lease of two tideland parcels from the State of Alaska for the causeway used in conjunction with West Dock. This lease is substantially larger than the subject and consists mostly of submerged tidelands. When compared to the subject on a per acre basis, sold property is considered to be inferior. Large upward adjustments are needed for size and topography.

Comparables No. 6 and No. 7 are the sales of two fee lots located on either side of the Prudhoe Bay area. One is situated in Barrow and one in Kaktovik. These sales are considered to be superior when compared to the subject on a price per acre basis but do tend to provide general support for the value indicated by the other available sales.

Land Value Conclusion

Before consideration of property differences and adjustments, the available comparables range widely from $2,535 to $65,407 per acre. Comparable No. 5 on the low end of the range is much larger, consists mostly of submerged tidelands, and is rated as far inferior when compared to the subject on a per acre basis. On the upper end of the range are Comparables 3, 6 and 7. These comparables are much smaller and two are situated in the larger towns of Barrow and Kaktovik. The remaining sales range from about $9,000 to $26,000 per acre and are believed to bracket the per acre value for the subject parcel.

Value Range: After analysis of property differences and the passage of time, giving most weight to the available larger acreage sales of upland parcels, the estimated value range for the subject 40 acre parcel is concluded to be from approximately $16,000 to $18,000 per acre or about $640,000 to $720,000.

Market Value: With the limited market data and extensive use of leases, it is difficult to arrive at a land value using traditional methods. It can be said that the conclusion is somewhat subjective on the part of the appraiser. After analysis, the best available comparables are considered to be No.'s 1, 2 and 4. As noted above, these sales indicate an approximate value range from $9,000 to $26,000 per acre. Comparable No. 1 at the lower end of the range, however, reflects a negotiated settlement agreement resulting from an alleged trespass and should not be weighed heavily. By placing more weight on the remaining sales, giving consideration to the subject's larger size, location and access, the value of the subject 40 acre site is concluded to be $17,000 per acre or $680,000.


BEAUFORT
OCEAN
Subject
140°
142°
144°
146°
148°
150°
152°
154°
156°
158°
Barrow
Tapkaluk Is
Plover Is
Tangent Point
Cape Simpson
Drew Pt
Pitt Point
Cape Halkett
Harrison Bay
Atigaru Point
Jago Spit
Griffin Point
Barter Island
Camden Bay
Flaxman I
Maguire Is
Stockton Is
McClure Is
WHITE HILLS
Canning
MT SALISBURY 6900
ROMANZOF MTS
FRANKLIN MTS
SHUBLIK MTS
THE ARCTIC
NATIONAL PARK
1
2
3
4
5
6
7

COMPARABLE NO. 1

LOCATION: West side of the Kuparuk River south of Simpson Lagoon

LEGAL DESCRIPTION: Westerly portion of Native Allotment F017451 or U.S. Survey No. 9125

GRANTOR: Alfred Leavitt

INSTRUMENT: Perpetual Right of Way

GRANTEE: BP Exploration (Alaska) Inc.

BOOK/PAGE: 985/311-BIA

SALE PRICE: $150,000

DATE OF SALE: January 2, 1990
AGREEMENT: November 29, 1988

TERMS: Cash payment

AREA: 16.59 acres

ZONING: North Slope Borough - Resource Development District

PRESENT USE: Undeveloped

ANTICIPATED USE: Production pad, flare pit, road and pipeline.

ACCESS: Graveled road

ASSESSMENTS: None

UTILITIES: None

EASEMENTS/RESTRICTIONS: None

CONFIRMED WITH: BIA Easement Grant and Settlement Agreement

BY/DATE: RB/12-94

PROPERTY DESCRIPTION: Mostly relatively flat tundra that is traversed by a former river bed and bordered by the Kuparuk River on the east. Land elevations range from sea level on the east to about 30 feet above sea level towards the western portion of the parcel.

ANALYSIS: $150,000 / 16.59 acres = $9,042 per acre

REMARKS: Settlement Agreement between Standard Alaska Production Company (BP Exploration) and Alfred Leavitt which was created when Standard, relying on an erroneous status plat, built certain facilities on a portion of Leavitt's Allotment Claim. Preliminary settlement agreement was made at an approximate total value of $10,000 per acre.

COMPARABLE NO. 2

LOCATION: Harrison Bay east of Colville River

LEGAL DESCRIPTION: Portion of Sections 4 and 5, T.12 N., R.8 E., Umiat Meridian. Native Allotment FF085536

LESSOR: Heirs of Woodrow Ahsogeak INSTRUMENT: Lease Agreement

LESSEE: Arco Alaska, Inc. BOOK/PAGE: 66/981 Barrow Recording Dist.

PRICE: $19,200 per year DATE OF SALE: 2/01/93

TERMS: 25 year lease with option to cancel during first 5 years

AREA: 12+/- acres ZONING: Resource Development District, NSB

PRESENT USE: Undeveloped

ANTICIPATED USE: Production pad, road and pipeline.

ACCESS: Via boat and snowmobile when required ASSESSMENTS: None

UTILITIES: None EASEMENTS/RESTRICTIONS: None

CONFIRMED WITH: BIA and Lease BY/DATE: RB/12-94

PROPERTY DESCRIPTION: Lease of Kuparuk drill site consisting of wet tundra type land. Activities will be from ice road and ice pad. Situated in the Kuparuk area of the North Slope some 40 miles west of Prudhoe Bay.

ANALYSIS: Indicated Land Value:

| | |
|---|---|
| $19,200 / 10% = | $192,000 |
| $192,000 / 12.0 acres = | 16,000 per acre |
| plus possible signing bonus: | |
| $25,000 / 12.0 acres = | 2,083 " " |
| | $18,083 per acre |

REMARKS: Possible lessor bonus of $50,000 if signed before 3/1/93 and $25,000 if signed after 3/1/93.

COMPARABLE NO. 3

LOCATION: Spine Road area of Deadhorse

LEGAL DESCRIPTION: Portion of Tract 24, Section 16, T.10 S., R.15 E., U.M.

LESSOR: State of Alaska

INSTRUMENT: Lease Agreement

LESSEE: Veco, Inc

BOOK/PAGE: File No. 403483

PRICE: $7,623 per year

DATE OF SALE: 12/13/89

TERMS: State land lease

AREA: 2.5 acres

ZONING: Resource Development District, NSB

PRESENT USE: Undeveloped

ANTICIPATED USE: Not disclosed

ACCESS: Via gravel road

ASSESSMENTS: None

UTILITIES: Electricity, sewer & water hauling

EASEMENTS/RESTRICTIONS: Typical

CONFIRMED WITH: State of Alaska

BY/DATE: RB/12-94

PROPERTY DESCRIPTION: Smaller site situated within the State's North Slope Lease Tracts which is a 94 lot subdivision located near the Deadhorse Airport. Site consists of relatively flat tundra type land.

ANALYSIS: Indicated Land Value:

| | |
|---|---|
| $7,623 / 10% = | $76,230 |
| $76,230 / 2.5 acres = | $30,492 per acre |

REMARKS: With the decline in activity at Prudhoe Bay, this is one of the relatively few "current" leases in the area.

COMPARABLE NO. 4

LOCATION: West Dock Staging Area, Prudhoe Bay, Alaska

LEGAL DESCRIPTION: Metes and bounds description known as a portion of Alaska Native Allotment F-11322

LESSOR: Secretary of the Interior on behalf of Walton T. Akmaogak

INSTRUMENT: Lease Agreement

LESSEE: Arco Alaska, Inc.

DATE: 7/1/82

PRICE: Bonus paid of $800,000* at the execution of the lease.
5 year $30,000 year in advance
5 year $45,000 year in advance
5 year $67,500 year in advance
10 year $67,500 year in advance every five year interval

TERMS: 25 years beginning July 1, 1982
Option: 25 years
Option to cancel: at 15 years and each 5 year period thereafter

AREA: 24 acres more or less

ZONING: Resource Development

ACCESS: Via gravel roadway

USE: Undisclosed

UTILITIES: None to site

CONFIRMED WITH: BIA

BY/DATE: MCR/1-88

PROPERTY DESCRIPTION: This is a relatively level parcel located near the staging area at the south end of the west dock causeway. This is about 13 miles northwest of the Deadhorse Airport. This is a standard BIA lease format with terms that are considered above average for the area.

