ATTACHMENT No. 42

# STIPULATION OF LEASE HISTORY F-89-01

**Fall of 1988**

Standard Alaska Production Company ~~(SOHIO)~~ SAPC, whose successor is now BP ~~(Alaska)~~ Exploration (Alaska) ~~Exploration~~, Inc. (hereinafter referred to as BPX), entered into negotiations with Andrew Oenga for the use of Parcel B Native Allotment F014632. Niakuk development plans in 1988 involved the use of the allotment for a road and pipeline corridor leading to an offshore production island. The island would be connected to shore via a one mile long causeway.

Andrew Oenga was represented by the Bureau of Indian Affairs. Leroy Oenga accompanied Andrew Oenga and was present during the negotiations. Rex Okakok acted as an interpreter of Andrew.

**January 1, 1989**

BPX executes a surface lease with Andrew Oenga. BPX paid Andrew a $25,000 signing bonus at his request. As he was 85 years old, he said he wanted to enjoy the benefits of the rental proceeds before he passed away. The leased premises consisted of 10 acres being a road and pipeline corridor. Rental payments of $1,600.00/acre/year were based upon a fee appraisal commissioned by BPX and approved by the BIA.

BPX leased Parcel B of the Andrew Oenga Native Allotment on Heald Point to support Niakuk operations. The 25-year lease was taken effective January 1, 1989 and expires in December 31, 2014 with an option to cancel the lease every five years. BPX paid Andrew Oenga a $25,000 signing bonus for the fair market value lease rent as determined by a property appraisal approved by the Bureau of Indian Affairs. Rental proceeds for 10 acres of the 40-acre allotment ~~are now~~ were ~~$2,016~~ 1,600/acre ~~of~~ or ~~$80,640~~ 16,000/ year and will increase with either the increase in value of the property or increase in the Consumer Price Index, whichever is greater.

The lease contains a provision which allows the Lessee to increase the size of the Lease~~s~~d Premises at its sole option by providing notice of same to the BIA and proportionately increasing the rental payment to be paid with the next annual rental payment.

**January 1989 through August 1993**

BPX files annual project status reports as required in the surface lease with the BIA.

BPX applies for permits to construct the causeway to the proposed Niakuk production island. After a lengthy permitting process (several years) only the North Slope Borough approves the causeway permits. The State of Alaska and the Corps of Engineers reject the permits.

**August 1993**

The scope of the Niakuk development changes. Since BPX's causeway permit applications were rejected, development of Niakuk will now be done from a production pad at the tip of Heald Point.

With the commencement of construction of the Niakuk production pad in August of 1993, BPX notifies the BIA that it is increasing the size of the leased premises from the original 10 acre road/pipeline corridor to 20 acres with the increased acreage accommodating portions of the production pad. (The remainder of the pad is being constructed on submerged lands owned by the State of Alaska.) The notifications to increase the size of the Leased premises is done according to Paragraph 11 of the Lease Agreement.

After notifying the BIA that BPX had increased the size of the Leased Premises, BPX receives a letter from the BIA dated 8/3/93 advising that all further matters regarding the surface lease should be handled through the Arctic Slope Native Association Limited (ASNA).

**Late 1993**

After construction of the Niakuk production pad starts, BPX starts receiving numerous phone calls from Leroy Oenga indicating that he and the other family members do not feel that the original lease was fair and that they wanted to renegotiate the lease. The family had a number of concerns. Among the concerns is a perceived unfair low annual rental rate, a perception that Sohio unfairly took advantage of Andrew Oenga at the time the lease was negotiated and claimed loss of value of the unleased 20 acres of the allotment due to the development of production pad, road and pipeline. The family's dissatisfaction with the situation is discussed with various Barrow community members and political leaders.

Arctic Slope Native Association Limited as contractor of BIA Realty Services meets with family members and reviews history of the lease. After researching various realty, appraisal and legal contacts, ASNA Realty Officer determined that significant issues regarding the lease merited review. ASNA in conjunction with the heirs request a meeting with BP Exploration and the BIA.

**November 1993**

BPX makes a payment of $6,662.00 for rent from 8/1/93 through 12/31/93 and 1994 rent on 20 acres in the amount of $40,160. for a total payment of $46,822.

**December 1993**

Two BPX staff travel to Barrow in December to meet with ASNA and the family and hear their concerns. The meeting lasted for over three hours and the family, represented by Leroy and Wallace Oenga, demanded that their concerns be addressed and stressed that the annual lease rental payments were not large enough to accommodate the cost of living needs of all the Heirs.

