**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **WALLACE OENGA, GEORGENE SHUGLUK, LEROY OENGA, SR., MICHAEL DELIA, TONY DELIA, JOSEPH DELIA, JENNIE MILLER, and TRINITY DELIA,** | **No. 06-4911 L**<br>**Chief Judge Edward Damich** |
| **Plaintiffs,** | |
| **v.** | |
| **THE UNITED STATES,** | **DECLARATION OF EDWARD MORSE** |
| **Defendant, and** | |
| **BP EXPLORATION (ALASKA) INC., CONOCOPHILLIPS ALASKA, INC., EXXON MOBIL ALASKA PRODUCTION, INC., CHEVRON U.S.A., INC. and FOREST OIL CORPPRATION,** | |
| **Defendant Intervenors.** | |

**DECLARATION OF EDWARD MORSE**

Edward Morse hereby declares as follows:

1. I am over the age of 18, of sound mind and competent to make this Declaration.

2. I have 34 years of experience as a real estate appraiser, and I hold a Certified General license credential from Idaho and Washington. I am a member of the Appraisal Institute, and hold the MAI designation, and the CRE designation from the counselors of Real Estate. My qualifications are attached as Appendix #1.

3. I have read and performed reviews on various appraisals of the Oenga allotment at

Heald Pt. on the North Slope of Alaska. These include the 1993 Appraisal by John Cress of the BIA and the 1997 Limited Restricted Appraisal by Mr. Larson. I have also reviewed the provided documents supporting those appraisals and other appraisals referred to in those appraisal reviews.

4. I have reviewed the Alaska Department of Natural Resources Findings and Decision attached as Appendix #2, and am particularly aware of the reference to royalty rate agreements at the Colville River Unit on the North Slope of Alaska.

5. I have reviewed the United States' Motion to Dismiss or in the Alternative for Summary Judgment.

6. I understand the Colville River Unit to be approximately 75 miles west of the Prudhoe Bay Unit (*see* Appendix #3) where the Oenga property is located.

7. The Oenga property is very unique. It is a peninsula, extending into an oilfield, used as a directional drilling site, with the length of the peninsula providing a pipeline corridor for the transportation linkage of the oil produced transported to the Alaskan pipeline. None of the comparables in the appraisals to determine market rent were drilling sites, or production sites of similar attributes. There are few if any other comparable production pad or drilling site leases in this remote area, and none that the BIA appraisers were able to confirm and include in their appraisals. Consequently, the two leases in question appear to be the only leases of similar uses (production sites) that are used like the Oenga property, making them the only two lease comparables with similar uses in the area.

The essence of the rental analysis process is to compare like property leases with other like property leases, and these two production pad rentals are needed to research and determine their comparability to the Oenga property. Rentals of these two properties that are leased for similar

uses as the subject are critical to determining the subject's market rent. The generally similar locations, similar uses, and lack of other production pad leases in the area make the information critical to determining the market rental rates for similar production sites.

Rentals of lands that are being used for a similar use as the subject Oenga property, even if they have some differing characteristics, are still the best rental comparables and are needed for an analysis of the subject's rental potential. Regardless of whether the lease is a cash rent, or a royalty lease, it would not diminish its importance for comparison purposes, and the terms and conditions of the lease agreement are needed to determine, and adjust for its comparability to the subject property. There is no known verifiable alternate source for this market rental information. This rental data is important and directly related to the rental rates in this dispute because the rental comparables that were used by the BIA were sites that were not used for the same use as the subject property; which is a directional drilling site at the end of a peninsula extending into an oilfield.

Concentrated land ownerships, few drilling site leases, and the remote location of the North Slope area, coupled with unique locational aspects of drilling sites that require access the oil field and have transportation linkages to transport the oil produced limit or distinguish most similar comparative data to similarly used production sites.

8. Without reviewing the actual Colville River Unit lease and surface use agreements referred to in Appendix #2, I cannot render a thorough and complete opinion on their applicability as comparables that could be used to properly appraise the rental values of the

Oenga property and thus cannot render a full and complete opinion in response to the United States' Motion to Dismiss or in the Alternative for Summary Judgment regarding the use of royalties in valuing and setting rental rates for the Oenga property.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED this 12th day of June, 2007.

Edward Morse

Edward Morse, CRE, MAI

**Certificate of Service**

I hereby certify that on the 11th day of June, 2007, I electronically filed the foregoing Motion to Compel with the Clerk of the Court using the CM/ECF System which will send notification of such filing to all parties of record.

JAMES M. UPTON
U. S. Department of Justice
Environment & Natural Resources Div.
Natural Resources Section
P. O. Box 663
Washington, D.C. 20044-0663
Tel. (202) 305-0482
Fax: (202) 305-0506
E-mail: james.upton@usdoj.gov
Attorney for Defendant

LOUIS R. VEERMAN
GARY ZIPKIN
JOSEPH J. PERKINS, JR.
Guess & Rudd P.C.
510 L Street, Suite 700
Anchorage, AK 99501
907.793.2200 (switchboard)
907.793.2299 (fax)
E:mail: d.veerman@guessrudd.com
gzipkin@guessrudd.com
jperkins@guessrudd.com
Attorneys for Intervenors

RAYMOND C. GIVENS
Givens Law Firm