**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **WALLACE OENGA, GEORGENE SHUGLUK, LEROY OENGA, SR., MICHAEL DELIA, TONY DELIA, JOSEPH DELIA, JENNIE MILLER, and TRINITY DELIA,** | **No. 06-491 L** **Chief Judge Edward Damich** |
| **Plaintiffs.** | |
| **v.** | |
| **THE UNITED STATES,** | |
| **Defendant, and** | |
| **BP EXPLORATION (ALASKA) INC., CONOCOPHILLIPS ALASKA, INC., EXXON MOBIL ALASKA PRODUCTION, INC., CHEVRON U.S.A., INC. and FOREST OIL CORPORATION,** | |
| **Defendant Intervenors.** | |

**DECLARATION OF LANSTON CHINN**

Lanston Chinn hereby declares as follows:

1. I am over the age of 18, of sound mind, and I am competent to make this declaration.

2. I am the CEO of Kuukpik Corporation ("Kuukpik"), which was formed in 1973 under the provisions of the Alaska Native Claims Settlement Act ("ANCSA"). Kuukpik is the Alaska Native Village Corporation for the Inupiat village of Nuiqsut, located on the Nechelik Channel of the Colville River Delta, roughly 20 miles from the Beaufort Sea Coast on Alaska's North Slope.

3. I have been employed by Kuukpik since March of 1992. As a result, I am quite familiar with, and was one of the principal negotiators of, the 1997 Surface Use Agreement ("SUA") between Kuukpik and ARCO Alaska, Inc. (now re-named ConocoPhillips Alaska, Inc. ("CPAI")). I am also very familiar with and was a principal negotiator of the other related documents as to which Plaintiffs in this case seek an order to compel production, including the 1997 1431(o) Consent Agreement between Kuukpik and Arctic Slope Regional Corporation ("ASRC"), the 1997 Lease Amendment Agreement between ASRC and ARCO Alaska, Inc., and the 1992 Settlement Agreement between ASRC and Kuukpik.

4. Almost all of Kuukpik's business activities are based on the economic opportunities provided by the oil and gas industries. Nuiqsut is located just 8 miles from CPAI's Alpine oil field. This field was the largest on-shore oil field discovered in North America in almost 15 years, and it was the first North Slope oil discovery on Native owned lands since the enactment of ANCSA in 1971. The Alpine oil field itself lies in the Colville River Delta, which is one of the most ecologically rich and sensitive areas of the North Slope.

5. Prior to the discovery of Alpine, Nuiqsut was primarily a subsistence based economy, and subsistence remains an integral way of life for the Inupiat people of Nuiqsut, who still live from the land and the sea and hunt caribou, moose, birds, fish, and whale. The North Slope Borough's <u>2003 Economic Profile and Census Report</u> shows that 70 % of all households in Nuiqsut get half or more of their foods from subsistence,

and another study shows consumption of 742 pounds of subsistence resources per person per year. For most residents of Nuiqsut who are more than 45 or 50 years old, English is a second language.

6. More than 95 percent of the roughly 500 residents of Nuiqsut are Kuukpik shareholders, married to shareholders or children of shareholders. Kuukpik is the surface owner of roughly half the land overlying the Alpine oil field, which lies in the heart of Nuiqsut residents' traditional subsistence range. Some of the surface lands owned by Kuukpik are within an area known as the National Petroleum Reserve – Alaska ("NPRA"), and some are located outside and to the east of NPRA.

