IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WALLACE OENGA, GEORGENE SHUGLUK, LEROY OENGA, SR., MICHAEL DELIA, TONY DELIA, JOSEPH DELIA, JENNIE MILLER, and TRINITY DELIA, | ) | |
| Plaintiffs, | ) | Case No. 06-491 L |
| | ) | (ECF No. 1-06-cv-00491-EJD) |
| vs. | ) | Chief Judge Edward J. Damich |
| THE UNITED STATES, | ) | |
| Defendant, | ) | |
| and | ) | |
| BP EXPLORATION (ALASKA) INC., CONOCOPHILLIPS ALASKA, INC., EXXONMOBIL ALASKA PRODUCTION INC., CHEVRON U.S.A. INC., and FOREST OIL CORPORATION, | ) | |
| Intervenor-Defendants. | ) | |

**APPENDIX (EXHIBITS A THROUGH P) TO INTERVENOR-DEFENDANTS' MEMORANDUM IN SUPPORT OF INTERVENOR-DEFENDANTS' *CORRECTED* MOTION FOR PARTIAL SUMMARY JUDGMENT (CLAIM THREE OF PLAINTIFFS' FIRST AMENDED COMPLAINT)**

Intervenor-Defendants, by and through their attorneys, Guess & Rudd P.C., hereby file this APPENDIX to their memorandum in support of their motion for summary judgment in favor of the Defendant and Intervenor-Defendants and against Plaintiffs respecting Claim Three of Plaintiffs' First Amended Complaint filed herein on September 18, 2006.

**Table of Contents—Appendix (Exhibits A through P)**


| | | Page |
|---|---|---|
| Exhibit A: | Lease Agreement (BIA Lease No. F-89-01) between Andrew Oenga (with the approval of the Secretary of the Interior) and BPX, effective January 1, 1989, and recorded on February 1, 1989, at Book 53, Pages 873-890, Barrow Recording District ("Original 1989 Lease Agreement") | 4 |
| Exhibit B: | BPX's unrecorded letter of July 29, 1993, to the Bureau of Indian Affairs | 23 |
| Exhibit C: | Agreement To Amend BIA Lease among the heirs of Andrew Oenga (with the approval of the Secretary of the Interior) and BPX, effective January 20, 1994, and recorded on May 2, 1994, at Book 74, Pages 292-298, Barrow Recording District ("1994 Lease Amendment") | 26 |
| Exhibit D: | Third [sic] Amendment To BIA Lease among the heirs of Andrew Oenga (with the approval of the Secretary of the Interior) and BPX, effective May 11, 1995, and recorded on June 14, 1995, at Book 79, Pages 223-227, Barrow Recording District ("1995 Lease Amendment") | 34 |
| Exhibit E: | Evidence of change of name by Standard Alaska Production Company to BP Exploration (Alaska) Inc., effective January 31, 1989 | 40 |
| Exhibit F: | Native Allotment Certificate No. 50-2005-0580, dated September 27, 2005 | 53 |
| Exhibit G: | Tentative Approval decision dated October 9, 1964, as amended by the decision of February 7, 1969 (as corrected on February 19, 1969), as partially rescinded by the decision of March 11, 1980, and as partially rejected by the decision of August 4, 1980 | 56 |
| Exhibit H: | State of Alaska Competitive Oil and Gas Lease ADL-34630 effective as of April 1, 1967 | 71 |
| Exhibit I: | U.S. Patent No. 50-74-0093, dated March 27, 1974 | 78 |

| | | |
|---|---|---|
| Exhibit J: | Letter Agreement dated January 27, 1994, among BPX, ARCO Alaska, Inc., and Exxon Corporation ("Facility Sharing Agreement") | 83 |
| Exhibit K: | DNR Decision dated June 27, 2000 (as amended, with errata changes), approving BPX as sole operator of the Prudhoe Bay Unit Area | 89 |
| Exhibit L: | DNR Decision dated March 2, 1994, approving formation of Niakuk Participating Area | 104 |
| Exhibit M: | DNR Decision dated November 17, 1997, approving (1) expansion of Niakuk Participating Area and (2) formation of West Niakuk Participating Area | 125 |
| Exhibit N: | DNR letters dated September 12, 2005, October 27, 2005, and March 21, 2006, respecting certain approved Tract Operations | 144 |
| Exhibit O: | DNR Decision dated December 4, 1986, approving formation of Lisburne Participating Area | 153 |
| Exhibit P: | BPX's Responses (dated March 26, 2007) To Plaintiffs' First Interrogatories | 158 |


[In preparing this Motion for Partial Summary Judgment, BPX discovered a few errata in its initial Responses To Plaintiffs' First Interrogatories. BPX will correct these errata as soon as possible and then (1) serve said corrected Responses upon all parties and (2) file a corrected Exhibit P with the court.]

**EXHIBIT A**

Lease Agreement (BIA Lease No. F-89-01) between Andrew Oenga (with the approval of the Secretary of the Interior) and BPX, effective January 1, 1989, and recorded on February 1, 1989, at Book 53, Pages 873-890, Barrow Recording District ("Original 1989 Lease Agreement")

U.S. Department of the Interior
Bureau of Indian Affairs

LEASE AGREEMENT

BIA Lease No. F-89-01

THIS Lease Agreement is made and entered into effective January 1, 1989, by and between Andrew Oenga, an Alaska Native, of Barrow, Alaska [with the approval of the Secretary of the Department of the Interior (the "Secretary") or his duly authorized representative, acting for, and on behalf of Mr. Oenga] hereinafter referred to as the "Lessor"; and Standard Alaska Production Company, a Delaware corporation, its agents, assigns, contractors, subcontractors and/or sublessees, hereinafter called "Lessee", in accordance with the provisions of existing law and regulations at [25 CFR 162 (1987)] which by reference are made a part hereof.

WITNESSETH, that for and in consideration of the mutual covenants and agreements provided herein, the Lessor hereby leases to the Lessee ten (10) acres of land, the "leased premises", which comprises a portion of Lessor's present and future interests in Parcel B of Alaska Native Allotment application F-14632. Said allotment is described as U.S. Survey 6904 T11N, R15E UM Sec. 1 and T12N, R15E UM Sec. 36. The remainder of the Native Allotment constitutes the "unleased premises". The allotment and leased premises are shown on the attached Exhibit A.

1. Lease Term: The term of this Lease Agreement shall be for twenty-five (25) years beginning on January 1, 1989, and expiring at midnight on December 31, 2014, unless extended or unless sooner terminated pursuant to the terms of this Lease Agreement. The anniversary date of this Lease Agreement is January 1st of each year following the year in which this Lease Agreement was executed.

The first ten years of the lease term shall constitute a period within which the Lessee shall attempt to obtain required permits for the Niakuk Project.

During this period, unless written notice to procede has been served, Lessee has the option to cancel this Lease Agreement at any time. If Lessee cancels this Lease Agreement, Lessee shall provide written notice of such cancellation to the Lessor and the Superintendent, Bureau of Indian Affairs in Fairbanks, Alaska not less than ninety (90) days prior to any anniversary date of this Lease Agreement. Cancellation of this Lease Agreement shall not be effective unless the written notice required herein is timely received.

Also during the initial ten (10) year period, Lessee must notify the Lessor and the Superintendent, Bureau of Indian Affairs in Fairbanks, Alaska of the status of the permitting process and/or of the Niakuk Project. Such notice shall be given at the time the annual rental payments are made and at any other time that, in the opinion of the Lessee, such notice is either warranted and/or appropriate; provided however, that such notice is required within ninety (90) days of the date the Niakuk Project is either fully permitted or the project is cancelled or delayed.

If Lessee serves written notice that it intends to procede with the Niakuk Project, then this lease will be deemed to have been taken for consecutive five (5) year periods and provisions of Section 15 shall become operative and effective on the next ensuing anniversary date of this Lease Agreement. If the final period is less than five (5) years, Lessee shall only be obligated for rental payments up to the expiration date of this Lease Agreement or any extension thereof.

At the end of this initial ten (10) year period, provisions of Section 15 automatically become effective and operative.

2. Option to Extend: The Lessee shall have the option, at its sole discretion, to extend the term of this Lease Agreement for additional five (5) year periods up to a maximum of twenty-five (25) years at the end of the original lease term. Notification of the exercise of this option shall be made in writing, not less than ninety (90) days prior to the original expiration date of this Lease Agreement.

3. Lease Bonus: As a bonus for executing this Lease Agreement, Lessee hereby agrees to pay Lessor the sum of twenty-five thousand dollars.

The bonus shall be paid upon approval of this Lease Agreement by the Superintendant, Bureau of Indian Affairs Fairbanks Agency.

4. Lease Rentals: As rental for the leased premises, the Lessee agrees to pay the U.S.D.I. - Bureau of Indian Affairs for Andrew Oenga, c/o Bureau of Indian Affairs, 101 12th Avenue Box 16, Fairbanks, Alaska 99701 for credit to the Lessors Indian Individual Money Account (account #985-U183) the sum of $16,000 per year ($1,600.00/acre X 10 acres) for each of the first five (5) years of the Lease Agreement. Lessee shall not be obligated to change either the designated payee or depository unless notified in writing, pursuant to section 31 below, at least sixty (60) days prior to the anniversary date of this Lease Agreement. Lease rental payments are due on the anniversary date of the lease and are payable in advance for the next succeeding year.

In the event of the death of the Lessor during the term of this Lease Agreement, and while the leased premises are in restricted status, all rentals remaining due or payable to the decedent or his representative under the provisions of the Lease shall be paid to the Superintendent, Bureau of Indian Affairs, 101 12th Avenue Box 16, Fairbanks, Alaska 99701 for credit to the Lessors Indian Individual Money Account. (For the purposes of this Lease Agreement, it is understood that restricted status is defined as a land status where lands are restricted or held for the benefit of Indians and are not subject to taxation; nor to alienation or encumbrances, and/or encroachment without the consent of the Secretary of Interior or his delegated representative.) While the leased premises are in restricted status, the Secretary may, in his discretion, suspend the direct rental payment provisions of this Lease, in which event the rentals shall be paid to the Superintendent, Bureau of Indian Affairs, Fairbanks, Alaska for credit to the account of this Lease Agreement.

5. Lease Rental Adjustments: Rental payments may be increased at successive five-year intervals beginning in the sixth year after rental payments have begun. Such adjustments will be based upon either the fair market undeveloped rental value for the property established by a Bureau of Indian Affairs appraisal (see section 9, Reappraisal Procedures) or the

adjustment will be based on the application of a "Cost Adjustment Factor"; which ever is greater. For the purposes of this Lease Agreement, "Cost Adjustment Factor" shall mean the ratio of (i) the most recently published Consumer Price Index to (ii) the most recently published Consumer Price Index as of the execution date of this Lease Agreement. The Consumer Price Index shall mean the U.S. Consumer Price Index, all items and all urban consumers, U.S. city average, 1982-84 equals 100, as first published, without seasonal adjustment, by the Bureau of Labor Statistics, Department of Labor, without regard to subsequent revisions or corrections by such Bureau. For the second and subsequent rental adjustments, the "Cost Adjustment Factor" shall mean the ratio of (i) the most recently published Consumer Price Index to (ii) the difference between the most recently published Consumer Price Index and the Consumer Price Index upon which the previous rental adjustment was or would have been based. Should this index be changed, altered, or ceased to be published the following will apply: a) if subject index is changed so that the base year differs from that used as of the year in which the term commences, the subject index shall be converted in accordance with the conversion factor published by the publisher of that index; b) if the subject index is discontinued or revised during the term of this agreement such index shall be replaced by another government index which will obtain substantially the same results as would be obtained if the subject index had not been discontinued or revised. It is agreed and understood by all parties that the rental payments will not escalate by more than 50% in any single five (5) year period.

