IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WALLACE OENGA, GEORGENE SHUGLUK, LEROY OENGA, SR., MICHAEL DELIA, TONY DELIA, JOSEPH DELIA, JENNIE MILLER, and TRINITY DELIA, | ) | |
| Plaintiffs, | ) | Case No. 06-491 L<br>(ECF No. 1-06-cv-00491-EJD)<br>Chief Judge Edward J. Damich |
| vs. | ) | |
| THE UNITED STATES, | ) | |
| Defendant, | ) | |
| and | ) | |
| BP EXPLORATION (ALASKA) INC., CONOCOPHILLIPS ALASKA, INC., EXXONMOBIL ALASKA PRODUCTION INC., CHEVRON U.S.A. INC., and FOREST OIL CORPORATION, | ) | |
| Intervenor-Defendants. | ) | |

**INTERVENOR-DEFENDANTS' PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Intervenor-Defendants, by and through their attorneys, Guess & Rudd P.C., have moved pursuant to RCFC 56 for summary judgment in favor of the Defendant and Intervenor-Defendants ("Intervenors") and against Plaintiffs respecting Claim Three of Plaintiffs' First Amended Complaint filed herein on September 18, 2006. This document constitutes

Intervenors' "Proposed Findings of Uncontroverted Fact" that is required by RCFC 56(h)(1) to be filed in connection with said motion.

1. The lease agreement involved in this case, as the same has been amended and supplemented, comprises the following documents:

   (a) Lease Agreement (BIA Lease No. F-89-01) between Andrew Oenga (with the approval of the Secretary of the Interior) and BPX, effective January 1, 1989, and recorded on February 1, 1989, at Book 53, Pages 873-890, Barrow Recording District ("Original 1989 Lease Agreement"), a copy of which is attached to Intervenors' Memorandum In Support as Exhibit A;

   (b) BPX's unrecorded letter of July 29, 1993, to the Bureau of Indian Affairs ("BIA"), a copy of which is attached to Intervenors' Memorandum In Support as Exhibit B;

   (c) Agreement To Amend BIA Lease among the heirs of Andrew Oenga (with the approval of the Secretary of the Interior) and BPX, effective January 20, 1994, and recorded on May 2, 1994, at Book 74, Pages 292-298, Barrow Recording District ("1994 Lease Amendment"), a copy of which is attached to Intervenors' Memorandum In Support as Exhibit C;

(d) Third [sic] Amendment To BIA Lease among the heirs of Andrew Oenga (with the approval of the Secretary of the Interior) and BPX, effective May 11, 1995, and recorded on June 14, 1995, at Book 79, Pages 223-227, Barrow Recording District ("1995 Lease Amendment"), a copy of which is attached to Intervenors' Memorandum In Support as Exhibit D.

The Original 1989 Lease Agreement, as first supplemented by BPX's unrecorded letter of July 29, 1993, and then as amended by both the 1994 Lease Amendment and the 1995 Lease Amendment, is referred to herein as the "Oenga Lease".

2. Standard Alaska Production Company (a Delaware corporation) was the name of the lessee when the original "Lease Agreement (BIA Lease No. F-89-01)" effective January 1, 1989, was executed. See Exhibit A attached to Intervenors' Memorandum In Support. Effective January 31, 1989, Standard Alaska Production Company changed its name to BP Exploration (Alaska) Inc. See Exhibit E attached to Intervenors' Memorandum In Support.

3. Plaintiffs are the heirs of Andrew Oenga (see Plaintiffs' First Amended Complaint at ¶ 7) and are referred to herein either as the "Oenga heirs" or, collectively, as "Lessor" (as that term is used on the Oenga Lease).

4. The Oenga Lease covers a 40-acre parcel of land at Heald Point on the North Slope of Alaska (said 40-acre parcel is referred to hereinafter as the "leased premises") for which Andrew Oenga filed an application in 1971 under the Alaska Native Allotment Act of 1906. See BLM File AKFF014632; see also Exhibits A, B, C, D, and F attached to Intervenors' Memorandum In Support. Said parcel includes 22.21 acres within Sec. 36, T. 12 N., R. 15 E., U.M., and 17.79 acres in Sec. 1, T. 11 N., R. 15 E., U.M.

5. As to the 22.21 acres of the leased premises situated in Sec. 36, T. 12 N., R. 15 E., U.M., the allotment application was approved by the BLM and, eventually, Native Allotment Certificate No. 50-2005-0580 was issued on September 27, 2005. See Exhibit F attached to Intervenors' Memorandum In Support.

