**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **WALLACE OENGA, GEORGENE SHUGLUK, LEROY OENGA, SR., MICHAEL DELIA, TONY DELIA, JOSEPH DELIA, JENNIE MILLER, and TRINITY DELIA,** | ) | |
| **Plaintiffs,** | ) | **No. 06-491 L** |
| **v.** | ) | **Chief Judge Edward J. Damich** |
| **THE UNITED STATES,** | ) | **SECOND AMENDED COMPLAINT** |
| **Defendant.** | ) | |

## I. PRELIMINARY STATEMENT

1. This is an action for damages against the United States filed by the Plaintiffs who are Native Alaskan Inupiat heirs of Andrew Oenga (deceased) regarding the lease of allotted lands, Allotment F-14632 Parcel B, BIA Lease F-89-01 as amended. The claim is primarily for breach of trust by the United States regarding its failure to collect proper rents or royalties due on the lease of the Allotment. Damages against the United States sought in Claims One and Two pursuant to the Tucker Act, 28 USC 1491 and are authorized by money mandating statutory and regulatory schemes relating to leases of allotted lands and oil/gas production utilizing allotted lands and by the lease, as amended. Claim Three is a similar Tucker Act claim, seeking damages regarding a recently discovered breach of trust regarding trust asset management. Interested Party, BP Exploration (Alaska) Inc. (BP) and/or other Interested Parties may well be liable to

the United States for some or all of the damages sought from the United States by Plaintiffs.

## II. JURISDICTION

2. (a) Jurisdiction is conferred on this Court over this breach of trust action by Tucker Act, 28 U.S.C. § 1491(a).

(b) Tucker Act money-mandating sources of substantive law required for jurisdiction over Claim One are 25 U.S.C. § 396, § 396 c, d, e, and g, 30 U.S.C. § 1701-57, 25 CFR Part 212, 30 CFR Part 206 and 43 CFR Part 3160 and the Lease Agreement, as amended attached to the initial Complaint.

(c) Tucker Act money-mandating sources of substantive law required for jurisdiction over Claim Two are 25 U.S.C. § 415(a), 25 CFR Part 162 (1987) for the period 1988 - March 2001 and 25 CFR Part 162 (2001) thereafter, and the Lease Agreement, as amended attached to the initial Complaint.

(d) Tucker Act money-mandating sources of substantive law required for jurisdiction over Claim Three are 25 CFR Part 162, 25 CFR part 212 and the Lease Agreement as amended attached to the initial Complaint.

3. On November 22, 2005 Plaintiffs formally requested an accounting regarding the lease that is the subject of this action. On February 8, 2006, May 12, 2006 and May 26, 2006 the Defendants responded to that accounting.

4. Claims One, Two and Three subject to the six year statute of limitations of 28 U.S.C. § 2501 applicable to this action did not accrue until 2007 because of operation

of PL 109-54 (2005), 119 Stat. § 499, 519, the request for accounting and the receipt of the United States' response to that request.

5. In addition to the accrual provisions of the previous paragraph, accrual of the claims in this action have been delayed by other factors. Accrual of Claims One, Two and Three as to the period 1998-2001 also did not accrue before 2001 under the continuing claims doctrine. Claim Three as to the West Niakuk P.A. did not accrue within the meaning of 28 U.S.C. § 2501 until at least 2003 when Plaintiffs first discovered a) that the United States had concealed from Plaintiffs actions it had taken and failed to take, and b) knowledge in the United States' possession regarding the West Niakuk subsurface state oil leases, events relating to those state leases and production of oil and gas from West Niakuk through the facility on Allotment F-14632 Parcel B. Claim Three as to West Niakuk P.A. properly accrued in 2006 when the United States failed to take action demanded by Plaintiffs to halt the lease violation and trespass caused by the production of oil and natural gas from the West Niakuk P.A. by and through production facilities constructed on Plaintiff's Heald Point allotment. Claim Three as to the Lisburne P.A. did not accrue until at least 2007 when Plaintiff's first learned through discovery that oil and natural gas has been and was currently being produced through production facilities constructed on Plaintiff's Heald Point allotment and the United States failed to take action to halt this lease violation and trespass when so demanded by Plaintiffs

6. Plaintiffs, the United States and BP entered into a Tolling Agreement on December 20, 2005 covering the period "between December 20, 2005 and June 30, 2006 inclusive."

