# In the United States Court of Federal Claims

No. 06-491 L

(Filed: September 13, 2007)

**********************************
**WALLACE OENGA, et al.,** *
*
Plaintiffs, *
*
*
*
v. *
*
**THE UNITED STATES,** *
*
Defendant, and *
*
**BP EXPLORATION (ALASKA), INC., CONOCOPHILLIPS ALASKA, INC., EXXON MOBIL ALASKA PRODUCTION, INC., CHEVRON U.S.A., INC. and FOREST OIL CORPORATION,** *
*
Defendant-Intervenors, and *
*
**KUUKPIK CORPORATION** *
*
Defendant-Intervenor *
*
**********************************

Motion to compel inspection/production of documents; RCFC 37(a), 56(f); relevance, RCFC 26

*Raymond C. Givens*, Givens Law Firm, Coeur d'Alene, ID, for Plaintiffs.

*James M. Upton*, Environment & Natural Resources Division, Natural Resources Section, United States Department of Justice, Washington, DC, for Defendant.

*Louis R. Veerman*, Guess & Rudd P.C., Anchorage, AK, for BP Exploration (Alaska) Inc., ConocoPhillips Alaska, Inc., Exxon Mobil Alaska Production, Inc., Chevron U.S.A., Inc., and Forest Oil Corporation.

*Bruce E. Falconer*, Boyd, Chandler & Falconer, LLP, Anchorage, AK, for Kuukpik Corporation

---

**OPINION AND ORDER**

---

**DAMICH, Chief Judge.**

This matter comes before the Court on Plaintiffs' Motion to Compel the production or inspection of certain documents, pursuant to Rules 37(a) and 56(f) of the Rules of the Court of Federal Claims ("RCFC"), sought in discovery from Intervenor ConocoPhillips Alaska, Inc. ("CPAI"). For the reasons discussed herein, the Plaintiffs' Motion to Compel is hereby GRANTED.

## I. Background

Plaintiffs are Native Alaskan Inupiat heirs of Andrew Oenga, now deceased, who was granted a 40-acre Alaska Native Allotment ("Allotment"), Allotment F-14632 Parcel B, as a result of his 1971 application to the United States Department of the Interior. Second Am. Compl. ¶ 11. Plaintiffs assert that the Allotment granted Oenga surface rights only; the subterranean oil and gas rights had been previously transferred by the United States to the State of Alaska.[1] Second Am. Compl. ¶ 12. Following the probate of Oenga's estate, ownership in the Allotment is now held by the Plaintiffs in various percentages. Second Am. Compl. ¶ 13. In 1989, the U.S. Secretary of the Interior, "acting for, and on behalf of Mr. Oenga," approved a lease agreement ("Lease"), Bureau of Indian Affairs (BIA) Lease No. F-89-01, between Oenga and Standard Alaska Production Company ("Standard Alaska"). Second Am. Compl. ¶ 14. The Lease granted Standard Alaska the use of 10 acres of the Allotment, *inter alia*, "for any and all oil field exploration, development, construction, facilities, production and support purposes." Compl. Ex. A at 5. Standard Alaska changed its name to BP Exploration (Alaska) Inc. (BPX) effective January 31, 1989. The first amendment to the Lease–which has been amended on three occasions, in consecutive years beginning in 1993–expanded the portion of the Allotment subject to the Lease from 10 to 20 acres and converted the Lease from "a year-to-year basis to a fixed twenty-five year term." Compl. Ex. B at 1.

BPX subsequently entered into a separate agreement, the Prudhoe Bay Unit Agreement, wherein it agreed to act as unit operator for four other oil companies ("Working Interest Owners")–CPAI, Exxon Mobil Alaska Production, Inc. ("EMAP"), Chevron U.S.A, Inc. ("Chevron"), Forest Oil Corporation ("Forest") (collectively, the "Oil Companies")–pursuant to

---

[1] Defendant instead maintains that the Allotment was conveyed to Oenga in fee simple title, but "subject *inter alia* to the United States' reservation of 'all of oil and gas in the land so allotted.'" Answer ¶ 12.

what it considers to be its right under the Lease to operate oil production facilities on the Allotment.[2] Oil Companies' Mot. to Intervene at 4. As part of this arrangement, the Working Interest Owners reimburse BPX for costs incurred by BPX as unit operator, and BPX delivers to each Working Interest Owner its proportionate share of all oil and gas produced from leases subject to the Prudhoe Bay Unit Agreement." *Id*.

