# ATTACHMENT No. 49

**DECLARATION OF ROGER L. HUDSON**

Roger L. Hudson hereby declares as follows:

1. My name is Roger L. Hudson. I live in Anchorage, Alaska. I am and have been since 1982 an attorney in the Regional Solicitor's Office, Alaska Region, U.S. Department of the Interior. My duties have included providing advice and representation to the Bureau of Indian Affairs (BIA), among other agencies, and also informally through the BIA to Indian Self-Determination Act (ISDA) contractors, tribal organizations which have contracted to carry out programs, functions, services and activities of the Department.

2. My recent involvement with the issues raised by the case of *Wallace Oenga, et al. v. United States, et al.*, No. 06-491 L (CFC), began in about September of 2003, when I was drawn into discussions occurring at that time between Ray Givens, plaintiffs' counsel, and Jenness Burns, the Alaska Regional Appraiser for the Department of the Interior's Office of the Special Trustee (OST). Those discussions concerned the method and means by which the OST was conducting or proposing to conduct a periodic rental adjustment appraisal, as required under Sections 5 and 9 of BIA Lease No. F-89-01, as amended. I have been dealing with issues relating to that 1989 lease pretty steadily ever since. I am the BIA's attorney of record in the two Interior Board of Indian Appeals cases that the judicial plaintiffs began by appealing from rental adjustment decisions relating to the periods of 2002-2005 and 2006-2009. Those two administrative appeals have been on hold while the judicial litigation is being pursued. BP Exploration (Alaska ), Inc. is party to those administrative cases as well.

3. I am aware that the United States has filed a motion in the Court of Federal Claims, seeking to dismiss all or at least most of the plaintiffs' claims on statute of limitations grounds. I am also aware that plaintiffs are opposing those motions by arguing *inter alia* that their alleged causes of action are not time-barred because of a provision inserted in successive Interior Department Appropriations Acts which states that claims "concerning losses to or mismanagement of trust funds" do not accrue until the affected individual Indian has been furnished with an accounting of such funds. Throughout their papers, plaintiffs refer to having received such an accounting "in 2003 and 2005," arguing that their various causes of action, first presented to the courts in 2006, were not untimely on account of the applicability of that statutory provision.

4. A principal reason that I offer this Declaration is to clarify that it is the Department of the Interior's position that the above-described statutory provision, relied upon by plaintiffs, has no applicability to the facts of this case, and that the information supplied from time to time to plaintiffs counsel by the undersigned was not in any event in the nature of an "accounting," however that term might properly be understood. Over the course of the roughly two years and nine months leading up to the filing of the Court of Federal Claims suit, plaintiffs' counsel and the undersigned had innumerable formal and informal contacts by telephone and letter, facsimile and mail. Throughout this period, I attempted to be helpful and responsive to information requests from plaintiffs' counsel, just as I understood the BIA and its ISDA contractors to have been helpful to the land owner - lessors themselves.

5. In obvious anticipation of the possible commencement of litigation against the United States, and mindful of the staleness of most of his clients' claims, Plaintiffs' counsel sent a

November 22, 2005 letter to the Secretary of the Interior, demanding an "accounting." A copy of that letter is attached to Plaintiff Leroy Oenga's January 2, 2008 Declaration. Because of my familiarity with the lease history, acquired over the previous two years, and our relative proximity to available records, the Alaska Regional Solicitor's Office was eventually tasked by the Department with responding to Mr. Givens' information requests. We did so under cover of letters dated February 8 and May 12, 2006, the first signed by my supervisor, copies of which are attached to this Declaration (without the referenced enclosures). It is noteworthy that the Department's responses expressly pointed out that all the information supplied was being supplied in the normal course of business, and that it was not an accounting as that term would ordinarily be understood.

6. On May 26, 2006, I sent a follow-up letter, providing additional information on a few points, a copy of which is also attached to this Declaration. In regard to that letter, it should be observed that much of the information forwarded was actually obtained from the files of the Inupiat Community of the Arctic Slope (ICAS), the then current (and still incumbent) ISDA realty service contractor. I am aware that the owners at the time had a good working relationship with ICAS personnel, and could have obtained this same information directly from ICAS. As a matter of fact, I am also aware that from the time the BIA's files were first transferred to the Arctic Slope Native Association (ASNA) in 1993, until they were re-transferred from ASNA to ICAS in approximately the year 2000, right up until the present, the most comprehensive files available on the Oenga-BP lease have been those in the possession of the ISDA contractor, not the BIA. Indeed , when the parties to this case undertook to provide voluntary disclosure and exchange of relevant documents, it was to ICAS, rather than the BIA, that I turned to obtain the

more complete records that I shared with other litigants, including plaintiffs' counsel. To the best of my knowledge, those files have always been readily available to any or all of the allotment owners, for either inspection or copying.

7. In support of my view that plaintiffs' November 2005 request for an "accounting" was merely an attempt to try to evade the applicable bar of the statute of limitations, I would point out that none of plaintiffs' claims asserted in the Court of Federal Claims suit concern the amount of rental payments actually made by BPX and/or collected by or under supervision of the BIA during the life of the 1989 lease, or allege that the Government mismanaged the rental payments that the lessee in fact paid Instead, plaintiffs' claims arise chiefly from the terms of the 1989 lease itself, and the 1994 and 1995 amendments to it, in the negotiation of which they were very actively and intimately involved. In any case, as companion Declarations and the documentary record strongly indicate, plaintiffs were assuredly very well-informed as to the amount of rent they were receiving from at least the year 1994 forward.

8. I am also aware that one of plaintiffs' claims in their lawsuit is that the Department of the Interior has wrongfully failed to take action against the lessee or other oil companies benefitting from the oil production occurring on the leased allotment land, as demanded in their counsel's letters of December 1 and December 23, 2005, attached to the January 2, 2008 Leroy Oenga Declaration. I know from personal knowledge that the reason the requested actions have not been taken is that the Department interprets Paragraph 10 of the 1989 lease, as supplemented by the January 1994 lease amendment to Paragraph 13, which expressly relieves the lessee of any obligation to notify the lessors of "facility sharing agreements," as having specifically authorized the complained of oil company actions. In other words, the Department as a matter of contract

interpretation concluded that plaintiffs' claims against the lessee and other oil companies are without legal merit.

9. I also note that the December 1, 2005 letter from plaintiffs' counsel cites Paragraph 34 of the Third Amendment to BIA Lease F-89-01, signed in May 1995, as constituting a supposed legal obstacle to the plaintiffs pursuing their own actions against the lessee and other oil companies. The Department does not share the Oengas' view that the cited contract provision would act as a bar to plaintiffs pursuing direct legal action against the lessee or other oil companies. All that 1995 amendment literally says is that lessee will not be obliged to respond to direct lessor contacts, but may limit its direct communications concerning the lease to the BIA and ASNA. The Department of the Interior does not regard such language, understood in the context in which it arose, to be intended or to have the effect of depriving the courts of jurisdiction over any legal action that the lessors might choose to pursue against their lessee, much less other oil companies.

Pursuant to the provisions of 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed at Anchorage, Alaska this 7th day of February, 2008.

Roger L. Hudson

Roger L. Hudson