**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **WALLACE OENGA, et al.,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| **UNITED STATES,** | ) | **No. 06-491 L** |
| **Defendant, and** | ) | **Chief Judge Edward Damich** |
| **BP EXPLORATION (ALASKA), INC., CONOCOPHILLIPS ALASKA, INC., EXXON MOBIL ALASKA PRODUCTION, INC., CHEVRON U.S.A., INC., AND FOREST OIL CORPORATION,** | ) | |
| **Defendant-Intervenors, and** | ) | |
| **KUUKPIK CORPORATION,** | ) | |
| **Defendant-Intervenor.** | ) | |

**DEFENDANT UNITED STATES' STATEMENT OF GENUINE ISSUES OF MATERIAL FACT IN DISPUTE**

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

JAMES M. UPTON, Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
Department of Justice
P. O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 305-0482
Fax: (202) 305-0506
Email: james.upton@usdoj.gov
Email: samantha.klein@usdoj.gov

Attorneys for Defendant

**TABLE OF CONTENTS**

1. Oengas' Proposed Finding of Fact No. 2.a. . . . . . . . . . . 2

2. Oengas' Proposed Finding Nos. 4. c, d, e, f, g, and h . . . . . . . . . . . 3

3. Oengas' Proposed Finding Nos. 5. a, b, c, and d . . . . . . . . . . . 6

4. Oengas' Proposed Finding Nos. 6. a and b . . . . . . . . . . . 7

5. Oengas' Proposed Finding Nos. 8. b, c, d and e . . . . . . . . . . . 8

6. Oengas' Proposed Finding Nos. 9. c and d . . . . . . . . . . . 10

7. Oengas' Proposed Finding Nos. 10. a, b, c and d . . . . . . . . . . . 11

8. Oengas' Proposed Finding No. 11 b . . . . . . . . . . . 11

9. Oengas' Proposed Statute of Limitations Finding Nos. B. 1. a and b . . . . . . . . . . . 12

10. Oengas' Proposed Finding Nos. B. 2. a and b . . . . . . . . . . . 13

11. Oengas' Proposed Finding No. B. 3. a . . . . . . . . . . . 14

12. Oengas' Proposed Finding Nos. B. 4. a and b . . . . . . . . . . . 14

13. Oengas' Proposed Finding No. B. 5. a . . . . . . . . . . . 15

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **WALLACE OENGA, et al.,** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | |
| **THE UNITED STATES,** | * | |
| **Defendant, and** | * | **No. 06-491 L**<br>**Chief Judge Edward Damich** |
| | * | |
| **BP EXPLORATION (ALASKA) INC., CONOCOPHILLIPS ALASKA, INC., EXXON MOBIL ALASKA PRODUCTION, INC., CHEVRON U.S.A., INC. and FOREST OIL CORPORATION,** | * | |
| | * | |
| **Defendant-Intervenors, and** | * | |
| **KUUKPIK CORPORATION,** | | |
| **Defendant-Intervenor.** | * | |
| | * | |

**DEFENDANT UNITED STATES' STATEMENT OF GENUINE ISSUES OF MATERIAL FACT IN DISPUTE**

Defendant United States (hereinafter "Defendant") hereby responds to the Oengas' Proposed Findings of Uncontroverted Facts by filing this Statement of Genuine Issues of Material Fact in Dispute pursuant to RCFC 56. The existence of genuine issues of material fact precludes granting the Oengas' Motion for Partial Summary Judgment. See cases cited in Defendant United States' Opposition to Oengas' Motion for Partial Summary Judgment at

**1. Oengas' Proposed Finding of Fact No. 2. a.**

This proposed finding is the basis for the Oenga's attempt in their Motion to paint a picture of the negotiations between the solitary Andrew Oenga (who had led a primarily

subsistence livelihood and spoke very few English words) and Standard Alaska Production Co., the lessee, as a completely one-sided process which was grossly disadvantageous to Mr. Oenga.

