United States Department of the Interior
OFFICE OF THE SOLICITOR
ALASKA REGION
4230 University Drive
Suite 300
Anchorage, Alaska 99508-4626
(907) 271-4131

BIA.AK.0926

May 26, 2006

Raymond C. Givens, Attorney at Law
Givens Law Firm
P.O. Box 400
Coeur d'Alene, Idaho 83816

By Mail & Facsimile to: (208) 676-1296
(Without enclosures)

Dear Ray:

Subject: Supplemental response to November 22, 2005 request for information

This is a follow-up to my previous letter of May12, 2006, in which I speculated that an earlier appraisal of the Heald Point allotment parcel probably existed, and might be retrieved. In fact, a copy of that earlier appraisal turned out to be available in Inupiat Community of the Arctic Slope (ICAS) files, was obtained through the Bureau of Indian Affairs' (BIA's) Fairbanks Agency Office, and is forwarded herewith. As you can see, the appraisal was prepared in 1988 by a private appraiser commissioned by Standard Alaska Production Company in 1988, and was reviewed and approved by the BIA Chief Appraiser in January 1989. The appraisal appears to have been used to set the annual rental value on the original 10 acres lease parcel, which was determined to be $16,000.

Also enclosed are some pages furnished by ICAS, which were evidently prepared in November 1993 by Arctic Slope Native Association (ASNA), the previous Indian Self-Determination realty contractor providing service to the Oenga heirs. Although this material is a little hard to interpret, let me venture to provide you with my interpretation based on trying to reconcile this new document with the BIA-prepared rent payment history spreadsheet, and the May 1995 Stipulation of Lease History, signed by the lessors and a lessee representative.

From this new document it appears that a lease paragraph 5 cost adjustment factor calculation was undertaken in November 1993, to be made effective with rental year 1994, the sixth year of the lease. The CPI-derived adjustment appears to have been calculated so as to support an 18 percent rent increase beginning in 1994. Since the BIA's 1993 appraisal valued the 10 acre lease at essentially the same $16,000 a year rental rate as was already being paid, the CPI-based calculation was apparently used as the basis for increasing the annual rent. Looking at rental year 1993, the total rent was increased retroactively by $6,666.50 to take into account that 20 rather than 10 acres were being leased from August 1993 onward. Then it was evidently calculated that the 1994 rent on 20 acres should be $37,370, reflecting both the CPI adjustment

and the doubling of the acreage, although for a somewhat unclear reason, the lessee was actually billed and did pay $40,160 for 20 acres for 1994. To the extent this higher rental rate was to the lessors' benefit, it should not be a problem.

Then in January 1994, it was agreed that the lessee would pay an additional $137,120, as explained in the attached letter of January 21, 1994. That brought the total amount paid for each of rental years 1994 and 1995 (the latter in advance) to $80,640.00 per annum. This lump sum payment reflected adjustments to compensate for rental of the full 40 acres for the entire period from July 1993 through December 1995. It's not really clear to me when or how the $80,640 annual rental figure for 40 acres was first derived, but it would certainly seem to be an amount greater than the 1993 BIA appraisal (equivalent to $64,000 for 40 acres), or than the CPI adjustment of that figure ($64,000 plus 18 percent equals $75,520), and therefore again a figure beneficial to the lessors. The only mention of the $80,640 figure that I have discovered is in the December 13, 1994 BIA reviewer's appraisal analysis commenting on the December 5, 1994 appraisal prepared at the lessee's behest by private appraiser Roger N. Bonnet (both documents previously supplied to you under cover of my May 12 letter). In commenting on Bonnet's appraised sales value of $680,000, the BIA analysis observes that if the annual rent of $80,640 was 11 percent of the fair market value, that value would have been slightly higher than Bonnet's valuation, but if it was 12 percent, it would indicate a slightly lower fair market value. Of course, annual rents are more typically 8, 9, or 10 percent of the sales value of a parcel, suggesting that the $80,640 rental figure was on the high side.

The other pages obtained from the ICAS files set forth some sort of calculations of the future value of the lease. It is unclear how these would relate to administration of the lease. My best guess is that they were prepared to help the lessors decide whether to accept the lessee's offer to purchase the property outright, an offer that was subsequently rejected.

With the provision of this supplemental material, I believe I have furnished everything that is available in response to your information request from last November. If you think otherwise, please let me know.

Sincerely,

Roger L. Hudson

enclosures:

1988 appraisal with 1989 BIA review and approval
material from ICAS files, including CPI adjustment calculation
January 21, 1994 letter

cc (without enclosures):

Office of Executive Secretariat, MS 7229, MIB; Att'n.: Roy
Susan Lindquist, Assistant U.S. Attorney, District of Alaska
Janet Goodwin, Senior Attorney, Division of Indian Affairs, Office of the Solicitor
Mervel Harris, Regional Realty Officer, Alaska Region, Bureau of Indian Affairs
Fred Matsuno, Rights Protection Specialist, Alaska Region, BIA
Lesley DeWilde, Realty Specialist, Fairbanks Field Office, BIA
Glenda Miller, Fiduciary Trust Officer, Office of the Special Trustee
Jenness R. Burns, Regional Appraiser, OST
Dorothy Edwardsen, Realty Officer, Inupiat Community of the Arctic Slope