IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WALLACE OENGA, et al., Plaintiffs, v. UNITED STATES, Defendant, and BP EXPLORATION (ALASKA), INC., CONOCOPHILLIPS ALASKA, INC., EXXON MOBIL ALASKA PRODUCTION, INC., CHEVRON U.S.A., INC. AND FOREST OIL CORPORATION, Defendant-Intervenors, and KUUKPIK CORPORATION, Defendant-Intervenor. | No. 06-491 L<br>Judge Nancy B. Firestone |

**DEFENDANT'S MOTION FOR LEAVE TO REFILE OUT OF TIME CORRECTED DECLARATION OF ROGER L. HUDSON IN ITS ENTIRETY**

Defendant hereby moves for leave to file out of time the corrected Declaration of Roger Hudson in its entirety. In support of its motion, counsel for defendant states as follows:

1. Defendant attached to its Opposition to Plaintiff's Motion for Partial Summary Judgment (filed on February 15, 2008) several documents one of which was labeled Attachment No. 49 - - the Declaration of Roger L. Hudson;

2. The draft of the Hudson Declaration had three letters attached to it to which the draft and final Declaration both refer; because of the time pressure of having to file this Opposition

Brief, a Reply brief and a statement of genuine issues of material fact in dispute on the same date, counsel for defendant inadvertently failed to attached the three letters to the Hudson Declaration;

3. As soon as Mr. Hudson made the undersigned aware of the fact the three letters had not been attached, counsel for defendant filed Defendant's Motion for Leave to File Corrected Declaration of Roger L. Hudson on February 29, 2008, to which the undersigned attached the three letters, but not the Declaration itself;

4. On February 29, 2008, Chief Judge Damich transferred this case to Judge Margaret Sweeney;

5. On March 10, 2008, Judge Sweeney issued an order granting the Defendant's February 29th motion and directing defendant to " . . . refile Exhibit 49, Declaration of Roger L. Hudson, with the previously omitted documents, ensuring that the entire exhibit is properly paginated" by no later than March 17, 2008;

6. On March 19, 2008, this case was reassigned to Judge Nancy Firestone;

7. Because of the press of other cases and assigned matters, the March 10th Order escaped the notice of the undersigned until March 25, 2008; and

8. Counsel for Defendant has appended hereto the Exhibit (actually Attachment) No. 49 in its entirety- - that is, the Declaration of Roger L. Hudson appended to which are the three letters which are referenced in the Declaration[1/] - - for re-filing.

Dated this 26th day of March, 2008.



[1/] Counsel for defendant has paginated the three attachments straight through so that they can be easily referenced by the Court.

Respectfully submitted,

*s/ James M. Upton*

JAMES M. UPTON
U.S. Department of Justice
Environment & Natural Resources
Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Ph. (202) 305-0482
Fax: (202) 305-0506
E-mail: james.upton@usdoj.gov

Attachment

ATTACHMENT No. 49

**DECLARATION OF ROGER L. HUDSON**

Roger L. Hudson hereby declares as follows:

1. My name is Roger L. Hudson. I live in Anchorage, Alaska. I am and have been since 1982 an attorney in the Regional Solicitor's Office, Alaska Region, U.S. Department of the Interior. My duties have included providing advice and representation to the Bureau of Indian Affairs (BIA), among other agencies, and also informally through the BIA to Indian Self-Determination Act (ISDA) contractors, tribal organizations which have contracted to carry out programs, functions, services and activities of the Department.

2. My recent involvement with the issues raised by the case of *Wallace Oenga, et al. v. United States, et al.*, No. 06-491 L (CFC), began in about September of 2003, when I was drawn into discussions occurring at that time between Ray Givens, plaintiffs' counsel, and Jenness Burns, the Alaska Regional Appraiser for the Department of the Interior's Office of the Special Trustee (OST). Those discussions concerned the method and means by which the OST was conducting or proposing to conduct a periodic rental adjustment appraisal, as required under Sections 5 and 9 of BIA Lease No. F-89-01, as amended. I have been dealing with issues relating to that 1989 lease pretty steadily ever since. I am the BIA's attorney of record in the two Interior Board of Indian Appeals cases that the judicial plaintiffs began by appealing from rental adjustment decisions relating to the periods of 2002-2005 and 2006-2009. Those two administrative appeals have been on hold while the judicial litigation is being pursued. BP Exploration (Alaska ), Inc. is party to those administrative cases as well.