ANALYSIS: Annual Rental of $45,000 per year (as of July 1, 1987) for 5 years paid in advance
$45,000 / 24 acres = $1,875 per acre

Estimated market value of land based on the lease based on a discount cash flow calculation is estimated to be $630,000 (calculation on file).

$630,000 / 24 ac = $26,250/acre

* I was unable to determine if the signing bonus was actually paid at the signing of the lease. The parties involved would not discuss the lease. Since the bonus is not consistent with the other comparables, it is noted but not analyzed. It should also be noted that if the bonus were included, the land and lease value would be higher.

COMPARABLE NO. 5

LOCATION: West Dock Staging Area, West side of Prudhoe Bay, about 10 miles north of Deadhorse Airport, Alaska.

LEGAL DESCRIPTION: ATS No. 944 and 1035, and ADL No. 29513 and 72111.

LESSOR: State of Alaska INSTRUMENT: Lease Agreement

LESSEE: Atlantic Richfield (ARCO) DATE: 10/80

LEASE TERM: 40 years

ANNUAL RENT: $32,400 (combined) AREA/ACRES: Total 141.952 acres
ATS No. 944 contains 60.972 acres
ATS No. 1035 contains 80.98 acres

CONFIRMED WITH: DNR BY/DATE: JRD/4/85

PROPERTY DESCRIPTION: This is the summary of two ATS leases of sites comprising the West Dock at Prudhoe Bay. These leases are located adjacent to the prior comparable number. ATS No. 944 contains tidelands and is accessible by roadway to Deadhorse. ATS No. 1035 is a completely submerged extension of ATS No. 944. As part of the primary docking facility for the whole Prudhoe Bay area, it is highly strategic with respect to development and operation of the oil fields. It is also close to Deadhorse Airport and the Haul Road. The lease rate was established by appraisal, put up for bidding with ARCO the only bidder.

ANALYSIS: ATS No. 944 = $240/acre/year
ATS No. 1035 = $220/acre/year

Indicated market value of the land based on the lease.

$32,400 / 9% capitalization rate = $360,000

Indicated value per acre

$360,000 / 142 acres (Rd.) = $2,535/acre

COMPARABLE NO. 6

LOCATION: South of the Barrow Airport

LEGAL DESCRIPTION: Lot 2, resubdivision of Block B US Survey 4615, Barrow Alaska.

GRANTOR: City of Barrow

INSTRUMENT: W/D

GRANTEE: North Slope Borough

BOOK/PAGE: 49/364

SALE PRICE: $400,000

DATE OF SALE: 4/87

TERMS: Cash

ZONING: Unrestricted

AREA: 8.35 acres

USE: Vacant

ACCESS: Gravel road

UTILITIES: All available

CONFIRMED WITH: D. Trosper BIA BY/DATE: MCR/1-88

PROPERTY DESCRIPTION: Typical tundra lot located south of the Barrow Airport with all utilities available.

ANALYSIS: $400,000 / 8.35 acres = $47,904/acre

COMPARABLE NO. 7

LOCATION: 4th Street south - Kaktovik

LEGAL DESCRIPTION: Tract F, Kaktovik Townsite

GRANTOR: City of Kaktovik INSTRUMENT: W/D

GRANTEE: North Slope Borough BOOK/PAGE: 47/538

SALE PRICE: $168,750 DATE OF SALE: 10/30/86

TERMS: Cash ZONING: Unrestricted

AREA: 2.58 acres PRESENT USE: USDW Building

ACCESS: Gravel road

UTILITIES: Electricity and telephone

CONFIRMED WITH: Rich Sampson, NSB BY/DATE: MCR/1/88

PROPERTY DESCRIPTION: This is a typical North Slope lot with permafrost soils and level topography. The USDW Building was constructed in 1987 on the site. It was not filled at the date of sale.

ANALYSIS: $168,750 / 2.58 acres = $65,406/acre

CERTIFICATE OF APPRAISAL

I certify that, to the best of my belief, . . .

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, unbiased professional analyses, opinions, and conclusions.

3. I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

4. My compensation is not contingent on an action or event resulting from the analyses, opinions, or conclusions in, or the use of, this report.

5. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics and Standards of Professional Practice of the Appraisal Institute.

6. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

7. I am currently certified under the voluntary continuing education program of the Appraisal Institute.

8. I have not made a personal inspection of the property that is the subject of this report.

9. No one provided significant professional assistance in the preparation of this report.

10. The appraisal assignment was not based on a requested minimum valuation, a specific valuation, or the approval of a loan and the appraiser is competent and qualified to perform the appraisal assignment.

Roger N. Bonnett

Roger N. Bonnett, MAI
Appraisal Company of Alaska

# QUALIFICATIONS OF APPRAISER

Roger N. Bonnett, MAI

## EDUCATION

Graduated from Sacramento State College, Sacramento, California with a degree in Business Administration, 1956.

## SPECIAL TRAINING

Two-week concentrated courses in the "Appraisal of Real Property" sponsored by the California State Board of Equalization 1957-1961.

American Institute of Real Estate Appraisers Courses:

Course I, "Basic Real Estate Appraisal Course", Stockton, California, 1959

Course II, "Appraisal of Urban Properties", Santa Clara, California, 1960.

Course IV, "Condemnation Appraising", Los Angeles, California, 1963

Course V, "Grazing and Recreational Lands", Las Cruces, New Mexico, 1965.

Course VI, "Mortgage-Equity Capitalization", San Francisco, California, 1973

1987 FHLBB R41c Seminar, AIREA

University of California Extension Course X489, "Advanced Rural Appraisal", Sacramento, California 1964.

Continuing Education: Certified under the American Institute of Real Estate Appraiser's voluntary program of continuing education by attendance at recent seminars or courses.

## BUSINESS EXPERIENCE

Fee Appraiser - Associated with Appraisal Company of Alaska since 1976

Independent Appraiser and Consultant serving the Lake Tahoe and Truckee-Donner areas of California, 1975

Fee Appraiser - Associated with Wakeland & Norene, Inc., and Real Estate Services Corporation, Anchorage, Alaska 1973-1974

REPRESENTATIVE CLIENTS APPRAISAL COMPANY OF ALASKA

Alaska Federal Savings & Loan
Alaska Railroad Corporation
Alaska Housing Finance Corp.
Alaska State Housing Authority
Alaska USA Federal Credit Union
Aleut Corporation
Allstate Insurance Company
Alyeska Pipeline Service Co.
ARCO
Bering Strait Native Corp.
Bristol Bay Borough
Chem Exec Relocation
Chevron USA
City of Bethel
City of Cordova
City of Dillingham
City of Kotzebue
City of Nome
City of Seward
City of Unalaska
City of Valdez
City of Wasilla
City of Whittier
Central Alaska Utilities
Continental Insurance Company
Cook Inlet Properties, Inc.
Crowley Maritime Corp.
Digicon, Inc.
Dupont, Inc.
Exxon, Inc.
FedAlaska Federal Credit Union
Federal Deposit Insurance Corp.
Federal Home Loan Mortgage Corp.
Federal Housing Administration
Federal National Mortgage Assoc.
Federal Veterans Administration
Federal Savings & Loan Insurance
  Corporation
First National Bank of Anchorage
Foster and Marshall, Inc.
Frontier Alaska Credit Union
Homequity Relocation Inc.
Howard Relocation Group
GMAC Mortgage
Investors Mortgage Insurance
IBM Corporation
Kenai Native Association
Key Bank of Alaska
Kijik Corporation
Kodiak Electric
Kodiak Island Borough
Koniag, Inc.
Marathon Oil Company
Matanuska-Susitna Borough
McDonalds of Alaska
Merrill Lynch Relocation Service
Mortgage Guarantee Insurance
  Corporation
Municipality of Anchorage
NANA Development Corporation
National Bank of Alaska
North Slope Borough
Norwest Financial
Phillips Petroleum
Professional Relocation
Record Data
Seafirst Mortgage
Security Pacific Bank
Seldovia Native Association
Standard Oil Co. of California
State of Alaska
  Division of Agriculture
  Division of Aviation
  Division of Lands
  Division of Parks
  Division of Veteran's Affairs
Texas Commerce Bank
Texaco
Ticor Mortgage Insurance
Travelers Relocation
United States Coast Guard
United States Department of the
  Interior
  Bureau of Indian Affairs
  Bureau of Land Management
  Fish & Wildlife
  National Park Service
University of Alaska
USARAL Federal Credit Union

Numerous other private clients including developers, attorneys and real estate brokers.