Negotiations with ASNA concerning amendment of the surface lease commence.

**January 1994**

Negotiations conclude and the surface lease is amended to meet the desires of the family as follows:

- The family members are listed as Lessors.
- The size of the Leased Premises is increased from 20 acres to 40 acres back to July 1, 1993.
- Rent is paid biennially instead of annually.
- Rent is paid November 1 instead of January.
- Rental adjustment period is shortened from five to four years.
- BPX will provide notice to ASNA and the Lessors if BPX subleases any property on Heald Point.

The surface lease also contains a clause in which the family agrees to make no further claims against BPX for rental adjustments or rental payment advances other than those adjustment based on the increased value of the land or the increase in the CPI, whichever is greater.

BPX pays 1993 rent on the additional 20 acres taken on Heald Point and its 1994 and 1995 rent in advance in the amount of $137,120.00.

**Fall of 1994**

Leroy Oenga insists that BPX took unfair advantage of his grandfather when the lease was signed in that his grandfather, although represented by the Bureau of Indian Affairs and with the advice of several prominent Barrow residents, was not represented by legal counsel. Additionally, Leroy insists that the family is unable to climb out of poverty because lease rental proceeds are too low and accrue over a long period of time (the term of the lease). The family, according to Leroy, wants more money preferably in the form of another advanced lump sum rental payment. Failing receipt of advance rental payment, he feels BPX should arrange for a bank to loan the heirs money using the lease as collateral.

Leroy becomes nearly a daily caller to BPX staff. He asked (and demanded) to know what ~~we~~ BPX are going to do for the family.

**December 1994**

In another effort to deal with the situation, BPX endeavors to craft a way to satisfy the needs and desires of the family. BPX staff approach a local Anchorage bank about using the lease as collateral for a loan. This idea is dropped when the interest rate quoted would not be in the family's interest.

As a last resort, BPX decides to offer to purchase the Heald Point property for its appraised fair market price. A purchase would accomplish two goals. The first would be to give the family members a large infusion of cash with which they could deal with their debts. The second would be to sever the ties between the family and BPX which exist due to the existence of the Lease Agreement.

BPX commissions a fee appraisal of the property. The appraised value of the property is $680,000.00

BPX offers to purchase the property at its appraised price less $80,000 advance rent paid for the year 1995 calendar year. The family verbally accepts the BPX offer.

**January 199~~4~~5**

ASNA receipts BPX offer and conducts realty investigation as required by their contract with BIA. After substantial research, ASNA advises BPX staff verbally that they can not recommend the offer for approval to BIA since it is not in the best interest of any and all of the Lessors. ASNA believes the Lease Agreement would generate substantially more monetary value for each Lessor over its term when compared to the value of the purchase price.

Subsequent to being advised as to how ASNA viewed the proposed sale, BPX withdrew its offer.

**January through March 1995**

ASNA verbally submits a counterproposal which would provide for a large lump sum payment at this time and adjust rental payments downward over the term of the lease. BPX rejects the counterproposal. ASNA submits counterproposal with some adjustments in writing. BPX again rejects the counterproposal.

**March and April 1995**

BPX initiates discussions with National Bank of Alaska to use the rental proceeds from the Lease Agreement as collateral for four personal loans. The loans would be in favor of Leroy, Wallace Oenga, Michael Delia and Georgene Shugluk.

Leroy calls to advise that the Barrow Branch of the National Bank of Alaska has repossessed his snow machine and he is concerned that he will lose his $5,000.00 investment. BPX staff attempts to obtain assurances from NBA that their proposed sale of the snow machine will be delayed until the personal loans close. NBA proceeds with sale of snow machine.

**May 1995**

Final negotiations on provisions of lease amendment conclude. Lease amendment and stipulation of lease history is signed by all parties and submitted to BIA for their approval based on recommendations from ASNA.

The Lease Agreement is further amended to meet requirements of the NBA and the family.

- The point at which BPX can exercise its sole option to cancel is postponed until January 1, 2001.
- The rental payments are returned to an annual basis.
- The Lessors agree that all further contacts with BPX shall be by and through ASNA.

In addition to the lease amendment and stipulation of lease history, BPX and Lessors, with assistance from ASNA, complete documents to carry out the final agreement which include a partial assignment of proceeds and rental division order. ASNA completes acknowledgment of counseling with each Lessor. After receiving signed documents and instructions for distribution of loan proceeds, NBA will close loans for four family members.

In Witness Whereof, the Parties have executed this Agreement on the dates adjacent to their respective signatures and of their own free will.