7. The SUA and related agreements are about far more than compensation for the use of land. The SUA, the 1431(o) Agreement, the Lease Amendment Agreement and the 1992 Settlement Agreement are over 200 pages or more of highly complex agreements that were intended to govern almost every aspect of not just (what was then) ARCO's exploration, development, production and decommissioning of Alpine on Kuukpik lands, but also to set minimum standards and conditions for development and operation of future oil discoveries on Kuukpik's lands. In addition, the SUA includes provisions for education and training for Kuukpik shareholders and their families and Nuiqsut residents, preferences in contracting and local employment, standards for rehabilitation of lands following decommissioning of oil fields, and contractual environmental protections which incorporate not only state and federal environmental standards, but also specific environmental standards and stipulations developed by Kuukpik and a subsistence oversight panel to monitor ARCO's activities. As further

consideration for CPAI's use of what will eventually be over 145,000 acres of Kuukpik lands (after conveyance of all ANCSA lands to Kuukipk), the SUA requires that CPAI make certain annual payments to Kuukpik and provide other financial support to Kuukpik for, among other purposes, the oversight panel and employment training and education.

8. With regard to royalties, the SUA directs that CPAI pay to Kuukpik the royalties specified in the 1431(o) Consent Agreement. That agreement, which is between ASRC and Kuukpik, gave Kuukpik's consent to ASRC to develop ASRC's NPRA subsurface (some of which ASRC owns with the State of Alaska as part of an earlier 1991 settlement agreement between the State and ASRC resolving disputes about subsurface ownership beneath Kuukpik's non-NPRA lands). The 1431(o) Consent Agreement provides for Kuukpik to receive varying overriding royalty percentages as to various different tracts, with such royalties expressly coming out of ASRC's royalty interests. This is also reflected in the 1997 Lease Amendment Agreement between ASRC and the oil company lessees, which provides for corresponding reductions in the royalties paid to ASRC. The 1992 Settlement Agreement gave Kuukpik consent to oil and gas exploration and development with respect to ASRC/State subsurface outside of NPRA in exchange for certain consideration, including a small overriding royalty which was also deducted from ASRC's royalty share.

9. The specifics of the SUA and these related agreements are highly confidential and are regarded as and treated by Kuukpik as trade secrets. Revealing anything more definite than what is described generally above runs the very real risk of compromising that confidentiality. The importance of maintaining that confidentiality to both Kuukpik

and to CPAI is demonstrated by an effort made several years ago by the Alaska Division of Oil & Gas ("ADO&G"), which represents the State in its capacity as an owner of oil-producing lands, to obtain a copy of the SUA. ADO&G indicated that it intended to withhold from its upcoming lease sales certain tracts of land subject to the SUA unless it first had an opportunity to review the SUA. In response, both CPAI (which wanted to lease the tracts in question) and Kuukpik (which stood to get royalties if oil were found on some of those tracts) still refused to provide ADO&G with a copy of the SUA. Those events are partially described at page 9 of ADO&G's Findings and Decision of April 22, 2004, which is attached to Plaintiffs' motion to compel as Appendix B to the Declaration of Edward Morse. Other requests to obtain access to the SUA or the related agreements by those who are not parties to the agreements have similarly and uniformly been denied by Kuukpik and CPAI.

10. I cannot overemphasize how damaging to Kuukpik and the community of Nuiqsut the disclosure of the terms of the SUA, the 1431(o) Consent Agreement, the Lease Amendment Agreement and the 1992 Settlement Agreement would be. The oil and gas industry is basically all that there is when it comes to opportunities for private economic development and employment in all of the hundreds of square miles around Nuiqsut. Using the benefits of the SUA, Kuukpik has developed various joint ventures to offer oil and gas services in specialties such as ice roads, seismic work and camps and catering. If other contractors or the public knew the nature and scope of the preferences and assistance that Kuukpik gets from CPAI in the areas of oil field service work and Native hire and training, much of Kuukpik's competitive advantage would be lost.