6. Delinquent Rental Payment: Any payment received after the fifteenth (15th) day subsequent to the anniversary date of each year during the lease term shall be considered delinquent and a late fee of $250.00 will be assessed.

7. Interest on Rentals Past Due: If any rental payment is not paid within thirty (30) days after becoming due, interest at the rate of eighteen (18) percent per annum, compounded annually, will become due and payable from the day such rental was due, and will run until the delinquent rental is paid.

8. Default and Remedies: If the Lessee should fail to perform or to comply with any term or condition of this Lease Agreement, the Lessor,

after written notice giving Lessor a ten (10) day period within which to respond, may pursue his rights to re-enter, re-let, evict, terminate the Lease Agreement or recover rents or any other remedy he has under law. Lessee shall be given a reasonable time to cure such default or breach. Such a violation of the Lease Agreement shall also be acted upon in accordance with the regulation at 25 CFR 162.14 (1987), so long as title to the leased premises remains restricted by the Secretary.

9. Reappraisal Procedures: Neither the Secretary nor any appraiser may consider the rentals provided for in this Lease Agreement for any purpose in determining the fair market rental rate pursuant to Paragraph 3 of this Lease Agreement. The Bureau of Indian Affairs review for purposes of establishing the fair rental value of the premises shall be based on the highest and best use of the premises as raw, unimproved vacant land at the time of the appraisal and shall not be based on the cost or value of improvements or developments made by the Lessee or any income the Lessee derives from the leased premises.

In all cases, Lessee shall be a proper party with standing to contest the reasonableness of the Secretary's rental determination.

If, during the term of this Lease Agreement, Lessor receives unrestricted title to the premises, the functions assigned to the Secretary hereunder shall be performed by a designated appraiser mutually acceptable to the parties, with the costs of such appraisal to be borne equally by the parties.

10. Use of Leased/Unleased Premises: The Lessee may use the leased premises for any and all oil field exploration, development, construction, facilities, production and support purposes, and for any other uses and purposes reasonably or conveniently related thereto. The unleased premises may be used for geotechnical, survey and design work at any time prior to commencement of construction activities. Said uses shall be without cost to lessee and will not require separate or additional permits from the Lessor. The Lessee shall make no unlawful uses of the leased and/or unleased premises, or knowingly permit any unlawful activity to be conducted thereon by others.

11. Improvements: The Lessee may construct any facilities (pipelines, access roads, causeway approaches, drilling pads, a construction staging pads or any other required facilities) on the leased premises as long as construction is limited to the ten (10) acres as herein described on Exhibit A. This Lease Agreement may be amended to increase or decrease the size of the leased premises at any time at Lessee's sole discretion. If the leased premises is so increased or decreased, Lessee shall proportionately increase or decrease its lease rental payments effective on the next ensuing lease anniversary date after such increase or decrease; provided however that rental amounts shall be pro rated beginning on the date that leased premises is increased or decreased. It is agreed and understood by all parties that the leased premises cannot be reduced to less than the ten (10.0) acres originally taken under this Lease Agreement. All improvements placed on the leased premises by the Lessee shall remain the property of the Lessee during the term of this Lease Agreement and any extension thereof, and shall become the property of the Lessor at the final expiration of this Lease Agreement or any extension thereof. Prior to the expiration or termination of this Lease Agreement, Lessee may remove any improvement, provided that Lessee restore the leased premises to a condition satisfactory to the Secretary and the regulatory agencies with jurisdiction over this project. The Lessee shall not remove permanent improvements such as gravel pads, utilities and permanent structures that regulatory agencies determine cannot be removed without substantial damage to either the structure(s) or the leased premises.

12. Maintenance of Leased Premises: The Lessee, at its sole expense, shall keep the leased premises, and any improvements placed thereon, in good order and repair, ordinary wear and tear excepted.

13. Sublease: Lessee may sublease all or portions of the leased premises to others, as it may see fit, for uses permitted under this Lease Agreement; provided, however, that the Lessee shall remain primarily responsible to the Lessor for the payment of annual rentals when due, and for the observance of all terms and conditions of this Lease-Agreement.

14. Surrender at End of Term: The Lessee agrees that upon the last day of the Lease term, or upon the last day of any extension thereof, it will

peaceably and quietly vacate and surrender the leased premises to the Lessor, free and clear of any hazardous waste and/or material and in a condition satisfactory to the Secretary and the regulatory agencies with jurisdiction over this project. The Lessee agrees that it will in a similar manner vacate and surrender in good condition any improvements remaining on the premises, ordinary wear and tear excepted. The Lessee makes no warranty of fitness for a particular purpose or warranty of merchantability for any improvements left on the leased premises.

15. Option to Cancel: Lessee may, for any reason, cancel this Lease Agreement at the end of each five (5) year period during the Lease Agreement term or any extension thereof. Such cancellation will be effective upon written notice to the Lessor and the Superintendent, Bureau of Indian Affairs in Fairbanks, Alaska not less than ninety (90) days prior to the end of each five (5) year period.

16. Termination for Acts of God: The Lessee shall have the right to cancel this Lease Agreement, and all of its obligations hereunder, after serving written notice consistent with other cancellation provisions in the Lease Agreement, one year after an event constituting an act of god. As used in this Lease Agreement, an act of god means the prevention of Lessee from complying with any expressed or implied covenant of this Lease Agreement after efforts made in good faith, by reason of war, riots, acts of God, severe weather, acts of governmental authorities, failure or lack of adequate transportation facilities, or any other cause beyond Lessee's reasonable control whether similar to those enumerated or not.

17. Insurance: The Lessee hereby certifies that it is self-insured for any liability incurred under this Lease Agreement for an amount up to $5 million. The Lessor shall receive the benefit of such self-insurance in the same fashion as if he were co-insured. If self-insurance shall cease, the Lessee shall furnish the Lessor with certificates of insurance in an equivalent amount.

18. Indemnification of the Lessor: The Lessee shall protect, indemnify, and save the Lessor harmless against any and all liabilities,

claims, damages, penalties, litigation, or costs and expenses related thereto (including, without limitation, reasonable attorney's fees) which may be imposed upon, incurred by, or asserted against the Lessor by reason of (a) any accident or injury to, or death of any person, or loss or damage to any personal or real property occurring on the leased premises, or any part thereof; (b) any use, non-use or condition of the leased premises, or any part thereof; (c) any failure on the part of Lessee to perform, forebear, or otherwise comply with any of the terms of this Lease Agreement; (d) performance of any labor, services, or the furnishing of any materials with respect to the leased premises, or any part thereof. If any lawsuit or administrative proceeding is brought against the Lessor by reason of any such occurrence, the Lessee shall, upon the Lessor's request, defend the suit or proceeding, or cause the same to be defended by counsel designated by the Lessee. Notice of such a proceeding shall be given by the Lessor to the Lessee as soon as practicable, and in no event later than ten (10) days after the Lessor has received notice of such a proceeding.

19. <u>No Claims Against Lessor</u>: Nothing contained in this Lease Agreement shall comprise the consent or request by the Lessor, whether expressed or implied, for the performance of any labor or services, or the furnishing of materials or other property, with respect to the leased premises or any part thereof; nor shall it give the Lessee any right, power, or authority to contract for or permit the performance of any labor or services, or the furnishing of any materials or other property, in any manner which would permit the making of a valid claim for payment against the Lessor.

20. <u>Condition of the Leased Premises</u>: The Lessee agrees that it is entirely familiar with the physical condition of the leased premises. The Lessor makes no representation or warranty with respect to the condition of the leased premises, nor with respect to its fitness or availability for any particular use or purpose. The Lessor shall not be liable for any latent or patent defect in the leased premises.

21. <u>Approval</u>: It is understood and agreed between the Lessor and the Lessee that this Lease Agreement, and any subsequent amendment or extension thereto, shall be valid and binding only after approval by the

Secretary or his authorized delegate pursuant to 25 CFR 162 (1987), except as may be provided in paragraph 26 herein.

22. Relinquishment of Restricted Title by the Secretary: Nothing contained in this Lease Agreement shall delay or prevent a termination of federal trust responsibilities with respect to the leased premises, by issuance of a fee patent or otherwise during the term of this Lease Agreement or any extension thereof. Termination of such responsibilities shall not act to abrogate the Lease Agreement. The Secretary shall notify the Lessor and the Lessee of any such change in the legal status of title to the leased premises. If a certificate of competency removing restrictions against alienation or encumbrance is issued by the Secretary to the Lessor, it shall be promptly recorded by the Lessor, and thereafter all references in this Lease Agreement to the powers, duties, or discretion of the Secretary regarding this Lease Agreement, or any extension thereof, shall have no further applicability or effect.

23. Taxes and Assessments: The Lessee shall be responsible for, and shall timely pay, all lawful federal, state, borough or local taxes, fees, or assessments (including any interest and penalties thereon) which during the term of this Lease Agreement are assessed, levied, imposed upon, or become a lien upon the leased premises or any interest therein, or upon any alteration, addition, or improvement thereto, or upon personal property of any kind owned by and placed upon the leased premises by the Lessee, or upon any occupancy, use or possession of the leased premises or any part thereof, before any fine, penalty, interest, or cost becomes applicable. Lessor shall promptly provide to the Lessee all notices of levy, taxation, assessment or lien which Lessor receives with respect to the leased premises, and the Lessee shall have full authority to contest or seek adjustment of any such tax or assessment, by appropriate administrative or judicial proceedings. The Lessee shall not be obligated to pay any such taxes, fees or assessments which it is contesting in good faith, until the final adjudication of such dispute. It shall take reasonable action, however, to assure that Lessor's interest in the premises is not prejudiced by such contest.

24. Eminent Domain: If the leased premises, or any part thereof, is condemned or taken by eminent domain for any lawful use or purpose, then as

to the portion so taken, the term of this Lease Agreement shall terminate as of the date of title vesting in such proceeding, all rentals then due shall be paid to that date, and the parties shall thereafter have no claim against each other for the value of the unexpired term of the Lease Agreement as to that portion. In the event of any such condemnation or taking, whether whole or partial, the Lessee shall be entitled to a pro rata share of the award paid for such condemnation, based upon the proportion of the award attributable to the value of any improvements placed upon the leased premises by the Lessee.

25. Inspection: The Secretary, the Lessor, and their authorized representatives may enter the leased premises or any part thereof at all reasonable times and subject to reasonable conditions, including but not limited to, reasonable notice to Lessee, for the purposes of inspecting the premises, except that the Secretary and his authorized representatives may inspect as authorized by law or to exercise any other right of Lessor provided in this Lease.

26. Right of Access: The Lessor retains a right of reasonable access across the leased premises. Such access shall not conflict with the purposes of this Lease Agreement or the uses and improvements authorized hereunder. For purposes of such access, the Lessor shall be entitled to use the access road constructed by Lessee pursuant to this Lease Agreement, subject to compliance with Prudhoe Bay Unit security procedures.