6. As to the 22.21 acres of the leased premises situated in Sec. 36, T. 12 N., R. 15 E., U.M., Native Allotment Certificate No. 50-2005-0580 expressly excepted and reserved to the United States, out of the estate conveyed by said certificate,

> [a]ll of [the] oil and gas in the land so allotted, and to [the U.S.], or persons authorized by it, the right to prospect for, mine, and remove such deposits from the same upon compliance with the conditions and subject to the provision and limitations of the Act of March 8, 1922, as amended, 43 U.S.C. §§ 270-11 (1982) (repealed with a savings provision) and 270-12 (2000).

7. The oil and gas estate expressly excepted and reserved to the United States out of the estate conveyed by Native Allotment Certificate No. 50-2005-0580 previously

had been conveyed by the United States to the State of Alaska. See Tentative Approval decision dated October 9, 1964 [at p. 2, line 1 of table respecting T. 12 N., R. 15 E., U.M.], as amended by the decision of February 7, 1969 (as corrected on February 19, 1969), as partially rescinded by the decision of March 11, 1980, and as partially rejected by the decision of August 4, 1980 (copies of said decisions are attached to Intervenors' Memorandum In Support collectively as Exhibit G).

8. The oil and gas estate in and under the leased premises that was conveyed to the State of Alaska by the Tentative Approval decision dated October 9, 1964, as amended by the decision of February 7, 1969 (as corrected on February 19, 1969), was included, together with adjoining lands, in State of Alaska Competitive Oil and Gas Lease ADL-34630 effective as of April 1, 1967 (a copy of which is attached to Intervenors' Memorandum In Support as Exhibit H).

9. As to the remainder of the leased premises situated in Sec. 1, T. 11 N., R. 15 E., U.M., the allotment has not yet been conveyed because *all* of the lands in said township were conveyed by U.S. Patent No. 50-74-0093 dated March 27, 1974. See Exhibit I attached to Intervenors' Memorandum In Support.

10. Notwithstanding inaction by the United States to recover the surface of the southern portion of said 40-acre parcel from the State of Alaska, BPX has leased

pursuant to the Oenga Lease, and thus is paying rent on, the entire 40-acre parcel as if the entire 40-acre parcel had been certificated.

11. Pursuant to the Oenga Lease, BPX has developed and currently operates facilities on the leased premises for the development and production of oil and gas from certain oil and gas reservoirs underlying lands adjoining the leased premises. See Plaintiffs' First Amended Complaint at ¶ 9.a; see also Exhibit P attached to Intervenors' Memorandum In Support.

12. In addition to their use by BPX, the leased premises were used by ConocoPhillips Alaska, Inc. (a Delaware corporation that formerly was known as ARCO Alaska, Inc. and then as PHILLIPS Alaska, Inc. before changing its name to ConocoPhillips Alaska, Inc.) and Exxon Corporation (predecessor-in-interest to intervenor ExxonMobil Alaska Production Inc.) pursuant to that certain Letter Agreement dated January 27, 1994, among BPX, ARCO Alaska, Inc., and Exxon Corporation (hereinafter "Facility Sharing Agreement"). See Exhibit J attached to Intervenors' Memorandum In Support.

13. Such shared use of the leased premises by BPX, ARCO Alaska, Inc., and Exxon Corporation continued until BPX became the sole operator of the Prudhoe Bay Unit Area in 2000. See Exhibit K attached to Intervenors' Memorandum In Support.

14. To date, BPX has used the leased premises to facilitate the production of oil and gas from the following lands (all of which are included in the state oil and gas leases identified below):

(a) the lands included in the original Niakuk Participating Area approved by the State of Alaska Department of Natural Resources ("DNR") on March 2, 1994 (see Exhibits L and P attached to Intervenors' Memorandum In Support), as follows:

| PBUA Tract | DNR Lease | Lands | |
|---|---|---|---|
| 4 | 34625 | T12N R15E UM: | Sec. 23 (S2)<br>Sec. 24 (SW4) |
| 31 | 34630 | T12N R15E UM: | Sec. 25 (All)<br>Sec. 26 (All) |
| 32 | 34635 | T12N R16E UM: | Sec. 29 (All)<br>Sec. 30 (All)<br>Sec. 31 (N2)<br>Sec. 32 (N2) |
| 33 | 34634 | T12N R16E UM: | Sec. 28 (All); and |