## III. PARTIES

7 Plaintiffs are:

a. Plaintiff, Wallace Oenga is Inupiat, a son of Andrew Oenga (deceased), resides in Atquasuk, Alaska and holds an individual 24% interest in Andrew Oenga's Heald Point Allotment F-14632 Parcel B and thus the right to 24% of any proceeds from the Heald Point allotment.

b. Plaintiff, Georgene Shugluk is Inupiat, a daughter of Andrew Oenga (deceased), resides in Barrow, Alaska and holds an individual 24% interest in Andrew Oenga's Heald Point Allotment F-14632 Parcel B and thus the right to 24% of any proceeds from the Heald Point allotment.

c. Plaintiff, Leroy Oenga, Sr. is Inupiat, a grandson of Andrew Oenga (deceased), resides in Barrow, Alaska and holds an individual 24% interest in Andrew Oenga's Heald Point Allotment F-14632 Parcel B and thus the right to 24% of any proceeds from the Heald Point allotment.

d. Plaintiff, Michael Delia is Inupiat, a grandson of Andrew Oenga (deceased), resides in Anchorage, Alaska and holds an individual 24% interest in Andrew Oenga's Heald Point Allotment F-14632 Parcel B and thus the right to 24% of any proceeds from the Heald Point allotment.

e. Plaintiff, Tony Delia is Inupiat, a grandson of Andrew Oenga (deceased), resides in Anchorage, Alaska and holds an individual 1% interest in Andrew Oenga's Heald Point Allotment F-14632 Parcel B and thus the right to 1% of any proceeds from the Heald Point allotment.

f. Plaintiff, Joseph Delia is Inupiat, a grandson of Andrew Oenga (deceased), resides in Anchorage, Alaska and holds an individual 1% interest in Andrew Oenga's Heald Point Allotment F-14632 Parcel B and thus the right to 1% of any proceeds from the Heald Point allotment.

g. Plaintiff, Jennie Miller is Inupiat, a granddaughter of Andrew Oenga (deceased), resides in Fairbanks, Alaska and holds an individual 1% interest in Andrew Oenga's Heald Point Allotment F-14632 Parcel B and thus the right to 1% of any proceeds from the Heald Point allotment.

h. Plaintiff, Trinity Delia is Inupiat, a great-granddaughter of Andrew Oenga (deceased), resides in Anchorage, Alaska and holds a potential 1% share of Andrew Oenga's Heald Point Allotment F-14632 Parcel B that is currently in probate and thus the potential right to 1% of any proceeds from the Heald Point allotment. Trinity Delia is 11 years old and resides with her uncle, Tony Delia.

8. Defendant is the United States of America. The Department of the Interior (DOI), was the department of the United States primarily involved along with its Bureau of Indian Affairs (BIA), its Office of Special Trustee (OST) and its agents and contractors.

9. Interested Parties who potentially have an interest in this litigation are:

a. BP Exploration (Alaska) Inc. (BP), a Delaware corporation, which held the original Niakuk Alaska sub-surface oil lease, the successor in interest of Standard Alaska Production Company, lessee of BIA Lease F-89-01, the lease of Allotment F-14632 Parcel B relevant to this lawsuit, now a

participating company in the Niakuk and West Niakuk Participation Areas (PA) of the Prudhoe Bay Unit, unit operator regarding Niakuk PA, West Niakuk PA and the operator of the long reach directional drilling oil and natural gas facility located on Heald Point Allotment F-14632 Parcel B.