The gravamen of Plaintiffs' three-count Complaint, originally filed on June 30, 2006 and amended for the second time as of July 17, 2007, is that Defendant has committed a breach of trust by failing to collect, on their behalf, the proper rents or royalties due on the Lease. Specifically, Plaintiffs contend that two statutes, the Indian Mineral Leasing Act, 25 U.S.C. § 396 (a)-(g), and the Indian Long-Term Leasing Act, 25 U.S.C. § 415(a), and the corresponding regulations for each, govern the amounts of rent or royalties that should be payable under the Lease. In the first count of the Complaint, Plaintiffs allege that Defendant United States breached the fiduciary responsibility and trust obligation owed to Plaintiffs by not collecting royalties on the value of all oil and gas produced on Allotment F-14632, Parcel B, in accordance with these statutory and regulatory guidelines. Alternatively, in the event that the Court finds that all or some aspect of the relief sought in regard to the complaint's first count is unavailable, Plaintiffs contend that Defendants owe them damages for failing to collect fair annual rental on the lease of Allotment F-14632, Parcel B. To support this claim, Plaintiffs cite two appraisal techniques–a) appraising the allotment at its highest and best use, which in this case is its actual use as a multi-wellhead long reach directional drilling oil production facility, and b) the use of comparables of rent paid to owners of surface land used to produce oil or gas from a separately held subsurface estate–that they interpret the Lease as calling for and that Defendants allegedly did not use. Finally, in regard to a similar claim for damages stemming from a breach of trust in the management of trust assets, Defendant allegedly breached the terms of the lease of Allotment F-14632, Parcel B, precluding the use of the parcel's land and an oil and gas production facility located on it to produce oil and gas from other lands, thereby also committing a trespass. Second Am. Compl. ¶¶ 32 - 69. On December 22, 2006, the Court granted the Oil Companies' motion to intervene as defendants as a matter of right, pursuant to RCFC 24(a).

## II. Plaintiff's Motion to Compel Production

The documents at issue in the motion to compel now before the Court solely concern the Complaint's second count. On January 30, 2007, Plaintiffs made three requests for production from CPAI as part of discovery. Plf's. Mot. to Compel, App. 1. The documents concerned CPAI's lease of a similar Native Alaskan surface interest at an oil field on Alaska's North Slope, the Colville River Unit ("Colville"), approximately 75 miles west of the Allotment. *Id*. at 4-5. That interest was, in turn, owned by the Kuukpik Village Corporation ("Kuukpik"), an Alaskan Native entity. *Id*. at 5. The first request concerned a copy of the 1997 Surface Use Agreement, and any amendments thereof, between CPAI and Kuukpik regarding compensation paid for

---

[2] Plaintiffs allege, however, that BPX violated the Lease by entering into the Prudhoe Bay Unit Agreement. Second Am. Compl. ¶ 9, 58-66.

CPAI's use of Kuukpik's surface lands in the development of Colville's oil and gas resources. *Id*. App. 1 at 3. Plaintiffs also requested copies of any and all agreements, or amendments thereto, in CPAI's possession regarding compensation paid to Kuukpik for the right to conduct oil and gas activities on Kuukpik's lands in the development of Colville, including but not limited to a 1994 agreement between Kuukpik, the Arctic Slope Regional Corporation (ASRC), and the state of Alaska, and a 1992 settlement agreement between ASRC and Kuukpik. *Id*. App. 1 at 4. Finally, Plaintiffs requested all documents relating to contacts made and responses received in 1993 and 1994 by or on behalf of ARCO Alaska, the predecessor to CPAI, with any employee of the U.S. Department of Interior's Bureau of Indian Affairs (BIA), or any contractors or agents acting on its behalf, regarding ARCO Alaska's desire to lease any portion of Allotment F-14632, Parcel B. *Id*. App. 1 at 6-7.