The reality was far different. In addition to the considerable involvement of the BIA, Andrew Oenga retained a very experienced private attorney, Glenn Feldman, who had represented Andrew Oenga in his successful prior suit against several oil companies which had trespassed upon a 120-acre parcel which had been allotted to him (known as "Parcel A" and not at issue here). The Mayor of the North Slope Borough and the president of the Native Village corporation for the Native Alaska residents of the City of Barrow, both sophisticated individuals, provided informal counsel to Mr. Oenga. In addition he was assisted by members of his family, especially Leroy Oenga. See Declaration of Kathleen Dickinson, dated January 29, 2008 at Paragraph No. 13. In addition, his translator and two present Plaintiffs attended the negotiations and were available to advise Andrew Oenga. The BIA assisted Mr. Oenga throughout the negotiations and not only made revisions to the oil company's initial draft of the Lease, but encouraged him to demand changes in the draft which he decided should be made. His demands for specific changes were accepted by the oil company. See Attachment **Nos. 4-11** to the government's Motion to Dismiss and the Declaration of Kathleen Dickinson (Copy appended as Attachment **No. 46** to Defendant's Opposition to Plaintiffs' Motion for Partial Judgment).

**2. Oengas' Proposed Finding Nos. 4. c, d, e, f, g and h**

These findings were written in support of the Oengas' position with respect to the **first part of Claim No. 3** (alleged breach of the Lease by BPX and trespass on allotment Parcel B by Arco/Exxon).[1/]

---

[1/] Arguably, an issue about lease interpretation is a mixed question of law and fact in the context of the **first part of Claim No. 3**.

**c.** This proposed finding strongly implies that the only assistance Andrew Oenga had in negotiating the subject lease was from the federal government; this is **not** true. Mr. Oenga retained Glenn Feldman, an experienced Indian law attorney, whom he had previously retained to bring suit against several oil companies for trespass on a 120-acre parcel allotted to Mr. Oenga (known as Parcel A and not part of the instant case). Mr. Feldman had obtained a favorable judgment for Mr. Oenga in this trespass suit. George Ahmaogak, Mayor of the North Slope Borough and Ronald Brower, president of the Ukpeagvik Inupiat Corporation, the ANCSA Native Village corporation for the Native residents of the City of Barrow, (both sophisticated people) both provided informal counsel to Andrew Oenga. His translator and two of the Plaintiffs in the present suit were also available for consultation. See Attachment **Nos. 7** and **8** to government's Motion to Dismiss. In addition, Andrew Oenga relied upon family members, especially Leroy Oenga. See Declaration of Kathleen Dickinson, BIA Realty Specialist (copy appended as Attachment **No. 46** to the government's Opposition). Finally, BIA made it clear to Mr. Oenga that he was not compelled to accept the initial draft of the lease by Standard Alaska Production Co (which changed its name to British Petroleum Exploration (Alaska), Inc. on January 31, 1989 (Defendant-Intervernors' Proposed Finding No. 2 with which plaintiffs agree)), or the amount of rental offered by the oil company. BIA encouraged him to negotiate a better deal; he successfully did so because his proposed key changes were incorporated into the Lease. See Attachment **Nos. 11-13** to government's Motion; to Dismiss; See Declaration of Kathleen Dickinson, Paragraph Nos. 5-8.

**d**. Although BPX produced the first discussion draft, it was based on a BIA- provided model, derived from a nationally recognized law attorney's work product. Dickinson Declaration, paragraph 5; Attachments **Nos. 4 and 5.**

**e.** This proposed finding arguably suggests that the term "actual control" is found in the initial draft of the lease; instead, the plaintiffs take this term from the Federal Circuit's 2007 Navajo opinion. Plaintiffs rely upon "actual control" in support of their that argument that **Claim Nos. 1 and 2** are money mandating. While the BIA did have responsibility for collecting rents from BPX and conducting appraisals of Parcel B for the purpose of making periodic lease rental adjustments, these features of the Lease conform to applicable regulations. See 25 C.F.R. §§ 162.604 (f) and .607 (2008), with content similar to 25 C.F.R.§§162.5 (f) and 162.8 (1988).

**f, g and h.** These three subparagraphs should be read together; they constitute the core of the **first part of Claim No. 3.** Defendant submits that the plain language of Paragraph No. 10 of the Lease is controlling and dispositive of the **first part of Claim No. 3.** It imposes no geographic limitation on the use of allotment Parcel B to produce oil obtained only from tracts within the Niakuk Participating Area. Also, the preamble to the Oenga Lease specifically references the "agents, assigns, contractors, subcontractors and or/sublessees" of the lessee oil company. See Attachment **No. 13** to Government's Motion to Dismiss at 1. Moreover, successor lessees in January 1994 expressly acknowledged that the lease as amended "gives BPX the full right to develop and manage the property" [ i.e. without geographic limitation], and to "enter into any arrangements with ARCO." Attachment **No. 33**; See also Dickinson Declaration, paragraph 8, reporting that she explained to Andrew Onega that the Lease authorized use of Parcel B for a broad array of purposes. We acknowledge the plaintiffs' argument that issues of lease interpretation are issues of law; however, plaintiffs' position rests primarily upon the intent of the parties which is a mixed question of fact and law. Indeed, the plaintiffs expressly acknowledge that some of their proposed findings "might be more properly characterized as mixed questions of fact and law." Oengas' Prop. Findings at 2.