3. I am aware that the United States has filed a motion in the Court of Federal Claims, seeking to dismiss all or at least most of the plaintiffs' claims on statute of limitations grounds. I am also aware that plaintiffs are opposing those motions by arguing *inter alia* that their alleged causes of action are not time-barred because of a provision inserted in successive Interior Department Appropriations Acts which states that claims "concerning losses to or mismanagement of trust funds" do not accrue until the affected individual Indian has been furnished with an accounting of such funds. Throughout their papers, plaintiffs refer to having received such an accounting "in 2003 and 2005," arguing that their various causes of action, first presented to the courts in 2006, were not untimely on account of the applicability of that statutory provision.

4. A principal reason that I offer this Declaration is to clarify that it is the Department of the Interior's position that the above-described statutory provision, relied upon by plaintiffs, has no applicability to the facts of this case, and that the information supplied from time to time to plaintiffs counsel by the undersigned was not in any event in the nature of an "accounting," however that term might properly be understood. Over the course of the roughly two years and nine months leading up to the filing of the Court of Federal Claims suit, plaintiffs' counsel and the undersigned had innumerable formal and informal contacts by telephone and letter, facsimile and mail. Throughout this period, I attempted to be helpful and responsive to information requests from plaintiffs' counsel, just as I understood the BIA and its ISDA contractors to have been helpful to the land owner - lessors themselves.

5. In obvious anticipation of the possible commencement of litigation against the United States, and mindful of the staleness of most of his clients' claims, Plaintiffs' counsel sent a

November 22, 2005 letter to the Secretary of the Interior, demanding an "accounting." A copy of that letter is attached to Plaintiff Leroy Oenga's January 2, 2008 Declaration. Because of my familiarity with the lease history, acquired over the previous two years, and our relative proximity to available records, the Alaska Regional Solicitor's Office was eventually tasked by the Department with responding to Mr. Givens' information requests. We did so under cover of letters dated February 8 and May 12, 2006, the first signed by my supervisor, copies of which are attached to this Declaration (without the referenced enclosures). It is noteworthy that the Department's responses expressly pointed out that all the information supplied was being supplied in the normal course of business, and that it was not an accounting as that term would ordinarily be understood.

6. On May 26, 2006, I sent a follow-up letter, providing additional information on a few points, a copy of which is also attached to this Declaration. In regard to that letter, it should be observed that much of the information forwarded was actually obtained from the files of the Inupiat Community of the Arctic Slope (ICAS), the then current (and still incumbent) ISDA realty service contractor. I am aware that the owners at the time had a good working relationship with ICAS personnel, and could have obtained this same information directly from ICAS. As a matter of fact, I am also aware that from the time the BIA's files were first transferred to the Arctic Slope Native Association (ASNA) in 1993, until they were re-transferred from ASNA to ICAS in approximately the year 2000, right up until the present, the most comprehensive files available on the Oenga-BP lease have been those in the possession of the ISDA contractor, not the BIA. Indeed , when the parties to this case undertook to provide voluntary disclosure and exchange of relevant documents, it was to ICAS, rather than the BIA, that I turned to obtain the

more complete records that I shared with other litigants, including plaintiffs' counsel. To the best of my knowledge, those files have always been readily available to any or all of the allotment owners, for either inspection or copying.

7. In support of my view that plaintiffs' November 2005 request for an "accounting" was merely an attempt to try to evade the applicable bar of the statute of limitations, I would point out that none of plaintiffs' claims asserted in the Court of Federal Claims suit concern the amount of rental payments actually made by BPX and/or collected by or under supervision of the BIA during the life of the 1989 lease, or allege that the Government mismanaged the rental payments that the lessee in fact paid Instead, plaintiffs' claims arise chiefly from the terms of the 1989 lease itself, and the 1994 and 1995 amendments to it, in the negotiation of which they were very actively and intimately involved. In any case, as companion Declarations and the documentary record strongly indicate, plaintiffs were assuredly very well-informed as to the amount of rent they were receiving from at least the year 1994 forward.