Appraisal Company of Alaska

# ATTACHMENT No. 39

COPY

# REVIEWER'S APPRAISAL ANALYSIS

(For use by Staff Appraiser in Reviewing Appraisal Reports)

**PURPOSE OF APPRAISAL**
- [ ] IN-LEASE
- [ ] ACQUISITION
- [ ] TRANSFER
- [ ] OUT-LEASE
- [ ] DISPOSAL
- [x] Sale

**APPRAISER:** Roger N. Bonnet, MAI

**FEE:** $ NA

**TYPE OF PROPERTY:** 40-Acre Oil and Gas Production

**CONTRACT NO.:** NA

**CONTRACT DATE:** NA

**TIME ALLOWED:** NA

**NAME AND ADDRESS OF PROPERTY:** Heirs of Andrew Oenga, Heald Point, Prudhoe Bay, Alaska

Office of the Regional Solicitor
Alaska Region
... 15 ... Received

**EFFECTIVE DATE OF REPORT:** December 5, 1994

**DATE REVIEWED:** December 21, 1994

**REVIEWER:** JRL John R. Cress, SRA, State Certification No. AA54

**APPRAISED VALUE:** $680,000

**CASE NO.:** 95-105

## INSTRUCTIONS

Items 1 through 45 are provided as an aid in answering Major Questions in Part VII.
Explain all negative answers on reverse (Part VIII). Comment fully on inadequacies and recommendations.

E — Excellent — Meets or exceeds specifications.
A — Adequate — Meets minimum needs. Clarification may be desirable.
I — Inadequate — Does not meet needs. Revision or clarification necessary.

| Section | ITEM | E | A | I |
|---|---|---|---|---|
| I. FORM AND PRESENTATION | 1. CONFORMANCE TO GSA SPECIFICATIONS *(As to format, inclusion and sequence of all significant items)* | | X | |
| | 2. AREA, CITY, NEIGHBORHOOD DATA | | X | |
| | 3. LEGAL DESCRIPTION INCLUDED? [X] YES [ ] NO | | X | |
| | 4. PROPERTY DESCRIPTION, CONDITION, AND ADAPTABLE USE | | X | |
| | 5. ~~XXXXXXXXXXXXXXXXXX~~ PLANS, PHOTOS AND MAPS | | X | |
| | 6. CERTIFICATION - STANDARD CLAUSES, SIGNATURE AND DATE | | X | |
| II. DELINEATION OF ASSIGN. | 7. PURPOSE, INCLUDING DEFINITION OF VALUE | | X | |
| | 8. HIGHEST AND BEST USE - FOR LAND - FOR TOTAL PROPERTY | | X | |
| | 9. STATEMENT OF LIMITING CONDITIONS | | X | |
| III. ANALYSIS AND TECHNIQUE | A. LAND VALUE BY COMPARISON | | | |
| | 10. ADEQUATE LISTINGS | | X | |
| | 11. DATE AND CONDITIONS OF EACH SALE | | X | |
| | 12. SAME LIST ADJUSTED TO CURRENT MARKET | | X | |
| | 13. SIMILARITIES AND DIFFERENCES WITH SUBJECT PROPERTY | | X | |
| | 14. LOGICAL CONCLUSION | | X | |
| | 15. MAP SHOWING COMPARABLES | | X | |
| | B. LAND RESIDUAL TECHNIQUE *(If used)* | | | |
| | 16. LOGICAL CONCLUSION | NA | | |
| | C. COST APPROACH | | | |
| | 17. COST ESTIMATES | NA | | |
| | 18. DEPRECIATION - PHYSICAL | NA | | |
| | 19. DEPRECIATION - FUNCTIONAL | NA | | |
| | 20. DEPRECIATION - ECONOMIC | NA | | |
| | 21. LAND VALUE ADDED? [ ] YES [ ] NO | NA | | |
| | 22. SUMMATION VALUE | NA | | |
| | D. INCOME APPROACH | | | |
| | 23. GROSS ANNUAL RENT BY COMPARISON | NA | | |
| | 24. VACANCY AND CREDIT LOSS | NA | | |
| | 25. EXPENSE AND FIXED CHARGES INCLUDING RESERVES FOR REPLACEMENT | NA | | |
| | 26. NET ANNUAL INCOME FROM RENT | NA | | |
| | 27. METHOD OF CAPITALIZATION | NA | | |
| | 28. CAPITALIZATION DATE - JUSTIFIED | NA | | |
| | 29. VALUE | NA | | |

| Section | ITEM | E | A | I |
|---|---|---|---|---|
| III. ANALYSIS AND TECHNIQUE (Con.) | E. MARKET APPROACH | | | |
| | 30. LIST OF SALES AND OFFERINGS | | X | |
| | 31. SAME LIST ADJUSTED TO CURRENT MARKET | | X | |
| | 32. SPECIAL CONDITIONS TO EACH SALE | | X | |
| | 33. RELATION OF SALE OR OFFERING TO SUBJECT PROPERTY - SIMILARITIES AND DIFFERENCE WEIGHTED | | X | |
| | 34. VALUE INDICATED AND JUSTIFICATION | | X | |
| IV. MACHINERY AND EQUIPMENT | 35. DESCRIPTION AND CONDITION | NA | | |
| | 36. ANALYSIS OF UTILITY | NA | | |
| | 37. VALUE FOR IN-PLACE USE *(If applicable)* | NA | | |
| | 38. VALUE FOR OFF-SITE USE " " | NA | | |
| | 39. FAIR RENTAL ESTIMATE " " | NA | | |
| V. FAIR RENTAL | 40. LOGICAL RELATIONSHIP TO COMPARABLES | NA | | |
| | 41. BASED ON INTEREST PLUS CAPITAL RECAPTURE *(If applicable)* | NA | | |
| | 42. DOES ESTIMATE REFLECT CONTEMPLATED LEASE PROVISIONS? [ ] YES [ ] NO | NA | | |
| VI. CORRELATION & VALUE | 43. CORRELATION OF ESTIMATES | | | |
| | 44. THE APPROACH THAT IS CONTROLLING: Market Comparison | | X | |
| | 45. VALUE CONCLUSION | | X | |

| Section | ITEM | YES | NO |
|---|---|---|---|
| VII. OVERALL EFFECTIVENESS | 46. IS THE APPRAISAL PROBLEM CLEARLY STATED? | X | |
| | 47. IS THE PROPERTY ACCURATELY DELINEATED AND DESCRIBED? | X | |
| | 48. IS THE BEST AND MOST PROFITABLE USE OF THE PROPERTY STATED, & USED FOR BASIS OF VALUE? | X | |
| | 49. IS SUPPORTING DATA ACCURATE? | X | |
| | 50. IS CONCLUSION LOGICALLY RELATED TO SUPPORTING DATA? | X | |
| | 51. ARE ALL ESSENTIAL ITEMS INCLUDED? | X | |
| | IS THE REPORT RECOMMENDED: | | |
| | 52. AS A BASIS FOR CONTEMPLATED ACTION? | X | |
| | 53. WITHOUT FURTHER CLARIFICATION? | X | |
| | 54. FOR FEE PAYMENT? | X | |
| | AS EVIDENCED BY THIS REPORT: | | |
| | 55. DOES THE APPRAISER'S PANEL RATING SEEM APPROPRIATE? | X | |
| | 56. WOULD YOU RECOMMEND THIS APPRAISER FOR OTHER SIMILAR ASSIGNMENTS? | X | |

Purpose: To review the subject report, to assure it is supported objectively with selected and documented data that is logically analyzed to obtain a reasonable opinion of value.

Appraisal Report: Dated December 5, 1994, by Roger N. Bonnett, MAI, of Appraisal Company of Alaska, Anchorage, Alaska.

Legal Description: U.S. Survey No. 6904, Prudhoe Bay, Alaska.

Highest and Best Use: Oil and Gas Production or Development

Review Analysis: I have reviewed this report for compliance with Federal and Professional Standards (USPAP) issued by Appraisal Foundation. The subject is described and documented in a narrative summary report with maps and photographs.