FOR THE LESSORS

| | |
|---|---|
| Wallace Oenga — Date: 5-6-95 | Leroy Oenga — Date: 5/6/95 |
| Jennie Oenga — Date: 5/8/95 | Michael M. Delia — Date: 5-8-95 |
| B Jarvi, Conservator for Jennie Oenga — Date: 5/8/95 | Georgene Shugluk — Date: May 6, 1995 |

ACKNOWLEDGMENTS

STATE OF ALASKA )
) ss.
Second Judicial District )

The foregoing instrument was acknowledged before me this 6 day of May, 1995 by Wallace Oenga who personally appeared before me and executed the foregoing instrument of his own free will.

NOTARY PUBLIC FOR ALASKA
My commission expires: 3/24/96

STATE OF ALASKA )
) ss.
Second Judicial District )

The foregoing instrument was acknowledged before me this 6 day of May, 1995 by Leroy L. Oenga, Sr., who personally appeared before me and executed the foregoing instrument of his own free will.

NOTARY PUBLIC FOR ALASKA
My commission expires: 3/24/96

STATE OF ALASKA )
) ss.
Second Judicial District )

The foregoing instrument was acknowledged before me this 6th day of MAY, 1995 by Georgene Shugluk, who personally appeared before me and executed the foregoing instrument of her own free will.

HAROLD L. IVANOFF NOTARY PUBLIC STATE OF ALASKA 7-2-95

NOTARY PUBLIC FOR ALASKA
My commission expires: 7/2/95

STATE OF ALASKA )
~~Second~~ Fourth 5/8/95 Judicial District ) ss.
)

The foregoing instrument was acknowledged before me this 8 day of May, 1995 by Michael Delia, who personally appeared before me and executed the foregoing instrument of his own free will.

OFFICIAL SEAL DIANE L. STEVENS NOTARY PUBLIC BARROW, ALASKA My Comm. Expires July 29, 1997

Diane L Stevens
NOTARY PUBLIC FOR ALASKA
My commission expires: 7/29/97

STATE OF ALASKA )
) ss.
Fourth Judicial District )

The foregoing instrument was acknowledged before me this 8 day of May, 1995 by Jennie Oenga, who personally appeared before me and executed the foregoing instrument of her own free will.

OFFICIAL SEAL DIANE L. STEVENS NOTARY PUBLIC BARROW, ALASKA My Comm. Expires July 29, 1997

Diane L Stevens
NOTARY PUBLIC FOR ALASKA
My commission expires: 7/29/97

STATE OF ALASKA )
) ss.
Fourth Judicial District )

The foregoing instrument was acknowledged before me this 8 day of May, 1995 by B Jarvi, who personally appeared before me and executed the foregoing instrument of her own free will.

OFFICIAL SEAL DIANE L. STEVENS NOTARY PUBLIC BARROW, ALASKA My Comm. Expires July 29, 1997

Diane L Stevens
NOTARY PUBLIC FOR ALASKA
My commission expires: 7/29/97

FOR THE LESSEE

5/10/95

MRD
LWB

Al E Bolea, Manager | Date
Greater Pt. McIntyre Area

ACKNOWLEDGMENT

STATE OF ALASKA )
) ss.
THIRD Judicial District )

The foregoing instrument was acknowledged before me this 10th day of MAY, 1995, by Al E. Bolea, the Manager of Greater Pt. McIntyre Area, BPX Exploration (Alaska), Inc., on behalf of the Corporation.

NOTARY PUBLIC FOR ALASKA
My commission expires: 2-28-96

FOR THE SECRETARY OF INTERIOR:

The within Lease Amendment is hereby approved, pursuant to the authority delegated by 209 DM 8 dated November 17, 1981, Secretary's Order No. 3150 dated May 11, 1992, as amended March 5, 1993, and 10 BIAM Bulletin 13, dated November 19, 1992, as amended April 8, 1993, and the Addendum to 10 BIAM 3, dated January 17, 1989.

5-11-95

Samuel Demientieff, Superintendent | Date
Bureau of Indian Affairs
Fairbanks Agency

Arctic Slope Native Association Limited
600 University Ave. Suite 2B
Fairbanks, Alaska 99709-3651

This is to certify that the attached Third Amendment to BIA Lease F-89-01 and Stipulation of Lease History between Heirs of Andrew Oenga and BP Exploration (Alaska), Inc. is in conformity with existing laws and regulations, and all realty records checked as to description, ownership and proper identification of lessor/lessee and conformity extends to and includes all supporting documents and other material as may be specified and required in the Code of Federal Regulations.