11. All of the terms of the SUA and related agreements are sensitive and proprietary as new oil companies come to the area and seek access to or across Kuukpik lands. There are disagreements between ASRC and Kuukpik as to the applicability of the SUA and related agreements to other oil and gas operators coming into the area. Even if there were not, the SUA was negotiated with a single, dominant leaseholder in mind and many of its terms don't necessarily fit other oil companies with much smaller lease holdings coming into the area (as some of CPAI's leases have expired or been released, other oil companies have acquired that acreage, though none have holdings of Kuukpik surface lands remotely the size that CPAI had in 1997 or has now). As Kuukpik tries to come to agreement with those new companies, the SUA's terms need substantial modification for lessees holding far smaller tracts of land who seek access and use of Kuukpik lands. In addition, as Kuukpik and the community of Nuiqsut have experienced at first hand over the past 10 years the impacts of having a massive oil and gas industrial facility and extensive exploration activities ongoing on the community's traditional subsistence lands, Kuukpik has learned of other protections and terms that Kuukpik would seek in any negotiation with other oil companies. For instance, in Kuukpik's current negotiations for surface access for exploratory work with a small independent oil company, Brooks Range Petroleum (AVCG, Inc.) which leases some of Kuukpik's lands formerly held by CPAI, Kuukpik has not and will not give Brooks Range a copy of the SUA and related agreements and instead seeks to negotiate both a more tailored access agreement and one that includes some of the lessons Kuukpik and Nuiqsut have learned since 1997. If Brooks Range Petroleum finds oil or gas, the scope and terms that would

be at issue in negotiating a permanent access agreement would be very similar to those of the SUA. Since CPAI has found five satellite oil fields around Alpine, there is a substantial chance that Brooks Range Petroleum or some other oil company is going to be negotiating a permanent access agreement with Kuukpik in the future. Other companies will want access across Kuukpik lands as the exploration activities further west in NPRA leads to development there. FEX, a subsidiary of Talisman Energy, Inc., has already announced a discovery in NPRA west of Lake Teshekpuk which will likely involve a pipeline or other access across Kuukpik lands. FEX will need to negotiate the terms of that access with Kuukpik or choose a different route (oil pipeline routes and heights are among the most contentious issues between the oil industry and Native inhabitants because such pipelines often deflect migrating caribou, which are probably the most critical part of the Native subsistence diet). Having the terms of the SUA and related agreements disclosed would inevitably impact all of those negotiations and could potentially force Kuukpik and the community in directions and to terms disadvantageous to both.

11. Kuukpik and the community of Nuiqsut have seen a consistent pattern of oil companies trying to use their vastly greater knowledge of the oil and gas industry and the oil and gas resources under Kuukpik's lands to their advantage in negotiations with Kuukpik. As new oil and gas companies seek access to Kuukpik lands, Kuukpik seeks to maintain every competitive edge that we have in negotiating with those companies and in competing with other oil and gas service companies for work for Kuukpik's own joint ventures. In access negotiations, Kuukpik and the community have important

proprietorial information and competitive advantages as described above, and Kuukpik needs very much to maintain those advantages as we deal with far bigger and better funded commercial organizations.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED this 20th day of June, 2007.

Lanston Chinn

**Certificate of Service**

I hereby certify that on the 22nd day of June, 2007, I electronically filed the foregoing DECLARATION OF LANSTON CHINN with the Clerk of the Court using the CM/ECF System which will send notification of such filing to all parties of record.

RAYMOND C. GIVENS
Givens Law Firm
P.O. Box 400
912 E. Sherman Ave.
Coeur d'Alene, Idaho 83816-0400
Tel. (208) 676-1310
Fax: (208) 676-1296
E-mail: raygivens@givenslaw.com
Attorney for Plaintiffs

JAMES M. UPTON
U.S. Department of Justice
Environment & Natural Resources Div.
Natural Resources Section
P.O. Box 663
Washignton, D.C. 20044-0663
Tel. (202) 305-0482
Fax: (202) 305-0506
E-mail: james.upton@usdoj.gov
Attorney for Defendant
jperkins@guessrudd.com

LOUIS R. VEERMAN
GARY ZIPKIN
JOSEPH J. PERKINS, JR.
Guess & Rudd P.C.
510 L Street, Suite 700
Anchorage, Alaska 99501
(907) 793-2200 (switchboard)
(907) 793-2299 (fax)
E-mail: d.veerman@guessrudd.com
gzipkin@guessrudd.com

Attorneys for Intervenors