27. Entire Agreement: This Lease Agreement, together with any exhibits attached hereto, comprises the entire agreement and sets forth all prior covenants, promises, agreements, conditions, and understandings, whether oral or written, between the Lessor and the Lessee and concerning the leased premises. No subsequent agreement, condition or understanding, whether oral or written, which is not set forth in this Lease Agreement, or in any duly-approved written amendment thereto, shall be enforceable unless it is reduced to writing and signed by all the parties to this Lease Agreement.

28. Lease Amendment and Interpretation: If any provision of this Lease Agreement, or the application thereof, is invalid or unenforceable, the remainder of this Lease Agreement and other applications of such provisions

shall not be affected by it, unless otherwise specifically provided herein. This Lease Agreement may be changed, waived, discharged, or terminated only by a document in writing signed by the party against whom enforcement of such change, waiver, discharge, or termination is sought. The paragraph headings in this Lease Agreement are for purposes of reference only, and shall not limit or define the meaning of such paragraphs. This Lease Agreement may be executed in several counterparts, each of which is an original, but all of which shall constitute one instrument.

29. Waivers: The waiver of any breach or default of any covenant, condition or stipulation contained herein shall not be deemed to cause a waiver of any subsequent breach or default of the same or any other covenant, condition or stipulation, nor shall any failure to enforce any right or seek any remedy with respect to any obligation under this Lease Agreement prejudice or affect the future rights or remedies of the parties.

30. Successors in Interest: Each term, covenant, and condition contained in this Lease shall be binding upon and shall inure to the benefit of the heirs, executors, administrators, successors, and assigns of the parties hereto. So long as title to the leased premises is in a restricted status, all of the Lessee's obligations under this Lease Agreement shall run to the United States as well as to the Lessor.

31. Notices: All notices and other communications required or convenient under this Lease Agreement shall be in writing, and shall be deemed to have been given when mailed by first class certified mail, postage prepaid thereon, and addressed as follows: (a) Superintendent, Bureau of Indian Affairs, 101 12th Ave. Box 16, Fairbanks, Alaska 99701, or at such other address as the Secretary shall have furnished to the parties in writing; (b) LESSOR: Mr. Andrew Oenga, P.O. Box 201, Barrow, Alaska 99723, or at such other address as the Lessor shall have furnished to the parties in writing; and (c) Standard Alaska Production Company, Attn: Land Manager, P.O. Box 196612, Anchorage, Alaska 99519-6612, or at such other address as the Lessee shall have furnished to the parties in writing. Notices to Lessee regarding any changes of rental recipient (payee) and/or depository shall not be binding upon Lessee unless said notice is received at least sixty (60) days prior to the Lease Agreement anniversary date.

32. Interest of Members of Congress or Department: No member of Congress, or agent of the Department of the Interior, shall receive any share of this Lease Agreement, or any benefit that may arise herefrom. This provision shall not be construed to extend to the general benefits received by the Lessee as a corporation, on behalf of all of its shareholders.

33. Corporate Qualification: Standard Alaska Production Company certifies that it is in all respects qualified to enter into and perform this Lease Agreement, as attested by Bureau of Land Management qualification file 063890 and State of Alaska qualification file ADL QF-1768. The Lessor has the following current bonds on file: Alaska Oil and Gas Conservation Commission Bond 2S100302630-277 ($200,000), Alaska Statewide Oil and Gas Bond 2S100302630-295 ($500,000) and Alaska Statewide Miscellaneous Land Use Bond 64S10052736BCA ($1,000,000).

BOOK 0053 PAGE 885

FOR THE LESSOR:

DATED: Jan. 17, 1989 By: Andrew Oenga
Andrew Oenga

Approved as to form and substance, and with the further assurance that this Agreement and its consequences have been explained to Andrew Oenga in a language in which he is fluent:

By: Roy A. Okakok

STATE OF ALASKA )
) ss.
SECOND JUDICIAL DISTRICT )

The foregoing instrument was acknowledged before me this 19th day of January, 1989 by Andrew Oenga the Lessor.

KATHLEEN F. DICKINSON NOTARY PUBLIC STATE OF ALASKA

NOTARY PUBLIC in and for Alaska
My Commission Expires: 1/27/92

BOOK 0053 PAGE 886

AFFIDAVIT OF INTERPRETER

I, Rex A. Okakok, of lawful age, being first duly sworn state the following: I interpreted this Lease Agreement for Andrew Oenga in the language in which he is fluent (Inupiaq) on JAN 19, 1989: and I performed a true translation of this Lease Agreement; and that Mr. Oenga stated that he executed this Lease Agreement of his own free will and was not acting under duress, menace, fraud or undue influence of any person; and that Mr. Oenga declared that he fully understood this Lease Agreement.

Rex A. Okakok

STATE OF ALASKA )
) ss.
SECOND JUDICIAL DISTRICT )

The foregoing instrument was sworn to and executed before me this 19th day of January 1989, by Rex A. Okakok.

[signature]
Notary Public

My Commission Expires 1/27/92

KATHLEEN F. DICKINSON NOTARY PUBLIC STATE OF ALASKA

FOR THE LESSEE:

Standard Alaska Production Company

DATED:________________ By: [signature]

Its:________________

Approved as to form and substance:

[signature]

John A. Reeder, Senior Attorney

STATE OF ALASKA )
) ss.
THIRD JUDICIAL DISTRICT )

The foregoing instrument was acknowledged before me this 16th day of January, 1989 by G.N. Nelson, the President of Standard Alaska Production Company, a Delaware corporation, on behalf of the corporation.

[signature: Loretta M. Togade]
NOTARY PUBLIC in and for Alaska
My Commission Expires: 8/8/89

NOTARY PUBLIC

BOOK 0053 PAGE 888

FOR THE SECRETARY OF THE INTERIOR: The within Lease Agreement is hereby approved, this 26 day of January 1989, pursuant to the authority delegated in Departmental Manual Release Number 2784; 230 DM 1-3, March 16, 1988 and redelegated by addendum to 10 BIAM, July 1, 1988:

DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS

DATED: 1/26/89

By [signature]
Superintendent
Fairbanks Agency

STATE OF ALASKA )
) ss.
FOURTH JUDICIAL DISTRICT )

The foregoing instrument was acknowledged before me this 20th day of January, 1989 by M.J. Stancampiano, the Fairbanks Agency Superintendent, United States Department of the Interior.

[signature]
NOTARY PUBLIC in and for Alaska
My Commission Expires: 1/27/92

KATHLEEN F. DICKINSON NOTARY PUBLIC STATE OF ALASKA

6183N

EXHIBIT A

BOOK 0053 PAGE 889




U.S. Survey 6904

T12N, R15E UM Sec. 36

T11N, R15E UM Sec. 1

| Right-of-way | (Approximate) |
|---|---|
| Length | 4,000' |
| Width | 100' |
| Area | 9.2 acres |

0 — 1 Mile

**STANDARD**
ALASKA PRODUCTION

NIAKUK PROJECT LOCATION MAP

DATE: 9/21/88 SCALE: As Noted SHEET: 1 of 2

BOOK 0053 PAGE 890




89-00 72
61-
c/c2 -
RECORDED ~~FILED~~
BARROW RECORDING
DISTRICT

FEB 1 2 00 PM '89

REQUESTED BY
STANDARD
ADDRESS
ALASKA PRODUCTION Co.
to to

**STANDARD**
ALASKA PRODUCTION

**NIAKÜK ONSHORE ACCESS ROAD**
**AND PIPELINES**
**SECTION C-C'**

DATE: 9/21/88 SCALE: 1"=20' SHEET: 2 of 2

Return To:
Stu Hirsh
Standard Alaska Production Co.
P.O. Box 196612
Anchorage AK 99519-6612

**EXHIBIT B**

BPX's unrecorded letter of July 29, 1993, to the Bureau of Indian Affairs

**BP EXPLORATION**

BP Exploration (Alaska) Inc.

July 29, 1993

Mr. Samuel Demientieff, Superintendent
Bureau of Indian Affairs
101 12th Avenue, Box 16
Fairbanks, Alaska 99701

<u>Notification of Niakuk Project Commencement</u>

<u>Request to Amend Surface Lease F88-01</u>

Dear Mr. Demientieff:

On January 1, 1989, BP Exploration (Alaska) Inc. (formerly Standard Alaska Production Company) entered into a surface lease agreement with Mr. Andrew Oenga for 10 acres of his 40 acre native allotment (F-14632) on Heald Point. The Lease provided authorization for BP to construct production facilities to support development of, and production from, our Niakuk oil accumulation.

Pursuant to requirements of Section 1 of the Lease, BP hereby provides notice to the Bureau of Indian Affairs that the first phase of the Niakuk Development Project has been approved and that development will procede on an accelerated schedule during the latter half of 1993. Further pursuant to Section 1, the Lease is converted from a year-to-year basis to a fixed twenty-five year term.

In order to make effective use of both the Leased and Unleased Premises and to protect our facilities from erosion, an armored production pad will be constructed at the tip of Heald Point. We have also redesigned and relocated our pipelines to the east side of the access road.

Consequently, pursuant to Section 11 of the Lease, BP hereby requests that the Lease be amended so as to increase the size of the Leased Premises from 10 acres to 20 acres effective August 1, 1993. The new Leased Premises are shown on the enclosed general location map. We will provide you with a more detailed exhibit to be attached to the Lease as soon as it becomes available.

Rent for the enlarged Leased Premises will be due January 1, 1994 and will be prorated back to the effective date of the Lease amendment.

Please indicate your approval of this amendment by signing in the space provided below and returning one original of this letter to the undersigned at our letterhead address. The remaining original is for your records.

Mr. Samuel Dimeinfieff
July 29, 1993
Page 2

We would appreciate your early attention to this matter as we hope to be in a position to begin gravel placement in early August. Please contact me at 564-4841 if you have any questions or if you need any additional information.

Sincerely,

Stu Hirsh, CPL
Senior Landman

The within Lease Amendment is hereby approved, pursuant to the authority delegated by 209 DM 8 dated November 17, 1981, Secretary's Order No. 3150 dated May 11, 1992, as amended March 5, 1993, and 10 BIAM Bulletin 13, dated November 19, 1992, as amended April 6, 1993, and the Addendum to 10 BIAM 3, dated January 17, 1989.

8-2-93

Samuel Demientieff, Superintendent — Date
Bureau of Indian Affairs
Fairbanks, Agency

**EXHIBIT C**

Agreement To Amend BIA Lease among the heirs of Andrew Oenga (with the approval of the Secretary of the Interior) and BPX, effective January 20, 1994, and recorded on May 2, 1994, at Book 74, Pages 292-298, Barrow Recording District ("1994 Lease Amendment")

Original Instrument Recorded Book 53 Page 873 BOOK UU17 PAGE Z9Z 985 1366

# AGREEMENT TO AMEND BIA LEASE F-89-01

This Agreement is made and entered into by and between Leroy Oenga, Wallace Oenga and Michael M. Delia whose address is P. O. Box 201, Barrow, Alaska 99723, Georgene Shugluk whose address is P. O. Box 91003, Atqasuk, Alaska 99791 and Jenny Oenga whose address is 309 Paystreak, Fairbanks, Alaska who are the immediate heirs and successors in interest of Andrew Oenga ("Lessors") [with the approval of the Secretary of the Department of the Interior ("the Secretary")] and BP Exploration (Alaska) Inc., the successor in interest to Standard Alaska Production Company ("Lessee") whose mailing address is P. O. Box 196612, Anchorage, Alaska 99519-6612 all of whom are collectively hereinafter are referred to as the ("Parties").