(b) the lands included in the *expanded* Niakuk Participating Area approved by DNR on November 17, 1997 (see Exhibits M and P attached to Intervenors' Memorandum In Support), as follows:

| PBUA Tract | DNR Lease | Lands | |
|---|---|---|---|
| 4 | 34625 | T12N R15E UM: | Sec. 13 (All)<br>Sec. 14 (All)<br>Sec. 23 (All)<br>Sec. 24 (All) |
| 31 | 34630 | T12N R15E UM: | Sec. 25 (All)<br>Sec. 26 (All)<br>Sec. 36 (NE4) |
| 32 | 34635 | T12N R16E UM: | Sec. 29 (All)<br>Sec. 30 (All)<br>Sec. 31 (N2)<br>Sec. 32 (N2) |
| 33 | 34634 | T12N R16E UM: | Sec. 28 (W2, NE4, NW4SE4, S2SE4). |

15. Almost all of the production to date from lands included in the expanded Niakuk Participating Area has come from the Niakuk accumulation in and under said lands. Production from two of the wells drilled into lands within the expanded Niakuk Participating Area has included some oil from the deeper Raven accumulation in and under said lands. See Exhibit N attached to Intervenors' Memorandum In Support.

16. From 1994 (after execution of the Facility Sharing Agreement) until BPX became the sole operator within the Prudhoe Bay Unit Area in 2000, ARCO Alaska, Inc. and Exxon Corporation used the leased premises to facilitate the production of oil

and gas from the lands included in the West Niakuk Participating Area also approved by DNR on November 17, 1997 (see Exhibits M and P attached to Intervenors' Memorandum In Support), as follows:

| PBUA Tract | DNR Lease | Lands | |
|---|---|---|---|
| 5 | 34626 | T12N R15E UM: | Sec. 15 (All)<br>Sec. 16 (All)<br>Sec. 21 (N2, SE4)<br>Sec. 22 (All) |
| 30 | 34629 | T12N R15E UM: | Sec. 27 (All). |

17. From 1994 until BPX became sole operator within the Prudhoe Bay Unit Area in 2000, ARCO Alaska, Inc. also used the leased premises to facilitate the production of oil and gas from certain lands included in the Lisburne Participating Area approved by DNR on December 4, 1986 (see Exhibits O and P attached to Intervenors' Memorandum In Support), as follows:

| PBUA Tract | DNR Lease | Lands | |
|---|---|---|---|
| 32 | 34635 | T12N R16E UM: | Sec. 31 (All)<br>Sec. 32 (All) |
| 33 | 34634 | T12N R16E UM: | Sec. 33 (All). |

18. From June 2000 (when it became the sole operator within the Prudhoe Bay Unit Area), BPX has used the leased premises to facilitate the production of oil and gas from the lands included in the West Niakuk Participating Area as described above and from the lands included in the Lisburne Participating Area as described above.

19. The Oenga Lease was issued under 25 C.F.R. Part 162 (BIA regulations respecting leasing of, *inter alia*, Alaska Native allotments) and not under 25 C.F.R. Part 169 (regulations respecting granting of rights-of-way upon or across, *inter alia*, Alaska Native allotments).

20. The unnumbered "grant clause" of the Oenga Lease found on page 1 of the Original 1989 Lease Agreement, together with Sections 10 and 11 of the Oenga Lease, provide in relevant part as follows (emphasis added):

> [Grant Clause] WITNESSETH, that … the Lessor hereby leases to the Lessee ten (10) acres of land, the "leased premises", which comprises a portion of Lessor's present and future interests in Parcel B of Alaska Native Allotment Application F-14632.
>
> 10. Use of Leased/Unleased Premises: The Lessee may use the leased premises for any and all oil field exploration, development, construction, facilities, production and support purposes, and for any other uses and purposes reasonably or conveniently related thereto.… The Lessee shall make no unlawful uses of the leased and/or unleased premises, or knowingly permit any unlawful activity to be conducted thereon by others.
>
> 11. Improvements: The Lessee may construct any facilities (pipelines, access roads, causeway approaches, *drilling pads*, a construction staging pads or any other required facilities) on the leased premises as long as construction is limited to the ten (10) acres as herein described on Exhibit A. This Lease Agreement may be amended to increase or decrease the size of the leased premises at any time *at Lessee's sole discretion*. If the leased premises is so increased or decreased, Lessee shall proportionately increase or decrease its lease rental payments effective on the next ensuing lease anniversary date after such increase or decrease; provided however that rental

> amounts shall be pro rated beginning on the date that leased premises is increased or decreased. It is agreed and understood by all parties that the leased premises cannot be reduced to less than the ten (10.0) acres originally taken under this Lease Agreement.…

21. Nowhere in these sections of the Oenga Lease did Lessor except from the grant of the leased premises any rights or impose any limitation upon the purpose or scope of the oil and gas activities that BPX could undertake on the leased premises.