b. ConocoPhilips Alaska, Inc., a Delaware corporation, which is the successor in interest to ARCO Alaska Inc., which held an original 50% interest in the West Niakuk Alaska subsurface oil lease and is a current participate in the Niakuk PA, West Niakuk PA and the Prudhoe Bay Unit.

c. ExxonMobil Corp., a New Jersey corporation, which held an original 50% interest in the West Niakuk Alaska subsurface oil lease and is a current participate in the Niakuk PA, West Niakuk PA and the Prudhoe Bay Unit.

d. Forest Oil Corporation, a New York corporation, is a current participate in the Niakuk PA, West Niakuk PA and the Prudhoe Bay Unit.

e. ChevronTexaco Corp., a Delaware corporation, is a current participate in the Niakuk PA, West Niakuk PA and the Prudhoe Bay Unit.

f. State of Alaska is the holder of the subsurface oil and gas rights leased by the above companies for not less than a 12 1/2% royalty and produced thru the long reach oil production facility on Heald Point Allotment F-14632 Parcel B. AS §38.05.180 (P)(3) (Alaska 2005)

g. Inupiat Community of the Artic Slope, an IRA Regional Tribal Government (ICAS) is an agent and contractor of the United States' DOI, BIA regarding certain realty functions pertaining to this matter.

h. Artic Slope Native Association, Limited (ASNA) was an agent and contractor of the United States' DOI, BIA regarding certain realty functions pertaining to this matter.

## IV. GENERAL FACTS

10. Andrew Oenga was an Inupiat Alaska Native. He lived along the North Slope of Alaska from Barrow to the Prudhoe Bay area. He did not speak English. He died on April 16, 1990. He was in his 80's at that time.

11. In 1971 Andrew Oenga applied for an Alaska Native Allotment, which included a peninsula of land known as Heald Point on the northeast edge of Prudhoe Bay on the North Slope of Alaska. The allotment was eventually granted. Allotment F-14632 Parcel B.

12. Allotment F-14632 Parcel B consists of the interest in land described in the Native Allotment issued by the United States regarding that Native Allotment known as F-14632 Parcel B, Lot 1 T.12 N., R. 15 E., Section 36, Tract B, Certificate Number 50-2005-0580.

13. Through the probate of Mr. Oenga's estate, and the estates of some of his heirs, Allotment F-14632 Parcel B is now held by Plaintiffs in the percentages listed above in Parties.

14. In 1989 a lease was entered into for ten (10) acres of the allotment between Standard Alaska Production Company as Lessee and "Andrew Oenga, an Alaska Native, of Barrow, Alaska [with the approval of the Secretary of the Department of the Interior (the "Secretary") or his duly authorized representative, acting for, and on behalf of Mr. Oenga.]" (emphasis added, bracketed text in original). Although 25 U.S.C.§ 321

and 25 CFR Part 169 are the proper legal authority for leasing an allotment for the road and pipeline right-of-way uses sought here, the lease was made pursuant to 25 CFR Part 162. See first paragraph of Original Lease. A copy of this lease is attached as Attachment A to the initial Complaint and incorporated herein. ("Original Lease"). This lease has been identified by the BIA as Lease F-89-01.

15. On July 29, 1993, BP proposed an Amendment of Lease F-89-01. On August 3, 1993 the BIA Fairbanks Agency Superintendent Samuel Demientieff entered into this first amendment on behalf of all the heirs of Andrew Oenga. Andrew Oenga had died three years earlier. This Letter/Amendment and accompanying drawing showing the intended use as a "Drill Pad" is attached as Attachment B to the initial Complaint and incorporated herein (1993 Letter/Amendment).

16. No notice of BP's proposed 1993 Letter/Amendment was given to any Plaintiffs prior to the 1993 Letter/Amendment's approval by the United States. No Plaintiff or other allottee signed the 1993 Letter/Amendment.