On March 26, 2007, CPAI objected to the first two requests on grounds of irrelevance. Acknowledging that the request for the 1997 Surface Use Agreement "ostensibly relates to their allegations respecting the determination of fair market value rent for a 40-acre Native allotment," CPAI stated that "the origins of title to the surface and subsurface estates in the lands covered by the...Agreement, the current ownership thereof, the parties to and the terms of the...Agreement, and the nature of the transaction in general are so different from the Native allotment and transactions involved in and at issue in this case as to make the requested document irrelevant." *Id*. App. 1 at 3-4. CPAI noted that the Surface Use Agreement affected land exceeding 100,000 acres, while the land at issue in Plaintiff's dispute with the United States only involved ten (10) acres. *See id*. App. 1 at 3; Second Am. Compl. ¶ 14. CPAI also maintained that the BIA could not have obtained the Surface Use Agreement to determine fair market value for purposes of valuing Native allotments because it lacked the authority to subpoena information from private parties to a private transaction. *Id*. App. 1 at 4.

CPAI admitted its access to or possession of three documents responsive to Plaintiffs' second request–a) a 1992 settlement agreement between ASRC and Kuukpik, b) a 1997 lease amendment "among ARCO Alaska, ASRC, et.al.," and a c) 1997 1431(o) consent agreement between ASRC and Kuukpik–but only in connection to the Surface Use Agreement. As a result, CPAI's objections to the second request were the same. *Id*. App. 1 at 4-5.

CPAI also noted Kuukpik's objections to these requests, in that the documents requested contained "competitively sensitive business information, the disclosure of which would seriously and irreparably harm Kuukpik," and Kuukpik's intent to intervene to make its own case against the requests. *Id*. App. 1 at 3, 5. But CPAI also directed Plaintiffs to two additional and publicly available documents outside the second request's scope that were "critical to an understanding of the origins of title to the surface and subsurface estates in the lands covered by the Surface Use Agreement and the associated agreements"–a 1987 agreement between ASRC and Kuukpik and a 1991 settlement agreement between ASRC and the state of Alaska. *Id*. App. 1 at 6.

On May 14, 2007, the United States, pursuant to RCFC 12(b)(1) and 12(b)(6) moved this Court to dismiss this case for lack of subject matter jurisdiction and failure to state a claim for which relief could be granted, or, in the alternative, for summary judgment. A crux of its

argument for dismissal or summary judgment was that neither the lease of Allotment F-14632, Parcel B, nor the Indian Long Term Leasing Act and the Act's regulations required the use of oil royalties to calculate lease rental adjustments. Def's. Mot. to Dismiss at 24-28. Plaintiffs later articulated their view that copies of CPAI's various surface agreements with Kuukpik were necessary to respond to the United States's motion. Specifically, Plaintiffs claimed that "some of these leases for the use of Kuukpik's surface rights apparently provide for royalties to be paid to Kuukpik for the lease of the surface lands used for oil production....." Joint Status Report, May 22, 2007 at 3. The documents were, therefore, necessary to respond to the Rule 12(b)(6) motions "because they address the use of royalties as payment for the lease of Native corporation surface rights in the production of oil leases held by others at other locations." *Id.* The United States disagreed and argued that the information in the requested documents was only pertinent to the issue of damages, and not the matter of discerning liability. *Id.*

Plaintiffs consequently filed their motion to compel on June 12, 2007, contending that the requested documents, including the Surface Use Agreement and all others specifically identified by CPAI in its response to the second request, were relevant "to the issues of Claim Two of this case" and therefore discoverable. Plf's. Mem. in Support of Mot. To Compel at 6. In addressing the government's argument that there existed no obligation to use royalties in calculating lease adjustments for Parcel B, however, Plaintiffs remained unclear as to whether the government's position was that royalties were not a necessary factor to consider in the adjustment of rent due or, in a narrower view, that the law at issue did not require the rent to be set as a royalty. *Id*. at 11.

Plaintiffs addressed both scenarios. First, if the government's motion could be read as an assertion that royalty payments at comparable sites were not necessary to determining "present fair annual rental adjustments," then a royalty payment at a neighboring site for a similar interest in land used for the same purpose still bore relevance to the determination of such adjustments, especially given the requirements of the Indian Long-Term Leasing Act and its regulations.[3] Those regulations mandated a "fair annual rental" reflecting what the property would "command in an open and competitive market" and that would allow the highest possible returns to the owner. *Id*. at 12. And if one read the government's motion to claim that applicable law did not require a "fair annual rental" to be set as a royalty, the documents requested were still relevant because the regulations as applied could require that "present fair annual rental" be set by royalty. *Id*. at 13.