**3. <u>Oengas' Proposed Finding Nos. 5. a, b, c, and d</u>**

These proposed findings all relate to the "**first part" of Claim No. 3** - - BPX's alleged breach of the Lease and "trespass" upon Parcel B by ARCO (now ConocoPhilips)/Exxon.

**a. and b**. The government dos not agree that this was really the "First Amendment" to the lease, despite the use of the term "lease amendment" in Kathleen Dickinson's Report of Investigation (Attachment **No. 21** to government's Motion). <u>See</u> Declaration of Kathleen Dickinson (Attachment **No. 46**, Paragraph No. 9, Attachments **Nos. 20-24.** The use of this term amounted to a shorthand reference by BIA to the BPX's authorized unilateral expansion of the number of acres leased pursuant to the terms of Paragraph No. 11 of the Lease.

**c.** The defendant stresses that the second sentence of Paragraph No. 11 of the Lease states: "This Lease Agreement may be amended to increase or decrease the size of the leased premises **at lessee's sole discretion."** (Emphasis added). Also, Plaintiffs' Leroy Oenga was, in fact, advised by ASNA of BPX's expansion of the average covered by the lease. See July 30, 1993 ASNA letter, Attachment **No. 23.** Whether characterized as a factual or legal issue, the so-called "First Amendment" did not alter the nature of lessors' interest in any way, but merely increased the acreage under the lease. Furthermore, Leroy Oenga understood that BPX did not need his permission to decrease the number of acres it leased. (Attachment **No. 33** at 1). Under the language quoted above, if BPX did not need the lessors' permission to decrease the amount of acreage leased which would decrease the amount of the rentals which they received, then, <u>a fortiori</u>, BPX did not need the lessors' permission to increase the acreage leased which would necessarily increase the rental amount received by the Oengas. Accordingly, there was no requirement that the Oengas sign off on BPX's increase in the amount of leased acreage.

**d.** Defendant stresses that this subparagraph is central to **Claim No. 1**; defendant

submits there is a genuine issue of material fact as to whether the increase in the amount of acreage of Parcel B which BPX leased somehow "made the Oengas' Allotment the surface of a severed mineral estate . . . " Indeed, this genuine issue requires that the Oengas' Motion for Partial Summary Judgment be denied because this proposed finding is the sina qua non for the viability of their contention that Claim No. 1 is money mandating under 28 U.S.C. § 396 and 25 C.F.R. Part 212.

**4. Oengas' Proposed Finding Nos. 6. a and b**

**a.** Again, the government submits that this January 1994 amendment was really the first amendment to the lease.

**b.** This subparagraph implies that notice to, and signatures of all parties, was required with respect to assignments or subleases by BPX. Yet, the original Paragraph No. 13 of the Lease was changed to specifically require that the lessee give notice to the lessors if the "Leased Premises are subleased, " but expressly provided that "a sublease shall not include (a) facility sharing agreements or other transactions which do not convey an interest in real property . . . " See Attachment **No. 35** at 2. More importantly, Leroy Oenga was informed in 1993 about ARCO's interest (as of July, 1993), in leasing part of Parcel B in 1993. Attachment **No. 46**, Paragraph Nos. 10 and 13. Most importantly, on January 17, 1994, Leroy Oenga signed the "Counseling Record of January 14, 1994" which stated in pertinent part: * * * "I understand that the lease is a legal document which gives BP the full right to develop and manage this property. I understand that BP may enter into any arrangement with ARCO to develop this property."* * * (Emphasis added) (Attachment **No. 33** at 2).* * * The last paragraph states: "I understand and agree with the lease amendments and so I am signing the amendment of my own free will." (Emphasis added). Id. In other words, Leroy Oenga, signed this "Second

Amendment" **before** BPX entered into the "facilities sharing agreement" with ARCO/Exxon on January 27, 1994. (Attachment **No. 45** to government's Motion to Dismiss).