8. I am also aware that one of plaintiffs' claims in their lawsuit is that the Department of the Interior has wrongfully failed to take action against the lessee or other oil companies benefitting from the oil production occurring on the leased allotment land, as demanded in their counsel's letters of December 1 and December 23, 2005, attached to the January 2, 2008 Leroy Oenga Declaration. I know from personal knowledge that the reason the requested actions have not been taken is that the Department interprets Paragraph 10 of the 1989 lease, as supplemented by the January 1994 lease amendment to Paragraph 13, which expressly relieves the lessee of any obligation to notify the lessors of "facility sharing agreements," as having specifically authorized the complained of oil company actions. In other words, the Department as a matter of contract

interpretation concluded that plaintiffs' claims against the lessee and other oil companies are without legal merit.

9. I also note that the December 1, 2005 letter from plaintiffs' counsel cites Paragraph 34 of the Third Amendment to BIA Lease F-89-01, signed in May 1995, as constituting a supposed legal obstacle to the plaintiffs pursuing their own actions against the lessee and other oil companies. The Department does not share the Oengas' view that the cited contract provision would act as a bar to plaintiffs pursuing direct legal action against the lessee or other oil companies. All that 1995 amendment literally says is that lessee will not be obliged to respond to direct lessor contacts, but may limit its direct communications concerning the lease to the BIA and ASNA. The Department of the Interior does not regard such language, understood in the context in which it arose, to be intended or to have the effect of depriving the courts of jurisdiction over any legal action that the lessors might choose to pursue against their lessee, much less other oil companies.

Pursuant to the provisions of 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed at Anchorage, Alaska this 7th day of February, 2008.

Roger L. Hudson

United States Department of the Interior
OFFICE OF THE SOLICITOR
ALASKA REGION
4230 University Drive
Suite 300
Anchorage, Alaska 99508-4626
(907) 271-4131

BIA.AK.0926

February 8, 2006

Ray Givens, Attorney at Law
Givens Law Firm
P.O. Box 400
Coeur d'Alene, Idaho 83816

By Mail & Facsimile to: (208) 676-1296

Dear Mr. Givens:

Subject: Request for accounting regarding Oenga-BP Lease payments and related matters

This is to belatedly acknowledge your letter to Secretary of the Interior Gale Norton, dated November 22, 2005, in which you demand an "accounting" of funds owed, received, and disbursed to Alaska Native land owners under BIA Lease No. F-89-01, along with other related information. While this office was copied with your initial information request, the matter was only very recently re-assigned to me by our Washington Office for purposes of preparation of a formal response.

Most of the information and documentation you seek should be available from the local offices of the Bureau of Indian Affairs and/or the Office of the Special Trustee, both located here in Anchorage, and this office will undertake to coordinate assembly of that information, and transmit the same to you as soon as possible. However, preliminary inquiries indicate that some of the older Individual Indian Money (IIM) account records have been sent to the Federal Records Center, and will have to be retrieved. This may take a little while. With regard to the bulk of the information you seek, we should be able to provide it to you within the next couple weeks.

Attorney Roger Hudson on my staff will be handling this matter for me, and you may direct further communications to him. I understand you and he have already had considerable contact concerning this lease.

Before closing, let me ask for a clarification, so that we can make sure that our response meets your expectations. You request an accounting of funds collected and funds paid to the lessors or their assignees. Can we provide this information in a detailed summary form, setting forth the dates and amounts of individual transactions, or are you seeking backup documentation as well, such as receipts, copies of checks, individual transaction memoranda, and the like? An example of a partial OST Accountants' Transaction History is attached to facilitate your consideration of this question. As you can imagine, the available back-up materials would be

P

more voluminous, and take longer to assemble and furnish.

Thank you for your patience.

Yours truly,

Lauri Adams
Regional Solicitor

enclosure:
sample partial transaction history

cc (without enclosure):
Office of Executive Secretariat, MS 7229, MIB, Att'n.: Roy
Mervel Harris, Regional Realty Officer, Alaska Region, Bureau of Indian Affairs
Troy Kahklen, Rights Protection Specialist, Alaska Region, BIA
Lesley DeWilde, Realty Specialist, Fairbanks Field Office, BIA
Glenda Miller, Fiduciary Trust Officer, Office of the Special Trustee
Saldie White, Supervisory Accountant, OST
Jenness R. Burns, Regional Appraiser, OST
Dorothy Edwardsen, Realty Officer, Inupiat Community of the Arctic Slope

United States Department of the Interior
OFFICE OF THE SOLICITOR
ALASKA REGION
4230 University Drive
Suite 300
Anchorage, Alaska 99508-4626
(907) 271-4131