In the valuation analysis, the appraiser utilized the Market Comparison Approach to support the appraisal value. The Market Comparison Approach was given the most weight which appears to be in perspective with similar properties in the competitive market place of the subject. The income approach, using the present contract rent of this leased parcel, was not explored; but the market comparison is considered the most accurate approach to rely on.

1. I noted one inconsistency in the appraiser's analysis and that was in the analysis of the comparables. The capitalization rate of 10% was used to arrive at the sales price for comparison purposes, but in the case of Comparable No. 5. he used 9% capitalization rate. The matter does not affect the appraiser's value estimate though.

2. I did not find any justification and support discussion for the capitalization rate (lease rate) used by the appraiser. From my own study of the lease rates in Alaska that I did in 1990 called Market analysis of Surface leases for Native Allotments in Alaska, I found a wide range of rates used. I will point out that two of the largest surface lessors in the Alaska Railroad and B.L.M. both use 8% of market value. As a matter of fact, the B.L.M. just re-evaluated all of the leases along the Trans Alaska Pipeline. They adjusted the annual rent by estimating market value and multiplying by .08 to get annual rent. These leases are all long-term leases which tend toward lower lease rates.

   The lease document shows the lessee has an option to cancel at the end of each 5 years, effectively becoming a 5-year lease. The short-term leases drive the rates higher. Therefore, a lease rate of 11% would provide a market value of $80,640 divided by 0.11 = $733,091, and 12% rate would give a market value of $672,000, proving the appraisal submitted as reasonable.

I used the Ellwood Tables for annual 10% and 11% compounded interest table Column No. 4 - Present Value Reversion of 1, projected over the 20-year term of the loan indicates a present value of the lease to be $755,187. I point out that 10% is consistent with the appraiser's market comparables rate.

Present Value of Lease

| Year | 10% Reversion | | 11% Reversion | |
|---|---|---|---|---|
| 1995 | $ 80,640 | | $ 80,640 | |
| 1996 | 73,309 | | 72,649 | |
| 1997 | 66,645 | | 65,449 | |
| 1998 | 60,586 | | 58,963 | |
| 1999 | 55,078 | $336,258 | 53,120 | $330,821 |
| 2000 | 50,071 | | 47,856 | |
| 2001 | 45,519 | | 43,113 | |
| 2002 | 41,381 | | 38,841 | |
| 2003 | 37,619 | | 34,992 | |
| 2004 | 34,199 | $545,047 | 31,524 | $527,147 |
| 2005 | 31,090 | | 28,400 | |
| 2006 | 28,264 | | 25,586 | |
| 2007 | 25,694 | | 23,050 | |
| 2008 | 23,359 | | 20,766 | |
| 2009 | 21,235 | $647,689 | 18,708 | $643,657 |
| 2010 | 19,305 | | 16,854 | |
| 2011 | 17,550 | | 15,184 | |
| 2012 | 15,954 | | 13,679 | |
| 2013 | 14,504 | | 12,324 | |
| 2014 | 13,185 | | 11,102 | |
| Present Value | $755,187 | | $712,800 | |

The re-negotiated lease is for 20 years with an option to cancel or review in 5-year intervals. The income stream shown above has been discounted showing the present value of the income stream. This present range of value is the amount the present lease is worth and what a buyer would be expected to pay for this lease today. The lessee is a very safe risk to continue to make timely payments, except the fact that the lessee has the option to cancel after each five years, making the income stream a higher risk, thus a higher rate, say 10% to 12%.

4. I noticed the appraiser listed a range of value as a purpose of his appraisal that range being $640,000 to $720,000. And then he estimated the market value to be at $680,000 with very little explanation or justification for the selected amount.

I find the appraiser's estimate of market value and range of value to be slightly on the conservative side when valuing the subject property. While I accept the appraisal as meeting the standards, I do so with the points of information as noted.

Conclusion: The market value, in fee simple interest, of the subject, as of December 21, 1994, is in the range of $640,000 to $720,000.

I certify that I have examined the above appraisal report for the above real estate. It is my opinion that the appraiser has applied reasonable methodology in analyzing data to reach a conclusion. I concur with the appraiser's estimate of value as stated, $680,000.

The approval of the appraisal value does not limit or restrict the owners in negotiating for a higher amount.

12/23/94
Date

John R. Cress, Review Appraiser

Field Inspection ☐ Did ☒ Did Not

12/23/94
Date Approved

J. Richard Larson, Area Chief Appraiser

APPRAISER - CLIENT PRIVILEGED/WORK PRODUCT
DO NOT RELEASE WITHOUT PROPER AUTHORIZATION

# AGREEMENT TO AMEND BIA LEASE F-89-01

This Agreement is made and entered into by and between Leroy Oenga, Wallace Oenga and Michael M. Delia whose address is P. O. Box 201, Barrow, Alaska 99723, Georgene Shugluk whose address is P. O. Box 91003, Atqasuk, Alaska 99791 and Jenny Oenga whose address is 309 Paystreak, Fairbanks, Alaska who are the immediate heirs and successors in interest of Andrew Oenga ("Lessors") [with the approval of the Secretary of the Department of the Interior ("the Secretary")] and BP Exploration (Alaska) Inc., the successor in interest to Standard Alaska Production Company ("Lessee") whose mailing address is P. O. Box 196612, Anchorage, Alaska 99519-6612 all of whom are collectively hereinafter are referred to as the ('Parties").

**Whereas,** the Lessee has previously leased a 20 acre portion of Lessor's Parcel B of Native Allotment F-14632 under provisions of BIA Lease F-89-01 (as amended) ("Lease") from the Lessors; and

**Whereas,** the Lessee desires to exercise its rights under the Paragraph 11 of the Lease to increase the size of the Leased Premises to include the entirety of Parcel B of Native Allotment F-14632; and

**Whereas,** the Lessors desire to lease the remaining unleased 20 acres of Parcel B to the Lessee; and

**Whereas,** the Parties desire to provide that lease rental payments be made in biennially instead of annually; and

**Whereas,** the Parties desire to provide for lease rental adjustments every four years instead of every five years: and

**Whereas,** the Parties desire that the Lease reflect the current heirs and successors in interest of the original Lessor and Lessee; and

**Whereas,** the Parties desire to amend the Lease to reflect the contractual relationship between the Arctic Slope Native Association Limited ("ASNA") and the Bureau of Indian Affairs ("BIA") wherein ASNA performs certain administrative realty related services on the behalf of the BIA; and

**Now Therefore,** in consideration of the mutual promises and covenants contained herein, the Parties agree as follows:

**<u>Lease Preamble</u>**

The description of the Leased Premised in the Lease Preamble is revised to read "The Leased Premises consists of the entire Parcel B of Alaska Native Allotment F-14632 legally described as USS 6904 T11N, R15E UM Sec. 1 and T12N, R15E UM Sec. 36."

**<u>Paragraph 4. - Lease Rentals</u>**

The last sentence in Paragraph 4 is revised to read "Lease rental payments are due on the anniversary date of the lease and are due and payable sixty (60) days in

advance for the next succeeding biennial period beginning with the rental payment due January 1, 1994 for the period January 1, 1994 through December 31, 1995. Lessee shall continue to make rental payments on a biennial basis sixty days before the anniversary date of the Lease. Lessors shall make no additional claims, requests or demands of Lessee for Lease rental payments, rental payment adjustments or rental payment advances except as set forth in paragraph 5."

**Paragraph 5. - Lease Rental Adjustments**

The first sentence in Paragraph 5 is revised to read "Rental payments may be increased at successive four-year intervals beginning in the sixth year after rental payments have begun".

**Paragraph 12.**

Paragraph 12 is revised to read :

"The Lessee, at its sole expense, shall keep the leased premises, and any improvements placed thereon, in good order and repair, ordinary wear and tear excepted; provided however that this provision shall not in any manner be construed so as to require the Lessee to protect the Leased Premises from natural erosion beyond the measures which, in its sole discretion, it deems necessary to protect its improvements placed thereon.

**Paragraph 13.**

The following paragraph is added to Paragraph 13:

"The Lessee shall provide written notice to the Lessor and to the Arctic Slope Native Association Limited if the Leased Premises are subleased. For the purposes of this Agreement, a sublease shall not include (a) facility sharing agreements or other transactions which do not convey an interest in real property, (b) any interest in the mineral estate underlying this Surface Lease or (c) any use of State of Alaska tidelands adjacent to the Leased Premises."