ASNA Land Director

Approved: 5-11-95
Date

Superintendent, BIA Fairbanks Agency

Return to:

Stu Hirsh
BP Exploration (Alaska) Inc.
P. O. Box 196612
Anchorage, AK 99519-6612

ATTACHMENT No. 43

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS
BRANCH OF REALTY, APPRAISALS SECTION
JUNEAU AREA OFFICE, ALASKA

COPY

# RESTRICTED APPRAISAL REPORT-LIMITED APPRAISAL

This is a Restricted Appraisal Report which is intended to comply with the reporting requirements set forth under Standards Rule 2-2(c) of the Uniform Standards of Professional Appraisal Practice for a Restricted Appraisal Report. As such, it presents no discussions of the data, reasoning, and analyses that were used in the appraisal process to develop the appraiser's opinion of value. Supporting documentation concerning the data, reasoning, and analyses is retained in the appraiser's file. The depth of discussion contained in this report is specific to the needs of the client and for the intended use stated below. The appraiser is not responsible for unauthorized use of this report.

Furthermore, in accordance with prior agreement between the client and the appraiser, this report is the result of a limited appraisal process in that certain allowable departures from specific guidelines of the Uniform Standards of Professional Appraisal Practice were invoked. The intended user of this report is warned that the reliability of the value conclusion provided may be impacted to the degree there is departure from specific guidelines of USPAP.

## SUPPLEMENT TO

**Appraisal Report** dated December 5, 1994, by Roger N. Bonnett, MAI, of Appraisal Company of Alaska, Anchorage, Alaska, reviewed by John R. Cress, Staff Appraiser, dated December 23, 1994, setting forth the market value estimated for U.S. Survey No. 6904, Prudhoe Bay, Alaska.. The subject is located at Heald Point. Site inspection was completed by aerial photo of the subject.

The purpose of this supplement is to certify the appraised market value as of May 6, 1997 for a lease.

**Owner**: Heirs of Andrew Oenga

**Allotment No.**: F-14632B

**Realty Office**: ASNA

**Appraisal No.**: 97-184

**Legal Description**: U.S. Survey No. 6904, Prudhoe Bay, Alaska.

**Property Rights**: Fee Simple Estate

**Size of Subject**: 40 Acres

**Highest & Best Use**: Industrial / Oil Well Drilling Site & Staging Area

**Findings**: A review of the current real estate market for properties similar to this property indicates a change in the previously estimated market value. Information supporting this conclusion is retained on file.

The estimated market value as of May 6, 1997 is $714,000.
The annual lease @ 12% as of May 6, 1997 is $ 85,680.

5/14/97
Date

J. Richard Larson, Area Chief Appraiser

MAY 1 4 1997
Date Approved

Field Inspection ☐ Did ☑ Did Not Inspect Property.

APPRAISER - CLIENT PRIVILEGED/WORK PRODUCT
DO NOT RELEASE WITHOUT PROPER AUTHORIZATION

The Ellwood Tables were used for annual 10% and 11% compounded interest table Column No. 4 - Present Value Reversion of 1, projected over the 20-year term of the loan indicates a present value of the lease to be $755,187. I point out that 10% is consistent with the appraiser's market comparables rate.

| Present Value of Lease | | | | |
|---|---|---|---|---|
| Year | 10% Reversion | | 11% Reversion | |
| 1995 | $ 80,640 | | $ 80,640 | |
| 1996 | 73,309 | | 72,649 | |
| 1997 | 66,645 | | 65,449 | |
| 1998 | 60,586 | | 58,963 | |
| 1999 | 55,078 | $336,258 | 53,120 | $330,821 |
| 2000 | 50,071 | | 47,856 | |
| 2001 | 45,519 | | 43,113 | |
| 2002 | 41,381 | | 38,841 | |
| 2003 | 37,619 | | 34,992 | |
| 2004 | 34,199 | $545,047 | 31,524 | $527,147 |
| 2005 | 31,090 | | 28,400 | |
| 2006 | 28,264 | | 25,586 | |
| 2007 | 25,694 | | 23,050 | |
| 2008 | 23,359 | | 20,766 | |
| 2009 | 21,235 | $647,689 | 18,708 | $643,657 |
| 2010 | 19,305 | | 16,854 | |
| 2011 | 17,550 | | 15,184 | |
| 2012 | 15,954 | | 13,679 | |
| 2013 | 14,504 | | 12,324 | |
| 2014 | 13,185 | | 11,102 | |
| Present Value | $755,187 | | $712,800 | |

The re-negotiated lease is for 20 years with an option to cancel or review in 5-year intervals. The income stream shown above has been discounted showing the present value of the income stream. This present range of value is the amount the present lease is worth and what a buyer would be expected to pay for this lease today. The lessee is a very safe risk to continue to make timely payments, except the fact that the lessee has the option to cancel after each five years, making the income stream a higher risk, thus a higher rate, say 10% to 12%.