**Whereas,** the Lessee has previously leased a 20 acre portion of Lessor's Parcel B of Native Allotment F-14632 under provisions of BIA Lease F-89-01 (as amended) ("Lease") from the Lessors; and

**Whereas,** the Lessee desires to exercise its rights under the Paragraph 11 of the Lease to increase the size of the Leased Premises to include the entirety of Parcel B of Native Allotment F-14632; and

**Whereas,** the Lessors desire to lease the remaining unleased 20 acres of Parcel B to the Lessee; and

**Whereas,** the Parties desire to provide that lease rental payments be made in biennially instead of annually; and

**Whereas,** the Parties desire to provide for lease rental adjustments every four years instead of every five years: and

**Whereas,** the Parties desire that the Lease reflect the current heirs and successors in interest of the original Lessor and Lessee; and

**Whereas,** the Parties desire to amend the Lease to reflect the contractual relationship between the Arctic Slope Native Association Limited ("ASNA") and the Bureau of Indian Affairs ("BIA") wherein ASNA performs certain administrative realty related services on the behalf of the BIA; and

**Now Therefore,** in consideration of the mutual promises and covenants contained herein, the Parties agree as follows:

**Lease Preamble**

The description of the Leased Premised in the Lease Preamble is revised to read "The Leased Premises consists of the entire Parcel B of Alaska Native Allotment F-14632 legally described as USS 6904 T11N, R15E UM Sec. 1 and T12N, R15E UM Sec. 36."

**Paragraph 4. - Lease Rentals**

The last sentence in Paragraph 4 is revised to read "Lease rental payments are due on the anniversary date of the lease and are due and payable sixty (60) days in

advance for the next succeeding biennial period beginning with the rental payment due January 1, 1994 for the period January 1, 1994 through December 31, 1995. Lessee shall continue to make rental payments on a biennial basis sixty days before the anniversary date of the Lease. Lessors shall make no additional claims, requests or demands of Lessee for Lease rental payments, rental payment adjustments or rental payment advances except as set forth in paragraph 5."

**Paragraph 5. - Lease Rental Adjustments**

The first sentence in Paragraph 5 is revised to read "Rental payments may be increased at successive four-year intervals beginning in the sixth year after rental payments have begun".

**Paragraph 12.**

Paragraph 12 is revised to read :

"The Lessee, at its sole expense, shall keep the leased premises, and any improvements placed thereon, in good order and repair, ordinary wear and tear excepted; provided however that this provision shall not in any manner be construed so as to require the Lessee to protect the Leased Premises from natural erosion beyond the measures which, in its sole discretion, it deems necessary to protect its improvements placed thereon.

**Paragraph 13.**

The following paragraph is added to Paragraph 13:

"The Lessee shall provide written notice to the Lessor and to the Arctic Slope Native Association Limited if the Leased Premises are subleased. For the purposes of this Agreement, a sublease shall not include (a) facility sharing agreements or other transactions which do not convey an interest in real property, (b) any interest in the mineral estate underlying this Surface Lease or (c) any use of State of Alaska tidelands adjacent to the Leased Premises."

**Paragraph 15. Option to Cancel**

The second sentence in Paragraph 15 is revised to read:

"Such cancellation will be effective upon written notice to the Lessor and the Arctic Slope Native Association Limited in Barrow, Alaska not less than ninety (90) days prior to the end of each five (5) year period."

**Paragraph 31. Notices**

Item (a) is revised to read:

"Realty Officer, Arctic Slope Native Association Limited, P. O. Box 1232, Barrow, Alaska 99723."

BOOK 0074 PAGE 294

985 1366

Agreement to Amend
BIA Lease F-89-01

Item (b) is revised to read;

"Mr. Leroy Oenga
P. O. Box 201
Barrow, AK 99723

Mr. Michael M. Delia
P. O. Box 201
Barrow, AK 99723

Ms. Georgene Shugluk
P. O. Box 91003
Atqasuk, AK 99791

Mr. Wallace Oenga
P. O. Box 201
Barrow, AK 99723

Ms. Jenny Oenga
c/o 309 Paystreak
Fairbanks, AK 99712"

Item (c) is revised to read:

"BP Exploration (Alaska) Inc. Attn. Land Manager
P. O. Box 196612
Anchorage, AK 99519-6612"

**Effective Date of This Agreement**

This Agreement shall be effective when fully executed and approved by the Secretary; provided however, that the Lessee's election to increase the size of the Leased Premises shall be deemed effective on July 1, 1993 for the purposes of calculating rental payments pursuant to Paragraph 11 of the Lease.

**Entire Agreement**

This Agreement constitutes the entire agreement between the Parties in so far as this Lease amendment is concerned and supersedes any previous understandings whether written or oral. With the exception of the Lease amendments described above, the remaining provisions of Lease remain unchanged.

BOOK 0074 PAGE 295

Agreement to Amend
BIA Lease F-89-01

In Witness Whereof, the Parties have executed this Agreement on the dates below their respective signatures.

FOR THE LESSOR

Wallace Oenga 1-17-94 — Date

Leroy Oenga 1/13/94 — Date

Jenny Oenga 1/18/94 — Date

Michael M. Delia 1-17-94 — Date

Georgene Shugluk 1-17-94 — Date

FOR THE LESSEE

Jack E. Golden — Date
Vice President Endicott and
Development Programs

FOR THE SECRETARY

The within Lease Amendment is hereby approved, pursuant to the authority delegated by 209 DM 8 dated November 17, 1981, Secretary's Order No. 3150 dated May 11, 1992, as amended March 5, 1993, and 10 BIAM Bulletin 13, dated November 19, 1992, as amended April 8, 1993, and the Addendum to 10 BIAM 3, dated January 17, 1989.

1-20-94
Samuel Demientieff, Superintendent — Date
Bureau of Indian Affairs
Fairbanks, Agency

985 1366

RECORDED
AK TITLE SERVICES CENTER
PM 1:33
BUREAU OF INDIAN AFFAIRS
JUNEAU AREA OFFICE

Agreement to Amend
BIA Lease F-89-01

985 1366

**ACKNOWLEDGEMENTS**

STATE OF ALASKA )
) ss.
SECOND JUDICIAL DISTRICT )

THIS IS TO CERTIFY that on this the 17 day of January, 1994 before me the undersigned, a Notary Public for the State of Alaska personally appeared Leroy Oenga, and Michael M. Delia, and executed the foregoing document. WITNESS my hand and official seal this 17 day of January, 1994 at Barrow, Alaska.

OFFICIAL SEAL
DIANE L. STEVENS
NOTARY PUBLIC
BARROW, ALASKA
My Comm. Expires July 29, 1997

Diane L. Stevens
NOTARY PUBLIC FOR ALASKA

My commission expires: 7/29/97

STATE OF ALASKA )
) ss.
FOURTH JUDICIAL DISTRICT )

THIS IS TO CERTIFY that on this the 18th day of Jan, 1994 before me the undersigned, a Notary Public for the State of Alaska personally appeared Jenny Oenga, and executed the foregoing document. WITNESS my hand and official seal this 18th day of Jan., 1994 at Fairbanks, Alaska.

OFFICIAL SEAL
KATHLEEN F. DICKINSON
NOTARY PUBLIC
FAIRBANKS, ALASKA
My Comm. Expires January 27, 1996

[signature]
NOTARY PUBLIC FOR ALASKA

My commission expires: 1/27/96

STATE OF ALASKA )
) ss.
SECOND JUDICIAL DISTRICT )

THIS IS TO CERTIFY that on this the 17 day of January, 1994 before me the undersigned, a Notary Public for the State of Alaska personally appeared Wallace Oenga, and executed the foregoing document. WITNESS my hand and official seal this 17 day of January, 1994 at Barrow, Alaska.

OFFICIAL SEAL
DIANE L. STEVENS
NOTARY PUBLIC
BARROW, ALASKA
My Comm. Expires July 29, 1997

Diane L. Stevens
NOTARY PUBLIC FOR ALASKA

My commission expires: 7/29/97

BOOK 0074 PAGE 297

985 1366

Agreement to Amend
BIA Lease F-89-01

STATE OF ALASKA )
) ss.
Second JUDICIAL DISTRICT )

THIS IS TO CERTIFY that on this the 17 day of January, 19 94 before me the undersigned, a Notary Public for the State of Alaska personally appeared Georgene Shugluk, and executed the foregoing document. WITNESS my hand and official seal this 17 day of January, 1994 at Barrow, Alaska.

OFFICIAL SEAL
DIANE L. STEVENS
NOTARY PUBLIC
BARROW, ALASKA
My Comm. Expires July 29, 1997

Diane L. Stevens
NOTARY PUBLIC FOR ALASKA

My commission expires: 7/29/97

STATE OF ALASKA )
) ss.
THIRD JUDICIAL DISTRICT )

The foregoing instrument was acknowledged before me this 13th day of January 1994, by Jack E. Golden, the Vice President of Endicott and Development Programs of BP Exploration (Alaska) Inc., a Delaware corporation, on behalf of the Corporation.

Dawn R. Conatser
NOTARY PUBLIC FOR ALASKA

My commission expires: 8/14/96

DAWN R. CONATSER
NOTARY PUBLIC
STATE OF ALASKA

BOOK 0074 PAGE 298

01-19-1994 09:49 907E 763 ARCTIC SLOPE N .VE ASSOCIATION P.02/07

Arctic Slope Native Association Limited
P.O. Box 1232
Barrow, AK 99723
(907) 852-2762

985 1366

This is to certify that the attached amendment to BIA lease F-89-01 for Native Allotment F 14632 between BP Exploration and the Heirs of Andrew Oenga is in conformity with existing laws and regulations, and all realty records checked as to description, ownership and proper identification of grantor/grantee and conformity extends to and includes all supporting documents and other material as may be specified and required in the Code of Federal Regulations.

Diane Stevens
ASNA Realty Officer

Approved: 1-20-94
Date

[signature]
Superintendent, BIA Fairbanks Agency

Return To:
Stu Hirsh
BP Exploration (Alaska) Inc.
POO. Box 196612
Anchorage, AK 99519-6612

94-0815
BARROW REC 33 –
DISTRICT
REQUESTED BY BP

'94 MAY 2 AM 11 40
550613

**EXHIBIT D**

Third [sic] Amendment To BIA Lease among the heirs of Andrew Oenga (with the approval of the Secretary of the Interior) and BPX, effective May 11, 1995, and recorded on June 14, 1995, at Book 79, Pages 223-227, Barrow Recording District ("1995 Lease Amendment")

Orignial Lease R rded in Book 0053 at Pag 173
Lands located in T11N/R15E UM Sec. 1 and T12N/R15E
sec 36 being USS 6904.

985 1472

## Third Amendment to BIA Lease F-89-01

BOOK 79 PAGE 223
Barrow Recording District

This agreement is made and entered into by and between Leroy Oenga and Wallace Oenga whose address is P.O. Box 201, Barrow, Alaska, Michael Delia whose address is 300 Slater Drive, Fairbanks AK 99701, Georgene Shugluk whose address is P.O. Box 91003, Atqasuk, Alaska 99791, and Jennie Oenga whose address is P.O. Box 55778, Fairbanks, Alaska 99705, who are the immediate heirs and successors in the interest of Andrew Oenga (Lessors) and BP Exploration (Alaska) Inc., the successor in interest to Standard Alaska Production Company (Lessee) whose address is P.O. Box 196612, Anchorage, Alaska 99519-6612 all of whom are collectively hereinafter are referred to as the "Parties".