22. In the case of the second, third, and fourth paragraphs of Section 1 of the Original 1989 Lease Agreement, the parties to the Oenga Lease resolved *two sets of competing concerns and goals*: (1) BPX did not want to commit to a 25-year lease if it might not be able obtain the permits and authorizations that it envisioned seeking; (2) Andrew Oenga sought to enjoy as soon as possible the financial security associated with having a *long-term lease*, with its predictable promised cash flow and limited right to cancel.

23. BPX's unrecorded letter of July 29, 1993, served as BPX's written *notice* to the BIA, as contemplated under the Original 1989 Lease Agreement, of the following:

(a) BPX's <u>satisfaction of its obligation</u> under Section 1 of the Original 1989 Lease Agreement (which obligation accrued when BPX received all of the permits and authorizations that it believed that it needed in order to proceed with development) to convert the lease from a year-to-year tenancy to a long-term tenancy expiring (unless

extended pursuant to Section 2 of the Lease) on December 31, 2014, subject to BPX's right (*exercisable only at five-year intervals*) to cancel the Lease pursuant to Section 15 of the Original 1989 Lease Agreement;

(b) BPX's exercise of its option under Section 11 of the Original 1989 Lease Agreement to increase the size of the leased premises.

24. In its letter of July 29, 1993, BPX proposed an effective date of August 1, 1993, for its increase from 10 acres to 20 acres, and the BIA acknowledged and agreed to such effective date when it signed BPX's letter of July 29, 1993.

25. Six months later BPX again exercised its option under Section 11 of the Original 1989 Lease Agreement to increase the size of the leased premises—this time from 20 acres to all 40 acres of land within Andrew Oenga's allotment parcel at Heald Point. Said exercise was memorialized in the 1994 Lease Amendment executed by the Oenga heirs, which also amended the provisions of the Original 1989 Lease Agreement in several other respects.

26. No language in the 1994 Lease Amendment caused the rights granted to BPX under the Original 1989 Lease Agreement in, to, or respecting the leased premises to be limited, diminished, or constrained to the development of any particular

accumulation, pool, or reservoir of oil or gas, or to the development of any particular lands.

27. No language in the 1995 Lease Amendment caused the rights granted to BPX under the Original 1989 Lease Agreement in, to, or respecting the leased premises to be limited, diminished, or constrained to the development of any particular accumulation, pool, or reservoir of oil or gas, or to the development of any particular lands.

28. There is no language in the Oenga Lease by which the Lessor expressly excepted and retained unto itself the right to use the leased premises for the purpose of producing oil or gas from any particular accumulation or from any particular lands.

29. Lessor owns no rights to explore for, develop, or produce any oil or gas situated in or under *any* lands.

30. Under the 1994 Lease Amendment, BPX was authorized to enter into the Facility Sharing Agreement with ARCO Alaska, Inc. and Exxon Corporation without notice to or consent of Lessor.

RESPECTFULLY SUBMITTED this 25th day of June, 2007.

s/Joseph J. Perkins, Jr.
JOSEPH J. PERKINS, JR.
Guess & Rudd P.C.
510 L Street, Suite 700
Anchorage, Alaska 99501
Telephone: 907-793-2200
Fax: 907-793-2299
jperkins@guessrudd.com
Attorneys for Intervenor-Defendants

CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of June, 2007, a true and correct copy of the foregoing Intervenor-Defendants' Proposed Findings of Uncontroverted Fact was sent electronically to the following counsel of record:

James M. Upton
Attorney for Defendant United States
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: 202-305-0482
Fax: 202-305-0506
E-mail: james.upton@usdoj.gov

Raymond C. Givens
Givens Law Firm
P.O. Box 400
912 E. Sherman Avenue
Coeur d'Alene, ID 83816
Tel: 208-676-1310
Fax: 208-676-1296
E-mail: raygivens@givenslaw.com

s/Joseph J. Perkins, Jr.
JOSEPH J. PERKINS, JR.