17. In January 1994 a second amendment of Lease F-89-01 was entered into and approved on behalf of the Secretary of Interior by BIA Fairbanks Agency Superintendent Samuel Demientieff. It is attached at Attachment C to the initial Complaint and incorporated herein (1994 Amendment). This amendment modified the payment adjustment periods from five year to four year time blocks, ¶ 5, and declared certain agreements to not be subleases, ¶ 13.

18. In May, 1995 a third amendment of Lease F-89-01 was entered into and approved on behalf of the Secretary of Interior by Samuel Demientieff. It is attached at Attachment D to the initial Complaint and incorporated herein (1995 Amendment). This

amendment adjusted the rent due, ¶ 4, and placed the United States and its construction in absolute control and management of the lease by prohibiting Plaintiffs (Lessors) from communicating with BP (Lessee), ¶ 34. (Lessors "will under no circumstances contact the Lessee in person or by telephone, facsimile, electronic mail, United States mail, courier service, or any other means."). There have been no other amendments of Lease F-89-01.

19. The understanding of the parties at the time of the original lease was that the lease was to allow use of Allotment F-14632 Parcel B as a road and pipeline to transport oil from a causeway/pipeline connecting an offshore oil production facility (drilling pad) of the "Niakuk Project" with a pipeline on the south end of the Oenga Allotment, see Original Lease Exhibit A. Nevertheless, the United States did not insist that an oil and gas pipelines right-of-way lease be used pursuant to 25 U.S.C. § 321 and 25 CFR 169.25.

20. The 1993 Letter/Amendment changed the intended use of the allotment from a road/pipeline right-of-way to an oil production facility for production "from, our Niakuk oil accumulation," which is the use to which the leased allotment has been put. See 1993 Letter/Amendment. Nevertheless, the United States did not insist that a oil and gas mineral development lease be used pursuant to 25 USC § 396(c), (d), (e), and 30 USC § 1701-57 and 25 CFR Part 212, 30 CFR Part 206 and 43 CFR Part 3160.

21. Under Lease F-89-01 as amended, rent is to be collected and paid annually, and adjusted every five or four years. The rent due is to be collected from BP by the United States, and then disbursed to the Allottee[s]. The United States' rent collection obligation under the Lease, as amended, includes a) determining the amount of

rent due, b) recovering that amount from BP and c) paying that amount to the Plaintiffs. The amount determination process under Lease F-89-01 includes a) applying a consumer price index adjustment factor to the prior rent due, b) having an appraisal performed to determine a fair market value rent account, and c) selecting the higher of the two as the rent due. Original Lease ¶¶ 5, 9.

22. Under Lease F-89-01 as amended, interest on past due rent is to be calculated "at the rate of eighteen (18) percent per annum, compounded annually." Original Lease ¶ 7.

23. An appraisal of Allotment F-14632 Parcel B was performed by the United States in 1993 for the 1994-1997 four year block of time (BIA 1993 Appraisal). It was done by an appraiser not properly qualified to appraise such commercial property. That appraisal was "as of" a date before the United States knew of BP's intent to use Allotment F14632 Parcel B as a drill pad for a multiple well-head long reach directional drilling production facility, even though such intended use was known to the United States at the date the appraisal was signed as "prepared." That appraisal did not appraise the property in its highest and best use as a multiple well-head long reach directional drilling oil production facility and did not use similar oil production facilities as comparables.

24. A "Limited Appraisal" of Allotment F-14632 was performed by the United States in 1997 for the 1998-2001 four year block of time although no changes in rent collected occurred until 1999. (1997 BIA Appraisal). The "Limited Appraisal" was not an actual appraisal, but only a review of a prior appraisal conducted in 1994 for BP regarding a proposed purchase of Allotment F-14632 Parcel B. That appraiser's qualifications are unknown. Neither the 1994 BP appraisal reviewed or the 1997 BIA

"Limited Appraisal" appraised the property in its highest and best use as a drill pad for a multiple well-head long reach oil production facility and did not use similar oil production facilities as comparables.