The United States responded to the motion to compel on June 19, 2007, reiterating its interpretation of the Indian Long-Term Leasing Act, associated regulations, and lease terms that

---

[3]The pertinent regulation, 25 C.F.R. Part 162, prevents any business lease of allotted lands on an allottee's behalf that does not return "fair annual rental." Furthermore, all leases must not provide for less than "the present fair annual rental" unless the Secretary of the Interior determines that receiving less "would be in the best interests of the landowner." 25 C.F.R. Part 162 (1982); *see also* 25 U.S.C. § 415(a).

the United States did not have to consider royalties in adjusting fair annual rental for a property comparable to Allotment F-14632, Parcel B. Opp. To Plf's. Mot. to Compel at 2-3. And because comparables involved issues of property valuation, the documents requested went to the issue of damages, not liability. *Id*. at 4.

On June 22, 2007, one day following the Court's protective order applying to materials presented during discovery in this case, Kuukpik, which the Court allowed to intervene for the sole purpose of responding to the motion to compel, filed its own memorandum in opposition to Plaintiffs' motion. While agreeing with the government's argument that the documents requested remained irrelevant as to the question of liability, as opposed to the matter of damages, Kuukpik contended, as CPAI had in its responses to the production requests, that the transactions were not comparable at all. The agreements were "very complex" and involved "considerably more than just compensation for land use" (e.g. provisions also entailed contracting and local employment preferences, environmental protections). Kuukpik Corp's. Opp. to Plf's. Mot. to Compel at 10. Most notably, the royalty payments Kuukpik received were carved out of ASRC's royalty interest share and were not "rent" for CPAI's use of Kuukpik's land in a conventional sense, but instead "constitute[d] part of the consideration Kuukpik was able to negotiate and get ASRC to pay in exchange for consenting to development of ASRC's subsurface." *Id*. at 11-12. Kuukpik concluded by arguing that Plaintiffs second claim stemmed from an assumption that the BIA should have determined the fair market rent for the Oengas' Allotment by considering comparable royalties, which was in any event impossible given the BIA's inablity to access information from private parties about a private transaction. Giving Plaintiffs access to such information when the BIA had no such access in the first place "ma[de] no sense and would be wrong." *Id*. at 13.

In their reply to both the United States's and Kuukpik's opposition memoranda submitted on June 27, 2007, Plaintiffs reiterated their views as to the requested documents' relevance. According to Plaintiffs, the heart of the question underlying this dispute was whether the United States had a duty to collect "present fair annual rental" for the lease of Plaintiffs' Allotment. The documents sought would, in Plaintiffs' view, offer evidence as to the use of royalties at comparable sites, but would also help demonstrate whether the rents collected indeed reflected the value the property would command on, as the Indian Mineral Leasing Act's regulations stated, an "open and competitive market." *See* Plf's. Reply Brf. to Mot. to Compel at 3-4.

Turning to Kuukpik's arguments, Plaintiffs claimed that whether the situations surrounding the Oengas' Allotment and Kuukpik's property were comparable was a question of fact that the requested documents could help resolve. In any event, the two properties were indeed similar in that consent from the surface owner was required to access the oil fields on both properties. How much the consent in the Kuukpik situation was worth was subsequently relevant to whether the United States breached its duty to collect "present fair annual rental value." The fact that the BIA never had access to the documents was simply immaterial to the issue of whether the documents indicated that the United States breached its duty to collect "present fair annual rental." *See* Plf's. Reply Brf. to Mot. to Compel at 5-6.

## III. Discussion

Relevance to a dispute constitutes the basic standard governing the discoverability of requested material. RCFC 26(b)(1). Any such materials do not need to be admissible, but only reasonably calculated to lead to admissible evidence. *Id*. ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim....[which] appears reasonably calculated to lead to the discovery of admissible evidence."). Discovery of such documents may be limited if a request would be unreasonably cumulative or duplicative, if a party has failed to timely seek discovery, or where the burden or cost of discovery outweighs its benefits, taking into account such factors as the proposed discovery's importance in resolving the case's underlying issues. RCFC 26(b)(2)(i),(ii), and (iii). Neither of these factors applies here, nor has either party attempted to argue the opposite. The question before the Court is indeed, then, as all parties here have noted, whether the requested materials–namely 1) the 1997 Surface Use Agreement between Kuukpik and ARCO Alaska, 2) the 1992 settlement agreement between ASRC and Kuukpik, 3) the 1997 lease agreement between ARCO Alaska, ASRC and others, and 4) the 1997 1431(o) consent agreement between ASRC and Kuukpik–have the potential to lead to admissible evidence in this dispute.