In short, there are genuine issues of material fact raised by Proposed Finding Nos. 6a and b - - findings upon which both the **"first part"** and the **"second part"** of **Claim No. 3** rest. Accordingly, the existence of these genuine issues precludes the grant of the Oengas' Motion for Partial Summary Judgment as to their contention that both the **first part** and **second parts** of **Claim No. 3** are money mandating.

**5. Oengas' Proposed Finding Nos. 8. b, c, d and e**

**b.** Defendant submits that this finding has no relevance to the two matters covered by the Oengas' Motion for Partial Summary Judgment - - namely, the inapplicability of the bar of the statute of limitations to **Claim Nos. 1 and 2**, and the assertion that **Claim Nos. 1, 2 and 3** qualify as money mandating claims. Indeed, the Oengas' Motion expressly states it does not encompass issues of liability or damages as to any of the three claims. (Oengas' Motion at 2). In other words, the oil production data cited does not go to whether the statute of limitations bars **Claim Nos. 1 and 2** and the **second part of Claim No. 3**, or whether **Claim Nos. 1, 2 or 3** (both the **first and second parts of Claim No. 3**) are money mandating. Yet, the Sealed Declaration of Edward Morse is really directed at the issue of the government's liability on **Claim No. 2** (Morse Declaration at 2).

**d.** This subparagraph bears solely on the issue of whether the government made proper appraisals of the "fair market rental rate" of Parcel B for the purpose of making the required lease rental adjustments in 1993 and 1997. In Defendant's opinion, this is strictly a liability issue with respect to **Claim No. 2** (see Sealed Declaration of Edward Morse at 2) which is beyond the stated scope of the Oengas' Motion. This subparagraph should be stricken or

disregarded.

**e.** This subparagraph implies that notice of the LETTER AGREEMENT between BPX and ARCO to the United States or Oengas was required and that the Secretary of the Interior and the Oengas were required to sign it before it became effective. As noted, the "Counseling Record of January 14, 1994" signed by Leroy Oenga recognized that BP could enter into the kind of "facilities access agreement" it entered into with ARCO/Exxon and stated that he was signing this amendment. (Attachment **No. 33** at 2); this was before the "facilities access agreement" was signed by the three oil companies on January 27, 1994. In addition, the agreement to amend the lease states that the "Parties" (a term which expressly included the then five "immediate heirs and successors-in-interest of Andrew Oenga"who were identified individually) agreed to the various elements of the amendment, including the addition to Lease paragraph 13 clarifying that a facility sharing agreement is not a sublease requiring notice to lessor or the BIA (Attachment **No. 35**).

**6. <u>Oengas' Proposed Finding Nos. 9. c and d</u>**

**c.** This subparagraph constitutes one of the crucial factual premises for the Oengas' argument that **Claim No. 2** embodies a money mandating duty. This subparagraph raises a genuine issue of material fact in dispute because the government does not agree, in the context of **Claim No. 2**, that an "appropriate appraisal" must take into account whatever forms of consideration (even if in the form of a "royalty" or "thruput") have been paid for "similar lands." Therefore, the grant of the Oengas' motion with respect to their assertion that **Claim No. 2** is money mandating is precluded.

**Paragraph No. 9 of the Lease** negates the Oengas' argument that the "fair rental value of the leased premises" should be based upon a royalty on the value of all the oil produced by

BPX through use of allotment Parcel B. This is because **Paragraph No. 9** forbids BIA (when making lease rental adjustments) from considering "any income the Lessee derives from the leased premises." Royalties necessarily would be based upon the income derived by BPX from its use of allotment Parcel B as an oil production facility[2/] Thus, the Lease barred BIA from using a royalty as a "form of rent" in its appraisals. "Thruputs" would, like royalties, be based upon BPX's income from Parcel B. See Sealed Declaration of Edward Morse at 3. Thus, BIA could not consider a "thruput" as a form of rent, either.

**d.** This subparagraph sets out the second factual premise for the contention that **Claim No. 2** is money mandating. Again, a genuine issue of material fact exists as to whether the 1993 and 1997 appraisals were "deficient." This, too, precludes the grant of the Oengas' motion with respect to their argument that **Claim No. 2** is money mandating. In addition, the "deficiency issue" arguably goes to the matter of whether the BIA is liable on Claim **No. 2** and, therefore, is beyond the stated scope of plaintiffs' Motion for Partial Summary Judgment.