BIA.AK.0926

May 12, 2006

Raymond C. Givens, Attorney at Law
Givens Law Firm
P.O. Box 400
Coeur d'Alene, Idaho 83816

By FedEx & Facsimile to: (208) 676-1296
(Without enclosures)

Dear Ray:

Subject: Response to November 22, 2005 request for information

The information and materials provided along with this letter are forwarded in response to your referenced letter. Although you characterized your request as a request for "an accounting," we are not authorized to provide a formal accounting, and do not represent that the information which we are providing constitutes an accounting. Nonetheless, we believe that we are able to provide all or nearly all the information which you requested, and we do so in the normal course of business, since it is all information concerning the administration of BIA Lease No. F-89-01, to which your clients as successor lessors are entitled.

The easiest way to track the flow of funds is by referring to the spreadsheet attached to this letter as Exhibit 1, laid out on three pages, which identifies all the payments received during the life of the lease, up through the lessee's annual payment for lease year 2006, and including the April 22, 2005 back payment made for the lease period 2002-2005, based on a CPI-based rental adjustment made pursuant to Paragraph 5 of the lease.

Addressing the items of information requested in order:

**1) All funds collected by DOI under the Lease Agreement As Amended.**

As reflected on the referenced spreadsheet, all funds due under the lease have been either "collected," or paid by the lessee to the lenders who had advanced funds to you clients in anticipation of receipt of rent proceeds. These latter amounts are reflected on the spreadsheet under columns labeled "BP Loan."

**2) All funds due under the Lease Agreement As Amended.**

With the exception of the amounts demanded by the Bureau of Indian Affairs (BIA) in its May 5, 2006 letter to lessee BP Exploration (Alaska) Inc. (BPXA), and the yet-to-be-determined

adjustments due with respect to the 2006 rent payment, the BIA believes the same spread sheet reflects all of the amounts due under the lease. We realize that you may not agree with this assessment, but the spreadsheet does set forth the BIA the BIA's view as to what payments were due.

3) **All funds paid to the Lessors or their assignees under the Lease Agreement As Amended, with an itemization of the amount and date of each payment and to whom paid.**

In general, all the amounts received, as reflected on the spreadsheet, have been paid out to the Lessors or their assignees. The detail to support this assertion can be found in the roughly two inch thick file forwarded herewith, which contains back-up documentation organized by year. These records reflect amounts disbursed from the Individual Indian Money (IIM) accounts of each of the Lessors.

4) **Copies of all appraisals conducted pursuant to Article 5 and 9 of the original Lease Agreement or pursuant to other provisions of the Lease Agreement As Amended.**

Copies of these requested appraisals are also provided herewith:

a. 1993 BIA in-house appraisal of 10 acres by John Cress
b. 1994 private appraiser Roger Bonnett appraisal of 40 acres contracted for by BPXA
c. 1994 BIA Review Appraiser's Analysis of previous item
d. 1997 BIA in-house Restricted Appraisal Report - Limited Appraisal of 40 acres
e. 2002 Office of the Special Trustee (OST) in-house CPI-based calculation of lease adjustments for the 1998-2001 and 2002-2005 periods
f. 2003 OST in-house CPI-based calculation of lease adjustments for the same periods
g. 2002 OST in-house appraisal for market rent for 40 acres
h. 2004 OST contracted private appraisal of 30 acres by Alan Olson
i. 2004 Desk Review Report of Olson Appraisal prepared for Ray Givens
j. 2004 OST in-house CPI-based calculation of rent adjustment to be applied to lease period 2002-2005, relied upon in March 30, 2005 BIA letter requesting back rent
k. 2005 OST in-house corrected calculation of CPI-based adjustment for same period, not sent to BPXA, but superseded in any case by May 5, 2006 notice of back rent sent to BPXA
l. 2005 OST contracted private appraisal by Chris Guinn covering 40 acres (provided under separate cover, along with decision mentioned immediately above)

It is noted that not all of these appraisals were accepted or utilized in adjusting the rent owed or paid by BPXA. Where more than one calculation or appraisal was done in connection with a particular adjustment called for under the lease, the highest figure was the one

communicated to and eventually paid by BPXA. Indeed, the annual rent actually paid by BPXA for the lease years 1998 through 2005 was $88,997.34, an amount not precisely reflected in any of these documents. It appears that BPXA made its own Lease Paragraph 5 CPI-based rental adjustment to calculate the increase between 1994 and 1998, leading to an annual rent increase from $80,640 to $88,997.34. This increase was greater than that calculated by the BIA or OST in either items (e) or (f) above, and was therefore accepted by the Bureau. In item (e), the CPI-increase-adjusted rent for lease year 1998, due November 1, 1997, was calculated to be $87,308.93, and in item (f), it was calculated to be $86,518.66. BPXA in fact paid the slightly higher annual rent amount of $88,997.34. (See the 1996 note in the BPXA-prepared lease payment summary, attached to this letter as Exhibit 2.)