**Paragraph 15. Option to Cancel**

The second sentence in Paragraph 15 is revised to read:

"Such cancellation will be effective upon written notice to the Lessor and the Arctic Slope Native Association Limited in Barrow, Alaska not less than ninety (90) days prior to the end of each five (5) year period."

**Paragraph 31. Notices**

Item (a) is revised to read:

"Realty Officer, Arctic Slope Native Association Limited, P. O. Box 1232, Barrow, Alaska 99723."

Item (b) is revised to read;

"Mr. Leroy Oenga
P. O. Box 201
Barrow, AK 99723

Mr. Michael M. Delia
P. O. Box 201
Barrow, AK 99723

Ms. Georgene Shugluk
P. O. Box 91003
Atqasuk, AK 99791

Mr. Wallace Oenga
P. O. Box 201
Barrow, AK 99723

Ms. Jenny Oenga
c/o 309 Paystreak
Fairbanks, AK 99712"

Item (c) is revised to read:

"BP Exploration (Alaska) Inc. Attn. Land Manager
P. O. Box 196612
Anchorage, AK 99519-6612"

**Effective Date of This Agreement**

This Agreement shall be effective when fully executed and approved by the Secretary; provided however, that the Lessee's election to increase the size of the Leased Premises shall be deemed effective on July 1, 1993 for the purposes of calculating rental payments pursuant to Paragraph 11 of the Lease.

**Entire Agreement**

This Agreement constitutes the entire agreement between the Parties in so far as this Lease amendment is concerned and supersedes any previous understandings whether written or oral. With the exception of the Lease amendments described above, the remaining provisions of Lease remain unchanged.

Agreement to Amend
BIA Lease F-89-01

In Witness Whereof, the Parties have executed this Agreement on the dates below their respective signatures.

FOR THE LESSOR

Wallace Oenga 1-17-94 Date

Leroy Oenga Sr. 1/17/94 Date

Jenny Oenga 1/18/94 Date

Michael M. Delia 1-17-94 Date

Georgene Shugluk 1-17-94 Date

FOR THE LESSEE

Jack E. Golden Date
Vice President Endicott and
Development Programs

FOR THE SECRETARY

The within Lease Amendment is hereby approved, pursuant to the authority delegated by 209 DM 8 dated November 17, 1981, Secretary's Order No. 3150 dated May 11, 1992, as amended March 5, 1993, and 10 BIAM Bulletin 13, dated November 19, 1992, as amended April 8, 1993, and the Addendum to 10 BIAM 3, dated January 17, 1989.

Samuel Demientieff, Superintendent 1-20-94 Date
Bureau of Indian Affairs
Fairbanks, Agency

Agreement to Amend
BIA Lease F-89-01

# ACKNOWLEDGEMENTS

STATE OF ALASKA )
) ss.
SECOND JUDICIAL DISTRICT )

THIS IS TO CERTIFY that on this the 17 day of January, 1994 before me the undersigned, a Notary Public for the State of Alaska personally appeared Leroy Oenga, and Michael M. Delia, and executed the foregoing document. WITNESS my hand and official seal this 17 day of January, 1994 at Barrow, Alaska.

OFFICIAL SEAL
DIANE L. STEVENS
NOTARY PUBLIC
BARROW, ALASKA
My Comm. Expires July 29, 1997

Diane L. Stevens
NOTARY PUBLIC FOR ALASKA

My commission expires: 7/29/97

STATE OF ALASKA )
) ss.
FOURTH JUDICIAL DISTRICT )

THIS IS TO CERTIFY that on this the 18th day of Jan, 1994 before me the undersigned, a Notary Public for the State of Alaska personally appeared Jenny Oenga, and executed the foregoing document. WITNESS my hand and official seal this 18th day of Jan., 1994 at Fairbanks, Alaska.

OFFICIAL SEAL
KATHLEEN F. DICKINSON
NOTARY PUBLIC
FAIRBANKS, ALASKA
My Comm. Expires January 27, 1996

[signature]
NOTARY PUBLIC FOR ALASKA

My commission expires: 1/27/96

STATE OF ALASKA )
) ss.
SECOND JUDICIAL DISTRICT )

THIS IS TO CERTIFY that on this the 17 day of January, 1994 before me the undersigned, a Notary Public for the State of Alaska personally appeared Wallace Oenga, and executed the foregoing document. WITNESS my hand and official seal this 17 day of January, 1994 at Barrow, Alaska.

OFFICIAL SEAL
DIANE L. STEVENS
NOTARY PUBLIC
BARROW, ALASKA
My Comm. Expires July 29, 1997

Diane L. Stevens
NOTARY PUBLIC FOR ALASKA

My commission expires: 7/29/97

Agreement to Amend
BIA Lease F-89-01

STATE OF ALASKA )
) ss.
Second JUDICIAL DISTRICT )

THIS IS TO CERTIFY that on this the 17 day of January, 1994 before me the undersigned, a Notary Public for the State of Alaska personally appeared Georgene Shugluk, and executed the foregoing document. WITNESS my hand and official seal this 17 day of January, 1994 at Barrow, Alaska.

OFFICIAL SEAL
DIANE L. STEVENS
NOTARY PUBLIC
BARROW, ALASKA
My Comm. Expires July 29, 1997

Diane L Stevens
NOTARY PUBLIC FOR ALASKA

My commission expires: ~~12/7/98~~ 7/29/97

STATE OF ALASKA )
) ss.
THIRD JUDICIAL DISTRICT )

The foregoing instrument was acknowledged before me this 13th day of January 1994, by Jack E. Golden, the Vice President of Endicott and Development Programs of BP Exploration (Alaska) Inc., a Delaware corporation, on behalf of the Corporation.

Dawn R. Conatser
NOTARY PUBLIC FOR ALASKA

My commission expires: 8/14/96



** TOTAL PAGE.007 **

# OFFER TO PURCHASE

Date: December 20, 1994

I, BP Exploration (Alaska) Inc. of 900 East Benson Boulevard Anchorage, Alaska 99519-6612, hereby offer to purchase Parcel B of Alaska Native Allotment F-14632 described as US Survey 6904 from the heirs of Andrew Oenga being Jenny Oenga, Leroy Oenga, Wallace Oenga, Georgene Shugluk and Michael M. Delia for $680,000.00 less prepaid rental proceeds for 1995 in the amount of $80,000 due under provisions of Bureau of Indian Affairs Surface Lease F-89-01.

The agreed upon terms of this sale is a cash sale for $600,000.00 payable upon written acceptance of this Offer to Purchase. It is understood that the funds will not be released to the owners until a Warranty Deed is approved by the Area Director of the Bureau of Indian Affairs.

BP Exploration (Alaska) Inc.

by: A N Bolea

A. N. Bolea, Niakuk Asset Manager

12/20/94

Date

**STATE OF ALASKA** )
)ss
Third **JUDICIAL DISTRICT** )

The foregoing instrument was acknowledged before me this 20th day of December, 1994, by A. N. Bolea, Asset Manager for BP Exploration (Alaska) Inc.

Marcia R Davis

**NOTARY PUBLIC FOR ALASKA**

My Commission Expires: 2-28-96

B-105

| | |
|---|---|
| **REQUEST FOR REAL ESTATE APPRAISAL- **REVIEW****<br>BUREAU OF INDIAN AFFAIRS<br>TO: CHIEF APPRAISER<br>DATE: December 20, 1994 | *AGENCY:* Fairbanks<br>*VILLAGE:* Barrow<br>*ALLOTMENT:* FF014632 Pcl B<br>*REQUEST NO:* F95-31 |

*TRANSACTION TYPE:* Sale

*OWNER:* The Heirs of Andrew Oenga

*APPRAISAL TO ESTIMATE* fair market *VALUE OF A* fee *INTEREST IN THE FOLLOWING PROPERTY*

*LEGAL DESCRIPTION:* USS Survey 6904 located in T. 11N R. 15 E section 1, containing 16.85 acres and T. 12N R. 15E section 36, containing 23.16 acres.

| | | |
|---|---|---|
| LEASE (effective date) 1/1/89 | TYPE Long Term lease with BP Exploration for oil development facilities | DATE OF EXPIRATION 12/31/2014 w/ option to extend for another term |
| ANNUAL RENTAL $80,320.00 | ADJUSTMENTS 5 year increments | IMPROVEMENTS REQUIRED |