In the valuation analysis, the appraiser utilized the Market Comparison Approach to support the appraisal value. The Market Comparison Approach was given the most weight which appears to be in perspective with similar properties in the competitive market place of the subject. The income approach, using the present contract rent of this leased parcel, was not explored; but the market comparison is considered the most accurate approach to rely on. No new sales were found in the recent market search but inflation of 3% a year was considered reasonable in today's market.

A study of the lease rates in Alaska in 1990 called Market analysis of Surface leases for Native Allotments in Alaska, it was found a wide range of rates were used. Two of the largest surface lessors in the Alaska Railroad and B.L.M. both use 8% of market value, and are government agencies, and lack incentive and motivation for profit.. As a matter of fact, the B.L.M. just re-evaluated all of the leases along the Trans Alaska Pipeline. They adjusted the annual rent by estimating market value and multiplying by .08 to get annual rent. These leases are all long-term leases which tend toward lower lease rates.

The lease document shows the lessee has an option to cancel at the end of each 5 years, effectively becoming a 5-year lease. The short-term leases drive the rates higher. Therefore, a lease rate of 11% would provide a market value of $78,540 divided by 0.11 = $714,000, and 12% rate would give a market value $85,680 divided by 12% = $714,000, proving the appraisal submitted as reasonable.

A scope of value was determined of this appraisal ranging from $640,000 to $720,000. And with the market data estimate the market value of the subject is at $714,000.

Conclusion: The market value, in fee simple interest, of the subject, as of May 6, 1997, is $714,000.

The annual lease @ 12% as of May 6, 1997 is $85,680.

The approval of the appraisal value does not limit or restrict the owners in negotiating for a higher amount.


SUBJECT
Barrow
Point Hope
Kivalina
Noatak
Kiana
Noorvik
Kotzebue
Selawik
Kobuk
Teller
Nome
Council
Solomon
Unalakleet
Emmonak
Tanana
Ruby
Galena
Eagle
Fairbanks
Tok
Glennallen
Anchorage
Valdez
Seward
Juneau
Bethel
Togiak
Dillingham
Naknek
King Salmon
Egegik
Pilot Point
Ugashik
KARLUK
AKHIOK
OLD HARBOR
Sand Point
Nelson Lagoon
King Cove
Unalaska
SCALE OF MILES
50 0 50 100 150

# NIAKUK HEALD POINT DEVELOPMENT




## PROJECT DESCRIPTION AND ENVIRONMENTAL ASSESSMENT







BP EXPLORATION
(ALASKA) INC.



Andrew Oenga FF014632
Looking northerly towards Heald Pt. BP facilities in center.



Andrew Oenga FF014632
Looking northerly at Heald Pt.

Allottee: Heirs of Andrew Oenga
Allotment No.: F-14632B
Taken By: Boyer
Date: August 14, 1996
Location: Niakuk Heald Point Drill Site, Prudhoe Bay



Aerial view looking southeast from Prudhoe Bay, depicting roadway and improvements.



Aerial view looking west over the peninsula with Prudhoe Bay in the background, foreground and subject near the center.

Allottee: Heirs of Andrew Oenga
Allotment No.: F-14632B
Taken By: Boyer
Date: August 14, 1996
Location: Niakuk Heald Point Drill Site, Prudhoe Bay



Aerial view of the subject, looking south from Prudhoe Bay, depicting site development and neighboring terrain.



Aerial photo looking south from Prudhoe Bay, again depicting site development access road and terrain.

DCRA HOME

CIS INDEX

DCRA CIS

Community • Information • Summary



# Prudhoe Bay

**Current Population:** 47
**Incorporation Type:** Unincorporated
**Borough Located In:** North Slope Borough
**Borough Sales Tax:** None

More Detailed Community Data Here

**Location and Climate**
Prudhoe Bay lies offshore in the Beaufort Sea, east of Nuiqsut, in the northern waters of Alaska. It lies at approximately 70° 22' N Latitude and 148° 22' W Longitude. The area encompasses 34.7 sq. miles of land and 12.1 sq. miles of water. The climate of the North Slope is arctic. Temperatures range from -56 to 78. Precipitation is light, averaging 5 inches, with snowfall of 20 inches.