Whereas, the Lessee has previously leased the 40-acre portion of Lessor's Parcel B of Native Allotment F-14632 under provisions of BIA Lease F-89-01 as amended ("Lease") from the Lessors; and

Whereas, Leroy Oenga, Wallace Oenga, Michael Delia and Georgene Shugluk desire to use a portion of the rental proceeds from the Lease to collateralize four personal loans they are seeking to obtain from the National Bank of Alaska; and

Whereas, Jennie Oenga does not seek to obtain a loan but is agreeing to changes in the lease to assist her family members in obtaining these loans; and

Whereas, the Lessors desire to provide that lease rental payments be made annually instead of biennially; and

Whereas, the Lessors desire to adjust the date at which the Lessee may cancel the Lease so that it shall coincide with the term of the personal loans they are seeking; and

Whereas, the Parties desire to amend the Lease to reflect their Lessor/Lessee relationship as it relates to the contractual relationship between the Arctic Slope Native Association Limited ("ASNA") and the Bureau of Indian Affairs ("BIA") wherein ASNA performs certain realty services on the behalf of BIA for the benefit of the Lessors.

Now therefore, in consideration of the mutual promises and covenants contained herein, the Parties agree as follows:

**Paragraph 4. Lease Rentals**

The last sentence in the first paragraph of Paragraph 4 is revised to read "Lease rental payments are due and payable sixty (60) days in advance of the anniversary date of this Lease Agreement for the next succeeding annual rental period beginning with the rental payment due January 1, 1996 through December 31, 1996. Lessee shall continue to make rental payments on an annual basis sixty days prior to the anniversary date of this Lease Agreement. Lessors shall make no additional claims, requests or demands of Lessee for Lease rental payments, rental payment adjustments or rental payment advances except as set forth in paragraph 5."

A new paragraph is added to Paragraph 4 as follows: "The rental payment due on November 1, 1995 for the period January 1, 1996 through December 31, 1996 is eighty-thousand six-hundred forty dollars ($80,640.00) which payment shall continue to be adjusted at four-year intervals pursuant to Paragraph 5 below, as amended."

A new paragraph is added to the end of Paragraph 4 as follows: "Lessee agrees to make lease rental payments to the National Bank of Alaska, or any other financial institution of the Lessor's choosing provided that Lessors furnish Lessee properly executed Assignment of Proceeds, Rental Division Order and/ or other written instruments at least 30 days prior to the rental due date as stipulated herein."

**Paragraph 5. Lease Rental Adjustments**

A new paragraph is added to the end of Paragraph 5 as follows: "Rental payments may next be adjusted November 1, 1997 for the adjustment period January 1, 1998 through December 31, 2002 and subsequent four-year periods unless this Lease Agreement expires or is canceled pursuant to provisions of Paragraph 15 below, as amended.

**Paragraph 15. Option to Cancel**

The first sentence of Paragraph 15 is revised to read "Lessee may, for any reason, cancel this Lease Agreement at the end of each five (5) year period during the Lease term, or any extension thereof, with the first right to cancel accruing on January 1, 2001."

**Paragraph 34. Relationship of the Parties**

A new Paragraph 34 is added to this Lease Agreement as follows:

"Lessors hereby designate and appoint the BIA, acting by and through ASNA, to be their sole contact with Lessees for any and all matters arising out of this Lease Agreement or any amendment thereto. Lessors agree that they will under no circumstances contact the Lessee in person or by telephone, facsimile, electronic mail, United States mail, courier service, or any other means. If Lessors contact Lessees, Lessees shall be under no obligation to respond to Lessors contacts and shall refer all such contacts to ASNA or the BIA."

**Effective Date of This Agreement**

This Agreement shall be effective when fully executed and approved by the Secretary of Interior.

**Entire Agreement**

This Agreement constitutes the entire agreement between the Parties insofar as this lease amendment is concerned and supersedes any previous understandings whether written or oral. With the exception of the two preceding lease amendments, the remaining provisions of Lease, as previously amended, remain unchanged.

BOOK 79 PAGE 225
Barrow Recording District

985 1472

In Witness Whereof, the Parties have executed this Agreement on the dates adjacent to their respective signatures.

FOR THE LESSORS

| | | | |
|---|---|---|---|
| Wallace Oenga | 5-6-95 | Leroy Oenga | 5/6/95 |
| Wallace Oenga | Date | Leroy Oenga | Date |
| Jennie Oenga | 5-8-95 | Michael M. Delia | 5-8-95 |
| Jennie Oenga | Date | Michael M. Delia | Date |
| B Jarvi for CAPA INC | 5/8/95 | Georgene Shugluk | May 6, 1995 |
| B Jarvi<br>Conservator for Jennie Oenga | Date | Georgene Shugluk | Date |

ACKNOWLEDGMENTS

STATE OF ALASKA )
) ss.
Second Judicial District )

The foregoing instrument was acknowledged before me this 6 day of May 1995 by Wallace Oenga who personally appeared before me and executed the foregoing instrument of his own free will.

STATE OF ALASKA FRAN TATE NOTARY PUBLIC

Fran Tate
NOTARY PUBLIC FOR ALASKA
My commission expires: 3/24/96

STATE OF ALASKA )
) ss.
Second Judicial District )

The foregoing instrument was acknowledged before me this 6 day of May, 1995 by Leroy L. Oenga, Sr., who personally appeared before me and executed the foregoing instrument of his own free will.

STATE OF ALASKA FRAN TATE NOTARY PUBLIC

Fran Tate
NOTARY PUBLIC FOR ALASKA
My commission expires: 3/24/96

BOOK 79 PAGE 226
Barrow Recording District
985 1472

STATE OF ALASKA )
) ss.
Second Judicial District )

The foregoing instrument was acknowledged before me this 6th day of MAY, 1995 by Georgene Shugluk, who personally appeared before me and executed the foregoing instrument of her own free will.

HAROLD L. IVANOFF NOTARY PUBLIC STATE OF ALASKA 7-2-95

NOTARY PUBLIC FOR ALASKA
My commission expires: 7/2/95

STATE OF ALASKA )
Fourth 5/8/95 ) ss.
~~Second~~ Judicial District )

The foregoing instrument was acknowledged before me this 8 day of May, 1995 by Michael Delia, who personally appeared before me and executed the foregoing instrument of his own free will.

OFFICIAL SEAL DIANE L. STEVENS NOTARY PUBLIC BARROW, ALASKA My Comm. Expires July 29, 1997

Diane L Stevens
NOTARY PUBLIC FOR ALASKA
My commission expires: 7/29/97

STATE OF ALASKA )
) ss.
Fourth Judicial District )

The foregoing instrument was acknowledged before me this 8 day of May, 1995 by Jennie Oenga, who personally appeared before me and executed the foregoing instrument of her own free will.

OFFICIAL SEAL DIANE L. STEVENS NOTARY PUBLIC BARROW, ALASKA My Comm. Expires July 29, 1997

Diane L Stevens
NOTARY PUBLIC FOR ALASKA
My commission expires: 7/29/97

STATE OF ALASKA )
) ss.
Fourth Judicial District )

The foregoing instrument was acknowledged before me this 8 day of May, 1995 by B Jarvi, who personally appeared before me and executed the foregoing instrument of her own free will, and in her capacity as conservator for Jennie Oenga.

OFFICIAL SEAL DIANE L. STEVENS NOTARY PUBLIC BARROW, ALASKA My Comm. Expires July 29, 1997

Diane L Stevens
NOTARY PUBLIC FOR ALASKA
My commission expires: 7/29/97

BOOK 79 PAGE 227
Barrow Recording District

FOR THE LESSEE

5/10/95

Al E. Bolea, Manager — Date
Greater Pt. McIntyre Area

ACKNOWLEDGMENT

STATE OF ALASKA )
) ss.
THIRD Judicial District )

The foregoing instrument was acknowledged before me this 10th day of MAY, 1995, by Al E. Bolea, the Manager of Greater Pt. McIntyre Area, BP Exploration (Alaska), Inc., on behalf of the Corporation.

Marcia R. Davis
NOTARY PUBLIC FOR ALASKA
My commission expires: 2-28-96

MARCIA R. DAVIS NOTARY PUBLIC STATE OF ALASKA

FOR THE SECRETARY OF INTERIOR:

The within Lease Amendment is hereby approved, pursuant to the authority delegated by 209 DM 8 dated November 17, 1981, Secretary's Order No. 3150 dated May 11, 1992, as amended March 5, 1993, and 10 BIAM Bulletin 13, dated November 19, 1992, as amended April 8, 1993, and the Addendum to 10 BIAM 3, dated January 17, 1989.

5-11-95

Samuel Demientieff, Superintendent — Date
Bureau of Indian Affairs
Fairbanks Agency

Return to:
Stu Hirsh
BP Exploration (Alaska) Inc.
P.O. Box 196612
Anchorage, AK 99519-6612

95-920
RECORDED - FILED 3100
BARROW REC. DIST.
DATE 6/14, 1995
TIME 11:42 AM
Requested by BP
Address Exploration

985 1472

RECORDED
AK TITLE SERVICES CENTER
95 MAY 16 AM 7:21
BUREAU OF INDIAN AFFAIRS
JUNEAU AREA OFFICE

**EXHIBIT E**

Evidence of change of name by Standard Alaska Production Company to BP Exploration (Alaska) Inc., effective January 31, 1989

BOOK 0051 PAGE 623

AFFIDAVIT OF JOHN A. REEDER, JR.
AFFECTING TITLE TO REAL PROPERTY

Dated March 17, 1989

THIS AFFIDAVIT IS ENTITLED TO BE RECORDED UNDER ALASKA STAT. § 40.17.110(b)(5) (1988).

RECORD THIS AFFIDAVIT IN THE BARROW RECORDING DISTRICT.

THIS AFFIDAVIT SHOULD BE INDEXED UNDER THE FOLLOWING GRANTORS AND GRANTEES:

| Grantors | Grantees |
|---|---|
| BP Exploration U.S.A. Inc. | BP Oil Corporation |
| BP Oil Corporation | Sohio Petroleum Company |
| Sohio Petroleum Company | Sohio Natural Resources Company |
| Sohio Natural Resources Company | Sohio Alaska Petroleum Company |
| Sohio Alaska Petroleum Company | Standard Alaska Production Company |
| BP Alaska Exploration Inc. | Standard Alaska Production Company |
| Standard Alaska Production Company | BP Exploration (Alaska) Inc. |

THE LANDS AFFECTED BY THIS AFFIDAVIT ARE DESCRIBED IN EXHIBIT A ATTACHED HERETO.

ADDRESS OF THE PERSON MAKING THIS AFFIDAVIT IS SET FORTH IN PARAGRAPH 2 OF THIS AFFIDAVIT.

RETURN THIS AFFIDAVIT TO: Guess & Rudd
510 L Street, Suite 700
Anchorage, Alaska 99501
Attention: Joseph J. Perkins, Jr.