25. An appraisal of Allotment F-14632 was performed for the United States in 2005 for the 2002-2005 four year block of time (2005 Appraisal). This appraisal was not provided to the Oenga Heirs until 2006. Issues regarding this 2005 appraisal and amounts properly due in the 2002-2005 time period are presently before the Department of the Interior Board of Indian Appeals and are not currently part of this action.

26. The United States has had an appraisal conducted under Lease F-89-01 for the 2006-2009 inclusive, four year block of time. It was completed in 2007. Issues regarding this 2007 appraisal and amount properly due in the 2006-2009 time period are presently before the Department of the Interior Board of Indian Appeals and are not currently part of this action.

27. The Plaintiffs on several occasions have requested the United States to appraise their land as an oil production property (surface estate used as drilling pad in producing subsurface oil and gas deposits thru the use of multiple wellhead long reach directional drilling), and to use as comparables in the appraisal similarly situated surface estates used for similar oil production. The United States has failed to have the property so appraised.

28. All or nearly all of the oil and gas from the Niakuk Pool has been produced thru the production facility on Allotment F-14632 Parcel B.

29. The amount collected by the United States for the Plaintiffs regarding Lease F-89-01 for the period 1994-2001 inclusive is $670,191. See spreadsheet attached as Attachment E to the initial Complaint and incorporated herein.

30. On December 1, 2005, the Plaintiffs formally demanded that the United States through the Secretary of the Interior "immediately give Notice of Default, Breach and Failure to Perform on Comply regarding the above referenced Leases, as amended and 25 CFR [Part] 162 to Lessee BP Exploration (Alaska), Inc." for several specific reasons justifying this action were listed. The United States did not give the requested Notice.

31. On December 23, 2005, the Plaintiffs formally demanded that the United States, through the Secretary of the Interior "give Notice to Halt Trespass to the Lessees of the West Niakuk Oil Lease." Plaintiffs also demanded that the United States collect appropriate trespass damages. The United States gave no such Notice and has not sought to recover trespass damages.

## V. CLAIM ONE
## MINERAL (OIL AND GAS) LEASE, - 25 CFR § 212.1 ET SEQ.

32. All other paragraphs of this Complaint are incorporated herein.

33. 25 USC § 396, 25 USC § 396 (c), (d), (e), (g) and 30 USC § 1701-57, and related regulations, 25 CFR Part 212, 30 CFR Part 206 and 43 CFR Part 3160 addressing oil and gas leases, and the Lease Agreement, as amended constitute money mandatory sources of substantive law for purposes of claims under the Tucker Act. See *Pawnee v. United States*, 830 F.2d 187 (Fed. Cir. 1987).

34. Until August 7, 1996, 25 CFR § 212.16 (1982) required the collection by the Secretary of the Interior of not less than a 12 1/2% royalty on the value of oil and gas

produced as a result of an oil and gas lease. After August 7, 1996, the royalty was changed to not less than 16 2/3% unless a lease rate was found by the Secretary to be in the best interest of the Indian allottee. 25 CFR § 212.41(b)(1996).

35. 25 CFR Part 212 is generally applied to situations where the surface land thru which the oil and gas is produced and the subsurface estate which hold the oil or gas deposit are both in one ownership held by the allottee. When the surface land thru which the oil or gas is produced is in separate ownership from the subsurface estate which holds the oil or gas deposit, both are subject to the provisions of 25 CFR Part 212. A lease of the surface land is a "lease" within the meaning of 25 CFR § 212.16 (1982). The surface land through which the oil is produced is properly considered part of "mineral interest" and the Indian owner of it is an "Indian mineral owner" 25 CFR § 212.3, § 212.41(b) (1996).

36. It is appropriate that not less than 25% of the royalty set by 25 CFR Part 212 be attributed to the surface on which the oil and gas production facility is constructed and used to produce oil and gas from other subsurface locations. The appropriate royalty for this surface use is not less than a 3 1/8% royalty under 25 CFR § 212.16 (1982) (setting minimum royalty 12 1/2% ) or 4 1/6% royalty under 25 CFR § 212.41(b) (1996) (setting minimum royalty at 16 2/3%).