Federal Rule of Civil Procedure 26, to which RCFC 26 corresponds, has been broadly construed to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). Discovery is not limited to issues raised by the pleadings, nor to a case's merits, as a variety of fact-oriented issues, among others, may arise during litigation. Notably, however, it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken or to events that occurred before an applicable limitations period, unless the information sought is otherwise relevant to issues in the case. *Id*. at 351-352.

These standards, in essence, create a very steep obstacle for Defendants to overcome as they seek to prevent the production of the documents Plaintiffs request. The second count of Plaintiffs' Complaint involves a straightforward issue–whether or not Defendant entered into a lease of the Oengas' property that did not return "fair annual rental" and that collected less than "fair annual rental." If information about the rents paid on even remotely similar properties could conceivably help answer the question of whether the lease at issue indeed involved a "fair annual rental," the Court would have to adhere to Rule 26's very lenient discovery standards and admit such information into evidence. The Court believes that such a situation is the case with the documents Plaintiffs seek.

The United States and Kuukpik have presented three arguments against the production of the documents at issue, neither of which the Court finds compelling. First, both the United States and Kuukpik contend that because the BIA had no obligation to consider royalty rates paid to owners of allegedly comparable properties, information regarding "the specific terms and conditions agreed to in a different (even if allegedly similar) transaction involving others whose relationships are in no way governed by the statute, the regulations, or the lease form that are the

claimed source of the obligation Plaintiffs allege the United States breached" cannot be relevant to determining whether the United States breached its obligation to collect a fair annual rental. Kuukpik Corp's. Opp. to Plf's. Mot. to Compel at 9. Consequently, such information remains far more useful to the calculation of damages and not the determination of liability. *Id*.

While the United States and Kuukpik are correct in pointing out this information's relevance to the issue of damages, their concern over the documents' possible irrelevance to the question of liability–specifically whether the rent at issue was "fair"–is misplaced. Edward Morse, the real estate appraiser Plaintiffs have hired to provide expert testimony, has stated that "[r]entals of lands that are being used for a similar use as the subject Oenga property, even if they have some differing characteristics, are stilll.....needed for an analysis of the subject's rental potential." Decl. Of Edward Morse, p. 3, ¶ 7. In response to this basic contention, the United States and Kuukpik have presented their argument regarding the issue of damages versus liability. But neither the United States nor Kuukpik have responded to Morse's more important conclusion that the documents Plaintiffs seek are absolutely necessary for him to "render a full and complete opinion in response to the United States' Motion to Dismiss or in the Alternative for Summary Judgment regarding the use of royalties in valuing and setting rental rates for the Oenga property." *Id*., p. 4, ¶ 8. In fact, Mr. Morse has stated that "[t]here is no known verifiable alternate source for this market rental information." *Id*., p. 3, ¶ 7.

Both the Supreme Court and the Federal Circuit have also acknowledged the usefulness of comparability studies in determining whether a given rental adjustment is fair according to criteria aggrieved parties have presented to them for interpretation. In *Cisneros v. Alpine Ridge Group*, 508 U.S. 10 (1993), the Supreme Court approved the Department of Housing and Urban Development's (HUD) use of comparability studies to cap rents landlords participating in the so-called "Section 8" housing program[4] could charge, when private developers who leased units to tenants under this program through contracts with HUD claimed that these caps violated their rights under the Fifth Amendment's due process clause to annual rent increases based on automatic adjustment factors alone. *Cisneros v. Alpine Ridge Group*, 508 U.S. 10 (1993).