**7. Oengas' Proposed Finding Nos. 10. a, b, c and d**

**a and c.** These subparagraphs are, in effect, a different factual formulation of proposed Finding No. 9c and, thus, raise the very same genuine issue of material fact as does Proposed Finding No. 9c. In addition, the materiality of any and all of these issues of facts is called into question by the legal bar of the statute of limitations.

**b and d.** These subparagraphs must be read as necessarily intertwined with subparagraphs a and c, and, as such, also raise the genuine issues of material fact in dispute discussed in response to Proposed Finding No. 9.

---

[2/] Plaintiffs argue that a royalty would be collected for all oil produced, including oil produced by ConocoPhillips and Exxon, by use of Parcel B.

**8. Oengas' Proposed Finding No. 11 b**

**a**. The only issue of disputed fact raised is whether the amount of rentals collected totals $678,549.40, as alleged in the United States Answer to Second Amended Complaint; paragraph 29, or $670,191, as alleged in the Plaintiffs' complaints, and the referenced Declaration. The difference is whether the payment made in late 1997 for lease year 1998 was $80,640, the amount paid in the previous serval years, or $88,997.34. See Attachment **No. 44**, a letter to Leroy Oenga advising as him that the amount of the upcoming payment would be increased pursuant to paragraph 5 of the 1989 Lease, as amended.

**b.** This subparagraph strongly suggests that the United States has, in fact, not made the referenced "finding," because it failed to collect less than the "fair annual rental." This assertion does not go to either the applicability of the statute of limitations to **Claim No. 2,** or whether **Claim No. 2** is money mandating. Instead, it assumes that the government is liable on **Claim No. 2**. Thus, it goes beyond the stated scope of the Oengas' motion and this subparagraph should be stricken or disregarded. On the other hand, if the court finds it does go to whether **Claim No. 2** is money mandating, then it raises a genuine issue of material fact in dispute and precludes granting the Oengas' motion with respect to the matter of whether **Claim No. 2** is money mandating. Basically, the Government's position is that no such finding was made because in accordance with the provision of the Lease the proper amount of rent was, in fact, collected.

**9. Oengas' Proposed Statute of Limitations Finding Nos. B. 1. a and b**

These two proposed findings concern the Oengas' requests for an accounting of the Lease proceeds and the government's supposed "accounting responses." These findings relate to the Oengas' argument that the statute of limitations bar cannot apply to **Claim Nos. 1 and 2**; they

also assert it would apply to the same defense to **Claim No. 3.**[3] The factual premise for their argument that the statute of limitations does not apply is that the government did not give the Oengas a requested accounting of the rental proceeds generated under the Lease.

.

To the extent that Plaintiffs' seek to abandon the objective test of knowability that is required by 28 U.S.C § 2501, there is a genuine issue of material fact in dispute here. Attachment **No. 4** at 1-2; Declaration of Kathleen Dickinson. ( Attachment **No. 46**, Paragraph No. 14) about these payments. In the 1993-2000 period, the Oengas received from ASNA and the BIA, on an ongoing basis, detailed information on the rental payments from BPX; they were kept informed about these proceeds. See Declaration of Kathleen Dickerson, paragraph 14 and Declaration of Lesley De Wilde, (Attachment **No. 47,** Paragraph Nos. 2 and 3. We do not believe that the subjective knowledge of Leroy Oenga is a material issue of fact preventing the applicability of the statute of limitations, because the factual predicate for **Claim Nos. 1, 2** and the **second part of Claim No. 3** was objectively knowable, and he was armed with detailed information about the rental payments that unequivocally put him on constructive notice of these claims more than six years before this suit was filed. In any event, their lawsuit is not about the BIA's management of the Oengas' actual rental proceeds from the Lease.

**10. Oengas' Proposed Finding Nos. B. 2. a and b**

**a.** This subparagraph raises a genuine issue of material fact in dispute as to whether **Claim Nos. 1, 2** and the **"second part" of Claim No. 3** are barred by the statute of limitations.

---

[3] In our Opposition to the Oengas' Motion, we contend that the statute of limitations bars the **"second part" of Claim No. 3 - -** the "failure to disclose" claim which was not part of **Claim No. 3** at the time we filed our Motion to Dismiss.

Thus, grant of the Oengas' Motion is precluded as to inapplicability of the statute of limitations to **Claim Nos. 1, 2** and the **second part of Claim No. 3**. Contrary to the Leroy Oenga Declaration that the plaintiffs did not know how much money they should have received or had, in fact, received under the Lease, the plaintiffs were kept informed about the amount of the rentals being received by ASNA. See Attachment **No. 46**, Paragraph. 14; Declaration of Leslie DeWilde, Attachment **No. 47**.

**b.** Contrary to the Leroy Oenga's Declaration that the Oengas did not think the documents provided to them in 2003 and 2006 were "generally available to them," ASNA's practice was to comply with "every request for documents about their allotment or lease" which the Oengas made. Attachment **No. 46**, Paragraph No. 12. Thus, this subparagraph, too, involves a genuine issue of material fact in dispute which requires the Oengas' Motion be denied as to the supposed inapplicability of the statute of limitations.

**11. Oengas' Proposed Finding No. B. 3. a**

The Oengas strongly imply that the cited provision of the May, 1995 "Third Amendment" which prohibited them from contacting BPX directly about their concerns about the operation of the Lease was designed to prejudice their Lease rights; they state that this assertion relates to all their claims. Yet, the purpose of this provision was really to establish a mode of communication which would be less burdensome for BPX. See February 24, 1995 attorney letter to BPX, Attachment **No. 40**; see also: lessor- signed stipulation of Lease history (Attachment **No. 42** at 5.) ("The Lessors agree that all further contracts with BPX shall be by and through ASNA"); February 7, 2008 Declaration of Roger L. Hudson, Attachment **No. 49,** Paragraph 9. The Oengas signed this "Third Amendment", thereby establishing their consent.

See Attachment **No. 41** at 3.

**12. Oengas' Proposed Finding Nos. B. 4. a and b**

**a.** The Oengas strongly suggest the government had to "give notices and take action regarding the breach of Lease and trespass" that was occurring because of the use of Parcel B for the production of oil from the West Niakuk Participating Area. This assertion goes to whether the **"first part" of Claim No. 3** is money mandating. The Defendant failed to give the requested notices or take related action because the Defendant had concluded that Paragraph No. 10 authorized BPX to enter into the 1994 facilities sharing agreement. Declaration of Roger Hudson dated February 7, 2008, Attachment **No. 49**, Paragraph 8. Thus, there is a genuine issue of material fact which precludes granting the Plaintiffs' motion, insofar as it asserts the **first part of** Claim **No. 3** is money mandating.

**b.** This proposed subparagraph is essentially identical to subparagraph a, but relates to the use of Parcel B for the production of oil from the Lisburne Participating Area. Again, this subparagraph relates to the **first part of Claim No. 3.**

**13. Oengas' Proposed Finding No. B. 5. a**

This proposed finding relates to the **"second part" of Claim No. 3 - -** the Defendant's alleged "failure to disclose" ARCO's interest in leasing part of Parcel B as of July, 1993. A genuine issue of material fact in dispute exists as to whether the Oengas first learned of ARCO's interest in leasing part of Parcel B in 2003- - an assertion upon which the **"second part" of Claim No. 3 rests**. The record shows the Oengas learned of ARCO's interest shortly after ARCO communicated it to the BIA, or, at least during 1993. Declaration of Kathleen Dickinson, Attachment **No. 46**, Paragraph Nos. 9 ,10; see also Attachment **Nos. 32, 33, 34.** All these

documents were prepared in the run-up to the January 1994 Lease Amendment, and all referenced the ARCO interest. See especially Attachment **No. 33**, signed by each lessor. This genuine issue of material fact precludes the grant of the Oengas' Motion with respect to their position that the statute of limitations is inapplicable to the **second part of Claim No. 3**.

As for the failure of the Defendant to make BP release its option to increase the leased area of Parcel B, the Oengas point to nothing that imposed a duty upon the defendant to do so. BPX agreed to pay rent on all 40 acres of Parcel B, effective from July 1, 1993 - - the month that ARCO informed BIA of its interest in leasing part of Parcel B. The foregoing discussion relates to the question of whether the **second part of Claim No. 3** is money mandating.

Dated this 15th day of February, 2008.

Respectfully submitted,

*s/James M. Upton*
JAMES M. UPTON
SAMANTHA KLEIN
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Phone: (202) 305-0482
Phone: (202) 305-0474
Fax: (202) 305-0506
E-mail: james.upton@usdoj.gov
E-mail: samantha.klein@usdoj.gov

OF COUNSEL:

Roger Hudson, Esq.
Office of the Solicitor
Alaska Regional Solicitor's Office
Department of the Interior
Anchorage, Alaska