It is also noted that there may have been a pre-1993 appraisal that is not available from local OST files. Next week an inquiry will be made as to whether such appraisal is catalogued and/or available from the Federal Archives.

5) **All "cost adjustment factor" determinations prepared pursuant to Article 5 of the original lease or pursuant to other provisions of the Lease Agreement As Amended.**

These documents are included among those listed immediately above, as items (e), (f), (j), and (k). As noted in the BIA's May 5, 2006 rental adjustment notice, another CPI-based adjustment determination, applicable to the 2006 rental year, will be issued very shortly.

6) **All rental payment adjustment determinations of DOI as to "which ever is greater" between "appraisals" provided for in Article 5 and 9 of the original Lease Agreement and the "Cost Adjustment Factor" provided for in Article 5 of the original Lease Agreement.**

I haven't seen any memos reflecting a specific determination in this regard. However, it seems to be clear enough that the determination was made that the CPI-based increase was greater than the appraisal-based one in the transition to the 1998-2001 lease period. According to the May 14, 1997 "Limited Appraisal" prepared by BIA Area Chief Appraiser J. Richard Larson, item (d) above, the fair market rental value at that time was estimated to be $85,680, or a few thousand dollars a year *less than* the rental increase based on the CPI-based adjustment which was implemented a few months later with respect to the 1998-2001 lease period.

As to the 2002-2005 period, of course, the BIA issued a notice of rent increase on May 5, 2006, which implicitly reflects a determination that the called-for appraisal-based increase was substantially *greater than* the CPI-based increase that was retroactively instituted a little over a year ago, resulting in BPXA's $26,912.85 initial back rent payment.

7) **All funds due and owing under the Lease Agreement As Amended that remain unpaid.**

According to BIA and OST records, the only lease payments outstanding are those called for by the May 5, 2006 appraisal-based back rent payment demand, and one or the other of a CPI- or appraisal-based adjustment applicable to the 2006 payment received last fall.

Please don't hesitate to call if you have additional questions about the materials furnished herewith.

Respectfully,

Roger L. Hudson

attachments:
BIA-prepared spreadsheet (Exhibit 1)
BPXA-prepared payment summary (Exhibit 2)

enclosures:
as stated

cc (without enclosures):
Office of Executive Secretariat, MS 7229, MIB, Att'n.: Roy
Susan Lindquist, Assistant U.S. Attorney, District of Alaska
Janet Goodwin, Senior Attorney, Division of Indian Affairs, Office of the Solicitor
Mervel Harris, Regional Realty Officer, Alaska Region, Bureau of Indian Affairs
Fred Matsuno, Rights Protection Specialist, Alaska Region, BIA
Lesley DeWilde, Realty Specialist, Fairbanks Field Office, BIA
Glenda Miller, Fiduciary Trust Officer, Office of the Special Trustee
Jenness R. Burns, Regional Appraiser, OST
Dorothy Edwardsen, Realty Officer, Inupiat Community of the Arctic Slope

United States Department of the Interior
OFFICE OF THE SOLICITOR
ALASKA REGION
4230 University Drive
Suite 300
Anchorage, Alaska 99508-4626
(907) 271-4131

BIA.AK.0926

May 26, 2006

Raymond C. Givens, Attorney at Law
Givens Law Firm
P.O. Box 400
Coeur d'Alene, Idaho 83816

By Mail & Facsimile to: (208) 676-1296
(Without enclosures)

Dear Ray:

Subject: Supplemental response to November 22, 2005 request for information

This is a follow-up to my previous letter of May12, 2006, in which I speculated that an earlier appraisal of the Heald Point allotment parcel probably existed, and might be retrieved. In fact, a copy of that earlier appraisal turned out to be available in Inupiat Community of the Arctic Slope (ICAS) files, was obtained through the Bureau of Indian Affairs' (BIA's) Fairbanks Agency Office, and is forwarded herewith. As you can see, the appraisal was prepared in 1988 by a private appraiser commissioned by Standard Alaska Production Company in 1988, and was reviewed and approved by the BIA Chief Appraiser in January 1989. The appraisal appears to have been used to set the annual rental value on the original 10 acres lease parcel, which was determined to be $16,000.

Also enclosed are some pages furnished by ICAS, which were evidently prepared in November 1993 by Arctic Slope Native Association (ASNA), the previous Indian Self-Determination realty contractor providing service to the Oenga heirs. Although this material is a little hard to interpret, let me venture to provide you with my interpretation based on trying to reconcile this new document with the BIA-prepared rent payment history spreadsheet, and the May 1995 Stipulation of Lease History, signed by the lessors and a lessee representative.

From this new document it appears that a lease paragraph 5 cost adjustment factor calculation was undertaken in November 1993, to be made effective with rental year 1994, the sixth year of the lease. The CPI-derived adjustment appears to have been calculated so as to support an 18 percent rent increase beginning in 1994. Since the BIA's 1993 appraisal valued the 10 acre lease at essentially the same $16,000 a year rental rate as was already being paid, the CPI-based calculation was apparently used as the basis for increasing the annual rent. Looking at rental year 1993, the total rent was increased retroactively by $6,666.50 to take into account that 20 rather than 10 acres were being leased from August 1993 onward. Then it was evidently calculated that the 1994 rent on 20 acres should be $37,370, reflecting both the CPI adjustment

and the doubling of the acreage, although for a somewhat unclear reason, the lessee was actually billed and did pay $40,160 for 20 acres for 1994. To the extent this higher rental rate was to the lessors' benefit, it should not be a problem.

Then in January 1994, it was agreed that the lessee would pay an additional $137,120, as explained in the attached letter of January 21, 1994. That brought the total amount paid for each of rental years 1994 and 1995 (the latter in advance) to $80,640.00 per annum. This lump sum payment reflected adjustments to compensate for rental of the full 40 acres for the entire period from July 1993 through December 1995. It's not really clear to me when or how the $80,640 annual rental figure for 40 acres was first derived, but it would certainly seem to be an amount greater than the 1993 BIA appraisal (equivalent to $64,000 for 40 acres), or than the CPI adjustment of that figure ($64,000 plus 18 percent equals $75,520), and therefore again a figure beneficial to the lessors. The only mention of the $80,640 figure that I have discovered is in the December 13, 1994 BIA reviewer's appraisal analysis commenting on the December 5, 1994 appraisal prepared at the lessee's behest by private appraiser Roger N. Bonnet (both documents previously supplied to you under cover of my May 12 letter). In commenting on Bonnet's appraised sales value of $680,000, the BIA analysis observes that if the annual rent of $80,640 was 11 percent of the fair market value, that value would have been slightly higher than Bonnet's valuation, but if it was 12 percent, it would indicate a slightly lower fair market value. Of course, annual rents are more typically 8, 9, or 10 percent of the sales value of a parcel, suggesting that the $80,640 rental figure was on the high side.

The other pages obtained from the ICAS files set forth some sort of calculations of the future value of the lease. It is unclear how these would relate to administration of the lease. My best guess is that they were prepared to help the lessors decide whether to accept the lessee's offer to purchase the property outright, an offer that was subsequently rejected.

With the provision of this supplemental material, I believe I have furnished everything that is available in response to your information request from last November. If you think otherwise, please let me know.

Sincerely,

Roger L. Hudson

enclosures:
1988 appraisal with 1989 BIA review and approval
material from ICAS files, including CPI adjustment calculation
January 21, 1994 letter

cc (without enclosures):
Office of Executive Secretariat, MS 7229, MIB; Att'n.: Roy
Susan Lindquist, Assistant U.S. Attorney, District of Alaska
Janet Goodwin, Senior Attorney, Division of Indian Affairs, Office of the Solicitor
Mervel Harris, Regional Realty Officer, Alaska Region, Bureau of Indian Affairs
Fred Matsuno, Rights Protection Specialist, Alaska Region, BIA
Lesley DeWilde, Realty Specialist, Fairbanks Field Office, BIA
Glenda Miller, Fiduciary Trust Officer, Office of the Special Trustee
Jenness R. Burns, Regional Appraiser, OST
Dorothy Edwardsen, Realty Officer, Inupiat Community of the Arctic Slope