OTHER LEASE PROVISIONS

| | | |
|---|---|---|
| RIGHT-OF-WAY | TYPE | TERM |

CONDITIONS

| | |
|---|---|
| *LAND CHARACTER* Remote parcel near Prudhoe Bay | *IMPROVEMENTS TO BE APPRAISED -* NO |

*SPECIAL INSTRUCTIONS*

**Please review the Appraisal which will be delivered to your office under separate cover by BP Exploration**

| | |
|---|---|
| REQUEST STATUS:<br>Received DEC 26 1994<br>Assigned DEC 20 1994<br>Appraised<br>Recommended<br>Approved<br>Transmitted<br>Appraiser Roger N. Bonnet<br>Reviewer JRC<br>JRL | *THE SUPERINTENDENT HAS REVIEWED THE NEED FOR APPRAISAL OF THE DESCRIBED PROPERTY FOR THE PURPOSE INDICATED AND CERTIFIES THAT THE APPRAISAL IS NEEDED AND REQUESTS THAT IT BE PREPARED ON A ** RUSH *PRIORITY BASIS*<br>(2)<br>*Insert the required priority:<br>ROUTINE - Appraisal will be done in the order requested<br>RUSH - Prepare appraisal ahead of my other requests<br>SIGNATURE<br>**SUPERINTENDENT, FAIRBANKS AGENCY**<br>- Appraisal Company of Alaska |

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS
BRANCH OF REALTY, APPRAISALS SECTION
JUNEAU AREA OFFICE, ALASKA

# RESTRICTED APPRAISAL REPORT-LIMITED APPRAISAL

This is a Restricted Appraisal Report which is intended to comply with the reporting requirements set forth under Standards Rule 2-2(c) of the Uniform Standards of Professional Appraisal Practice for a Restricted Appraisal Report. As such, it presents no discussions of the data, reasoning, and analyses that were used in the appraisal process to develop the appraiser's opinion of value. Supporting documentation concerning the data, reasoning, and analyses is retained in the appraiser's file. The depth of discussion contained in this report is specific to the needs of the client and for the intended use stated below. The appraiser is not responsible for unauthorized use of this report.

Furthermore, in accordance with prior agreement between the client and the appraiser, this report is the result of a limited appraisal process in that certain allowable departures from specific guidelines of the Uniform Standards of Professional Appraisal Practice were invoked. The intended user of this report is warned that the reliability of the value conclusion provided may be impacted to the degree there is departure from specific guidelines of USPAP.

SUPPLEMENT TO

**Appraisal Report** dated December 5, 1994, by Roger N. Bonnett, MAI, of Appraisal Company of Alaska, Anchorage, Alaska, reviewed by John R. Cress, Staff Appraiser, dated December 23, 1994, setting forth the market value estimated for U.S. Survey No. 6904, Prudhoe Bay, Alaska.. The subject is located at Heald Point. Site inspection was completed by aerial photo of the subject.

The purpose of this supplement is to certify the appraised market value as of May 6, 1997 for a lease.

**Owner**: Heirs of Andrew Oenga — **Allotment No.**: F-14632B

**Realty Office**: ASNA — **Appraisal No.**: 97-184

**Legal Description**: U.S. Survey No. 6904, Prudhoe Bay, Alaska.

**Property Rights**: Fee Simple Estate

**Size of Subject**: 40 Acres

**Highest & Best Use**: Industrial / Oil Well Drilling Site & Staging Area

**Findings**: A review of the current real estate market for properties similar to this property indicates a change in the previously estimated market value. Information supporting this conclusion is retained on file.

The estimated market value as of May 6, 1997 is $714,000.
The annual lease @ 12% as of May 6, 1997 is $ 85,680.

5/14/97
Date

J. Richard Larson
J. Richard Larson, Area Chief Appraiser

MAY 14 1997
Date Approved

Field Inspection ☐ Did ☑ Did Not Inspect Property.

APPRAISER - CLIENT PRIVILEGED/WORK PRODUCT
DO NOT RELEASE WITHOUT PROPER AUTHORIZATION

The Ellwood Tables were used for annual 10% and 11% compounded interest table Column No. 4 - Present Value Reversion of 1, projected over the 20-year term of the loan indicates a present value of the lease to be $755,187. I point out that 10% is consistent with the appraiser's market comparables rate.

| Present Value of Lease | | | | |
|---|---|---|---|---|
| Year | 10% Reversion | | 11% Reversion | |
| 1995 | $ 80,640 | | $ 80,640 | |
| 1996 | 73,309 | | 72,649 | |
| 1997 | 66,645 | | 65,449 | |
| 1998 | 60,586 | | 58,963 | |
| 1999 | 55,078 | $336,258 | 53,120 | $330,821 |
| 2000 | 50,071 | | 47,856 | |
| 2001 | 45,519 | | 43,113 | |
| 2002 | 41,381 | | 38,841 | |
| 2003 | 37,619 | | 34,992 | |
| 2004 | 34,199 | $545,047 | 31,524 | $527,147 |
| 2005 | 31,090 | | 28,400 | |
| 2006 | 28,264 | | 25,586 | |
| 2007 | 25,694 | | 23,050 | |
| 2008 | 23,359 | | 20,766 | |
| 2009 | 21,235 | $647,689 | 18,708 | $643,657 |
| 2010 | 19,305 | | 16,854 | |
| 2011 | 17,550 | | 15,184 | |
| 2012 | 15,954 | | 13,679 | |
| 2013 | 14,504 | | 12,324 | |
| 2014 | 13,185 | | 11,102 | |
| Present Value | $755,187 | | $712,800 | |

The re-negotiated lease is for 20 years with an option to cancel or review in 5-year intervals. The income stream shown above has been discounted showing the present value of the income stream. This present range of value is the amount the present lease is worth and what a buyer would be expected to pay for this lease today. The lessee is a very safe risk to continue to make timely payments, except the fact that the lessee has the option to cancel after each five years, making the income stream a higher risk, thus a higher rate, say 10% to 12%.

In the valuation analysis, the appraiser utilized the Market Comparison Approach to support the appraisal value. The Market Comparison Approach was given the most weight which appears to be in perspective with similar properties in the competitive market place of the subject. The income approach, using the present contract rent of this leased parcel, was not explored; but the market comparison is considered the most accurate approach to rely on. No new sales were found in the recent market search but inflation of 3% a year was considered reasonable in today's market.

A study of the lease rates in Alaska in 1990 called Market analysis of Surface leases for Native Allotments in Alaska, it was found a wide range of rates were used. Two of the largest surface lessors in the Alaska Railroad and B.L.M. both use 8% of market value, and are government agencies, and lack incentive and motivation for profit.. As a matter of fact, the B.L.M. just re-evaluated all of the leases along the Trans Alaska Pipeline. They adjusted the annual rent by estimating market value and multiplying by .08 to get annual rent. These leases are all long-term leases which tend toward lower lease rates.

The lease document shows the lessee has an option to cancel at the end of each 5 years, effectively becoming a 5-year lease. The short-term leases drive the rates higher. Therefore, a lease rate of 11% would provide a market value of $78,540 divided by 0.11 = $714,000, and 12% rate would give a market value $85,680 divided by 12% = $714,000, proving the appraisal submitted as reasonable.

A scope of value was determined of this appraisal ranging from $640,000 to $720,000. And with the market data estimate the market value of the subject is at $714,000.

Conclusion: The market value, in fee simple interest, of the subject, as of May 6, 1997, is $714,000.

The annual lease @ 12% as of May 6, 1997 is $85,680.

The approval of the appraisal value does not limit or restrict the owners in negotiating for a higher amount.

# ATTACHMENT No. 40

LAW OFFICES
SONOSKY, CHAMBERS, SACHSE, MILLER & MUNSON
229 FOURTH STREET
JUNEAU, ALASKA 99801
(907) 586-5880
TELEFAX (907) 586-5883

MARVIN J. SONOSKY
HARRY R. SACHSE
REID PEYTON CHAMBERS
WILLIAM R. PERRY
LLOYD BENTON MILLER*
DONALD J. SIMON
DOUGLAS B.L. ENDRESON
MYRA M. MUNSON*
KAY E. MAASSEN GOUWENS*
ANNE D. NOTO
JAMES K. KAWAHARA
RICHARD A. POULIN

OF COUNSEL
TASSIE M.K. HANNA
ROGER W. DUBROCK*
MARY V. BARNEY

*ALASKA BAR

ANCHORAGE OFFICE
SUITE 700
900 WEST FIFTH AVENUE
ANCHORAGE, ALASKA 99501
(907) 258-6377
TELEFAX (907) 272-8332

LLOYD BENTON MILLER
KAY E. MAASSEN GOUWENS
RICHARD A. POULIN

D.C. OFFICE
SUITE 1000
1250 EYE STREET, N.W.
WASHINGTON, D.C. 20005
(202) 682-0240
TELEFAX (202) 682-0249

February 24, 1995

Delivery by Fax

Al Bolea
Manager of Greater Point McIntyre Area
BP Exploration (Alaska) Inc.
900 E. Benson Boulevard
P.O. Box 196612
Anchorage, Alaska 99519-6612

RE: Parcel B of Native Allotment F-14362

Dear Mr. Bolea:

As legal counsel for the Arctic Slope Native Association, Ltd. (ASNA) I am writing to request that BP Exploration (Alaska) (BPX) reconsider the proposal made in January 1995 by the heirs to Native Allotment F-14362 to modify the lease on this Allotment. ASNA contracts with the Bureau of Indian Affairs (BIA) to perform certain administrative realty related services on behalf of the BIA. It is in this capacity that ASNA is involved in working with the lessees and BPX to resolve issues regarding the lease.

A very abbreviated history of this lease may be useful. Ten acres of the allotment were leased from Andrew Oenga with BIA approval in 1989. In August 1993 under provisions of the original lease, the lease was amended to increase the size of the leased premises from 10 to 20 acres and to convert the term from a year-to-year basis to a fixed twenty-five year term. In January 1994 the lease was amended again to increase the acreage to 40 acres, to change the payment schedule, to reflect ASNA's role in leasing matters, and to reflect the transfer of the interests from Andrew Oenga to his heirs. The heirs are Michael Delia, Jenny Oenga, Leroy Oenga, Wallace Oenga and Georgene Shugluk. The January 1994 action is the only amendment to date actually requested by the heirs.

Later in 1994, some of the heirs sought further amendment of the lease or an outright purchase of the allotment by BPX. This further change was sought due to extreme financial need on the part of some of the heirs. Lengthy discussions among ASNA, the heirs, BIA, and BPX resulted in an offer to purchase the allotment outright by BPX for which funds were placed in escrow prior to the end of the year. The offer to purchase was made only after efforts by BPX to assist the heirs to obtain a commercial loan relying on their future interest in the allotment lease failed. The purchase was not consummated immediately because of the need to complete many additional steps, not the least of which was a determination by BIA that the sale serves the best interests of each of the lessee/allottees.

In January 1995 meetings were held with the allottees in which it became clear that the purchase of the allotment by BPX could not be accomplished in a timely manner and that prompt action was needed to resolve the financial crisis of the allottees. During these very candid meetings between ASNA and its counsel with the allottees, a variety of alternatives and related issues were discussed. Out of these discussions came the proposal that was transmitted telephonically to Stu Hirsch, Senior Landman, and ultimately rejected by letter from Mr. Hirsch on February 2, 1995.

The proposal was to modify the lease to provide for

(1) a single lump sum payment of $240,000 to be made immediately;

(2) annual payments over the balance of the lease term in an amount to be determined after calculating the remaining value of the lease;

(3) no direct communication by the lessees with BPX, except through ASNA or BIA; and

(4) no requests for further amendment of the lease by ASNA or the BIA, except for a change in circumstances affecting the leasehold (not the lessees).

The terms of the proposal were carefully thought through to try to respond to all of the interests of the parties to the past negotiations and transactions. Of most concern to some of the heirs is the need to resolve immediate financial problems and to avoid financial difficulties in the future. The amount of the proposed lump sum payment is calculated to be large enough to allow each lessee to satisfy all present financial obligations. Reverting to annual payments is intended to provide for more regular receipt of funds.

We understand from conversation with Mr. Hirsch and Ms. Baily that there may be some scepticism about whether the heirs' financial situation will, in fact, become more stable since the goal of the January 1994 lease amendment was to help accomplish this. Our very candid conversations convinced me and Eben Hopson, Executive Director of ASNA, that

Leroy and Wallace Oenga, who have the most immediate needs, have thought through their situations very carefully and that this proposal, if accepted, will allow them to correct miscalculations made after the last lease amendment and avoid future problems. Both indicated an interest in obtaining financial management advice to assist them further in resolving present difficulties.

The latter two elements of the proposal are directed at resolving the interests of BPX. We understand perfectly that your business is the production of oil and that the viability of any transaction must be measured against that criteria. Reopening previously closed negotiations does not necessarily further this goal and may, in some cases, impede it. The Oenga heirs truly understand this, I believe. They are prepared to offer written assurances that (1) they will not seek to reopen negotiations; (2) they understand BPX will not accept calls or responds to direct communications from them; (3) BPX will respond only to inquiries from ASNA or BIA; and (4) ASNA and BIA will not seek any future renegotiation, except those justified by a change in circumstances affecting the leasehold, not the lessees. The heirs understanding of BPX's reasonable expectations in this regard is demonstrated by the very polite and appropriate communications by the heirs recently with Ms. Baily.

There is no vehicle we can offer that provides an absolute guarantee, however the heirs and ASNA are prepared to work with BPX to craft language incorporating the commitments stated above in whatever form provides the greatest assurance that this is the last amendment to this lease BPX would have to consider at the request of the lessees. As Mr. Hirsch and Ms. Baily know the considerations when working on the North Slope are more complex than perhaps exist in other locations. The economic environment is as challenging as the physical environment and personal financial sophistication takes time to acquire. A positive working relationship between North Slope lessees and BPX may be difficult to measure in dollars and cents, but its economic value cannot be ignored. Word-of-mouth communication is far more important in shaping the views of the residents of the North Slope than any advertising campaign.

We know that BPX is as anxious to conclude discussions on this matter as the heirs are. We hope this request will receive prompt consideration. Obviously, if the decision is to accept the proposal, we could move quickly to agreeing on the value of the annual payments and the assurances language. If there is other information you may need or if there is hesitation about authorizing this amendment, we would like to request a face-to-face meeting in Anchorage or Barrow prior to the decision being made. ASNA is committed to working with BPX and the heirs to achieve a successful resolution of the concerns of all parties.

Al Bolea
Manager of Greater Point McIntyre Area

February 24, 1995
Page 4

Finally, we would like to express our appreciation for the patience and professionalism that Cindy Baily and Stu Hirsch have demonstrated throughout the past year in this and other matters.

Sincerely,

SONOSKY, CHAMBERS, SACHSE,
MILLER & MUNSON

By: Myra M. Munson

cc: Stu Hirsch
Cindy Bailey
Eben Hopson
Diane Stevens
Michael Delia
Jenny Oenga
Leroy Oenga
Wallace Oenga
Georgene Shugluk

ATTACHMENT No. 41

# Third Amendment to BIA Lease F-89-01

This agreement is made and entered into by and between Leroy Oenga and Wallace Oenga whose address is P.O. Box 201, Barrow, Alaska, Michael Delia whose address is 300 Slater Drive, Fairbanks AK 99701, Georgene Shugluk whose address is P.O. Box 91003, Atqasuk, Alaska 99791, and Jennie Oenga whose address is P.O. Box 55778, Fairbanks, Alaska 99705, who are the immediate heirs and successors in the interest of Andrew Oenga (Lessors) and BP Exploration (Alaska) Inc., the successor in interest to Standard Alaska Production Company (Lessee) whose address is P.O. Box 196612, Anchorage, Alaska 99519-6612 all of whom are collectively hereinafter are referred to as the "Parties".

Whereas, the Lessee has previously leased the 40-acre portion of Lessor's Parcel B of Native Allotment F-14632 under provisions of BIA Lease F-89-01 as amended ("Lease") from the Lessors; and

Whereas, Leroy Oenga, Wallace Oenga, Michael Delia and Georgene Shugluk desire to use a portion of the rental proceeds from the Lease to collateralize four personal loans they are seeking to obtain from the National Bank of Alaska; and

Whereas, Jennie Oenga does not seek to obtain a loan but is agreeing to changes in the lease to assist her family members in obtaining these loans; and

Whereas, the Lessors desire to provide that lease rental payments be made annually instead of biennially; and

Whereas, the Lessors desire to adjust the date at which the Lessee may cancel the Lease so that it shall coincide with the term of the personal loans they are seeking; and

Whereas, the Parties desire to amend the Lease to reflect their Lessor/Lessee relationship as it relates to the contractual relationship between the Arctic Slope Native Association Limited ("ASNA") and the Bureau of Indian Affairs ("BIA") wherein ASNA performs certain realty services on the behalf of BIA for the benefit of the Lessors.

Now therefore, in consideration of the mutual promises and covenants contained herein, the Parties agree as follows:

**Paragraph 4. Lease Rentals**

The last sentence in the first paragraph of Paragraph 4 is revised to read "Lease rental payments are due and payable sixty (60) days in advance of the anniversary date of this Lease Agreement for the next succeeding annual rental period beginning with the rental payment due January 1, 1996 through December 31, 1996. Lessee shall continue to make rental payments on an annual basis sixty days prior to the anniversary date of this Lease Agreement. Lessors shall make no additional claims, requests or demands of Lessee for Lease rental payments, rental payment adjustments or rental payment advances except as set forth in paragraph 5."

A new paragraph is added to Paragraph 4 as follows: "The rental payment due on November 1, 1995 for the period January 1, 1996 through December 31, 1996 is eighty-thousand six-hundred forty dollars ($80,640.00) which payment shall continue to be adjusted at four-year intervals pursuant to Paragraph 5 below, as amended."

A new paragraph is added to the end of Paragraph 4 as follows: "Lessee agrees to make lease rental payments to the National Bank of Alaska, or any other financial institution of the Lessor's choosing provided that Lessors furnish Lessee properly executed Assignment of Proceeds, Rental Division Order and/ or other written instruments at least 30 days prior to the rental due date as stipulated herein."

**Paragraph 5. Lease Rental Adjustments**

A new paragraph is added to the end of Paragraph 5 as follows: "Rental payments may next be adjusted November 1, 1997 for the adjustment period January 1, 1998 through December 31, 2002 and subsequent four-year periods unless this Lease Agreement expires or is canceled pursuant to provisions of Paragraph 15 below, as amended.

**Paragraph 15. Option to Cancel**

The first sentence of Paragraph 15 is revised to read "Lessee may, for any reason, cancel this Lease Agreement at the end of each five (5) year period during the Lease term, or any extension thereof, with the first right to cancel accruing on January 1, 2001."

**Paragraph 34. Relationship of the Parties**

A new Paragraph 34 is added to this Lease Agreement as follows:

"Lessors hereby designate and appoint the BIA, acting by and through ASNA, to be their sole contact with Lessees for any and all matters arising out of this Lease Agreement or any amendment thereto. Lessors agree that they will under no circumstances contact the Lessee in person or by telephone, facsimile, electronic mail, United States mail, courier service, or any other means. If Lessors contact Lessees, Lessees shall be under no obligation to respond to Lessors contacts and shall refer all such contacts to ASNA or the BIA."

**Effective Date of This Agreement**

This Agreement shall be effective when fully executed and approved by the Secretary of Interior.

**Entire Agreement**

This Agreement constitutes the entire agreement between the Parties insofar as this lease amendment is concerned and supersedes any previous understandings whether written or oral. With the exception of the two preceding lease amendments, the remaining provisions of Lease, as previously amended, remain unchanged.

In Witness Whereof, the Parties have executed this Agreement on the dates adjacent to their respective signatures.

FOR THE LESSORS

| | | | |
|---|---|---|---|
| Wallace Oenga | Date 5-6-95 | Leroy Oenga | Date 5/6/95 |
| Jennie Oenga | Date 5-8-95 | Michael M. Delia | Date 5-8-95 |
| B Jarvi, Conservator for Jennie Oenga | Date 5/8/95 | Georgene Shugluk | Date May 6, 1995 |

ACKNOWLEDGMENTS

STATE OF ALASKA )
) ss.
Second Judicial District )

The foregoing instrument was acknowledged before me this 6 day of May 1995 by Wallace Oenga who personally appeared before me and executed the foregoing instrument of his own free will.

NOTARY PUBLIC FOR ALASKA
My commission expires: 3/24/96

STATE OF ALASKA )
) ss.
Second Judicial District )

The foregoing instrument was acknowledged before me this 6 day of May, 1995 by Leroy L. Oenga, Sr., who personally appeared before me and executed the foregoing instrument of his own free will.

NOTARY PUBLIC FOR ALASKA
My commission expires: 3/24/96

985 1472

STATE OF ALASKA )
) ss.
Second Judicial District )

The foregoing instrument was acknowledged before me this 6th day of MAY, 1995 by Georgene Shugluk, who personally appeared before me and executed the foregoing instrument of her own free will.

HAROLD L. IVANOFF NOTARY PUBLIC STATE OF ALASKA 7-2-95

NOTARY PUBLIC FOR ALASKA
My commission expires: 7/2/95

STATE OF ALASKA )
~~Second~~ Fourth (?) 5/8/95 Judicial District ) ss.
)

The foregoing instrument was acknowledged before me this 8 day of May, 1995 by Michael Delia, who personally appeared before me and executed the foregoing instrument of his own free will.

OFFICIAL SEAL
DIANE L. STEVENS
NOTARY PUBLIC
BARROW, ALASKA
My Comm. Expires July 29, 1997

Diane L Stevens
NOTARY PUBLIC FOR ALASKA
My commission expires: 7/29/97

STATE OF ALASKA )
) ss.
Fourth Judicial District )

The foregoing instrument was acknowledged before me this 8 day of May, 1995 by Jennie Oenga, who personally appeared before me and executed the foregoing instrument of her own free will.

OFFICIAL SEAL
DIANE L. STEVENS
NOTARY PUBLIC
BARROW, ALASKA
My Comm. Expires July 29, 1997

Diane L Stevens
NOTARY PUBLIC FOR ALASKA
My commission expires: 7/29/97

STATE OF ALASKA )
) ss.
Fourth Judicial District )

The foregoing instrument was acknowledged before me this 8 day of May, 1995 by B Jarvi, who personally appeared before me and executed the foregoing instrument of her own free will, and in her capacity as conservator for Jennie Oenga.

OFFICIAL SEAL
DIANE L. STEVENS
NOTARY PUBLIC
BARROW, ALASKA
My Comm. Expires July 29, 1997

Diane L Stevens
NOTARY PUBLIC FOR ALASKA
My commission expires: 7/29/97

FOR THE LESSEE

5/10/95

Al E. Bolea, Manager Date
Greater Pt. McIntyre Area

ACKNOWLEDGMENT

STATE OF ALASKA )
) ss.
THIRD Judicial District )

The foregoing instrument was acknowledged before me this 10th day of MAY, 1995, by Al E. Bolea, the Manager of Greater Pt. McIntyre Area, BP Exploration (Alaska), Inc., on behalf of the Corporation.

MARCIA R. DAVIS NOTARY PUBLIC STATE OF ALASKA

NOTARY PUBLIC FOR ALASKA
My commission expires: 2-28-96

FOR THE SECRETARY OF INTERIOR:

The within Lease Amendment is hereby approved, pursuant to the authority delegated by 209 DM 8 dated November 17, 1981, Secretary's Order No. 3150 dated May 11, 1992, as amended March 5, 1993, and 10 BIAM Bulletin 13, dated November 19, 1992, as amended April 8, 1993, and the Addendum to 10 BIAM 3, dated January 17, 1989.

5-11-95

Samuel Demientieff, Superintendent Date
Bureau of Indian Affairs
Fairbanks Agency

RECORDED
AK TITLE SERVICES CENTER
95 MAY 16 AM 7:21
BUREAU OF INDIAN AFFAIRS
JUNEAU AREA OFFICE

985 1472

985 1472

Arctic Slope Native Association Limited
600 University Ave. Suite 2B
Fairbanks, Alaska 99709-3651

This is to certify that the attached Third Amendment to BIA Lease F-89-01 and Stipulation of Lease History between Heirs of Andrew Oenga and BP Exploration (Alaska), Inc. is in conformity with existing laws and regulations, and all realty records checked as to description, ownership and proper identification of lessor/lessee and conformity extends to and includes all supporting documents and other material as may be specified and required in the Code of Federal Regulations.

ASNA Land Director

Approved: 5-11-95
Date

Superintendent, BIA Fairbanks Agency