**History, Culture and Demographics**
The Bay was named in 1828. The site was extensively developed for oil drilling operations in the 1970s. An 800-mile pipeline was constructed to transport crude oil from Prudhoe Bay to Valdez, where it is shipped in marine tankers to terminals throughout the U.S. The pipeline has 12 pump stations and a maximum capacity of 2 million barrels of crude oil per day. As a work site, oil is the focus of the local culture. All residents are employees of oil drilling or oil-support companies, and work long consecutive shifts. Living quarters and food are provided to the workforce, and there are a number of recreational facilities.

**Facilities, Utilities, Schools and Health Care**
Modern sanitation facilities are available at the group quarters facilities. There are no state operated schools located in the community.

**Economy and Transportation**
The Prudhoe Bay oil fields provide employment to over 5,000 individuals in drilling, pipeline operations, cargo transportation and a variety of support positions. U.S. Census population and employment figures reflect only residents of Deadhorse or Prudhoe Bay - most oil field workers travel home to Anchorage or the lower 48 states when off duty. Of the small residential population, 2 hold commercial fishing permits. The airport at nearby Deadhorse is the primary means of transportation to the North Slope. A private airstrip, owned and maintained by Arco Alaska, Inc., and a State-owned heliport are located at Prudhoe Bay. The Dalton Highway is used year-round by trucks to haul cargo to the Slope, although it is restricted to the public north of Wiseman. There are no services beyond this point, and the highway is hazardous during winter months.

**Regional Organizations**
Borough - North Slope Borough, P.O. Box 69, Barrow, AK 99723, Phone 907-852-2611, Fax 907-852-0337
************************************************************************

Updated 6/1/96
For more information contact:
Department of Community & Regional Affairs, Research & Analysis Section
907-465-4750 or e-mail: MCushing@ComRegAf.state.ak.us

COPY

# Third Amendment to BIA Lease F-89-01

This agreement is made and entered into by and between Leroy Oenga and Wallace Oenga whose address is P.O. Box 201, Barrow, Alaska, Michael Delia whose address is 300 Slater Drive, Fairbanks AK 99701, Georgene Shugluk whose address is P.O. Box 91003, Atqasuk, Alaska 99791, and Jennie Oenga whose address is P.O. Box 55778, Fairbanks, Alaska 99705, who are the immediate heirs and successors in the interest of Andrew Oenga (Lessors) and BP Exploration (Alaska) Inc., the successor in interest to Standard Alaska Production Company (Lessee) whose address is P.O. Box 196612, Anchorage, Alaska 99519-6612 all of whom are collectively hereinafter are referred to as the "Parties".

Whereas, the Lessee has previously leased the 40-acre portion of Lessor's Parcel B of Native Allotment F-14632 under provisions of BIA Lease F-89-01 as amended ("Lease") from the Lessors; and

Whereas, Leroy Oenga, Wallace Oenga, Michael Delia and Georgene Shugluk desire to use a portion of the rental proceeds from the Lease to collateralize four personal loans they are seeking to obtain from the National Bank of Alaska; and

Whereas, Jennie Oenga does not seek to obtain a loan but is agreeing to changes in the lease to assist her family members in obtaining these loans; and

Whereas, the Lessors desire to provide that lease rental payments be made annually instead of biennially; and

Whereas, the Lessors desire to adjust the date at which the Lessee may cancel the Lease so that it shall coincide with the term of the personal loans they are seeking; and

Whereas, the Parties desire to amend the Lease to reflect their Lessor/Lessee relationship as it relates to the contractual relationship between the Arctic Slope Native Association Limited ("ASNA") and the Bureau of Indian Affairs ("BIA") wherein ASNA performs certain realty services on the behalf of BIA for the benefit of the Lessors.

Now therefore, in consideration of the mutual promises and covenants contained herein, the Parties agree as follows:

**Paragraph 4. Lease Rentals**

The last sentence in the first paragraph of Paragraph 4 is revised to read "Lease rental payments are due and payable sixty (60) days in advance of the anniversary date of this Lease Agreement for the next succeeding annual rental period beginning with the rental payment due January 1, 1996 through December 31, 1996. Lessee shall continue to make rental payments on an annual basis sixty days prior to the anniversary date of this Lease Agreement. Lessors shall make no additional claims, requests or demands of Lessee for Lease rental payments, rental payment adjustments or rental payment advances except as set forth in paragraph 5."

A new paragraph is added to Paragraph 4 as follows: "The rental payment due on November 1, 1995 for the period January 1, 1996 through December 31, 1996 is eighty-thousand six-hundred forty dollars ($80,640.00) which payment shall continue to be adjusted at four-year intervals pursuant to Paragraph 5 below, as amended."

A new paragraph is added to the end of Paragraph 4 as follows: "Lessee agrees to make lease rental payments to the National Bank of Alaska, or any other financial institution of the Lessor's choosing provided that Lessors furnish Lessee properly executed Assignment of Proceeds, Rental Division Order and/ or other written instruments at least 30 days prior to the rental due date as stipulated herein."

**Paragraph 5. Lease Rental Adjustments**

A new paragraph is added to the end of Paragraph 5 as follows: "Rental payments may next be adjusted November 1, 1997 for the adjustment period January 1, 1998 through December 31, 2002 and subsequent four-year periods unless this Lease Agreement expires or is canceled pursuant to provisions of Paragraph 15 below, as amended.

**Paragraph 15. Option to Cancel**

The first sentence of Paragraph 15 is revised to read "Lessee may, for any reason, cancel this Lease Agreement at the end of each five (5) year period during the Lease term, or any extension thereof, with the first right to cancel accruing on January 1, 2001."

**Paragraph 34. Relationship of the Parties**

A new Paragraph 34 is added to this Lease Agreement as follows:

"Lessors hereby designate and appoint the BIA, acting by and through ASNA, to be their sole contact with Lessees for any and all matters arising out of this Lease Agreement or any amendment thereto. Lessors agree that they will under no circumstances contact the Lessee in person or by telephone, facsimile, electronic mail, United States mail, courier service, or any other means. If Lessors contact Lessees, Lessees shall be under no obligation to respond to Lessors contacts and shall refer all such contacts to ASNA or the BIA."

**Effective Date of This Agreement**

This Agreement shall be effective when fully executed and approved by the Secretary of Interior.

**Entire Agreement** Entire Agreement

This Agreement constitutes the entire agreement between the Parties insofar as this lease amendment is concerned and supersedes any previous understandings whether written or oral. With the exception of the two preceding lease amendments, the remaining provisions of Lease, as previously amended, remain unchanged.

In Witness Whereof, the Parties have executed this Agreement on the dates adjacent to their respective signatures.

FOR THE LESSORS

Wallace Oenga 5-6-95
Wallace Oenga Date

Leroy Oenga 5/6/95
Leroy Oenga Date

Jennie Oenga 5-8-95
Jennie Oenga Date

Michael M. Delia 5-8-95
Michael M. Delia Date

B Jarvi for CAPA, INC 5/8/95
B Jarvi Date
Conservator for Jennie Oenga

Georgene Shugluk May 6, 1995
Georgene Shugluk Date

ACKNOWLEDGMENTS

STATE OF ALASKA )
) ss.
Second Judicial District )

The foregoing instrument was acknowledged before me this 6 day of May 1995 by Wallace Oenga who personally appeared before me and executed the foregoing instrument of his own free will.

NOTARY PUBLIC FOR ALASKA
My commission expires: 3/24/96

STATE OF ALASKA )
) ss.
Second Judicial District )

The foregoing instrument was acknowledged before me this 6 day of May, 1995 by Leroy L. Oenga, Sr., who personally appeared before me and executed the foregoing instrument of his own free will.

NOTARY PUBLIC FOR ALASKA
My commission expires: 3/24/96

STATE OF ALASKA )
) ss.
Second Judicial District )

The foregoing instrument was acknowledged before me this 6th day of MAY, 1995 by Georgene Shugluk, who personally appeared before me and executed the foregoing instrument of her own free will.

HAROLD L. IVANOFF NOTARY PUBLIC STATE OF ALASKA 7-2-95

NOTARY PUBLIC FOR ALASKA
My commission expires: 7/2/95

STATE OF ALASKA
Fourth (initials) 5/8/95 ) ss.
~~Second~~ Judicial District )

The foregoing instrument was acknowledged before me this 8 day of May, 1995 by Michael Delia, who personally appeared before me and executed the foregoing instrument of his own free will.

OFFICIAL SEAL
DIANE L. STEVENS
NOTARY PUBLIC
BARROW, ALASKA
My Comm. Expires July 29, 1997

Diane L. Stevens
NOTARY PUBLIC FOR ALASKA
My commission expires: 7/29/97

STATE OF ALASKA )
) ss.
Fourth Judicial District )

The foregoing instrument was acknowledged before me this 8 day of May, 1995 by Jennie Oenga, who personally appeared before me and executed the foregoing instrument of her own free will.

OFFICIAL SEAL
DIANE L. STEVENS
NOTARY PUBLIC
BARROW, ALASKA
My Comm. Expires July 29, 1997

Diane L. Stevens
NOTARY PUBLIC FOR ALASKA
My commission expires: 7/29/97

STATE OF ALASKA )
) ss.
Fourth Judicial District )

The foregoing instrument was acknowledged before me this 8 day of May, 1995 by B Jarvi, who personally appeared before me and executed the foregoing instrument of her own free will, and in her capacity as conservator for Jennie Oenga.

OFFICIAL SEAL
DIANE L. STEVENS
NOTARY PUBLIC
BARROW, ALASKA
My Comm. Expires July 29, 1997

Diane L. Stevens
NOTARY PUBLIC FOR ALASKA
My commission expires: 7/29/97

FOR THE LESSEE

_________________ 5/10/95

Al E. Bolea, Manager Date

Greater Pt. McIntyre Area

ACKNOWLEDGMENT

STATE OF ALASKA )

) ss.

THIRD Judicial District )

The foregoing instrument was acknowledged before me this 10th day of May, 1995, by Al E. Bolea, the Manager of Greater Pt. McIntyre Area, BP Exploration (Alaska), Inc., on behalf of the Corporation.

_________________

NOTARY PUBLIC FOR ALASKA

My commission expires: 2-28-96

FOR THE SECRETARY OF INTERIOR:

The within Lease Amendment is hereby approved, pursuant to the authority delegated by 209 DM 8 dated November 17, 1981, Secretary's Order No. 3150 dated May 11, 1992, as amended March 5, 1993, and 10 BIAM Bulletin 13, dated November 19, 1992, as amended April 8, 1993, and the Addendum to 10 BIAM 3, dated January 17, 1989.

_________________ 5-11-95

Samuel Demientieff, Superintendent Date

Bureau of Indian Affairs

Fairbanks Agency

 97-184

# REQUEST FOR REAL ESTATE APPRAISAL

RENTAL ADJUSTMENT

TO: CHIEF APPRAISER

DATE: March 18, 1997

AGENCY: ASNA

VILLAGE: Prudhoe Bay

ALLOTMENT: F-14632B

REQUEST NO: ASNA 97-10

TRANSACTION TYPE:: LEASE

OWNER: The heirs of Andrew Oenga

APPRAISAL TO DETERMINE THE FAIR MARKET VALUE OF A FEE INTEREST IN THE FOLLOWING PROPERTY:

LEGAL DESCRIPTION: Located at Heald Point in T. 12N., R. 15 E., sec. 36, and T. 11N, R. 15E, sec. 1, Umiat Meridian containing 40 acres.

| | | |
|---|---|---|
| LEASE - 25 years | TYPE - Business | DATE OF EXPIRATION: 12/31/14 |
| ANNUAL RENTAL - $80,640 | ADJUSTMENTS - due 11/1/97 | IMPROVEMENTS REQUIRED: NO |

OTHER LEASE PROVISIONS

| | | |
|---|---|---|
| RIGHT-OF-WAY N/A | TYPE | TERM |

CONDITIONS

LAND CHARACTER: developed by BP Exploration with pad and oil field related equipment

IMPROVEMENTS TO BE APPRAISED: NO, to be appraised as if undeveloped

SPECIAL INSTRUCTIONS: This lease has a four year rental adjustment clause which is due 11/1/97. I am sending you the original lease and the two subsequent amendments to it which have increased the lease area to the full 40 acres of this parcel. Section 5 of the lease spells out the rental adjustment factors. I would appreciate having the appraisal done by mid-September. Thank you.

REQUEST STATUS:

Received MAR 21 1997

Assigned MAR 21 1997

Appraised May 6, 1997

Recommended

Approved MAY 6 1997

Transmitted MAY 9 1997

Appraiser [signature] R.

THE SUPERINTENDENT HAS REVIEWED THE NEED FOR APPRAISAL OF THE DESCRIBED PROPERTY FOR THE PURPOSE INDICATED AND CERTIFIES THAT THE APPRAISAL IS NEEDED AND REQUESTS THAT IT BE PREPARED ON A ROUTINE PRIORITY BASIS.

(3)

*Insert the required priority:

ROUTINE - Appraisal will be done in the order requested

RUSH - Prepare appraisal ahead my other requests

[signature]

KATHLEEN F. DICKINSON

LAND DIRECTOR, ARCTIC SLOPE NATIVE ASSOC., LTD.