AFFIDAVIT OF JOHN A. REEDER, JR.
AFFECTING TITLE TO REAL PROPERTY

John A. Reeder, Jr., being first duly sworn, states as follows:

1. My name is John A. Reeder, Jr. and I have knowledge of the facts set forth herein.

2. I am an Assistant Secretary of BP Exploration (Alaska) Inc., a Delaware corporation, and am authorized to make this affidavit on behalf of said corporation. My address for purposes of this affidavit is as follows:

John A. Reeder, Jr., Esq.
Legal Department
BP Exploration (Alaska) Inc.
900 East Benson Blvd.
P.O. Box 196612
Anchorage, Alaska 99519-6612.

3. (a) Effective January 9, 1969, BP Exploration U.S.A. Inc. changed its name to BP Oil Corporation.

(b) Effective December 31, 1973, BP Oil Corporation merged into Sohio Petroleum Company.

(c) Effective January 1, 1978, Sohio Petroleum Company changed its name to Sohio Natural Resources Company.

(d) Effective December 31, 1979, Sohio Natural Resources Company changed its name to Sohio Alaska Petroleum Company.

(e) Effective February 25, 1986, Sohio Alaska Petroleum Company changed its name to Standard Alaska Production Company.

(f) Effective January 1, 1988, BP Alaska Exploration Inc. merged into Standard Alaska Production Company.

(g) Effective January 31, 1989, Standard Alaska Production Company changed its name to BP Exploration (Alaska) Inc.

4. BP Exploration (Alaska) Inc. owns interests in the real property described in Exhibit A attached hereto, which real property is situated in the Barrow Recording District, State of Alaska.

5. This affidavit has been prepared for the purpose of placing of record certain facts which may not now be of record relating

to the names, identities, history, and relationship of the corporations named above, in accordance with Alaska Stat. § 40.17.110 (1988).

Executed this 17th day of March, 1989.

John A. Reeder, Jr.

STATE OF ALASKA )
) ss.
THIRD JUDICIAL DISTRICT)

SUBSCRIBED AND SWORN TO before me this 17th day of March, 1989, at Anchorage, Alaska.

Notary Public in and for Alaska
My Commission Expires: 1-14-93

Exhibit A is attached.

3720J

BOOK 0054 PAGE 626

EXHIBIT A

Oil and Gas Leases in the Barrow Recording District in which BP Exploration (Alaska) Inc. owns interests

| Lease | Description | Book | Page |
|---|---|---|---|
| ADL-25512 | T13N R09E UM Secs. 17,18,19,20 | 42 | 447 |
| ADL-25513 | T13N R09E UM Secs. 15,16,21,22 | 42 | 456 |
| ADL-25517 | T13N R10E UM Sec. 32: E/2 | 35 | 387 |
| ADL-25519 | T13N R09E UM Secs. 25,26,35,36 | 42 | 464 |
| ADL-25520 | T13N R09E UM Secs. 27,28,33,34 | 42 | 472 |
| ADL-25521 | T13N R09E UM Secs. 29,30,31,32 | 42 | 480 |
| ADL-25522 | T13N R08E UM Secs. 13,14,23,24 | 42 | 488 |
| ADL-25523 | T13N R08E UM Secs. 25,26,35,36 | 42 | 496 |
| ADL-25524 | T13N R08E UM Secs. 27,33,34 | 42 | 504 |
| ADL-25526 | T12N R04E UM Secs. 10,11 | 43 | 400 |
| ADL-25527 | T12N R08E UM Secs. 5,6,7,8 | 42 | 246 |
| ADL-25528 | T12N R07E UM Secs. 1,2,11,12 | 42 | 76 |
| ADL-25529 | T12N R04E UM Secs. 14,15,22,23 | 43 | 409 |
| ADL-25530 | T12N R04E UM Secs. 26,27,35 | 43 | 418 |
| ADL-25531 | T12N R08E UM Secs. 1,2,11,12 | 42 | 254 |
| ADL-25532 | T12N R08E UM Secs. 3,4,9,10 | 42 | 262 |
| ADL-25533 | T12N R07E UM Secs. 3,4,9,10 | 42 | 131 |
| ADL-25534 | T12N R07E UM Secs. 5,6,7,8 | 41 | 921 |
| ADL-25535 | T12N R06E UM Secs. 1,2,11 | 41 | 915 |
| ADL-25536 | T12N R06E UM Sec. 10 | 41 | 910 |
| ADL-25537 | T12N R06E UM Secs. 5,6,7,8 | 41 | 905 |
| ADL-25538 | T12N R05E UM Secs. 17,18,19,20 | 43 | 437 |
| ADL-25539 | T12N R06E UM Secs. 17,18,19 | 41 | 926 |
| ADL-25540 | T12N R06E UM Secs. 15,16,21,22 | 42 | 136 |
| ADL-25541 | T12N R06E UM Secs. 13,14,23,24 | 42 | 141 |
| ADL-25542 | T12N R07E UM Secs. 17,18,19,20 | 42 | 111 |
| ADL-25543 | T12N R07E UM Secs. 15,16,21,22 | 42 | 116 |
| ADL-25544 | T12N R07E UM Secs. 13,14,23,24 | 39 | 287 |
| ADL-25545 | T12N R08E UM Secs. 17,18,19,20 | 42 | 270 |
| ADL-25546 | T12N R08E UM Secs. 15,16,21,22 | 42 | 278 |
| ADL-25547 | T12N R08E UM Secs. 13,14,23,24 | 42 | 286 |
| ADL-25548 | T12N R08E UM Secs. 25,26,35,36 | 42 | 294 |
| ADL-25549 | T12N R08E UM Secs. 27,28,33,34 | 42 | 302 |
| ADL-25550 | T12N R08E UM Secs. 29,30,31,32 | 42 | 12 |
| ADL-25551 | T12N R07E UM Secs. 25,26,35,36 | 39 | 295 |
| ADL-25552 | T12N R07E UM Secs. 27,28,33,34 | 42 | 96 |
| ADL-25553 | T12N R07E UM Secs. 29,30,31,32 | 42 | 11 |
| ADL-25554 | T12N R06E UM Secs. 25,26,35,36 | 42 | 16 |
| ADL-25555 | T12N R06E UM Secs. 27,28,33,34 | 42 | 126 |
| ADL-25556 | T12N R06E UM Secs. 30,31 | 41 | 931 |
| ADL-25558 | T12N R05E UM Secs. 29,30,31,32 | 43 | 436 |

| Lease | Description | Book | Page |
|---|---|---|---|
| ADL-25559 | T11N R05E UM Secs. 5,6,7,8 | 43 | 449 |
| ADL-25561 | T11N R06E UM Secs. 5,6,7,8 | 42 | 146 |
| ADL-25562 | T11N R06E UM Secs. 3,4,9,10 | 42 | 21 |
| ADL-25563 | T11N R06E UM Secs. 1,2,11,12 | 42 | 26 |
| ADL-25567 | T11N R08E UM Secs. 5,6,7,8 | 42 | 318 |
| ADL-25568 | T11N R08E UM Secs. 3,4,9,10 | 42 | 334 |
| ADL-25569 | T11N R08E UM Secs. 1,2,11,12 | 42 | 326 |
| ADL-25570 | T11N R08E UM Secs. 13,14,23,24 | 42 | 342 |
| ADL-25571 | T11N R08E UM Secs. 15,16,21,22 | 42 | 350 |
| ADL-25572 | T11N R08E UM Secs. 17,18,19,20 | 42 | 358 |
| ADL-25573 | T11N R07E UM Secs. 24 | 42 | 41 |
| ADL-25576 | T11N R06E UM Secs. 13,14,23,24 | 42 | 51 |
| ADL-25577 | T11N R06E UM Secs. 15,16,21,22 | 42 | 56 |
| ADL-25578 | T11N R06E UM Secs. 17,18,19,20 | 42 | 151 |
| ADL-25579 | T11N R06E UM Secs. 29,30,31,32 | 42 | 156 |
| ADL-25580 | T11N R06E UM Secs. 27,28,33,34 | 42 | 81 |
| ADL-25581 | T11N R06E UM Secs. 25,26,35,36 | 42 | 86 |
| ADL-25583 | T11N R07E UM Sec. 34 | 42 | 66 |
| ADL-25584 | T11N R07E UM Secs. 25,26,35,36 | 42 | 91 |
| ADL-25585 | T11N R08E UM Secs. 29,30,31,32 | 42 | 366 |
| ADL-25586 | T11N R08E UM Secs. 27,28,33,34 | 42 | 374 |
| ADL-25587 | T11N R08E UM Secs. 25,26,35,36 | 42 | 382 |
| ADL-25588 | T10N R08E UM Secs. 1,2,11,12 | 42 | 390 |
| ADL-25589 | T10N R08E UM Secs. 3,4,9,10 | 42 | 398 |
| ADL-25590 | T10N R08E UM Secs. 5,6,7,8 | 42 | 406 |
| ADL-25591 | T10N R07E UM Secs. 1,2,11,12 | 42 | 161 |
| ADL-25592 | T10N R07E UM Secs. 3,4,9,10 | 42 | 166 |
| ADL-25594 | T10N R06E UM Secs. 1,2,11,12 | 42 | 176 |
| ADL-25595 | T10N R06E UM Secs. 3,4,9,10 | 42 | 181 |
| ADL-25596 | T10N R06E UM Secs. 5,6,7,8 | 41 | 936 |
| ADL-25597 | T10N R06E UM Secs. 17,18,19,20 | 41 | 941 |
| ADL-25598 | T10N R06E UM Secs. 15,16,21,22 | 41 | 946 |
| ADL-25599 | T10N R06E UM Secs. 13,14,23,24 | 42 | 186 |
| ADL-25601 | T10N R07E UM Secs. 15,16,21,22 | 42 | 196 |
| ADL-25602 | T10N R07E UM Secs. 13,14,23,24 | 42 | 71 |
| ADL-25603 | T10N R08E UM Secs. 17,18,19,20 | 42 | 673 |
| ADL-25604 | T10N R08E UM Secs. 15,16,21,22 | 42 | 681 |
| ADL-25605 | T10N R08E UM Secs. 13,14,23,24 | 43 | 689 |
| ADL-25607 | T10N R0JE UM Secs. 27,28,33,34 | 42 | 697 |
| ADL-25608 | T10N R08E UM Secs. 29,30,31,32 | 42 | 705 |
| ADL-25609 | T10N R07E UM Secs. 25,26,35,36 | 41 | 951 |
| ADL-25610 | T10N R07E UM Secs. 27,28,33,34 | 41 | 956 |
| ADL-25612 | T10N R06E UM Secs. 25,26,35,36 | 41 | 966 |
| ADL-25613 | T10N R06E UM Secs. 27,28,33,34 | 41 | 971 |
| ADL-25627 | T12N R10E UM Secs. 3,4,9,10 | 42 | 529 |
| ADL-25628 | T12N R10E UM Secs. 5,6,7,8 | 42 | 537 |

| Lease | Description | Book | Page |
|---|---|---|---|
| ADL-25629 | T12N R09E UM Secs. 1,2,11,12 | 42 | 545 |
| ADL-25630 | T12N R09E UM Secs. 3,4,9,10 | 42 | 553 |
| ADL-25631 | T12N R09E UM Secs. 5,6,7,8 | 42 | 561 |
| ADL-25632 | T12N R09E UM Secs. 17,18,19,20 | 42 | 569 |
| ADL-25633 | T12N R09E UM Secs. 15,16,21,22 | 42 | 577 |
| ADL-25634 | T12N R09E UM Secs. 13,14,23,24 | 42 | 585 |
| ADL-25635 | T12N R10E UM Secs. 17,18,19,20 | 42 | 593 |
| ADL-25636 | T12N R10E UM Secs. 15,16,21,22 | 48 | 601 |
| ADL-25637 | T12N R10E UM Secs. 13,14,23,24 | 42 | 609 |
| ADL-25640 | T12N R10E UM Secs. 29,30,31,32 | 42 | 617 |
| ADL-25641 | T12N R09E UM Secs. 25,26,35,36 | 42 | 625 |
| ADL-25642 | T12N R09E UM Secs. 27,28,33,34 | 42 | 633 |
| ADL-25643 | T12N R09E UM Secs. 29,30,31,32 | 42 | 641 |
| ADL-25644 | T11N R09E UM Secs. 5,6,7,8 | 42 | 649 |
| ADL-25645 | T11N R09E UM Secs. 3,4,9,10 | 42 | 657 |
| ADL-25646 | T11N R09E UM Secs. 1,2,11,12 | 42 | 665 |
| ADL-25652 | T11N R10E UM Secs. 17,18,19,20 | 42 | 713 |
| ADL-25653 | T11N R09E UM Secs. 13,14,23,24 | 42 | 721 |
| ADL-25654 | T11N R09E UM Secs. 15,16,21,22 | 42 | 729 |
| ADL-25655 | T11N R09E UM Secs. 17,18,19,20 | 42 | 737 |
| ADL-25656 | T11N R09E UM Secs. 29,30,31,32 | 42 | 745 |
| ADL-25657 | T11N R09E UM Secs. 27,28,33,34 | 42 | 753 |
| ADL-25658 | T11N R09E UM Secs. 25,26,35,36 | 42 | 761 |
| ADL-25659 | T11N R10E UM Secs. 29,30,31,32 | 42 | 769 |
| ADL-25665 | T10N R09E UM Secs. 1,2,11,12 | 42 | 777 |
| ADL-25666 | T10N R09E UM Secs. 3,4,9,10 | 42 | 785 |
| ADL-25667 | T10N R09E UM Secs. 5,6,7,8 | 42 | 794 |
| ADL-25668 | T10N R09E UM Secs. 17,18,19,20 | 42 | 806 |
| ADL-25676 | T10N R10E UM Secs. 29,30,31 32 | 43 | 467 |
| ADL-25680 | T09N R09E UM Secs. 5,6,7,8 | 43 | 476 |
| ADL-25686 | T09N R10E UM Secs. 13,14,23,24 | 50 | 931 |
| ADL-25689 | T09N R09E UM Secs. 13,14,23,24 | 43 | 491 |
| ADL-28243 | T11N R11E UM Secs. 17,18,19,20 | 51 | 278 |
| ADL-28260 | T11N R12E UM Secs. 1,2,11,12 | 52 | 040 |
| ADL-28277 | T12N R13E UM Secs. 25,26,35,36 | 52 | 044 |
| ADL-28278 | T12N R13E UM Secs. 27,28,33,34 | 52 | 050 |
| ADL-28279 | T12N R13E UM Secs. 29,30,31,32 | 52 | 056 |
| ADL-28280 | T11N R13E UM Secs. 1,2,11,12 | 52 | 062 |
| ADL-28281 | T11N R13E UM Secs. 3,4,9,10 | 52 | 068 |
| ADL-28282 | T11N R13E UM Secs. 5,6,7,8 | 52 | 074 |
| ADL-28283 | T11N R13E UM Secs. 17,18,19,20 | 52 | 080 |
| ADL-28284 | T11N R13E UM Secs. 15,16,21,22 | 52 | 086 |
| ADL-28285 | T11N R13E UM Secs. 13,14,23,24 | 52 | 092 |
| ADL-28286 | T11N R13E UM Secs. 25,26,35,36 | 52 | 098 |
| ADL-28287 | T11N R13E UM Secs. 27,28,33,34 | 47 | 235 |
| ADL-28291 | T09N R13E UM Secs. 1,2,11,12 | 50 | 937 |

| Lease | Description | Book | Page |
|---|---|---|---|
| ADL-28305 | T11N R14E UM Secs. 17,18,19,20 | 47 | 223 |
| ADL-28309 | T11N R14E UM Secs. 27,28,33,34 | 42 | 336 |
| ADL-28310 | T11N R14E UM Secs. 29,30,31,32 | 47 | 241 |
| ADL-28311 | T10N R14E UM Secs. 1,2,11,12 | 47 | 229 |
| ADL-28312 | T10N R14E UM Secs. 3,4,9,10 | 52 | 104 |
| ADL-28315 | T10N R14E UM Secs. 13,14,23,24 | 52 | 110 |
| ADL-28317 | T09N R14E UM Secs. 1,2,11,12 | 50 | 945 |
| ADL-28318 | T09N R14E UM Secs. 13,14,23,24 | 50 | 951 |
| ADL-28319 | T09N R14E UM Secs. 29,30,31,32 | 50 | 957 |
| ADL-28320 | T11N R15E UM Secs. 1,2,11,12 | 47 | 199 |
| ADL-28330 | T10N R15E UM Secs. 17,18,19,20 | 52 | 116 |
| ADL-28331 | T10N R15E UM Secs. 15,16,21,22 | 52 | 122 |
| ADL-28333 | T10N R15E UM Secs. 25,26,35,36 | 42 | 341 |
| ADL-28335 | T10N R15E UM Secs. 29,30,31,32 | 52 | 128 |
| ADL-28337 | T11N R16E UM Secs. 3,4,9,10 | 47 | 187 |
| ADL-28338 | T11N R16E UM Secs. 5,6,7,8 | 42 | 322 |
| ADL-28339 | T11N R16E UM Secs. 17,18,19,20 | 47 | 193 |
| ADL-28340 | T11N R16E UM Secs. 15,16,21,22 | 47 | 217 |
| ADL-28342 | T11N R16E UM Secs. 27,28,33,34 | 42 | 349 |
| ADL-28343 | T11N R16E UM Secs. 29,30,31,32 | 42 | 356 |
| ADL-28349 | T10N R16E UM Secs. 29,30,31,32 | 42 | 370 |
| ADL-34625 | T12N R15E UM Secs. 13,14,23,24 | 52 | 026 |
| ADL-34630 | T12N R15E UM Secs. 25,26,35,36 | 47 | 205 |
| ADL-34633 | T12N R16E UM Secs. 25,26,35,36 | 52 | 020 |
| ADL-34634 | T12N R16E UM Secs. 27,28,33,34 | 47 | 211 |
| ADL-34635 | T12N R16E UM Secs. 29,30,31,32 | 42 | 329 |
| ADL-34636 | T11N R16E UM Secs. 1,2,11,12 | 52 | 032 |
| ADL-312828 | T12N R16E UM (within) Protracted<br>T12N R17E UM (within) Protracted | 34 | 786 |
| ADL-318602 | T10N R11E UM Secs. 5,6,7,8 | 42 | 417 |
| ADL-318603 | T10N R11E UM Secs. 17,18,19,20 | 42 | 428 |
| ADL-318605 | T10N R11E UM Secs. 29,30,31,32 | 41 | 931 |
| ADL-318610 | T10N R13E UM Secs. 29,30,31,32 | 42 | 472 |
| ADL-318611 | T10N R13E UM Secs. 27,28,33,34 | 42 | 483 |
| ADL-318628 | T09N R11E UM Secs. 5,6,7,8 | 42 | 494 |
| ADL-318630 | T09N R11E UM Secs. 17,18,19,20 | 42 | 505 |
| ADL-318642 | T09N R13E UM Secs. 3,4,9,10 | 42 | 406 |
| ADL-318643 | T09N R12E UM Secs. 13,14,23,24 | 42 | 527 |
| ADL-318645 | T09N R14E UM Secs. 5,6,7,8 | 50 | 966 |
| ADL-318646 | T09N R14E UM Secs. 3,4,9,10 | 50 | 976 |
| ADL-318647 | T09N R14E UM Secs. 17,18,19,20 | 42 | 538 |
| ADL-318648 | T09N R14E UM Secs. 15,16,21,22 | 50 | 986 |
| ADL-318649 | T09N R14E UM Secs. 27,28,33,34 | 42 | 549 |
| ADL-318650 | T09N R14E UM Secs. 25,26,35,36 | 50 | 996 |
| ADL-343109 | T10N R24E UM Secs. 10-15,22-26 | 51 | 001 |
| ADL-343111 | T09N R24E UM Secs. 3,4,9,10 | 35 | 190 |

| Lease | Description | Book | Page |
|---|---|---|---|
| ADL-343113 | Tract C-36-103, being all those lands lying westerly of 146 degrees west longitude (identical with line 6-7 on Block 756 within the offshore three mile arc lines, listed as State area on the "Supplemental Official OCS Block Diagram" approved 12-09-79, containing 1357.62 hectares. | 51 | 016 |
| ADL-344011 | T08N R21E UM Secs. 1-3,10-12,13-15 | 35 | 364 |
| ADL-355006 | T13N R12E UM Secs. 4,5,6,7,8,9<br>T14N R12E UM Secs. 31,32,33 | 37 | 406 |
| ADL-355007 | T13N R12E UM Secs. 16,17,18,19,20,21 | 37 | 431 |
| ADL-356000 | T12N R04E UM Secs. 12,13 | 43 | 400 |
| ADL-356001 | T12N R04E UM Secs. 24,25 | 43 | 418 |
| ADL-356002 | T12N R06E UM Sec. 12 | 41 | 915 |
| ADL-356003 | T12N R06E UM Secs. 3,4,9 | 41 | 910 |
| ADL-356004 | T12N R06E UM Sec. 20 | 41 | 926 |
| ADL-356005 | T12N R06E UM Secs. 29,32 | 41 | 931 |
| ADL-365548 | T12N R15E UM (within) Protracted<br>T12N R14E UM (within) Protracted<br>T13N R14E UM (within) Protracted | 50 | 23 |
| ADL-365549 | T12N R15E UM (within) Protracted | 50 | 34 |
| ADL-366019 | T07N R14E UM Secs. 19-21,28-33 | 50 | 45 |
| ADL-366022 | T07N R13E UM Secs. 22-27,34-36 | 50 | 1 |
| ADL-366029 | T06N R13E UM Secs. 1-3,10-15 | 50 | 12 |
| ADL-368017 | T05N R08E UM Secs. 4-9,16-18 | 51 | 036 |
| ADL-368018 | T05N R08E UM Secs. 1-3,10-15 | 51 | 048 |
| ADL-368023 | T06N R06E UM Secs. 1,2,11-14 | 52 | 635 |
| ADL-368027 | T06N R07E UM Secs. 5-8,17,18 | 52 | 646 |
| ADL-368028 | T06N R07E UM Secs. 3,4,9,10,15,16 | 52 | 657 |
| ADL-368029 | T06N R07E UM Secs. 1,2,11-14 | 51 | 060 |
| ADL-368031 | T06N R07E UM Secs. 21,22,27,28,33,34 | 52 | 668 |
| ADL-368032 | T06N R07E UM Secs. 23-26,35,36 | 52 | 679 |
| ADL-368033 | T06N R08E UM Secs. 5-8,17,18 | 51 | 072 |
| ADL-368034 | T06N R08E UM Secs. 3,4,9,10,15,16 | 51 | 084 |
| ADL-368036 | T06N R08E UM Secs. 19,20,29-32 | 51 | 096 |
| ADL-368037 | T06N R08E UM Secs. 21,22,27,28,33,34 | 51 | 108 |
| ADL-368040 | T07N R06E UM Secs. 1-3,10-15 | 52 | 690 |
| ADL-368043 | T07N R07E UM Secs. 4-9,16-18 | 51 | 120 |
| ADL-368044 | T07N R07E UM Secs. 1-3,10-15 | 51 | 132 |
| ADL-368045 | T07N R07E UM Secs. 19-21,28-33 | 51 | 144 |
| ADL-368046 | T07N R07E UM Secs. 22-27,34-36 | 51 | 156 |
| ADL-368049 | T07N R08E UM Secs. 19-21,28-33 | 51 | 168 |
| ADL-368050 | T07N R08E UM Secs. 22-27,34-36 | 51 | 180 |
| ADL-368054 | T08N R06E UM Secs. 22-27,34-36 | 52 | 701 |

BOOK 0054 PAGE 631

| Lease | Description | Book | Page |
|---|---|---|---|
| ADL-368057 | T08N R07E UM Secs. 19-21,28-33 | 51 | 192 |
| ADL-368058 | T08N R07E UM Secs. 22-27,34-36 | 51 | 204 |
| ADL-372032 | T05N R04E UM Secs. 1,2,3,10-15 | 51 | 454 |
| ADL-372034 | T05N R04E UM Secs. 22-27,34-36 | 51 | 445 |
| ADL-372039 | T05N R05E UM Secs. 19-21,28-33 | 51 | 463 |
| ADL-372237 | T09N R33E UM Secs. 1-3,10-15 | 53 | 594 |
| ADL-372240 | T09N R34E UM Secs. 1-3,10-15,24 | 53 | 570 |
| ADL-372241 | T09N R34E UM Secs. 4-9,16,18 | 53 | 558 |
| ADL-372243 | T09N R35E UM Secs. 4-9,17,18 | 53 | 582 |
| ADL-373003 | T04N R09E UM Secs. 1-3,10-15 | 53 | 114 |
| ADL-373009 | T04N R10E UM Secs. 13,14,23,24 | 53 | 125 |
| ADL-373010 | T04N R10E UM Secs. 15,16,21,22 | 53 | 136 |
| ADL-373011 | T04N R10E UM Secs. 25,26,35,36 | 53 | 147 |
| ADL-373012 | T04N R10E UM Secs. 27,28,33,34 | 53 | 158 |
| ADL-373013 | T04N R10E UM Secs. 29,30,31,32 | 53 | 169 |
| ADL-373018 | T05N R06E UM Secs. 1-3,10-15 | 53 | 180 |
| ADL-373019 | T05N R06E UM Secs. 4-9,16-18 | 53 | 191 |
| ADL-373020 | T05N R06E UM Secs. 22-27, 34-36 | 53 | 202 |
| ADL-373021 | T05N R07E UM Secs. 22-27,34-36 | 53 | 213 |
| ADL-373022 | T05N R07E UM Secs. 19-21,28-33 | 53 | 224 |
| ADL-373024 | T05N R08E UM Secs. 19-21,28-33 | 53 | 235 |
| ADL-373052 | T06N R06E UM Secs. 3,4,9,10,15,16 | 53 | 246 |
| ADL-373053 | T06N R06E UM Secs. 5-8,17,18 | 53 | 257 |
| ADL-373054 | T06N R06E UM Secs. 23-26, 35,36 | 53 | 268 |
| ADL-373055 | T06N R06E UM Secs. 21,22,27,28,33,34 | 53 | 279 |
| ADL-373056 | T06N R06E UM Secs. 19,20,29-32 | 53 | 290 |
| ADL-373057 | T06N R07E UM Secs. 19,20,29-32 | 53 | 301 |
| ADL-373073 | T06N R19E UM Secs. 1-3,10-15 | 52 | 741 |
| ADL-373075 | T06N R19E UM Secs. 22-27,34-36 | 52 | 752 |
| ADL-373077 | T06N R20E UM Secs. 3-10 | 52 | 763 |
| ADL-373081 | T07N R05E UM Secs. 1-3,10-15 | 53 | 312 |
| ADL-373082 | T07N R05E UM Secs. 22-27,34-36 | 53 | 323 |
| ADL-373083 | T07N R06E UM Secs. 4-9,16-18 | 53 | 334 |
| ADL-373084 | T07N R06E UM Secs. 22-27,34-36 | 53 | 345 |
| ADL-373085 | T07N R06E UM Secs. 19-21,28-33 | 53 | 356 |
| ADL-373086 | T07N R15E UM Secs. 1-3,10-15 | 52 | 774 |
| ADL-373087 | T07N R15E UM Secs. 4-9,16-18 | 52 | 785 |
| ADL-373103 | T07N R19E UM Secs. 22-27,34-36 | 52 | 796 |
| ADL-373105 | T08N R05E UM Secs. 1-3,10-15 | 53 | 367 |
| ADL-373106 | T08N R05E UM Secs. 4-9,16-18 | 53 | 378 |
| ADL-373107 | T08N R05E UM Secs. 22-27,34-36 | 53 | 389 |
| ADL-373108 | T08N R06E UM Secs. 1-3,10-15 | 53 | 400 |
| ADL-373109 | T08N R06E UM Secs. 4-9,16-18 | 53 | 411 |
| ADL-373110 | T08N R06E UM Secs. 19-21,28-33 | 53 | 422 |
| ADL-373111 | T08N R07E UM Secs. 1-3,10-15 | 53 | 433 |
| ADL-373112 | T08N R07E UM Secs. 4-9,16-18 | 53 | 444 |

BOOK 0054 PAGE 632

| Lease | Description | Book | Page |
|---|---|---|---|
| ADL-373115 | T08N R15E UM Secs. 1-3,10-15 | 52 | 807 |
| ADL-373116 | T08N R15E UM Secs. 4-9,16-18 | 52 | 818 |
| ADL-373117 | T08N R15E UM Secs. 22-27,34-36 | 52 | 829 |
| ADL-373118 | T08N R15E UM Secs. 19-21,28-33 | 52 | 840 |
| ADL-373127 | T08N R18E UM Secs. 1-3,10-15 | 52 | 851 |
| ADL-373129 | T08N R18E UM Secs. 22-27,34-36 | 52 | 862 |
| ADL-373131 | T08N R19E UM Secs. 19-21,28-33 | 52 | 873 |
| ADL-373132 | T08N R23E UM Secs. 1-3,10-12 | 52 | 884 |
| ADL-373133 | T08N R23E UM Secs. 4-9 | 52 | 895 |
| ADL-373134 | T08N R23E UM Secs. 17-20 | 52 | 906 |
| ADL-373152 | T09N R19E UM Secs. 23-26,35,36 | 52 | 917 |
| ADL-373153 | T09N R20E UM Secs. 29-32 | 52 | 928 |
| ADL-373154 | T07N R10E UM Secs. 1,2,11-14 | 53 | 455 |
| ADL-373155 | T07N R10E UM Secs. 3,4,9,10,15,16 | 53 | 466 |
| ADL-373156 | T08N R09E UM Secs. 1-3,10-15 | 53 | 477 |
| ADL-373158 | T08N R09E UM Secs. 22-27,34-36 | 53 | 488 |
| ADL-373159 | T08N R10E UM Secs. 1-3,10-15 | 53 | 499 |
| ADL-373160 | T08N R10E UM Secs. 4-9,16-18 | 53 | 510 |
| ADL-373161 | T08N R10E UM Secs. 22-27,34-36 | 53 | 521 |
| ADL-373162 | T08N R10E UM Secs. 19-21,28-33 | 53 | 532 |
| ASRC-OG-KIC-140 | T08N R32E UM Secs. 19-21,27-33 | 39 | 685 |
| ASRC-OG-KIC-141 | T08N R32E UM Secs. 1-3,9-16,22-26 | 39 | 689 |
| ASRC-OG-KIC-142 | T07N R32E UM Sec. 1<br>T08N R32E UM Sec. 36<br>T08N R33E UM Secs. 19-21,29-32 | 39 | 693 |
| ASRC-OG-KIC-143 | T08N R33E UM Secs. 4-9,16-18<br>T09N R32E UM Secs. 24-27,33-35 | 39 | 697 |
| ASRC-OG-KIC-144 | T08N R33E UM Secs. 1-3,10-15<br>T09N R33E UM Secs. 19,20,28,29,33 | 39 | 701 |
| ASRC-OG-KIC-145 | T08N R34E UM Secs. 4-9,16,17<br>T09N R33E UM Sec. 34 | 39 | 705 |

| Lease | Description | Book | Page |
|---|---|---|---|
| ASRC-OG-KIC-146 | T09N R33E UM Secs. 13,14,21-27,35,36<br>T09N R34E UM Secs. 17-20,30<br>U.S. Survey 4234 | 39 | 709 |
| ASRC-OG-KIC-147 | T08N R34E UM Secs. 1-3,10-15 | 39 | 713 |
| ASRC-OG-KIC-148 | T08N R35E UM Secs. 4-9,16-18 | 39 | 717 |
| ASRC-OG-KIC-149 | T08N R35E UM Secs. 13-15,24,25,36<br>T08N R36E UM Secs. 18,19,30 | 39 | 721 |
| ASRC-OG-KIC-150 | T08N R35E UM Secs. 1-3,10-12<br>T09N R35E UM Secs. 31-33 | 39 | 725 |
| ASRC-OG-KIC-151 | T08N R36E UM Secs. 4-9<br>T09N R35E UM Secs. 34-36 | 39 | 729 |
| ASRC-OG-KIC-152 | T08N R36E UM Secs. 1-3,10-13<br>T09N R36E UM Secs. 19,29,30,32-34 | 39 | 733 |
| ASRC-OG-KIC-153 | T09N R35E UM Secs. 7-10,14,15,18, 20-30 | 39 | 737 |
| ASRC-OG-KIC-154 | T09N R34E UM Secs. 7-9,13-16,21,23, 24,28,32-36 | 39 | 741 |
| ASRC-OG-KIC-155 | T08N R35E UM Sec. 20 | 47 | 286 |
| ASRC-OG-KIC-156 | T07N R35E UM Secs. 1,2,3<br>T08N R35E UM Sec. 35 | 47 | 289 |
| ASRC-OG-KIC-157 | T07N R36E UM Secs. 5,6,8<br>T08N R36E UM Sec. 31 | 47 | 292 |

BOOK 0054 PAGE 634

| Lease | Description | Book | Page |
|---|---|---|---|
| ASRC-OG-KIC-158 | T07N R36E UM Secs. 17,20,29-32 | 47 | 295 |
| ASRC-OG-KIC-159 | T07N R36E UM Secs. 15,16,21,22,27, 28,33,34 | 47 | 298 |
| ASRC-OG-KIC-160 | T07N R36E UM Secs. 13,14,23-26,35, 36 | 47 | 301 |
| ASRC-USA F021270 | T01N R20E UM Secs. 17,19,20 | Reg | 669632 |
| ASRC-USA F021271 | T01N R20E UM Secs. 16,21,22 | Reg | 669633 |

3727J

89-0176
59-
4C2-

RECORDED-FILED
BARROW RECORDING DISTRICT

MAR 22 1 29 PM '89

REQUESTED BY GUESS + RUDD
ATTN: JOSEPH J. PERKINS JR.
ADDRESS ~~510 L~~ ST. SUITE 700
ANCHORAGE, AK 99501

599848



EXHIBIT A - Page 9