37. Neither the Secretary of the Interior, nor his designee, has ever made a determination that it is in the best interests of the Plaintiffs to receive a royalty or rent less than provided by the above approach under 25 CFR § 212.41(b) (1996).

38. Any provision of Lease F-89-01 which would preclude collection of the royalty due under 25 CFR § 212.16 (1982) and 25 CFR § 212.41 (b)(2) (1996) is void and/or without force and effect as in violation of federal law.

39. The amount that was collected by the United States for the Plaintiff regarding the lease of Native Allotment F-14632 Parcel B for the period 1994-2001 inclusive was $670,192.

40. The United States breached its fiduciary responsibility and trust obligation owned by Plaintiffs by not collecting a royalty of at least 3 1/8% from 1993-August 7, 1996 and of at least 4 1/6% from August 7, 1996-2001 on the value of all oil or gas produced through the drilling pad and production facility on Native Allotment F-14632 Parcel B.

41. Plaintiffs are entitled to judgment against the United States in an amount determined by the Court of not less than 25% of the royalty set by 25 CFR Part 212 on the value of all oil and gas produced through the drilling pad and production facility on Native Allotment F-14632 Parcel B, less the amount actually collected for Plaintiffs by the United States, plus interest as allowed by law, or as calculated at 18% per annum compounded annually under ¶7 of the lease.

## VI. ALTERNATIVE CLAIM TWO
## BUSINESS LEASE FAIR ANNUAL RENTAL, 25 CFR PART 162

42. All other paragraphs of this Complaint are incorporated herein.

43. The relief sought in Claim Two is in the alternative to Claim One and is sought <u>only if</u> all, or some aspect of the relief sought in Claim One pursuant to 25 CFR Part 212, and specifically 25 CFR § 212.16 (1982) and 25 CFR § 212.41 (1998) is found to be inapplicable or not available.

44. 25 U.S.C. § 415(a) and its regulations, 25 CFR Part 162, and the Lease Agreement, as amended constitute money mandating sources of substantive law for purposes of claims under the Tucker Act. See *Brown v. United States*, 86 F.3d 1554 (Fed.Cir. 1996).

45. 25 CFR Part 162 prevents the Secretary or his designee from entering into a business lease of allotted lands on behalf of allottee that does not return "fair annual rental" and from collecting less then "fair annual rental."

46. 25 CFR Part 162 requires that all leases be for not less than "the present fair annual rental" unless the Secretary determines that receiving less "would be in the best interests of the landowner."

47. Neither the Secretary of the Interior, nor his designee, has ever made a determination that it would be in the best interests of the Plaintiffs that they receive less than the "present fair annual rental".

48. 25 CFR Part 162 requires periodic review of not less then every five years to consider the equities involved and the economic conditions at the time.

49. Defendants used the periodic appraisal/consumer price index cost of living adjustment approach of the lease as amended to satisfy the various rent requirements of 25 CFR Part 162, bud did not use a) properly qualified appraisers, b) proper appraisals techniques, or c) proper comparables, and this did not comply with the requirements of 25 FCR Part 162.

50. The proper appraisal techniques to use to determine the "present fair annual rental" of Allotment F-14632 Parcel B under Lease F-89-01 include a) appraising the allotment at its highest and best use, which in this case is its actual use as a multi-

wellhead long reach directional drilling oil production facility, and b) using actual comparables of the rent paid to the owners of the surface land used to produce oil or gas from a separately held subsurface estate. This was not done in any of the appraisals of Allotment F-14632 Parcel B.

51. Appropriate "present fair annual rental" of Allotment F-14632 Parcel B for drill pad for multi-wellhead long reach directional drilling of oil from a separately held subsurface estate ranges from the 1% - 2% royalty paid the Kuukpik Village Corporation at the neighboring Colville River Unit on the North Slope of Alaska, to a 2 1/2% royalty (*Flying Diamond Oil Corp. v Newton Sheep Co.*, 776 P.2d 618, 626-27, 629-31 (Utah 1989)), to a 4% royalty (*In re Newstar Energy of Texas*, 280 B.R. 623, 625 [Br. Ct. W.D. Mich. 2002]) to not less than a 4 1/6% calculated from 25 CFR § 212.41(b) (1996) in Claim One).

52. Any provision of Lease F-89-01 which would preclude collection of the royalty due under a proper appraisal as the "fair annual rental" of 25 CFR Part 162 is void and/or without force and effect as a violation of federal law.

53. The amount that was collected by the United States for the Plaintiff regarding the lease of Native Allotment F-14632 Parcel B for the period 1994-2001 inclusive was $670,192.

54. The United States breached its fiduciary responsibility and trust obligation owed Plaintiffs by not collecting fair annual rental on the lease of native Allotment F-14632 parcel B in an amount in the range of the 1% to 4% royalties on the value of production as used at other similar sites.

55. Plaintiffs are entitled to judgment against the United States in an amount determined by the Court equal to the present fair annual rental calculated as an amount in the range of the 1% to 4% royalties on the value of production as used at other similar sites, less the amount actually collected for Plaintiffs by the United States, plus interest as allowed by law or as calculated at 18% per annum compounded annually under ¶ 7 of the lease.

## VII. CLAIM THREE
## PRODUCTION FROM WEST NIAKUK P.A. AND LISBURNE P.A.

56. All other paragraphs of this Complaint are incorporated herein.

57. The relief sought in Claim Three is in the alternative to Claims One and Two in the event that the relief sought herein as to oil produced from West Niakuk P.A. and Lisburne P.A. thru Allotment F-14632 Parcel B has not been already granted in Claims One or Two.

58. Lease F-89-01, as amended, was entered into regarding development of only State oil leases obtained by and owned 100% by BP, known as "Niakuk." See Original Lease ¶ 1 ("Niakuk Project"), 1993 Letter/Amendment ¶¶1 and 2 ("our Niakuk oil accumulation," "Niakuk Development Project"). The State of Alaska designated these state leases as the Niakuk Participation Area or Niakuk P.A.

59. To the west of the Niakuk state leases were other leases originally purchased on a 50/50 basis by Exxon Corporation (Exxon) and ARCO Alaska, Inc. (ARCO). These were known as "West Niakuk" and designated by the State of Alaska as the separate "West Niakuk P.A." To the south of the Niakuk P.A. are other leases known as the Lisburne P.A. purchased by BP.

60. In early July 1993, ARCO approached the BIA or its agent seeking to lease a portion of Allotment F-14632 Parcel B. The BIA or its agent informed ARCO that the Allotment was subject to an option held by BP, but made no effort to seek the release of BP's option either at the time of approving the 1993 Letter/Amendment the next month, or at the time of the 1994 Lease Amendment.

61. After the 1994 Lease Amendment was finalized, BP executed a "Letter Agreement, ARCO/Exxon Access to Niakuk Facilities and Integration of Niakuk Interests" that gave Exxon and ARCO access to develop oil from West Niakuk P.A. with the use of the facilities on Allotment F-14632 Parcel B. This was done without Plaintiffs knowledge or consent and in violation of Lease F-89-01 as amended. In 1983 BP began producing oil and gas from a portion of the Lisburne P.A. through the production facilities located on Plaintiffs allotment. This has been done without Plaintiffs knowledge or consent and in violation of Lease F-89-01 as amended.

62. Approximately 24% of the oil produced through the production facility on Plaintiffs' allotment from 1993-2001 appears to have been from the West Niakuk P.A., and approximately 5% from the Lisburne P.A.

63. Plaintiffs have received no compensation for the use of their allotment in the production of oil and gas from the West Niakuk P.A. or the Lisburne P.A. under Lease F-89-01.

64. Until 2003, the Plaintiffs had no knowledge of a) ARCO's interest in leasing a portion of Allotment F-14632 Parcel B and the United States' actions and inactions in that regard, or b) the production of West Niakuk P.A. oil and gas thru the BP

facility on the allotment. Until 2007 Plaintiffs had no knowledge of the production of Lisburne oil and gas through the BP facility on the allotment.

65. ARCO's interest in West Niakuk was eventually transferred to ConocoPhillips Alaska, Inc.

66. Lease F-89-01 does not authorize the use of Allotment F-14632 Parcel B and the production facility constructed on it to produce oil and gas from the West Niakuk P.A. or Lisburne P.A.

67. The statutes and regulations listed above in Claims One and Two and the Lease as amended constitute money-mandating sources of substantive law regarding Claim Three.

68. The above actions constitute a breach of the lease, a trespass and a failure on the part of the United States to take appropriate action when requested which constituted a breach of the fiduciary obligation and trust responsibility owed the Plaintiffs by the United States. Specific breaches include a) mismanagement of trust assets, b) failure to collect proper rents and c) failure to take action to halt the breach of the lease and the trespass regarding production of oil from the West Niakuk P.A. and Lisburne P.A. through Allotment F-14632 Parcel B.

69. Plaintiffs are entitled to a judgment for damages against the United States for its breach of fiduciary duty in an amount to be determined by the Court under the provisions of 43 CFR § 9239.0-8 and 42 CFR § 9239.5-2, plus interest.

## VIII. PRAYER

Wherefore, Plaintiffs pray that the Court:

**1. CLAIM ONE**

a. Enter Judgment in Claim One against the United States in favor of Plaintiffs for damages in the amount to be determined by the Court as alleged in Claim One, plus interest.

b. Award Plaintiffs their costs and attorney fees.

c. Grant such other relief as is deemed appropriate.

**2. CLAIM TWO - IN THE ALTERNATIVE,**

a. Enter Judgment in Claim Two against the United States in favor or Plaintiffs for damages in an amount to be determined by the Court as alleged in Claim Two, plus interest.

b. Award Plaintiffs their costs and attorney fees.

c. Grant such other relief as is deemed appropriate

**3. CLAIM THREE**

a. Enter Judgment in Claim Three against the United States in favor of Plaintiffs for damages in an amount to be determined by the Court as alleged in Claim Three, plus interest.

b. Award Plaintiffs their costs and attorney fees.

c. Grant such other relief as is deemed appropriate.

DATED this 17th day of June 2007.

Respectfully submitted,

s/ Raymond G. Givens

Raymond C. Givens
Givens Law Firm
Attorney for Plaintiffs
P.O. Box 400
912 East Sherman Avenue
Coeur d'Alene, ID 83816-0400
Telephone: 208-676-1310
Fax: 208-676-1296
raygivens@givenslaw.com

**Certificate of Service**

I hereby certify that on the 17th day of July, 2007, I electronically filed the foregoing Plaintiffs' Second Amended Complaint with the Clerk of the Court using the CM/ECF System which will send notifications of such filing to all parties of record.

James M. Upton
U.S. Department of Justice
Environment & Natural Resources Div.
P.O. Box 663
Washington, DC 20044-0663
Tele: 202-305-0482
Fax: 202-305-0506
james.upton@usdoj.gov
Attorney for Defendant

Joseph J. Perkins, Jr.
Guess & Rudd, P.C.
510 L Street, Suite 700
Anchorage, Alaska 99501
Tele: 907-793-2200
Fax: 907-793-2299
jperkins@guessrudd.com
Attorneys for Intervenors

DATED this 17th day of June 2007.

Respectfully submitted,

s/ Raymond G. Givens
Raymond C. Givens
Givens Law Firm
Attorney for Plaintiffs
P.O. Box 400
912 East Sherman Avenue
Coeur d'Alene, ID 83816-0400
Telephone: 208-676-1310
Fax: 208-676-1296
raygivens@givenslaw.com