---

[4]The so-called Section 8 housing program under the United States Housing Act of 1937 authorizes private landlords who rent to low income tenants to receive "assistance payments" from the Department of Housing and Urban Development (HUD) in an amount calculated to make up the difference between the tenants' rent payments and a "contract rent" agreed upon by the landlords and HUD. Under the program, tenants make rental payments based on their income and ability to pay. HUD then makes "assistance payments" to the private landlords in an amount calculated to make up the difference between tenants' individual contributions and "contract rents" agreed upon by a specific landlord and HUD. Pursuant to the applicable statute, this contract rent is, in turn, to be based upon "*the fair market rental* (emphasis added)" value of the dwelling, allowing for a modest increase over market rates to account for the additional expense of participating in the Section 8 program. 42 U.S.C. § 1437f(a),(c), (1988 ed., Supp. III); *see also Cisneros v. Alpine Ridge Group*, 508 U.S. 10 (1993).

Referring to the *Alpine Ridge* decision, the Federal Circuit, dealing with another similar "complaint about the quality and technical soundness of the individual comparability studies used as the basis for particular rent caps" in the administration of the same program, also sanctioned the use of market comparison studies to cap annual rent adjustments in principle. *Nat'l. Leased Hous. Ass'n. v. United States*, 105 F.3d 1423, 1431 (Fed. Cir. 1997). The information the Oengas seek in this case, then, to bolster their argument as to what constitutes "fair rental value"–information detailing the rents charged in similar instances–is, therefore, conceivably relevant from a conceptual perspective.

Kuukpik, however, makes a further argument against Plaintiffs' motion to compel production by contending that the transaction the documents cover are not comparable. As Plaintiffs correctly indicate, this argument constitutes a fundamental misreading of Rule 26 discovery standards. For the previously stated reasons, the documents at issue could lead to the discovery of admissible evidence if the transactions they reflect are indeed comparable. But whether they are comparable in the first place is an issue of fact the Court must determine in evaluating the document's admissibility. And the appropriate documents must be produced for the Court to make this determination. Kuukpik's argument, as a result, is one best left for the fact-finding context of a trial, or for the consideration of the dispositive motions now before the Court.

Finally, Kuukpik claims that giving access to these documents when the BIA had no access to them "makes no sense and would be wrong" because the BIA lacks the authority to compel production of information concerning private transactions. But the concern over the BIA's inability to do what this Court, when presented with appropriate reasons supported by law, has the power to do is completely immaterial.

In conclusion, the Court wishes to address Kuukpik's concerns over the harm that could result from the inadvertent disclosure of contents of the documents Plaintiffs seek. To illustrate this concern, Kuukpik, in a footnote, cites a very recent precedent from this Court, *Northrop Grumman Information Technology, Inc. v. United States*, 74 Fed. Cl. 407 (2007), to highlight how "there is very little in the way of an effective remedy in the event of disclosure." Kuukpik Corp's. Opp. to Plf's. Mot. to Compel, n.1. The Court, however, notes that that case concerned a successful motion for intervention to supplement a protective order that did not already make provisions for the Intervenor to play a significant role in discovery for the purpose of safeguarding the confidentiality of proprietary information. *See generally Northrop Grumman Info. Tech., Inc. v. United States*, 74 Fed. Cl. 407 (2007). The effect of the decision was to create a situation resembling what exists here, in which an intervenor is allowed such a role in acknowledgment of its interests in trade secret protection. In other words, that decision, from which Kuukpik quotes selectively, does not support Kuukpik's contention that the Court should somehow go further and prevent the production of the requested documents given Kuukpik's view that the arrangements the Court has already made to ensure confidentiality do not adequately address Kuukpik's concerns. Without more, this Court cannot preclude production of the requested documents.

## III. Conclusion

Based on the foregoing, Plaintiffs' Motion to Compel the production/inspection of documents sought in discovery from Intervenor CPAI is GRANTED. As such:

1) Consistent with the Opinion and Order of this Court, Plaintiffs shall be given access to the following documents under the terms of the Court's Protective Order of June 21, 2007:

1. The 1997 Surface Use Agreement between Kuukpik Corporation and ARCO Alaska, Inc. (Later known as PHILLIPS Alaska, Inc. and then ConocoPhillips Alaska, Inc.);

2. The 1992 Settlement Agreement between ASRC and Kuukpik Corporation;

3. The 1997 Lease Amendment among ARCO Alaska, Inc., ASRC, and others;

4. The 1997 1431(o) Consent Agreement between ASRC and Kuukpik Corporation.

2) The parties may, of course, contact the Court at any time to ensure adherence to the Protective Order.

**IT IS SO ORDERED.**

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge